1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOMBARDIER INC.,

                Plaintiff,

v.

MITSUBISHI AIRCRAFT
CORPORATION, MITSUBISHI
AIRCRAFT CORPORATION AMERICA,
INC., et al.,

                Defendants.

No. 2:18-cv-1543 RAJ

DEFENDANT MITSUBISHI AIRCRAFT
CORPORATION AMERICA, INC.'S
MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM

NOTE ON MOTION CALENDAR:

Friday, January 11, 2019

ORAL ARGUMENT REQUESTED

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF COMPLAINT ...................................................................... 3

  A.  THE PARTIES ................................................................................... 3

  B.  THE MRJ PROJECT .......................................................................... 4

  C.  HIRING OF FORMER BOMBARDIER EMPLOYEES ..................... 4

  D.  BOMBARDIER'S ANTICOMPETITIVE RESPONSE TO THE
      RECRUITMENT ................................................................................ 5

  E.  BOMBARDIER'S PURPORTED TRADE SECRETS AND THE
      ALLEGED THEFT BY FORMER BOMBARDIER EMPLOYEES ................. 6

  F.  SUMMARY OF BOMBARDIER'S CLAIMS AGAINST MITAC
      AMERICA (COUNTS III, IV AND VIII) ............................................. 7

III.  ARGUMENT .................................................................................................. 8

  A.  STANDARD ....................................................................................... 8

  B.  COUNTS III AND IV (MISAPPROPRIATION) FAIL TO STATE A
      CLAIM AGAINST MITAC AMERICA ............................................. 9

      1.  Bombardier fails to plausibly allege that MITAC America acquired
          or used its trade secrets. ........................................................ 10

      2.  Bombardier also fails to plausibly allege that MITAC America
          knew or should have known the trade secrets were improperly
          acquired. ................................................................................ 14

  C.  COUNT VIII (TORTIOUS INTERFERENCE) FAILS TO STATE A
      CLAIM ............................................................................................... 16

      1.  All theories fail because Bombardier does not plausibly allege that
          MITAC America's alleged interference was for an "improper
          purpose" or by "improper means." ........................................ 16

      2.  Bombardier fails to plausibly allege that MITAC America
          tortiously interfered with Bombardier's Code of Ethics. .......... 18

      3.  Bombardier's allegations show that it did not have a valid business
          expectancy in the continued employment of the individual
          defendants. .............................................................................. 22

      4.  Bombardier does not allege that interference caused it to miss any
          deadlines. ................................................................................ 23

IV.  CONCLUSION ............................................................................................ 24

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.H. By & Through G.H. v. Microsoft Corp. Welfare Plan*,
  No. C17-1889-JCC, 2018 WL 2684387 (W.D. Wash. June 5, 2018) .....................................10

*Aaron v. Aguirre*,
  No. 06-CV-1451-H POR, 2007 WL 959083 (S.D. Cal. Mar. 8, 2007) .................................21

*Allyis, Inc. v. Schroder*,
  197 Wn. App. 1082 ....................................................................................................................19

*Allyis, Inc. v. Simplicity Consulting, Inc.*,
  189 Wn.2d 1004, 400 P.3d 1263 (2017) ...................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................8, 9, 11, 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................... passim

*Blue Star Land Servs., LLC v. Coleman*,
  No. CIV-17-931, 2017 WL 6210901 (W.D. Okla. Dec. 8, 2017) ............................................14

*Butcher v. Mortg. Elec. Registration Sys., Inc.*,
  No. 3:11-cv-00886, 2012 WL 3779060 (D. Nev. Aug. 31, 2012) ...........................................18

*Carr v. AutoNation Inc.*,
  No. 2:17-cv-01539, 2018 WL 288018 (E.D. Cal. Jan. 4, 2018) .............................................15

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ....................................................................................................10

*Corazon v. Aurora Loan Servs., LLC*,
  No. 11-00542 SC, 2011 WL 1740099 (N.D. Cal. May 5, 2011)...............................................20

*Droeger v. Welsh Sporting Goods Corp.*,
  541 F.2d 790 (9th Cir. 1976) ....................................................................................................15

*E.E.O.C. v. Fry's Elecs., Inc.*,
  No. C10-1562RSL, 2011 WL 666328 (W.D. Wash. Feb. 14, 2011).......................................18

*Ed Nowogroski Ins., Inc. v. Rucker*,
  137 Wn. 2d 427 (1999) (*en banc*) ..........................................................................................13

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Evergreen Moneysource Mortg. Co. v. Shannon*,
    167 Wn. App. 242 (2012) ................................................................................. passim

*Ford v. Trendwest Resorts, Inc.*,
    146 Wn. 2d 146, 152 (2002) ................................................................................22, 23

*Gamble v. Pac. Nw. Reg'l Council of Carpenters*,
    No. C14-455 RSM, 2015 WL 3442561 (W.D. Wash. May 28, 2015) ...................23

*In re Sagent Tech., Inc., Derivative Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..............................................................20

*Int'l Paper Co. v. Stuit*,
    No. C11-2139JLR, 2012 WL 1857143 (W.D. Wash. May 21, 2012) ...................19

*Inteum Co., LLC v. Nat'l Univ. of Singapore*,
    No. C17-1252-JCC, 2017 WL 6611961 (W.D. Wash. Dec. 27, 2017) ...................11

*Inteum Co., LLC v. Nat'l Univ. of Singapore*,
    No. C17-1252-JCC, 2018 WL 2317606 (W.D. Wash. May 22, 2018) ...................21

*Joshua David Mellberg LLC v. Will*,
    96 F. Supp. 3d 953 (D. Ariz. 2015) ....................................................................15

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................................11

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
    No. 03 Civ. 9612(GEL), 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004)............24

*Labor Ready, Inc. v. Williams Staffing, LLC*,
    149 F. Supp. 2d 398 (N.D. Ill. 2001) ................................................................22

*Labriola v. Pollard Grp., Inc.*,
    152 Wn.2d 828 (2004) ........................................................................................19

*Leingang v. Pierce Cty. Med. Bureau, Inc.*,
    131 Wn. 2d 133 (1997) ......................................................................................17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................................8

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

4

*Mills v. Bank of Am., N.A.*,
No. 3:14-cv-05238-RBL, 2014 WL 4202465 (W.D. Wash. Aug. 22, 2014) .........................18

5

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*,
No. CV-10-034-EFS, 2010 WL 2854247 (E.D. Wash. July 19, 2010) ...................................23

6

7

*Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*,
114 Wn. App. 151 (2002) ..........................................................................................................19

8

9

*Nissen v. Lindquist*,
No. C16-5093 BHS, 2017 WL 26843 (W.D. Wash. Jan. 3, 2017)..........................................21

10

*Pac. Aerospace & Elecs., Inc. v. Taylor*,
295 F. Supp. 2d 1188 (E.D. Wash. 2003) ................................................................................13

11

12

*Pleas v. City of Seattle*,
112 Wn. 2d 794 (1989) ..............................................................................................................16

13

*Racetech, LLC v. Ky. Downs, LLC*,
169 F. Supp. 3d 709 (W.D. Ky. 2016) ......................................................................................24

14

15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...............................................................................................9, 12

16

17

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ..............................................................................................9, 13

18

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.*,
115 F. Supp. 3d 1184 (W.D. Wash. 2015).................................................................................21

19

20

*Thola v. Henschell*,
140 Wash.App. 70, 164 P.3d 524 (2007)...................................................................................21

21

22

*Thompson v. St. Regis Paper Co.*,
102 Wn. 2d 219 (1984) ........................................................................................................18, 22

