# EXHIBIT A



**MITSUBISHI AIRCRAFT CORPORATION**
NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

## EMPLOYEE PROPRIETARY INFORMATION, INVENTIONS, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

In consideration of my employment by Mitsubishi Aircraft Corporation (the "Company"), and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by my signature below, I hereby agree as follows:

**Article 1** **Proprietary Information.**

**1.1** **Definition.**

"Proprietary Information" means any and all information and materials pertaining in any manner to the Company or its affiliates, consultants, clients, business associates, partners or employees in any form, tangible or intangible, whether disclosed to or learned or developed by me, including, without limitation: (i) information about the Company's costs, profits, markets, sales, customers, purchases, and bids; (ii) the Company's plans for business, marketing, merchandising, future development and new product concepts; (iii) the Company's customer lists, distributor and representative lists, and partner lists; (iv) the Company employee personnel files and information about employee compensation and benefits; (v) any Innovations (as defined below), (vi) any software or other technology used by the Company in connection with any programs; and (vii) any information of the type described in subsections (i)-(vi) above that the Company has a legal obligation to treat as confidential, or which the Company treats as proprietary or designates as confidential, whether or not owned or developed by the Company.

**1.2** **Restrictions.**

I acknowledge that, in the course of my work as an employee of the Company, I may have access to Proprietary Information. I acknowledge that the Company has developed, compiled, and otherwise obtained, often at great expense, this information, which has great value to the Company's business. Accordingly, I agree to: (i) hold in strict confidence and in trust for the sole benefit of the Company all Proprietary Information and (ii) not disclose any Proprietary Information, directly or indirectly, to anyone outside of the Company, nor use, copy, publish, summarize, or remove such information from the Company's premises (or from any other property of the Company); except: (y) during the term of my employment by the Company, solely to the extent necessary to carry out my responsibilities within the scope of my employment, or (z) after the term of my employment by the Company, solely to the extent expressly authorized in writing by a duly authorized officer of the Company. Further, I agree to maintain at my work area(s) only such Proprietary Information that I have a then-current "need to know," and to return such Proprietary Information to the appropriate person or location or otherwise properly dispose




NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

of such Proprietary Information (in each case, as designated by the Company), once my need to know no longer exists.

If I am requested or required (by subpoena, civil investigative demand or other process) to disclose any of the Proprietary Information, I will provide the Company with prompt notice of such request or requirement. I will use my best efforts, consistent with the requirements of applicable law, to protect the Confidential Information from disclosure and cooperate with the Company in any attempt that the Company may make to obtain an appropriate protective order or other reliable assurance that confidential treatment shall be accorded the Proprietary Information.

**1.3 Exclusions.**

The restrictions set forth in Section 1(b) above shall not apply to Proprietary Information solely to the extent that such information: (i) is or becomes generally publicly known through lawful means; (ii) was rightfully in my possession or part of my general knowledge prior to my employment by the Company; or (iii) is disclosed to me without confidential or proprietary restrictions by a third party who rightfully possesses the information (without confidential or proprietary restrictions) and did not learn of it, directly or indirectly, from the Company.

**Article 2 <u>Innovations.</u>**

**2.1 Definition.**

"Innovations" collectively means any and all ideas, concepts, inventions, discoveries, developments, software, code, content, text, video, graphics, sound recordings, works of authorship, know-how, structures, designs, formulas, algorithms, methods, products, processes, systems and technologies, in any stage of development, that are conceived, created, developed or reduced to practice by me in the course of or incident to my employment by the Company, whether alone or with others, including any and all rights therein (including, without limitation, any and all patents, copyrights, moral rights, trademarks and all other intellectual property rights) in any jurisdiction in the world, and all benefits, privileges, causes of action and remedies relating thereto.

**2.2 Ownership of Innovations.**

I hereby acknowledge and agree that all Innovations shall be deemed to be "works made for hire" belonging to the Company. To the extent that any such Innovations may not be considered works made for hire, I hereby irrevocably assign and agree to assign to the Company, without further consideration, all right, title and interest worldwide in and to such Innovations, free and clear of all liens and encumbrances. I further irrevocably waive any moral rights or other rights with respect to attribution of authorship or integrity of such Innovations. I agree to assist and cooperate with the Company in protecting the Innovations throughout the world.



NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

**2.3 License.**

To the extent, if any, that any Innovations are not assignable or that I retain any right, title or interest in and to any Innovations, I (i) unconditionally and irrevocably waive the enforcement of such rights and all claims and causes of action of any kind against the Company with respect to such rights; and (ii) hereby grant to the Company a perpetual, irrevocable, exclusive, fully paid-up, royalty-free, transferable, sublicensable (through multiple tiers), worldwide right and license to use, reproduce, distribute, display and perform (whether publicly or otherwise), prepare derivative works of and otherwise modify, make, sell, offer to sell, import, use and exploit (and have others exercise such rights on behalf of the Company) all or any portion of such Innovations, in any form or media (now known or later developed).

