The Honorable Richard A. Jones

1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | BOMBARDIER, INC.,

11 |          Plaintiff,

12 |      v.

13 | MITSUBISHI AIRCRAFT CORPORATION,
MITSUBISHI AIRCRAFT CORPORATION
14 | AMERICA, INC.; AEROSPACE TESTING
ENGINEERING & CERTIFICATION, INC.;
15 | MICHEL KORWIN-SZYMANOWSKI;
LAURUS BASSON; MARC-ANTOINE
16 | DELARCHE; CINDY DORNÉVAL; KEITH
AYRE; and JOHN AND/OR JANE DOES 1-88,
17
18 |         Defendants.

NO. 2:18-cv-1543-RAJ

AEROTEC DEFENDANTS'
MOTION TO DISMISS

Note on Motion Calendar:
Friday, January 11, 2019

ORAL ARGUMENT REQUESTED

19
20
21
22
23
24
25
26
27

AEROTEC DEFENDANTS' MOTION TO DISMISS
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

**TABLE OF CONTENTS**

I.   FACTUAL ALLEGATIONS ................................................................................... 1

   A.  Background. ....................................................................................................... 1

   B.  Laurus Basson. .................................................................................................. 3

   C.  Marc-Antoine Delarche. .................................................................................... 3

   D.  Cindy Dornéval. ................................................................................................ 3

   E.  Keith Ayre. ........................................................................................................ 4

   F.  Michel Korwin-Szymanowski. ......................................................................... 4

   G.  AeroTEC. .......................................................................................................... 4

   H.  Unwarranted Factual Inferences. ...................................................................... 5

II.  AUTHORITY AND ARGUMENT ..................................................................... 5

   A.  Breach of Contract Claims (Against Basson and Dornéval). ............................ 6

       1.  Plaintiff Fails to Allege the Requisite Elements of a Valid Contract. .......... 6

       2.  Plaintiff Fails to Plausibly Allege Any Breach of the Code of Ethics. ......... 8

   B.  Tortious Interference Claims (Against AeroTEC or Korwin-Szymanowski). ... 8

       1.  Plaintiff Has Failed to Allege a Valid Contractual Relationship or
           Business Expectancy. .................................................................................... 9

       2.  Plaintiff Has Failed to Plausibly Allege Interference for Any "Improper
           Purpose" or by "Improper Means." .............................................................. 11

   C.  The Breach of Contract Claims and Tortious Interference Claims Also Fail
       Because They are Preempted by WUTSA. ..................................................... 12

   D.  Trade Secret Misappropriation Claims Under the DTSA and WUTSA Fail ... 13

       1.  Basson and Dornéval Never Improperly Acquired the Documents. ............ 15

       2.  The DTSA Claim Against Basson Fails Because the DTSA is not
           Retroactive ................................................................................................. 16

       3.  There is No Plausible Factual Basis for the Claim That Basson and
           Dornéval Used or Disclosed Trade Secrets. ............................................... 16

       4.  There is no Plausible Factual Basis for the Claim That AeroTEC and
           Korwin-Szymanowski Misappropriated Trade Secrets. .............................. 16

       5.  Knowledge of Misappropriation may not be Imputed to AeroTEC or
           Korwin-Szymanowki. .................................................................................. 17

       6.  There are no Facts Alleged Sufficient to Plausibly Demonstrate
           Misappropriation by AeroTEC or Korwin-Szymanowksi. ........................... 18

III. CONCLUSION ................................................................................................. 19

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................... 5, 6, 11, 16, 18

*Butcher v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00886, 2012 U.S. Dist. LEXIS 124162 (D. Nev. Aug. 31, 2012) ........................................................ 7

*Carr v. AutoNation Inc.*, No. 2:17-cv-01539, 2018 U.S. Dist. LEXIS 1869 (E.D. Cal. Jan. 4, 2018) ............................................................................... 17

*Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir. 1976) ..................... 17

*Evergreen Moneysource Mrtg. Co. v. Shannon*, 167 Wn. App. 242, 274 P.3d 375 (2012) ......... 10

*Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122 (W.D. Wash. 2011) ..................................................................................... 12

*Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 43 P.3d 1223 (2002) ........................ 10

*Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. C14-455 RSM, 2015 U.S. Dist. LEXIS 69293 (W.D. Wash. May 28, 2015) ........................................................ 10

*Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2018 U.S. Dist. LEXIS 85713 (W.D. Wash. May 22, 2018) ............................................................. 13, 18

*Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953 (D. Ariz. 2015) .................... 17

*JustMed Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010) ..................................... 15

*Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398 (N.D. Ill. 2001) ........ 13

*Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004) .................... 7

*Lehrer v. State Dept. of Social and Health Servs.*, 101 Wn. App. 509, 5 P.3d 722 (2000) ...... 6

*Leingang v. Pierce Cty. Med. Bureau*, 131 Wn.2d 133, 930 P.2d 288 (1997) ................ 9, 12

*Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 364 P.3d 129 (2015) ............... 12

*Linens of Eur., Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 16, 2004) ............................................................. 11

*Manufactured Home Cmtys., Inc. v. City of San Jose*, 420 F.3d 1022 (9th Cir. 2005) ....... 5

*Mattel, Inc. v. MGM Entm't, Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2010) ................. 7

*Mills v. Bank of Am., N.A.*, No. 3:14-cv-05238-RBL, 2014 U.S. Dist. LEXIS 117563 (W.D. Wash. Aug. 22, 2014) ................................................................... 7

*Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App. 502, 278 P.3d 197 (2012) ...... 12

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 U.S. Dist. LEXIS 85888 (E.D. Wash. July 19, 2010) ..................................................... 10

*Pleas v. Seattle*, 112 Wn.2d 794, 774 P.2d 1158 (1989) ................................... 12

*Racetech, LLC v. Ky. Downs, LLC*, 169 F. Supp. 3d 709 (W.D. Ky. 2016) .................. 11

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984) .................. 6

*T Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184 (W.D. Wash. 2015) ........................................................................... 9, 13

