1                                                The Honorable Richard A. Jones

2

3

4

5

6

7

8

9                         UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

BOMBARDIER INC.,               )
11                               )   NO. 2:18-cv-1543-RAJ
           Plaintiff,       )
12                               )   AEROTEC DEFENDANTS'
                              )   OPPOSITION TO BOMBARDIER
13         v.                   )   INC.'S MOTION FOR
                              )   PRELIMINARY INJUNCTION
MITSUBISHI AIRCRAFT CORPORATION, )
14 MITSUBISHI AIRCRAFT CORPORATION )
AMERICA, INC.; AEROSPACE TESTING )
15 ENGINEERING & CERTIFICATION, INC.; )   Re-noted on Motion Calendar:
MICHEL KORWIN-SZYMANOWSKI; )   Friday, January 4, 2019
16 LAURUS BASSON; MARC-ANTOINE )
DELARCHE; CINDY DORNÉVAL; KEITH )
17 AYRE; and JOHN AND/OR JANE DOES 1-88,)   ORAL ARGUMENT REQUESTED
                              )
18            Defendants.     )
                              )
19 _____)

20

21

22

23

24

25

26

27

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ)
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

## **TABLE OF CONTENTS**

2

I. INTRODUCTION .................................................................................................... 1

II. FACTS .................................................................................................................... 2

   A.  Background: Bombardier's Anti-Competitive Efforts to Stop AeroTEC From
       Hiring Its Employees. ...................................................................................... 2

   B.  Litigation Claims Against the AeroTEC Defendants. ...................................... 4

      1.  Laurus Basson ........................................................................................ 4

      2.  Cindy Dornéval ...................................................................................... 5

      3.  AeroTEC ................................................................................................. 7

III. AUTHORITY AND ARGUMENT ........................................................................ 8

   A.  Plaintiff Is Not Likely to Succeed on the Merits of its Breach of Contract
       Claims Against Basson or Dornéval. ............................................................... 8

      1.  Plaintiff Has Presented No Evidence of a Valid Contract. .................... 8

      2.  Plaintiff Has Not Presented Sufficient Evidence to Show a Breach of the
          Code of Ethics Provisions. ..................................................................... 9

      3.  The Breach of Contract Claims are Preempted by WUTSA. ................ 11

   B.  Plaintiff Is Not Likely to Succeed on the Merits of Its Trade Secret
       Misappropriation Claims Against the AeroTEC Defendants. .......................... 12

      1.  Plaintiff Has Failed to Identify Any "Trade Secrets." ........................... 12

      2.  Plaintiff Has Failed to Identify any Evidence of "Misappropriation." ....... 14

          a.  Plaintiff Is Not Likely to Establish That Basson, Dornéval or Delarche
             Acquired the Documents by Improper Means. ....................................... 15

          b.  Plaintiff Is Not Likely to Establish That AeroTEC Acquired the
             Documents. ............................................................................................. 16

          c.  Plaintiff Is Not Likely to Show the Documents Were Used or Disclosed by
             Basson or Dornéval. ............................................................................... 17

          d.  Plaintiff is Unlikely to Show That AeroTEC Ever Used the Documents. ........... 18

          e.  Plaintiff Cannot Satisfy Its Evidentiary Burden as to Any AeroTEC
             Defendant. .............................................................................................. 19

   C.  Plaintiff is Not Likely to Suffer Irreparable Harm. ........................................ 19

   D.  The Balance of Equities Favors the Defendants. ........................................... 20

   E.  An Injunction Is Not in the Public Interest. ................................................... 22

   F.  Bond ............................................................................................................... 22

IV. CONCLUSION ...................................................................................................... 23

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - i
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Am. Trucking Ass'ns, Inc., v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ...................... 8

*Andrews v. Countrywide Bank, NA*, 95 F. Supp. 3d 1298 (W.D. Wash. 2015)............................ 8

4

*Bowser, Inc. v. Filters, Inc.*, 398 F.2d 7 (9th Cir. 1968)................................................................ 12

5

*Carr v. AutoNation Inc.*, No. 2:17-cv-01539, 2018 U.S. Dist. LEXIS 1869 (E.D. Cal.
     Jan. 4, 2018)......................................................................................................................... 18

6

*Chemstation of Seattle, LLC v. Donahoe*, No. 77030-6-I, 2018 Wn. App. LEXIS 1749
     (Ct. App. July 26, 2018) ...................................................................................................... 21

7

*Ciena Communs., Inc. v. Nachazel*, No. 09-cv-02845-MSK-MJW, 2010 U.S. Dist. LEXIS
     90460 (D. Colo. Aug. 30, 2010) .......................................................................................... 19

8

*Citizens of Ebey's Reserve for Healthy, Safe & Peaceful Env't v. U.S. Dept. of the Navy*,
     122 F. Supp.3d 1068 (W.D. Wash. 2015)............................................................................ 20

9

*Dex Media W., Inc. v. City of Seattle*, 790 F. Supp. 2d 1276 (W.D. Wash. 2011) ...................... 20

10

*Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011) ........................................................................... 22

11

*Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir. 1976)...................................... 18

12

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388\ (2006) ........................................................... 20

13

*Ed Nowogroski Ins., Inc. v. Rucker,* 137 Wn.2d 427, 971 P.2d 936 (1999) ............................... 19

*Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2018 U.S. Dist. LEXIS
     85713 (W.D. Wash. May 22, 2018)...................................................................................... 11

14

*Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009).................................................................. 22

15

*Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953 (D. Ariz. 2015) ............................ 18, 19

16

*JustMed Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010) ............................................................ 16, 17

17

*Kotok v. Homecomings Fin., LLC*, C09-662RSM, 2009 U.S. Dist. LEXIS 71068 (W.D.
     Wash. June 12, 2009)........................................................................................................... 20

18

*Kucera v. DOT*, 140 Wn.2d 200, 995 P.2d 63 (2000) ................................................................ 20

19

*L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011) .......................................... 21

20

*Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004) ........................................ 9

*Lamb-Weston, Inc., v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir. 1991) .......................... 18, 21

21

*Lehrer v. State Dept. of Social and Health Servs.*, 101 Wn. App. 509, 5 P.3d 722 (2000)........... 9

22

*Lydo Enters. v. City of Law Vegas*, 745 F.2d 1211 (9th Cir. 1984).............................................. 20

23

*Mattel, Inc. v. MGM Entm't, Inc.*, 782 F. Supp.2d 911 (C.D. Cal. 2010) ................................... 9

24

*Mills v. Bank of Am., N.A.*, No. 3:14-cv-05238-RBL, 2014 U.S. Dist. LEXIS 117563\
     (W.D. Wash. Aug. 22, 2014) ................................................................................................ 9

25

*Munaf v. Geren*, 553 U.S. 674 (2008)........................................................................................... 8

26

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 737 F. Supp. 2d 1257 (E.D. Wash. 2010)............ 18

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985)........................ 20

27

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - ii
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

*Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 U.S. Dist. LEXIS 58839 (W.D. Wash., May 3, 2016)................................................................... 23

*Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188 (E.D. Wash. 2003) .............. 18

*St. Clare v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA 2011 U.S. Dist. LEXIS 129152 (D. Ariz. Nov. 7, 2011)................................................................... 12

*Thola v. Henschell*, 140 Wn. App. 70, 164 P.3d 524 (2007) ........................................................ 11

*Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) ...................................... 9

*Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195 (W.D. Wash. 2010) .......................... 12

*United States v. BNS, Inc.,* 858 F.2d 456 (1988) ......................................................................... 21

*Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011.................................................................. 8

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)................................. 8, 20

**Statutes**

18 U.S.C. § 1836................................................................................................................. 12

18 U.S.C. § 1839(5)(A)........................................................................................................ 15

18 U.S.C. § 1839(5)(A),(B) ................................................................................................ 19

18 U.S.C. § 1839(5)(B)........................................................................................................ 15

18 U.S.C. § 1939(3) ............................................................................................................. 12

18 U.S.C. §1839(5)............................................................................................................... 15

18 U.S.C. §1839(5)(A).......................................................................................................... 16

RCW 19.108 .................................................................................................................. 11, 12

RCW 19.108.010(1).............................................................................................................. 15

RCW 19.108.010(2).............................................................................................................. 15

RCW 19.108.010(2)(a) ................................................................................................... 15, 16

RCW 19.108.010(2)(a),(b).................................................................................................... 19

RCW 19.108.010(2)(b)(i)-(ii).............................................................................................. 15

RCW 19.108.010(4).............................................................................................................. 12

RCW 19.108.900(1)-(2)........................................................................................................ 11

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................................................ 22

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - iii
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1

2                                   **I. INTRODUCTION**

3          Defendants Aerospace Testing Engineering & Certification, Inc. ("AeroTEC"), and its

4  employees Laurus Basson and Cindy Dornéval (collectively, the "AeroTEC Defendants")

5  respectfully file this opposition to plaintiff Bombardier Inc.'s Motion for Preliminary Injunction,

6  filed October 19, 2018, at Dkt. No. 4 (the "PI Motion"). Plaintiff claims an injunction is needed to

7  prevent the AeroTEC Defendants from using a handful of Bombardier documents because it will

8  give them an unfair competitive advantage in the immensely complex process of testing,

9  engineering and certifying a new aircraft called the Mitsubishi Regional Jet ("MRJ") for

10  Mitsubishi Aircraft Corporation ("MITAC") and Mitsubishi Aircraft Corporation America

11  ("MITAC-A"). Specifically, the eleven documents at issue are those attached as Exhibits A

12  through J to the Declaration of Daniel Burns and Exhibit A to the Declaration of David Tidd, both

13  filed on October 19, 2018 (the "Documents").

14          For years, Plaintiff threatened to sue AeroTEC for "poaching" its employees, and over a

15  year ago it specifically identified some of the Documents, claiming Basson, Dornéval and Marc-

16  Antoine Delarche ("Delarche") had stolen them by emailing them to themselves while employed

17  by Bombardier. Now, Plaintiff suddenly claims that it faces immediate and irreparable harm.

18  Worse, making no effort to segregate the publicly available information that makes up nearly all

19  of the Documents, Plaintiff seeks a broad and undifferentiated order that would enjoin the

20  AeroTEC Defendants and others from using, accessing, imitating, copying, disclosing or making

21  available not only the Documents themselves, but any and all information (whether confidential

22  or not) contained in the Documents or derived from them.

23          Plaintiff attempts to portray the handful of Documents as centrally critical to the

24  certification of the MRJ by mis-casting innocent events in a sinister light. For example, several of

25  the individual that they did this to aid the MRJ certification process, but the facts are otherwise—

26  the documents were emailed for innocent reasons, most notably to perform work for Bombardier,

27  and none are even useful for working with the MRJ. Likewise, Plaintiff makes much of several

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 1
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

delays in the MRJ certification process, but delays are typical, especially when a manufacture is going through the process for the first time. When one focuses on the evidence rather than Plaintiff's tenuous conspiracy theory, it is clear Plaintiff cannot establish any likelihood of succeeding on the merits of its breach of contract or trade secret misappropriation claims.[1]

As the declarations supporting this opposition explain, neither Basson nor Dornéval have ever used or disclosed the Documents to AeroTEC or anyone else. Nor would that cause any harm, since the information in the Documents is either publicly available and well-known, trivial, or so specific to Plaintiff's unique aircraft that they are simply of no relevance, value or use to AeroTEC. While the AeroTEC Defendants have no reason to use or disclose the Documents, a preliminary injunction is not warranted both because there is no imminent threat of harm and because Plaintiff is not likely to succeed on the merits of its speculative, improbable and unsupported claims. Plaintiff has not shown a likelihood of irreparable harm, nor any equities or public interest to warrant a preliminary injunction This Court should deny Plaintiff's PI Motion.

## II. FACTS

### A. Background: Bombardier's Anti-Competitive Efforts to Stop AeroTEC From Hiring Its Employees.

For years, Bombardier and Brazilian-based Embraer have enjoyed a significant market share in the commercial regional jet industry. (Dkt. 1-10 at 52; *id*. at 93; *id*. at 163.)  In or around 2008, defendant MITAC began working in Japan on the development of its MRJ. If MITAC is successful in certifying the MRJ, there could be a significant new competitor in the regional jet industry, threatening Bombardier's market dominance.

In 2014, MITAC formed its affiliate MITAC-A and retained Seattle-based AeroTEC to assist with the development, testing and regulatory certification of the MRJ. In 2015, AeroTEC hired defendant Michel Korwin-Szymanowski, who had been the Director of Bombardier's CSeries flight test team. Korwin-Szymanowski was initially tasked with hiring people for

---

[1] Plaintiff's Complaint also asserts claims for tortious interference against AeroTEC and Michel Korwin-Szymanowski, but it does not argue a likelihood of succeeding on the merits of those claims in the PI Motion.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 2
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  AeroTEC's team, and sent an email inviting a number of his industry contacts, including (but by

2  no means limited to) Bombardier employees, to meet with him and discuss opportunities at

3  AeroTEC. *See* the Declaration of Michel Korwin-Szymanowski, filed herewith.

4      Even though Plaintiff was going through massive layoffs, it sought to stop the competition

5  for employees. On October 22, 2015, Bombardier sent letters to Korwin-Szymanowski and

6  AeroTEC, complaining of their recruitment and "piracy of employees" and demanding they cease

7  and desist their hiring activities. (Complaint, Exh. B)  Specifically, Bombardier claimed that

8  Korwin-Szymanowski's involvement was improper because he possessed "confidential

9  information" about Bombardier employees. *Id*. (Plaintiff wisely omitted this specious claim from

10 its Complaint). AeroTEC did not, and does not, agree that Korwin-Szymanowski used or posseed

11 any such confidential information, but in an attempt to work with Bombardier, AeroTEC agreed

12 that he would no longer be involved with the recruiting activity. *See* the Declaration of Lee Human,

13 filed herewith, at ¶ 5. AeroTEC canceled the hiring events Kowrin-Szymanowski had scheduled,

14 but AeroTEC continued to hire employees, including some former Bombardier personnel.

