UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BOMBARDIER INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MITSUBISHI AIRCRAFT CORPORATION, MITSUBISHI AIRCRAFT CORPORATION AMERICA INC., AEROSPACE TESTING ENGINEERING & CERTIFICATION INC., MICHEL KORWIN-SZYMANOWSKI, LAURUS BASSON, MARC-ANTOINE DELARCHE, CINDY DORNÉVAL, KEITH AYRE, AND JOHN AND/OR JANE DOES 1-88,<br><br>　　　　　　Defendants. | No. 2:18-cv-01543-RAJ<br><br>BOMBARDIER INC.'S REPLY TO DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>**NOTE ON MOTION CALENDAR:**<br>**JANUARY 4, 2019** |

BOMBARDIER'S REPLY TO MITSUBISHI AIRCRAFT CORPORATION AMERICA INC.'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (2:18-cv-01543-RAJ)

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**Contents**

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT .......................................................................................................2

    A.   MITAC America's "Facts" Are Unsubstantiated and Inaccurate ...........................2

    B.   MITAC America's Arguments Are Unsubstantiated and/or Contradictory ..................................................................................................7

        1.   MITAC America's Arguments Concerning Likelihood of Success on the Merits Fatally Hinge on Extensive and Provably Inaccurate Information ........................................................................................7

        2.   MITAC America's Argument Re: Irreparable Harm Lacks Any Merit ................10

        3.   MITAC America's Argument Addressing Public Interest Is Unsubstantiated Hyperbole ..........................................................................11

        4.   MITAC America's Remaining Arguments Concerning the Overbreadth of the Proposed Injunction, Balance of Hardships, and Bond Amount Are Irreconcilable with Its Previous Positions .................................12

III. CONCLUSION ..................................................................................................12

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - ii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**Cases**

*Earthbound Corp. v. MiTek USA, Inc.*,
   2016 WL 4418013 (W.D. Wash. Aug. 19, 2016) ................................................................. 8

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) ............................................................................................ 10

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*,
   737 F. Supp. 2d 1257 (E.D. Wash. 2010) ........................................................................... 9

*Pac. Aerospace & Elecs., Inc. v. Taylor*,
   295 F. Supp. 2d 1188 (E.D. Wash. 2003) ......................................................................... 11

*Waymo LLC v. Uber Techs., Inc.*,
   Case No. C 17-00939 WHA, 2017 WL 2123560, (N.D. Cal. May 15, 2017) ..................... 3

**Rules**

Washington RPC 3.3(a)(1) ...................................................................................................... 6

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Plaintiff Bombardier Inc. ("Bombardier") hereby files its Reply to Defendant Mitsubishi Aircraft Corporation America Inc.'s ("MITAC America") Opposition to Plaintiff's Motion for Preliminary Injunction ("Opposition," Dkt. No. 75) and states as follows:

## I.     INTRODUCTION

The briefing strategy employed by MITAC America in its Opposition appears singularly focused on distracting the Court from uncontroverted and potentially issue-dispositive facts. Specifically, it ignores that Defendants Basson, Delarche, and Dornéval retained unauthorized personal copies of clearly marked Bombardier proprietary information after their departure from Bombardier; it ignores that they had no reason in the final weeks, days, and hours of their employment with Bombardier to retain personal copies of those documents for any legitimate reason; it ignores that they went to work on the MRJ project for AeroTEC in the precise roles they occupied while at Bombardier; it ignores that at least Basson and Dornéval still have possession, custody, and control of their unauthorized personal copies of the identified Bombardier documents; and it ignores that Basson and Dornéval, as AeroTEC employees, have worked and continue to work on the MRJ project side-by-side with MITAC America employees at the Seattle Engineering Center—as evidenced by MITAC America's admission that Basson and Dornéval ***work on laptops issued by MITAC America***, not AeroTEC.

Instead of acknowledging and accounting for these and other pertinent facts in its Opposition, MITAC America employs a different approach—it advances unsubstantiated "facts" to support its theory that an injunction is not warranted here. MITAC America's "facts" are not facts at all, but rather constitute provable mischaracterizations—and in some instances outright misrepresentations—of pertinent facts, of Bombardier's arguments, and even of applicable case law. MITAC America's briefing strategy is unavailing. And ironically, the Opposition actually supports Bombardier's position that the narrow injunction it currently seeks is unquestionably appropriate here.

