Honorable Judge Richard A. Jones

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

BOMBARDIER INC.,

          Plaintiff,

       v.

MITSUBISHI AIRCRAFT CORPORATION,
MITSUBISHI AIRCRAFT CORPORATION
AMERICA INC., AEROSPACE TESTING
ENGINEERING & CERTIFICATION INC.,
MICHEL KORWIN-SZYMANOWSKI,
LAURUS BASSON, MARC-ANTOINE
DELARCHE, CINDY DORNÉVAL, KEITH
AYRE, AND JOHN AND/OR JANE DOES 1-
88,

          Defendants.

No. 2:18-cv-01543-RAJ

DECLARATION OF PETER
QUINLAN IN SUPPORT OF
BOMBARDIER INC.'S MOTION
FOR PRELIMINARY
INJUNCTION

**NOTE ON MOTION
CALENDAR:
JANUARY 4, 2019**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

I, PETER QUINLAN declare as follows:

     1.     I am an employee of Bombardier, Inc. ("Plaintiff"). I have been employed at
Bombardier since November 2011, and my current title is Manager, Systems Project
Engineering on the Global 7500 program.  I have personal knowledge of the matters
addressed herein.

     2.     I have reviewed the Declaration of Laurus Basson ("Basson Declaration"),
which was filed in this case as Dkt. No. 62.

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

3.      During the time period beginning October 2015 and ending January 2016, I was employed by Bombardier as Acting Manager for Wing High Lift Systems ("WHLS") on the Global 7000 program.  During my time in this role, I was a direct supervisor to Mr. Basson and I oversaw and was responsible for his day-to-day activities.  I reported to Mr. Naji Fadel, who was and still is the Director of Systems Engineering.  I was not Mr. Basson's manager at the time he left Bombardier in March 2016, by which time I had transferred to another position within Bombardier.

4.      In paragraph 8 of the Basson Declaration, Mr. Basson states that it was common practice for Bombardier employees to perform Bombardier work on their personal computers, and to send Bombardier documents to their personal email addresses. I disagree with Mr. Basson's statements.  During my time as Acting Manager for WHLS, I did not personally give Bombardier employees permission to send any confidential or proprietary Bombardier documents to their personal email addresses, nor to download any confidential or proprietary Bombardier documents to their personal computers.  To the best of my knowledge, it was not common practice nor was it acceptable for Bombardier employees to do this.  Nor was it common practice or acceptable for ex-Bombardier employees to work on Bombardier projects—let alone highly-sensitive Bombardier projects—after the end of their employment with Bombardier.  It is my understanding that this was still true when Mr. Basson departed Bombardier.

5.      I understand from paragraph 12 of Mr. Basson's Declaration that on his last day of employment with Bombardier—March 4th, 2016—he sent two Bombardier documents to his personal email address.  I have reviewed both documents, which relate to the Skew Detection System ("SDS") for the Bombardier Global 7000/8000 aircraft, and which were previously filed as Docket Numbers 6-1 and 6-2.  I note that nearly every page of both documents indicates the presence of "private" and "confidential" information of Bombardier. I did not give Mr. Basson permission to send these documents to his personal email address or to download these presentations to his personal computer, nor did I request that he update

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    these documents after his employment ended.  I do not believe that another manager in that

2    position would have given such permission or made such a request.

3        6.    It was improper and contrary to Bombardier's policy for Mr. Basson to send

4    these proprietary documents to his personal email address, especially just before his departure

5    from Bombardier.  Mr. Basson admits as much in paragraphs 19 and 20 of the Basson

6    Declaration because he knew of his obligation not to use or disclose any Bombardier trade

7    secrets to anyone.  He also knew that his duty under Bombardier's Code of Ethics prohibited

8    him from transmitting Bombardier confidential or proprietary information through unsecure

9    channels.  In paragraph 20 of the Basson Declaration, he "acknowledged receipt of the Code

10   of Ethics, and [he] at all times to this day, has taken [his] obligations seriously."  I have

11   reviewed Bombardier's Code of Ethics and I note that pages 14-15 of that document clearly

12   state that employees can transmit confidential documents by email only when it is reasonable

13   to believe that it can be done under secure conditions.  No reasonable person would consider

14   it secure to transmit confidential and proprietary information to a personal e-mail address.

