Honorable Judge Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BOMBARDIER INC., <br><br> Plaintiff, <br><br> v. <br><br> MITSUBISHI AIRCRAFT CORPORATION, MITSUBISHI AIRCRAFT CORPORATION AMERICA INC., AEROSPACE TESTING ENGINEERING & CERTIFICATION INC., MICHEL KORWIN-SZYMANOWSKI, LAURUS BASSON, MARC-ANTOINE DELARCHE, CINDY DORNÉVAL, KEITH AYRE, AND JOHN AND/OR JANE DOES 1-88, <br><br> Defendants. | No. 2:18-cv-01543-RAJ <br><br> BOMBARDIER INC.'S REPLY TO AEROTEC DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION <br><br> **NOTE ON MOTION CALENDAR: JANUARY 4, 2019** <br><br> ORAL ARGUMENT REQUESTED |

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
 (2:18-cv-01543-RAJ)

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. THE INDIVIDUAL DEFENDANTS' ADMISSIONS
DEMONSTRATE A BREACH OF CONTRACT.................................................2

    A. Each of the Individual Defendants Is Subject to Various
Obligations to Bombardier ........................................................................3

    B. Undisputed Evidence Shows Breach of the Individual
Defendants' Obligations ............................................................................6

    C. Bombardier's Breach Claims Are Not Preempted ....................................7

III. BOMBARDIER HAS SHOWN A HIGH LIKELIHOOD OF
SUCCESS FOR ITS CLAIMS OF MISAPPROPRIATION .................................8

    A. Bombardier Has Identified Trade Secrets .................................................8

    B. The Individual Defendants Misappropriated the Trade Secrets .................9

    C. AeroTEC Misappropriated the Trade Secrets ............................................9

IV. BOMBARDIER HAS SHOWN IRREPARABLE HARM .................................11

V. THE BALANCING OF THE EQUITIES CLEARLY FAVORS
BOMBARDIER ...................................................................................................11

VI. THE PUBLIC INTEREST WEIGHS IN BOMBARDIER'S FAVOR..................12

VII. CONCLUSION ....................................................................................................12

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**Cases**

*Boeing Co. v. Sierracin Corp.*,

   108 Wash. 2d 38 (Wash. 1987) ...................................................................................... 7

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*,

   145 P.3d 1253 (Wash. Ct. App. 2006) ............................................................................ 4

*Earthbound Corp. v. MiTek USA, Inc.*,

   2016 WL 4418013 (W.D. Wash. Aug. 19, 2016) .......................................................... 10

*Enters. Int'l v. Int'l Knife & Saw, Inc.*,

   2013 U.S. Dist. LEXIS 168289 (W.D. Wash. Nov. 26, 2013) ........................................ 7

*Gaglidari v. Denny's Rests.*,

   117 Wash. 2d 426 (Wash. 1991) ...................................................................................... 4

*Labriola v. Pollard Grp., Inc.*,

   152 Wash. 2d 828 (Wash. 2008) ...................................................................................... 5

*Mattel, Inc. v. MGM Entm't Inc.*,

   782 F. Supp. 2d 911 (C.D. Cal. 2010) ............................................................................. 5

*Mills v. Bank of Am., N.A.*,

   No. 3:14-cv-05238, 2014 U.S. Dist. LEXIS 117563 (W.D. Wash. Aug. 22, 2014) ........ 5

*Modumetal, Inc. v. Xtalic Corp.*,

   4 Wash. App. 2d 810 (Wash. Ct. App. 2018) .................................................................. 7

*Pine River State Bank v. Mettille*,

   333 N.W.2d 622 (Minn. 1983) ......................................................................................... 4

*Sampson v. Jeld-Wen Inc.*,

   2015 U.S. Dist. LEXIS 181232 (E.D. Wash. Dec. 18, 2015) ......................................... 4

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - ii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*,
   427 P.3d 688 (Wash. Ct. App. 2018) ................................................................... 7

*Thola v. Henschell*,
   140 Wash. App. 70, 164 P.3d 524 (Wash. Ct. App. 2007) .................................... 9

*Thompson v. St. Regis Paper Co.*,
   102 Wash. 2d 219 (Wash. 1984) ..................................................................... 3, 4

