# EXHIBIT A

## 2 Doing Business in Canada § 22.04

Doing Business in Canada  >  PART IV Regulation of Business  >  CHAPTER 22 Employment and Labour Law

# Author

by the Labour, Employment and Human Rights Department of Fasken Martineau DuMoulin LLP

## § 22.04 Employment Law (The Individual Contract of Employment)

**[1] Hiring**

**[a] General.**

The law prescribes certain employment-related rights and duties prior to commencement of the employment relationship. Human Rights Codes prohibit discrimination in hiring on certain grounds, and the employer and job applicant may each be liable to the other in tort if they make false statements in regard to their background or credentials for the job (misrepresentation by job applicant), or the position for which they are being considered or have made application (fraudulent or negligent misrepresentation). A list of Canadian human rights statutes is found in Appendix 22-4, and a comparative chart describing the prohibited grounds of discrimination in employment for each jurisdiction is found in Appendix 22-14.

**[b] Discrimination in Hiring.**

A primary constraint on employers in hiring employees is not to discriminate on certain prescribed grounds. Canada, the ten provinces and three Territories each have human rights statutes that prohibit discrimination in employment on specified grounds for those employers and employees within their jurisdiction. And this includes prohibitions against discrimination during the hiring process.

It must be emphasized that prohibitions against discrimination are only found in legislation as it does not offend a common law principle or standard. The Supreme Court of Canada in *Christie v. The York Corporation*[1] upheld the right of a tavern to refuse to serve a customer because he was a "negro". The court stated, absent legislation prohibiting such conduct, the common law principle of "freedom of commerce" permitted people to do business, or refuse to do business, with whoever they wish.

**[c] Misrepresentation by Job Applicant.**

Prospective employees who falsify their work history or credentials during the hiring process may be liable to the employer in tort for misrepresentation. It may be grounds for summary dismissal if the falsification in any way induced the employer to hire the job applicant, and was either a fundamental requirement for the job or represented a serious breach of trust and honesty.[2] This rule applies even where the dishonesty was only discovered long after the employment relationship commenced.

---

[1] [194] SCR 139: In Seneca College v. Bhaduria [1981] 2 SCR 181, the Supreme Court rejected the claim of a tort of discrimination. The court concluded that the argument for such a tort had been foreclosed by the introduction of legislation prohibiting discrimination in employment.

[2] Clark v. Coopers & Lybrand Consulting Group (2002), 19 CCEL (3d) 186 (Ont. CA).

**[d] Negligent Misrepresentation by Employer.**

Employers who mislead job applicants may be found liable for the tort of negligent misrepresentation. The origin of this tort is the House of Lords decision in *Hedley Byrne and Co. Ltd. v. Heller & Partners, Ltd*.[3] Although not an employment law case, the decision established that a duty of care arises where someone who possesses a particular skill applies that skill to assist another person who relies on that skill.[4] The Supreme Court of Canada in *Queen v. Cognos Inc*.[5] declared that this duty of care is owed by employers to prospective employees during the hiring process. The Supreme Court found that the person conducting the interview of Queen for a position at Cognos had made inaccurate statements in regard to funding for the project for which he was being hired and that, in part, Queen relied on these statements in accepting the job. The court stated that the fact that the interviewer believed that his statements were true at that time was not a defence. The interviewer's failure to take reasonable care to ensure the accuracy of his statements met the test of negligent misrepresentation. Subsequently, in *Lysko v. Braley*,[6] the Ontario Court of Appeal stated that each element of the claim of negligent misrepresentation must be pleaded. Specifically: (i) the precise nature and particulars of the alleged misrepresentation, that is, when, by whom, to whom and in what manner was the alleged misrepresentation made; (ii) the falsity of the misrepresentation; (iii) the intention for the person to rely on the misrepresentation; (iv) the detrimental effect on the person relying on the alleged misrepresentation; and (v) the consequential loss or damage.

**[e] Deceit or Fraudulent Misrepresentation by Employer.**

Employers who deliberately, as opposed to negligently, mislead a prospective employees about the job opportunity to persuade them to accept the position, are liable for the tort of deceit or a claim in contract called fraudulent misrepresentation if the person relies upon false representation in accepting the job offer and suffers a loss as a consequence. There are very few legal decisions in which deceit or fraudulent misrepresentation arising out of a job offer has been claimed, perhaps reflecting the fact that very few employers lie to prospective employees.

## [2] Obligations and Rights of the Employer and the Employee

The employment relationship has become one of the most important existing social relationships in Canada, governed by a complex legal framework encompassing common law principles, as well as a series of laws and regulations aimed at regulating various activities in the workplace.

For a contract of employment to exist, the general requirements of contract law must be satisfied. The elements of offer, acceptance, intent to create legal obligations and consideration must all be present.[7]

The basic individual contract of employment is governed by the common law of each of the provinces, other than Quebec, where the employment contract is governed by the Civil Code. The terms of the employment contract, together with the rules of the common law or the Civil Code, as the case may be, determine the basic obligations and rights, both express and implied, of the employer and the employee. To these basic obligations and rights are added rights and obligations specifically created by statute.

This principle holds true for employees in both provincially and federally regulated industries, the former finding their rights and obligations arising from the common law or the Civil Code and provincial statutes, the latter from the common law or the Civil Code and federal statutes.

The fundamental obligations of the employer are the obligations to provide employees with the work for which they were hired, to remunerate them for the work which they perform, and to protect the health and safety of employees.

The employer also has an obligation to permit the employees to perform their work, by rendering the premises accessible to them and providing them with the tools and information necessary to accomplish the work.

---

[3] [1964] 2 AC 465.

[4] Ibid., 15.

[5] [1993] 1 SCR 87.

[6] (2006), 79 O.R. (3d) 721 (C.A.).

[7] For the requirements of forming a contract *see* Chapter 7, Contracts, *above*.

The obligation to protect the health and safety of the employee comprises both negative and positive aspects. The employer cannot require the employee to work in conditions susceptible of endangering his health and safety and the employer must provide the employee with clean and safe working conditions.

Finally, employers also have a duty to treat their employees with "civility, decency, respect and dignity".[8]

As for employees, their principal obligations are to execute the work and a general obligation of good faith or fidelity toward the employer. The implied duty of good faith or fidelity encompasses various requirements including the obligation to obey the lawful orders of their employer, perform their duties competently, not to compete with their employer, and not to disclose confidential information.[9]

The intensity of the employee duty of good faith or fidelity varies with the nature of the function and the degree of responsibility held by the employee within the enterprise.


### [3] Termination of the Individual Contract of Employment

Individual contracts of employment fall into two categories: those lasting for a specific period or for completion of a prescribed task or project, as fixed-term contracts, and those lasting for an indeterminate time, contracts of indefinite hire. Either type may be terminated at any time by mutual consent. Contracts for a fixed term come to an end at the specified time, or completion of the task or project. Contracts of an indefinite hire may, as a general rule, be terminated by either party at will, upon giving the other party reasonable notice.[10]

In the absence of reasonable notice or before the end of the specified time or event, an employer may terminate the contract only if there is just cause such as some serious misconduct on the part of the employee that allows the employer to treat the contract as repudiated, or at common law under the doctrine of "contract frustration".[11] Failure to demonstrate just cause or contract frustration may give rise to a claim for wrongful dismissal and liability for the resulting damages.

While, theoretically, the employer benefits from the same protection and is entitled to damages when an employee quits without giving reasonable notice, the requirement of proving a loss in profit or production as a result of the lack of notice, coupled with the likely impecuniosity of the employee will generally preclude any claim for damages.

The United States concept of "employment-at-will," whereby the employment relationship may be terminated by either party without specific notice, is a concept that is not followed in Canada. Rather, as indicated above, terminations must be "for cause", contract frustration, or must be on "reasonable" notice, unless the parties have expressly contracted otherwise.

The reasonableness of the notice to which an employee is entitled to be provided must be decided with reference to each particular case. The general rule is that notice should be provided in sufficient time to enable the employee to seek similar alternative employment. The courts have consistently stated that the factors for determining reasonable notice at common law are the employee's age, employment position, length of service and the availability of comparable alternative employment.[12] The principle underlying these factors is the older you are, the more senior your position, the longer your period of employment and the more difficult the employment environment, the greater the entitlement to reasonable notice.

In addition to the common law entitlement to reasonable notice, most jurisdictions have legislated minimum statutory notice periods for the termination of individual contracts of employment. These notice periods are discussed in detail in § 22.07[a]. These statutory periods are generally treated as minimum periods allowing a court to provide for a period in excess of the statute when the facts of the particular case appear to justify it.

---

[8] *Lloyd v. Imperial Parking Ltd.* (1996), 25 CCEL (2d) 97 (Alta. QB). The employee quit his job after enduring months of verbal abuse from his superior. The court determined he had been constructively dismissed, finding that the employer had breached the implied duty to treat the employee with "civility, decency, respect and dignity".

[9] The classic common law precedent for the implied duty of good faith or fidelity owed by the employee to the employer is the English Court of Appeal decision in *Robb v. Green* [1895] 2 Q.B. 315 (C.A.).

[10] The concept of reasonable notice is discussed below at 22.04[7][b].

[11] The doctrine of contract frustration is discussed below at 22.04[6].

[12] The classic precedent for the fundamental factors determining reasonable notice is *Bardal v. Globe & Mail Ltd.* (1960), 24 D.L.R. (2d) 140, [1960] O.W.N. 253, [1960] O.J. No. 149 (H.C.J.).

