Honorable Judge Richard A. Jones

1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9   BOMBARDIER INC.,                          No. 2:18-cv-01543-RAJ

                    Plaintiff,               BOMBARDIER INC.'S
10                                            RESPONSE TO DEFENDANT
                                              MITSUBISHI AIRCRAFT
11        v.                                  CORPORATION AMERICA,
                                              INC.'S MOTION TO DISMISS
12   MITSUBISHI AIRCRAFT CORPORATION,
    MITSUBISHI AIRCRAFT CORPORATION           **NOTE ON MOTION**
13   AMERICA INC., AEROSPACE TESTING          **CALENDAR:**
    ENGINEERING & CERTIFICATION INC.,         **JANUARY 11, 2019**
14   MICHEL KORWIN-SZYMANOWSKI,
    LAURUS BASSON, MARC-ANTOINE               ORAL ARGUMENT REQUESTED
15   DELARCHE, CINDY DORNÉVAL, KEITH
    AYRE, AND JOHN AND/OR JANE DOES 1-
16   88,

17                  Defendants.

18

19

20

21

22

23

24

25

26

27

CHRISTENSEN | O'CONNOR    1201 Third Avenue
JOHNSON | KINDNESS        Suite 3600
                          Seattle, WA 98101-3029
                          1.206.682.8100

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II.  BOMBARDIER'S COMPLAINT FAR SURPASSES THE PLAUSIBILITY
STANDARD OF RULE 12(B)(6) ............................................................................1

III.  BOMBARDIER'S COMPLAINT ALLEGES THAT MITAC AMERICA
ACQUIRED AND USED BOMBARDIER'S TRADE SECRETS..................................6

IV.  BOMBARDIER'S COMPLAINT SUFFICIENTLY ALLEGES THAT
MITAC AMERICA KNEW OR SHOULD HAVE KNOWN THE TRADE
SECRETS WERE IMPROPERLY ACQUIRED..................................................9

V.  BOMBARDIER'S COUNT VIII OF TORTIOUS INTERFERENCE
SHOULD NOT BE DISMISSED ...................................................................11

   A.  MITAC America's Tortious Inference Was Conducted for an Improper
   Purpose ...............................................................................12

   B.  MITAC America Actually Interfered with Bombardier's Contracts and
   Business Expectations ...........................................................13

      1.  The Code of Ethics Is an Enforceable Contract .......................13

      2.  The Former Employees Breached Their Obligations...............14

      3.  MITAC America Induced the Breach ....................................15

      4.  Bombardier's Claims Are Not Preempted...............................16

   C.  Bombardier Had a Valid Business Expectation in the Continued
   Employment of the Individual Defendants...........................................17

   D.  Bombardier Properly Alleged Damages as a Result of MITAC
   America's Tortious Interference..........................................................18

VI.  CONCLUSION ...................................................................................19

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**TABLE OF AUTHORITIES**

**Cases**

*AccentCare Home Health of Rogue Valley, LLC v. Bliss*, No. 1:16-cv-01393-CL, 2017 U.S.
Dist. LEXIS 88125 (D. Or. Apr. 13, 2017) ............................................................. 4

*ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010) ................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 1, 4, 7

*Beard Research, Inc. v. Kates*, 8 A.3d 573 (Del. Ch.) ............................................ 6

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL
2298500 (N.D. Cal. May 21, 2018) ..................................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 1, 4, 7

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061 (D. Haw. 2011) .......... 5

*Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38 (1987) .......................................... 16

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 145 P.3d 1253
(Wash. Ct. App. 2006) .................................................................................. 14

*Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir. 1976) ........................ 11

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657 (D. Del. 2018) ...... 6

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ........... 9

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV 13-07563-DMG (JCGx), 2013 WL
12081182 (C.D. Cal. Nov. 22, 2013) ................................................................. 8

*Gaglidari v. Denny's Rests.*, 117 Wn.2d 426 (1991) .............................................. 14

*Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980) ............... 5

*Inteum Co., LLC v. National Univ. of Singapore*, No. C17-1252-JCC, 2017 WL 6611961
(W.D. Wash. Dec. 27, 2017) ........................................................................... 7

*Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953 (D. Ariz. 2015) ....................... 10

*Landstar Inway Inc. v. Samrow*, 181 Wash. App. 109, 126, 325 P.3d 327 (2014) ............... 6

*Libera v. City of Port Angeles*, 178 Wash. App. 669 (2013) ................................... 13

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - ii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*Miles Inc. v. Cookson Am., Inc.*, No. CIV.A. 12,310, 1994 WL 676761 (Del. Ch. Nov. 15, 1994) .................................................................................................................... 6

*Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*, No. 5:11-CV-01504-EJD, 2012 WL 762126 (N.D. Cal. Mar. 8, 2012) ........................................................................ 5

*Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (2018) ........................................... 16

*Pleas v. City of Seattle,* 112 Wash. 2d 794, 803–04, 774 P.2d 1158 (1989) ........................... 13

*Ranza v. Nike, Inc*., 793 F.3d 1059 (9th Cir. 2015) .................................................... 6

*Rockwell Collins, Inc. v. Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) .......................................................................................... 5

*Sampson v. Jeld-Wen Inc.*, 2015 U.S. Dist. LEXIS 181232 (E.D. Wash. Dec. 18, 2015) ....... 14

*SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688 (Ct. App. Wash. 2018) ...................................................................................................... 16

*SMS Signature Cars v. Connects Mktg. LLC*, No. SACV 12-1300, 2012 WL 12893935 JVS (ANx) (C.D. Cal. Oct. 29, 2012) ....................................................................... 5

