Honorable Judge Richard A. Jones

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

BOMBARDIER INC.,

Plaintiff,

10

v.

11

12

MITSUBISHI AIRCRAFT CORPORATION,
MITSUBISHI AIRCRAFT CORPORATION
AMERICA INC., AEROSPACE TESTING
ENGINEERING & CERTIFICATION INC.,
MICHEL KORWIN-SZYMANOWSKI,
LAURUS BASSON, MARC-ANTOINE
DELARCHE, CINDY DORNÉVAL, KEITH
AYRE, AND JOHN AND/OR JANE DOES 1-
88,

13

14

15

16

17

Defendants.

No. 2:18-cv-01543-RAJ

BOMBARDIER'S RESPONSE TO
AEROTEC DEFENDANTS'
MOTION TO DISMISS

**NOTE ON MOTION
CALENDAR:
JANUARY 11, 2019**

ORAL ARGUMENT REQUESTED

18

19

20

21

22

23

24

25

26

27

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ)

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BOMBARDIER'S COMPLAINT FAR SURPASSES THE PLAUSIBILITY
        STANDARD OF RULE 12(B)(6) .......................................................................... 1

III.    BOMBARDIER'S BREACH CLAIMS ARE WELL PLED ............................... 7

        A.      Each of Basson and Dornéval Had Contractual Obligations to
                Bombardier ..................................................................................................... 7

        B.      The Complaint Pleads Breach of Those Obligations ........................... 10

IV.     BOMBARDIER'S TORTIOUS INTERFERENCE COUNTS ARE WELL
        PLED .................................................................................................................... 11

        A.      Bombardier Had Well Pled Facts Supporting an Enforceable
                Contractual Relationship and Valid Business Expectations in the
                Continued Employment of the Individual Defendants ........................ 12

                1.      Bombardier Pled a Valid Contractual Relationship and
                        Inducement of the Breaches Thereof ...................................... 12

                2.      Bombardier Pled Valid Business Expectancies ..................... 13

        B.      AeroTEC's Tortious Inference Was Conducted for an Improper
                Purpose ......................................................................................................... 14

V.      NEITHER THE BREACH NOR TORTIOUS INTERFERENCE CLAIMS
        ARE PREEMPTED .............................................................................................. 15

        A.      Bombardier's Breach Claims are Not Preempted ................................ 15

        B.      Bombardier's Tortious Interference Claims are Not Preempted .......... 16

VI.     BOMBARDIER'S COMPLAINT ALLEGES THAT AEROTEC ACQUIRED
        AND USED BOMBARDIER'S TRADE SECRETS ....................................... 17

        A.      The Complaint Adequately Alleges that Basson and Dornéval Acquired
                the Documents by Improper Means ....................................................... 18

        B.      The DTSA Claim Against Basson is Proper ......................................... 18

        C.      The Complaint Adequately Pleads Misappropriation by Basson and
                Dornéval ....................................................................................................... 19

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

D.     AeroTEC is Vicariously Liable for the Acts and Misappropriations of its Employees Within the Scope of Their Employment .........................................19

E.     Bombardier's Complaint Sufficiently Alleges Misappropriation by AeroTEC............................................................................................................21

VII.   CONCLUSION ................................................................................................23

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**TABLE OF AUTHORITIES**

**Cases**

*A.H. Lundberg Assocs. v. TSI, Inc.*, 2016 U.S. Dist. LEXIS 192842 (W.D. Wash. Feb. 18, 2016) .................................................................................................................. 16

*AccentCare Home Health of Rogue Valley, LLC v. Bliss*, No. 1:16-cv-01393-CL, 2017 U.S. Dist. LEXIS 88125 (D. Or. Apr. 13, 2017) ........................................................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 1, 18

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018) ..................................................................... 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 1, 18

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061 (D. Haw. 2011) .......... 6

*Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38 (1987) .................................... 15, 16

*Butcher v. Mortg. Elec. Registration Sys., Inc.*, 2012 U.S. Dist. LEXIS 124162 (D. Nev. Aug. 31, 2012) ................................................................................................. 9

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 145 P.3d 1253 (Wash. Ct. App. 2006) ......................................................................... 8

*Digital Mentor, Inc. v. Ovivo USA, LLC*, 2018 U.S. Dist. LEXIS 215137 (W.D. Wash. Dec. 21, 2018) ............................................................................................... 18

*Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir. 1976) ................... 22

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ......... 21

*Enters. Int'l v. Int'l Knife & Saw, Inc.*, 2013 U.S. Dist. LEXIS 168289 (W.D. Wash. Nov. 26, 2013) ................................................................................................. 15

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV 13-07563-DMG (JCGx), 2013 WL 12081182 (C.D. Cal. Nov. 22, 2013) ................................................. 20

*Fidelitad, Inc. v. Insitu, Inc.*, 2014 U.S. Dist. LEXIS 151334 (E.D. Wash. Oct. 24, 2014) .... 16

*Gaglidari v. Denny's Rests.*, 117 Wn.2d 426 (1991) ............................................... 8

*Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980) ................... 5

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*Inteum Co., LLC v. National Univ. of Singapore* is misplaced.  No. C17-1252-JCC, 2017 WL 6611961 (W.D. Wash. Dec. 27, 2017) ................................................................ 17

Joshua David Mellberg LLC v. Will, 96 F. Supp. 3d 953, 982 (D. Ariz. 2015) ..................... 22

*Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828 (2008) .............................................................. 9

*Libera v. City of Port Angeles*, 178 Wash. App. 669 (2013) ................................................... 14

*Mattel, Inc. v. MGM Entm't Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2010) .................................. 9

*Mills v. Bank of Am., N.A.*, 3:14-cv-05238, 2014 U.S. Dist. LEXIS 117563 (W.D. Wash. Aug. 22, 2014) ................................................................................................................................ 9

*Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*, No. 5:11-CV-01504-EJD, 2012 WL 762126 (N.D. Cal. Mar. 8, 2012) ....................................................................................... 6

*Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (2018) .......................................... 15, 16

*Pleas v. City of Seattle,* 112 Wash. 2d 794, 803–04, 774 P.2d 1158 (1989) ........................... 14

*Rockwell Collins, Inc. v. Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) ............................................................................................................... 6

*Sampson v. Jeld-Wen Inc.*, 2015 U.S. Dist. LEXIS 181232 (E.D. Wash. Dec. 18, 2015) ......... 8

*SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688 (Ct. App. Wash. 2018) ........................................................................................................................ 15, 16

*SMS Signature Cars v. Connects Mktg. LLC*, No. SACV 12-1300, 2012 WL 12893935 JVS (ANx) (C.D. Cal. Oct. 29, 2012) ............................................................................................... 6

*SolarCity Corp. v. Pure Solar Co.*, No. CV 16-01814-BRO (DTBx), 2016 WL 11019989 (C.D. Cal. Dec. 27, 2016) ....................................................................................................... 20

*Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659 (E.D. Pa. 2018) ................................. 18