23

24

*Ultimate Timing, L.L.C. v. Simms*,
715 F. Supp. 2d 1195 (W.D. Wash. 2010)................................................................................21

25

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
467 U.S. 797 (1984)...................................................................................................................12

26

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Wilco AG v. Packaging Techs. & Inspection LLC,*
    615 F. Supp. 2d 320 (D. Del. 2009)................................................24

*Woody v. Stapp,*
    146 Wn. App. 16 (2008) ................................................23

**STATUTES**

18 U.S.C. § 1836 *et seq.*................................................7, 9

18 U.S.C. § 1839(5)(A).................................................9, 14

18 U.S.C. § 1839(5)(B).................................................14

18 U.S.C. § 1839(5)(B)(ii)(I).................................................9

18 U.S.C. § 1839(5)(B)(ii)(III).................................................9

18 U.S.C. § 1839(5)(B)(iii).................................................10

RCW 19.108.010 *et seq.* ................................................. passim

RCW 19.108.900 .................................................21

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................1, 3, 4, 8

**REGULATIONS**

FAA Order 8110.4C §§ 5-3(c)(1)(a-b) .................................................13

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    For two years, Canadian aircraft manufacturer Bombardier, Inc., tried to pressure

2  Defendants Mitsubishi Aircraft Corporation America, Inc. ("MITAC America"), Mitsubishi

3  Aircraft Corporation ("MITAC"), and Aerospace Testing Engineering & Certification Inc.

4  ("AeroTEC"), to enter into what would have amounted to illegal no-poaching agreements. And,

5  while Bombardier contends that this lawsuit is about trade secret misappropriation, the facts

6  underlying its supposed trade secret claim have been known to Bombardier since as far back as

7  2016. It was only when Defendants would not submit to an illegal agreement to stop hiring

8  Bombardier employees that Bombardier filed this "trade secret" lawsuit.

9    MITAC America adamantly denies Bombardier's allegations of wrongdoing and will

10  vigorously defend itself from them at the proper time. This Motion, however, addresses specific

11  pleading deficiencies that require dismissal of all claims against it (Counts III, IV and VIII),

12  pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

13                    **I.        INTRODUCTION**

14    Plaintiff Bombardier Inc. essentially alleges that Defendants misappropriated

15  Bombardier's trade secrets and intentionally interfered with Bombardier's supposed business

16  expectancy that its at-will employees would never leave Bombardier and go to work for a different

17  aerospace company. Bombardier's core allegations are fundamentally wrong and will be addressed

18  on the merits at the appropriate time. But, specific to this Motion and Defendant MITAC America,

19  Bombardier's complaint fails on its face because none of individuals who supposedly did the

20  misappropriating have ever been employed by MITAC America. Rather, the individuals work for

21  two other companies. Bombardier also fails to allege any facts showing that MITAC America

22  either acquired or used the allegedly misappropriated trade secrets. Finally, even if Bombardier

23  had adequately alleged that MITAC America somehow acquired or used the supposed trade

24  secrets, it alleges no facts that would support a finding that MITAC America knew or should have

25  known that any such trade secrets had been improperly acquired. The factual allegations in

26  Bombardier's Complaint are simply insufficient to support a viable claim against MITAC

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

America, and the claims against MITAC American must be dismissed.

The limited factual allegations in the Complaint, taken as true for purposes of this Motion, are straightforward: Four Bombardier employees, from a group of "at least 92" (Dkt. 1 ¶ 59), sent work documents that Bombardier considers confidential to their personal email accounts. These emails—sent between March 2016 and February 2017—were allegedly sent shortly (in the last days or the last months) before the employee's last day at Bombardier. (Dkt. 1 ¶¶ 60-66.) Those individuals later left Bombardier to work for MITAC or AeroTEC who, along with MITAC America, are cooperating to develop a new commercial transport aircraft, the Mitsubishi Regional Jet ("MRJ"). According to Bombardier, the MRJ will compete with Bombardier aircraft. Over the past several years, a number of other Bombardier employees left Bombardier to work for the corporate defendants on the MRJ project. MITAC then announced a delay to the MRJ schedule. The delay was driven by a redesign of a system unrelated to those discussed in the confidential documents allegedly retained by the four former Bombardier employees.

Bombardier asks the Court to infer from these factual allegations that *MITAC America* misappropriated Bombardier's trade secrets, presumably by obtaining them from MITAC or AeroTEC, who presumably obtained them from the four former Bombardier employees. Bombardier asks the Court to further infer that MITAC America knew or should have known that the information it was allegedly provided was comprised of wrongfully acquired Bombardier trade secrets, *and* to infer that MITAC America nonetheless used these stolen trade secrets to aid in the development of the MRJ. Such speculative and implausible inferences fail to state a misappropriation claim against MITAC America.

Bombardier's tortious interference claim against MITAC America fares no better. For example, Bombardier alleges MITAC America intentionally interfered by participating in efforts to hire Bombardier employees. But, as a matter of law, Bombardier had no valid business expectancy in the continued employment of its at-will employees. Nor is recruitment of skilled and experienced employees a wrongful act. Just the opposite. The free market is not limited for

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

corporations. United States law supports and promotes an open labor market where employees are free to seek and bargain for better employment opportunities.

For the reasons herein, MITAC America requests all claims against it be dismissed.

## II.     SUMMARY OF COMPLAINT[1]

### A.     THE PARTIES

Based in Montreal, Plaintiff Bombardier employs over 69,000 persons worldwide, more than 29,000 of whom work in Bombardier's Aerospace division. (Dkt. 1 ¶¶ 2, 21-22.) Amongst other products, Bombardier manufactures regional jets for commercial transport. Its only major current competitor in the regional jet market is Embraer. (*See* Dkt. 1-10 at 52; *id*. at 93; *id*. at 163.)

MITAC America is a subsidiary of Defendant MITAC, a Japan-based company. (Dkt. 1 ¶ 4.) Both companies are working together to develop a new commercial aircraft, the MRJ. (*Id.* ¶¶ 35, 41.) To help certify[2] the MRJ, MITAC engaged Defendant AeroTEC. (*Id.*) Bombardier has claimed that the MRJ will compete against Bombardier aircraft. (*Id.* ¶ 56.)

Four individual defendants—Michel Korwin-Szymanowksi, Laurus Basson, Marc-Antoine Delarche, and Cindy Dornéval—are alleged to be AeroTEC employees who previously worked for Bombardier and now work on the MRJ project. (*Id.* ¶¶ 6-9.) The fifth individual defendant—Keith Ayre—also a former Bombardier employee, is alleged to work for MITAC in Japan.[3] (*Id.* ¶ 10.)

Bombardier alleges that collectively MITAC, MITAC America, and AeroTEC employ "at least 92 former Bombardier personnel" who work on the MRJ. (*Id.* ¶ 59.) While Bombardier admits there are "at least 92 former Bombardier" employees working on the MRJ, Bombardier nonetheless specifically calls out only five named individual Defendants, along with Andrius Knystautas. (Dkt. 1 ¶ 69.) The Complaint does not allege that Bombardier employees are subject

---

[1] For purposes of this Motion, the Court must assume the truth of Bombardier's factual allegations. Should this matter proceed, many of these allegations will be vigorously disputed.

[2] Broadly, certification is the process by which a manufacturer shows a governmental agency (like the FAA) that its aircraft designs are suitable to assemble airworthy aircraft, its manufacturing processes will duplicate an aircraft to conform to the approved design, and each aircraft is certified prior to delivery. (*See* Dkt. 1 ¶¶ 29-32.)