**2.4 License for Other Information and Materials.**

I agree not to incorporate into the Company's property any information or materials owned by myself or any third party, or in which I have or any third party has an interest, without obtaining the Company's prior written consent. If, after receiving such consent, I incorporate such information or materials into the Company's property, to the extent I own or have any rights or interest in such information and materials, I hereby grant to the Company a perpetual, irrevocable, non-exclusive, fully paid-up, royalty-free, transferable, sublicensable (through multiple tiers), worldwide right and license to use, reproduce, distribute, display and perform (whether publicly or otherwise), prepare derivative works of and otherwise modify, make, sell, offer to sell, import, use and exploit (and have others exercise such rights on behalf of the Company) all or any portion of such information and materials, in any form or media (now known or later developed).

**2.5 Written Records; Disclosure.**

While employed by the Company, I shall (i) maintain up-to-date and detailed written records regarding any Innovations and any other ideas that are conceived, developed, or reduced to practice by me in the course of or incident to my employment by the Company, whether alone or with others, and (ii) disclose promptly to the Company all such Innovations, ideas and records.

**Article 3 <u>Third-Party Information.</u>**

I acknowledge that the Company has access to confidential or proprietary information of, from or pertaining to third parties (including, without limitation, personally identifiable information collected by the Company or provided to the Company by its licensees) (collectively, **"Third-Party Information"**) subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree that, notwithstanding anything in this Employee Proprietary Information, Inventions, Non-Competition and Non-Solicitation Agreement ("Agreement") to the contrary, I will (a) hold all such Third-Party Information in the strictest confidence, (b) not disclose such Third-Party Information to any third



NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

party, and (c) not use such Third-Party Information for the benefit of anyone other than the Company or the third party to which such information pertains; except, in each case, (x) solely to the extent necessary to carry out my responsibilities within the scope of my employment by the Company during the term of my employment, (y) in a manner consistent with the Company's agreement with such third party and (z) in accordance with the Company's policy(ies) governing such disclosure and/or use (including, without limitation, its then-current privacy policy(ies)).

**Article 4** **Restrictions on Competition.**

During my employment, the Company agrees to provide me with access to the Company's proprietary and confidential information, as well as with the opportunity to develop good will and establish rapport with the Company's customers. In exchange for these promises, and in order to protect the Company's confidential information as well as the valuable good will I have created or will be creating for the Company, I agree that I will not, during my employment with the Company and for a period of twelve (12) months following any termination of my employment with the Company other than the termination by the Company for convenience set forth in Section 7(e) of this offer letter (the "Restricted Period"), either directly or indirectly be employed by, engaged in, connected with, or own, share in the earnings of, or invest in the securities of any person, partnership, corporation or other business organization operating in anywhere that is engaged in a substantially similar business as the Company or is otherwise in competition with the business the Company is engaged in or is actively contemplating engaging in during my employment with the Company, provided that during my employment I had access to or potential access to information regarding the Company's business or proposed business plans. Notwithstanding the foregoing, passive ownership of less than 1% of the publicly traded stock of a corporation will not violate this paragraph. For purposes of this Agreement, the Company is currently engaged in the business of designing, developing, manufacturing, certifying, marketing, selling and servicing aircraft.

**Article 5** **Restrictions on Solicitation.**

For and in consideration of the Company's promise to provide you with proprietary and confidential information, and in order to protect such information as well as the valuable good will you have or will be creating for the Company, you further agree that, during the Restricted Period, you will not, either voluntarily or involuntarily, directly or indirectly, or in concert with any other person or entity: (a) call on, solicit, take away or interfere with the relationships between the Company and any of the Company's Customers (defined below), either for your own benefit or for any other person or entity; or (b) solicit, induce, recruit or encourage any of the Company's employees or contractors to leave the employ of the Company or cease providing services to the Company on your behalf or on behalf of any other person or entity, provided that,




during your employment, you had contact with, access to or potential access to information regarding the employee or contractor.

"Customer" shall mean any person or entity that purchases or uses products or services from the Company or its subsidiaries or affiliates during the Restricted Period, or any person or entity whom the Company actively solicits (other than by means of a general advertising campaign) to purchase or use the products or services of the Company during the Restricted Period, provided that you had access to or potential access to information regarding that person or entity during your employment.