AEROTEC DEFENDANTS' MOTION TO DISMISS - ii

#1213746 v1 / 45898-028

*Thola v. Henschell*, 140 Wn. App. 70 164 P.3d 524 (2007) .......................................................... 13

*Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 ......................................... 7, 10

*Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195 (W.D. Wash. 2010) .......................... 13

*Ultimate Timing, L.L.C. v. Simms,* No. C08-1632-MJP, 2010 U.S. Dist. LEXIS 64957
    (W.D. Wash. June 29, 2010) .......................................................................................... 13

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ........................................................ 6

*Wilco AG v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320 (D. Del. 2009) ............. 11

*Woody v. Stapp*, 146 Wn. App. 16, 189 P.3d 807 (2008) ........................................................... 10

**Statutes**

18 U.S.C. § 1839(5) ...................................................................................................................... 14

18 U.S.C. § 1839(5)(A) ................................................................................................................. 14

18 U.S.C. § 1839(5)(A),(B) ........................................................................................................... 17

18 U.S.C. § 1839(5)(B) ................................................................................................................. 15

18 U.S.C. § 1839(6) ...................................................................................................................... 14

Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 *et seq.*) ................................................ 13

Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e) ................................................ 16

RCW 19.108.010(1) ...................................................................................................................... 14

RCW 19.108.010(2) ...................................................................................................................... 14

RCW 19.108.010(2)(a) ................................................................................................................. 14

RCW 19.108.010(2)(a),(b) ........................................................................................................... 17

RCW 19.108.010(2)(b)(i)-(ii) ....................................................................................................... 15

RCW 19.108.900(1)-(2) ............................................................................................................... 12

RCW Chapter 19.108 ................................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 13

AEROTEC DEFENDANTS' MOTION TO DISMISS - iii

#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Defendants Aerospace Testing Engineering & Certification, Inc. ("AeroTEC"), Michel Korwin-Szymanowski, Laurus Basson and Cindy Dornéval (collectively, the "AeroTEC Defendants") respectfully ask this Court for an order dismissing all claims asserted against them in Plaintiff Bombardier Inc.'s Verified Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff's claims all rest on the theory that it was improper and a breach of contract for its former employees to email documents to themselves at their personal email accounts, which fails as a matter of law. Aside from the alleged fact that such emails were sent, Plaintiff's 91-page Complaint contains nothing but speculation, improbable inferences, and a formulaic recitation of the elements of their causes of action.

Plaintiff's Complaint fails to state claims for breach of contract against Dornéval and Basson (Counts XII and XVII), because there are no allegations to show a valid contract supported by consideration, and in any event, Plaintiff's employees were not prohibited from emailing documents to themselves under the Code of Ethics (upon which those claims are predicated) as a matter of law. Plaintiff's claims against AeroTEC and Korwin-Szymanowski for tortious interference (Counts IX and XXI) fail to allege a valid contractual relationship of business expectancy, nor any facts to show that the recruitment of Plaintiff's employees was done for any improper purpose. Finally, Plaintiff's federal and state trade secret misappropriation claims against all four AeroTEC Defendants (Counts V, VI, X, XI, XVI, XVII, XIX and XX) rely purely on implausible inferences from speculation that any of the AeroTEC Defendants used or disclosed any trade secrets after the individual defendants left Bombardier's employ. This Court should therefore dismiss all claims against the AeroTEC Defendants.

## I. FACTUAL ALLEGATIONS

### A. Background.

Plaintiff is a large company with over 69,000 employees, more than 29,000 of whom work in its aerospace division. Complaint ¶¶21-22. Plaintiff spent years and significant resources to obtain certification of its narrow-body airliners known as the CSeries. Complaint ¶¶23-26. For years, the regional jet market has been dominated by two main players: Bombardier and Brazilian-

AEROTEC DEFENDANTS' MOTION TO DISMISS - 1
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   based Embraer that have enjoyed a significant market share in the commercial regional jet industry.

2   *See* Dkt. 1-10 at 52; *id*. at 93; *id*. at 163.

3      Defendant Mitsubishi Aircraft Corporation ("MITAC") has for years been developing the

4   Mitsubishi Regional Jet (the "MRJ"), which threatens to compete with Plaintiff's aircraft.

5   Complaint ¶34-35. MITAC experienced a number of delays in its anticipated schedule to certify

6   the MRJ. Complaint ¶¶ 36-40. In 2014, MITAC formed co-defendant Mitsubishi Aircraft

7   Corporation America, Inc. ("MITAC-A"), and enlisted the assistance of AeroTEC, a local

8   engineering company, to help with MITAC's MRJ certification efforts. Complaint ¶41. AeroTEC

9   hired Korwin-Szymanowski, Plaintiff's former Director of the CSeries Flight Test teams, in 2015,

10  and after announcing another certification schedule delay, began a "direct recruiting effort of

11  Bombardier personnel" with experience in aircraft engineering, testing and certification.

12  Complaint ¶¶48-49. AeroTEC and Korwin-Szymanowski organized "job fairs" near Plaintiff's

13  headquarters and flight test center, advertised job openings, and sent emails to industry contacts,

14  including Bombardier personnel. Complaint ¶¶49-51.

15     Plaintiff then engaged in "significant steps short of litigation to stop" the defendants

16  "targeted recruiting efforts[.]" Complaint ¶52. It sent cease and desist letters to Korwin-

17  Szymanowski and AeroTEC, emphasizing its former employees ongoing obligation to maintain

18  the confidentiality of Plaintiff's proprietary information. Complaint ¶¶52-53. Plaintiff asked

19  AeroTEC and all its former Bombardier employees to sign an "Agreement and

20  Acknowledgement," agreeing they would not directly or indirectly solicit or communicate with

21  current or former Bombardier employees for a year. Complaint ¶53. Bombardier cited to its Code

22  of Ethics as imposing an obligation on employees to maintain the confidentiality of confidential

23  information even after leaving the employ of Bombardier. *Id*. Bombardier thereafter contacted

24  MITAC and its affiliates complaining of their solicitation of employees, stating it had "reason to

25  believe the employees recruited . . . will use the intellectual property owned by Bombardier to

26  assist . . . in developing the MRJ aircraft which will compete against Bombardier aircraft."