15     On April 26, 2016, Bombardier's lawyers at Jackson Lewis sent another letter to AeroTEC.

16 (Complaint, Exh. C.) The letter again accused AeroTEC of targeting Bombardier employees

17 through the use of "confidential" employee information, and threatened to pursue monetary

18 damages. Bombardier attached proposed agreements for AeroTEC and former Bombardier

19 employees to sign, agreeing they would not solicit Bombardier employees for one year.[2]   No

20 agreement on Bombardier's terms was ever reached.

21     Bombardier then turned its attention directly to MITAC. In November 2017, MITAC

22 informed AeroTEC's counsel that Bombardier had made a presentation to MITAC at a meeting in

23 Tokyo. Bombardier noted examples of the Documents that defendants Basson, Dornéval, and

24 Delarche had allegedly "stolen" by emailing themselves prior to leaving Bombardier. *Id*.

25

26     [2] Such requests amount to invitations to enter into agreements between competitors not to compete for
employees. Such "no-poaching" agreements are *per se* violations of the Sherman Antitrust Act. 15 U.S.C., *et. seq. See*
*United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1037-38 (N.D. Cal. 2013); *United States v. American Airlines, Inc.*,
27 743 F.2d 1114 (5th Cir. 1984).

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 3
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    Bombardier and MITAC had another meeting in May 2018 in New York to further outline the

2    evidence of Documents that these three individuals had sent from their Bombardier email accounts

3    to their personal email addresses. *Id.*

4    **B.    Litigation Claims Against the AeroTEC Defendants.**

5            Almost a year after identifying the Documents, Bombardier commenced this action, and

6    simultaneously filed its PI Motion. Bombardier seeks to enjoin AeroTEC, Basson, Dornéval and

7    other defendants from the "continued use and disclosure" of the Documents and the alleged but

8    undefined trade secret information contained in them. Since filing the PI Motion, Bombardier has

9    narrowed the scope of the relief sought to eleven Documents, though it still broadly seeks to enjoin

10   the use of any and all information contained in or derived from the eleven Documents.[3]

11           Bombardier relies on evidence that Basson and Dornéval emailed the Documents while

12   employed at Bombardier to their personal email accounts. Based exclusively on these emails,

13   Plaintiff speculates that these Documents must have been used or disclosed to others after Basson

14   and Dornéval went to work at AeroTEC. Bombardier relies on circumstantial evidence that after a

15   number of delays over the years, MITAC recently announced with "sudden confidence" that it

16   expects MRJ certification by mid-2019.[4] The evidence presented in the supporting declarations of

17   each AeroTEC Defendant is addressed in turn below.

18           **1.    Laurus Basson**

19           Defendant Laurus Basson is a mechanical systems engineer who worked for Bombardier

20   from 2013 to 2016. *See* the Declaration of Laurus Basson, filed herewith, at ¶¶ 1, 3. emailed two

21   PowerPoint presentations from his Bombardier work email to his personal email account on March

22   4, 2016. *See* Complaint, Exh. J.                        REDACTED

23                                              REDACTED

24   _____

25        [3] The AeroTEC Defendants have objected to the wholesale sealing of those Documents in their entirety, and
     requested that Bombardier be directed to identify the specific trade secrets they allegedly contain. (Dkt. No. 29.) The
     AeroTEC Defendants maintain that large portions of these Documents contain public and non-proprietary information.

26        [4] Bombardier originally also sought to enjoin Basson and Dornéval from "working in any manner to support
     the certification or commercialization effort of the Mitsubishi Regional Jet for the duration of these proceedings," but
27   has since withdrawn that request for relief. (Dkt. 47, at p.8.)

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 4
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1                                 REDACTED

2

REDACTED

3  . On his last day of work, Basson told his replacement and his manager that he would try to

4  complete some unfinished updates to the PowerPoint documents. Basson Decl., ¶ 12. He agreed

5  to do this on his own time out of a sense of loyalty and goodwill even though he would no longer

6  be a Bombardier employee and would not be paid. *Id*. Neither his successor nor his manager

7  expressed any concern about Basson working on the documents at home, but they must have

8  understood that Basson would send the documents to his personal email, since he would no longer

9  have access to his Bombardier email account and because that was a common practice at

10  Bombardier. *Id*. at 8. Despite his good intentions, Basson never completed the work and nobody

11  ever followed up with him. *Id*. at 13.

12        Basson never intended to use the PowerPoint presentations for anything other than

13  completing work for Bombardier, a legitimate business purpose. Basson Decl., ¶ 12. He may have

14  opened the documents once or twice to work on them for Bombardier, but he does not recall for

15  sure. He is certain, however, that he never used the documents for AeroTEC or the MRJ and he

16  never forwarded or disclosed them to anybody. *Id*. at 13. Nor would the information in the

17  Powerpoints have been useful in any way.                    REDACTED

18

19                                 REDACTED

20

21        **2.    Cindy Dornéval**

22        Defendant Cindy Dornéval earned a mechanical engineering degree and started working

23  as a designer for Bombardier in 2007. *See* the Declaration of Cindy Dornéval, filed herewith, at

24  ¶ 2. In 2012, she joined Bombardier's aircraft performance group. *Id.* Dornéval did not have a

25  company-issued laptop, and like Basson, she occasionally emailed documents to her personal

26  email account while employed at Bombardier so she could work from home, which was a common

27  practice at Bombardier. *Id.* at ¶ 4. Plaintiff's claims against Dornéval are predicated on emails she

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 5
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

sent to herself on November 18, 2016, and apparently attempted to send to herself February 10, 2017 (her last day at Bombardier).          REDACTED

. Dornéval emailed them to herself the night before she was to support flight tests for Bombardier, and she used the documents during those flight tests. Dornéval Decl., ¶ 10.

REDACTED

Dornéval never used the information after leaving Bombardier, and she never disclosed it to anyone outside of Bombardier. *Id*. at ¶ 13.

Dornéval does not recall the February 2017 email attempts, but she recognizes the "career and training" folder that was apparently attached. Dornéval Decl., ¶ 11. This is a folder that Dornéval created early in her career to keep copies of documents pertaining to her own career development at Bombardier. *Id*. Sometime back in 2007, after she first started at Bombardier, Dornéval had saved a copy of a          REDACTED

*Id*. A copy is on file under seal as Exhibit [REDA] to the Tidd Declaration, and this is the only document in the February 2017 email attachment that is at issue in Plaintiff's PI Motion. Dornéval saved the document to her career and training folder in 2007 because she thought understanding the equations and calculations would help with her goal of getting into Bombardier's aircraft performance group. *Id*. She had studied the same information at university in a class taught by a Bombardier employee. *Id*.   REDACTED

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 6
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

REDACTED                                                        . It appears

that after the first email attempt failed, this document was removed from the attachment in the

subsequent email attempts on February 10, 2017. Dornéval Decl., ¶ ___; Complaint, Exh. <sup>REDA</sup>. In

any event, Plaintiff concedes that the emails failed and were not delivered to Dornéval's personal

email account. Complaint, ¶ 63.