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Bombardier has already established, and MITAC America has now confirmed, that MITAC America currently has access to Bombardier information clearly marked as confidential and proprietary that, but for the unauthorized actions of Defendants Dornéval and Basson, it would not otherwise have. Bombardier has also identified with specificity the information contained in those documents that constitutes proprietary and trade secret information, and MITAC America has confirmed as much by expressing its willingness to honor the terms of Bombardier's proposed injunction by private agreement. In stark contrast, MITAC America now desperately advances every conceivable argument under the sun, hoping that at least one will resonate with the Court, notwithstanding that none is substantiated in fact. (*Compare, e.g.,* Opposition, Dkt. No. 75, at 16-17 (Bombardier has failed to identify the trade secrets at issue) *with* Verified Complaint, Dkt. No. 1, at ¶¶60-62 (identifying the trade secrets with specificity) *and* Burns Decl., Dkt. No. 5, at ¶¶ 5(a)-(o), 11(a)-(f), 15, 17, 20, 23-25 (same) *and* Tidd Decl., Dkt. No. 7, at ¶¶ 5-7 (same).) Because MITAC America's arguments are predicated on provably false premises, the Opposition fails to refute that Bombardier has met its burden to obtain preliminary injunctive relief in the narrow fashion it now seeks. Bombardier therefore respectfully requests that the Court grant its Motion for Preliminary Injunction.

## II.   ARGUMENT

### A.  MITAC America's "Facts" Are Unsubstantiated and Inaccurate

MITAC America's Opposition is predicated on a litany of supposed "facts" that are unsubstantiated and provably false. That MITAC America relies on such a briefing strategy is certainly telling, but even more so is a genuine understanding of the facts.

For instance, MITAC America contends that Bombardier has waited too long to seek preliminary injunctive relief, and it misleads the Court into believing that Bombardier learned about the trade secret misappropriation at issue here approximately three years ago and "did nothing" about it until it filed its Motion for Preliminary Injunction on October 19, 2018. (Opposition, Dkt. No. 75, at 2.) That is most assuredly not the case. More accurately,

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    Bombardier initiated correspondence with Defendant Korwin-Szymanowski at that time
2    because he was engaging in improper recruiting tactics on behalf of AeroTEC in violation of
3    his ongoing contractual duties to Bombardier. (Dkt. No. 1-11.)  The correspondence MITAC
4    America references from three years ago had nothing to do with suspected trade secret
5    misappropriation, as the trade secret misappropriation at issue here had not yet even occurred.
6    Bombardier reminded Defendant Korwin-Szymanowski at that time "of the obligations [he]
7    ha[s] towards Learjet and Bombardier Inc. as a former director of Learjet owing a
8    confidentiality duty." (*Id.*)

9    Additionally, Bombardier followed up with Defendant Korwin-Szymanowski's
10   employer six months later to provide institutional notice to AeroTEC of the ongoing
11   confidentiality obligations former Bombardier employees owed to Bombardier (Dkt. No. 1, at
12   ¶ 53); it followed up with MITAC America's corporate parent less than two months later (*id.*
13   at ¶ 54); and this ultimately led to extensive iterative communications aimed at alleviating
14   Bombardier's concerns about former Bombardier employees honoring their confidentiality
15   obligations and potential tortious interference with Bombardier's business expectancies (*id.* at
16   ¶¶ 53-58). This hardly constitutes doing "nothing" as MITAC America contends, and it did
17   not arise from suspected trade secret misappropriation. As noted in its Motion, "Bombardier
18   'reasonably refrained from bringing suit [for trade secret misappropriation] until it discovered
19   evidence indicating use'—in this case, public statements from the Corporate Defendants, as
20   well as in the Federal Register, indicating imminent and continued use of Bombardier trade
21   secrets." (Motion, Dkt. No. 4, at 22 (quoting *Waymo LLC v. Uber Techs., Inc.*, Case No.
22   C 17-00939 WHA, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017)).)  MITAC America
23   and its counsel are wrong to mislead the Court into believing that Bombardier waited three
24   years before taking action to protect its trade secrets.

25   The same is true of MITAC America's contention that Defendants Dornéval and
26   Basson "emailed the documents [at issue] home so they could complete their Bombardier
27   work, even doing so at the request of their Bombardier supervisors." (Opposition, Dkt. No.