15       7.    One of the documents Mr. Basson sent to his personal email address on March

16   4th, 2016—"2016-03-03 TCCA Skew Detection Presentation- JAN 28 FINAL.pptx"—

17   contains extensive proprietary information concerning Bombardier's approach to certifying its

18   Skew Detection System ("SDS") on the Global 7000/8000 aircraft, including: the process for

19   the selection of applicable relevant regulations; the selected set of applicable regulations for a

20   position indicating system (among hundreds of potentially applicable regulations); the

21   selection of applicable qualification regulations to clear certification flight testing of an

22   actuator and a controller; and Bombardier's strategy to modify the SDS of a previously-

23   certified design.  For example, pages 22 to 31 are a plain English walk-through example of

24   using a modification impact analysis in order to arrive at an efficient and minimal set of

25   applicable regulations for certifying the SDS.  An approach based on combining failure

26   probability, system independence, component dissimilarity, failure annunciation, and

27   evaluation of system complexity is laid out to reduce the Functional Design Assurance level

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 3

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    of the SDS to level C that still supports compliance of a level A failure (page 26-28).   This

2    reduced the requirements for system reliability, analysis, and testing in order to demonstrate

3    compliance.    This approach and the resulting applicable regulations (page 31) could be

4    applied to certifying other hydro-mechanical indication and position monitoring systems such

5    as those contained in landing gear, doors, and flight control systems.

6         8.        Also, pages 61-67 provide a proprietary list of minimum qualification

7    requirements that would be needed to apply for an experimental flight certificate and would

8    facilitate certification flight testing.    There is no available guidance to earning an

9    experimental flight certificate, which is a necessary prerequisite to flight testing, which in turn

10   is necessary to achieving type certification.  This information is highly proprietary.

11        9.        I disagree with Mr. Basson's assertion (in paragraph 17 of the Basson

12   Declaration) that the certification approach was readily ascertainable via the WHLS

13   Certification Plan.  The WHLS Certification Plan is not a publicly available document, and is

14   clearly marked as confidential and proprietary to Bombardier.

15        10.       The documents that Mr. Basson emailed to his personal email account would

16   be valuable as approaches, process examples, or templates to another aircraft manufacturer

17   attempting to flight test and certify its own commercial aircraft, including the MRJ.  This is

18   especially true for a manufacturer without an established process for doing so, such as

19   Mitsubishi.  The presentation also shows a level of design detail that goes beyond what is

20   available in aircraft investigation report descriptions.   The level of design detail in the

21   presentation is confidential and proprietary information because it contains schematic

22   information on power supply component configuration for quick shutdown, identified system

23   risks with mitigating development testing and results, system signal and signal processing

24   information, and flap actuator interface details for mounting the sensor and target.

25

26

27

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    I declare under penalty of perjury under the laws of the United States of America that

2   the foregoing is true and correct.

3    EXECUTED at Toronto, ON, Canada, this 4th day of January, 2019

4

5

6    PETER QUINLAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Jerry A. Riedinger<br>PERKINS COIE LLP<br>Email:<br>JRiedinger@perkinscoie.com<br>docketsea@perkinscoie.com<br>lshaw@perkinscoie.com<br>sporter@perkinscoie.com | Mack H. Shultz<br>PERKINS COIE LLP<br>Email:<br>MShultz@perkinscoie.com<br>docketseapl@perkinscoie.com<br>sbilger@perkinscoie.com | Mary Z. Gaston<br>PERKINS COIE LLP<br>Email:<br>MGaston@perkinscoie.com<br>docketsea@perkinscoie.com<br>jstarr@perkinscoie.com |
| James Sanders<br>PERKINS COIE LLP<br>Email:<br>JSanders@perkinscoie.com<br>RBecken@perkinscoie.com<br>docketsea@perkinscoie.com<br>jdavenport@perkinscoie.com | Shylah R. Alfonso<br>PERKINS COIE LLP<br>Email:<br>SAlfonso@perkinscoie.com<br>docketsea@perkinscoie.com | |

Attorneys for Mitsubishi Aircraft Corporation America Inc.

| | |
|---|---|
| Richard J. Omata<br>KARR TUTTLE CAMPBELL<br>Email: romata@karrtuttle.com<br>jnesbitt@karrtuttle.com<br>swatkins@karrtuttle.com | Mark A. Bailey<br>KARR TUTTLE CAMPBELL<br>Email: mbailey@karrtuttle.com<br>jsmith@karrtuttle.com<br>mmunhall@karrtuttle.com<br>sanderson@karrtuttle.com |

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

Daneil T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com

s/ John D. Denkenberger

John D. Denkenberger, WSBA No.: 25,907
Brian F. McMahon, WSBA No.: 45,739
E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness^PLLC

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 6

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1201 Third Avenue, Suite 3600
Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

DECLARATION OF PETER QUINLAN IN
SUPPORT OF BOMBARDIER'S MOTION FOR
PRELIMINARY INJUNCTION (2:18-cv-01543-
RAJ) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100