**Statutes**

RCW 19.108.020 ................................................................................................... 10

RCW 19.108.900 ..................................................................................................... 7

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## I. INTRODUCTION

The relief sought by Bombardier is extremely narrow: effectively destroy the eleven Bombardier-confidential documents that were inappropriately kept by the departing employees after they ended their employment with Bombardier. The individual defendants concede that they possess the Bombardier documents. The act of keeping these documents (which do not belong to them) itself establishes a breach of contract and misappropriation. Although the individuals suggest that the original reasons for taking the documents were benign—a position that the evidence is unlikely to substantiate—that position does not undermine the critical need for the narrow relief sought by Bombardier. The motion should be granted.

In their opposition brief, the defendants spill much ink on an alleged anti-poaching scheme that has nothing to do with anything pleaded in this case or the relief sought by Bombardier's motion. Caught in the act of luring away specific certification engineers with access to specialized, trade secret information—by placing billboards and holding recruiting events right next to Bombardier's facilities, and by using an individual still employed by Bombardier to further its efforts from the inside—AeroTEC now complains about Bombardier's attempts to raise its concerns directly with AeroTEC and MITAC. Of course Bombardier was concerned—and rightly so. AeroTEC and MITAC recruited approximately 90-plus Bombardier employees and placed most in roles that require them to perform the exact same certification duties they had performed for Bombardier's aircraft. And then, as a sudden consequence, the certification efforts for MITAC's competing MRJ began progressing. This case aims to stop that wrongful conduct, and this motion relates only to corralling the tip of the iceberg—by removing from the defendants' possession the eleven Bombardier documents they stole and emailed to themselves on the way out of Bombardier and into AeroTEC, MITAC, or MITAC America.

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

The supposed justification of the individual defendants' conduct is suspect to say the least. One allegedly wanted to keep working on Bombardier documents after his employment ended, out of the goodness of his heart. He never actually performed any further work, of course, but he does concede having reviewed the documents after departing Bombardier.[1] Another individual allegedly needed the documents for a flight test, despite the fact that the vast majority of the documents had nothing to do with her responsibilities.[2] And according to counsel, stealing those documents was, in any event, fine so long as the Hotmail and Yahoo email accounts used were secure. As for AeroTEC, it says that it searched its servers and *presently* has no electronic document with the *exact* filename of the eleven documents in question, saying nothing about any hard copies or electronic copies with a modified filename.

Importantly, none of these sentiments weigh against the preliminary injunction sought here. Keeping Bombardier's property after employment ended violates the individuals' obligations—plain and simple. Keeping those confidential documents was *per se* an "improper means" of acquisition, and the injunctive relief sought here is narrowly tailored to redress that specific wrong. Bombardier respectfully requests the Court grant its motion.

## II. THE INDIVIDUAL DEFENDANTS' ADMISSIONS DEMONSTRATE A BREACH OF CONTRACT

Based on the evidence submitted with the Complaint as well as the individual defendants' own declarations, there can be no doubt that the individual defendants wrongly possess Bombardier-confidential materials, in breach of their obligations to Bombardier. This strong evidence demonstrates a likelihood of success on the merits, and it firmly supports, if not establishes, the merits of Bombardier's breach claims. Bombardier appropriately seeks

---

[1] *See* Declaration of Peter Quinlan in Support of Bombardier Inc.'s Motion for Preliminary Injunction ("Quinlan Decl."), Dkt. No. 85, at ¶¶ 2-6 (explaining Mr. Basson was neither instructed nor permitted to perform work on the documents after he left Bombardier).

[2] *See* Declaration of Francesco Longo in Support of Bombardier Inc.'s Motion for Preliminary Injunction ("Longo Decl."), Dkt. No. 84, at ¶¶ 2-9 (explaining Ms. Dornéval was neither instructed nor permitted to retain documents after she left Bombardier).

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

the effective destruction of the pertinent Bombardier-confidential materials. The individual defendants have not even attempted to demonstrate, much less actually demonstrate, any prejudice for the relief sought here.