#### [4] Cause for Dismissal

##### [a] General.

In asserting just cause for dismissal, an employer must show more than dissatisfaction with an employee's performance. Real misconduct or incompetence must be shown[13] and the onus is on the employer to establish on a balance of probabilities the grounds for a just cause dismissal.[14] Simply stated, the legal presumption on the termination of an employee is that it is a wrongful dismissal.

The term "just cause" has been defined in a number of court decisions. The British Columbia Supreme Court in *Leung v. Doppler Industries Inc.*,[15] for example, defined "just cause" as:

> [C]onduct on the part of the employee incompatible with his or her duties; conduct which goes to the root of the contract with the result that the employment relationship is too fractured to expect the employer to provide a second chance.

In the case of *O'Dwyer v. Dominion Soil Investigation Inc.*,[16] the Ontario Superior Court of Justice offered the following test:

> [A]bsent a flagrant dereliction of duty, it must be shown that something was done clearly inconsistent with the proper discharge of the employee's duties that reasonably indicates a risk of injury to the employer's interest through continued employment.

Clear examples of just cause include material dishonesty, for example theft, serious misconduct, incompetence or conduct incompatible with the employee's duties or prejudicial to the employer's business. The concept of just cause is, however, very much fact driven. As was stated by the Saskatchewan Court of Queen's Bench in *Smith v. General Recorders Ltd.*:[17]

> There is no compendium of employment misdemeanours which alone or in combination will justify the summary dismissal of an employee. Each case stands to be decided according to its own facts. Clearly though, it is not enough that an employer is displeased by the employee's performance. There must be some serious misconduct or substantial incompetence.

If an employer is not able to establish just cause, there was some debate in Canadian case law as to whether the establishment of "near cause" was an appropriate factor to take into consideration when determining reasonable notice. The "near cause" doctrine is the theory that an employee's misconduct or poor performance should still be taken into account, even if such acts do not meet the threshold standard of just cause. In 1998, the Supreme Court of Canada clearly rejected the "near cause" doctrine.[18] "Just cause" will be assessed in the context of the particular workplace., In some circumstances, the courts have held that a warning is a precondition to summary dismissal. Further, past conduct and conduct discovered subsequent to the dismissal may be considered. In all instances, if an employer condoned the alleged "just cause"—e.g., by failing to act in a timely fashion—that inaction may deprive the employer of its entitlement to dismiss for cause.

---

[13] Carveth v. Railway Asbestos Packing Company (1913), 4 O.W.N. 872 (Ont. H.C.); Boryski v. Chef-Redi Meats Inc. (1983), 1 C.C.E.L. 153 (Sask. Q.B.).

[14] Matheson v. Matheson International Trucks Ltd. (1984), 4 C.C.E.L. 271 (Ont. H.C.).

[15] 10 C.C.E.L. (2d) 147 (B.C.S.C.); appeal dismissed, 27 C.C.E.L. (2d) 285 (B.C.C.A.).

[16] [1999] O.J. No. 75 (Ont. Gen. Div.).

[17] 121 Sask. R. 296 (Q.B.).

[18] *Dowling v. Halifax (City)* [1998] 1 S.C.R. 22.

2 Doing Business in Canada § 22.04

The Supreme Court of Canada articulated the approach to determining whether or not there is just cause for termination in *McKinley v. BC Tel.*[19] It adopted a contextual and proportionality approach. The required test to be met by the employer is was the performance or conduct of the employee so unacceptable or offensive that it justified summary dismissal? In finding that the employee's acknowledged dishonesty was not grounds for a just cause dismissal, the Supreme Court in McKinley applied a "principle of proportionality", striking a balance between the severity of the employee's behavior and the punishment.

In assessing misconduct as grounds for a just cause dismissal, the court will consider such factors as: (i) the seriousness of the misconduct; (ii) was it planned or an aberration; (iii) was their prior misconduct for which the employee had been disciplined; (iv) were there any extenuating circumstances such as provocation or personal problems; (v) was the employee remorseful or defiant; (vi) had the employer in some manner condoned the misconduct; and (vii) did the employer exhibit procedural fairness in gathering all relevant facts and permitting the employee to respond.

From a practical standpoint, an employer asserting just cause bears a heavy onus. As it represents an all-or-nothing proposition, i.e., the employee may be summarily dismissed without notice or payment in lieu if cause is established, courts are generally reluctant to find that just cause exists except in the clearest cases. Employers must recognize that cause is extremely difficult to establish unless there is a fundamental element of dishonesty or serious misconduct.

**[b] Disobedience.**

Just cause for dismissal on the basis of employee disobedience will be shown when there has been a deliberate refusal to carry out clear, lawful, and unequivocal instructions[20] unless the employee is able to give a reasonable excuse for the non-performance sufficient to negate the existence of just cause.[21]

While in keeping with the proportionality test in *McKinley* an isolated act of disobedience will not be just cause for dismissal, an isolated act of grave and serious character that interferes with or prejudicially affects the conduct of the employer's business or constitutes a repudiation of an essential condition of employment, will constitute just cause.[22] Moreover, disobedience may be grounds for dismissal where it reflects a pattern of insubordinate behaviour for which the employee had been previously warned.

**[c] Insubordination or Insolence.**

Similarly, an employer who seeks to establish just cause on the grounds of insubordination or insolence must show either continued insolent activity or a particularly serious event that was destructive of the employment relationship. The question is, essentially, one of degree.[23] Again, the general rule is that the impact of an isolated act of insolence will rarely justify dismissal.[24]

As in disobedience, a reasonable excuse for insolent behavior, such as provocation by the employer, may negate the existence of cause.

**[d] Dishonesty or Theft.**

---

[19] [2001] 2 S.C.R. 161.

[20] Pierce v. Canada Trust Realtor (1986), 11 C.C.E.L. 64 (Ont. H.C.).

[21] Rajakaruna v. Regional Municipality of Peel (1981), 10 A.C.W.S. (2d) 522 (Ont. Co. Ct.).

[22] Donaldson v. Philippine Airlines Inc. (1985), 7 C.C.E.L. 229 (Ont. C.A.).

[23] Keighan v. Kool-Fire Ltd. (1985), 6 C.C.E.L. 196 (Ont. H.C.); Vatri v. Delco Wire and Cable Ltd. (1983), 19 A.C.W.S. (2d) 208 (Ont. Co. Ct.); Tarsilo v. Allied Chemical Can. Ltd. (1989), 68 Q.R. (2d) 288; appeal settled on consent 70 R. (3rd) 318n (C.A.).

[24] Moroz v. Avco Financial Services (1981), 7 A.C.W.S. (2d) 325 (B.C.S.C.).

Dismissal for dishonesty, unlike disobedience and insolence cases, focuses on the character of the employee rather than on any specific act, although some act of dishonesty is required to illustrate the manifestation of the character.[25] "It is not so much the misconduct itself, as the fact that he was capable of it, which justifies the dismissal."[26]

Because the focus is on the character of the employee, the employer need not show prejudice or damage to the business before just cause will be shown. All the employer must show is that the conduct was destructive of the essential trust that the employee-employer relationship required.[27] Not every dishonest act, however, is grounds for summary dismissal. In *MacNaughton v. Sears Canada Inc*.,[28] a minor infraction by the employee costing the employer $14.00 did not destroy the employment relationship.

### [e] Incompetence.

Incompetence represents a special case of cause and is dealt with somewhat differently by the courts. Canadian courts have said on numerous occasions that to establish just cause on the basis of incompetence, the employer must first establish that:

1. an objective standard of work that the employer desired or required was set;

2. this standard was communicated to the employee;

3. the employer provided suitable instruction to the employee if the employee did not initially hold himself or herself out to be able to perform the job to the standard set by the employer;

4. the employee was incapable of meeting the standard; and

5. there had been a warning to the employee that failure to meet the standard would result in dismissal (incidental to the warning, some cases have held that the employer must provide practical guidance on improvement of work methods or results).

### [f] Absenteeism.

Absenteeism or lateness may provide grounds for establishing just cause for termination. Courts will draw a distinction between "culpable" absenteeism and "innocent" absenteeism. Lateness, failure to follow proper absence notification procedures and absence without permission are the types of absences that are considered "culpable." If the employee does not provide a reasonable excuse for the conduct, culpable absenteeism can be dealt with in a disciplinary fashion and can result in constituting just cause for termination.[29]

Innocent absenteeism refers to those absences that an employee commits due to a legitimate medical or other reason. However, if the "innocent" absences reach high levels of frequency or duration, the possibility exists that an employer can also proceed with bringing the employment relationship to an end.[30]

Before being able to terminate for absenteeism successfully, an employer needs to show a record of excessive absenteeism, despite warnings and without improvement. During the period of warnings, an employer should ensure that the absences are not related to a medical condition that could constitute a disability or handicap under human rights legislation. If the absences relate to circumstances surrounding an employee's disability or handicap, an employer may have a duty to accommodate that employee under human rights legislation. As we will later discuss,[31] extended absence due to disability may cause the employer to argue that the employment contract has been

---

[25] Shason v. Best Printing Co Ltd., [1970] 2 A.C.W.S. 344 (Ont. H.C.).

[26] Groner v. Lake Ontario Portland Cement Co. (1961) 28 D.L.R. (2d) 589 (S.C.C.).

[27] Rajput v. Menu Foods Ltd. (1985), 5 C.C.E.L. 22 (Ont. H.C.); LeFurgey v. Royal Bank (1984), 56 N.B.R. (2d) 286 (N.B. Q.B.); Ennis v. C.I.B.C. (1986), 13 C.C.E.L. 25 (B.C.S.C.); Takoff v. Toronto Stock Exchange (1986), 11 C.C.E.L. 272 (Ont. H.C.).

[28] (1997), 144 DLR (4th) 47 (NBCA).