*SolarCity Corp. v. Pure Solar Co.*, No. CV 16-01814-BRO (DTBx), 2016 WL 11019989 (C.D. Cal. Dec. 27, 2016) ................................................................................... 8

*Thola v. Henschell*, 140 Wash. App. 70, 78, 164 P.3d 524 (Wash. Ct. App. 2007) ........... 8, 16

**Statutes**

RCW 19.108.010 ..................................................................................................... 11

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## I.    INTRODUCTION

Under the *Iqbal* and *Twombly* standards, Bombardier need only plead *plausible* allegations that properly state a claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Bombardier's 90-page Complaint, which spans 277 paragraphs, far exceeds this standard for each claim.  Instead of accepting this well-pled Complaint and providing its answer, MITAC America has moved under Rule 12(b)(6) to dismiss.  In doing so, MITAC America outright ignores highly relevant facts that are fatal to its requested relief.  MITAC America also takes dramatic liberties with respect to its cited legal authority.  For at least these reasons its motion should be dismissed so Bombardier may proceed with proving MITAC America's trade secret misappropriation and tortious interference.

## II.    BOMBARDIER'S COMPLAINT FAR SURPASSES THE PLAUSIBILITY STANDARD OF RULE 12(B)(6)

In its Complaint Bombardier pled at least the following facts that support its claims for trade secret misappropriation and tortious interference:[1]

- MITAC America is a subsidiary corporation of Defendant MITAC. Dkt. No. 1 at ¶ 4.

- MITAC formed MITAC America on June 4, 2014, to focus on utilizing North American resources to design and certify the MRJ. Dkt. No. 1 at ¶ 41.

- MITAC America was formed as a direct result of MITAC's lack of experience in aircraft certification, as exemplified by, *inter alia*, MITAC's significant delays in the MRJ program. Dkt. No. 1 at ¶¶ 35-41.

- MITAC, MITAC America, and AeroTEC (a consultant  and certification partner of MITAC and MITAC America) jointly formed and staffed the Seattle Engineering Center on August 3, 2015 to manage MRJ development and certification in the United States. Dkt. No. 1 at ¶ 42.

- MITAC, MITAC America, and AeroTEC continuously delayed the MRJ project as a direct result of their failures in the certification of the MRJ.  Dkt. No. 1 at ¶¶ 43-48.

---

[1] Given the length and detail of Bombardier's factual allegations, these have been shortened for efficiency's sake.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

- Bombardier developed certain trade secret information, including information used for the C-Series aircraft's design and certification for use in the United States and abroad. *E.g.*, Dkt. No. 1 at ¶¶ 60-66, 93-95, 105, 106.

- Bombardier has taken reasonable measures to maintain the secrecy of its trade secret information including, without limitation, subjecting all employees to a Code of Ethics that instructs personnel how to properly maintain the secrecy of said trade secrets. Dkt. No. 1 at ¶¶ 96, 107.

- Bombardier's trade secrets have independent economic value and also have tremendous value to MITAC America and its MRJ certification efforts. Dkt. No. 1 at ¶¶ 97, 108.

- Shortly before MITAC's announcement of the MRJ's fourth delay, MITAC, MITAC America, and AeroTEC began recruiting Bombardier personnel, such as by conducting a job fair just one kilometer from Bombardier's primary facility. Dkt. No. 1 at ¶ 49.

- MITAC America promoted this job fair both online and in the Montréal Gazette in the weeks leading up to the event and advertised that it was "looking to hire over 200 Aircraft System Engineers **who can work on Certification activities of MRJ aircraft**." Dkt. No. 1 at ¶ 49.

- MITAC America recruited Bombardier personnel to work on MRJ development and certification including retaining and using professional recruiting services such as Velocity Consulting Solutions, contacting Bombardier personnel directly via email, and using successfully-recruited former Bombardier personnel to entice their former colleagues to likewise defect. Dkt. No. 1 at ¶¶ 49, 99.

- MITAC America engaged in the active recruitment of Bombardier personnel despite Bombardier's warning to MITAC America's corporate parent that it should not improperly lure Bombardier's employees to work on the MRJ project. Dkt. No. 1 at ¶ 54.

- MITAC America specifically targeted Bombardier personnel for recruitment with the intention of using the new recruits to provide proprietary and trade secret Bombardier design and/or certification information for use in the MRJ project. Dkt. No. 1 at ¶ 99.

- Additionally, MITAC America knew of and condoned AeroTEC's targeted recruiting of Bombardier personnel in Wichita, Kansas. Dkt. No. 1 at ¶ 99.

- To Bombardier's knowledge, MITAC, MITAC America, and AeroTEC now employ at least 90 former Bombardier personnel whose job responsibilities relate directly to the development and certification of the MRJ. Dkt. No. 1 at ¶¶ 11, 59, 69.

- For example, roughly one month after the MITAC America job fair, MITAC successfully lured Bombardier's TCCA's Design Approval Designee, Keith Ayre, to join the MRJ

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

efforts. Dkt. No. 1 at ¶ 49.  Indeed, Mr. Ayre began aiding in the certification of the MRJ while still employed by Bombardier.  *Id.*

- Bombardier employees are bound by a Code of Ethics that requires them to maintain the confidentiality of Bombardier's confidential information and trade secrets, including after leaving Bombardier.  Dkt. No. 1 at ¶¶ 53, 60-69, Exs. C, D, K, N, P, R.

- At least some, if not all, of these 90-plus employees stole trade secret information from Bombardier prior to their departure.  Dkt. No. 1 at ¶¶ 59-68, 94.