*Thola v. Henschell*, 140 Wash. App. 70, 78, 164 P.3d 524 (Wash. Ct. App. 2007) ................. 20

*Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219 (1984) ........................................................ 7

*Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021 (S.D. Cal. 2017) .... 19

**Statutes**

RCW 19.108.010 ....................................................................................................................... 22

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

RCW 19.108.900 .................................................................................................... 15

**Other Authorities**

*Bélisle Scientific Concentrates Inc. v. Lyrco Nutrition Inc.*, 2007 QCCA 676 (Court of Appeal

of Quebec May 14, 2007) ................................................................................. 10

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - v

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## I.  INTRODUCTION

Under the *Iqbal* and *Twombly* standards, Bombardier need only plead *plausible* allegations that properly state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Bombardier's 90-page Complaint, which spans 277 paragraphs, *far* exceeds this standard for each claim. Instead of accepting this well-pled Complaint and providing its answer, AeroTEC has moved under Rule 12(b)(6) to dismiss. In doing so AeroTEC outright ignores highly relevant facts that are fatal to the requested relief. AeroTEC also takes dramatic liberties with respect to its cited legal authority. For at least these reasons its motion should be denied so Bombardier may proceed with proving its breach of contract, trade secret misappropriation, and tortious interference claims.

## II.  BOMBARDIER'S COMPLAINT FAR SURPASSES THE PLAUSIBILITY STANDARD OF RULE 12(B)(6)

In its Complaint Bombardier pled at least the following facts that support its claims for breach, trade secret misappropriation, and tortious interference:[1]

- Aerospace Testing Engineering & Certification Inc. ("AeroTEC") is a corporation organized and existing under the laws of the State of Washington. Dkt. No. 1 at ¶ 5.

- Michel Korwin-Szymanowski is a Director, Test & Evaluation at AeroTEC after having worked at Bombardier for approximately fifteen (15) years, most recently as the Director, C-Series Flight Test Teams. Dkt. No. 1 at ¶ 6.

- Laurus Basson is a Mechanical Systems Engineer (FCS) at AeroTEC after having worked at Bombardier for over three (3) years, most recently as a Senior Engineering Specialist (Flight Controls) and as a Candidate Design Approval Designee. Dkt. No. 1 at ¶ 7.

- Cindy Dornéval is an Aircraft Performance Engineer at AeroTEC after having worked at Bombardier for approximately ten (10) years, most recently as an Aircraft Performance Engineer. Dkt. No. 1 at ¶ 9.

- MITAC enlisted the assistance of Defendant AeroTEC, "a small engineering company that provides flight-testing and aircraft certification services, [to] provide technical support" for MITAC's MRJ project. Dkt. No. 1 at ¶ 41.

---

[1]Given the length and detail of Bombardier's factual allegations, these have been shortened for efficiency's sake.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

- MITAC, MITAC America, and AeroTEC jointly formed and staffed the Seattle Engineering Center on August 3, 2015 to manage MRJ development and certification in the United States.  Dkt. No. 1 at ¶ 42.

- MITAC, MITAC America, and AeroTEC continuously delayed the MRJ project as a direct result of their failures in the certification of the MRJ.  Dkt. No. 1 at ¶¶ 43-48.

- Bombardier developed certain trade secret information, including information used for the C-Series aircraft's design and certification for use in the United States and abroad.  Dkt. No. 1 at ¶¶ 60-66, 93-95, 105, 106.

- Bombardier has taken reasonable measures to maintain the secrecy of its trade secret information including, without limitation, subjecting all employees to a Code of Ethics that instructs personnel how to properly maintain the secrecy of said trade secrets.  Dkt. No. 1 at ¶¶ 96, 107.

- Bombardier's trade secrets have independent economic value and also have tremendous value to AeroTEC and its MRJ certification efforts.  Dkt. No. 1 at ¶¶ 119, 130.

- Shortly before MITAC's announcement of the MRJ's fourth delay, MITAC, MITAC America, and AeroTEC began recruiting Bombardier personnel.  Dkt. No. 1 at ¶ 49.

- AeroTEC launched a targeted recruiting campaign of Bombardier personnel working in the United States, including holding a job fair to be held in October 2015 in Wichita, Kansas—home of Bombardier's Flight Test Center in the United States—to interview candidates to work on MRJ flight testing in Seattle. AeroTEC targeted Bombardier personnel by arranging for billboards mounted on flatbed trucks advertising the job fair to be displayed immediately outside Bombardier's Flight Test Center. Dkt. No. 1 at ¶ 50.

- Once at AeroTEC, Korwin-Szymanowski sent targeted emails to at least 247 Bombardier employees in an effort to lure them into leaving Bombardier and join the MRJ certification efforts.  He also actively solicited Bombardier employees in person in Montréal, Canada to leave Bombardier.   Dkt. No. 1 at ¶ 51.

- Bombardier wrote directly to Defendant Korwin-Szymanowski and AeroTEC to address the impropriety of their targeted recruitment of Bombardier personnel.  Bombardier further informed them that these efforts would cause serious harm to Bombardier.  Dkt. No. 1 at ¶¶ 52, 53.

- AeroTEC specifically targeted Bombardier personnel for recruitment with the intention of using the new recruits to provide proprietary and trade secret Bombardier design and/or certification information for use in the MRJ project.  Dkt. No. 1 at ¶ 121.

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

- To Bombardier's knowledge, MITAC, MITAC America, and AeroTEC now employ at least 90 former Bombardier personnel whose job responsibilities relate directly to the development and certification of the MRJ.  Dkt. No. 1 at ¶¶ 11, 59, 69.

- Bombardier employees are bound by a Code of Ethics that requires them to maintain the confidentiality of Bombardier's confidential information and trade secrets, including after leaving Bombardier.  Dkt. No. 1 at ¶¶ 53, 60-65, 183, 184 Exs. C, D, K, N, P, R.

- Defendants Basson and Dornéval expressly agreed to conform to Bombardier's Code of Ethics after expressly acknowledging having received Bombardier's Code of Ethics and having read and understood all dispositions of that Code.  Pursuant to this code they owed Bombardier a duty to "not divulge [Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so."  Dkt. No. 1 at ¶¶ 60, 62, 184, 230.

- At least some, if not all, of these 90-plus employees stole trade secret information from Bombardier prior to their departure.  Dkt. No. 1 at ¶¶ 59-68, 94.

- On his last day as a Bombardier employee, Defendant Basson, without permission, sent an email from his Bombardier email account to his private "Yahoo" email account two (2) proprietary documents that contain highly valuable Bombardier trade secrets.  Dkt. No. 1 at ¶¶ 60, 169.

- Defendant Basson breached the duties owed to Bombardier at least by making and sending electronic copies of confidential and/or trade secret information from his work email account to his unsecure personal email account without authorization as described above. Upon information and belief, Defendant Basson also breached these duties by disclosing Bombardier's confidential and/or trade secret information to unauthorized third parties— including but not limited to his employer AeroTEC—and/or by using Bombardier's confidential and/or trade secret information in his role at AeroTEC. Dkt. No. 1 at ¶ 185.