[3] The 88 Doe Defendants are former Bombardier employees who currently work for MITAC, MITAC America, or AeroTEC, and have "some relationship or connection with the MRJ project." (*Id.* ¶ 69.)

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

to any non-solicitation or non-competition restrictions.

**B.   THE MRJ PROJECT**

The MRJ is a "clean sheet" design.[4] (*Id.* ¶ 99.) The MRJ program was officially launched on March 28, 2008. (*Id.* ¶ 35.) MITAC is responsible for the MRJ project. (*Id.*) MITAC expects the first commercial delivery of the MRJ to occur in mid-2020. (*Id.* ¶ 47.)

Bombardier alleges that it is one of the most experienced companies in the world at developing and certifying commercial clean-sheet aircraft programs. (*Id.* ¶¶ 21, 27.) Bombardier "dedicated nearly a decade" to bringing its latest "clean sheet" airplane—the C-Series—from "concept and design to commercialization and flight," noting that its decade-long effort is "not atypical for a clean sheet aircraft." (*Id.* ¶ 27.)

**C.   HIRING OF FORMER BOMBARDIER EMPLOYEES**

Bombardier alleges that job fairs were held to convince people working in Kansas for Bombardier to relocate to Seattle to work on the MRJ project, and to convince Bombardier employees based in Montreal to relocate to Japan to work on the MRJ project. More specifically: AeroTEC organized an October 23-24, 2015 job fair in Wichita, Kansas (home of Bombardier's U.S. Flight Test Center). (*Id.* ¶ 50.) AeroTEC advertised the job fair with billboards mounted on flatbed trucks and displayed outside of Bombardier's Flight Test Center. (*Id.*) The purpose of the job fair was to interview candidates to work on the MRJ project in Seattle. (*Id.*)

MITAC and MITAC America allegedly began promoting a July 15-16, 2016 Montreal job fair, to be held less than one kilometer from Bombardier's offices. (*Id.* ¶ 49.) As part of promoting the job fair, MITAC and MITAC America advertised job openings for more than 200 engineers to work on certification activities for the MRJ in Japan. (*Id.* ¶ 49; Dkt. 1-10, Ex. 28 (page 135 of 177).) MITAC hosted the Montreal job fair. (Dkt. 1 ¶ 99.) In addition, Bombardier alleges that MITAC, MITAC America, and AeroTEC collectively "retain[ed] and us[ed] professional

_____

[4] A "clean sheet" design is a new design, rather than one that is derivative of a previously certified aircraft. Certifying a "clean sheet" design generally requires additional time and effort compared to a derivative design.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1 recruiting services such as Velocity Consulting Solutions," "contact[ed] Bombardier personnel

2 directly via email," and "us[ed] successfully-recruited former Bombardier personnel to entice their

3 former colleagues to likewise defect." (*Id.* ¶ 51.)

4 **D.     BOMBARDIER'S ANTICOMPETITIVE RESPONSE TO THE RECRUITMENT**

5       Bombardier responded to recruitment efforts of its employees with a campaign of threats.

6 Starting on October 22, 2015 (one day before the Wichita job fair), Bombardier wrote to AeroTEC

7 and its employee Korwin-Szymanowski (who is not alleged to have taken any confidential

8 documents from Bombardier), demanding two recruiting events be canceled and the flatbed

9 removed, and that Korwin-Szymanowski cease any recruitment or interviewing activities. (Dkt. 1

10 ¶ 56; Dkt. 1-11.) Bombardier threatened that it would "institute legal proceedings against

11 [Korwin-Szymanowski] without any further notice" unless he complied. (Dkt. 1-11.)

12       In April 2016, Bombardier followed up with a twelve-page letter demanding that AeroTEC

13 stop all recruiting of Bombardier employees. (Dkt. 1-12 at 13.) In August 2016, Bombardier

14 upped the ante, when Bombardier CEO, Allain Bellemare, wrote to the chairman of MITAC's

15 corporate parent (Mitsubishi Heavy Industries, or "MHI") with a thinly veiled threat. MHI is a

16 supplier to Bombardier and Bellemare clearly believed this gave Bombardier leverage:  "As key

17 suppliers, we expect Mitsubishi not to cause harm to Bombardier by engaging in massive

18 solicitation of our engineers. . . . I trust that MHI will continue to be a key supplier and will

19 support Bombardier in light of the current market conditions." (Dkt. 1-16.) In early 2017,

20 Bellemare again wrote to the chairman of MHI, reminding him that Bombardier was a "close

21 business partner[]" and ending with this caution:  "I trust that I can count on your cooperation in

22 putting an end to the solicitation of our employees by MHI." (Dkt. 1-17.) Shortly thereafter,

23 Bombardier's counsel demanded that MITAC "[c]ease the solicitation, directly or indirectly, of

24 our employees." (Dkt. 1-18 at 4.)

25       After the corporate Defendants refused Bombardier's demands to cease recruiting activities

26 or to execute, or force any employees to execute, after-the-fact non-solicitation agreements and a

---

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

potentially unlawful no-poaching agreement, this lawsuit followed.

**E.    BOMBARDIER'S PURPORTED TRADE SECRETS AND THE ALLEGED THEFT BY FORMER BOMBARDIER EMPLOYEES**

Bombardier alleges that, collectively, the five individual defendants improperly retained approximately thirteen documents after leaving Bombardier (herein, the "disputed documents"). (Dkt. 5 ¶ 2; Dkt. 7 ¶ 2; Dkt. 1 ¶¶ 60-68.) Apart from information within these documents, Bombardier has not identified any other trade secrets at issue in this action. More specifically, the disputed documents comprise:

- Two documents related to skew detection that Defendant Basson is alleged to have retained on March 4, 2016. (Dkt. 1 ¶ 60; Dkt. 5 ¶¶ 3-7.)

- Six documents related to airspeed indicating systems that Defendant Delarche is alleged to have retained on May 6, 2016. (Dkt. 1 ¶ 61; Dkt. 5 ¶¶ 8-20.)

- Two documents related to production test flight profiles that Defendant Dornéval is alleged to have retained on November 18, 2016, and three documents related to computerized air flight manuals that Dornéval is alleged to have retained on February 10, 2017. (Dkt. 1 ¶¶ 62-64; Dkt. 5 ¶¶ 21-25; Dkt. 7 ¶¶ 3-7.)

- "Several" emails that Defendant Ayre is alleged to have retained on August 24, 2016. (Dkt. 1 ¶¶ 65-67.[5])

None of these documents relate to the avionics bay or electrical wire routing issues that Bombardier emphasizes as the reason for the supposed misappropriations. (Dkt. 1 ¶¶ 47-48.)

Bombardier alleges that the individual Defendants violated its Code of Ethics when they emailed confidential documents to their personal email accounts. (Dkt. 1 ¶¶ 60-62, 64-65.) The 2012 Code of Ethics attached to the Complaint includes a provision stating that employees should exercise caution to avoid misusing or inadvertently disclosing confidential information, including by "transmitting confidential documents" by email only when "it is reasonable to believe this can be done under secure conditions." (Dkt. 1-13 at 6, 18.) The Complaint does not allege that the personal email accounts of the four individual Defendants were not secure, or that it was unreasonable for them to believe that the accounts were secure.

---

[5] Non-party Knystautas is also alleged to have retained a .zip file of unknown content. (Dkt. 1 ¶ 68.)

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The 2012 Code of Ethics also states that Bombardier employees agree to maintain the confidentiality of Bombardier's confidential information "at all times, even after leaving the employ of Bombardier." (*Id.* at 18.) No allegations in the Complaint identify when or to whom the confidential information in the disputed documents was allegedly disclosed.