**Article 6 Termination.**

I hereby acknowledge and agree that all property, including, without limitation, all source code listings, books, manuals, records, models, drawings, reports, notes, contracts, lists, blueprints, and other documents or materials or copies thereof, all equipment furnished to or prepared by me in the course of or incident to my employment, and all Proprietary Information and Third Party Information, will be promptly returned to the Company upon termination of my employment with the Company. Following such termination, I will not retain any written or other tangible material containing any Proprietary Information, and I will return, erase or destroy all electronic copies of the Company data in my possession in accordance with instructions provided by the Company at that time. I understand that my obligations contained in this Agreement will survive the termination of my employment.

**Article 7 Former or Conflicting Agreements.**

I hereby acknowledge and agree that, during my employment with the Company, I will not disclose to the Company, nor use, nor induce the Company to use, any proprietary information or trade secrets of others. I represent and warrant that I have returned all property and confidential information belonging to all prior employers, individuals and entities who have provided such property and confidential information to me, if any, as required by such prior employers, individuals and entities. I have no other agreements or relationships with or commitments to any other person or entity that conflict with my obligations to the Company as an employee of the Company or under this Agreement, and I represent that my employment will not require me to violate any obligation to or confidence with another. In addition, I agree that I will not enter into, any oral or written agreement in conflict with this Agreement.

**Article 8 Conflicts of Interest.**



NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

I hereby acknowledge and agree that, during my employment with the Company, I will devote my best efforts and attention to the full-time performance of my duties, and will not act contrary to the interests of the Company in any manner.

**Article 9 Remedies.**

I recognize that nothing in this Agreement is intended to limit any remedy of the Company under federal or state law. In addition, I acknowledge (i) that it will be impossible to measure in money the damage to the Company of any failure by me to comply with this Agreement, (ii) that the restrictions and obligations under this Agreement are material and (iii) that in the event of any failure, the Company will not have an adequate remedy at law or damages. Therefore, I agree that if I breach, or threaten to breach, any provision of this Agreement, the Company shall be entitled to the issuance of an injunction or order or the issuance of other equitable remedies to compel performance of the terms of this Agreement without the necessity of showing or proving it has sustained any actual damage, and reimbursement for all costs and expenses, including reasonable attorney's fees, in connection therewith.

Without limiting the foregoing, in the event there is a breach or threatened breach by me of the provisions hereof, the Company shall be entitled to (i) both a temporary and a permanent injunction to restrain me from disclosing in whole or in part any confidential matters or information or from soliciting a Company employee, or soliciting a Company customer, as prohibited hereunder, and (ii) reimbursement for all costs and expenses, including reasonable attorneys' fees, in connection therewith. Nothing herein shall be construed as prohibiting the Company from pursuing such other remedies as may be available to it for such breach or threatened breach, including recovery of damages.

**Article 10 Employment at Will.**

I acknowledge that nothing in this Agreement alters the at-will nature of my employment with the Company, which may be terminated by either myself or the Company at any time, with or without cause or advance notice.

**Article 11 Miscellaneous Provisions.**

**11.1 Assignment.**

I may not assign to any third party any of my rights or obligations under this Agreement. The Company may assign to any third party any of its rights under this Agreement. This Agreement shall be binding upon me and my heirs, executors, administrators, and successors, and shall inure to the benefit of the Company's successors and assigns.



NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

**11.2 Governing Law; Severability.**

The validity, interpretation, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its principles of conflicts of law. I hereby agree to exclusive jurisdiction of the federal and state courts located in borough of Manhattan, New York, New York, and waive any jurisdictional, venue or inconvenient forum objections to such courts. If any provision of this Agreement, or application thereof to any person, place, or circumstance, shall be held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances shall remain in full force and effect.

THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT OR ASSERTED BY EITHER PARTY ARISING OUT OF THIS AGREEMENT OR MY EMPLOYMENT WITH THE COMPANY.

**11.3 Entire Agreement; Amendments; Waivers.**

The terms of this Agreement are the final expression of the parties' agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous agreement. This Agreement shall constitute the complete and exclusive statement of its terms and no extrinsic evidence whatsoever may be introduced in any judicial, administrative, or other legal proceeding involving this Agreement. This Agreement may not be modified, amended, or terminated except by an instrument in writing, signed by myself and by a duly authorized representative of the Company. No failure to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power provided herein or by law or in equity.



**MITSUBISHI AIRCRAFT CORPORATION**
NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI 480-0287 JAPAN

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS THAT IT IMPOSES UPON ME WITHOUT RESERVATION. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY.

Date: 12 July 2016 K. AYRE

Employee Name

Date: ______________________

Employee Signature