27  Complaint ¶56.

AEROTEC DEFENDANTS' MOTION TO DISMISS - 2
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Collectively, MITAC, MITAC-A and AeroTEC now employ "at least 92 former Bombardier personnel whose current job responsibilities relate directly to the development, certification, and/or commercialization of the MRJ." Complaint ¶59.

**B.    Laurus Basson.**

Defendant Laurus Basson is a mechanical systems engineer, who worked for Bombardier for over three years. Complaint ¶7. On March 4, 2016, his last day at Bombardier, Basson allegedly sent an email to his personal email account with two PowerPoint slide decks relating to Bombardier's Global 7000/8000 aircraft's skew detection system. Complaint ¶60 and Exh. J. The two documents are filed under seal as Exhibits A and B to the Declaration of Daniel Burns, filed contemporaneously with the Complaint. Because he sent this email on his last day, Plaintiff alleges that "Basson on information and belief had every intention of using this information in his new role" for AeroTEC. Complaint ¶60.

**C.    Marc-Antoine Delarche.**

Delarche worked for Bombardier for over ten years (Complaint ¶8) and emailed six documents to himself in the two weeks before his departure and after giving his notice of resignation to Bombardier. Complaint ¶¶8, 61. These documents are filed under seal as Exhibits C to H of the Burns Declaration. Because of the timing, plaintiff alleges that "Delarche on information and belief had every intention of using this information in his new role" for AeroTEC. Complaint ¶61.

**D.    Cindy Dornéval.**

Defendant Dornéval worked at Bombardier for approximately ten years, most recently as an Aircraft Performance Engineer. Complaint ¶9. On November 18, 2016, Dornéval sent an email to her personal email account, attaching Production Flight Test Profiles. *See* Complaint ¶62 and Exh. O. These documents are filed under seal as Exhibits I & J to the Burns Declaration. Plaintiff alleges that Dornéval "knew or should have known she was violating Bombardier's Code of Ethics when she emailed such highly sensitive information to her personal email account." Complaint ¶62. Later, on February 10, 2017 (her last day at Bombardier), Dornéval attempted but failed to

AEROTEC DEFENDANTS' MOTION TO DISMISS - 3
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

send an email to herself with a zip file containing four other confidential documents. Complaint ¶63, Exh. Q. One of these documents is filed under seal contemporaneously with the Complaint as Exhibits A to the Declaration of David Tidd. Although the February 10 emails admittedly failed to go through, Plaintiff alleges that, "[u]pon information and belief, Defendant Dornéval absconded with this information in either hard copy form or through portable storage device means after realizing the file was too large to send by way of email." Complaint ¶63. Again, because of the timing, Dornéval had "every intention of misusing the information in her new role" at AeroTEC. Complaint ¶63.

**E.    Keith Ayre.**

Defendant Keith Ayre worked at Bombardier for over 32 years as an aerospace engineer. Complaint ¶10. He is accused of retaining "several" emails on August 24, 2016, before leaving for MITAC's employ. Complaint ¶65-67. Ayre is not alleged to have ever worked at AeroTEC or with any of the AeroTEC Defendants.

**F.    Michel Korwin-Szymanowski.**

Korwin-Szymanowski worked at Bombardier for approximately 15 years. Complaint ¶6. Unlike the other individual defendants, he is not accused of breaching the Code of Ethics or emailing or stealing any specific proprietary documents, but is alleged to have tortiously interfered with Plaintiff's contractual relationships and/or business expectancies and to have misappropriated Bombardier trade secrets "by inducing or knowingly permitting Defendants Basson, Delarche, and Dornéval to misappropriate, divulge, and/or use the Bombardier trade secrets described above through his targeted recruitment efforts on behalf of AeroTEC[.]" Complaint ¶¶238, 247.

**G.    AeroTEC.**

Like Korwin-Szymanowski, AeroTEC is not accused of breaching the Code of Ethics or emailing or stealing any specific proprietary documents, but is alleged to have tortiously interfered with Plaintiff's contractual relationships and/or business expectancies and to have misappropriated Bombardier trade secrets "by inducing or knowingly permitting Defendants Basson, Delarche, and

AEROTEC DEFENDANTS' MOTION TO DISMISS - 4
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    Dornéval to misappropriate, divulge, and/or use the Bombardier trade secrets described above

2    through his targeted recruitment efforts on behalf of AeroTEC[.]" Complaint ¶¶238, 247.

3    **H.    Unwarranted Factual Inferences.**

4            Other than the allegations that its former employees sent documents to their own personal

5    email accounts, the allegations in Plaintiff's Complaint are based on speculation and unwarranted

6    inferences. Nowhere does Plaintiff allege that Basson, Delarche, or Dornéval used the documents

7    for anything specific to the MRJ, nor to whom any information contained therein may have been

8    disclosed. Plaintiff does not allege that the documents contained any information relating to

9    MITAC's redesign of the MRJ's avionics bay, which is the critical certification issue "identified

10   only shortly after MITAC's direct recruiting efforts of Bombardier personnel began paying off."

11   Complaint ¶48. A review of the documents themselves reveals nothing about any information

12   relating to the avionics bay or any "revisions of certain systems and electrical configurations on

13   the aircraft to meet the latest requirements for certification" as alleged in the Complaint at ¶47.