Dornéval never had any reason to use the documents at issue after leaving Bombardier, and

never used them or disclosed them to anyone else. Dornéval Decl., ¶ 13.

### 3.    AeroTEC

Bombardier has submitted no direct evidence that Basson, Dornéval or Delarche ever used

or disclosed any of the Bombardier Documents or other information to AeroTEC or anyone else.

AeroTEC in fact took affirmative steps to ensure that it would not receive any confidential or

proprietary Bombardier information. Human Decl., ¶ 7. AeroTEC had the former Bombardier

employees it hired sign agreements that expressly provided they would not use or disclose any of

their former employers' trade secrets or confidential or proprietary information to AeroTEC. *See*

Basson Decl., 21; Dornéval Decl., ¶¶ 6-7; Human Decl., ¶ 7.

Marc-Antoine Delarche is a former Bombardier employee who once worked at AeroTEC

but no longer does. He was a target of the PI Motion, but since he lives in Japan and has not been

served, Plaintiff is no longer seeking injunctive relief against him at this time. Plaintiff does,

however, claim that Delarche, Basson and Dornéval all disclosed the Documents to AeroTEC. The

AeroTEC Defendants all deny this allegation. Like the other Documents, the ones Delarche

emailed himself contain mostly publicly known and well-understood information, and other

information is unique to the CSeries, inapplicable and not useful to the MRJ, and in fact owned by

and provided to Bombardier by third-party component suppliers.             REDACTED

.

The AeroTEC Defendants have hired forensic data consultant Fronteo USA, Inc., to

collect, image and search their electronic devices, servers and backups for any evidence that the

Documents have ever been disclosed or used. Fronteo has run filename and keyword searches for

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 7
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    the Documents on AeroTEC's servers and all devices it ever assigned to Basson, Dornéval,

2    Delarche and Korwin-Szymanowski. The searches resulted in no hits. *See* the Declaration of

3    Richard Reade and the Declaration of Richard Perrillo, filed herewith. The forensic evidence

4    AeroTEC has been able to gather to date directly contradicts Bombardier's speculation that

5    Basson, Dornéval or Delarche ever used or disclosed the Documents to anyone at AeroTEC.

### III. AUTHORITY AND ARGUMENT

7        "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553

8    U.S. 674, 689 (2008). To obtain a preliminary injunction, a party "must establish that [it] is likely

9    to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary

10   relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."

11   *Am. Trucking Ass'ns, Inc., v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting

12   *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "In addition, a

13   'preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going

14   to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor,' provided

15   the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public

16   interest." *Andrews v. Countrywide Bank, NA*, 95 F. Supp. 3d 1298, 1300 (W.D. Wash. 2015)

17   (quoting *alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).

18   **A.   Plaintiff Is Not Likely to Succeed on the Merits of its Breach of Contract Claims**
         **Against Basson or Dornéval.**[5]
19

20       **1.   Plaintiff Has Presented No Evidence of a Valid Contract.**

         First, Bombardier has not presented any evidence or allegations to support its conclusory
21
     assertion that the Code of Ethics is a "contract." To prevail on its breach of contract claim, Plaintiff
22
     must necessarily establish the existence of a valid contract imposing a duty, breach of that duty,
23
     and resulting damage. *See e.g.*, *Lehrer v. State Dept. of Social and Health Servs.*, 101 Wn. App.
24
     509, 516, 5 P.3d 722 (2000). An employer's code of ethics, code of conduct, or similar purported
25

26   ───────────────
         [5] Plaintiff does not assert a breach of contract claim against AeroTEC, so this claim cannot be the basis of
27   any injunctive relief against AeroTEC. Nor does Plaintiff rely on its tortious interference claim against AeroTEC to
     justify any injunctive relief in its PI Motion.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 8
#1209041 v2 / 45898-028

1   obligations are not binding unless separate consideration was given in exchange for the employee's

2   promise. *See Mattel, Inc. v. MGM Entm't, Inc.*, 782 F. Supp.2d 911, 992 (C.D. Cal. 2010); *accord*

3   *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004) (a non-compete agreement

4   entered into after employment is not binding unless it was supported by independent consideration,

5   which involves new promises or obligations previously not required of the parties); *Thompson v.*

6   *St. Regis Paper Co.*, 102 Wn.2d 219, 228-29, 685 P.2d 1081 (1984) ("offer, acceptance and

7   consideration are necessary predicates to establishing that policies in an employment manual" are

8   part of an employment contract); *see also Mills v. Bank of Am., N.A.*, No. 3:14-cv-05238-RBL,

9   2014 U.S. Dist. LEXIS 117563, at *11-12 (W.D. Wash. Aug. 22, 2014) (breach of contract claim

10   failed because plaintiff did not provide "any facts which show a contract was formed" including

11   that "there was no consideration").

12        Plaintiff's Code of Ethics is referenced in and attached to the Complaint as Exhibit D.

13   Plaintiff does not allege that any of its former employees received any consideration in exchange

14   for acknowledging the Code of Ethics. Bombardier hired Dornéval in July 2007, but the Code of

15   Ethics has copyright dates of January 2012 (for the English version), and June 2011 (for the French

16   version). (Dkt. #1-13, pp. 29 & 57). Plaintiff hired Basson in 2013, but it offers no facts to support

17   an inference that these or any other versions of the Code of Ethics were part of any defendant's

18   initial employment contracts, whether the terms and conditions were amended over time, or what

19   consideration was given and when. The Code of Ethics expressly provides that it is "subject to

20   change without notice[,]" further undercutting the assertion it is a contract. (Dkt. No. 1-13, page 6

21   or 57). Without any allegations or evidence that the Code of Ethics was supported by independent

22   consideration, Plaintiff is not likely to prevail on its breach of contract claims.

23       **2.**    **Plaintiff Has Not Presented Sufficient Evidence to Show a Breach of the Code**
                   **of Ethics Provisions.**

24

25        Even if it were a contract, nothing in the language of the Code of Ethics prohibits

26   Bombardier employees from emailing documents to their personal email accounts. Plaintiff

27   partially quotes the Code of Ethics but omits key provisions, which are italicized here: "The Code

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 9
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

of Ethics …prohibits 'divulg[ing] confidential information to anyone other than the person or persons for whom it is intended [*unless authorized . . . to do so*] and warns against the misuse of confidential information by 'transmitting documents by electronic devices, such as fax or email [*only when it is reasonable to believe this can be done under secure conditions*]'" PI Motion, p. 12, quoting Code of Ethics, Complaint Exh. D, (Dkt. No. 1-13 at p. 18 of 57).