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 3

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

75, at 3 (citing Basson Decl., Dkt. No. 62, at ¶ 12; Dornéval Decl., Dkt. No. 64, at ¶¶ 4, 10).) Tellingly, the declarations of Dornéval and Basson do not support this contention in the slightest: No Bombardier supervisor requested that Defendants Dornéval and Basson work from home, or work for Bombardier after their departure from Bombardier, or conduct any work that necessarily required them to email documents to themselves at any time, much less within the weeks, days, and hours leading up to their planned and voluntary departures. (*See* Basson Decl., Dkt. No. 62, at ¶ 12; Dornéval Decl., Dkt. No. 64, at ¶¶ 4, 10. *See also* Declaration of Francesco Longo in Support of Bombardier Inc.'s Motion for Preliminary Injunction ("Longo Decl."), filed concomitantly herewith, at ¶¶ 4, 6-9; Declaration of Peter Quinlan in Support of Bombardier Inc.'s Motion for Preliminary Injunction ("Quinlan Decl."), filed concomitantly herewith, at ¶¶ 4-6.)

MITAC America further misleads the Court by arguing that "the bulk of [Bombardier's] documents contain publicly available information" that "Bombardier has not attempted to identify what specific information in its eleven documents is supposedly a trade secret." (Opposition, Dkt. No. 75, at 4.)  Again, MITAC America is wrong: Bombardier has identified with precision exactly the information contained in the documents at issue that constitutes Bombardier trade secret information. (*See* Burns Decl., Dkt. No. 5, at ¶¶ 5(a)-(o), 11(a)-(f), 15, 17, 20, 23-25 (identifying Bombardier information not publicly available or readily ascertainable); Tidd Decl., Dkt. No. 7, at ¶¶ 5-7 (same); Complaint, Dkt. No. 1, at ¶¶ 60-62 (same).  *See also* Declaration of Nigel Waterhouse in Support of Motion for Preliminary Injunction ("Waterhouse Decl."), filed concomitantly herewith, at ¶¶ 9-16, 24-51 (explaining why the bulk of information contained in the documents is not publicly available information and would be valuable to MITAC America); Declaration of Michael Borftiz in Support of Motion for Preliminary Injunction ("Borftiz Decl."), filed concomitantly herewith, at ¶¶ 9-34 (same).) ) And nothing in MITAC America's expert declarations suggests that this particularly identified information is publicly available or readily ascertainable through public

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

means. Moreover, even Defendant Dornéval concedes the documents contain proprietary Bombardier information. (Dornéval Decl., Dkt. No. 64, at ¶¶ 10-11.)

Further still, MITAC America again misleads the Court by contending that any non-public information contained in the documents at issue "would not be useful on the MRJ project" because "[t]he MRJ is smaller than the CSeries and is designed for different purposes." (Opposition, Dkt. No. 75, at 6.) The contention strains credulity for a host of reasons. First, it assumes that the documents at issue pertain only to Bombardier's CSeries aircraft, an assumption dispelled at least in part by the documents themselves. (*See*, *e.g.*, Burns Decl., Dkt. No. 5, at ¶ 5 (identifying Bombardier information pertaining to its "Global 7000/8000 and [] CRJ" aircraft, the latter directly competitive with the MRJ).) Second, it grossly and negligently oversimplifies the potential application of the information at issue to aircraft in general. (*See id.* at ¶¶ 7, 12, 15, 18, 20 (explaining the value of the information to anyone seeking to certify an aircraft, not just a regional jet); *see also* Borftiz Decl., at ¶¶ 11-17, 19-20, 22, 24, 28, 33; Waterhouse Decl., at ¶ 25)  Third, it ignores the realities of aircraft certification, as well as party admissions concerning the same. (Complaint, Dkt. No. 1, at ¶ 33 (noting that Defendant Korwin-Szymanowski and an officer of MITAC are quoted as stating "It's almost impossible to understand the full certification criteria for an aircraft, if one has not been through it once or twice."); *see also* Waterhouse Decl., at ¶¶ 14-16.) MITAC America would have the Court believe that unless certification information contained in the documents at issue can be applied without modification to a different aircraft, it would have no value. Even MITAC America's retained experts do not support such a contention.