Simply put, a departing employee may not steal or retain confidential materials from its former employer. At the bare minimum, these facts present the prototypical case for preliminary relief. Every day that the individuals are allowed to keep (and do whatever they want with) Bombardier's confidential materials, while performing essentially the same job for the benefit of a direct competitor, is another day that imposes significant harm on Bombardier. By comparison, an injunction ordering the destruction of these Bombardier materials poses no prejudice or harm to the individual defendants. Bombardier respectfully requests that the Court grant the narrow preliminary injunction sought here.

### A. Each of the Individual Defendants Is Subject to Various Obligations to Bombardier

While employed at Bombardier, each individual defendant was provided a copy of Bombardier's Code of Ethics, and each signed an acknowledgement of such receipt. Each continued to work for Bombardier after receiving the Code of Ethics, and accordingly continued to receive a salary. As a result, the individual defendants are contractually bound by the confidentiality obligations of the Code of Ethics.

Washington state law specifically recognizes the enforceability of employee handbooks and codes, and defendants' inapposite case law does not suggest otherwise. For instance, the defendants cite the Washington Supreme Court's decision in *Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 228-229 (Wash. 1984), but they do not faithfully represent the Supreme Court's holding. The Supreme Court expressly recognized the validity and enforceability of an employer's corporate policies against its employees, stating:

> When the employment relationship is not evidenced by a written contract and is indefinite in duration, the parties have entered into a contract whereby the employer is essentially obligated to only pay the employee for any work performed. In this contractual

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 3

> relationship, the employer exercises substantial control over both the working relationship and his employees by retaining independent control of the work relationship. Thus, the employer can define the work relationship. Once an employer takes action, for whatever reasons, an employee must either accept those changes, quit, or be discharged. ***Because the employer retains this control over the employment relationship, unilateral acts of the employer are binding on his employees and both parties should understand this rule***.

*Id*. at 229 (emphasis added).  A plethora of other cases recognize the enforceability of an employee code, and recognize that continued employment serves as sufficient consideration for the obligations imposed on the employee.  For example, the Washington Supreme Court has held:

> This handbook formed a contract between defendant and plaintiff. Defendant extended plaintiff an offer by giving her the manual and explaining its provisions. Plaintiff accepted the offer by signing the acknowledgment form agreeing to abide by its provisions. The consideration is found in plaintiff actually working for defendant.
>
> * * *
>
> Plaintiff's receipt of the handbook satisfied the requisites of contract formation. Defendant extended an offer by providing the handbook and training plaintiff on alcoholic beverage service in accordance with the requirements contained in the handbook. Plaintiff accepted the offer by signing for the handbook and participating in the training. The consideration was plaintiff's continuation of her employment. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983) (where an employee retains employment with knowledge of new or changed conditions, although free to leave, the employee supplies the necessary consideration).

*Gaglidari v. Denny's Rests.*, 117 Wash. 2d 426, 433-36 (Wash. 1991); *accord Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006) (under Washington law, employee handbooks may be unilaterally modified with reasonable notice); *Sampson v. Jeld-Wen Inc.*, 2015 U.S. Dist. LEXIS 181232, at *8 (E.D. Wash. Dec. 18, 2015) ("The Supreme Court of Washington has held that an employee handbook can provide the

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  predicate for a contract modification. Offer can be found where the employer gave plaintiff a
2  manual or handbook; the language in the handbook can constitute an offer.  The employee's
3  retention of employment with the employer can constitute acceptance. Consideration can be
4  found when the plaintiff continues to work for the employer." (citations omitted)).

5  Defendants cite no case suggesting that such confidentiality obligations are not
6  enforceable.  In fact, none of the cases cited by defendants actually supports the novel
7  proposition that defendants here espouse—*i.e.,* that an employee may freely ignore its
8  employer's Code of Ethics and steal company-confidential documents.  For example, in
9  *Mattel*, the California court held that an employee of one company was not bound by the
10 Code of Conduct *of a different company*.  *Mattel, Inc. v. MGM Entm't Inc.*, 782 F. Supp. 2d
11 911, 993 (C.D. Cal. 2010) (holding that the Mattel Code of Conduct did not apply because of
12 "the undisputed fact that [the individual involved] was . . . not an employee of either Mattel or
13 Mattel Mexico").  Next, *Labriola* concerned only a separate non-compete agreement, which is
14 governed by specific rules and considerations not at issue in this litigation.  *Labriola v.*
15 *Pollard Grp., Inc.*, 152 Wash. 2d 828, 831 (Wash. 2008).  Finally, *Mills* relates to a rejected
16 mortgage application, which likewise is inapposite to the situation involved here.  *Mills v.*
17 *Bank of Am., N.A.*, No. 3:14-cv-05238, 2014 U.S. Dist. LEXIS 117563, at *11 (W.D. Wash.
18 Aug. 22, 2014).