[29] Minott v. O'Shanter Development Co. (1998), 168 D.L.R. (4th) 270 (Ont. C.A.).

[30] Cardenas v. Canada Dry Ltd. (1985), 10 C.C.E.L. 1 (Ont. Dist. Ct.).

[31] The doctrine of contract frustration is discussed at 22.04[6].

"frustrated" at common law. Although, the courts have occasionally found favour with this argument,[32] the intersection of the common law doctrine of contract frustration with the employer's duty to accommodate the disabled employee under human rights legislation complicates the analysis.

If an employer consistently tolerates an employee's absenteeism or lateness, the employer may be seen by the court to have condoned the behaviour. To avoid the allegation that the employer has condoned the behaviour, an employer should progressively warn the employees and clearly indicate when the employees have put their continued employment in jeopardy if there is no improvement.[33]

## [g] Harassment.

A continuing ground for just cause is dismissal due to harassment. This encompasses sexual harassment as well as harassment on a prohibited ground of discrimination. Canadian courts and tribunals in all provinces have dealt with the delicate issue of trying to balance the social realities of work with the right of employees to be free from sexual and discriminatory harassment in the workplace. A court looks at a number of factors, such as: the degree and nature of the harassment; whether the offender was told, or should have reasonably known, that the behaviour was offensive or unwelcome; whether the employer had a formal policy in place dealing with harassment; whether or not the offender was in a position of authority over the victim of the harassment; and the nature of the relationship between the employer and the employee, including whether, because of the length of the employment, the employer has a duty to provide counselling or support to an employee who has breached company policy.[34]

In *Bannister v. General Motors of Canada*, the Ontario Court of Appeal rejected the argument that sexual harassment could only support termination for cause if it were shown to have had a quality of "wearing persistence." The Court commented that if persistence is a factor, it is only one aspect of conduct, and not a controlling one, in assessing justification for termination of employment.[35]

In *Bannister,* the Court also rejected the notion that an employer must in all instances use progressive discipline before resorting to termination for sexual harassment.

## [h] Competing Employee.

Merely seeking new employment, entertaining offers from competitors, or planning to establish a business directly competing with the employer is not itself just cause for dismissal,[36] unless the employee had expressly contracted not to do so.[37] However, an employee may not serve two competing employers at the same time; doing so will be cause for dismissal.[38] In addition, employees who are in a fiduciary position may open themselves to a claim for damages if the employees have competed with their employer and made use of confidential knowledge or opportunities available by virtue of their employment.[39]

## [i] Intoxication.

In the normal course, an employee who comes to work intoxicated, or becomes intoxicated during working hours, is subject to discipline. Is the conduct, however, grounds for dismissal? It is dependent on a number of factors such as: the extent to which it interfered with the employee's ability to do the job; was drinking an implied part of the job or

---

[32] Wightman Estate v. 2774046 Canada Inc., (2006), 276 D.L.R. (4th) 492 (B.C.C.A.).

[33] Cain v. Roluf's Ltd. (1998), 34 C.C.E.L. (2d) 184 (Ont. Gen. Div.).

[34] Gonsalves v. Catholic Church Extension Society of Canada (1998), 164 D.L.R. (4th) 339, reversing Ont. C.A. (1996), 20 C.C.E.L. (2d) 106 at page 113–114.

[35] Bannister v. General Motors of Canada Ltd. (1998), 164 D.L.R. (4th) 325 (Ont. C.A.) at page 337.

[36] Rajput v. Menu Foods Ltd. (1985), 5 C.C.E.L. 22 (Ont. H.C.).

[37] Aquafor v. Whyte, Dainty and Calder 2010, 102 O.R. (3d) 139.

[38] Knowlan v. Trailmobile Parts & Services Canada Ltd., 2006 BCSC 337, [2006] BCJ No. 457 (QL).

[39] Canaero Service Ltd. v. O'Malley, [1974] S.C.R. 592; Edwards v. Lawson Paper Converters Ltd. (1985), 5 C.C.E.L. 99 (Ont. H.C.).

business culture;[40] the employee's behavior;[41] and had the employee been previously warned or otherwise disciplined for intoxication;[42] The issue is complicated if the employee is an alcoholic or, in the case of substance abuse, a drug addict. Alcohol and drug addiction have been determined to be disabilities under human right legislation and the obligation of the employer is to accommodate the employee to the point of "undue hardship".

### [j] Conduct Outside Working Hours.

Generally, conduct outside of working hours or outside the course of employment will not be cause for dismissal or even discipline unless the activity is shown to have been prejudicial to the interests or reputation of the employer.[43] In keeping with the general principle, an isolated occurrence is unlikely to constitute just cause. An example of conduct outside the course of employment determined to be prejudicial to the employer is *Kelly v. Linamar Corporation*.[44] In this case a long-service management employee was summarily dismissed following his arrest for possession of child pornography. Although the evidence indicated that he only accessed the child pornography outside of working hours on his home computer, the court rejected his claim of wrongful dismissal concluding that the morally repugnant nature of his misconduct and the notoriety it attracted in the local media harmed the employer's reputation and business interests.

### [k] Miscellaneous Ground.

While there are a number of grounds that may constitute just cause for summary dismissal, the grounds set out above are not exhaustive. Many grounds that give rise to termination will depend on the specific circumstances involved as to whether the penalty of summary dismissal is warranted. Other notable grounds are: neglect of duty; breach of employer's policies; assaults: fighting; disruptive personality; falsification of employment documents; and incarceration.

## [5] Constructive Dismissal

### [a] General.

Canadian courts have traditionally implied a term in every employment contract that the employer cannot effect a unilateral and detrimental change in the material terms or conditions of employment. A fundamental and detrimental alteration, despite the employer's intention to maintain the employment relationship, may entitle the employee to accept the employer's act as a repudiation of the employment contract and consider himself or herself to have been constructively dismissed. "Constructive dismissal" is a recognized type of wrongful dismissal, and the employee can accept the repudiation of the employment contract and seek damages on the same basis as a wrongful dismissal. Employees are entitled to treat themselves as having been "constructively dismissed" when their responsibilities and duties have been altered so significantly that the employer can be said to have repudiated the employment contract. When an employee is constructively dismissed, the law considers the situation to be like any other dismissal requiring reasonable notice or pay in lieu.

As a result, transfers of employees, changes to compensation plans and modifications to employee duties must all be considered very carefully before implementation. Providing reasonable notice to employees of anticipated changes to the terms and conditions of their employment will alleviate many concerns in this area.

---

[40] MacDonald v. Northern Breweries Ltd. [1989] OJ No. 3331. The termination of a beer salesman who lost his driver licence for impaired driving was not just cause.

[41] Whitehouse v. RBC Dominion Securities., 2006 ABQB 372, 50 CCEL (3d) 125. The termination of an intoxicated employee who brought a prostitute to work was just cause.

[42] Blomgren v. Jingle Pot Pub Ltd., (1999), 61 BCLR (3d) 186 (CA).

[43] Reilly v. Steelcase Canada Ltd. (1979), 26 O.R. (2d) 725 (Ont. H.C.).

[44] 2005 CanLII 42487 (Ont. Sup. Ct. J.).

2 Doing Business in Canada § 22.04

The general principle would appear to be that an employer is allowed a certain degree of latitude with respect to conducting its business and that not every change in the conditions or terms of employment will amount to a constructive dismissal. An employer is generally entitled to realign its corporate structure and alter job functions and positions accordingly. However, the court will make a clear distinction between a bona fide realignment of the corporate structure and an obvious demotion. If the reorganization effectively eliminates the employee's previous position and places the employee in a recognizably subordinate position, a court may find constructive dismissal.[45] Similarly, changes in an existing position that are fundamental to the employment contract, resulting in a change in status and authority and a loss in prestige, may also constitute constructive dismissal.[46]

A prime example of constructive dismissal is the decision of the Supreme Court of Canada in *Farber v. Royal Trust Co.*,[47] The court found that arbitrarily eliminating Mr. Farber's position as a regional manager responsible for 21 offices and more than 400 employees and transferring him to his previous job as manager of a single underperforming branch where his pay would be determined solely by commissions was a constructive dismissal.

In addition to the latitude given to the employer about job function, the common law also gives the employer some flexibility in deciding on the location of employment. According to the Ontario Court of Appeal, employees do not have a vested right in a particular job initially given to them. When the employer acted in good faith and in the protection of the business, the employee may not have the right to refuse a transfer.[48] The obligation to accept a transfer is especially strong when the move involves a position of similar or higher status with similar salary and fringe benefits and when lateral or upward moves are normal for employees within the particular class.[49] However, if there is evidence that employees within the particular class are not normally transferred, or if there is an implied condition that the employee's position would remain in the same city, the employer will be deprived of its right to insist on a geographical transfer.[50]

The employment contract may also be considered repudiated if there has been a unilateral alteration in the method of renumeration.[51] As in the demotion and transfer cases, the effect of the alteration will ultimately turn on whether or not it involved a detrimental change of status. If the alteration merely involves a change in the manner of calculation and does not result in a reduction in salary, a court will not find constructive dismissal.[52] But where the change results in an obvious reduction in the employee's potential or actual income, the alteration is considered tantamount to a dismissal.[53]

A significant distinction between actual and constructive dismissal is that in the latter, employees have the option of accepting the alterations and continuing their employment. But does this acceptance preclude employees from subsequently seeking damages for constructive dismissal? If the employee continue to work despite the change, but in so doing, makes it clear that they do not accept the alterations, they will not be precluded from seeking damages.[54] However, the general rule would appear to be that the longer the employees continue employment without saying anything, the greater the likelihood that the employees will be viewed by the courts as having condoned and accepted the job alterations, thus stopping the employees from subsequently alleging constructive dismissal.