- The five former employees that are named defendants stole significant amounts of trade secret information directly relating to aircraft certification in their final weeks and days of employment.  Dkt. No. 1 at ¶¶ 60-67.  This information was ultimately used by or shared with MITAC America.  Dkt. No. 1 at ¶¶ 98, 99, 110.

- MITAC, MITAC America, and AeroTEC abandoned the design of certain MRJ systems and electrical configurations in favor of new designs that would be easier to certify shortly after MITAC America improperly lured away Bombardier personnel having access to and improper possession of Bombardier trade secrets.  MITAC America used Bombardier trade secret information to assist in the new design's certification.  Dkt. No. 1 at ¶ 98, 99, 110.

- MITAC America knew or had reason to know its knowledge of the Bombardier trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy, or derived from or through a person who owed a duty to Bombardier to maintain its secrecy.  Dkt. No. 1 at ¶ 98, 99, 110.

- Bombardier has suffered and will continue to suffer irreparable financial loss and an irreparable loss of the confidentiality of their trade secret information.  Dkt. No. 1 at ¶¶ 101, 112.

- Bombardier reasonably expected each of its former employees to adhere to Bombardier's Code of Ethics, including the obligation to not divulge [Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so. Dkt. No. 1 at ¶ 147.

- Bombardier reasonably expected that it would continue to employ Defendants Basson, Delarche, Dornéval, Ayre and Does 1-88, to continue working in Bombardier's aerospace division.  Dkt. No. 1 at ¶ 148.

- Bombardier reasonably expected that key personnel for the C-Series and Global 7000/8000 Aircraft would not join (within a span of a few months) a competing venture in need of Bombardier's trade secret information.  Dkt. No. 1 at ¶ 149.

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 3

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

- Bombardier reasonably expected to adhere to its certification schedules for the C-Series and Global 7000/8000 Aircraft.  Dkt. No. 1 at ¶ 150.

- MITAC America knew about these contractual relationships and knew about Bombardier's business expectations.  Dkt. No. 1 at ¶ 151.

- MITAC America intentionally interfered with Bombardier's contractual relationships and business expectations, which caused breach of the contractual relationships with, and business expectations from, at least Defendants Basson, Delarche, Dornéval, Ayre and Does 1-88.  Dkt. No. 1 at ¶ 152.

- MITAC America intentionally interfered with Bombardier's contractual relationships and business expectations, and did so for improper purposes.  Dkt. No. 1 at ¶ 153.

- MITAC America's intentional interference with Bombardier's contractual relationships and business expectations resulted in significant harm to Bombardier, including costly delays to its certification efforts for the C-Series and Global 7000/8000 Aircraft.  Dkt. No. 1 at ¶¶ 153, 154.

These factual allegations must be taken as true, and together they far exceed the plausibility requirement of *Iqbal* and *Twombly*.  Recent precedent supports this view.  For example, in *AccentCare Home Health of Rogue Valley, LLC v. Bliss*, the plaintiff alleged that the "California defendants planned and executed a scheme by which they targeted the senior management of [the plaintiff] and recruited them to leave [the plaintiff], breach their employment contracts, take account information and other proprietary information, solicit other employees to join them, and ultimately create a new branch of [one of the California defendants] in Medford, Oregon." No. 1:16-cv-01393-CL, 2017 U.S. Dist. LEXIS 88125, at *3-*4, *12 (D. Or. Apr. 13, 2017).  In view of these allegations the court held that the plaintiff "has sufficiently alleged facts to support" a claim of trade secret misappropriation against the California defendants.

Here, Bombardier alleged that MITAC America conducted a job fair next to Bombardier's principal place of business and that MITAC America "promoted their job fair both online and in the Montréal Gazette in the weeks leading up to the event and they advertised that it was 'looking to hire over 200 Aircraft System Engineers **who can work on Certification activities of MRJ aircraft**.'" Dkt. No. 1 at ¶ 49.  This allegation alone

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

indicates that the recruitment was directed at employees who would have access to—and therefore could abscond with—Bombardier trade secrets. *See also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337–38 (9th Cir. 1980) (citations omitted) (holding that "if either the defecting employee or the competitor . . . is guilty of some concomitant, unconscionable conduct, the injured former employer has a cause of action to recover for the detriment he has thereby suffered" and that "if there is a misappropriation of trade secrets as a concomitant of the solicitation,' relief would be granted").

Courts have routinely denied Rule 12(b)(6) motions where plaintiffs have pleaded fewer facts than are involved here. *See, e.g.*, *Rockwell Collins, Inc. v. Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775, at *3 (C.D. Cal. Nov. 10, 2017) (finding it sufficient to plead (1) that downloads of confidential files "were 'unauthorized' because of specific company policies and because the company never gave him permission to download the information"; and (2) that the plaintiff was "damaged because [defendant] took the proprietary information and because it had to conduct an investigation to determine what was taken"); *SMS Signature Cars v. Connects Mktg. LLC*, No. SACV 12-1300, 2012 WL 12893935 JVS (ANx), at *4 (C.D. Cal. Oct. 29, 2012) (finding it sufficient to plead that "Defendants Connects and Hruza (1) acquired trade secrets during SMS and AMI's negotiation process; (2) used these trade secrets to produce competing products; and (3) disclosed these trade secrets to Defendant PGL"); *Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*, No. 5:11-CV-01504-EJD, 2012 WL 762126, at *2 (N.D. Cal. Mar. 8, 2012) (finding it sufficient to (1) plead that defendant knew that it was acquiring plaintiff's trade secrets in breach of a confidentiality obligation; and (2) recite a provision of a contract demonstrating that the received information was subject to said confidentiality obligation); *see also BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1079 (D. Haw. 2011) (finding it sufficient to plead that defendant "solicited business from [plaintiff's] clients, used [plaintiff's] proprietary information to solicit proposed funding, interfered with its contracts, breached its nondisclosure with [plaintiff], and disparaged [plaintiff]").  As

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

discussed below, MITAC America's motion fails to demonstrate that Bombardier's allegations are not plausible, and therefore its motion should be denied.