- In the weeks, days, and hours before her Bombardier employment ended, Defendant Dornéval transmitted several documents containing highly sensitive Bombardier trade secret information to her personal email account.  Dkt. No. 1 at ¶¶ 62, 211, 212.

- Defendant Dornéval breached the duties owed to Bombardier at least by making and sending electronic copies of confidential and/or trade secret information from her work email account to her unsecure personal email account without authorization. Additionally, Defendant Dornéval also breached these duties by disclosing Bombardier's confidential and/or trade secret information to unauthorized third parties—including but not limited to her employer AeroTEC—and/or by using Bombardier's confidential and/or trade secret information in her role at AeroTEC. Dkt. No. 1 at ¶ 215.

- Defendant Korwin-Szymanowski misappropriated Bombardier trade secrets by inducing or knowingly permitting Defendants Basson, Delarche, and Dornéval to misappropriate Bombardier's trade secrets through his targeted recruitment efforts on behalf of AeroTEC,

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

including through his emails to Defendants Basson, Delarche, and Dornéval. Additionally, Korwin-Szymanowski misappropriated Bombardier's trade secrets because he disclosed and/or used Bombardier trade secrets.  Dkt. No. 1 at ¶ 238.

- MITAC, MITAC America, and AeroTEC abandoned the design of certain MRJ systems and electrical configurations in favor of new designs that would be easier to certify shortly after AeroTEC improperly lured away Bombardier personnel having access to and improper possession of Bombardier trade secrets.  AeroTEC used Bombardier trade secret information to assist in the new design's certification.  Dkt. No. 1 at ¶ 120, 121.

- AeroTEC knew or had reason to know its knowledge of the Bombardier trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy, or derived from or through a person who owed a duty to Bombardier to maintain its secrecy.  Dkt. No. 1 at ¶ 120-122.

- Bombardier has suffered and will continue to suffer irreparable financial loss and an irreparable loss of the confidentiality of their trade secret information.  Dkt. No. 1 at ¶¶ 123, 124, 186, 217.

- Bombardier reasonably expected each of its former employees to adhere to Bombardier's Code of Ethics, including the obligation to not divulge [Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so. Dkt. No. 1 at ¶ 156.

- Bombardier reasonably expected that it would continue to employ Defendants Basson, Delarche, Dornéval, and Does 1-88, to continue working in Bombardier's aerospace division.  Dkt. No. 1 at ¶ 157.

- Bombardier reasonably expected that key personnel for the C-Series and Global 7000/8000 Aircraft would not join (within a span of a few months) a competing venture in need of Bombardier's trade secret information.  Dkt. No. 1 at ¶ 158.

- Bombardier reasonably expected to adhere to its certification schedules for the C-Series and Global 7000/8000 Aircraft.  Dkt. No. 1 at ¶ 159.

- AeroTEC and Defendant Korwin-Szymanowski knew about these contractual relationships and knew about Bombardier's business expectations.  Dkt. No. 1 at ¶ 160, 256.

- AeroTEC intentionally interfered with Bombardier's contractual relationships and business expectations, which caused breach of the contractual relationships with, and business expectations from, at least Defendants Basson, Delarche, Dornéval, and Does 1-88.  Dkt. No. 1 at ¶ 161.

- AeroTEC intentionally interfered with Bombardier's contractual relationships and business expectations, and did so for improper purposes.  Dkt. No. 1 at ¶ 162.

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

- AeroTEC's intentional interference with Bombardier's contractual relationships and business expectations resulted in significant harm to Bombardier, including costly delays to its certification efforts for the C-Series and Global 7000/8000 Aircraft.  Dkt. No. 1 at ¶¶ 162, 163, 258, 259.

These factual allegations must be taken as true, and together they far exceed the plausibility requirement of *Iqbal* and *Twombly*.  Recent precedent supports this view.  For example, in *AccentCare Home Health of Rogue Valley, LLC v. Bliss*, the plaintiff alleged that the "California defendants planned and executed a scheme by which they targeted the senior management of [the plaintiff] and recruited them to leave [the plaintiff], breach their employment contracts, take account information and other proprietary information, solicit other employees to join them, and ultimately create a new branch of [one of the California defendants] in Medford, Oregon." No. 1:16-cv-01393-CL, 2017 U.S. Dist. LEXIS 88125, at *3-*4, *12 (D. Or. Apr. 13, 2017).  In view of these allegations the court held that the plaintiff "has sufficiently alleged facts to support" a claim of trade secret misappropriation against the California defendants.

Here, Bombardier alleged that AeroTEC "organized a job fair to be held on October 23-24 of 2015 in Wichita, Kansas—home of Bombardier's Flight Test Center in the United States—to interview candidates to work on MRJ flight testing in Seattle." Dkt. No. 1 at ¶ 50. Further, Bombardier alleged that "AeroTEC targeted Bombardier personnel specifically for this job fair by arranging for billboards mounted on flatbed trucks advertising the job fair to be displayed immediately outside Bombardier's Flight Test Center." *Id.*  Further still, Bombardier alleged that Defendant Korwin-Szymanowski on behalf of AeroTEC "sent a targeted email on October 20, 2015 'to 247 Bombardier [email] accounts' entitled, 'Flight Test Opportunities in Seattle' to inform then-current Bombardier personnel of 'positions open immediately' to work on 'the development and certification of the Mitsubishi Regional Jet (MRJ).'" *Id.* at ¶ 51. These allegations alone indicate that the recruitment was directed at employees who would have access to—and therefore could abscond with—Bombardier trade secrets. *See also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337–38 (9th Cir. 1980)

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

(citations omitted) (holding that "if either the defecting employee or the competitor . . . is guilty of some concomitant, unconscionable conduct, the injured former employer has a cause of action to recover for the detriment he has thereby suffered" and that "if there is a misappropriation of trade secrets as a concomitant of the solicitation,' relief would be granted").

Courts have routinely denied Rule 12(b)(6) motions where plaintiffs have pleaded fewer facts than are involved here. *See, e.g.*, *Rockwell Collins, Inc. v. Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775, at *3 (C.D. Cal. Nov. 10, 2017) (finding it sufficient to plead (1) that downloads of confidential files "were 'unauthorized' because of specific company policies and because the company never gave him permission to download the information"; and (2) that the plaintiff was "damaged because [defendant] took the proprietary information and because it had to conduct an investigation to determine what was taken"); *SMS Signature Cars v. Connects Mktg. LLC*, No. SACV 12-1300, 2012 WL 12893935 JVS (ANx), at *4 (C.D. Cal. Oct. 29, 2012) (finding it sufficient to plead that "Defendants Connects and Hruza (1) acquired trade secrets during SMS and AMI's negotiation process; (2) used these trade secrets to produce competing products; and (3) disclosed these trade secrets to Defendant PGL"); *Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*, No. 5:11-CV-01504-EJD, 2012 WL 762126, at *2 (N.D. Cal. Mar. 8, 2012) (finding it sufficient to (1) plead that defendant knew that it was acquiring plaintiff's trade secrets in breach of a confidentiality obligation; and (2) recite a provision of a contract demonstrating that the received information was subject to said confidentiality obligation); *see also BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1079 (D. Haw. 2011) (finding it sufficient to plead that defendant "solicited business from [plaintiff's] clients, used [plaintiff's] proprietary information to solicit proposed funding, interfered with its contracts, breached its nondisclosure with [plaintiff], and disparaged [plaintiff]"). As discussed below, AeroTEC's motion fails to demonstrate that Bombardier's allegations are not plausible, and therefore its motion should be denied.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