## F.   SUMMARY OF BOMBARDIER'S CLAIMS AGAINST MITAC AMERICA (COUNTS III, IV AND VIII)

Bombardier brought three claims against MITAC America. The first two are nearly identical, alleging misappropriation of Bombardier's trade secrets under the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 *et seq.*), and the Washington Uniform Trade Secrets Act ("WUTSA") (RCW 19.108.010 *et seq.*). (Dkt. 1 ¶¶ 92-103, 104-14.) Bombardier alleges that its trade secrets "include[], but [are] not limited to,"[6] the disputed documents. (*Id.* ¶ 94.)

Apart from Bombardier's recitation of the legal elements (*see id.* ¶¶ 98, 109), its factual allegations against MITAC America are sparse. According to Bombardier, MITAC America:

- was created to, and did, expand efforts on the MRJ project in the United States;
- "participated with MITAC" in recruitment of Bombardier personnel; and
- "had knowledge of and condoned" AeroTEC's recruitment of Bombardier personnel. (*Id.* ¶ 99.)

Bombardier does not allege that MITAC America directs certification decisions for the MRJ.

Bombardier's additional allegations purportedly supporting a claim against MITAC America concern the following actions taken by MITAC, which allegedly:

- hosted a job fair less than one kilometer from Bombardier's global principal place of business;
- experienced four delays on the MRJ project before a "critical mass" of former Bombardier employees began working on the MRJ project; and
- announced a fifth delay after a "critical mass" of former Bombardier employees were hired because MITAC was abandoning its design of "certain MRJ systems and electrical configurations" in favor of a new design that would be easier to

---

[6] While Bombardier states that its trade secrets are "not limited to" the disputed documents, Bombardier's complaint makes no allegations that identify, describe or discuss any other purported trade secrets relevant to this case.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

certify. (*Id.* ¶ 110.)

Based on the above allegations, Bombardier concludes that MITAC America acquired and/or used the trade secret information in the disputed documents.

Bombardier's third claim against MITAC America is tortious interference with contractual relationships and/or business expectancies. Bombardier alleges it had contractual relationships or business expectancies stemming from its Code of Ethics statement that employees are not to disclose confidential information. (*Id.* ¶ 147.) It further alleges it had business expectancies in continuing to employ its personnel, not losing a "significant number" of employees within a span of months, and adhering to its certification schedules. (*Id.* ¶¶ 148-50.) Finally, Bombardier alleges that MITAC America intentionally interfered with its contractual relationships and business expectancies through its participation in the recruitment of Bombardier personnel with the "improper purpose" of obtaining confidential information and/or harming Bombardier by causing it "costly delays." (*Id.* ¶ 152-53.)

## III.    ARGUMENT

### A.    STANDARD

Dismissal under Rule 12(b)(6) is required when the plaintiff either lacks a "cognizable legal theory" or fails to present "sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In assessing whether a complaint presents "sufficient facts to support a cognizable legal theory," the Court adheres to the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although factual allegations in a complaint are assumed true, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Sufficient factual matter" necessary to avoid dismissal of a complaint

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  does not include allegations that are conclusory or speculative or that require the court to draw

2  unreasonable or unwarranted factual inferences. *See id.* at 678-79; *Sprewell v. Golden State*

3  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

4        Thus, a complaint's factual allegations must plausibly suggest, and not merely be

5  consistent with, the claimed wrongful conduct. *Twombly*, 550 U.S. at 557. A plaintiff must

6  provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

7  action," and the factual allegations "must be enough to raise a right to relief above the speculative

8  level[.]" *Id.* at 555. Thus, "where the well-pleaded facts do not permit the court to infer more than

9  the mere possibility of misconduct" or support an "obvious alternative explanation" for the alleged

10  harm, the plaintiff fails to show entitlement to relief, and its claim should be dismissed. *Id.* at 567;

11  *Iqbal*, 556 U.S. at 682; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

12  **B.  COUNTS III AND IV (MISAPPROPRIATION) FAIL TO STATE A CLAIM
13      AGAINST MITAC AMERICA.**

14        Under the relevant provisions of the DTSA and WUTSA, MITAC America can be liable

15  for trade secret misappropriation only if Bombardier shows that:

16  - MITAC America *acquired* Bombardier's trade secrets, *knowing or having reason to
17  know* that the trade secrets were acquired by improper means, *see* 18 U.S.C.
   § 1839(5)(A), RCW 19.108.010(2)(a); or

18  - MITAC America *disclosed or used* Bombardier's trade secrets while *knowing or
19  having reason to know* that the trade secrets were:

20  - Derived from or through a person who had used improper means to acquire
21  them, *see* 18 U.S.C. § 1839(5)(B)(ii)(I), RCW 19.108.010(2)(b)(ii)(A);

22  - Acquired under circumstances giving rise to a duty to maintain the secrecy
   of the trade secrets or limit their use, *see* 18 U.S.C. § 1839(5)(B)(ii)(III),
23  RCW 19.108.010(2)(b)(ii)(B); or

24  - Derived from or through a person who owed to the person seeking relief a
25  duty to maintain the secrecy of the trade secrets or limit their use, *see* 18

26

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

U.S.C. § 1839(5)(B)(ii)(III), RCW 19.108.010(2)(b)(ii)(C).[7]

The Complaint does not identify or describe any Bombardier trade secrets other than the disputed documents allegedly taken by four former Bombardier employees, three of whom now allegedly work for AeroTEC and one of whom now works for MITAC. Because those are the only trade secrets identified in the Complaint, any misappropriation claim against MITAC America must plausibly allege that MITAC America acquired, disclosed or used those particular documents (or the trade secrets contained therein), knowing or having reason to know the trade secrets were improperly acquired. Bombardier fails on both fronts.

### 1. Bombardier fails to plausibly allege that MITAC America acquired or used its trade secrets.

Bombardier does not suggest that MITAC America *disclosed* its trade secrets (*see, e.g.*, Dkt. 1 ¶¶ 98, 109), so the issue for the Court is whether the Complaint plausibly alleges that MITAC America *acquired or used* the trade secrets. It does not.

The allegations that the individual defendants forwarded the disputed documents to their personal email accounts before leaving Bombardier (and before beginning work with AeroTEC or MITAC) are not alone sufficient to state a plausible claim for misappropriation against MITAC America. At most, Bombardier's allegations speak to a mere possibility that the individual defendants disclosed the disputed documents to their new employers, and a further possibility that AeroTEC or MITAC then disclosed the disputed documents to MITAC America.[8] But a chain of

---

[7] There is one additional statutory definition of "misappropriation": the disclosure or use of another's trade secret by a person who, before a material change in his position, knew or had reason to know that (i) the trade secret was a trade secret, and that (ii) knowledge of the trade secret had been acquired by accident or mistake. *See* 18 U.S.C. § 1839(5)(B)(iii); RCW 19.108.010(2)(b)(iii). Apart from reciting this language, Bombardier alleges no facts in the Complaint to support a claim under this definition. (Dkt. 1 ¶¶ 98, 109); *Twombly*, 550 U.S. at 555.

[8] Materials referenced in the Complaint further undercut any inference that the alleged trade secrets reached MITAC America through MITAC. Specifically, an exhibit to the Complaint contains the signature page from a MITAC "Employee Proprietary Information, Inventions, Non-Competition and Non-Solicitation Agreement." (*See* Dkt. 1 ¶ 66; Dkt. 1-27 at 4.) Within that document, MITAC instructs its incoming employees not to transfer to it, or use in their work for it, any trade secrets or other confidential or proprietary information they may have acquired from their former employers. (*See* Gaston Decl. Ex. A) Bombardier attached the signature page of this agreement to the Complaint, thus allowing the Court to consider the full document. *See Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997) ("[A] court ruling on motion to dismiss may consider the full texts of documents which the complaint quotes only in part."); *A.H. By & Through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   mere possibilities is not enough to state a claim against MITAC America. *See Twombly*, 550 U.S.