14                          **II.  AUTHORITY AND ARGUMENT**

15           To survive a motion to dismiss for failure to state a claim upon which relief can be granted,

16   a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

17   is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

18   *Twombly*, 550 U.S. 544, 570 (2007)). This requirement is met where the complaint "pleads factual

19   content that allows the court to draw the reasonable inference that the defendant is liable for the

20   misconduct alleged." *Id*. The complaint must have "more than labels and conclusions, and a

21   formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

22           The complaint must indicate more than mere speculation of a right to relief. *Twombly*, 550

23   U.S. at 555. "Sufficient factual matter" necessary to avoid dismissal of a complaint does not

24   include allegations that are conclusory or speculative or that require the Court to draw

25   unreasonable or unwarranted factual inferences. *See Manufactured Home Cmtys., Inc. v. City of*

26   *San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005). When a complaint fails to adequately state a claim,

27   such deficiency should be "exposed at the point of minimum expenditure of time and money by

AEROTEC DEFENDANTS' MOTION TO DISMISS - 5
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    the parties and the court." *Twombly, 550 U.S.* at 558. A complaint may be lacking for one of two

2    reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal

3    claim. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling

4    on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all

5    reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561

6    (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state

7    a "plausible" ground for relief. *Twombly*, 550 U.S. at 570.

8           "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

9    than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads "facts"

10   that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility

11   and plausibility of entitlement to relief. *Iqbal*, 556 U.S. (2009) at 678. Under this standard,

12   allegations that "do nothing more than state a legal conclusion – even if that conclusion is cast in

13   the form of a factual allegation" are insufficient. *Id.*

14   **A.      Breach of Contract Claims (Against Basson and Dornéval).**

15          Plaintiff's breach of contract claims against Basson and Dornéval are based on the

16   allegation that they violated Plaintiff's Code of Ethics when they emailed documents to

17   themselves, and because they must have divulged the documents or information to others or used

18   them for AeroTEC. But the Complaint fails to allege facts to show that the Code of Ethics was a

19   valid and binding contract, and in any event, nothing in the Code of Ethics prohibits a Bombardier

20   employee from emailing documents to their personal email accounts. The allegations of

21   subsequent use or disclosure are insufficiently speculative to state a claim.

22   **1.      Plaintiff Fails to Allege the Requisite Elements of a Valid Contract.**

23          To prevail on its breach of contract claim, Plaintiff must establish the existence of a valid

24   contract imposing a duty, breach of that duty, and resulting damage. *E.g.*, *Lehrer v. State Dept. of*

25   *Social and Health Servs.*, 101 Wn. App. 509, 516, 5 P.3d 722 (2000). An employer's code of

26   ethics, code of conduct, or similar purported obligations are not binding unless separate

27   consideration was given in exchange for the employee's alleged promise. *See Mattel, Inc. v. MGM*

AEROTEC DEFENDANTS' MOTION TO DISMISS - 6
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

*Entm't, Inc.*, 782 F. Supp. 2d 911, 992 (C.D. Cal. 2010); *accord Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834, 100 P.3d 791 (2004) (a non-compete agreement entered into after employment is not binding unless it was supported by independent consideration, which involves new promises or obligations previously not required of the parties); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 228-29, 685 P.2d 1081 (1984) ("offer, acceptance and consideration are necessary predicates to establishing that policies in an employment manual" are part of a contract between the employer and employee); *see also Mills v. Bank of Am., N.A.*, No. 3:14-cv-05238-RBL, 2014 U.S. Dist. LEXIS 117563, at *11-12 (W.D. Wash. Aug. 22, 2014) (dismissing breach of contract claim because existence of contract was not plausibly alleged where, among other things, plaintiff did not provide "any facts which show a contract was formed" including that "there was no consideration"); *Butcher v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00886, 2012 U.S. Dist. LEXIS 124162, at *7-8 (D. Nev. Aug. 31, 2012) (dismissing breach of contract claim because "[t]he Complaint alleges the existence of a contract, but that allegation constitutes a legal conclusion that we need not except as true" and plaintiff "failed to plead consideration").

The relevant "contract" is Plaintiff's Code of Ethics, which is referenced in and attached to the Complaint as Exhibit D. Plaintiff does not allege that any of its former employees received any consideration in exchange for acknowledging and agreeing to conform to the Code of Ethics. Bombardier hired Dornéval in July 2007, and Basson in March 2013. The Code of Ethics has two copyright dates: January 2012 for the English version, and June 2011 for the French version. *See* Dkt. #1-13, pp. 29 & 57. Plaintiff offers no facts to support an inference that these or any other versions of the Code of Ethics were part of the individuals' initial employment contracts, whether the terms and conditions were amended over time,[1] or what consideration was given and when. Without such allegations, Plaintiff fails to state a claim for breach of contract.

---

[1] The Introduction to the Code of Ethics provides that the "printed version of the Code is subject to change without notice[,] further undercutting the assertion it is a contract." *See* Dkt. No. 1-13, page 6 or 57.

AEROTEC DEFENDANTS' MOTION TO DISMISS - 7
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

### 2.     Plaintiff Fails to Plausibly Allege Any Breach of the Code of Ethics.

Even if the Code of Ethics were a valid contract, it only instructs employees as follows: "Do not divulge confidential information to anyone other than the person or persons for whom it is intended, unless authorized . . . to do so." *See* Complaint Exh. D, Dkt. No. 1-13, p. 18 of 57. "Employees should also exercise caution to avoid misusing or inadvertently disclosing confidential information [and] transmitting confidential documents by electronic devices, such as by fax or email, only when it is reasonable to believe this can be done under secure conditions[.]" *Id.* Nothing in the Code of Ethics prohibits employees from sending documents to their personal email accounts. Functionally, this is no different than an employee printing a confidential document for himself or herself, and surely Plaintiff would not contend that this would be a breach of contract. Note that the Code of Ethics only prohibits "unnecessary copying" of confidential documents. *Id.*

Plaintiff's breach of contract claims against Dornéval relating to the February 10, 2017, email fails as a matter of law because Plaintiff acknowledges the emails themselves failed. Because Dornéval did not receive the documents on her personal email, Plaintiff cannot establish any damages, an essential element of a breach of contract claim. The allegation that Dornéval may have copied the document when the email failed is pure speculation requiring an unreasonable inference that cannot support a valid claim.

Plaintiff never alleges its former employees were not authorized to have the documents at issue, that they were not intended recipients of those documents, nor that their personal email accounts were insecure. The allegations that they emailed the documents with intent to misuse them is based on pure speculation and implausible inferences. The mere possibility that they misused the documents after leaving Bombardier is not sufficient to state a claim, and the breach of contract claims should be dismissed.