Basson and Dornéval emailed the Documents to themselves, not to any "unauthorized" persons. Plaintiff does not claim they were not authorized to have the documents. Moreover, they were authorized to email the document to themselves. Bombardier points to nothing prohibiting employees from emailing work documents to their personal emails, and this was a common and well-known practice at Bombardier. Basson and Dornéval sent the emails for the legitimate business purpose of working on the attachments at home for Bombardier's benefit.[6]   Functionally, this is no different than an employee printing a confidential document to take home for work, and surely Bombardier would not contend that this would be a breach of contract. The Code of Ethics only prohibits "unnecessary copying" of documents. Complaint Exh. D, (Dkt. No. 1-13 at p. 18 of 57). There is no evidence to dispute Basson and Dornéval's testimony that their personal email accounts were password-protected and secure.

As for Dornéval's February 10, 2017, emails, Plaintiff is not likely to establish a breach of contract because, as Plaintiff acknowledges, the emails failed and did not go through. Because Dornéval did not receive the documents on her personal email, Plaintiff cannot establish any damages, an essential element of a breach of contract claim.

Plaintiff also has no evidence to support the claim that anyone used or disclosed any of the Documents after Basson, Delarche, or Dornéval left Bombardier. In the face of Basson's and Dorneval's sworn statements that they never transmitted the documents to anyone at AeroTEC or used the information contained in them for the work they performed at AeroTEC, the mere speculative possibility that they misused the documents after leaving Bombardier is not sufficient

---

[6] The only exception is the email Dornéval sent to herself on her last day, but Plaintiff acknowledges the emails failed so their breach of contract claim fails for lack of any actual acquisition of information or damages.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 10
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    to warrant the entry of a preliminary injunction. The forensic evidence the AeroTEC Defendants

2    have been able to gather to date confirms the employees' testimony that they never used any of

3    the Documents or disclosed them to anybody at AeroTEC.

4          **3.**     **The Breach of Contract Claims are Preempted by WUTSA.**

5          Plaintiff is also unlikely to prevail on its breach of contract claims because, as a matter of

6    law, they are preempted by the Washington's Uniform Trade Secrets Act ("WUTSA"), RCW

7    19.108. The WUTSA "displaces conflicting tort, restitutionary, and other law of this state

8    pertaining to misappropriation of a trade secret" and "does not affect . . . [c]ontractual or other

9    civil liability for relief that is <u>not</u> based upon misappropriation of a trade secret[.]" RCW

10   19.108.900(1)-(2) (emphasis added). Washington's law of contracts is an "other law of this state"

11   and by excluding contractual liability only for relief that is not based on trade secret

12   misappropriation, the statue clearly does affect Plaintiff's breach of contract claims because they

13   *are* based on trade secret misappropriation.

14         To avoid WUTSA preemption, a claim must be "'wholly independent' of facts used to

15   prove trade secret misappropriation." *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-

16   JCC, 2018 U.S. Dist. LEXIS 85713 at *4 (W.D. Wash. May 22, 2018); *Thola v. Henschell*, 140

17   Wn. App. 70, 82, 164 P.3d 524 (2007) ("A plaintiff may not rely on acts that constitute trade secret

18   misappropriation to support other causes of action"). "To determine whether the [W]UTSA

19   preempts a common law claim, the court must (1) assess the facts that support the plaintiff's civil

20   claim; (2) ask whether those facts are the same as those that support the plaintiff's [W]UTSA

21   claim; and (3) hold that the [W]UTSA preempts liability on the civil claim unless the common law

22   claim is factually independent from the [W]UTSA claim." *Ultimate Timing, L.L.C. v. Simms*, 715

23   F. Supp. 2d 1195, 1208 (W.D. Wash. 2010). Plaintiff's breach of contract claims are premised on

24   the very same alleged misappropriation of trade secrets that form the basis of its WUTSA claim.

25   For all these reasons, Bombardier has failed to establish the likelihood of success on its breach of

26   contract claims.

27

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 11
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

**B.    Plaintiff Is Not Likely to Succeed on the Merits of Its Trade Secret Misappropriation Claims Against the AeroTEC Defendants.**

Plaintiff has also not established a likelihood of succeeding on the merits of its claims against any of the AeroTEC Defendants for trade secret misappropriation under either the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836 *et seq.*), and the WUTSA (RCW 19.108).[7]

**1.    Plaintiff Has Failed to Identify Any "Trade Secrets."**

Plaintiff has failed to establish that the Documents, or any specific information therein, are "trade secrets" at all. A trade secret is a "formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Bowser, Inc. v. Filters, Inc.*, 398 F.2d 7, 9 (9th Cir. 1968). The DTSA and WUTSA define a trade secret similarly, specifying that it:

> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4); *see also* 18 U.S.C. § 1939(3). As a matter of law, "[m]atters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret." *Bowser*, 398 F.2d at 9. Furthermore, confidential business information is not presumed to be a trade secret simply by virtue of being confidential. *See, e.g.*, *St. Clare v. Nellcor Puritan Bennett LLC,* No. CV-10-1275-PHX-LOA 2011 U.S. Dist. LEXIS 129152, at *5-6 (D. Ariz. Nov. 7, 2011).

Even a cursory review of the Documents reveals that most of the information they contain is publicly available information and/or generic content with no informational value.

REDACTED

---

[7] Plaintiff fails to articulate any difference between the DTSA and WUTSA standards. The DTSA claim against Basson fails for the reasons set forth herein, and also because it was enacted on May 11, 2016, after Basson allegedly misappropriated the documents he emailed himself. The Congressional Act creating the DTSA states in its effective date that "the amendments made by this section shall apply with respect to any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of this Act." Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e).

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 12
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    REDACTED                    Any specific information it does

2    contain is both publicly available and would be of no value to anyone other than CSeries flight test

3    personnel.                    REDACTED

4

5    The                    REDACTED                    is also replete with publicly available

6    equations that are well-known in the industry to aircraft performance engineers. As Dornéval

7    explains (even though she did not "acquire" this document in February 2017 because the email

8    failed), AeroTEC would have obtained nothing of value if the document had been disclosed. The

9    information contained therein is generic, applicable to all aircraft, and taught to students in flight

10   performance classes. The equations are known by Dornéval and other flight test engineers from

11   general training and experience.                    REDACTED

12

13   Basson's PowerPoint presentations discussed a skew detection system used on a number

14   of aircraft (but not the MRJ). Basson explains the system is "simple" and there was "nothing

15   exceptional or technologically advanced" about it. Basson Decl., 11. A description of the system

16   is publicly available on-line. *Id.* Further, the information contained in the documents is useless

17   with regard to the development of the MRJ.                    REDACTED

18   In summary, the information in the Documents is either generic, well-known and publicly

19   available, or is specific to Bombardier's aircraft and is of no value, use, or relevance to the MRJ

20   or other aircraft. *See* Basson Decl., ¶25; Dornéval Decl., ¶ 13;                    REDACTED

21   REDACTED. The information may have been useful to the Plaintiff, but it does not derive its value from

22   being kept secret, even if Plaintiff could establish it has taken reasonable efforts to maintain its

23   secrecy (which it has not).