MITAC America continues its attempt to misguide the Court by arguing that the "individual defendants had no confidentiality agreements with Bombardier." (Opposition, Dkt. No. 75, at 7 (citing Dornéval, Basson, and Korwin-Szymanowski Declarations).) The same declarants relied upon by MITAC America to ostensibly establish the absence of confidentiality agreements, however, also testified that they understood their obligations to maintain the confidentiality of Bombardier proprietary information. (*See* Dornéval Decl., Dkt.

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

No. 64, at ¶ 6 ("I knew Bombardier's Code of Ethics included provisions that employees should maintain the confidentiality of confidential documents or information"); Basson Decl., Dkt. No. 62, at ¶ 20 ("I acknowledged receipt of the Code of Ethics, and I at all times to this day have taken my obligations seriously"); Korwin-Szymanowski Decl., Dkt. No. 65, at ¶ 17. MITAC America simply cannot reconcile the admitted existence of confidentiality obligations owed to Bombardier (as well as the existence of Bombardier's Code of Ethics) with the notion that no confidentiality agreements were reached.

MITAC America further mischaracterizes facts by accusing Bombardier of attempting "to stop competition," "to restrict competition by interfering with the freedom of employees to seek new employment, and by preventing competitors from hiring skilled employees." (Opposition, Dkt. No. 75, at 8.) This is just plainly false, and MITAC America is irresponsible for even suggesting as much.[1]

The aforementioned misstatements of fact, as well as others contained in the Opposition, are telling. MITAC America cannot dispute the propriety of an injunction issuing in this instance based on substantiated facts. It therefore attempts to confuse the Court into believing a version of events that distract from the real issues. Without any discovery, Bombardier has already established a likelihood of succeeding on its trade secret misappropriation claims such that MITAC America is compelled to obfuscate the truth to the Court. MITAC America's approach is unavailing.

---

[1] The mischaracterization also contravenes Washington RPC 3.3(a)(1), which prohibits counsel from "mak[ing] a false statement of fact or law to a tribunal." Counsel for MITAC America know that Bombardier is not seeking to interfere with the freedom of employees to seek new employment or to prevent competitors from hiring skilled employees, as evidenced by (a) the fact that the terms of the original proposed order did not seek to prevent Defendants Basson, Delarche and Dornéval from continuing to work for AeroTEC (Dkt. No. 4-1); and (b) Bombardier voluntarily narrowed the scope of the injunctive relief sought when it learned that, if granted, the injunction "would threaten continued employment [of at least one individual defendant] at AeroTEC" (Bombardier's Brief Setting Forth Its Positions Outlined in Stipulated Motion for Scheduling Conference, Dkt. No. 47, at 8). MITAC America's counsel have no plausible support for its contention in this regard, and indeed they cite to none.

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 6

### B. MITAC America's Arguments Are Unsubstantiated and/or Contradictory

#### 1. MITAC America's Arguments Concerning Likelihood of Success on the Merits Fatally Hinge on Extensive and Provably Inaccurate Information

MITAC America fatally predicates its Opposition on a number of unsubstantiated and provably inaccurate characterizations in an effort to show that Bombardier is not likely to prevail on the merits of its trade secret misappropriation claim. First, MITAC America completely mischaracterizes Bombardier's position as to how the individual defendants used improper means to acquire the documents at issue. (Opposition, Dkt. No. 75, at 11-12.) The individual defendants misappropriated the documents not simply because they emailed them to their personal email accounts in contravention of Bombardier's Code of Ethics (as MITAC America frames Bombardier's argument), but also because the transfer constituted "an impermissible transfer of Bombardier files containing highly sensitive Bombardier trade secret information for [] personal possession." (Complaint, Dkt. No. 1, at ¶¶ 169, 178, 215, 224.) MITAC America is well aware of Bombardier's position on this issue given the explicit disclosure in the Verified Complaint, yet MITAC America nevertheless mischaracterizes it for the Court's consideration.