19 Moreover, the individual defendants who were Canadian employees have additional
20 obligations to Bombardier.  According to Canadian common law, an employee owes a duty of
21 good faith and fidelity to her employer, and a departing employee may not take or use against
22 the employer any of the employer's trade secrets or confidential information, whether during
23 or after employment. *See* Declaration of John D. Denkenberger in Support of Bombardier
24 Inc.'s Motion for Preliminary Injunction ("JDD Decl."), filed concomitantly herewith, at Ex.
25 A, 2 Doing Business in Canada § 22.04 at 3; *id.* at Ex. B, 33 Man. L.J. 1 at 14.

26
27

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

### B. Undisputed Evidence Shows Breach of the Individual Defendants' Obligations

Defendants' brief asserts that it was not *per se* wrong to email company materials to a secure personal email account. Regardless of whether that proposition is true, it is unquestionably not true that the individual defendants were allowed to steal Bombardier-confidential documents and retain them post-employment—regardless of how secure the involved personal email accounts were.

The Code of Ethics makes clear that "Company property should only be used for legitimate business purposes." Complaint, Ex. D. at 13. It required the individual defendants to "not divulge confidential information to anyone other than the person or persons for whom it is intended" and to "maintain such confidentiality at all times . . . ." *Id*. at 15. Finally, the Code required employees to "not expose [Company property] to loss, damage, misuse or theft." *Id*. at 13.

As a result, the individuals violated their obligations to Bombardier by (1) accessing, emailing, or retaining confidential Bombardier documents beyond those needed for their respective specific tasks; (2) transmitting information to themselves for non-Bombardier use (and, it turns out, for the benefit of a future employer); and (3) failing to return or delete Bombardier-confidential information upon the end of their employment.

Each of the individual defendants has breached his respective obligations in one or more of the above ways. *See* Dkt. No. 4 at 5-6; Burns Decl. ¶¶ 3-22, Exs. A-J thereto; Tidd Decl. ¶¶ 2-7, Ex. A thereto. And each of their own declarations conclusively demonstrates that they have improperly retained Bombardier-confidential information. *See* Basson Decl., Dkt. No. 62, at ¶ 13. For defendants to suggest that this theft was permitted because they used an allegedly secure personal email account defies common sense and the employees' express obligations to Bombardier. *See* Quinlan Decl., at ¶¶ 2-6; Longo Decl., at ¶¶ 2-9.

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 6

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

### C. Bombardier's Breach Claims Are Not Preempted

Notwithstanding defendants' arguments to the contrary, Bombardier's trade secret misappropriation claims do not preempt its claims for breach of contract. As defendants themselves concede, the WUTSA does not preempt contractual obligations to protect confidential information. RCW 19.108.900(1)-(2) (WUTSA "does not affect . . . [c]ontractual or other civil liability for relief that is not based upon misappropriation of a trade secret."). Several courts have expressly declined to apply the preemption doctrine to contractual claims. *See, e.g.*, *Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 48 (Wash. 1987) (en banc); *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688 (Wash. Ct. App. 2018); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (Wash. Ct. App. 2018) (holding that "common law confidentiality claims are not preempted by its trade secrets claims, regardless of whether they are based on the same facts"); *Enters. Int'l v. Int'l Knife & Saw, Inc.*, 2013 U.S. Dist. LEXIS 168289 (W.D. Wash. Nov. 26, 2013) ("While Plaintiffs' contract claims rest on the same set of core facts as their misappropriation claim, state and district courts which have adopted a uniform trade secret act have typically applied preemption only to non-contract civil causes of action."). Thus, preemption simply does not apply to all of the Bombardier-confidential information that was taken and not deleted.[3]

Moreover, the preemption doctrine, at its core "precludes duplicate recovery for a single wrong." *Enters. Int'l*, 2013 U.S. Dist. LEXIS 168289, at * 25. Obviously, no issues of double recovery are present in Bombardier's preliminary injunction motion. As a result, Bombardier has shown much more than a likelihood of success as to its breach claims against the individual defendants.