---

[45] Jobber v. Addressograph Multigraph of Canada Ltd. (1980), 10 B.L.R. 278 (Ont. H.C.), overruled on other grounds (1983), 1 C.C.E.L. 87 (Ont. C.A.).

[46] Kidd v. Southam Press Ltd. (1983), 1 C.C.E.L. 167 (Ont. H.C.); Moore v. University of Western Ontario (1985), 8 C.C.E.L. 157 (Ont. H.C.).

[47] [1997] 1 SCR 846.

[48] Canadian Bechtel Ltd. v. Mollenkopf (1983), 1 C.C.E.L. 95 (Ont. C.A.).

[49] Morris v. International Harvester Canada Ltd. (1985), 7 C.C.E.L. 300 (Ont. H.C.).

[50] *Id.*

[51] Wallace v. The Toronto-Dominion Bank (1981), 39 O.R. (2d) 350, appeal allowed on other grounds (1983), 41 O.R. (2d) 161 (C.A.).

[52] Oxman v. Dustbane Enterprises Ltd. (1986), 13 C.C.E.L. 209 (Ont. H.C.).

[53] Morris v. International Harvester Canada Ltd. (1985), 7 C.C.E.L. 300 (Ont. H.C.).

[54] Hill v. Peter Gorman Ltd. (1957), 9 D.L.R. (2d) 124 (Ont. C.A.); Wallace v. The Toronto-Dominion Bank (1981), 39 O.R. (2d) 350, appeal allowed on other grounds (1983), 41 O.R. (2d) 161 (C.A.).

Ultimately, there must be unilateral conduct by the employer detrimental to the employee and of sufficient seriousness to justify the employee's treatment of the employment contract as repudiated and a constructive dismissal. Notable situations in which unilateral changes to the employment contract by the employer may result in a successful claim of constructive dismissal are set out below.

**[b] Changes to Responsibilities and Duties.**

In considering whether or not a change to an employee's responsibilities or duties may represent a constructive dismissal, the questions to be answered include: (i) was there an implied right of the employer to change employee's assignment; (ii) were the changes made for *bona fide* business reasons; (iii) were the changes of a substantive or material nature; and (iv) do the changes result in an effective demotion in status or responsibility.

**[c] Changes to Compensation and Benefits.**

Perhaps the strongest case for constructive dismissal is a unilateral reduction in compensation and benefits. As a general rule any significant reduction will be a fundamental breach of the employment contract and can be declared by the employee to be a constructive dismissal.[55] This may include failure to pay a bonus where the employee would reasonably have expected to receive a bonus under the terms of the employment contract and past practice.[56]

**[d] Geographic Transfers.**

In considering a required geographic transfer, the matters to be addressed are similar to those for any unilateral change to responsibilities or duties of the employee. In particular, was there an express or implied right of the employer to change employee's job location? In *Smith v. Viking Helicopter Ltd.*,[57] the Ontario Court of Appeal declared that an employee must expect "reasonable dislocation" in the location of the job. What is reasonable is determined by a number of factors including whether or not the geographic change was for *bona fide* business reasons and was the job of a type that a change in location is to be expected.

**[e] Suspension and Temporary Layoff.**

Absent an express or implied contractual right, the suspension of an employee without pay as a disciplinary matter,[58] or the temporary layoff of an employee for economic reasons,[59] is likely a constructive dismissal. The employer should expressly include these rights in the employment contract.

**[f] Harassment or Poisoned Work Environment.**

As we have noted employers have a fundamental obligation to treat their employees in a civil and respectful manner. This includes ensuring an harassment free workplace. Harassment in the workplace may not only be a breach of human rights legislation, as we will later discuss, but also grounds for a sustainable claim of constructive dismissal.[60]

**[6] Frustration of Contract**

Frustration of contract requires separate treatment because although it allows the employer to terminate the employee without any requirement for reasonable notice or payment in lieu, it is not because of any misconduct or other fault of the employee. Rather, the contract is terminated because of some unexpected or unforeseen event or circumstance that

---

[55] Farber v. Royal Trust, [1997] 1 SCR 846.

[56] Wood v. Owen De Bathe Ltd. 1998 CanLII 6578 (BCSC); aff'd. 1999 BCCA 29 [1999] BCJ No. 173 (QL).

[57] (1989), 24 CCEL, 113 (Ont. C.A.).

[58] Haldane v. Shelbar Enterprises Limited (1999), 46 CCEL (2d) 267 (Ont. C.A.).

[59] Collins v. Jim Pattison Industries Inc. (1995), 11 CCEL (2d) 74 (BCSC).

[60] Shah v. Xerox Canada Ltd.(2000), 49 CCEL (2d) 166 (Ont. C.A.). Constructive dismissal was found from the employer's ongoing and unwarranted criticism of the employee resulting in an intolerable work environment.

prevents either or both parties from doing what the contract requires them to do.[61] A prime example of a frustrated employment contract is the death of the employee.[62] Although the employee cannot be faulted for the inability to continue performance of his or her duties, the employer has no continuing liability in the form of wrongful dismissal damages to the employee or, in this instance, the employee's estate. Also, a change in the law rendering it unlawful for the employee to continue to perform his or her duties has been found to be a frustrated contract.[63] A contract is not frustrated, however, for reasons caused by one or both of the parties or for circumstances or events that are or should have been reasonably foreseen such as a business downturn.[64]

Perhaps the most controversial circumstance for a claim of contract frustration is illness or disability. At common law illness or disability can be grounds for contract frustration where it results in the impossibility of employee performance, or performance that is "radically different" from what was contracted for, and for which the medical prognosis is that this will not change in the foreseeable future.[65]

The common law standard, however, may be challenged when the employee is entitled to sickness or disability benefits, and may be negated by the employer's statutory obligation to accommodate the disabled employee under human rights legislation. If the employment agreement provides or infers that sickness or disability will not terminate the employment relationship but will continue with illness or disability benefits paid to the employee, then it will not be frustrated.[66] With respect to the intersection of the common law doctrine of contract frustration with the obligation of the employer to accommodate the disabled employee to the point of undue hardship under human rights legislation, the court in *Antonacci v. Great Atlantic & Pacific Co. of Canada*,[67] indicated that there can be no frustration of the employment contract where the employer could modify the work environment to accommodate the employee in accordance with its statutory requirement to do so.

### [7] Remedies for Wrongful Dismissal

#### [a] Statutory.

Employment standards legislation in each Canadian jurisdiction requires most employers to provide a prescribed minimum notice to an employee who is wrongfully dismissed. The employer may provide working notice or pay an amount equal to the pay and benefits the employee would have received if they had worked the minimum statutory notice period ("termination pay"). The formula for determining the minimum statutory notice varies among the jurisdictions and only comes into effect once the employee has worked with the employer for a statutorily prescribed

---

[61] In *Davis Contractors Ltd. v. Fareham Urban District Council*, [1956] AC 696, at 728, the House of Lords declared that contract frustration occurs where "… without default of either party, a contractual obligation has become incapable of being performed because the circumstances in which performance is called for would render it a thing radically different from that which was undertaken by the contract. *Non haec in foedera veni*. It is not this that I promised to do." The Supreme Court of Canada endorsed this perspective in *Peter Kiewit Sons' Co. v. Eakins Construction Ltd.* [1960] SCR 361 and *Naylor Group Inc. v. Ellis-Don Construction Ltd.*, 2001 SCC 58.

[62] *Mclean v. City of Miramichi*, 2011 NBCA 80 380 NBR (2d) 98.

[63] *Cowie v. Great Blue Heron Charity Casino*, 2011 ONSC 6357.

[64] Events or circumstances that have been determined not to meet the test for contract frustration include bankruptcy (*Optenia Inc. (In bankruptcy) (Re)* (2002), 21 CCEL (3d) 44 (Ont. Sup. Ct. J.), or a strike by employees (*St. John v. TNT Canada Inc.* (1991), 38 CCEL, 55 (BCSC).

[65] Wightman Estate v. 2774046 Canada Inc., (2006), 276 D.L.R. (4th) 492 (B.C.C.A.); *Yeager v. R.J. Hastings Ltd.*, (1984), 5 CCEL 266 (BCSC).

[66] *Antonacci v. Great Atlantic & Pacific Co. of Canada*, (1998), 35 CCEL (2d) 1 (Ont. Sup. Ct. J.).

[67] In *Antonacci v. Great Atlantic & Pacific Co. of Canada* (1998), 35 CCEL (2d) 1 (Ont. Sup. Ct. J.), at p. 41, Swinton J. found that the employer could have accommodated the employee by modifying the job or could have found other suitable work for him. Therefore, in keeping with its statutory obligation under the Ontario Human Rights Code, R.S.O. 1990, c. H. 19 to accommodate the handicapped employee it cannot be concluded that the employment contract was frustrated.

period of time. All jurisdictions place a ceiling on an employee's entitlement to statutory minimum notice, with no jurisdiction exceeding 8 weeks' notice or pay in lieu.

All jurisdictions, except for Alberta and Canada, have separate minimum notice requirements for "mass terminations". The applicable employment standards legislation define "mass termination", and it varies from as few as 10 in some provinces to 50 in others.[68]

In addition to the requirement for minimum notice or termination pay, the Ontario Employment Standards Act 2000[69] and Canada Labour Code[70] require additional minimum payments for employees under their jurisdiction who are wrongfully dismissed ("severance pay"). The Ontario Employment Standards Act 2000 restricts severance pay to those employees with at least five years' service and (a) were among at least 50 employees who were terminated within a six-month period as a result the permanent discontinuance of all or part of the employer's business at an establishment, or (b) the employer had a payroll of at least $2.5 million.[71] For qualifying employees severance pay is calculated as one week's pay for each year of service (part year's included) to a maximum of 26 weeks. The severance pay formula under the Canada Labour Code is two days' pay for each complete year of service, with no maximum but a minimum of five days' pay.[72] As with the entitlement to minimum statutory notice or pay lieu, an employee who has been terminated for just cause is not entitled to severance pay.