## III.   BOMBARDIER'S COMPLAINT ALLEGES THAT MITAC AMERICA ACQUIRED AND USED BOMBARDIER'S TRADE SECRETS

MITAC America mischaracterizes the detailed allegations found in Bombardier's Complaint.  MITAC America also raises questions that are not relevant to a Rule 12(b)(6) motion.  As summarized in the previous section, Bombardier's Complaint includes detailed allegations regarding MITAC America's improper acquisition and use of Bombardier's trade secrets.

MITAC America's primary argument is that it is too far removed from the five named individual defendants who stole documents from Bombardier to be liable for trade secret misappropriation.  That argument ignores both the plain allegations of the Complaint as well as common sense.[2]

MITAC America exists to certify the MRJ.  Dkt. No. 1 at ¶¶ 35-40, 41.  MITAC America specifically sought out Bombardier employees with access to Bombardier's trade secrets relating to aircraft certification.  Dkt. No. 1 at ¶¶ 49, 99. Those employees stole trade secrets relating to aircraft certification, and those employees now work for either MITAC America, MITAC, or AeroTEC.  Dkt. No. 1 at ¶¶ 60-67.  These allegations alone justify denying the Rule 12(b)(6) motion.  But the allegations do not stop there.  Shortly after the employees began working for MITAC America or its partners, MITAC announced that there

_____

[2] To the extent MITAC America is attempting to distinguish itself from MITAC, these efforts cannot carry the day.  The alter-ego test can be used to impute liability of a subsidiary to a parent or vice versa.  *See Ranza v. Nike, Inc*., 793 F.3d 1059, 1070–71 (9th Cir. 2015); *Beard Research, Inc. v. Kates*, 8 A.3d 573, 600 (Del. Ch.), *aff'd sub nom*; *ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010); *Miles Inc. v. Cookson Am., Inc.*, No. CIV.A. 12,310, 1994 WL 676761, at *19 (Del. Ch. Nov. 15, 1994); *Landstar Inway Inc. v. Samrow*, 181 Wash. App. 109, 126, 325 P.3d 327, 338 (2014); *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 675 (D. Del. 2018).  MITAC America's motion does not even address this fact.  Moreover, it is unclear whether there is any meaningful distinction between the two entities, and MITAC America's motion adds no clarity.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1   would be significant redesigns of the MRJ in view of certification concerns.  Dkt. No. 1 at ¶¶

2   98, 99, 110.  Given MITAC America's direct employment of at least some of Does 1-88, its

3   relationship with MITAC and AeroTEC, and its role in the certification of the MRJ, its use of

4   Bombardier's trade secrets is far beyond plausible, it is axiomatic.  Beyond this, Bombardier's

5   allegations regarding MITAC America's direct involvement in the employment of the

6   individuals and their misappropriation are already proving true: MITAC America has now

7   admitted that it provided laptops to Defendant Dornéval and Defendant Basson.  Dkt. No. 79

8   at ¶¶ 11-12.

9        Bombardier is not required to plead every instance where MITAC America acquired

10  and used Bombardier's trade secrets, as MITAC America's motion suggests.  Bombardier's

11  allegations are not a "chain of mere possibilities" (Motion at 10-11), but instead set forth the

12  core allegations demonstrating that MITAC America misappropriated Bombardier's trade

13  secrets.  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC,

14  2018 WL 2298500, at *5 (N.D. Cal. May 21, 2018) (finding allegations that the defendant,

15  "which had never previously produced a cytometer, launched . . . two cytometers, one bearing

16  'striking similarities' to a cytometer" that former employees developed while working for the

17  plaintiff, were sufficient).

18       MITAC America's reliance on *Inteum Co., LLC v. National Univ. of Singapore* is

19  misplaced.  No. C17-1252-JCC, 2017 WL 6611961, at *3 (W.D. Wash. Dec. 27, 2017).  In

20  *Inteum*, certain exhibits to the plaintiff's complaint undermined certain of its allegations, thus

21  preventing the court from construing "all inferences reasonably drawn from . . . facts

22  [pleaded]" in the plaintiff's favor.  *Id.*  Here, by comparison, there are no factual

23  inconsistencies between the facts pleaded and the exhibits attached to the Complaint.  In this

24  case, therefore, the Court should construe all inferences from the facts in Bombardier's favor,

25  consistent with the well-settled precedent of *Iqbal* and *Twombly*.[3]

26  ─────────────────

27  [3] MITAC America's argument that Bombardier cannot state a claim for relief against
    MITAC America because a MITAC employment agreement allegedly instructs its employees

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

MITAC America further argues that the Complaint lacks sufficient allegations because the bulk of the presently available evidence is directed to the various employees and not MITAC America itself.  However, this ignores clear legal precedent that **an employer may be vicariously liable for trade secret misappropriation by its employees**.

> Further, '[u]nder the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of the employment.' This includes intentional torts, even if the employer has not authorized the employee to perform the tortious activity, so long as there is a 'causal nexus' between the activity and the employee's work.

*SolarCity Corp. v. Pure Solar Co.*, No. CV 16-01814-BRO (DTBx), 2016 WL 11019989, at *5 (C.D. Cal. Dec. 27, 2016) (internal citation omitted); *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV 13-07563-DMG (JCGx), 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (holding that the defendant may be liable for its employees' misappropriation of trade secrets under the doctrine of respondeat superior).  This approach has also been adopted by Washington courts.  *See, e.g.*, *Thola v. Henschell*, 140 Wash. App. 70, 78, 164 P.3d 524, 528 (Wash. Ct. App. 2007) ("But we agree with the majority of jurisdictions addressing the issue and conclude that one may violate the UTSA vicariously and be held responsible for such violation.").