### III.    BOMBARDIER'S BREACH CLAIMS ARE WELL PLED

The Complaint pleads the existence of enforceable obligations, and breaches thereof, by each of Basson and Dornéval.  Among other legal obligations, the Complaint pleads that Basson and Dornéval were subject to the obligations found in Bombardier's Code of Ethics.  Complaint at ¶¶ 60, 62, 184, 230. .   And the Complaint pleads that Basson and Dornéval each breached those obligations, by taking Bombardier documents for their personal purposes and by retaining those documents after their employment ended.  *Id*.  Thus, defendants' motion to dismiss must be denied.

### A.    Each of Basson and Dornéval Had Contractual Obligations to Bombardier

While employed at Bombardier, Basson and Dornéval were each provided a copy of Bombardier's Code of Ethics, and each signed an acknowledgement of such receipt. Dkt. 1 (Complaint) at Ex. K (Basson) and Ex. P (Dornéval).  Each continued to work for Bombardier after receiving the Code of Ethics, and accordingly continued to receive a salary.  As a result, the individual defendants are contractually bound by the confidentiality obligations of the Code of Ethics.

Washington state law specifically recognizes the enforceability of employee handbooks and codes, and defendants' inapposite case law does not suggest otherwise.  For instance, the defendants cite the Washington Supreme Court's decision in *Thompson v. St. Regis Paper Co*., 102 Wn.2d 219, 228-229 (1984), but they do not faithfully represent the Supreme Court's holding.  The Supreme Court expressly recognized the validity and enforceability of an employer's corporate policies against its employees, stating:

> When the employment relationship is not evidenced by a written contract and is indefinite in duration, the parties have entered into a contract whereby the employer is essentially obligated to only pay the employee for any work performed. In this contractual relationship, the employer exercises substantial control over both the working relationship and his employees by retaining independent control of the work relationship. Thus, the employer can define the work relationship. Once an employer takes action,

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

for whatever reasons, an employee must either accept those changes, quit, or be discharged. ***Because the employer retains this control over the employment relationship, unilateral acts of the employer are binding on his employees and both parties should understand this rule***.

*Id.* at 229 (emphasis added).   A plethora of other cases recognize the enforceability of an employee code, and recognize that continued employment serves as sufficient consideration for the obligations imposed on the employee.  For example, the Washington Supreme Court has held:

> This handbook formed a contract between defendant and plaintiff. Defendant extended plaintiff an offer by giving her the manual and explaining its provisions. Plaintiff accepted the offer by signing the acknowledgment form agreeing to abide by its provisions. The consideration is found in plaintiff actually working for defendant.
>
> * * *
>
> Plaintiff's receipt of the handbook satisfied the requisites of contract formation. Defendant extended an offer by providing the handbook and training plaintiff on alcoholic beverage service in accordance with the requirements contained in the handbook. Plaintiff accepted the offer by signing for the handbook and participating in the training. The consideration was plaintiff's continuation of her employment. *See Pine River State Bank v. Mettille*, 333 N.W.2d [622,] 627 [Minn. 1983] (where an employee retains employment with knowledge of new or changed conditions, although free to leave, the employee supplies the necessary consideration).

*Gaglidari v. Denny's Rests.*, 117 Wn.2d 426, 433-36 (1991); *accord Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 145 P.3d 1253, 1256 (Wash. Ct. App. 2006) (under Washington law, employee handbooks may be unilaterally modified with reasonable notice); *Sampson v. Jeld-Wen Inc.*, 2015 U.S. Dist. LEXIS 181232, at *8 (E.D. Wash. Dec. 18, 2015) ("The Supreme Court of Washington has held that an employee handbook can provide the predicate for a contract modification. Offer can be found where the employer gave plaintiff a manual or handbook; the language in the handbook can constitute an offer.  The employee's

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  retention of employment with the employer can constitute acceptance. Consideration can be

2  found when the plaintiff continues to work for the employer." (citations omitted)).

3          Defendants cite no case suggesting that such confidentiality obligations are not

4  enforceable.   In fact, none of the cases cited by defendants actually supports the novel

5  proposition that defendants here espouse—*i.e.* that an employee may freely ignore its

6  employer's Code of Ethics and steal company-confidential documents.  For example, in *Mattel*,

7  the California court held that an employee of one company was not bound by the Code of

8  Conduct **of a different company**.  *Mattel, Inc. v. MGM Entm't Inc.*, 782 F. Supp. 2d 911, 993

9  (C.D. Cal. 2010) (holding that the Mattel Code of Conduct did not apply because of "the

10  undisputed fact that [the individual involved] was . . . not an employee of either Mattel or

11  Mattel Mexico").   Next, *Labriola* concerned only a separate non-compete agreement, which is

12  governed by specific rules and considerations not at issue in this litigation.  *Labriola v. Pollard*

13  *Grp., Inc.*, 152 Wn.2d 828 (2008).   Finally, *Mills* and *Butcher* relate to a rejected mortgage

14  application and mortgage modification, respectively, which likewise is inapposite to the

15  situation involved here.  *Mills v. Bank of Am., N.A.*, 3:14-cv-05238, 2014 U.S. Dist. LEXIS

16  117563, at *11 (W.D. Wash. Aug. 22, 2014); *Butcher v. Mortg. Elec. Registration Sys., Inc.*,

17  2012 U.S. Dist. LEXIS 124162 (D. Nev. Aug. 31, 2012).

18          Further, as pled in the Complaint, the obligations imposed by Bombardier's Code of

19  Ethics are illustrative and non-exhaustive, as Basson and Dornéval owed Bombardier additional

20  duties beyond those identified in the Code.  (Dkt. No. 1 at ¶¶ 183-184, 229-230 (alleging that

21  Defendants Basson and Dornéval owed duties to Bombardier "[p]ursuant to at least

22  Bombardier's Code of Ethics").)   Basson and Dornéval, as Canadian employees, have

23  additional obligations to Bombardier.  For example, according to applicable legislation and

24  case law in Quebec and in Ontario,, an employee owes a duty of good faith and fidelity to her

25  employer, and a departing employee may not take or use against the employer any of the

26  employer's trade secrets or confidential information, whether during or after employment.