2   at 557 (explaining that the mere possibility of misconduct does not state a plausible claim); *Inteum*

3   *Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2017 WL 6611961, at *3 (W.D. Wash.

4   Dec. 27, 2017) (holding that even allegations "indicat[ing] motive, opportunity, and possibility of

5   improper disclosure or transfer of protected [trade secrets]" were insufficient to state a claim for

6   misappropriation).[9]

7           Construing the Complaint in the light most favorable to Bombardier, Bombardier has

8   alleged—at best—that the individual defendants had a motive and opportunity to misappropriate

9   its trade secrets: their motive was to help their new employers, and their opportunity arose from

10  their access to the documents as Bombardier employees. Applying the reasoning of *Twombly* and

11  *Inteum*, such allegations are insufficient to state a claim *against even the individual defendants*;

12  thus, they cannot support the further inferential leaps required under Bombardier's theory that

13  MITAC and/or AeroTEC seized upon the individual defendants' motive and opportunity, actually

14  acquired and/or used the trade secrets, and then *further* disclosed those trade secrets to MITAC

15  America. This tenuous chain of inferences renders Bombardier's claim implausible on its face. *See*

16  *Iqbal*, 556 U.S. at 678.

17          The only other allegations Bombardier makes to support an inference that MITAC

18  America wrongly acquired or used Bombardier's trade secrets are its "timeline" allegations.

19  Simply, Bombardier alleges that MITAC announced design changes to the MRJ to facilitate

20

21  2684387, at *1-2 (W.D. Wash. June 5, 2018) (where plaintiff attached excerpts of document to complaint and
    defendant attached full version of same document to motion to dismiss, considering full version in ruling on motion);

22  *see also Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).

23          [9] In that case, NUS, the defendant, had previously licensed Inteum's software, but then solicited bids to
    replace the Inteum system and awarded the new contract to Inteum's competitor, Wellspring. NUS had opportunity to
    disclose trade secrets to Wellspring because NUS was permitted access to Inteum's trade secrets, including Inteum's

24  Data Dictionary. *See id.* at *3. NUS had motive to disclose the trade secrets to Wellspring because NUS wanted
    Wellspring to "port over" all features and functions from Inteum's software to the software product Wellspring was

25  developing for NUS. *See id.* And Inteum alleged that NUS engaged in improper behavior like meeting with
    Wellspring before setting up a sham bidding process and repeatedly attempting (but failing) to gain online access to

26  Inteum's Data Dictionary without permission even after Wellspring was awarded the contract. *See id.* Nonetheless, the
    court dismissed Inteum's misappropriation claims for failure to state a plausible claim.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

certification in 2017, after a "critical mass" of former Bombardier employees joined MITAC, MITAC America, and AeroTEC. (Dkt. 1 ¶ 99.) The inference Bombardier is asking the Court to draw is that MITAC made such design changes *because* MITAC America acquired or used Bombardier trade secrets that revealed the necessity of the redesign (and then apparently convinced MITAC to delay the MRJ schedule by another two years to implement the redesign).

As an initial matter, nothing about MITAC announcing a design change in 2017 suggests misconduct, not by MITAC, and certainly not by MITAC America. Design changes routinely occur during the certification process, including late in the process, as attested to by documents attached to Bombardier's Complaint. (*See* Dkt. 1-10, Ex. 14 ("[Design] changes often happen during the final design tweaking that inevitably takes place during certification . . . [O]ften []to meet an unanticipated regulatory need.").

Further, Bombardier's allegations do not link MITAC's 2017 design changes to the trade secrets Bombardier alleges were stolen. The only 2017 design changes identified in the Complaint relate to MITAC "relocat[ing] components in the avionics bay" and a resulting "change in the electrical wires routing." (Dkt. 1 ¶¶ 47-48.) But Bombardier does not allege, because it cannot, that any of the supposed trade secrets relate to components in the avionics bay or the routing of electrical wires in the MRJ. They do not. Nor does Bombardier even try to explain how the purportedly stolen trade secrets—relating to skew detection, air speed monitoring and specific flight data of very different airplanes—might have influenced design changes of the MRJ's avionics bay or electrical wiring system. There is no connection alleged and there can be no reasonable inference of a connection from the allegations. *See Sprewell*, 266 F.3d at 988 (court not required to accept as true "unwarranted deductions of fact, or unreasonable inferences").[10] This negates any inference that MITAC was inspired to make the changes only after improperly

---

[10] Further, trying to characterize the few disputed documents as if they contain the secret sauce for certifying a transport category aircraft generally, as Bombardier does, is patently unreasonable. Aircraft certification is notoriously complex, and it would not be uncommon to submit "300,000 engineering drawings and changes, 2,000 engineering reports, and 200 other reports" during the process. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 805 n.7 (1984).

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   receiving trade secrets in the allegedly stolen documents.

2          Relatedly, the alleged timeline of the MRJ project (including the several delays) does not

3   suggest that MITAC was going to be unable to certify the MRJ without resorting to misconduct.

4   Bombardier admits that its own clean sheet designs take significant (and comparable) time to

5   commercialize. (*See* Dkt. 1 ¶ 27 ("That Bombardier dedicated nearly a decade . . . to bring the C-

6   Series from concept and design to commercialization and flight is not atypical for a clean sheet

7   aircraft.").) In fact, per FAA rule, "inexperienced" manufacturers like MITAC receive higher

8   scrutiny compared to the "greater confidence" given by regulators to experienced manufactures

9   like Bombardier. *See* FAA Order 8110.4C §§ 5-3(c)(1)(a-b); *see also id.* §§ 2-4(a), 2-5(a)(1), 2-

10  5(b)(1).

11         Bombardier urges the Court to conclude that *somebody* must have disclosed Bombardier's

12  trade secrets for the MRJ project to get on track (including 88 possible John or Jane Doe

13  defendants), but the facts as alleged support an entirely innocent alternative explanation: that the

14  general skills and experience of the entire MRJ team (not just the former Bombardier employees

15  on that team) advanced the project toward completion. Bombardier admits that "it's almost

16  impossible to understand the full certification criteria for an aircraft, if one has not been through it

17  once or twice," thus acknowledging the value of experience gained by doing in this field. (Dkt. 1

18  at ¶ 33.) Bombardier does not own its employees' (or anyone else's) general experience. *See Ed*

19  *Nowogroski Ins., Inc. v. Rucker*, 137 Wn. 2d 427, 437 (1999) (*en banc*) ("As a general rule, an

20  employee who has not signed an agreement not to compete is free, upon leaving employment, to

21  engage in competitive employment. In so doing, the former employee may freely use general

22  knowledge, skills, and experience acquired under his or her former employer."); *see also Pac.*

23  *Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1203 (E.D. Wash. 2003). Where a

24  complaint's factual allegations support an "obvious alternative explanation" for why the plaintiff

25  was harmed, the plaintiff fails to show entitlement to relief, and its claim should be dismissed.  *See*

26  *Twombly*, 550 at 567; *Iqbal*, 556 U.S. at 682; *Starr*, 652 F.3d at 1216.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Finally, even if the announced redesign or the MRJ timeline were suspicious (they are not), and even if the alleged trade secrets related to the location of components in the avionics bay or the electronics system (they do not), Bombardier does not allege that the redesign decision was made by *MITAC America*, or even involved anyone in the United States. To the contrary, the exhibit cited by Bombardier describing the redesign states that the issue "first surfaced . . . when the manufacturer was conducting a design review in Nagoya [Japan]." (Dkt. 1-10 at Ex. 26.) Indeed, the Complaint is devoid of any allegations that MITAC America personnel are even involved in design or certification decisions affecting the MRJ. As such, Bombardier's "timeline" allegations in no way support an inference that MITAC America acquired and/or used trade secret information in the disputed documents.