### B.     Tortious Interference Claims (Against AeroTEC or Korwin-Szymanowski).

Plaintiff's claims against AeroTEC and Korwin-Szymanowski for tortious interference also fail because Plaintiff fails to allege a valid contractual relationship or legally protectible business expectancy, or that these defendants interfered by improper means or for an improper

AEROTEC DEFENDANTS' MOTION TO DISMISS - 8

#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

purpose.  Under Washington law, the elements for tortious interference are: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *T Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1195 (W.D. Wash. 2015); (quoting *Leingang v. Pierce Cty. Med. Bureau*, 131 Wn.2d 133, 930 P.2d 288 (1997)).

### 1.  Plaintiff Has Failed to Allege a Valid Contractual Relationship or Business Expectancy.

Plaintiff asserts interference with the following interests: (1) a contractual relationship and/or business expectancy under the Code of Ethics that former employees would "not divulge [Bombardier] confidential information to anyone other than the person or persons to whom it is intended, unless authorized or legally required to do so; (2) a business expectancy that it would "continue to employ its personnel"; (3) a business expectancy that it would "not lose a significant number of its key personnel; and (4) a business expectancy that it would "generally adhere to its certification schedules set forth for the C Series and Global 7000/8000 Aircraft. Complaint ¶¶156-159, 252-255.  None of these amount to valid, protectible legal interests.

Plaintiff fails to sufficiently allege the existence of any contractual relationship. As set forth above, the Complaint is devoid of any allegations that the Code of Ethics' provisions were supported by any valid consideration, or that they were even breached at all. Furthermore, Plaintiff does not plausibly allege that AeroTEC or Korwin-Szymanowski induced or caused any breach of the Code of Ethics.

Plaintiff does not allege any other contractual relationship. As for the asserted "business expectancies," Plaintiff fails to identify any valid, protectible interest that Korwin-Szymanowski or AeroTEC interfered with. Bombardier fails to present sufficient facts to state a cognizable legal theory that any of its former employees were more than "at-will" employees. Plaintiff's only allegation to support any other inference is that the employees had a "continuing obligation

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

following termination of employment" to maintain the confidentiality of confidential information. Complaint ¶¶157, 253. But that alone does not convert "at-will" employment into anything more. "Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). Consequently, "in the absence of a contract stating otherwise, an employee has the *absolute right* to abandon his or her employment at-will"—a rule that has been in effect under Washington law for nearly a century. *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 152, 43 P.3d 1223 (2002) (*en banc*) (emphasis added). Generally, at-will employees do not have a business expectancy in continued employment." *Woody v. Stapp*, 146 Wn. App. 16, 24, 189 P.3d 807 (2008); *see also Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. C14-455 RSM, 2015 U.S. Dist. LEXIS 69293, at *12 (W.D. Wash. May 28, 2015). Likewise, an employer has no expectancy in continuing to employ at-will employees. In *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 U.S. Dist. LEXIS 85888 (E.D. Wash. July 19, 2010), for example, the plaintiffs sued the defendant for, *inter alia*, tortious interference with a business expectancy after the defendant, a direct competitor, recruited "almost all" of plaintiffs' employees to come work for it. Even though the "mass resignation" of the employees—which took place on a single day— "effectively shut down [the plaintiffs'] operations in the region and handed them over to [the defendant]," the court dismissed the plaintiffs' tortious interference claim with prejudice, concluding that they "did not have a business expectancy in their future relationship with their at-will employees." *Id.* at *1, 5; *see also Evergreen Moneysource Mrtg. Co. v. Shannon*, 167 Wn. App. 242, 258-59, 274 P.3d 375 (2012) (dismissing tortious interference claim on summary judgment where plaintiff failed to prove existence of valid expectancy in continued employment of at-will employees).

Plaintiff utterly fails to allege any facts sufficient to show any valid expectation of "retaining employees" or "not los[ing] a significant number of its key personnel." It should be noted that plaintiff nowhere alleges that any of AeroTEC's employees were "key personnel." Moreover, the inference that it in fact lost a significant number of key personnel is contradicted by

AEROTEC DEFENDANTS' MOTION TO DISMISS - 10
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

the indiscriminate allegation that AeroTEC and the other corporate defendants improperly solicited and hired a "critical mass" of 92 out of the more than 29,000 employees in its aerospace division. Complaint ¶¶22, 59, 121, 132.

As for Plaintiff's last alleged business expectancy – that it would "generally adhere to its certification schedules" – is equally unavailing. Nowhere does Bombardier allege that its certification schedules were in fact delayed by any act of the defendants. Without this allegation of damages, its tortious interference claims fail. The formulaic recitation of the essential elements of the cause of action is insufficient as a matter of law. *Twombly*, 550 U.S. at 557; *see also Racetech, LLC v. Ky. Downs, LLC*, 169 F. Supp. 3d 709, 718 (W.D. Ky. 2016) (dismissing tortious interference counterclaim where defendant "pointed to no contract or business relationship [that had] been actually interfered with"); *Wilco AG v. Packaging Techs. & Inspection LLC*, 615 F. Supp. 2d 320, 324-26 (D. Del. 2009) (dismissing defendant's counterclaim for tortious interference based on plaintiff improperly demanding that defendant remove certain information from a presentation where the presentation had ultimately been given in unabridged form); *see also Linens of Eur., Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 U.S. Dist. LEXIS 18575 at *69-70 (S.D.N.Y. Sept. 16, 2004) (dismissing tortious interference claim premised on defendant's efforts to bribe plaintiff's client because bribery efforts had failed).