24   In the event the Court concludes the Documents do contain trade secrets, the request

25   Plaintiff seeks is plainly overbroad in scope. Plaintiff asks that defendants be enjoined from "using,

26        [8]                    REDACTED

27

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 13
#1209041 v2 / 45898-028

accessing, copying, disclosing, or making available" *any information* contained in the Documents

and any information "derived from" that information. The requested relief fails to distinguish

between information in the Documents that is "general knowledge" and of no value, versus

information alleged to constitute trade secrets. Any injunction should be limited only to specific

information in the Documents likely to constitute trade secrets. In the absence of such

identification, the Court lacks sufficient information to conduct the narrow tailoring required.

### 2.    Plaintiff Has Failed to Identify any Evidence of "Misappropriation."

Even assuming the Documents at issue contain trade secrets, Bombardier's claims of

misappropriation fail. Under both the DTSA and the WUTSA, "misappropriation" is defined as:

> (A) *acquisition* of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) *disclosure* or *use* of a trade secret of another without express or implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade secret; [or]
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>>
>>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>>>
>>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>>>
>>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.][9]

18 U.S.C. §1839(5) (emphasis added); RCW 19.108.010(2). The term "improper means . . .

includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain

secrecy, or espionage through electronic or other means [but] does not include reverse engineering,

---

[9] "Misappropriation" also includes the disclosure or use of another's trade secret by a person who, before a material change in his position, knew or had reason to know that (i) the trade secret was a trade secret, and that (ii) knowledge of the trade secret had been acquired by accident or mistake. *See* 18 U.S.C. §1839(5)(B)(iii); RCW §19.108.010(2)(b)(iii). Plaintiff does not allege this type of misappropriation.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 14
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   independent derivation, or any other lawful means of acquisition." 18 U.S.C. §1839(6); RCW

2   19.108.010(1).

3          Thus, DTSA and WUTSA define misappropriation in two ways. First, under the

4   "acquisition" prong, misappropriation is defined as "acquisition of a trade secret of another by a

5   person who knows or has reason to know that the trade secret was acquired by improper means[.]"

6   18 U.S.C. § 1839(5)(A); RCW 19.108.010(2)(a). Under the "use or disclosure" prong, an

7   alternative definition of "misappropriation" is: "disclosure or use of a trade secret of another" by

8   someone who themselves used "improper means" to acquire it, or who had knowledge it was

9   derived from or through a person who either used improper means to acquire it, acquired it under

10  circumstances giving rise to a duty to maintain secrecy or limit its use, or who owed a duty to the

11  person seeking relief to maintain the secrecy of the trade secret. 18 U.S.C. § 1839(5)(B); RCW

12  19.108.010(2)(b)(i)-(ii).

13         Basson and Dornéval's act of emailing documents they were authorized to use to

14  themselves to work from home for an employer does not amount to "acquisition" by "improper

15  means." Documents attached to the Dornéval emails that fail to go through cannot even be said to

16  be "acquired" at all. In any event, Plaintiff presents no evidence that AeroTEC acquired any of the

17  Documents from any of the individual defendants, and there is no evidence to support the

18  speculation that any of the Documents were "used" by or "disclosed" to anyone.

a.   **Plaintiff Is Not Likely to Establish That Basson, Dornéval or Delarche Acquired the Documents by Improper Means.**

21         Plaintiff cannot show that Basson, Dornéval or Delarche acquired the Documents with

22  knowledge or reason to know that they were acquired by "improper means." 18 U.S.C.

23  §1839(5)(A); RCW 19.108.010(2)(a). Plaintiff acknowledges they sent the emails *while still*

24  *employed* at Bombardier. It does not argue or present any evidence that they were not entitled to

25  possess the documents, that emailing to employees' personal accounts was prohibited, or that they

26  had any reason to suspect their personal email accounts were not secure. An employee cannot

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 15
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1  "acquire" a trade secret by improper means if they already have possession of it as an employee.

2  *See JustMed, Inc. v. Byce,* 600 F.3d 1118, 1129 (9th Cir. 2010).

3  Basson emailed Documents to himself on his last day of work specifically to finish some

4  updates for his successor and his supervisor. Dornéval emailed Documents in November 2016 to

5  review updated procedures and prepare for her flight tests the following day. There was no

6  violation of the Code of Ethics or any other identified policy or procedure. In fact, the practice of

7  emailing documents to personal email accounts and/or working on documents on personal devices

8  was a wide-spread and well-known practice at Bombardier. Plaintiff is not likely to prevail on the

9  claim that the employee's emails amounted to acquisition of any of the Documents by any

10  "improper means." Moreover, the fact that emails were sent in the past is not a basis to impose

11  injunctive restraints against future harm.

12  As for the emails Dornéval allegedly sent on her last day of work, those emails failed so

13  the documents in the attachment were not even "acquired" by Dornéval at that time, as the statute

14  requires. "Acquisition" means "to come into possession, control, or power of disposal of." *See*

15  *JustMed,* 600 F.3d at 1129-30 (defendant employee did not "acquire" a trade secret by improper

16  means because he already had possession of it as an employee).

17  **b.    Plaintiff Is Not Likely to Establish That AeroTEC Acquired the**
**Documents.**

18  

19  Other than the allegations that its former employees sent documents to their own personal

20  email accounts, Plaintiff's claims against AeroTEC are based on speculation and unwarranted

21  inferences. The AeroTEC Defendants' declarations show that none of the Documents at issue were

22  ever disclosed to AeroTEC or anyone else. Nowhere does Plaintiff allege that Basson, Delarche,

23  or Dornéval used the Documents for anything specific to the MRJ, nor to whom any information

24  contained therein may have been disclosed. Plaintiff does not allege that the Documents contained

25  any information relating to MITAC's redesign of the MRJ's avionics bay, which is the allegedly

26  critical certification issue "identified only shortly after MITAC's direct recruiting efforts of

27  Bombardier personnel began paying off." Complaint ¶48. A review of the documents themselves

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 16
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

reveals nothing about any information relating to the avionics bay or any "revisions of certain systems and electrical configurations on the aircraft to meet the latest requirements for certification" as alleged in the Complaint at ¶47.

### c. Plaintiff Is Not Likely to Show the Documents Were Used or Disclosed by Basson or Dornéval.

Plaintiff has no direct evidence that the alleged trade secrets were ever disclosed or used by any of the AeroTEC Defendants. It merely points to the fact that after AeroTEC hired Basson, Dornéval and Delarche, MITAC estimated an MRJ certification date in 2019 after a number of previous delays to previously estimated certification dates. This is not a sufficient allegation to show that Plaintiff is likely to prevail on the merits or to warrant a preliminary injunction.