Second, MITAC America argues that Bombardier "relies on sweeping inferences to suggest that the eleven documents must have been disclosed to MITAC America" (Opposition, Dkt. No. 75, at 12), but that is also untrue given the particularized allegations contained in Bombardier's Verified Complaint and the extensive citations to the Complaint contained in Bombardier's Motion (Motion, Dkt. No. 4, at 17-19). Additionally, MITAC America all but completely ignores Bombardier's argument that an injunction is nevertheless appropriate even if disclosure to MITAC America has not yet occurred. (Motion, Dkt. No. 4, at 20 (citing statutes and case law to address the propriety of injunctions to address threats of misappropriation).) MITAC America addresses Bombardier's argument in seven words, citing a single pre-DTSA case from 2008 to definitively conclude that "[l]ittle Washington Law exists on this theory." (Opposition, Dkt. No. 75, at 15.) In doing so, MITAC America

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

ignored the much more recent case of this Court cited by Bombardier, which quotes the plain language of 18 U.S.C. § 1836(b)(3) and RCW 19.108.020 to hold that a "Court may grant an injunction to prevent actual or threatened misappropriation of trade secrets." (Motion, Dkt. No. 4, at 20 (quoting *Earthbound Corp. v. MiTek USA, Inc.*, 2016 WL 4418013, at *10-11 (W.D. Wash. Aug. 19, 2016).)

Third, MITAC America again accuses Bombardier of attempting to "claim ownership of the skills and experience of its former employees" (Opposition, Dkt. No. 75, at 13), when Bombardier is doing nothing of the sort. (*See* Proposed Order, Dkt. No. 4-1 (seeking injunctive relief to prevent improper use of Bombardier documents); *see also* Bombardier's Brief Setting Forth Its Positions Outlined in Stipulated Motion for Scheduling Conference, Dkt. No. 47, at 8 (further narrowing the scope of relief sought by way of its Motion).)

Fourth, MITAC America claims to have retained a forensic expert "to thoroughly investigate whether any of the eleven documents are or have ever been stored on any of MITAC America's servers or on the MITAC America computers used by the named defendants" (Opposition, Dkt. No. 75, at 13-14), but even a cursory review of the forensic expert's declaration reveals that a "thorough" investigation was not completed. (*See* Nguyen Decl., Dkt. No. 79, at ¶¶ 7, 12 (explaining that index and keyword searching for the documents at issue were performed only on Defendant Dornéval's and Defendant Basson's MITAC America-laptops, and that MITAC America's network share drives were not similarly searched); *see also id.* at ¶ 12 (where MITAC America's forensic expert concluded "to a reasonable degree of certainty" only that the documents at issue do not exist on individual defendants' MITAC America laptops).) Further, MITAC America glosses over the fact that, even though Defendants Basson and Dornéval work for AeroTEC, they use "MITAC-A[merica] assigned" laptops. (*Id.*)

Fifth, MITAC America incredulously argues that "Bombardier failed to show misappropriation—actual, inevitable or threatened," suggesting that Bombardier's allegations are fatally "vague and conclusory." (Opposition, Dkt. No. 75, at 15.) MITAC America

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

necessarily ignores that Bombardier's Verified Complaint, referenced and cited throughout Bombardier's Motion, is 90 pages long, contains 277 paragraphs, identifies with specificity the actual trade secret misappropriation that has occurred, and is anything but conclusory even without the benefit of any formal discovery. (*See generally* Complaint, Dkt. No. 1.)

Sixth, MITAC America again mischaracterizes Bombardier's arguments, this time by incorrectly asserting that "Bombardier's [trade secret misappropriation] claim depends solely on an inference that MITAC America is liable because it associated with AeroTEC employees alleged to have committed wrongdoing." (Opposition, Dkt. No. 75, at 15.) The contention is false, and MITAC America ignores the specific allegations to the contrary contained in Bombardier's Verified Complaint so that it can again mislead the Court. (Complaint, Dkt. No. 1, at ¶¶ 98-99, 109-110.)

Seventh, MITAC America argues that "Bombardier failed to identify protectable trade secrets" (Opposition, Dkt. No. 75, at 16), but this is demonstrably false as evidenced by the contents of Bombardier's Verified Complaint (*e.g.*, ¶¶ 60-62) and the Declarations of Daniel Burns and David Tidd.

Eighth, MITAC America misrepresents the significance of particular case law, implausibly arguing that Bombardier is "unlikely to succeed on its misappropriation claims" simply because MITAC America "instructs new employees not to use any trade secrets they may have acquired from their former employers." (Opposition, Dkt. No. 75, at 14 (citing *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 737 F. Supp. 2d 1257, 1267 (E.D. Wash. 2010).) If this were truly the standard by which to assess a likelihood of success of the merits of a trade secret misappropriation claim, preliminary injunctions could be avoided with a wink and a nod, so long as corporate employers instructed their personnel to refrain from misappropriating trade secrets. *Cf. Nat'l City Bank, N.A.*, 737 F. Supp. at 1267 (where "the only evidence" concerning misappropriation was an instruction by a corporate employer "not to take or use any information that is not publicly available").