---

[3] Additionally, Bombardier's breach claims are based on actions taken in violation of agreements in Canada and Kansas. The WUTSA preempts only "conflicting tort, restitutionary, and other law *of this state* . . . ." RCW 19.108.900(1) (emphasis added). Washington state law cannot preempt breach claims based on breaches of contracts covered by the state law of Kansas or of Canada.

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## III. BOMBARDIER HAS SHOWN A HIGH LIKELIHOOD OF SUCCESS FOR ITS CLAIMS OF MISAPPROPRIATION

### A. Bombardier Has Identified Trade Secrets

The eleven documents in question plainly embody Bombardier trade secrets. The declaration of Daniel Burns and Exhibits A through J thereto, as well as the declaration of David Tidd and its exhibit, plainly and definitively identify and establish Bombardier trade secrets. *E.g.*, Dkt. No. 5 (Burns Decl., at ¶¶ 5(a)-(o), 11(a)-(f), 15, 17, 20, 23-25); Dkt. No. 7 (Tidd Decl. at ¶¶ 5-7). Those declarations explain the immense value in the documents. *Id*. And even a quick review of the documents themselves demonstrates their confidential nature.

Defendants do not challenge the adequacy of the secrecy measures; instead, defendants challenge whether the documents contain valuable secret information. But defendants' argument is futile. First, they attempt to show that a subset of the eleven documents contains some amount of public information, such as known formulae. These same documents, however, also include a plethora of confidential information. The fact that certain of the documents may further include some public information does not undermine the confidential nature of the documents as a whole. As one example, in the documents concerning lag effect in the Pitot-static system, the document recites known formulae on pages 6-7, but the document also contains information concerning confidential aspects of how to test and certify the system. Dkt. No. 5 (Burns Decl.) at Ex. D. Just because a document includes a description of a mathematical formula does not mean that the entirely of the document somehow lacks confidentiality of its remaining information. As another example, while the documents concerning the Skew Detection System list aspects of a high-lift system that are known, the applicable regulations, details, and testing parameters/protocols provided in the documents are highly confidential and valuable. *Id.* at Ex. A-B; *see also* Quinlan Decl. at ¶¶ 7-10. Moreover, significant time and money was spent running the tests and analyzing the results contained in these documents. That is unquestionably valuable information to a competitor trying to certify its own aircraft. Defendants' cherry-picking certain publicly

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

available information contained within the otherwise confidential documents cannot and does not refute the fact that the documents are confidential and contain Bombardier trade secrets.

### B. The Individual Defendants Misappropriated the Trade Secrets

Defendants' brief glosses over misappropriation by the individual defendants. But the evidence demonstrates that the individuals acquired the trade secrets via improper means. By keeping the documents as their own after the end of their employment with Bombardier, the individual defendants misappropriated these documents. That act alone demonstrates acquisition by improper means. Both the WUTSA and the DTSA expressly define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." By failing to return or destroy the documents at the end of their employment, the individual defendants committed theft by conversion and breached their confidentiality obligations.

### C. AeroTEC Misappropriated the Trade Secrets

Similarly, AeroTEC misappropriated the Bombardier trade secrets. To begin with, AeroTEC is vicariously liable for the acts of misappropriation by its employees, if those acts are within the scope of their AeroTEC employment. As a result, every misappropriation by the individual defendants that has occurred during their employment by AeroTEC qualifies as an act of misappropriation by AeroTEC. *See, e.g.*, *Thola v. Henschell*, 140 Wash. App. 70, 164 P.3d 524, 528 (Wash. Ct. App. 2007) ("[W]e agree with the majority of jurisdictions addressing the issue and conclude that one may violate the UTSA vicariously and be held responsible for such violation."). Moreover, there is no dispute that AeroTEC is well aware of the duty of confidentiality that the individual defendants owe to Bombardier. Thus, any use or disclosure by any former Bombardier employee while employed by AeroTEC, and any other use by AeroTEC, makes AeroTEC liable for misappropriation.