There had been diverging opinion whether or not statutory termination pay and severance pay is deductible from the common law calculation of damages for wrongful dismissal. The Ontario Court of Appeal in *Stevens v. Globe and Mail*[73] concluded that termination pay and severance pay under Ontario's Employment Standards Act may be set off or deducted against wrongful dismissal damages. The Court of Appeal commented that termination pay and severance pay under the Act, while slightly different, are essentially the same type of statutory benefit and ought to be treated in the same manner in terms of deductibility from wrongful dismissal damages. The decision has been followed in other jurisdictions.[74]

Although the common law does not grant reinstatement as a remedy for a wrongful dismissal, certain statutory and regulatory regimes do. For example, termination of employment motivated by a prohibited ground of discrimination under human rights legislation may give rise to reinstatement as a remedy. As well, employees governed by the employment laws of Quebec, Nova Scotia and Canada have access to statutory regimes that grant authority to an adjudicator to reinstate them in the event of a wrongful dismissal.[75] In addressing a claim for reinstatement, the Supreme Court of Canada has declared that providing a sufficiently generous severance package to the terminated employee does not avoid its characterization as a wrongful dismissal and, therefore, the right of an adjudicator to award reinstatement.[76]

---

[68] For example, mass termination under Ontario's Employment Standards Act, 2000, SO 2000, c 41, is defined as an employer who dismisses 50–199 employees in a 4 week period, in which instance the employer has to provide at least 8 weeks' notice to each terminated employee; dismisses between 200 and 499 employees in a 4 week period, in which instance the employer has to provide at least 12 weeks' notice to each terminated employee; and dismisses 500 or more employees in a 4 week period, in which instance the employer has to provide at least 16 weeks' notice to each terminated employee.

[69] SO 2000, c 41.

[70] RSC 1985, c L-2.

[71] SO 2000, c 41 ss. 64(1).

[72] Canada Labour Code, RSC 1985, c L-2, ss. 235(1).

[73] (1996), 135 D.L.R. (4th) 240 (Ont. C.A.).

[74] Readyfoods (Golden Valley Farms Inc.) v. United Food and Commercial Workers' Union, Local 832, (1999), 140 Man. R. (2d) 204 (Man. Q.B.); Shaw Communications Inc. v. Lum (2004), 270 N.B.R. (2d) 141 (N.B. C.A.). Stuart v. Navigata Communications Ltd., [2007] 9 W.W.R. 504, (B.C.C.A.).

[75] An Act Respecting Labour Standards, CQLR c. N-1.1, s. 124; Labour Standards Code, RSNS 1989, c. 246, s. 71; Canada Labour Code, RSC 1985, c. L-2 s. 240.

[76] Wilson v. Atomic Energy of Canada Ltd., [2016] 1 SCR 770 2016 SCC 29 (CanLII).

**[b] Common Law.**

At common law the remedy of reinstatement for a wrongful dismissal is not available. The wrongfully dismissed employee's remedy lies in a claim for damages, based on a determination of what pay and benefits the employee would have received had the employment contract been terminated with proper or reasonable notice.

**[c] Assessment of Reasonable Notice.**

While all employment standards statutes in Canada provide for minimum notice periods for termination of employment in the absence of just cause, *these are minimum requirements only*. Reasonable notice periods at common law are often significantly greater than these minimum statutory requirements. The determination of what constitutes reasonable notice is made on a case by case basis. There are no "rules of thumb" or formulae.[77] Decisions in similar cases by common law courts are most frequently used as precedents in arriving at a determination.

The length of the period notice period may be set by mutual agreement as a term of the contract of employment, although it must accord, at least, with minimum notice requirement under employment standards legislation in the applicable jurisdiction.[78] If there is no agreed period of notice, a period of "reasonable notice" will be inferred by the courts.

The period of reasonable notice is designed to provide the employee with the opportunity to find reasonable alternate employment. In the absence of an express agreement as to notice between an employer and employee, the reasonable notice to which an employee is entitled is determined by the so-called "Bardal factors",[79] The factors are the character of the employment, length of service, age of the employee, and the availability of similar employment. The operative legal principle underlying these factors are that the older you are, the longer your period of employment, the more senior your employment position, and the more difficult the employment environment, the *greater* the reasonable notice period (or payment in lieu) to which you are entitled.

**[d] Effect of Clause in a Written Contract.**

As previously noted, a termination clause can be included in the employment contract stipulating the employee's entitlement to notice, or payment in lieu, in the event of a wrongful dismissal. It is likely that the court will consider itself bound by the terms of the agreement unless the clause fails to meet the statutory minimum notice periods,[80] is unconscionable, or so onerous and blatantly unfair as to warrant judicial intervention.[81] Similarly, an employee's escalating status within the company since the time of hiring may make it unreasonable to conclude that the employment contract entered into at the time of hiring was intended to apply to the position occupied at the time of termination.[82] If the termination clause is not enforceable for any of these reasons, the employee's entitlement to damages, as measured by the notice period, will be determined at common law.

**[e] Assessment of Damages.**

In calculating the damages to which a wrongfully dismissed employee is entitled, it must be remembered that the damages are to cover the determined period of reasonable notice, not to compensate employees for the entire time they may be unemployed.

---

[77] Minott v. O'Shanter Development Company Ltd. (1999), 168 DLR 4th 270 (Ont. C.A.).

[78] Machtinger v. HOJ Industries Ltd., [1992] 1 SCR 986. The Supreme Court found that the failure of the termination clause in the employment contract to meet the minimum requirement for notice, or payment in lieu, under the applicable employment standards legislation rendered the clause unenforceable and the employee was entitled to reasonable notice or payment in lieu at common law.

[79] Bardal v. Globe & Mail Ltd. (1960), 24 DLR (2d) 140 (Ont. H. Ct. J.). The Bardal factors have been repeatedly endorsed by appellate courts and accepted as the leading judicial authority for assessing common law reasonable notice.

[80] Machtinger v. HOJ Industries Ltd., [1992] 1 SCR 986.

[81] Wallace v. The Toronto-Dominion Bank (1981), 39 O.R. (2d) 350, appeal allowed on other grounds (1983), 41 O.R. (2d) 161 (Ont. C.A.).

[82] Lyonde v. Canadian Acceptance Corporation Ltd. (1984), 3 C.C.E.L. 220 (Ont. H.C.).

2 Doing Business in Canada § 22.04

The amount of damages awarded in a wrongful dismissal action is generally the amount of income and benefits that the employee would have been entitled to receive from the employer during the period of reasonable notice, subject to a deduction for any amounts which the employee, in mitigation of damages, obtained or should reasonably have obtained in alternative employment.

In awarding these damages, the law does not limit the employees' claims to wages or salary they would have received, but allows all damages that flow from the wrongful dismissal. Accordingly, in addition to regular wages, the court may compensate for the loss of salary increases, bonuses, stock dues, stock options, pensions, insurance and medical plans, moving expenses, vacation pay, loss of commissions, gratuities, and all other non-discretionary payments to which the employee would have been entitled.[83]

### [f] Salary Increases.

Wrongfully dismissed employees are entitled to receive any salary they would normally have received during the notice period, including any overtime pay,[84] and increases in salary. Before these increases will be compensable, however, the employee must produce evidence that the increase would have been received had the employment not been terminated.[85] Discretionary increases will not be included in damages.

If the facts indicate that an increase was given each year as a matter of course and is regarded as part of the total compensation package, the increase may be allowed. Similarly, if there is evidence that all other employees at the same level received increases, the increase may be allowed.[86]

### [g] Pensions.

The amount of damages attributable to the loss of a pension fund will generally be calculated by assessing the capital value of pension contributions or the amount by which the pension of the employee would have increased had his or her employment continued for the notice period, less the amount of contributions, if any, that would have been made by the employee.[87]

### [h] Moving Expenses.

Generally, employees are entitled to recover all actual expenses incurred by them to obtain new employment, especially when the move was the result of the employee's obligation to mitigate damages.[88]

### [i] Bonuses and Stock Options.

Whether or not the payment of a bonus will be part of an employee's losses for wrongful dismissal depends on whether or not the employment contract contains an express or implied contractual duty to pay the bonus.[89] If payment of the bonus is entirely gratuitous and at the discretion of the employer, it is usually not recoverable.[90]

---

[83] Bardal v. The Globe and Mail (1960), 24 D.L.R. (2d) 140 (Ont. H.C.); Turner v. Canadian Admiral Corporation Limited (1983), 1 C.C.E.L. 130 (Ont. H.C.).

[84] Rieta v. North American Air Travel Insurance Agents Ltd. (1998), 35 CCEL (2d) 157 (BCCA); Kwasnycia v. Goldcorp Inc. (1995), 10 CCEL (2d) 65 (Ont. Sup. Ct. J.).

[85] Turner v. Canadian Admiral Corporation Limited (1983), 1 C.C.E.L. 130 (Ont. H.C.).

[86] Id.

[87] Zeggil v. Foundation Company of Canada Ltd. (1984), 2 C.C.E.L. 164 (Ont. H.C.).

[88] Robson v. General Motors of Canada Ltd. (1982), 37 O.R. (2d) 229 (Co. Ct.); Hennessy v. La France Textiles Canada Ltd. (1982), 12 A.C.W.S. (2d) 233 (Ont. H.C.).