Here, as described in Section II, MITAC America actively engaged in soliciting at least 90 employees, each with specific certification experience and access to Bombardier trade secrets, to leave Bombardier to work on the MRJ certification efforts.  Those employees stole extensive trade secrets from Bombardier and began to work for MITAC America, its corporate parent, or its certification partner.  The stolen trade secrets have far more than a

---

not to transfer or use confidential information from a past employer is unavailing and is not consistent with the factual allegations of the Complaint.  Bombardier's Complaint contains detailed allegations of numerous documents that were actually stolen on the eve of multiple employees' departure from Bombardier to go work on the MRJ certification project after being solicited by MITAC America.  If anything, this agreement illustrates MITAC's knowledge that these employees had access to trade secrets, had misappropriated trade secrets, and would (and ultimately did) use those trade secrets in the MRJ project.

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

"causal nexus" to the work done at MITAC America, and MITAC America is therefore vicariously liable for at least its employees' use of the misappropriated trade secrets.

MITAC America has presented no explanation, much less a plausible one, for why it actively recruited Bombardier's certification personnel who then stole confidential certification and design-related documents from Bombardier just prior to beginning their work on the MRJ. However, even if MITAC America had presented an "alternative explanation" for these actions, such an explanation would be irrelevant for purposes of a motion to dismiss under Rule 12(b)(6).

If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). MITAC America's motion does not even offer such an alternative explanation, much less one that "is so convincing that plaintiff's explanation is implausible." *Id.* Instead, MITAC America's motion merely contests the allegations set forth in Bombardier's Complaint, which falls far short of the standard for granting a motion to dismiss under Rule 12(b)(6).

## IV. BOMBARDIER'S COMPLAINT SUFFICIENTLY ALLEGES THAT MITAC AMERICA KNEW OR SHOULD HAVE KNOWN THE TRADE SECRETS WERE IMPROPERLY ACQUIRED

As summarized in Section II, Bombardier's Complaint identifies numerous factual allegations plausibly demonstrating that MITAC America knew or should have known that the employees it recruited to work on MRJ certification would rely or were relying on Bombardier trade secret information.

MITAC America specifically targeted numerous Bombardier employees with access to Bombardier trade secrets. Dkt. No. 1 at ¶¶ 11, 49, 59, 69. Once it acquired a critical mass of these employees, it announced significant changes to the MRJ certification efforts. Dkt.

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

No. 1 at ¶¶ 98, 99, 110.  This alone is sufficient to defeat a Rule 12(b)(6) motion.  However, on June 3, 2016, Bombardier contacted Mr. Luke Walker of MHI (MITAC and MITAC America's largest shareholder), in an effort to stop MITAC and MITAC America's attempts to hire away key Bombardier personnel.  Dkt. No. 1 at ¶ 54.  In this communication, Bombardier informed MITAC and MITAC America that Bombardier was concerned that trade secrets obtained by former Bombardier employees would be transferred to MITAC and MITAC America and improperly used.  *Id*.  Mr. Walker acknowledged these concerns.  *Id*.  On August 5, 2016, and January 27, 2017, the President and CEO of Bombardier contacted MHI's Chairman of the Board (Mr. Hideaki Omiya) to raise concerns that "the employees recruited by MHI will use the intellectual property owned by Bombardier to assist MHI in developing the MRJ aircraft which will compete against Bombardier aircraft."  Dkt. No. 1 at ¶56.  These concerns were reiterated again on February 17, 2017, by Bombardier's outside counsel.  Dkt. No. 1 at Ex. I.  MITAC America's motion completely ignores these facts.  To argue that Bombardier did not plead facts to support the allegation that MITAC America knew or should have known that the employees it recruited from Bombardier had trade secret information and that the use of that information would be improper strains credulity.

MITAC America cites no authority to support its apparent proposition that explicitly notifying a corporation that its employees may have acquired without authorization certain trade secret information that they may well attempt to misuse does not put that corporation on notice.  Instead, MITAC America relies on *Joshua David Mellberg LLC v. Will*, which is unavailing.  96 F. Supp. 3d 953, 982 (D. Ariz. 2015).  In *Mellberg*, the court merely indicated that it is not plausible that knowledge of trade secret usage can be imputed to a corporate entity based **solely** on that corporate entity's employment of former employees who misappropriated trade secrets.  *Id*.  Unlike the plaintiff in *Mellberg*, Bombardier directly contacted MHI, the parent of both MITAC and MITAC America, to put all on notice that the employees being illicitly recruited from Bombardier could arrive with Bombardier trade secret information that they may well use in MRJ certification efforts.  These facts end the

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

inquiry.  But even beyond the direct notification given to MITAC America, the fact that MITAC America specifically sought to hire in similar capacities for the MRJ certification project a critical mass of personnel from Bombardier that it knew had access to Bombardier trade secret information through their confidential work at Bombardier squarely put MITAC America in the "known or should have known" category.  *See, e.g.*, Dkt. No. 1 at ¶ 49.