27  Exhibit A to the Declaration of John D. Denkenberger in Support of Bombardier Inc.'s Motion

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

for Preliminary Injunction ("Denkenberger Decl."), Dkt. No. 87-1, at 3; Denkenberger Decl., Exhibit B, Dkt. No. 87-2, at 14.  Under the laws of Quebec, retaining company-confidential documents after employment ends violates the duty, and may amount to theft.  *See, e.g.*, *Bélisle Scientific Concentrates Inc. v. Lyrco Nutrition Inc.*, 2007 QCCA 676, at ¶42, n. 8 (Court of Appeal of Quebec May 14, 2007) ("[T]he second paragraph of article 2088 CCQ extends the duty of loyalty beyond the termination of the employment contract. The framework and the obligational content of this duty of post-contractual loyalty are the subject of abundant case law, the lessons of which can be summarized as follows: . . . Jurisprudence tends to prohibit behavior such as: . . . ***retain[ing] property or documents of the former employer*** . . . . The refusal to hand over these goods, moreover, constitutes in some cases an outright theft, without regard to the notion of loyalty.") (emphasis added; translation attached as Ex. A).  Thus, in addition to the obligations arising from the Code of Ethics, Basson and Dornéval also have statutory obligations requiring them not to retain Bombardier-confidential documents.

### B.    The Complaint Pleads Breach of Those Obligations

Defendants' brief asserts that it was not *per se* wrong to email company materials to a secure personal email account.   Regardless of whether that proposition is true, it is unquestionably not true that the individual defendants were allowed to steal Bombardier-confidential documents and retain them post-employment—regardless of how secure the involved personal email accounts were.

The Complaint pleads that the defendants (1) accessed and emailed confidential Bombardier documents beyond those needed for their respective specific tasks; (2) transmitted information to themselves for non-Bombardier use (and, it turns out, for the benefit of a future employer); and (3) failed to return or delete Bombardier-confidential information upon the end of their employment.  Complaint at ¶¶ 60, 62-64.  Therefore, the Complaint goes far beyond the pleading requirements to show the numerous actions that breached Basson and Dornéval's obligations.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

The Code of Ethics makes clear that "Company property should only be used for legitimate business purposes." Complaint, Ex. D. at 13. It required the individual defendants to "not divulge confidential information to anyone other than the person or persons for whom it is intended" and to "maintain such confidentiality at all times . . . ." *Id*. at 15. Finally, the Code required employees to "not expose [Company property] to loss, damage, misuse or theft." *Id*. at 13. And, as shown above, by virtue of their employment in Canada, Basson and Dornéval also had a duty not to take Bombardier-confidential information with them post-employment.

Basson and Dornéval breached their respective obligations by, at the very least, emailing documents to themselves for their own use and retaining (*i.e.* stealing) the documents after they ended their employment. *See* Dkt. No. 4 (Bombardier Inc.'s Motion for Preliminary Injunction) at 5-6; Dkt. No. 5 (Declaration of Daniel Burns in Support of Motion for Preliminary Injunction) ¶¶ 3-7 & 21-22, Exs. A-B & J thereto; Dkt. No. 7 (Declaration of David Tidd in Support of Motion for Preliminary Injunction) ¶¶ 2-7, Ex. A thereto. For defendants to suggest that this theft was permitted because they used a secure personal email account defies common sense and the employees' express obligations to Bombardier.

In sum, the Complaint goes far beyond any pleading requirement in its allegations that Basson and Dornéval owed Bombardier contractual obligations and breached those obligations. Defendants' motion should be denied.

## IV.   BOMBARDIER'S TORTIOUS INTERFERENCE COUNTS ARE WELL PLED

Bombardier identified at least four business expectations in its Complaint, each of which forms an independent basis for Bombardier's tortious interference claims against AeroTEC and Korwin-Szymanowski:

1.   Bombardier reasonably expected each of its former employees to adhere to Bombardier's Code of Ethics, including the obligation to not divulge [Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so. Dkt. No. 1 at ¶ 147.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

2.      Bombardier reasonably expected that it would continue to employ Defendants Basson, Delarche, Dornéval, and Does 1-88, to continue working in Bombardier's aerospace division.  Dkt. No. 1 at ¶ 148.

3.      Bombardier reasonably expected that key personnel for the C-Series and Global 7000/8000 Aircraft would not join (within a span of a few months) a competing venture in need of Bombardier's trade secret information. Dkt. No. 1 at ¶ 149.

4.      Bombardier reasonably expected to adhere to its certification schedules for the C-Series and Global 7000/8000 Aircraft.  Dkt. No. 1 at ¶ 150.

As discussed below, defendants' motion fails to set forth any reason to dismiss Bombardier's claim for tortious interference based on any of these independent theories.

A.      **Bombardier Had Well Pled Facts Supporting an Enforceable Contractual Relationship and Valid Business Expectations in the Continued Employment of the Individual Defendants**

1.      **Bombardier Pled a Valid Contractual Relationship and Inducement of the Breaches Thereof**

As shown above (*see, supra*, Section III), the individual defendants have enforceable contractual obligations that were in fact breached.  *See* Dkt. No. 1 (Complaint) at ¶¶ 60, 62-64 .

AeroTEC's motion argues in passing that the recruitment of Bombardier's employees cannot be inferred to mean that it "induced or caused any breach of the Code of Ethics."  Mot. at 9.  Not only is this argument unsupported, but it contradicts the facts alleged in Bombardier's Complaint (which must be accepted as true, for purposes of the Rule 12(b)(6) motion).  As discussed, AeroTEC targeted specific Bombardier employees with expertise in and access to Bombardier's certification-related trade secrets.  This allegation is further supported by the fact that the employees targeted by MITAC and AeroTEC began providing information in support of the MRJ certification efforts **while they were still employed by Bombardier**.  Dkt. No. 1 at ¶ 49.  This is just one example of the many ways that AeroTEC's recruitment efforts induced the employees to breach the Bombardier Code of Ethics.

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## 2.     Bombardier Pled Valid Business Expectancies

At least some of the 90-plus employees that were illicitly recruited by AeroTEC's and Korwin-Szymanowski efforts were Canadian employees of Bombardier.  *See, e.g.*, Complaint Exhibit A at Exhibits 2, 4, and 5.  This includes at least Defendants Basson, Dornéval, and Ayre as well as some of Does 1-88.  This is also not surprising given that defendants "organized a 'job fair' in Montréal to be held on July 15-16, 2016 at a venue located less than one (1) kilometer from Bombardier's global principal place of business."  Dkt. No. 1 at ¶ 49.

Because these employees were Canadian employees, they were not at-will employees under Washington state law.  Generally speaking, Canadian employees owe a duty of good faith, and fidelity to their employers.  *See* Denkenberger Decl. Ex. A, Dkt. No. 87-1, at 3; Denkenberger Decl. Ex. B, Dkt. No. 87-2, at 14. Beyond their status as Canadian employees, Bombardier's  Complaint  alleges  that  the  employees  were  more  than  "simple  'at-will' employment arrangements **at least** because each employee had a continuing obligation following termination of employment to maintain the confidentiality of all Bombardier proprietary and confidential information."  Dkt. No. 1 at ¶ 148 (emphasis added).