**2.    Bombardier also fails to plausibly allege that MITAC America knew or should have known the trade secrets were improperly acquired.**

In addition to failing to allege that MITAC America acquired or used the Bombardier trade secrets in the disputed documents, Bombardier also utterly fails to allege facts showing the additional required element that MITAC America did so *knowing or having reason to know* the trade secrets were improperly acquired in the first place. *See* 18 U.S.C. § 1839(5)(A),(B); RCW 19.108.010(2)(a),(b). Instead Bombardier's allegations on this specific element amount to only a formulaic recitation of the statutory language, which is alone insufficient as a matter of law. (Dkt. 1 ¶¶ 98, 109) ("[MITAC America] has misappropriated Plaintiff's trade secrets under federal law because it acquired Bombardier trade secret information knowing or having reason to know that it was acquired by improper means."); *see Twombly*, 550 U.S. at 555. Beyond that, Bombardier alleges only that the disputed documents were marked as confidential and proprietary. (*See, e.g.*, Dkt. 1 ¶¶ 60-62, 64, 65.)

As a matter of law, this allegation is insufficient to infer culpable knowledge of MITAC America. "Liability [for trade secret misappropriation] by association is not enough." *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931, 2017 WL 6210901, at *8 (W.D. Okla. Dec. 8,

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

2017); *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982 (D. Ariz. 2015). For example, the plaintiff in *Mellberg* alleged that a competitor was liable for trade secret misappropriation because it hired two former employees that took the plaintiff's trade secrets and used them at their new job. The court nonetheless dismissed the claim against the competing company, explaining that "no facts show[ed] that [competing company] had any knowledge whatsoever regarding the information purportedly used" by those former employees, even though the competing company's requisite knowledge was "conceivable." *Id.* Here, Bombardier's claim against MITAC America depends solely on an inference that it is liable because it associated with two other companies whose employees are alleged to have committed wrongdoing. That is not enough.

Even assuming Bombardier's allegations support the tenuous inference that a MITAC America employee saw the actual disputed documents marked confidential (which they do not), that inference is insufficient to impute such possible knowledge by an employee to the corporate entity, particularly here where the disputed documents relate to technical, engineering-level issues on specific subsystems of an aircraft—the types of documents for engineers mired in the details. *See Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976) ("In light of the emphasis in trade-secret law on unfair use, it is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal."); *Carr v. AutoNation Inc.*, No. 2:17-cv-01539, 2018 WL 288018, at *2-3 (E.D. Cal. Jan. 4, 2018) (granting motion to dismiss misappropriation claim and citing *Droeger* for proposition that "it is not appropriate to impute an agent's knowledge of a trade secret to the principal").

In sum, even if the Complaint alleged facts sufficient to support a plausible inference that *somebody* at MITAC America may have seen the allegedly stolen documents marked as Bombardier confidential (it does not), even that inference would not justify imputing knowledge (actual or constructive) of trade secret theft to the corporate entity, MITAC America. Bombardier has thus failed to plausibly allege that MITAC America possessed the requisite culpable knowledge to support a claim for misappropriation.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 15

1    For both independent reasons, Bombardier's trade secret claims against MITAC America,

2 Counts III and IV, must be dismissed.

3    **C.    COUNT VIII (TORTIOUS INTERFERENCE) FAILS TO STATE A CLAIM**

4    Bombardier's single tortious interference claim against MITAC America consists of

5 several wide-ranging theories of liability, presumably in the hope that one such theory would

6 survive a motion to dismiss. None should.

7    Bombardier's various tortious interference allegations can be characterized as three

8 separate theories: (1) MITAC America tortiously interfered with Bombardier's contractual

9 relationships and/or business expectancies arising from its *Code of Ethics*; (2) MITAC America

10 tortiously interfered with Bombardier's business expectancy in *retaining its employees*; and

11 (3) MITAC America tortiously interfered with Bombardier's business expectancy in *adhering to*

12 *its own certification schedule*.

13    To state a claim for tortious interference under any of these theories under Washington

14 law,[11] Bombardier must plausibly allege for each that: (1) it had a valid contractual relationship or

15 business expectancy; (2) MITAC America had knowledge of the same; (3) MITAC America's

16 intentional interference induced or caused a breach or termination of the relationship or

17 expectancy; (4) MITAC America's interference was for an improper purpose or by improper

18 means; and (5) Bombardier suffered damage as a result. *See Evergreen Moneysource Mortg. Co.*

19 *v. Shannon*, 167 Wn. App. 242, 258 (2012) (citing *Pleas v. City of Seattle*, 112 Wn. 2d 794, 800-

20 05 (1989)).

21    **1.    All theories fail because Bombardier does not plausibly allege that MITAC**
        **America's alleged interference was for an "improper purpose" or by**
22       **"improper means."**

23    Bombardier does not allege that MITAC America interfered by "improper means." Instead,

24

25    ───────────────
        [11] Bombardier expressly brought its tortious interference claim under Washington common law (*see* Dkt. 1
26 ¶¶ 1, 13, 18), and thus for purposes of this Motion, MITAC America analyzes the sufficiency of the claim under
    Washington law. By doing so, MITAC America does not concede that Washington law governs the claims against it
    under the requisite choice-of-law principles.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Bombardier alleges that MITAC America's interference (under all theories) was conducted for two "improper purposes."[12] (Dkt. 1 ¶ 153.) MITAC America's two allegedly improper purposes for participating in the recruitment of Bombardier employees were to: (1)  illicitly obtain Bombardier's trade secrets and (2)  harm Bombardier by imposing costly delays. (*Id.*) But neither purpose finds factual support in the Complaint.

First, for the reasons set forth in § III.B, Bombardier does not plausibly allege that MITAC America acquired or used any of its trade secrets. Further, it fails to allege facts to support the additional necessary inference that *the reason* that MITAC America participated in recruiting Bombardier employees was to unlawfully acquire trade secrets, rather than to acquire the normal skills and experience of employees who had worked on the certification of other transport category aircraft. This latter alternative explains the public recruitment and public advertising by MITAC and AeroTEC for certification engineers. (Dkt. 1 ¶¶ 49-50.)

Second, with regard to the alleged improper purpose of harming Bombardier by delaying its certification efforts, no factual allegations support this theory. At most, the Complaint supports an inference that MITAC America desired to help the MRJ; but it is unsupported speculation to derive a desire on the part of MITAC America to harm Bombardier or undercut Bombardier certification efforts. Accordingly, since under *Twombly* the factual allegations in Bombardier's Complaint must do more than be "merely consistent with" a claim of improper purpose, 550 U.S. at 557, Bombardier's factual allegations fail on this essential element. Because Bombardier failed to plausibly plead the "improper purpose or means" element of its tortious interference claim under any theory, Count VIII should be dismissed.

---

[12] Though Bombardier is apparently not pursuing an "improper means" theory, the only allegations related to any "improper means" would be that MITAC America "participated with MITAC" in recruitment of Bombardier personnel and "had knowledge of and condoned" AeroTEC's recruitment of Bombardier personnel. (Dkt. 1 ¶ 99.) But, those allegations do not reflect any improper means. Bombardier acknowledges that it is one of the most experienced companies in the world at developing and certifying commercial clean-sheet aircraft programs. (*Id.* ¶¶ 21, 27.) Encouraging qualified employees (especially those not subject to any non-competition or non-solicitation restrictions) to work for your company is not an improper means. *See Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn. 2d 133, 157 (1997) ("Exercising in good faith one's legal interests is not improper interference.").