### 2. Plaintiff Has Failed to Plausibly Allege Interference for Any "Improper Purpose" or by "Improper Means."

Plaintiff does not allege that AeroTEC or Korwin-Szymanowski used any "improper means" to solicit employees, and it fails to plausibly identify any improper purpose or motive. Plaintiff's two identified "purposes: are: (1) "to illicitly obtain" Plaintiff's confidential information to assist in the MRJ project; and (2) "to harm Bombardier in the form of costly delays to its certification efforts[.]" Complaint ¶¶162, 258. These are implausible inferences derived from speculative facts only. First, as set forth above, Plaintiff fails to plausibly allege that Korwin-Szymanowski or AeroTEC ever obtained any of the confidential documents or information in dispute, or how it would have been relevant or useful to their work on the MRJ project. The

AEROTEC DEFENDANTS' MOTION TO DISMISS - 11

#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

conclusion that AeroTEC or Korwin-Szymanowski had any reason to try to delay Plaintiff's certification schedule is unsupported and unwarranted speculation. A much more plausible explanation for AeroTEC's and Korwin-Szymanowski's open and public recruiting efforts was they simply wanted to hire employees with aircraft engineering and certification skills and experience. Plaintiff does not point to any basis for its inference that the alleged interference was wrongful, and no plausible basis to infer that AeroTEC or Korwin-Szymanowski were motivated by any improper purpose, such as malice or ill will.

"Interference is wrongful if it is done for an improper purpose or by improper means." *Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 338, 364 P.3d 129 (2015) (citing *Pleas v. Seattle*, 112 Wn.2d 794, 774 P.2d 1158, 1163-64 (1989)). However, "[e]xercising in good faith one's legal interests is not improper interference." *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1147 (W.D. Wash. 2011) (quoting *Leingang*, 131 Wn.2d at 157). In fact, "[t]o be improper, interference must be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App. 502, 510, 278 P.3d 197 (2012) (citing *Pleas*, 112 Wn.2d at 803-4). Soliciting qualified employees – especially those not subject to any non-competition or non-solicitation restrictions – is not improper. *See Leingang*, 131 Wn.2d (1997).

**C.     The Breach of Contract Claims and Tortious Interference Claims Also Fail Because They are Preempted by WUTSA.**

Even if Plaintiff had plausibly alleged facts to state a claim for breach of contract or tortious interference, those claims would both fail as a matter of law because they are preempted by Washington's Uniform Trade Secrets Act ("WUTSA"). Plaintiff's breach of contract and tortious interference claims are both based on alleged trade secret misappropriation. RCW Chapter 19.108 "displaces conflicting <u>tort</u>, restitutionary, and other law of this state pertaining to misappropriation of a trade secret" and "does not affect . . . [c]ontractual or other civil liability for relief that is <u>not</u> based upon misappropriation of a trade secret[.]"RCW 19.108.900(1)-(2) (emphasis added).

AEROTEC DEFENDANTS' MOTION TO DISMISS - 12
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

A claim is valid only if it is "'wholly independent' of facts used to prove trade secret misappropriation." *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2018 U.S. Dist. LEXIS 85713 at *4 (W.D. Wash. May 22, 2018); *Thola v. Henschell*, 140 Wn. App. 70, 82, 164 P.3d 524 (2007) ("A plaintiff may not rely on acts that constitute trade secret misappropriation to support other causes of action.") (quotations omitted). "To determine whether the [W]UTSA preempts a common law claim, the court must (1) assess the facts that support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support the plaintiff's [W]UTSA claim; and (3) hold that the [W]UTSA preempts liability on the civil claim unless the common law claim is factually independent from the [W]UTSA claim." *Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1208 (W.D. Wash. 2010), *on reconsideration in part*, *Ultimate Timing, L.L.C. v. Simms,* No. C08-1632-MJP, 2010 U.S. Dist. LEXIS 64957 (W.D. Wash. June 29, 2010) (quotations omitted).

Plaintiff's tortious interference and breach of contract claims are premised on the very same alleged misappropriation of trade secrets that form the basis of its WUTSA claim. The claims therefore fail as a matter of law and should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1199 (W.D. Wash. 2015) (dismissing tortious interference claim because "there are no allegations in T–Mobile's complaint that indicate that it can prove tortious interference without relying on the same facts that support its trade secret claim"); *see also Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 410 (N.D. Ill. 2001) (dismissing plaintiff's tortious interference claim as "clearly preempted" under comparable Illinois trade secret statute where plaintiff alleged that defendant had caused plaintiff's former employees to disclose and use plaintiff's confidential information and trade secrets).

**D.   Trade Secret Misappropriation Claims Under the DTSA and WUTSA Fail.**

Finally, Plaintiff's claims that any of the AeroTEC Defendants "misappropriated" any trade secrets also fail as a matter of law. Under both the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 *et seq.*) and the WUTSA, "misappropriation" is defined as:

AEROTEC DEFENDANTS' MOTION TO DISMISS - 13
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

(A) *acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) *disclosure* or *use* of a trade secret of another without express or implied consent by a person who—

  (i) used improper means to acquire knowledge of the trade secret; [or]

  (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

    (I) derived from or through a person who had used improper means to acquire the trade secret;

    (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

    (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.][2]

18 U.S.C. § 1839(5) (emphasis added); RCW 19.108.010(2). The term "improper means . . . includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means [but] does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6); RCW 19.108.010(1).

Thus, DTSA and WUTSA define misappropriation in two ways. First, under the "acquisition prong", misappropriation is defined as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" 18 U.S.C. § 1839(5)(A); RCW 19.108.010(2)(a). Under the "use or disclosure" prong of the statutes, an alternative definition of "misappropriation" is: "disclosure or use of a trade secret of another" by someone who themselves used "improper means" to acquire it, or who had knowledge that it was derived from or through a person who either used improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain secrecy or limit its use, or who owed a

---

[2] "Misappropriation" also includes the disclosure or use of another's trade secret by a person who, before a material change in his position, knew or had reason to know that (i) the trade secret was a trade secret, and that (ii) knowledge of the trade secret had been acquired by accident or mistake. *See* 18 U.S.C. §1839(5)(B)(iii); RCW §19.108.010(2)(b)(iii). Plaintiff does not allege this type of misappropriation.

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

duty to the person seeking relief to maintain the secrecy of the trade secret. 18 U.S.C. § 1839(5)(B); RCW 19.108.010(2)(b)(i)-(ii). Plaintiff has failed to identify facts to plausibly allege trade secret misappropriation by any of the AeroTEC Defendants.