Plaintiff presents no evidence to contradict Basson and Dornéval's testimony and forensic evidence that the Documents were never used or disclosed to anyone after leaving Bombardier. Where an employee acquires information under circumstances giving rise to a duty to maintain its secrecy or limits its use, he or she can only be liable for misappropriation if he or she "used or disclosed" the trade secret. *JustMed,* 600 F.3d at 1130. "To sustain a trade secrets action under the 'use' prong of the statutory definition of 'misappropriation,' a plaintiff must necessarily demonstrate that the defendant received some sort of unfair advantage." *Id.* The defendant in *JustMed* threatened to use a trade secret he had in his possession, but because the court found he had not actually done so, there was no misappropriation. *Id.* at 1131. Plaintiff does not allege that Basson or Dornéval ever threatened to use the Documents at issue here.

Plaintiff cites *Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1204 (E.D. Wash. 2003), for the proposition that "mere threats" of trade secret disclosure may constitute irreparable injury justifying injunctive relief. However, that case involved "undisputed evidence" that proprietary information had already been provided to and used by the defendant company. *Id.* at 1203. Similarly, *Lamb-Weston*, also cited by Plaintiff, relied on evidence that an independent contractor making a similar device for two employers at the same time used trade secrets provided by one in fabricating the other. *Lamb-Weston, Inc., v. McCain Foods, Ltd.*, 941 F.2d 970 (9th Cir.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 17
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    1991). In neither case was mere knowledge or possession of alleged trade secrets sufficient to

2    justify an injunction. Nobody is alleged to have threatened disclosure or use of the Documents in

3    this case, and given their inapplicability to the MRJ, there is no such threat.

4         **d.     Plaintiff is Unlikely to Show That AeroTEC Ever Used the Documents.**

5         Plaintiff is unlikely to prevail on its claim against AeroTEC because proof that an employee

6    possessed or acquired trade secrets does not create an inference of liability as to the corporate

7    employer. *See Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976). "It

8    is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the

9    principal." *Id.; accord, Carr v. AutoNation Inc.*, No. 2:17-cv-01539, 2018 U.S. Dist. LEXIS 1869,

10   at *6 (E.D. Cal. Jan. 4, 2018); *see also Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953,

11   982 (D. Ariz. 2015). This is especially true where the current employer specifically instructs

12   employees not to use or disclose any confidential information of their former employer. *See Nat'l*

13   *City Bank, N.A. v. Prime Lending, Inc.*, 737 F. Supp. 2d 1257, 1267 (E.D. Wash. 2010) (plaintiffs

14   were unlikely to succeed on misappropriation claim where they cited no evidence that any former

15   employee ever disclosed or used confidential information for the defendant's benefit and where

16   defendant specifically told the plaintiff's former employees *not* to take or use any non-public

17   information). In *Mellberg*, the plaintiff alleged that a competitor was liable for trade secret

18   misappropriation because it hired two former employees that took the plaintiff's trade secrets and

19   used them at their new job. The court dismissed the claim because "no facts show[ed] that

20   [competing company] had any knowledge whatsoever regarding the information purportedly used"

21   by those former employees, even though the competing company's requisite knowledge was

22   "conceivable." *Id.* at 982.

23        Moreover, there is no evidence that AeroTEC knew or had reason to know any of the

24   Documents were acquired anything by improper means. *See* 18 U.S.C. § 1839(5)(A),(B); RCW

25   19.108.010(2)(a),(b). "An employer who is unaware of an employees' misappropriation of

26   another's trade secrets would not be liable under this paradigm, nor would an employer who knows

27   that its employee has pilfered another's trade secrets but who undertakes scrupulous efforts to

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 18
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1   ensure that the employee's knowledge of the trade secret is not put to use by the employer." *Ciena*

2   *Communs., Inc. v. Nachazel*, No. 09-cv-02845-MSK-MJW, 2010 U.S. Dist. LEXIS 90460, at *15

3   (D. Colo. Aug. 30, 2010).

4       **e.  Plaintiff Cannot Satisfy Its Evidentiary Burden as to Any AeroTEC**
5          **Defendant.**

6      Employees are generally free, upon leaving employment, to engage in competitive

7   employment, and may freely use general knowledge, skills, and experience acquired under his or

8   her former employer. *Ed Nowogroski Ins., Inc. v. Rucker,* 137 Wn.2d 427, 438, 971 P.2d 936

9   (1999). In the end, the only facts supporting the claim that AeroTEC ever acquired, or that any

10  Defendant or actually used or disclosed, the Documents are the allegations that after a number of

11  MRJ certification scheduling adjustments, AeroTEC and the other corporate defendants recruited

12  and hired a "critical mass" of Bombardier employees, and shortly thereafter MITAC announced

13  design changes to the MRJ's avionics bay, which prompted MITAC to estimate certification of

14  the MRJ in 2019. Plaintiff relies on this timeline to argue that the AeroTEC Defendants used a

15  handful of documents that were key to the extremely complex issue of aircraft engineering, testing

16  and certification. There is no allegation that the Documents have anything to do with the

17  components, design or redesign of the MRJ. Plaintiff's tenuous circumstantial evidence is

18  persuasively contradicted by direct evidence that the alleged trade secrets were emailed for proper

19  means, and have never been used or disclosed by any of the defendants.

20  **C.  Plaintiff is Not Likely to Suffer Irreparable Harm.**

21     Bombardier has also failed to show that it is "likely to suffer irreparable harm in the absence

22  of preliminary relief." *Winter*, 555 U.S. at 20. This element is considered the single most important

23  prerequisite for the issuance of a preliminary injunction. *See Dex Media W., Inc. v. City of Seattle*,

24  790 F. Supp. 2d 1276, 1288 (W.D. Wash. 2011) (quoting *Kotok v. Homecomings Fin., LLC*, C09-

25  662RSM, 2009 U.S. Dist. LEXIS 71068, at *6 (W.D. Wash. June 12, 2009)). Irreparable injury

26  cannot be established where harm is measurable in damages. *See id.* (citing *eBay, Inc. v.*

27

---

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 19
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

1    *MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Speculative injury does not constitute irreparable

2    injury; irreparable harm must be "likely" as opposed to "merely possible."

3         Plaintiff cannot demonstrate immediate threatened injury. It delayed filing suit for over a

4    year after it first identified to MITAC the Documents that Basson, Dornéval, and Delarche

5    allegedly stole, undermining its claim of irreparable harm. *See Citizens of Ebey's Reserve for*

6    *Healthy, Safe & Peaceful Env't v. U.S. Dept. of the Navy*, 122 F. Supp.3d 1068, 1083-84 (W.D.

7    Wash. 2015) (quoting *Lydo Enters. v. City of Law Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).

8    Delays of over a year are often found to be sufficient to deny injunctive relief. *See id.* (sixteen

9    months); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir.