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Here, MITAC America misstates facts and disregards other uncontroverted evidence of misappropriation, including that Defendants Basson and Dornéval retained unauthorized personal copies of clearly marked Bombardier proprietary information after their departure from Bombardier; that they went to work on the MRJ project for AeroTEC in the precise roles they occupied while at Bombardier; that they had no reason in the final weeks, days, and hours of their employment with Bombardier to retain personal copies of those documents for any legitimate reason; that at least Basson and Dornéval still have possession, custody, and control of their unauthorized personal copies of the identified Bombardier documents; and that Basson and Dornéval, as AeroTEC employees, have worked and continue to work on the MRJ project side-by-side with MITAC America employees at the Seattle Engineering Center—as evidenced in part by MITAC America's own admission that Basson and Dornéval work on laptops issued by MITAC America. These facts are uncontroverted; Bombardier has established a likelihood of prevailing on the merits of its trade secret misappropriation claim.

### 2. MITAC America's Argument Re: Irreparable Harm Lacks Any Merit

MITAC America argues that its accelerated aircraft certification and market entry enabled by Bombardier trade secret information poses no irreparable harm to Bombardier (Opposition, Dkt. No. 75, at 18-20), it incredulously classifies this as "a normal part of a market economy" (*id.* at 19), and it characterizes Bombardier's argument to the contrary as "speculation and sensationalism" (*id.* at 18). More accurately, Bombardier's argument is not "speculation and sensationalism," but rather it is based on the public statements and "[p]resentation documents prepared by [Japan's] Ministry of Economy, Trade and Industry, [as] seen by Reuters." (Declaration of John D. Denkenberger, Dkt. No. 1-10, at Exhibit 35.) It is also based on long-established case law that an injunction is precisely the remedy to address the irreparable harm stemming from "any unfair head start the defendant may have gained" from trade secret misappropriation. (Motion, Dkt. No. 4, at 21 (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).)

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 10

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

MITAC America ignores these realities and instead mischaracterizes Bombardier's efforts as seeking to eliminate market competition. MITAC America knows this is untrue, again as evidenced at least by the narrow injunction Bombardier now seeks. Bombardier is seeking only to enjoin unfair *accelerated market entry* resulting from unauthorized use of its proprietary trade secret information, as well as to preserve the value of the substantial investments of time, labor, and capital in developing its proprietary aircraft certification processes. These are precisely the legitimate aims appropriate for preliminary injunctive relief. (Motion, Dkt. No. 4, at 21-22, citing *Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1204 (E.D. Wash. 2003) ("an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm").)

### 3. MITAC America's Argument Addressing Public Interest Is Unsubstantiated Hyperbole

MITAC America misleadingly claims that the public interest is not served by an injunction here because "[a]n injunction would send a chilling message to aerospace engineers" and would "effectively endorse Bombardier's unlawful strategy of seeking to prevent its employees having highly coveted experience from ever leaving its employ." (Opposition, Dkt. No. 75, at 20-21.)  Again, Bombardier is not seeking to prevent its employees from ever leaving its employ, and Bombardier is at a loss as to how MITAC America arrives at such a conclusion. (*See*, *e.g.*, Proposed Order, Dkt. No. 4-1; *see also*, Bombardier's Brief Setting Forth Its Positions Outlined in Stipulated Motion for Scheduling Conference, Dkt. No. 47, at 8 (further narrowing the scope of the proposed injunction to preserve at least one individual defendant's job at AeroTEC).)  Additionally, the only "chilling message" the proposed injunction could send to any aerospace engineers is one of common sense—abscond with clearly marked proprietary and confidential information of your former employer at your own risk.