The circumstantial evidence of widespread misappropriation by AeroTEC is overwhelming, as shown in the Complaint and in Bombardier's opening brief. Dkt. No. 1 at

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

¶¶ 49-69; Dkt. No. 4 at 1-9, 17-19. The undisputed evidence shows that AeroTEC specifically targeted and recruited Bombardier employees to work on certification efforts for the MRJ, and that they actually have worked and continue to work on those very efforts for AeroTEC. Additionally, the MRJ program has just begun its "final phase of Type Certification" notwithstanding that the MRJ was significantly redesigned *less than 2 years ago* due to certification challenges. *Id.* at ¶ 47.[4] With the MRJ suddenly ahead of schedule for purposes of obtaining type certification, the circumstantial evidence of misappropriation is very strong. *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 973 (9th Cir. 1991) (affirming preliminary injunction based on circumstantial evidence); *see also* RCW 19.108.020(1) ("Actual or threatened misappropriation may be enjoined."); *Earthbound Corp. v. MiTek USA, Inc.*, 2016 WL 4418013, at *10-11 (W.D. Wash. Aug. 19, 2016).

The declarations from defendants' forensic experts speak more loudly for what they omit than what they include. According to Mr. Perrillo, a file with the exact filenames of the eleven documents is not found on AeroTEC servers. AeroTEC makes no representation as to whether hard copies of the eleven documents exist at AeroTEC. AeroTEC also makes no representation whether portions of the eleven documents—as opposed to the documents in their entirety—have ever been transmitted to or used by AeroTEC or its employees. And AeroTEC does not even make any representation regarding whether any of the eleven files exist within its servers under a changed filename. The minuscule representation put forward by AeroTEC—which Bombardier has no means to challenge prior to discovery—does not outweigh the overwhelming evidence of misappropriation set forth in Bombardier's Complaint and preliminary injunction motion.

In sum, the evidence presented demonstrates that Bombardier has identified trade secrets, that the individual defendants misappropriated them by knowingly emailing the

---

[4] *See* JDD Decl. at Ex. C, "Mitsubishi Aircraft Corporation Receives Type Inspection Authorization; Program milestone begins final phase of Type Certification for Japan's first commercial jet," ENP Newswire, Dec. 24, 2018.

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 10

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

documents to themselves for personal purposes and then maintaining those documents after their employment ended, and that AeroTEC has misappropriated the trade secrets through its vicarious liability and additionally through the high likelihood of its use of that information in furtherance of its certification efforts for the MRJ.

## IV. BOMBARDIER HAS SHOWN IRREPARABLE HARM

MITAC, MITAC America, and AeroTEC are attempting to certify an aircraft that will directly compete with Bombardier's offerings. In an attempt to speed that process up, they have availed themselves of Bombardier's confidential information. As a result, the irreparable harm to Bombardier from AeroTEC's use of Bombardier secrets, including expediting the certification process for a competing jet, is clear and unmistakable.

Nonetheless, in an attempt to suggest that Bombardier has delayed seeking the preliminary relief, Defendants point to the timeframe between the individual defendants leaving Bombardier and the filing of the Complaint in this action. The more appropriate comparisons would be just how quickly Bombardier raised its concerns to MITAC and AeroTEC—immediately. In the interim, Bombardier and MITAC engaged in settlement discussions in an effort to avoid having to file a Complaint. When it became clear that the defendants had no intention of continuing good-faith discussions to avoid litigation, Bombardier immediately brought suit.

## V. THE BALANCING OF THE EQUITIES CLEARLY FAVORS BOMBARDIER

The scope of relief sought by the preliminary injunction is very narrow—and far less than the relief that will ultimately be sought at trial. All that Bombardier seeks is for the eleven, specific documents to be quarantined[5] and effectively deleted.

There is simply no justifiable reason for any individual defendant or for AeroTEC to continue to possess these documents. Ordering their effective destruction simply safeguards

---

[5] Prior to deletion, appropriate records must be created detailing the documents' use, forwarding, editing, and so forth. Once those records have been created (and produced), the documents should be professionally deleted to ensure no further use.