[89] Leith v. Rosen Fuels Ltd. (1985), 5 C.C.E.L. 184 (Ont. H.C.); Postma v. Borg-Wagner Acceptance Canada Ltd. (1982), 14 A.C.W.S. (2d) 415 (Ont. C.A.).

[90] Bardal v. The Globe and Mail (1960), 24 D.L.R. (2d) 140 (Ont. H.C.).

2 Doing Business in Canada § 22.04

Like bonuses, stock options often represent an issue of significant concern to both parties following a termination without cause. The Ontario Court of Appeal considered the common law approach to stock option plans and commented that absent express language providing otherwise, if the stock option plan provides that the exercisable options cease on termination, this provision must mean a termination according to law. Therefore, if the terminated employee would have had the right to exercise the stock options during the reasonable notice period, those stock options may become part of the damages in a wrongful dismissal suit.[91]

**[j] Insurance and Medical Benefits.**

The cancellation of a terminated employee's benefits prior to the expiration of the notice period can be very costly to the employer. In *Prince v. T. Eaton Co.*[92] the employee became totally disabled after termination and within the notice period. The court determined that had he been an active employee he would have received disability coverage under the employer's "Sickness Salary Continuance and Long Term Disability Plan." Although the insurer was exempt from liability as their coverage was restricted to "active" employees, this did not absolve the employer from liability. The employer was required to provide the benefit as if the coverage was still in effect.

While the courts have consistently included damages for the loss of insurance and medical benefits as part of the damages flowing from a wrongful dismissal, there is a lack of agreement about the proper measurement of these damages. The choice is between awarding the cost of the company contributions, and awarding what it would cost the employee to purchase the plan privately—a greater amount since the benefit of group rates would no longer be available to the employee. The present weight of authority favours the latter approach, and adds the additional requirement that the employee must actually incur the cost of replacing the plans before an amount will be awarded, on the basis that if there is no replacement, there is no actual loss.[93]

When the employer fully funds a disability benefit program (i.e., short-term disability benefits or long-term disability benefits), amounts received by an employee for these disability benefits during the reasonable notice period are deductible from compensation paid in lieu of notice.[94]

**[k] Fringe Benefits.**

Benefits such as company discounts,[95] club memberships and company cars may be recoverable if they are primarily for the benefit of the employee and not to assist with the performance of the employee's job. As with insurance and medical benefits, it is possible that damages are only compensable if the employee has incurred the actual expense of renewing the membership or replacing the automobile. As well, a car allowance is compensable provided it was part of the employee's compensation and not a reimbursement of expenses.[96]

**[l] Director's Fees.**

Generally, because a director's position is terminable at the will of the shareholders, and a director is not an "employee", damages for loss of director's fees are not allowed.[97]

**[m] Board and Lodging.**

---

[91] Veer v. Dover Corp. (Canada) Ltd. (1999), 120 O.A.C. 394 (Ont. C.A.).

[92] (1992), 91 D.L.R. (4th) (BCCA), leave to SCC refused 101 D.L.R. (4th) vii; also Alcatel Canada Inc. v. Egan (2006), 47 CCEL (3d) 87 (Ont. CA).

[93] Rushton v. Lake Ontario Steel Co. Ltd. (1980), 29 O.R. (2d) 68 (Ont. H.C.); Zeggil v. Foundation Co. of Canada (1984), 2 C.C.E.L. 164 (Ont. H.C.).

[94] Sylvester v. British Columbia (1997), 146 D.L.R. (4th) 207 (S.C.C.).

[95] Harris v. Robert Simpson Company Ltd. (1985), 7 C.C.E.L. 202 (Alta. Q.B.).

[96] Baumgart v. Convergent Technologies Canada (1989), 28 CCEL 250 (BCSC); McDonald v. GBC Canada Inc. 2004 BCSC 1029; Wood v. BBC Brown Boveri Canada Inc. (1986), 15 CCEL 178 (BCCA).

[97] Bardal v. The Globe and Mail (1960), 24 D.L.R. (2d) 140 (Ont. H.C.).

The loss of accommodation provided as part of the employment contract is also compensable. However, entitlement is limited to a claim for damages. There is no entitlement to actual possession of the residence during the notice period.[98]

### [n] Commissions.

If an employee's remuneration is based partly or fully on commissions, the amounts calculated as earned, or the loss of opportunity to earn those commissions over the period of reasonable notice, will be awarded.[99]

While employees are automatically entitled to any commissions they have already earned, in order to be compensated for commissions that the employees may have earned during the notice, there is an onus on the employees to prove that there was some reasonable probability of making a sale that would give rise to the commissions.[100]

### [o] Vacation Pay.

Vacation pay that would have accrued during the period of reasonable notice is compensable because it would have been earned had the employee remained employed during the notice period.[101]

### [p] Aggravated Damages.

The traditional view was that damages were not recoverable for hurt feelings or mental pain and suffering ("aggravated damages"), arising out of a wrongful dismissal, unless they could be traced to an "independent actionable wrong."[102] Hurt feelings or anguish were simply an inevitable consequence of a dismissal.

In 1997, however, the Supreme Court of Canada in Wallace v. United Grain Growers Ltd.[103] determined that damages for mental suffering or hurt feelings could be awarded if they arose from the employer having engaged in "bad faith in the manner of dismissal."[104] The remedy sanctioned by the court would be an extension of the reasonable notice period.

This extension to the notice period became known as "Wallace Damages" and was controversial. Critics claimed that the determination of the notice period should be restricted to the factors set out in *Bardal* and not reflect the manner in which the employer conducted the dismissal. An opportunity for the Supreme Court to revisit Wallace Damages presented itself in *Honda Canada v. Keays*.[105] One of the claims by the terminated employee was for aggravated damages, and in assessing this claim the court expressly stated that such damages would *not* be granted by means of an extension to the reasonable notice period. Rather, aggravated damages would be separately determined and awarded for bad faith by the employer in the manner of the dismissal and without having to prove that they represented an "independent actionable wrong." For aggravated damages to be assessed, there would have to be evidence that the employee suffered physical or psychological harm.

As a consequence of the Supreme Court of Canada's decision in Honda, it is more difficult for a terminated employee to successfully claim aggravated damages. The employee must produce persuasive evidence (typically medical evidence) that they suffered physical or psychological harm from the insensitive manner in which they were terminated.

### [q] Punitive Damages.

---

[98] Re Rio Algom Ltd. and Turcotte (1978), 20 O.R. (2d) 769 (Div. Ct.); Hawkins v. Ontario (1985) 8 C.C.E.L. 183 (Ont. H.C.).

[99] Prozak v. Bell Telephone Co. of Canada (1984), 4 C.C.E.L. 202 (Ont. C.A.).

[100] *Id.*

[101] Bardal v. The Globe and Mail (1960), 24 D.L.R. (2d) 140 (Ont. H.C.).

[102] Vorvis v. Insurance Corporation of British Columbia, [1989] 1 SCR 1025, 25 CCEL 81.

[103] [1997] 3 S.C.R. 701, 152 D.L.R. (4th) 1.

[104] Ibid, at para. 102.

[105] 2008 SCC 39, [2008] 2 SCR 362.

The traditional common law approach to damages is to deny the recovery of punitive damages in an action for breach of contract. According to some courts, however, punitive damages may be awarded in wrongful dismissal cases when the dismissal was conducted in a high-handed, shocking and arrogant fashion so as to demand condemnation by the court as a deterrent.[106]

The Supreme Court of Canada has stated that "punitive damages are restricted to advertent wrongful acts that are so malicious and outrageous that they are deserving of punishment on their own."[107] The quantum of damages is reflective of the level of outrage at the party's conduct, with the objectives of "denunciation, deterrence and retribution."[108] A successful claim for punitive damages requires that it represent an independent actionable wrong.

Although an award of punitive damages is rare in a wrongful dismissal action, there are examples where the claim has succeeded and the damages awarded considerable. In *Higginson v. Babine Forest Products Ltd.*,[109] a jury awarded Mr. Higginson $573,000.00 in punitive damages, in addition to $236,000.00 in wrongful dismissal damages. The punitive damages reflected a determination that the employer had deliberately created a poisonous work environment and manufactured allegations of just cause against Mr. Higginson to induce him to quit and, thereby, avoid having to terminate him without just cause and provide reasonable notice or payment in lieu. The employer's conduct was found to represent an independent actionable wrong; specifically a breach of the employer's implied duty of fair dealing with its employees.

**[r] Loss of Reputation.**

Despite the increasing trend in widening the scope of damages to which a wrongfully dismissed employee may be entitled, the courts still remain reluctant to award damages for loss of reputation. While there has been recognition of the right to plead these damages,[110] most Canadian courts still prefer to award damages in this area under, aggravated or punitive damages. However, courts on occasion have awarded damages specifically for loss of reputation.[111]

**[s] Mitigation.**

The duty to mitigate is a basic rule of contract law to which the employment contract is no exception. An employee wrongfully terminated and entitled to common law reasonable notice, or payment in lieu, and not a fixed payment under an enforceable termination clause, is required take reasonable steps to limit his or her loss by seeking alternative, comparable employment.

Failure to do so will result in a reduction of damages awarded by the court. The duty to mitigate may include an obligation to move or change the character of employment. It is important to realise, however, that the dismissed employee is not under an obligation to accept a substantially different job or a job that pays significantly less.