Finally, MITAC America's reliance on *Droeger v. Welsh Sporting Goods Corp.* is misplaced.  541 F.2d 790, 792-93 (9th Cir. 1976).  In *Droeger* (which issued before the UTSA existed, much less the DTSA), the corporate employee **properly** acquired the alleged trade secret from the plaintiff, and there was no evidence that the corporate employee ever communicated this trade secret to anyone else within the corporation.  *Id.*  Here, Bombardier's trade secrets were not properly acquired; they were taken without authorization. Bombardier's Complaint alleges that some of Does 1-88 work for MITAC America and those employees have used those trade secrets in the course of their employment.  Dkt. No. 1 at ¶ 59.  As such, a MITAC America employee would have (1) acquired Bombardier's trade secrets; and (2) "know[n] or [had] reason to know that the trade secret[s] [were] acquired by **improper** means."  RCW 19.108.010(2)(a) (emphasis added).  There is no need to "impute" any knowledge to MITAC America because, as the employer, MITAC America is already vicariously liable for its employees' misappropriation.

## V.   BOMBARDIER'S COUNT VIII OF TORTIOUS INTERFERENCE SHOULD NOT BE DISMISSED

Bombardier identified at least four business expectations in its Complaint, each of which forms an independent basis for Bombardier's tortious interference claim against MITAC America:

> 1.   Bombardier reasonably expected each of its former employees to adhere to Bombardier's Code of Ethics, including the obligation to not divulge [Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so. Dkt. No. 1 at ¶ 147.

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 11

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

2.    Bombardier reasonably expected that it would continue to employ Defendants Basson, Delarche, Dornéval, and Does 1-88, to continue working in Bombardier's aerospace division. Dkt. No. 1 at ¶ 148.

3.    Bombardier reasonably expected that key personnel for the C-Series and Global 7000/8000 Aircraft would not join (within a span of a few months) a competing venture in need of Bombardier's trade secret information. Dkt. No. 1 at ¶ 149.

4.    Bombardier reasonably expected to adhere to its certification schedules for the C-Series and Global 7000/8000 Aircraft. Dkt. No. 1 at ¶ 150.

As discussed below, MITAC America's motion fails to set forth any reason to dismiss Bombardier's claim for tortious interference based on any of these independent theories.

**A.    MITAC America's Tortious Inference Was Conducted for an Improper Purpose**

Bombardier's Complaint states that MITAC America's tortious interference "was conducted for improper purposes; namely—to illicitly obtain Bombardier confidential, proprietary, and/or trade secret information knowingly and willfully to assist in the development and/or certification of its MRJ; and to harm Bombardier in the form of costly delays to its certification efforts for the C-Series and Global 7000/8000 Aircraft." Dkt. No. 1 at ¶ 153. In its motion, MITAC America raises two arguments. The first is that Bombardier is required to allege additional facts to support the "inference that *the reason* that MITAC America participated in recruiting Bombardier employees was to unlawfully acquire trade secrets." Dkt. No. 54, at 17. As an initial matter, Bombardier's Complaint does not require this **inference** as it plainly states the **allegation**. Dkt. No. 1 at ¶ 153. Moreover, not only does MITAC America fail to cite any authority to support this heightened pleading standard, but also it ignores the bulk of the factual allegations in Bombardier's Complaint. As discussed in Section II, Bombardier's Complaint lays out in great detail (1) the collective failure of MITAC, MITAC America, and AeroTEC to certify the MRJ; (2) MITAC America's efforts to specifically target Bombardier employees with access to Bombardier's certification trade secrets; (3) that the employees actually stole the trade secrets; (4) that the employees

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

then worked for MITAC, MITAC America, or AeroTEC; and (5) that significant redesigns of the MRJ occurred soon thereafter. Moreover, MITAC America's argument ignores its own use of the trade secrets (discussed in greater detail in Section III), which was clearly done for an "improper purpose."

MITAC America's second argument, that there are not sufficient factual allegations to support the second improper purpose of harming Bombardier's certification efforts, fails for at least the same reasons. As discussed, Bombardier repeatedly informed MITAC and MITAC America that their improper recruitment of Bombardier's employees would harm the certification efforts for the C-Series and Global 7000/8000 Aircraft. *See* Section IV. MITAC America's knowledge of this coupled with its continued illicit recruiting more than plausibly supports Bombardier's theory for purposes of satisfying Rule 12(b)(6). *See Libera v. City of Port Angeles*, 178 Wash. App. 669, 676 (2013) ("A court need not find that a defendant acted with ill will, spite, defamation, fraud, force, or coercion in order to find improper purpose or means.") (citing *Pleas v. City of Seattle,* 112 Wash. 2d 794, 803–04, 774 P.2d 1158 (1989)).

> **B.     MITAC America Actually Interfered with Bombardier's Contracts and Business Expectations**

> **1.     The Code of Ethics Is an Enforceable Contract**

Defendants do not faithfully apprise the Court of the law regarding employee handbooks or codes of conduct/ethics. Such agreements constitute valid contracts so long as the employee had notice thereof and continued his employment:

> Plaintiff's receipt of the handbook satisfied the requisites of contract formation. Defendant extended an offer by providing the handbook . . . . Plaintiff accepted the offer by signing for the handbook and participating in the training. The consideration was plaintiff's continuation of her employment. *See Pine River State Bank v. Mettille*, 333 N.W.2d [622,] 627 [Minn. 1983] (where an employee retains employment with knowledge of new or changed conditions, although free to leave, the employee supplies the necessary consideration).

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    *Gaglidari v. Denny's Rests.*, 117 Wn.2d 426, 433-36 (1991); *accord Cascade Auto Glass, Inc.*

2    *v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006)

3    (under Washington law, employment contract may be unilaterally modified with reasonable

4    notice); *Sampson v. Jeld-Wen Inc.*, 2015 U.S. Dist. LEXIS 181232, at *8, (E.D. Wash. Dec.