In its motion, AeroTEC provides no explanation for its bald assertion that all of the employees in question were at-will employees.  Instead, it merely incorrectly assumes this fact. Similarly, its motion provides no analysis of the obligations of an employee to its employer under the appropriate Canadian authority.  Additionally, even if all of the employees were at-will employees, which they are not, this does not address all four of the business expectations raised in Bombardier's Complaint.  For example, whether the employees are at-will employees is immaterial to their contractual obligation to "not divulge [Bombardier] confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so."  Dkt. No. 1 at ¶ 147.  As such, the tortious interferences counts, as pled, more than meets the plausibility standard of Rule 12(b)(6).

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 13

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**B.**     **AeroTEC's Tortious Inference Was Conducted for an Improper Purpose**

Bombardier's Complaint states that AeroTEC's tortious interference "was conducted for improper purposes; namely—to illicitly obtain Bombardier confidential, proprietary, and/or trade secret information knowingly and willfully to assist in the development and/or certification of its MRJ; and to harm Bombardier in the form of costly delays to its certification efforts for the C-Series and Global 7000/8000 Aircraft."  Dkt. No. 1 at ¶ 153.  In its motion, AeroTEC's sole argument relates to the pleading of facts supporting the improper purpose, suggesting wrongly that Bombardier's allegations should not be taken as true.  But the Court is required to take those facts as true.  That AeroTEC may disagree with the factual assertions is no basis to dismiss a complaint.

As discussed in Section II, Bombardier's Complaint lays out in great detail (1) the collective failure of MITAC, MITAC America, and AeroTEC to certify the MRJ; (2) AeroTEC's efforts to specifically target Bombardier employees with access to Bombardier's certification trade secrets; (3) that the employees actually stole the trade secrets; (4) that the employees then worked for MITAC, MITAC America, or AeroTEC; and (5) that, through AeroTEC, significant redesigns of the MRJ occurred soon thereafter.  Moreover, AeroTEC's argument ignores its own use of the trade secrets (discussed in greater detail, *infra*, in Section VI), which was clearly done for an "improper purpose."  These allegations far exceed any pleading standard for tortious interference.  *See Libera v. City of Port Angeles*, 178 Wash. App. 669, 676 (2013) ("A court need not find that a defendant acted with ill will, spite, defamation, fraud, force, or coercion in order to find improper purpose or means.") (citing *Pleas v. City of Seattle,* 112 Wash. 2d 794, 803–04, 774 P.2d 1158 (1989)).

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## V. NEITHER THE BREACH NOR TORTIOUS INTERFERENCE CLAIMS ARE PREEMPTED

### A. Bombardier's Breach Claims are Not Preempted

Notwithstanding AeroTEC's arguments to the contrary, Bombardier's trade secret misappropriation claims do not preempt its claims for breach of contract. The WUTSA does not preempt contractual obligations to protect confidential information. RCW 19.108.900(1)-(2) (WUTSA "does not affect . . . [c]ontractual or other civil liability for relief that is not based upon misappropriation of a trade secret."). Several courts have expressly declined to apply the preemption doctrine to contractual claims. *See, e.g.*, *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 48 (1987); *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688 (Ct. App. Wash. 2018); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (2018) (holding that "common law confidentiality claims are not preempted by its trade secrets claims, regardless of whether they are based on the same facts"); *Enters. Int'l v. Int'l Knife & Saw, Inc.*, 2013 U.S. Dist. LEXIS 168289 (W.D. Wash. Nov. 26, 2013) ("While Plaintiffs' contract claims rest on the same set of core facts as their misappropriation claim, state and district courts which have adopted a uniform trade secret act have typically applied preemption only to non-contract civil causes of action."). Thus, preemption simply does not apply to all of the Bombardier-confidential information that was taken and not deleted.[2]

Moreover, the preemption doctrine, at its core "precludes duplicate recovery for a single wrong." *Enters. Int'l*, 2013 U.S. Dist. LEXIS 168289, at * 25. Obviously, no issues of double recovery are present at this stage. Moreover, while a court may assess preemption at a motion to dismiss stage, WUTSA preemption is an issue "generally reserved for later in litigation because it requires a factual analysis and facts are poorly developed at the pleading stage." *A.H.*

---

[2] Additionally, Bombardier's breach claims are based on actions taken in violation of agreements in Canada and Kansas. The WUTSA preempts only "conflicting tort, restitutionary, and other law **of this state** . . . ." RCW 19.108.900(1) (emphasis added). Washington state law cannot preempt breach claims based on breaches of contracts covered by the state law of Kansas or of Canada.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*Lundberg Assocs. v. TSI, Inc.*, 2016 U.S. Dist. LEXIS 192842, at n. 6 (W.D. Wash. Feb. 18, 2016) (quoting *Fidelitad, Inc. v. Insitu, Inc.*, 2014 U.S. Dist. LEXIS 151334 (E.D. Wash. Oct. 24, 2014) (collecting cases assessing UTSA preemption in which the court either decided the question at a later stage in the litigation or denied a motion to dismiss without prejudice to reraising the issue subsequently)).

### B.    Bombardier's Tortious Interference Claims are Not Preempted

AeroTEC raises a preemption argument as to tortious interference that is also plainly insufficient. Other than simply saying so in one sentence, AeroTEC offers no analysis to show the underlying facts of the two counts are the same. That is telling, because the trade secrets claims and the tortious interference claims are based on a **different set of underlying facts**. Because AeroTEC failed to assess all (or any) of the four business expectations pled in Bombardier's Complaint, it cannot be sufficient to dismiss the tortious interference counts under Rule 12(b)(6).

Moreover, AeroTEC's brief fails to properly advise the Court of the status of preemption law. The "leading case in Washington on the preemptive scope of the Uniform Trade Secrets Act is not *Thola*; it is [the Washington] Supreme Court's decision in *Boeing Co. v. Sierracin Corp.*" *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688 (Ct. App. Wash. 2018); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810 (2018) ("Until or unless the Washington Supreme Court overrules *Boeing* and adopts the *Thola* analysis, *Boeing* controls."). In *Boeing*, the court held that breach of confidentiality claims may be brought independently of trade secrets claims. *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 48 (1987); *Modumetal*, 4 Wash. App. 2d at 810 (holding that "common law confidentiality claims are not preempted by its trade secrets claims, regardless of whether they are based on the same facts."). In view of this authority, Bombardier's tortious interference claim that AeroTEC interfered with Bombardier's contractual relationship and damaged corresponding business expectations is not preempted by the WUTSA.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## VI.   BOMBARDIER'S COMPLAINT ALLEGES THAT AEROTEC ACQUIRED AND USED BOMBARDIER'S TRADE SECRETS

In an attempt to misdirect the Court, AeroTEC mischaracterizes the detailed allegations found in Bombardier's Complaint.  AeroTEC also raises questions that are not relevant to a Rule 12(b)(6) motion.  As summarized above, Bombardier's Complaint includes detailed allegations regarding AeroTEC improper acquisition and use of Bombardier's trade secrets.