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### 2.   Bombardier fails to plausibly allege that MITAC America tortiously interfered with Bombardier's Code of Ethics.

For one of its theories of liability for Claim VIII, Bombardier contends to have a contractual relationship and/or business expectancy with each of its former employees arising from its Code of Ethics ("Code") because the Code includes language purporting to impose post-termination confidentiality obligations. (Dkt. 1 ¶ 147.) Bombardier further claims that MITAC America tortiously interfered with such contractual relationships and/or business expectancies by causing former Bombardier employees to disclose Bombardier's secrets and by "participating" in and "condoning" recruitment of those employees. (*Id.* ¶¶ 49-51, 99, 152.) Bombardier's allegations under this theory do not state a claim for the following four reasons.

**First**, Bombardier has not alleged the requisite elements of a valid contractual relationship or business expectancy arising from its Code. *See Evergreen*, 167 Wn. App. at 258. As pleaded, the Code is not an enforceable contract because Bombardier's allegations do not support the existence of valid consideration. *See Thompson v. St. Regis Paper Co*., 102 Wn. 2d 219, 228-29 (1984) ("[O]ffer, acceptance and consideration are necessary predicates to establishing that policies in an employment manual" are part of a contract between the employer and employee); *see also Mills v. Bank of Am., N.A.*, No. 3:14-cv-05238-RBL, 2014 WL 4202465, at *5 (W.D. Wash. Aug. 22, 2014) (dismissing breach of contract claim because existence of contract was not plausibly alleged where, among other things, plaintiff did not provide "any facts which show a contract was formed" including that "there was no consideration"); *Butcher v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00886, 2012 WL 3779060, at *3 (D. Nev. Aug. 31, 2012) (dismissing breach of contract claim because "[t]he Complaint alleges the existence of a contract, but that allegation constitutes a legal conclusion that we need not except as true" and plaintiff "failed to plead consideration").

The general rule in Washington is that contracts signed when an employee is first hired are supported by consideration. *See E.E.O.C. v. Fry's Elecs., Inc.*, No. C10-1562RSL, 2011 WL

666328, at *1 (W.D. Wash. Feb. 14, 2011) (citing *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834 (2004)). But post-employment modifications or additional agreements must be supported by independent consideration, and neither "continued at will employment" nor "promising to pay an employee his or her current salary" constitutes independent consideration. *See Int'l Paper Co. v. Stuit*, No. C11-2139JLR, 2012 WL 1857143, at *3-4 (W.D. Wash. May 21, 2012) (finding confidentiality agreement signed by current employee unenforceable due to lack of consideration).

Here, the version of the Code relied upon by Bombardier throughout the Complaint—which is the only version of the Code attached in full to the Complaint—has a copyright date of January 2012. (Dkt. 1-13 at 29; Dkt. 1 ¶¶ 138, 147, 156, 184, 207, 230, 252.)[13] However, all but one of the individual defendants (Basson) began working at Bombardier long before 2012. (*See* Dkt. 1 ¶¶ 6, 8, 9, 10.) Thus, those defendants could not have acknowledged receipt of the 2012 Code when they were hired by Bombardier.[14] Nor does Bombardier allege that the employees received any additional consideration for acknowledging the 2012 Code sometime after they were hired. Thus, the Code is not binding on and cannot be enforced against former employees, and Bombardier has alleged no other basis to claim a valid business expectancy regarding *former* employees, which requires a reasonable expectation for a "*prospective* contractual or business relationship." *See Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158 (2002) (emphasis added); *see also Allyis, Inc. v. Schroder*, 197 Wn. App. 1082, review denied sub nom. *Allyis, Inc. v. Simplicity Consulting, Inc.*, 189 Wn.2d 1004, 400 P.3d 1263 (2017) (explaining that an employer who sued former employee's new employer for tortious interference had no business expectancy in noncompete and confidentiality agreements found in employee handbooks because they were not enforceable contracts).

**Second**, even if Bombardier had alleged facts sufficient to establish a valid contractual

---

[13] Inexplicably, the French version of the Code has a June 2011 copyright date. (Dkt. 1-13 at 57.)

[14] With respect to the only individual defendant who worked at Bombardier for less than a decade, Basson, Bombardier attached to the Complaint what appears to be his Code acknowledgment form. (Dkt. 1-20.) Although the document appears to be signed, the date is incomplete and merely states "4 Ma." (*Id.*)

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

relationship or business expectancy arising from the Code, it has not plausibly alleged breach, another necessary element of its claim. *See Evergreen*, 167 Wn. App. at 258. The Code did not prohibit the individual defendants from emailing work documents to their personal accounts, thus doing so was not a breach. Instead, the Code says only that employees should "exercise caution to avoid misusing or inadvertently disclosing confidential information," which includes "transmitting confidential documents by electronic devices, such as by fax or e-mail, *only when it is reasonable to believe this can be done under secure conditions*." (Dkt. 1-13 at 15 (emphasis added).) Bombardier alleged no facts to support that an employee emailing documents to his or her personal email was an insecure transmission.

Consequently, Bombardier's Complaint can state a claim for this required element—breach—based on the Code only if it pleads sufficient facts to suggest that the emailed Bombardier documents were then later improperly disclosed, which would violate the separate non-disclosure provision of the Code. But, as detailed above, Bombardier has not plausibly alleged that its former employees disclosed Bombardier's secrets to anyone, much less to MITAC America. Because simply emailing work documents to a personal account was no breach, and the allegations do not support a reasonable inference that the former employees disclosed Bombardier's secrets to MITAC America, Bombardier has identified no breach of the Code that would sustain its tortious interference claim.

**Third**, even if Bombardier had alleged a breach of the Code, it did not plausibly allege that MITAC America induced or caused that breach, another requisite element of its tortious interference claim. *See Evergreen*, 167 Wn. App. at 258. While Bombardier alleges that MITAC America participated in and condoned recruitment of Bombardier employees,[15] such activities do

---

[15] Bombardier's allegations are particularly flawed to the extent they lump together MITAC, AeroTEC, and MITAC America and impute misconduct by one to the others without factual support. *See, e.g.*, *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide Aurora with fair notice of its alleged misconduct."); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

not amount to (and cannot reasonably be inferred to amount to) inducing those recruited employees to improperly disclose Bombardier's confidential information. (*See* Dkt. 1 ¶ 152.) This too, is a fatal omission.

**Fourth**, even if Bombardier had sufficiently alleged that MITAC America induced the former employees to breach the Code by stealing trade secrets, WUTSA preempts the claim. *See* RCW 19.108.900. While the preemptive scope of WUTSA is not settled, this Court has taken a "strong view" of preemption. *See Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2018 WL 2317606, at *2 (W.D. Wash. May 22, 2018). Under the strong view, "a claim must be 'wholly independent' of facts used to prove trade secret misappropriation." *Id.*; *Thola v. Henschell*, 140 Wash.App. 70, 82, 164 P.3d 524 (2007) ("A plaintiff may not rely on acts that constitute trade secret misappropriation to support other causes of action.") (quotations omitted). "To determine whether the [W]UTSA preempts a common law claim, the court must (1) assess the facts that support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support the plaintiff's [W]UTSA claim; and (3) hold that the [W]UTSA preempts liability on the civil claim unless the common law claim is factually independent from the [W]UTSA claim." *Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1208 (W.D. Wash. 2010), *on reconsideration in part*, No. C08-1632-MJP, 2010 WL 2650705 (W.D. Wash. June 29, 2010).