### 1.   Basson and Dornéval Never Improperly Acquired the Documents.

Basson and Dornéval are alleged to have acquired documents they emailed or attempted to email *to themselves while still employed by Plaintiff*. Plaintiff does not allege that they were not entitled to possession of the documents, that emailing to employee's personal accounts was prohibited, or that Basson or Dornéval had any reason to suspect their personal email accounts were not secure. Plaintiff fails to sufficiently allege facts to support a reasonable inference that Basson or Dornéval acquired the documents at issue by any "improper means." An employee cannot "acquire" a trade secret by improper means if they already have possession of it as an employee. *See JustMed Inc. v. Byce*, 600 F.3d 1118, 1129 (9th Cir. 2010). However, they can nevertheless acquire it "under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Id.* In such a circumstance, since there can be no liability under the "acquisition prong," the employee could only be said to have "misappropriated" the trade secret if the employee "used or disclosed" it. *Id.*

These documents must have already been in Basson and Dornéval's possession as employees at the time they emailed them. Thus, they could not have "misappropriated" them under the "acquisition prong" of the statute. Aside from Bombardier's conclusory and formulaic allegations that Basson and Dornéval's emails to themselves constitute the "improper means" giving rise to liability under the acquisition prong of the trade secret statutes, they allege no facts regarding the acquisition of these emails by either Basson or Dornéval plausibly indicating that improper means were used. Plaintiff's misappropriation claims relying on "acquisition" fail.

As set forth above, the claim that Dornéval acquired the documents attached to her February 10, 2007, emails additionally fail because Plaintiff fails to plausibly allege that Dornéval acquired the documents attached to those emails, which admittedly failed to go through. Because the emails failed, they did not result in the acquisition of the attachments.

AEROTEC DEFENDANTS' MOTION TO DISMISS - 15
#1213746 v1 / 45898-028

**2.      The DTSA Claim Against Basson Fails Because the DTSA is not Retroactive**

The DTSA claim against Basson also fails because it was enacted on May 11, 2016, after Basson allegedly misappropriated the documents he emailed himself. The Congressional Act creating the DTSA states in its effective date that "the amendments made by this section shall apply with respect to any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of this Act." Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e).

**3.      There is No Plausible Factual Basis for the Claim That Basson and Dornéval Used or Disclosed Trade Secrets.**

Plaintiff's claims against Basson and Dornéval under the "use or disclosure" prong also fail. Plaintiff repeatedly states that on "information and belief" the defendants disclosed trade secret information to unauthorized and undisclosed third parties. However, the facts it uses to support these assertions rely on speculative inferences to connect them to the causes of action, failing to meet the minimum pleading burden under *Twombly*. Plaintiff makes no specific factual allegations against any of the employee defendants, which if assumed true, would demonstrate disclosure. Rather, Plaintiff merely asserts that Defendants acted in a manner consistent with liability.

**4.      There is no Plausible Factual Basis for the Claim That AeroTEC and Korwin-Szymanowski Misappropriated Trade Secrets.**

Plaintiff's misappropriation claims against AeroTEC and Korwin-Szymanowski are similarly based on speculation and implausible inferences. Plaintiff asserts no specific facts to support these claims, relying exclusively on speculation and implausible inferences from the timing of the MRJ redesigns and certification scheduling announcements. Plaintiff fails to allege sufficient facts, which if true, would demonstrate that the trade secrets allegedly acquired by former Bombardier employees were either "acquired" by, "used" by, or "disclosed" to AeroTEC, Korwin-Szymanowski, or any other AeroTEC employee. The Complaint does not contain any

AEROTEC DEFENDANTS' MOTION TO DISMISS - 16
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

reference to disclosure by AeroTEC or Korwin-Szymanowski, but claims only in a conclusory manner that they "used" or "acquired" them. Complaint ¶120, ¶131. However, Plaintiff fails to allege any plausible factual claim that would demonstrate such use or acquisition.

### 5.   Knowledge of Misappropriation may not be Imputed to AeroTEC or Korwin-Szymanowki.

Even if it were conclusively shown that an employee had misappropriated trade secrets from his or her former employer, this would be insufficient to impute and wrongdoing to AeroTEC or Korwin-Szymanowski. The UTSA requires that a person or entity accused of misappropriation both possess a trade secret and either know or have reason to know the trade secret was acquired by improper means. *See* 18 U.S.C. § 1839(5)(A),(B); RCW 19.108.010(2)(a),(b). There is no such factual allegation, aside from a conclusory recitation of the elements, that either AeroTEC or Korwin-Szymanowski ever possessed any trade secret that they knew or had reason to know anyone had misappropriated by improper means. Complaint ¶234, ¶238. Even if it were conclusively shown that an employee misappropriated trade secrets from his or her former employer, this would not be sufficient to impute any wrongdoing to the current employer. *See Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982 (D. Ariz. 2015). In *Mellberg*, the plaintiff alleged that a competitor was liable for trade secret misappropriation because it hired two former employees that took the plaintiff's trade secrets and used them at their new job. The court dismissed the claim because "no facts show[ed] that [competing company] had any knowledge whatsoever regarding the information purportedly used" by those former employees, even though the competing company's requisite knowledge was "conceivable." *Id.*

With regard to AeroTEC, proof that an employee possessed or acquired trade secrets would not create an inference of liability as to the corporate entity. *See Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976). "It is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal." *Id.*; *accord, Carr v. AutoNation Inc.*, No. 2:17-cv-01539, 2018 U.S. Dist. LEXIS 1869, at *6 (E.D. Cal. Jan. 4, 2018). It is a matter of common-sense that such knowledge could not be imputed to Korwin-Szymanowski, a fellow

AEROTEC DEFENDANTS' MOTION TO DISMISS - 17
#1213746 v1 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

employee, absent some factual assertion indicating that such information was shared with him. There is no such fact alleged.