10   1985) (exclusivity provisions sought to be enjoined had "been in effect for a number of years"). If

11   any defendant had taken the Documents to use or disclose for AeroTEC's benefit in working on

12   certification of the MRJ – which they did not – the harm would be completed by now. Plaintiff

13   fails to explain any basis for the claim that the AeroTEC Defendants continue to use any

14   Bombardier information.

15        Furthermore, Plaintiff's alleged injuries can be entirely compensated with monetary

16   damages. Plaintiff's theory is that the Documents have provided a magic key to fast-track the

17   MRJ's certification. If Plaintiff were to prevail, money damages would be available to compensate

18   it for its lost revenues or the defendants' wrongful profits. The "extraordinary remedy of injunctive

19   relief" will not be granted where a plaintiff has "an adequate remedy at law in the form of monetary

20   damages." *Kucera v. DOT*, 140 Wn.2d 200, 210, 995 P.2d 63 (2000).

21   **D.    The Balance of Equities Favors the Defendants.**

22        Plaintiff must know full well that the eleven Documents are not truly critical to AeroTEC's

23   testing, engineering or certification work on the MRJ. If they were, Plaintiff would have

24   commenced suit more than a year ago. This lawsuit is a litigation tactic to hinder competition, and

25   the PI Motion is an attempt to gain early publicity and optics from a court ruling that Plaintiff is

26   "likely to succeed." Plaintiff's speculation is not sufficient to permit the inference that the

27   Documents have been used, much less that they will be used going forward.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 20
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

The balance of hardships clearly tips in favor of AeroTEC and its employees because of the vague and overbroad restrictions Plaintiff seeks to impose. Any grant of a preliminary injunction "should be narrowly tailored to remedy the specific harm alleged." *United States v. BNS, Inc.,* 858 F.2d 456, 464 (1988). The scope of preliminary injunctive relief is limited to that which is "no more burdensome to the defendant than necessary to provide complete relief." *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011). In the context of trade secret claims, the court must state with specificity what information is alleged to constitute trade secrets such that the court may fashion a sufficiently narrow injunction, if appropriate. *See Chemstation of Seattle, LLC v. Donahoe*, No. 77030-6-I, 2018 Wn. App. LEXIS 1749, at *7 (Ct. App. July 26, 2018). "An overbroad injunction is an abuse of discretion." *Lamb-Weston, Inc.,* 941 F.2d at 974. Bombardier has failed to meet its burden. It has also failed to sufficiently specify what information it alleges constitute trade secrets. Further, the requested injunction is overbroad. Therefore, the PI Motion should be denied.

Should the court determine that an injunction of some kind is merited, it should be narrowly tailored to protect only the Plaintiff's legitimate interest, in this case, the alleged trade secrets they claim were misappropriated with specificity. Plaintiffs filed the lengthy Documents under seal, and their contested motion to seal remains pending. Its wholesale designation of the entire collection of the Documents as confidential is improper, and the defendants have asked the Court to order Plaintiff to identify the specific information in the Documents that Plaintiff claims are trade secrets. The Documents plainly contain substantial publicly available and non-proprietary information. Plaintiff nonetheless seeks to enjoin the use not only of the Documents, but any information contained therein. Plaintiff's PI Motion goes even further, seeking an order enjoining the use of "any information derived from the information" in the Documents, whether the information is confidential or not. This would literally preclude the defendants from using basic principles of physics. The vagueness of these restrictions would make it impossible for the AeroTEC Defendants to know what is prohibited. A large amount of the information contained in the Documents are generic, well-known in the industry, and publicly available.

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 21
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

**E.     An Injunction Is Not in the Public Interest.**

The public interest is best served by fostering unrestrained competition and a free and competitive labor market in the airplane manufacturing industry. Bombardier has put its anti-competitive conduct in full and open display by repeatedly demanding and attempting to coerce AeroTEC, MITAC, and MITAC America into entering illegal agreements not to compete for employees. *See* Complaint at 19-22. In light of Bombardier's unabashedly anti-competitive conduct, the motive for their litigation efforts is transparent. Bombardier wishes to use the court system to muscle out competition and hinder any threat to their current market dominance. An injunction in this case would harm the public interest in two significant ways: first, by limiting the freedom of Bombardier's employees to seek out better employment opportunities within their chosen profession and, second, by preventing other aerospace companies from hiring engineers and other aerospace employees who have skills, experience and expertise in designing, testing and engineering aircraft. For all these reasons, this Court should deny Bombardier's PI Motion.

**F.     Bond**

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has substantial discretion to determine the amount of the security required. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). A bond is appropriate if the Court has doubts as to the substantive merits of a plaintiff's claims. *Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 U.S. Dist. LEXIS 58839, *33 (W.D. Wash., May 3, 2016). There is plenty of reason to doubt the merits of Plaintiff's claims and the motive behind them, but in the event the Court decides to fashion some injunctive relief, it should require a substantial bond. Plaintiff acknowledges that the aircraft certification process is lengthy and expensive to the tune of billions of dollars. (Complaint, ¶24.)  Given the vague and overbroad scope of the injunction, the AeroTEC Defendants would be especially at risk of technical violations of the injunction even if it is later determined that information contained in or derived from the

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 22
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100

Documents is not confidential or proprietary at all. The mere accusations of this lawsuit, unfounded as they are, have a potential to greatly harm the AeroTEC Defendants' reputations in this highly competitive industry.

## IV.  CONCLUSION

There is no basis for an injunction. There is no threat of irreparable harm to Bombardier and it has little chance of prevailing on the merits. Basson and Dornéval acted with good intentions. They never intended to take or misuse any confidential information, and merely had the unfortunate timing to be working on things from home in their last months and days at Bombardier. The evidence shows the Documents have not been and will not be used by the AeroTEC Defendants. To the extent the Documents, in fact contain non-public, proprietary information, that information is of no use to the AeroTEC Defendants' work on certification of the MRJ. Plaintiff is not likely to prevail on the merits, and an injunction is entirely unwarranted. This Court should deny Bombardier's PI Motion.

Dated this 26th day of December, 2018.

KARR TUTTLE CAMPBELL
*Attorneys for Defendants AeroTEC, Basson,*
*Dornéval and Korwin-Szymanowski*

*/s/ Richard J. Omata*
*/s/ Mark A. Bailey*
Richard J. Omata, WSBA #7032
Mark A. Bailey, WSBA #26337
701 Fifth Avenue, Suite 3300
Seattle, Washington  98104
Phone: 206-223-1313
Fax: 206-682-7100
Email: romata@karrtuttle.com
          mbailey@karrtuttle.com

AEROTEC DEFENDANTS' OPPOSITION
TO PRELIMINARY INJUNCTION MOTION
(Case No. 18-cv-1543 RAJ) - 23
#1209041 v2 / 45898-028

KARR TUTTLE CAMPBELL
701 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Main: (206) 223 1313
Fax: (206) 682 7100