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 11

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

### 4. MITAC America's Remaining Arguments Concerning the Overbreadth of the Proposed Injunction, Balance of Hardships, and Bond Amount Are Irreconcilable with Its Previous Positions

MITAC America's argument concerning the impermissible vagueness and overbreadth of the proposed terms of the preliminary injunction borders on the nonsensical. On the one hand, MITAC America admits that it was ready to privately abide by "the very terms of Bombardier's proposed order" (Opposition, Dkt. No. 75, at 9), yet on the other it argues that those terms are unenforceably vague for a Court Order (*id.* at 21). MITAC America fails to explain why it would know how to comport its behavior for private purposes yet lack "fair and precisely drawn notice of what the injunction" would prohibit. *Id.* Moreover, MITAC America claims that the documents "are filled with public information," and it should not be subject to contempt for using public information contained in those documents. *Id.* MITAC America can avoid any contempt simply by acquiring the purportedly public information contained in Bombardier's documents from public—rather than Bombardier—sources.

Additionally, MITAC America cannot rationally explain how the balance of hardships favors MITAC America in this instance, particularly after it has admitted that it was willing to comply with "the very terms of Bombardier's proposed order" in exchange for a withdrawal of Bombardier's Motion. Its "sky is falling" argument referencing potential lost MRJ sales resulting from the public announcement of an injunction is baseless. (*Id.* at 9, 22-23.)

Finally, MITAC America's Bond Argument undermines its previous representations that it does not have the Bombardier information at issue, that it never used such information, that it lacks any knowledge of the information, and that the information would not be useful in any MRJ applications. If these arguments are true, then public confidence in the MRJ should remain unaffected by any injunction, and the resulting bond amount should be negligible.

### III.  CONCLUSION

For the foregoing reasons, and for those raised in Bombardier's Motion for Preliminary Injunction, Bombardier respectfully requests that the Court grant the Motion.

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Dated this 4th day of January, 2019.

        CHRISTENSEN O'CONNOR
        JOHNSON KINDNESS$^{PLLC}$

        <u>s/ John D. Denkenberger</u>
        John D. Denkenberger, WSBA No.: 25,907
        Brian F. McMahon, WSBA No.: 45,739
        E. Lindsay Calkins, WSBA No.: 44,127
        Christensen O'Connor Johnson Kindness$^{PLLC}$
        1201 Third Avenue, Suite 3600
        Seattle, WA  98101-3029
        Telephone:  206.682.8100
        Fax:  206.224.0779
        E-mail: john.denkenberger@cojk.com,
        brian.mcmahon@cojk.com,
        lindsay.calkins@cojk.com, litdoc@cojk.com

        *Attorneys for Plaintiff Bombardier Inc.*

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 13

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jerry A. Riedinger
PERKINS COIE LLP
Email:
JRiedinger@perkinscoie.com
docketsea@perkinscoie.com
lshaw@perkinscoie.com
sporter@perkinscoie.com

Mack H. Shultz
PERKINS COIE LLP
Email:
MShultz@perkinscoie.com
docketseapl@perkinscoie.com
sbilger@perkinscoie.com

Mary Z. Gaston
PERKINS COIE LLP
Email:
MGaston@perkinscoie.com
docketsea@perkinscoie.com
jstarr@perkinscoie.com

James Sanders
PERKINS COIE LLP
Email:
JSanders@perkinscoie.com
RBecken@perkinscoie.com
docketsea@perkinscoie.com
jdavenport@perkinscoie.com

Shylah R. Alfonso
PERKINS COIE LLP
Email:
SAlfonso@perkinscoie.com
docketsea@perkinscoie.com

Attorneys for Mitsubishi Aircraft Corporation America Inc.

Richard J. Omata
KARR TUTTLE CAMPBELL
Email: romata@karrtuttle.com
jnesbitt@karrtuttle.com
swatkins@karrtuttle.com

Mark A. Bailey
KARR TUTTLE CAMPBELL
Email: mbailey@karrtuttle.com
jsmith@karrtuttle.com
mmunhall@karrtuttle.com
sanderson@karrtuttle.com

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

Daneil T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com

s/ John D. Denkenberger
John D. Denkenberger, WSBA No.: 25,907
Brian F. McMahon, WSBA No.: 45,739
E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness[PLLC]
1201 Third Avenue, Suite 3600

BOMBARDIER'S REPLY TO MITSUBISHI AIRCRAFT CORPORATION AMERICA INC.'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (2:18-cv-01543-RAJ) - 14

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

BOMBARDIER'S REPLY TO MITSUBISHI
AIRCRAFT CORPORATION AMERICA INC.'S
OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION (2:18-cv-01543-RAJ) - 15

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100