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 11

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

that no continuing use can be made of the documents. The individual defendants have not identified any prejudice to them should the Court order the documents effectively destroyed.

Moreover, if AeroTEC is correct that it does not possess any of the eleven documents, then there cannot be any prejudice to it. If true, then the injunction places no burden at all on AeroTEC (other than to impose a continuing obligation to destroy the documents should they ever fall into AeroTEC's possession). Simply put, the injunction Bombardier seeks is very narrow. It imposes no undue burden at all on defendants. And while it does not come close to eliminating the harm Bombardier has faced and continues to face, it at least provides one measure of future deterrence to ongoing misappropriation.

## VI. THE PUBLIC INTEREST WEIGHS IN BOMBARDIER'S FAVOR

Having little to say to defend their own actions, defendants again attempt to shift the blame to Bombardier by pointing to alleged "anticompetitive" acts. But that is nonsense. There is nothing anticompetitive about ordering the defendants to effectively destroy the eleven Bombardier-confidential documents that the individual defendants stole upon their departure from Bombardier.

To be clear, Bombardier's motion does not seek to restrict or limit future employment opportunities for its current or former employees. Bombardier's motion does not seek to restrict the activities of the individual defendants for AeroTEC. Thus, there cannot possibly be (and there is not) any legitimate anticompetitive concerns here.

## VII. CONCLUSION

For the foregoing reasons, as well as those identified in its opening brief, Bombardier respectfully requests that the Court grant Bombardier's motion for a preliminary injunction.

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Dated this 4th day of January, 2019.

                              CHRISTENSEN O'CONNOR
                              JOHNSON KINDNESS<sup>PLLC</sup>

                              <u>s/ John D. Denkenberger</u>
                              John D. Denkenberger, WSBA No.: 25,907
Brian F. McMahon, WSBA No.: 45,739
E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness<sup>PLLC</sup>
1201 Third Avenue, Suite 3600
Seattle, WA 98101-3029
Telephone: 206.682.8100
Fax: 206.224.0779
E-mail: john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 13

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Jerry A. Riedinger<br>PERKINS COIE LLP<br>Email:<br>JRiedinger@perkinscoie.com<br>docketsea@perkinscoie.com<br>lshaw@perkinscoie.com<br>sporter@perkinscoie.com | Mack H. Shultz<br>PERKINS COIE LLP<br>Email:<br>MShultz@perkinscoie.com<br>docketseapl@perkinscoie.com<br>sbilger@perkinscoie.com | Mary Z. Gaston<br>PERKINS COIE LLP<br>Email:<br>MGaston@perkinscoie.com<br>docketsea@perkinscoie.com<br>jstarr@perkinscoie.com |
| James Sanders<br>PERKINS COIE LLP<br>Email:<br>JSanders@perkinscoie.com<br>RBecken@perkinscoie.com<br>docketsea@perkinscoie.com<br>jdavenport@perkinscoie.com | Shylah R. Alfonso<br>PERKINS COIE LLP<br>Email:<br>SAlfonso@perkinscoie.com<br>docketsea@perkinscoie.com | |

Attorneys for Mitsubishi Aircraft Corporation America Inc.

| | |
|---|---|
| Richard J. Omata<br>KARR TUTTLE CAMPBELL<br>Email: romata@karrtuttle.com<br>jnesbitt@karrtuttle.com<br>swatkins@karrtuttle.com | Mark A. Bailey<br>KARR TUTTLE CAMPBELL<br>Email: mbailey@karrtuttle.com<br>jsmith@karrtuttle.com<br>mmunhall@karrtuttle.com<br>sanderson@karrtuttle.com |

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

Daneil T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com

                                  s/ John D. Denkenberger

                                  John D. Denkenberger, WSBA No.: 25,907
                                  Brian F. McMahon, WSBA No.: 45,739
                                  E. Lindsay Calkins, WSBA No.: 44,127
                                  Christensen O'Connor Johnson Kindness[PLLC]

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 14

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1201 Third Avenue, Suite 3600
Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

BOMBARDIER'S REPLY TO AEROTEC
DEFENDANTS' OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION
(2:18-cv-01543-RAJ) - 15

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100