The onus is on the employer to satisfy the court that the employee did not make reasonable efforts to find alternative employment.[112] When employees have been offered similar employment in a new location, the court will generally place an onus on the employees to mitigate their losses by accepting this new position.[113] The obligation to move, however, is not absolute and factors such as the age of the employee, the necessity of re-locating a family, children's

---

[106] Pilato v. Hamilton Place Convention Centre Inc. (1984), 3 C.C.E.L. 341 (Ont. H.C.); Pierce v. Canada Trust Realtor (1986), 11 C.C.E.L. 64 (Ont. H.C.); Hill v. Church of Scientology of Toronto (1995), 126 D.L.R. (4th) 129 assessing (S.C.C.).

[107] Honda Canada v. Keays, 2008 SCC 39, [2008] 2 SCR 362 at para 62.

[108] Whiten v. Pilot Insurance Co. [2002] 1 SCR 595 at para, 94.

[109] 2012 BCSC.

[110] Ribeiro v. Canadian Imperial Bank of Commerce (1986), 11 C.C.E.L. 213 (Ont. H.C.).

[111] Domtar Inc. v. St.-Germain, [1991], 38 C.C.E.L. 267 (Que.C.A.); Anderson v. Peel Memorial Hospital Association [1992], 40 C.C.E.L. 203 (Ont. Gen. Div.).

[112] Red Deer College v. Michaels, [1976] 2 SCR 324; Forshaw v. Aluminex Extrusions Ltd. (1989) 27 CCEL 208 (BCCA).

[113] Farrugia v. Wabco-Standard Inc. (1984), 4 C.C.E.L. 329 (Ont. H.C.); Morris v. International Harvester Canada Ltd. (1984), 7 C.C.E.L. 300 (Ont. H.C.).

schooling, community and family ties and evidence of industry practice with respect to re-location will affect the duty to accept the new position.

Because the duty to mitigate is generally restricted to a duty to seek or accept only comparable alternative employment, there is generally no obligation on an employee who has been constructively dismissed to accept a new position of lesser status, especially when the circumstances of the dismissal and the manner of termination result in a loss of prestige and status and humiliation or when the existence of a personality conflict make continued employment unreasonable.[114] However, courts have held that in certain circumstances, failure of an employee to accept continued employment, especially when economic opportunities are known to be limited, is a failure to mitigate damages.[115]

A controversial matter concerns whether or not the duty to mitigate includes an obligation of the wrongfully dismissed employee to accept a job with the employer that terminated them. The Supreme Court of Canada in *Evans v. Teamsters Local Union No. 31*[116] stated that the duty did include the obligation to accept a position with the terminating employer provided that the compensation is the same, the working conditions are not significantly different, the personal relationships not intolerable, and the employee would not be placed in an "atmosphere of hostility, embarrassment or humiliation."[117]

Generally, the failure to take reasonable steps to mitigate losses will result in a deduction from damages of an amount the court considers the employee should have earned during the reasonable notice period.

When an employee has unreasonably refused a definite offer of alternative employment, however, the result will be a complete denial of damages from the date of the offer of the alternative employment.[118]

When the court finds that employees failed to take reasonable steps to mitigate their damages but could not have found another position even if they had searched for one, there will be no reduction in damages despite the failure to mitigate.[119]

While the dismissed employee has a duty to mitigate, the employer has the onus in a wrongful dismissal court action to show that the employee has failed to take reasonable steps to mitigate.

## [8] Restrictive Covenants

A common and controversial feature of employment contracts is the restrictive covenant. The clause is activated on the termination of the employment relationship and is "restrictive" because it imposes limitations on what former employee can do. There are three distinct types of restrictive covenant: a non-disclosure clause prohibiting the former employee from using or disclosing the employer's proprietary information; a non-solicitation clause prohibiting the former employee from attempting to persuade customers of the employer to transfer their business to the former employee; and the most onerous and controversial, the non-compete clause prohibiting the former employee from competing with the employer.

Notwithstanding that the employee may have agreed to the inclusion of a restrictive covenant in the employment contract, the onus resides with the employer to justify its enforcement for, at common law, restrictive covenants are not enforceable as they are restraints on the right to trade. As famously declared by the House of Lords:

"All interference with individual liberty of action in trading, and all restraints of trade themselves, if there is nothing more, are contrary to public policy and therefore void. That is the general rule. But there are exceptions .... It is sufficient justification ... if the restriction is reasonable."[120]

---

[114] Henley v. Peeters Textile Mills Limited, [1979] 1 A.C.W.S. 319 (Ont. H.C.); Tymrick v. Viking Helicopters Ltd. (1985), 6 C.C.E.L. 225 (Ont. H.C.).

[115] McKenzie v. Ralston Purina Canada Ltd. (1984), 26 A.C.W.S. (2d) 335 (Ont. C.A.); Ritchie v. King Truck Engineering Limited (1983), 1 C.C.E.L. 102 (Ont. H.C.).

[116] 2008 SCC 20, [008] 1 SCR 661; Also see Mifsud v. MacMillan Bathurst Inc. (1989), 63 DLR (4th) 714.

[117] Ibid, para. 20.

[118] Farrugia v. Wabco-Standard Inc. (1984), 4 C.C.E.L. 329 (Ont. H.C.).

[119] Munana v. MacMillan Bloedel Ltd., [1977] 2 A.C.W.S. 364 (B.C.S.C.).

[120] Nordenfelt v. Maxim Nordenfelt Guns & Ammunition Co., [1894] A.C. 535 (H.L.).

2 Doing Business in Canada § 22.04

In determining whether a restrictive covenant is "reasonable", the court will need to be convinced that the employer has a legitimate proprietary interest to protect, the time period that the restriction applies and the geographical area it covers are not too great, the language of the restrictive covenant is not ambiguous and, with respect to a non-compete clause, that the employer could not have achieved the same legitimate objective with a less onerous non-solicitation clause.[121]

**[9] Miscellaneous Issues**

**[a] Class Actions.**

The use of class actions in employment-related disputes has become a feature of Canadian law. In *Webb v. K-Mart*,[122] a group of terminated employees received permission from the Ontario Superior of Justice to bring a class action lawsuit against their former employer K-Mart. The issue was whether or not the approximately 4000 employees laid off after the sale of K-Mart was a breach of their employment contracts and their entitlement to notice. As well, the Ontario Court of Appeal upheld the certification of class action claims for overtime pay by employees of the Bank of Nova Scotia[123] and the Canadian Imperial Bank of Commerce.[124] Going forward, we can expect class actions to be an important feature of employment law disputes.

**[b] Issue Estoppel.**

Issue estoppel is a legal doctrine that operates to prevent a party from re-litigating an issue that has already been judicially determined. In Canada, the concept of issue estoppel arises in the context of wrongful dismissal litigation due to the fact that there are parallel forums that involve the employer and the terminated employee, which also look at issues such as whether there was just cause for termination. One such parallel forum arises in the context of minimum employment standards legislation. A dismissed employee who has been terminated for just cause by an employer may challenge the employer's determination under provincial employment standards legislation and seek damages for pay in lieu of notice and severance pay, if applicable.

In 1994, the Ontario Court of Appeal was faced with a wrongful dismissal case in which it was noted an earlier employment standards referee had found the terminated employee not to be entitled to termination pay under the minimum employment standards legislation. However, the court commented that only if three requirements were met, could the results of the employment standards referee adjudication bind the parties as it related to a wrongful dismissal action. The three requirements that must be met in order to give rise to an issue estoppel are: the question to be decided by the court must be the same as was decided by the board or tribunal; the decision creating the estoppel in the first instance must be judicial and final; and both proceedings must involve the same parties.[125]

The Ontario Court of Appeal again had occasion to revisit the concept of issue estoppel in the context of the *Employment Insurance Act* and a determination to benefits under that Act. In *Minott v. O'Shanter Development Co.*,[126] the Court found that an adverse decision rendered by an Employment Insurance Tribunal did not preclude the plaintiff from suing for wrongful dismissal, as the various conditions for issue estoppel had not been satisfied. Specifically, the Court of Appeal agreed with the trial judge's ruling that the same question was not being litigated, as the issue involving misconduct for purposes of disentitlement to employment insurance benefits was not the same as whether or not an employer had just cause to uphold the employee's dismissal. Further, the trial judge concluded that the judgment of the Employment Insurance Board of Referees was not a final judicial determination, nor were the parties the same.

---

[121] J.G. Collins Insurance Agency v. Elsley (1978) 83 D.L.R. (3d) 1 (SCC); Shafron v. KRG Insurance Brokers (Western) Inc. (2009), 70 CCEL (3d) 157 (SCC); Lyons v. Multari (2000), 3 CCEL (3d) 34 (Ont. CA).

[122] (1999) 45 C.C.E.L. (2d) 165 (Ont. S.C.J.); additional reasons (1999) 45 O.R. (3d) 536 (Ont. S.C.J.).

[123] Fulawka v. Bank of Nova Scotia, 2012 ONCA 443 (CanLII).

[124] Fresco v. Canadian Imperial Bank of Commerce, 2012 ONCA 444 (CanLII).

[125] Rasanen v. Rosemount Instruments Ltd. (1994), 112 D.L.R. (4th) 683 (Ont. C.A.); leave to appeal to S.C.C. refused, 115 D.L.R. (4th) viii.

[126] (1998), 168 D.L.R. (4th) 270 (Ont. C.A.).

**[c] Wrongful Referencing.**

There are certain legal implications that may result if an employer fails to provide an employee with a letter of reference. If terminated employees sue the employer for wrongful dismissal, an employer's failure to provide letters of reference could, in some circumstances, support the employees' assertion that they were unable to mitigate their damages because the employer failed to provide a reference.

However, employers should be aware that providing a false or misleading reference could also result in a separate and independent action. Potentially, the employer could be sued by the new employer for negligent misrepresentations made in the reference letter concerning the departed employee. Likewise, the potential exists that the departed employee could sue the employer for libel or slander for negligent comments made about the individual.