5    18, 2015) ("The Supreme Court of Washington has held that an employee handbook can

6    provide the predicate for a contract modification. Offer can be found where the employer gave

7    plaintiff a manual or handbook; the language in the handbook can constitute an offer.  The

8    employee's retention of employment with the employer can constitute acceptance.

9    Consideration can be found when the plaintiff continues to work for the employer." (citations

10   omitted)).  As a result, the Code of Conduct creates an enforceable agreement as to each

11   former employee.

12       Moreover, the individual defendants who were Canadian employees have additional

13   obligations to Bombardier.  For example, according to applicable legislation and case law in

14   Quebec and in Ontario,, an employee owes a duty of good faith and fidelity to her employer,

15   and a departing employee may not take or use against the employer any of the employer's

16   trade secrets or confidential information, whether during or after employment.  (Exhibit A to

17   the Declaration of John D. Denkenberger in Support of Bombardier Inc.'s Motion for

18   Preliminary Injunction ("Denkenberger Decl."), Dkt. No. 87-1, at 3; Denkenberger Decl.,

19   Exhibit B, Dkt. No. 87-2, at 14).

20                        **2.      The Former Employees Breached Their Obligations**

21       MITAC America nonsensically suggests that the former employees did not breach

22   their obligations, because the emails through which the confidential documents were stolen

23   were allegedly secure.  That is plainly not the right question.  The fact that the employees took

24   documents as they left the company, for non-legitimate-non-Bombardier purposes, itself

25   violated the Code of Ethics.  Additionally, retaining the documents post-employment is

26   ***stealing***, which also violates the Code.

27

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

The Code of Ethics required the individual defendants to, *inter alia*, "not divulge confidential information to anyone other than the person or persons for whom it is intended" and to "maintain such confidentiality at all times, even after leaving the employ of Bombardier." Complaint, Ex. D. at 15.  Moreover, the Code required Bombardier property to "only be used for legitimate business purposes" and required employees to "not expose it to loss, damage, misuse or theft." *Id*. at 13.

As a result, actions that violated the individuals' obligations include (1) accessing, emailing, or retaining confidential Bombardier documents beyond those needed for their respective specific tasks, (2) transmitting information to themselves for non-Bombardier or personal use (or for the benefit of a future employer), and (3) failing to return or delete Bombardier-confidential information upon the end of their employment.

### 3.    MITAC America Induced the Breach

MITAC America's motion argues in passing that the recruitment of Bombardier's employees cannot be inferred to mean that MITAC America "induc[ed] those recruited employees to improperly disclose Bombardier's confidential information."  Dkt. No. 54, at 21.  Not only is this argument unsupported, but it contradicts the facts alleged in Bombardier's Complaint (which must be accepted as true, for purposes of the Rule 12(b)(6) motion).  As discussed, MITAC America targeted specific Bombardier employees with expertise in and access to Bombardier's certification-related trade secrets.  This allegation is further supported by the fact that the employees targeted by MITAC and MITAC America began providing information in support of the MRJ certification efforts **while they were still employed by Bombardier**.  Dkt. No. 1 at ¶ 49.  This is just one example of the many ways that MITAC America's recruitment efforts induced the employees to breach Bombardier's Code of Ethics.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

### 4.      Bombardier's Claims Are Not Preempted

MITAC America raises a preemption argument that is plainly insufficient.   As an initial matter, MITAC America admits that its preemption argument applies only to the first of the four business expectations identified in Bombardier's Complaint.   *See* Dkt. No. 54, at 21. The argument does not affect the remaining three business expectations, and therefore the argument is not sufficient to dismiss Count VIII under Rule 12(b)(6).   MITAC America's motion concedes this point.   *Id*.

Moreover, MITAC America's argument is premised on the "strong view" of preemption set forth in *Thola v. Henschell*, 140 Wash. App. 70 (2007).   However, the "leading case in Washington on the preemptive scope of the Uniform Trade Secrets Act is not *Thola*; it is [the Washington] Supreme Court's decision in *Boeing Co. v. Sierracin Corp.*" *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688 (Ct. App. Wash. 2018); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (2018) ("Until or unless the Washington Supreme Court overrules *Boeing* and adopts the *Thola* analysis, *Boeing* controls.").   In *Boeing*, the court held that breach of confidentiality claims may be brought independently of trade secrets claims. *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 48 (1987); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (2018) (holding that "common law confidentiality claims are not preempted by its trade secrets claims, regardless of whether they are based on the same facts.").   In view of this authority, Bombardier's tort claim that MITAC America interfered with Bombardier's contractual relationship and damaged the corresponding business expectation is not preempted by the WUTSA.

Even under the "strong view" of preemption, however, Bombardier's claim still survives.   It is entirely plausible that one of the at least 90 employees recruited by MITAC America performed an action that breached the Code of Ethics but does not rise to the level of trade secret misappropriation.   In such a scenario, MITAC America would still be liable for tortious interference with the contractual relationship and the resultant expectation but not for trade secret misappropriation.   Given the sheer number of defendants and potential

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

widespread breaches of the Code of Ethics, it would be improper to determine at the pleading stage that the WUTSA preempts the entirety of Bombardier's first theory of tortious interference.

### C.     Bombardier Had a Valid Business Expectation in the Continued Employment of the Individual Defendants

At least some of the 90 employees that were lured by MITAC America's efforts were Canadian employees of Bombardier. *See, e.g.*, Complaint Exhibit A at Exhibits 2, 4, and 5. This includes at least Defendants Basson, Dornéval, and Ayre (whose Canadian employment status has further been admitted) as well as some of Does 1-88. *See, e.g.,* Dkt. Nos. 60-65. This is also not surprising given that "MITAC America organized a 'job fair' in Montréal to be held on July 15-16, 2016 at a venue located less than one (1) kilometer from Bombardier's global principal place of business." Dkt. No. 1 at ¶ 49.