AeroTEC provides flight-test and certification support for the MRJ.  Dkt. No. 1 at ¶¶ 16, 41.   AeroTEC specifically sought out Bombardier employees with access to Bombardier's trade secrets relating to aircraft certification.  Dkt. No. 1 at ¶¶ 49, 50, 99. Those employees stole trade secrets relating to aircraft certification, and those employees now work for either MITAC America, MITAC, or AeroTEC.  Dkt. No. 1 at ¶¶ 60-67.  These allegations alone justify denying the Rule 12(b)(6) motion.  But the allegations do not stop there.  Shortly after the employees began working for AeroTEC, MITAC announced that there would be significant redesigns of the MRJ in view of certification concerns.  Dkt. No. 1 at ¶¶ 99, 110. Given AeroTEC's **direct employment** of at least some of Does 1-88, its relationship with MITAC, and its role in the certification of the MRJ, its use of Bombardier's trade secrets is far beyond plausible, it is axiomatic.

Bombardier is not required to plead every instance where AeroTEC acquired and used Bombardier's trade secrets, as the motion suggests.  Bombardier's allegations identify far "more than a mere possibility of liability," and instead set forth the core allegations demonstrating that AeroTEC misappropriated Bombardier's trade secrets.  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *5 (N.D. Cal. May 21, 2018) (finding allegations that the defendant, "which had never previously produced a cytometer, launched . . . two cytometers, one bearing 'striking similarities' to a cytometer" that former employees developed while working for the plaintiff, were sufficient).

AeroTEC's reliance on *Inteum Co., LLC v. National Univ. of Singapore* is misplaced. No. C17-1252-JCC, 2017 WL 6611961, at *3 (W.D. Wash. Dec. 27, 2017).  In *Inteum*, the

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

certain exhibits to the plaintiff's complaint undermined certain of its allegations, thus preventing the court from construing "all inferences reasonably drawn from . . . facts [pleaded]" in the plaintiff's favor.  *Id*.   Here, by comparison, there are no factual inconsistencies between the facts pleaded and the exhibits attached to the Complaint.  In this case, therefore, the Court should construe all inferences from the facts in Bombardier's favor, consistent with the well-settled precedent of *Iqbal* and *Twombly*.

### A.       The Complaint Adequately Alleges that Basson and Dornéval Acquired the Documents by Improper Means

According to AeroTEC's counsel, it is perfectly fine to steal your employer's trade secrets, so long as the email accounts you use are secure.  That is simply nonsense.  (Similarly, calling a Yahoo or Hotmail account secure is nonsense.)  The Complaint demonstrates that Basson and Dornéval acquired the trade secrets via improper means.   By keeping the documents as their own after the end of their employment with Bombardier, they misappropriated these documents.  That act alone demonstrates acquisition by improper means.  Both the WUTSA and the DTSA expressly define "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."   By failing to return or destroy the documents at the end of their employment, the individual defendants committed theft by conversion and breached their confidentiality obligations.

### B.       The DTSA Claim Against Basson is Proper

While the DTSA may not apply to misappropriations prior to May 11, 2016, it certain does apply to continuing acts of misappropriation after that date.  *See, e.g.*, *Digital Mentor, Inc. v. Ovivo USA, LLC*, 2018 U.S. Dist. LEXIS 215137, at *19 (W.D. Wash. Dec. 21, 2018) ("For the purposes of a motion to dismiss, it is sufficient that [plaintiff] alleged that misappropriation occurred after May 11, 2016.");  *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674-75 (E.D. Pa. 2018) (observing that "one who acquired and used a trade secret before enactment of

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

the DTSA and continues to use it after enactment is liable"); *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1057 (S.D. Cal. 2017) (holding that the DTSA applies to the misappropriation of trade secrets before its enactment date "as long as the misappropriation continues to occur after the enactment date").   Simply because Basson departed prior to that date (and misappropriated documents at that time), does not mean that Basson has not continued to misappropriate the trade secrets after May 11, 2016.  Bombardier alleges that Basson, and all other individual defendants, have used and continue to use the trade secrets in their respective efforts relating to the MRJ.

### C.   The Complaint Adequately Pleads Misappropriation by Basson and Dornéval

The Complaint specifically pleads that Basson and Dornéval had access to trade secrets while at Bombardier, stole certain trade secret information as they departed, used and continue to use the Bombardier trade secret information as a part of their current employment performing the same tasks for a competitor, and that the result of that misappropriation has been to speed up AeroTEC's and MITAC's efforts to certify the MRJ.  Dkt. No. 1 at 60, 62-64.  Again, these facts must be taken as true.[3]

### D.   AeroTEC is Vicariously Liable for the Acts and Misappropriations of its Employees Within the Scope of Their Employment

Bombardier's Complaint alleges that AeroTEC has used the Bombardier trade secrets that AeroTEC's employees stole to further the certifications efforts for the MRJ.  76, 87.  That alone is enough to survive a motion to dismiss.

---

[3] As an aside, if AeroTEC's position were taken to its logical end point, there could never be a pleading adequate for trade secret misappropriation.  A plaintiff cannot possibly be expected to identify all of the  specific day-to-day acts of misappropriation that go on at a competitor without the benefit of discovery.  All that is required at the pleading stage is plausibility.  Bombardier's complaint goes far beyond what other courts have held pass Rule 12(b)(6) muster.  *See, supra*, Section II and the cases cited therein.

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 19

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

AeroTEC's arguments that it is somehow insulated from misappropriation simply ignore clear legal precedent that **an employer is vicariously liable for trade secret misappropriation by its employees**.

> Further, '[u]nder the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of the employment.' This includes intentional torts, even if the employer has not authorized the employee to perform the tortious activity, so long as there is a 'causal nexus' between the activity and the employee's work.

*SolarCity Corp. v. Pure Solar Co.*, No. CV 16-01814-BRO (DTBx), 2016 WL 11019989, at *5 (C.D. Cal. Dec. 27, 2016) (internal citation omitted); *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. CV 13-07563-DMG (JCGx), 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (holding that the defendant may be liable for its employees' misappropriation of trade secrets under the doctrine of respondeat superior).  This approach has also been adopted by Washington courts.  *See, e.g.*, *Thola v. Henschell*, 140 Wash. App. 70, 78, 164 P.3d 524, 528 (Wash. Ct. App. 2007) ("But we agree with the majority of jurisdictions addressing the issue and conclude that one may violate the UTSA vicariously and be held responsible for such violation.").

Here, as described in Section II, AeroTEC actively engaged in soliciting at least 90 employees, each with access to Bombardier trade secret information, to leave Bombardier to work on the MRJ certification efforts.  Those employees stole extensive trade secrets from Bombardier and began to work for AeroTEC, MITAC, or MITAC America.  The stolen trade secrets have far more than a "causal nexus" to the work done at AeroTEC, and AeroTEC is therefore vicariously liable for at least its employees' use of the misappropriated trade secrets.

AeroTEC has presented no explanation, much less a plausible one, for why it actively recruited Bombardier's certification personnel who then stole confidential certification and design-related documents from Bombardier just prior to beginning their work on the MRJ.