Here, Bombardier's first theory of tortious interference centers on its former employees breaching the Code (or Bombardier's expectancy based upon the Code), which required them not to disclose Bombardier's secrets after they left the company. These are the same facts underlying Bombardier's trade secret misappropriation claim. Thus, this theory of tortious interference must also be dismissed as preempted. *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1199 (W.D. Wash. 2015) (dismissing tortious interference claim because "there are no allegations in T–Mobile's complaint that indicate that it can prove tortious interference without

wrongful act."); *see also Aaron v. Aguirre*, No. 06-CV-1451-H POR, 2007 WL 959083, at *20 n.6 (S.D. Cal. Mar. 8, 2007); *Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at *2 (W.D. Wash. Jan. 3, 2017).

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

relying on the same facts that support its trade secret claim"); *see also Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 410 (N.D. Ill. 2001) (dismissing plaintiff's tortious interference claim as "clearly preempted" under comparable Illinois trade secret statute where plaintiff alleged that defendant had caused plaintiff's former employees to disclose and use plaintiff's confidential information and trade secrets).

### 3. Bombardier's allegations show that it did not have a valid business expectancy in the continued employment of the individual defendants.

Bombardier next alleges it had "reasonable and valid" business expectancies in continuing to employ the individual defendants and, relatedly, not losing "a significant number of its key personnel involved in the testing and certification of the C-Series and Global 7000/8000 Aircraft within a span of months to work for a competing venture." (Dkt. 1 ¶¶ 148-49.) But neither of those are protectable business expectancies as a matter of law where, as here, the factual allegations in the Complaint do not support the legal conclusion that the employee relationship was more than at-will. Without alleging facts establishing a protectable business expectancy, Bombardier cannot state a plausible claim for tortious interference with business expectancy.

"Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer." *Thompson*, 102 Wn. 2d at 223. Consequently, "in the absence of a contract stating otherwise, an employee has the *absolute right* to abandon his or her employment at-will"—a rule that has been in effect for nearly a century. *Ford v. Trendwest Resorts, Inc.*, 146 Wn. 2d 146, 152 (2002) (*en banc*) (emphasis added). Here, Bombardier does not allege that it had contracts with any of the individual defendants—let alone contracts providing that their relationships with Bombardier were anything other than "at-will." Instead, Bombardier only characterizes the relationships as more than "simple 'at-will' . . . arrangements." (Dkt. 1 ¶ 148.) There is no plausible explanation (and Bombardier does not supply one) as to why an employee's supposed *post-departure* obligation to maintain Bombardier's confidential information pursuant to the Code would somehow impact the employee's freedom to quit his job

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

or convert his at-will employment into a business expectancy of continued employment. (*See id.*)

"Generally, at-will employees do not have a business expectancy in continued employment." *Woody v. Stapp*, 146 Wn. App. 16, 24 (2008); *see also Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. C14-455 RSM, 2015 WL 3442561, at \*4 (W.D. Wash. May 28, 2015). Likewise, an employer has no expectancy in continuing to employ at-will employees. In *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 WL 2854247 (E.D. Wash. July 19, 2010), for example, the plaintiffs sued the defendant for, *inter alia*, tortious interference with a business expectancy after the defendant, a direct competitor, recruited "almost all" of plaintiffs' employees to come work for it. Even though the "mass resignation" of the employees—which took place on a single day—"effectively shut down [the plaintiffs'] operations in the region and handed them over to [the defendant]," the court dismissed the plaintiffs' tortious interference claim with prejudice, concluding that they "did not have a business expectancy in their future relationship with their at-will employees." *Id.* at \*1, 5; *see also Evergreen*, 167 Wn. App. at 258 (dismissing tortious interference claim on summary judgment where plaintiff failed to prove existence of valid expectancy in continued employment of at-will employees).

Like in *National City Bank*, the individual defendants here left Bombardier of their own volition; they chose to terminate their employment at will, as they were entitled to do. Bombardier does not allege that MITAC America did anything improper to entice the employees to quit; instead it alleges only that MITAC America participated in effectively recruiting them. (Dkt. 1 ¶ 99.) Thus, Bombardier fails to state a claim for tortious interference based on its theory that it had a business expectancy in the continued employment of its at-will employees.

### 4. Bombardier does not allege that interference caused it to miss any deadlines.

For its final theory of liability, Bombardier claims that MITAC America tortiously interfered with its "reasonable and valid business expectancy that it would generally adhere to its certification schedules set forth for the C-Series and Global 7000/8000 Aircraft." (Dkt. 1 ¶ 150.) This theory fails because nowhere does Bombardier allege that its certification schedules for the

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    C-Series and Global 7000/8000 Aircraft *were delayed* by MITAC America's conduct. In other

2    words, Bombardier fails to allege damages under this theory.

3           Instead, Bombardier alleges only that MITAC America's conduct was *intended* to cause

4    "costly delays" to Bombardier's certification efforts. (Dkt. 1 ¶ 153.) Absent any allegations that

5    MITAC America's purported interference in fact delayed Bombardier's certification efforts,

6    however, Bombardier's conclusory allegation that it suffered damages provides nothing more than

7    a "formulaic recitation of the elements of [its] cause of action," which is insufficient as a matter of

8    law. *Twombly*, 550 U.S. at 557; *see also Racetech, LLC v. Ky. Downs, LLC*, 169 F. Supp. 3d 709,

9    718 (W.D. Ky. 2016) (dismissing tortious interference counterclaim where defendant "pointed to

10   no contract or business relationship [that had] been actually interfered with"); *Wilco AG v.*

11   *Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 324-26 (D. Del. 2009) (dismissing

12   defendant's counterclaim for tortious interference based on plaintiff improperly demanding that

13   defendant remove certain information from a presentation where the presentation had ultimately

14   been given in unabridged form); *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612(GEL),

15   2004 WL 2071689, at *20 (S.D.N.Y. Sept. 16, 2004) (dismissing tortious interference claim

16   premised on defendant's efforts to bribe plaintiff's client because bribery efforts had failed).

17   Accordingly, Bombardier failed to allege a necessary element of tortious interference—

18   damages—and thus fails to state a claim. *See Evergreen* , 167 Wn. App. at 258.

19                                    *       *       *

20          Once deconstructed, the fatal deficiencies of each of Bombardier's several theories of

21   liability underlying its tortious interference claim against MITAC America are revealed. Thus, like

22   the claims of trade secret misappropriation, Claim VIII must too be dismissed for failure to plead

23   sufficient facts to state a plausible claim for relief.

24                              **IV.    CONCLUSION**

25          For the reasons set forth above, the Court should dismiss Counts III, IV, and VIII.

26

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 24

RESPECTFULLY SUBMITTED this 20th day of December 2018.

*/s/Mary Z. Gaston*
Jerry A. Riedinger, WSBA No. 25828
Mack H. Shultz, WSBA No. 27190
Mary Z. Gaston, WSBA No. 27258
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: JRiedinger@perkinscoie.com
E-mail: MShultz@perkinscoie.com
E-mail: MGaston@perkinscoie.com

Attorneys for Defendant Mitsubishi Aircraft
Corporation America, Inc.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 25

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on December 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

DATED this 20th day of December 2018.

s/Mary Z. Gaston
Mary Z. Gaston, WSBA No. 27258
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: mgaston@perkinscoie.com

CERTIFICATE OF SERVICE
(NO. 18-CV-1543 RAJ) – 1