### 6. There are no Facts Alleged Sufficient to Plausibly Demonstrate Misappropriation by AeroTEC or Korwin-Szymanowksi.

Plaintiff casts AeroTEC and Korwin-Szymanowski's "willful, targeted" recruitment efforts, and AeroTEC's subsequent business successes as somehow evidencing the disclosure of trade secrets. Complaint ¶132. However, Plaintiff fails to point to any facts sufficient to raise anything more than a mere possibility of liability. That is not enough. *See Twombly*, 550 U.S. at 557 (explaining that the mere possibility of misconduct does not state a plausible claim); *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2017 U.S. Dist. LEXIS 212095, at *8 (W.D. Wash. Dec. 27, 2017) (holding that even allegations "indicat[ing] motive, opportunity, and possibility of improper disclosure or transfer of protected [trade secrets]" were insufficient to state a claim for misappropriation). Indeed, the facts indicated by the Plaintiff as supportive of use or disclosure are consistent with good business practices, i.e. competing to recruit the best in the field and subsequently enjoying success. Plaintiff states that the evidence of AeroTEC's success is just an example "and by no means limiting." *Id.* However, to survive a motion to dismiss Plaintiff must come forward with sufficient facts to state a plausible claim, not merely state that the information exists.

In the end, the only facts supporting the claim that AeroTEC or any of its employees ever acquired or actually used the documents Basson, Dornéval, Delarche or Ayre are accused of stealing are the allegations that after a number of MRJ certification scheduling adjustments, AeroTEC and the other corporate defendants recruited and hired a "critical mass" of Bombardier employees, and shortly thereafter MITAC announced design changes to the MRJ's avionics bay, which prompted MITAC to estimate certification of the MRJ in 2019. Plaintiff relies on this timeline to argue that the AeroTEC Defendants used a handful of documents, which were key to the extremely complex issue of aircraft engineering, testing and certification. There is no allegation that identified trade secret documents had anything to do with the components, design or redesign

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    of the MRJ. This is precisely the kind of speculation based on implausible inference that Rule

2    12(b)(6) is designed to weed out.

3                                    **III.   CONCLUSION**

4            The entire Complaint is implausible on its face. Given that this entire litigation was clearly

5    brought to stifle competition by MITAC, Plaintiff's claims against AeroTEC and the employees

6    caught up in the middle should be scrutinized carefully. Plaintiff's formulaic recitation of its

7    claims' elements are not supported by the few actual facts alleged or plausible inferences drawn

8    therefrom. This Court should therefore dismiss all claims against the AeroTEC Defendants.

9            Dated this 20th day of December, 2018.

10                                   **KARR TUTTLE CAMPBELL**
                                     *Attorneys for Defendants AeroTEC, Basson,*
11                                   *Dornéval and Korwin-Szymanowski*

12
                                     */s/ Richard J. Omata*
13                                   */s/ Mark A. Bailey*
                                     Richard J. Omata, WSBA #7032
14                                   Mark A. Bailey, WSBA# 26337
                                     701 Fifth Avenue, Suite 3300
15                                   Seattle, WA 98104
                                     Phone: 206-223-1313
16                                   Fax: 206-682-7100
                                     Email: romata@karrtuttle.com
17                                            mbailey@karrtuttle.com

18

19

20

21

22

23

24

25

26

27

AEROTEC DEFENDANTS' MOTION TO DISMISS - 19

#1213746 v1 / 45898-028

## DECLARATION OF COUNSEL

I, Mark A. Bailey, declare as follows:

I am an attorney with Karr Tuttle Campbell, counsel of record for the AeroTEC Defendants identified in the above motion. I make this declaration based on personal knowledge and am otherwise competent to testify to the matters stated herein.

Counsel for the parties met and conferred in person on December 18, 2018, to discuss the AeroTEC Defendants' motion to dismiss and the potential for resolution of any of the issues. We thoroughly discussed the substance of this motion in an attempt to avoid the need to file this motion to dismiss in good faith.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and accurate.

Executed this 20th day of December, 2018, at Seattle, Washington.

Mark A. Bailey

AEROTEC DEFENDANTS' MOTION TO DISMISS - 20
#1213746 v1 / 45898-028

CERTIFICATE OF SERVICE

     I, Sherelyn Anderson, affirm and state that I am employed by Karr Tuttle Campbell in King County, in the State of Washington. I am over the age of 18 and not a party to the within action. My business address is: 701 Fifth Avenue, Suite 3300, Seattle, Washington 98104. On this day, I electronically filed the foregoing AeroTEC Defendants' Motion to Dismiss with the Clerk of the Court and caused it to be served upon the below counsel of record using the CM/ECF system.

| | |
|---|---|
| Brian F. McMahon, WSBA #45739 | Jerry A. Riedinger, WSBA #25828 |
| Erin L. Calkins, WSBA #44127 | Mack H. Shultz, Jr., WSBA #27190 |
| John D. Denkenberger, WSBA #25907 | James Sanders, WSBA #24565 |
| Christensen O'Connor Johnson & Kindness | Mary Z. Gaston, WSBA #27258 |
| 1201 Third Avenue, Suite 3600 | Shylah R. Alfonso, WSBA #33138 |
| Seattle, WA 98101-3029 | Perkins Coie LLP |
| Phone: 206-682-8100 | 1201 3rd Avenue, Suite 4900 |
| Fax: 206-224-0779 | Seattle, WA 98101-3099 |
| Email: brian.mcmahon@cojk.com | Phone: 206-359-8000 |
|     lindsay.calkins@cojk.com | Fax: 206-359-9000 |
|     denkenj@cojk.com | Email: jriedinger@perkinscoie.com |
| *Attorneys for Plaintiff* |     mshultz@perkinscoie.com |
| |     jsanders@perkinscoie.com |
| |     mgaston@perkinscoie.com |
| |     salfonso@perkinscoie.com |
| | *Attorneys for Mitsubishi Aircraft Corporation America, Inc.* |

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, to the best of my knowledge.

     Dated this 20th day of December, 2018, at Seattle, Washington.

                        */s/ Sherelyn Anderson*
                        Sherelyn Anderson
                        Legal Assistant