In 1994, the British House of Lords in *Spring v. Guardian Assurance*[127] found that an action could be brought by a former employee due to negligent comments made in an employer's reference. The House of Lords found that an employer has a duty of care to a departed employee in preparing a reference letter and ensuring that negligent comments and unfounded opinions are not made. The result of the Spring decision has yet to be fully explored by Canadian courts. In particular it is not clear if the defence of "qualified privilege" that protected employers from damages from an unfavourable reference is still available.[128]

**[d] Employees Covered by a Collective Agreement.**

Unionized employees covered by a collective agreement are precluded from commencing wrongful dismissal actions against their employer. The Supreme Court of Canada has noted that it is no longer possible to speak of individual contracts of employment when the union is the bargaining agent of a company's employees and a collective agreement is in force.[129] The Supreme Court of Canada has also noted that the courts do not have jurisdiction to consider claims arising out of rights created by a collective agreement. Nor can the courts properly decide questions that might have arisen under the common law of master and servant in the absence of a collective bargaining regime if the collective agreement by which the parties to the action are bound makes provision for the matters in issue, whether or not it explicitly provides a procedure and forum for enforcement.[130]

In *Weber v. Ontario Hydro,*[131] the Supreme Court of Canada also stated that even if the facts of the dispute that arise out of the collective agreement may be relevant and subject to a Charter remedy, the appropriate forum for relief is still an arbitrator and not the courts.

Subsequent to the Weber decision, cases have held that an action for defamation as well as negligent and intentional infliction of mental suffering could be heard in the courts as such subject-matter was not within the realm of the collective agreement.[132]

**[e] Unjust Dismissals—Canada Labour Code.**

The Canada Labour Code[133] contains a mechanism to protect employees who are not represented by a union against unjust dismissal. Section 240 of the CLC allows employees who have completed twelve consecutive months of continuous employment to make a complaint to an inspector alleging that they have been dismissed without cause. The complaint must be made within ninety days of the dismissal. An employee who has been laid off or who has

---

[127] (1994) 3 W.L.R. 354 (U.K.H.C.).

[128] Dundee Bancorp Inc. v. Fairvest Corp., 2005 CanLII 23094 (Ont S.C.).

[129] McGavin Toastmaster v. Ainscough (1975), 54 D.L.R. (3d) 1 (S.C.C.) at page 5.

[130] St. Anne-Nackawic Pulp and Paper Co. CPU, Local 219, (1986), 28 D.L.R. (4th) 1 (S.C.C.) at page 13.

[131] Weber v. Ontario Hydro (1995) 125 D.L.R. (4th) 583 (S.C.C.) at page 606.

[132] Kulyk v. Toronto Board of Education (1996), 139 D.L.R. (4th) 114 (Ont. Gen. Div.); Bentley v. Leonard (1997) 35 C.C.E.L. (2d) 293 (Ont. Gen. Div.).

[133] RSC 1985, c. L-2 s. 240.

recourse under another statute may not proceed with a complaint. If the inspector is unable to assist the parties to settle the complaint, the Minister may appoint an adjudicator to settle the matter.[134] The adjudicator appointed by the Minister to hear the complaint has broad powers similar to those of an arbitrator and may order compensation, reinstatement and any other remedy that is equitable in the circumstances. The Supreme Court of Canada has stated that provision of a sufficient severance package to a terminated employee does not avoid its characterization as a wrongful dismissal and, therefore, the right of an adjudicator to award reinstatement.[135]

**[10] Termination of Individual Employment Contracts—Quebec**

Individual employment contracts, written or verbal, fall into two categories in Quebec: those of a fixed term and those of an indeterminate term.[136] Either party to a contract of indeterminate term may terminate the contract by giving reasonable notice to the other party,[137] Employment contracts terminate on the death of the employee, and may, but do not have to, terminate on the employer's death.[138] A sale of the business does not terminate an employment contract between the employee and the employer and the successor employer is bound by the employment contract.[139]

In theory, the employer has a right to prior notice before an employee resigns. In practice, however, the employer's chances of recovering damages for an employee's failure to give notice are rather remote, given the difficulty of establishing that the lack of notice has actually caused the employer any damage.[140]

The employee's right to reasonable notice is based on article 2091 of the CCQ, which requires that to be reasonable the notice must take into account the nature of the employment, the special circumstances of the employment and the duration of the period of work.

In addition, Section 82 of *An Act Respecting Labour Standards*[141] (the "QLSA") provides that all employees with a minimum of three months of uninterrupted service are entitled to written notice before being dismissed or laid off for more than six months.[142] If the employer fails to give this prior notice, the employee is entitled to a compensatory indemnity equal to the employee's wages for the period or remaining period of notice to which the employee was entitled.[143] This requirement for minimum notice does not apply to dismissals for just cause, fixed-term employment contracts, or dismissals caused by *force majeure*.

Sections 124 to 128 of the QLSA provides that an employee with two years of uninterrupted service with one employer may only be dismissed for "good and sufficient cause." This does not apply to lay-offs made for economic reasons. The Court has held that a lay-off is a just and sufficient cause. However, the employer will be required to provide adequate notice.[144]

Causes that have been found to be "good and sufficient" include grave insubordination,[145] incompetence,[146] absence of loyalty in the form of competition or a conflict of interest,[147] theft,[148] alcohol or drug abuse[149] and repeated absenteeism.

---

[134] Ibid, ss. 242 (1).

[135] Wilson v. Atomic Energy of Canada Ltd., [2016] 1 SCR 770 2016 SCC 29 (CanLII).

[136] Civil Code of Quebec, L.R.Q., c. C-1991, art. 2086 (cited as "CCQ").

[137] CCQ, art. 2091.

[138] CCQ, art. 2093.

[139] CCQ, art. 2097.

[140] Gagn´e v. Mat´eriaux Frigon Lt´ee, D.T.E. 84T-869 (C.S.).

[141] S.Q. 1979, c. 45.

[142] The amount of notice is one week for three months of uninterrupted service, two weeks for one to five years of uninterrupted service, four weeks for five to ten years of uninterrupted service, and eight weeks for an employee credited with ten or more years of uninterrupted service.

[143] QSLA, s. 83.

[144] Donohue Inc. v. Simard, [1988] R.J.Q. 2118 (C.A.).

[145] Vacanciers Mobiles (1979) Inc. v. Duchesne, D.T.E. 85T-15 (C.A.); Gagnon v. Golden Eagle Refining Company of Canada Ltd., [1971] C.A. 743.

2 Doing Business in Canada § 22.04

However, in each of these cases, the misconduct for which the employee is reproached must be quite serious and Quebec arbitrators have favoured the principle of "gradation of sanction," so that lesser disciplinary measures, such as warnings and suspensions should be imposed before and instead of dismissal in all but the most serious of situations[150] Further, it has been held that a personality conflict, in and of itself, is not a good and sufficient cause.[151]

At common law, the only recourse of an employee dismissed without cause, in the case of a contract for a fixed period, or dismissed without reasonable notice, in the case of an indeterminate period, was a court action to recover salary owing plus damages. However, section 124 of the QLSA gives the employee dismissed without "good and sufficient cause" a powerful and speedy remedy; employees may bring their complaint to binding arbitration before the Commission des normes du travail, which has the power to render any decision that "the Commission believes fair and reasonable," including the reinstatement of the employee in the position from which the employee was dismissed.[152] However, before the use of this remedy, section 125 of the QLSA provides that the Commission may, with the consent of the parties, appoint a person who will try to settle the complaint to the satisfaction of the interested parties. In addition the Commission may require a written statement from the employer containing the reasons for dismissing the employee. The Commission must provide the employee with a copy of this statement on demand. The remedy under section 126 is not available when the employee resorts to another remedial procedure, such as filing of a grievance under a collective agreement;[153] The section 126 remedy is also not available to an employee who has been laid off for economic reasons.[154] In this latter case, however, the arbitrator has the power to determine whether the real reason behind a lay-off was, in fact, disciplinary.[155] If the Commission decides that an employee has not been dismissed for good and sufficient cause it may, under section 128:

(1) order the employer to reinstate the employee;

(2) order the employer to pay employees an indemnity up to the wages they would normally have earned had they not been dismissed;

(3) render any other decision the Commission believes fair and reasonable, taking account all the circumstances of the matter.

Finally, the doctrine of "constructive dismissal" also applies in Quebec, so that a unilateral modification of the contractual terms of employment that gives the employee no other choice but to resign is tantamount to dismissal, and therefore subject to the same rules and recourses as described above.

Doing Business in Canada
Copyright 2018, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

---

End of Document

---

[146] Aubrey Rose v. City National Leasing, [1984] C.S. 378.

[147] Grynwald v. Playfair Knitting Mills Inc., [1959] C.S. 200.

[148] Compagnie minière Qu´ebec-Cartier v. Métallurgistes-unis d'Amérique, local 5778 et 6869, (1975) S.A.G. 887.

[149] Marystown Shipyard Ltd. v. Rose, (1985) 6 C.C.E.L. 220.

[150] Pépiniére Bourbeau Inc. v. Boies, SA-124-83-186; St-Amour v. Metériaux Aylmer-Lucerne Ltée, D.T.E. 85T-152 (T.A.).

[151] Maheu v. Catalytic Enterprises Ltd., D.T.E. 84T-636 (C.S.).

[152] QLSA, s. 128.

[153] QLSA, s. 124.

[154] Donohue Inc. v. Simard, [1988] R.J.Q. 2118 (C.A.).

[155] Lavalin Inc. Deslierres, [1983] C.S. 470; Veillette et Deschenes Ltée v. C.N.T., D.T.E. 84T-825 (C.S.).