Because these employees were Canadian employees, they were not at-will employees under Washington state law.  Generally speaking, Canadian employees owe a duty of good faith and fidelity to their employers. *See* Denkenberger Decl., Ex. A, Dkt. No. 87-1, at 3; *id.*, Ex. B, Dkt. No. 87-2, at 14. Beyond their status as Canadian employees, Bombardier's Complaint alleges that the employees were more than "simple 'at-will' employment arrangements **at least** because each employee had a continuing obligation following termination of employment to maintain the confidentiality of all Bombardier proprietary and confidential information." Dkt. No. 1 at ¶ 148 (emphasis added).

In its motion, MITAC America provides no explanation for its bald assertion that all of the employees in question were at-will employees.  Instead, it merely incorrectly assumes this fact.  Similarly, its motion provides no analysis of the obligations of an employee to its employer under the appropriate Canadian authority.   Additionally, even if all of the employees were at-will employees, which they are not, this does not address all four of the business expectations raised in Bombardier's Complaint.  For example, whether the employees are at-will employees is immaterial to their contractual obligation to "not divulge

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 17

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

[Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so." Dkt. No. 1 at ¶ 147. As such, Count VIII as pled more than meets the plausibility standard of Rule 12(b)(6).

### D.   Bombardier Properly Alleged Damages as a Result of MITAC America's Tortious Interference

Regarding the allegations of damages for MITAC America's tortious interference, MITAC America argues simply that the Complaint does not allege any missed deadlines related to the certification schedules set forth for the C-Series and Global 7000/8000 Aircraft. Not only is this untrue, but it is not the proper question. As an initial matter, the Complaint plainly alleges harm to Bombardier in "the form of costly delays to its certification efforts for the C-Series and Global 7000/8000 Aircraft." (Dkt. No. 1 at ¶ 153.) Indeed, Paragraph 153 of the Complaint identifies that this was the improper purpose of MITAC America's interference, and Paragraph 154 further confirms and alleges that these delays in fact occurred. (*Id.* at ¶¶ 153-154.)

Bombardier was not required to allege that its projects were actually delayed in order to survive a Rule 12(b)(6) motion. Bombardier's Complaint identifies multiple forms of damage, all of which are unaddressed by MITAC America's motion. For example, it is undisputed that at least 90 Bombardier employees were illicitly lured from Bombardier and that Bombardier alleged interference with its business expectation that it would continue to employ such personnel. The resultant damage, including that Bombardier no longer employs these individuals, is self-evident from the Complaint, which details MITAC America's successful efforts to hire these employees. Additionally, there is no requirement that the certification of Bombardier aircraft was actually delayed for there to be actual damages. The fact that the certification efforts were interfered with, which necessarily resulted in harm (monetary and otherwise) to Bombardier, is more than enough to state a claim. Indeed, the threat of these various damages are outlined throughout the Complaint and confirmed by Paragraph 154. In view of these allegations, MITAC America's cited authority is inapposite.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## VI.    CONCLUSION

For the foregoing reasons, Bombardier respectfully requests that the Court deny MITAC America's Motion.


Dated this 7th day of January, 2019.


CHRISTENSEN O'CONNOR
JOHNSON KINDNESS PLLC



s/ John D. Denkenberger
John D. Denkenberger, WSBA No.:  25,907
Brian F. McMahon, WSBA No.:  45,739
E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness PLLC
1201 Third Avenue, Suite 3600
Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

following:

5

Jerry A. Riedinger          Mack H. Shultz          Mary Z. Gaston

6

PERKINS COIE LLP      PERKINS COIE LLP      PERKINS COIE LLP
Email:                 Email:                 Email:

7

JRiedinger@perkinscoie.com   MShultz@perkinscoie.com   MGaston@perkinscoie.com
docketsea@perkinscoie.com    docketseapl@perkinscoie.com  docketsea@perkinscoie.com

8

lshaw@perkinscoie.com       sbilger@perkinscoie.com     jstarr@perkinscoie.com
sporter@perkinscoie.com

9

10

James Sanders           Shylah R. Alfonso

11

PERKINS COIE LLP      PERKINS COIE LLP
Email:                 Email:

12

JSanders@perkinscoie.com    SAlfonso@perkinscoie.com
RBecken@perkinscoie.com    docketsea@perkinscoie.com

13

docketsea@perkinscoie.com
jdavenport@perkinscoie.com

14

Attorneys for Mitsubishi Aircraft Corporation America Inc.

15

16

Richard J. Omata                Mark A. Bailey

17

KARR TUTTLE CAMPBELL        KARR TUTTLE CAMPBELL
Email: romata@karrtuttle.com     Email: mbailey@karrtuttle.com

18

jnesbitt@karrtuttle.com           jsmith@karrtuttle.com
swatkins@karrtuttle.com          mmunhall@karrtuttle.com

19

sanderson@karrtuttle.com

20

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-

21

Szymanowski, Laurus Basson, and Cindy Dornéval

22

Daneil T. Hagen

23

KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com

24

s/ John D. Denkenberger

25

John D. Denkenberger, WSBA No.:  25,907
Brian F. McMahon, WSBA No.:  45,739

26

E. Lindsay Calkins, WSBA No.: 44,127

Christensen O'Connor Johnson Kindness<sup>PLLC</sup>

27

1201 Third Avenue, Suite 3600

BOMBARDIER INC.'S RESPONSE TO
MITSUBISHI'S MOTION TO DISMISS
(2:18-cv-01543-RAJ) - 20

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100