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 20

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

However, even if AeroTEC had presented an "alternative explanation" for these actions, such an explanation would be irrelevant for purposes of a motion to dismiss under Rule 12(b)(6).

When there exist two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). AeroTEC's motion does not even offer such an alternative explanation, much less one that "is so convincing that plaintiff's explanation is implausible." *Id.* Instead, AeroTEC's motion, at most, simply attempts to refute the allegations set forth in Bombardier's Complaint, which falls far short of the standard for granting a motion to dismiss under Rule 12(b)(6).

### E. Bombardier's Complaint Sufficiently Alleges Misappropriation by AeroTEC

As summarized in Section II, Bombardier's Complaint identifies numerous factual allegations plausibly demonstrating that AeroTEC knew or should have known that the employees it lured to work on MRJ certification would rely or were relying on Bombardier trade secret information.

AeroTEC specifically targeted numerous Bombardier employees with access to Bombardier trade secrets. Dkt. No. 1 at ¶¶ 11, 49, 59, 69. Once it acquired a critical mass of these employees, it announced significant changes to the MRJ certification efforts. Dkt. No. 1 at ¶¶ 98, 99, 110. This alone is sufficient to defeat a Rule 12(b)(6) motion. However, on October 22, 2015, Bombardier contacted AeroTEC, in an effort to stop AeroTEC's attempts to hire away key Bombardier personnel at a critical time for Bombardier. Dkt. No. 1 at ¶ 52. Bombardier again contacted AeroTEC on April 26, 2016 to reiterate its concerns and make AeroTEC aware of Bombardier's employees' confidentiality obligations. *Id.* at ¶ 53. AeroTEC's motion ignores these facts. To argue that Bombardier did not plead facts to support the allegation that AeroTEC knew or should have known that the employees it illicitly recruited

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

from Bombardier had trade secret information and that the use of that information would be improper strains credulity.

AeroTEC cites no authority to support its apparent proposition that explicitly notifying a corporation that its employees may have acquired without authorization certain trade secret information that they may well attempt to misuse does not put that corporation on notice. Instead, AeroTEC relies on *Joshua David Mellberg LLC v. Will*, which is unavailing.  96 F. Supp. 3d 953, 982 (D. Ariz. 2015).  In *Mellberg*, the court merely indicated that it is not plausible that knowledge of trade secret usage can be imputed to a corporate entity based ***solely*** on that corporate entity's employment of former employees who misappropriated trade secrets. *Id.*  Unlike the plaintiff in *Mellberg*, Bombardier directly contacted AeroTEC to put it notice that the employees being illicitly recruited from Bombardier could arrive with Bombardier trade secret information that they may well use in MRJ certification efforts.  These facts end the inquiry.  But even beyond the direct notification given to AeroTEC, the fact that AeroTEC specifically sought a critical mass of personnel from Bombardier that had specialized knowledge and experience through their confidential work at Bombardier squarely put AeroTEC in the "known or should have known" category. *See, e.g.*, Dkt. No. 1 at ¶ 50.

Finally, AeroTEC's reliance on *Droeger v. Welsh Sporting Goods Corp.* is misplaced.  541 F.2d 790, 792-93 (9th Cir. 1976).  In *Droeger* (which issued before the UTSA existed, much less the DTSA), the corporate employee **properly** acquired the alleged trade secret from the plaintiff, and there was no evidence that the corporate employee ever communicated this trade secret to anyone else within the corporation. *Id.*  Here, Bombardier's trade secrets were not properly acquired; they were taken without authorization.  Bombardier's Complaint alleges that some of Does 1-88 work for AeroTEC and those employees have used those trade secrets in the course of their employment.  Dkt. No. 1 at ¶ 59.  As such, an AeroTEC employee would have (1) acquired Bombardier's trade secrets; and (2) "know[n] or [had] reason to know that the trade secret[s] [were] acquired by **improper** means."  RCW 19.108.010(2)(a) (emphasis

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1   added).  There is no need to "impute" any knowledge to AeroTEC because, as the employer,

2   AeroTEC is already vicariously liable for its employees' misappropriation.

3   **VII.     CONCLUSION**

4        For the foregoing reasons, Bombardier respectfully requests that the Court deny

5   AeroTEC's motion to dismiss.

6

7        Dated this 7th day of January, 2019.

8

9                                          CHRISTENSEN O'CONNOR
                                           JOHNSON KINDNESS[PLLC]

10

11

12                                         s/John D. Denkenberger
13                                         John D. Denkenberger, WSBA No.:  25,907
                                           Brian F. McMahon, WSBA No.:  45,739
14                                         E. Lindsay Calkins, WSBA No.: 44,127
15                                         Christensen O'Connor Johnson Kindness[PLLC]
                                           1201 Third Avenue, Suite 3600
16                                         Seattle, WA  98101-3029
                                           Telephone:  206.682.8100
17                                         Fax:  206.224.0779
18                                         E-mail:  john.denkenberger@cojk.com,
                                           brian.mcmahon@cojk.com,
19                                         lindsay.calkins@cojk.com, litdoc@cojk.com

20                                         *Attorneys for Plaintiff Bombardier Inc.*

21

22

23

24

25

26

27

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 23

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jerry A. Riedinger
PERKINS COIE LLP
Email:
JRiedinger@perkinscoie.com
docketsea@perkinscoie.com
lshaw@perkinscoie.com
sporter@perkinscoie.com

Mack H. Shultz
PERKINS COIE LLP
Email:
MShultz@perkinscoie.com
docketseapl@perkinscoie.com
sbilger@perkinscoie.com

Mary Z. Gaston
PERKINS COIE LLP
Email:
MGaston@perkinscoie.com
docketsea@perkinscoie.com
jstarr@perkinscoie.com

James Sanders
PERKINS COIE LLP
Email:
JSanders@perkinscoie.com
RBecken@perkinscoie.com
docketsea@perkinscoie.com
jdavenport@perkinscoie.com

Shylah R. Alfonso
PERKINS COIE LLP
Email:
SAlfonso@perkinscoie.com
docketsea@perkinscoie.com

Attorneys for Mitsubishi Aircraft Corporation America Inc.

Richard J. Omata
KARR TUTTLE CAMPBELL
Email: romata@karrtuttle.com
jnesbitt@karrtuttle.com
swatkins@karrtuttle.com

Mark A. Bailey
KARR TUTTLE CAMPBELL
Email: mbailey@karrtuttle.com
jsmith@karrtuttle.com
mmunhall@karrtuttle.com
sanderson@karrtuttle.com

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

Daneil T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com

s/ John D. Denkenberger
John D. Denkenberger, WSBA No.: 25,907
Brian F. McMahon, WSBA No.: 45,739
E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness<sup>PLLC</sup>
1201 Third Avenue, Suite 3600

BOMBARDIER'S RESPONSE TO AEROTEC'S
MOTION TO DISMISS (2:18-cv-01543-RAJ) - 24

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100