THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOMBARDIER INC., <br><br> Plaintiff, <br><br> v. <br><br> MITSUBISHI AIRCRAFT CORPORATION, MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC., et al., <br><br> Defendants. | No. 2:18-cv-1543 RAJ <br><br> DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM <br><br> NOTE ON MOTION CALENDAR: <br><br> Friday, January 11, 2019 <br><br> ORAL ARGUMENT REQUESTED |

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ)

142837238.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................. 1
II. ARGUMENT ........................................................................................................ 2
    A. Recruitment of Skilled Employees is Not Inducement to Steal Trade Secrets. ...................................................................................................... 2
    B. Bare Assertions Are Not Entitled to a Presumption of Truth. ................. 3
    C. Bombardier's Trade Secret Claims Should Be Dismissed under Rule 12(b)(6). ..................................................................................................... 4
        1. Bombardier's theory of misuse based on a redesign of the MRJ is an implausible inference as the redesign is unrelated to the trade secrets at issue. .......................................................................... 4
        2. Alleging a *possibility* of improper disclosure is insufficient to allege that MITAC America acquired or used trade secrets. ..................... 5
        3. One cannot reasonably infer from Bombardier's letters demanding that MITAC America stop recruiting its employees that MITAC America knew or should have known of any purported trade-secret theft. ........................................................................................... 8
    D. Bombardier's Tortious Interference Claim Should Be Dismissed. ......... 9
        1. Bombardier did not identify allegations supporting an improper purpose. ........................................................................................... 9
        2. Bombardier's theory based on the Code of Ethics is not viable. ............. 10
        3. Bombardier did not plausibly allege that its employees are not at-will. ................................................................................................. 12
        4. Bombardier provides only a conclusory allegation of the damages element. ............................................................................................ 12
III. CONCLUSION ................................................................................................... 12

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AccentCare Home Health of Rogue Valley, LLC v. Bliss*,
   No. 1:16-cv-01393-CL, 2017 WL 8948596 (D. Or. Apr. 13, 2017) ........................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... passim

*Beard Research, Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010) ...................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... passim

*BlueEarth Biofuels, LLC v. Hawaiian Electric Co.*,
   780 F. Supp. 2d 1061 (D. Haw. 2011) ...................................................................................7

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) .............................................................................................12

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*,
   135 Wn. App. 760 (2006) ....................................................................................................11

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ...............................................................................................12

*E&E Inv., Inc. v. Simmons Co.*,
   169 F.R.D. 467 (D.P.R. 1996) ...............................................................................................7

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
   335 F. Supp. 3d 657 (D. Del. 2018) ......................................................................................7

*Ed Nowogroski Ins., Inc. v. Rucker*,
   137 Wn. 2d 427 (1999) .....................................................................................................6, 9

*Evergreen Moneysource Mortg. Co. v. Shannon*,
   167 Wn. App. 242 (2012) ......................................................................................................4

*Gaglidari v. Denny's Rests.*,
   117 Wn. 2d 426 (1991) .......................................................................................................11

*Hollingsworth Solderless Terminal Co. v. Turley*,
   622 F.2d 1324 (9th Cir. 1980) ...........................................................................................6, 7

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) .................................................................................5, 10, 11

*Int'l Paper Co. v. Stuit*,
   No. C11-2139JLR, 2012 WL 1857143 (W.D. Wash. May 21, 2012) ....................................11

*Inteum Co., LLC v. Nat'l Univ. of Singapore*,
   No. C17-1252-JCC, 2018 WL 2317606 (W.D. Wash. May 22, 2018) ...................................11

*Inteum Co., LLC v. National University of Singapore*,
   No. C17-1252-JCC, 2017 WL 6611961 (W.D. Wash. Dec. 27, 2017) .....................................6

*Joshua David Mellberg LLC v. Will*,
   96 F. Supp. 3d 953 (D. Ariz. 2015) ........................................................................................9

*Labriola v. Pollard Grp., Inc.*,
   152 Wn.2d 828 (2004) ...................................................................................................10, 11

*Landstar Inway Inc. v. Samrow*,
   181 Wn. App. 109 (2014) .......................................................................................................7

*Miles Inc. v. Cookson Am., Inc.*,
   Civ. A. No. 12,310, 1994 WL 676761 (Del. Ch. Nov. 15, 1994) ...........................................7

*Mintel Learning Tech., Inc. v. Ambow Educational Holding Ltd.*,
   No. 5:11-cv-01504, 2012 WL 762126 (N.D. Cal. Mar. 8, 2012) ............................................7

*Modumetal, Inc. v. Xtalic Corp.*,
   4 Wn. App. 2d 810, 829-31 (2018) .......................................................................................11

*Omega Morgan, Inc. v. Heely*,
   No. C14-556RSL, 2015 WL 1954653 (W.D. Wash. Apr. 29, 2015) .....................................10

*Rockwell Collins, Inc. v. Wallace*,
   No. 17-cv-01369, 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) ...........................................7

*Sampson v. Jeld-Wen, Inc.*,
   No. 1:15-cv-03025-SAB, 2015 WL 12516734 (E.D. Wash. Dec. 18, 2015) ........................11

*SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*,
   427 P.3d 688 (Ct. App. Wash. 2018) ....................................................................................11

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*SMS Signature Cars v. Connects Mktg. LLC,*
  No. 12-cv-1300, 2012 WL 12893935 (C.D. Cal. Oct. 29, 2012) .............................................. 7

*T-Mobile USA, Inc. v. Huawei Device USA, Inc.,*
  115 F. Supp. 3d 1184 (W.D. Wash. 2015) .......................................................................... 11

**STATUTES**

18 U.S.C. § 1839(3)(B) ................................................................................................................... 4

18 U.S.C. § 1839(5) ................................................................................................................... 3, 8

RCW 19.108.010(2) ................................................................................................................... 3, 8

RCW 19.108.010(4)(a) ................................................................................................................... 4

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4, 6, 7, 11

Fed. R. Civ. P. 12(b)(7) ................................................................................................................. 6

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I. INTRODUCTION

Bombardier Inc. ("Bombardier") makes the same fatal errors in its Response that doom its Complaint: relying on *conclusory* allegations and urging the Court to draw *implausible* inferences. The Complaint should be dismissed because Bombardier does not allege *facts* supporting a plausible claim against MITAC America. Instead, Bombardier relies on rank speculation that employees of other companies might have provided information to MITAC America that might have been used by it on the MRJ project. This is insufficient as a court considers only well-pleaded facts, not speculation, when evaluating the sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown[n]—that the pleader is entitled to relief." *Id.* (citations omitted).

Such is the case with Bombardier's Complaint. Its central allegation is that MITAC America recruited (unidentified) Bombardier employees after encountering delays in certifying the MRJ. Bombardier then speculates that some unidentified MITAC America employees received unidentified alleged Bombardier trade secrets and then used them in an unidentified way to somehow speed the MRJ certification. Bombardier does not identify facts supposedly showing misappropriation by MITAC America; it relies only on MITAC America's "recruiting" of employees, a lawful activity, as the base for a mountain of speculation. Nor does Bombardier identify any case law holding that recruiting employees justifies a "plausible" inference of misappropriation. Thus, Bombardier's Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

Instead of facts, Bombardier relies on gross speculation. Bombardier says MITAC America helped promote a 2016 job fair to "illicitly recruit" Bombardier employees, but never identifies how the purportedly stolen trade secrets made their way from persons recruited at the

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION
AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS
(NO. 18-CV-1543 RAJ) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

2016 job fair (or any other job fair) to MITAC America. Bombardier does not even allege that MITAC America itself recruited or employed the Bombardier employees.[1] Bombardier nevertheless speculates that MITAC America promoted the job fair to induce Bombardier employees to steal trade secrets and use them on the MRJ project—without any supporting facts.

Similarly, MITAC America explained in its Motion that dismissal is required because Bombardier did not allege facts showing an "improper purpose." Bombardier in its Response contends its pleading is sufficient because the Complaint contains the bare, conclusory allegation that MITAC America acted with "improper purposes." (Dkt. 91 at 12 (citing Dkt. 1 ¶ 153).) Bombardier also contends it need not allege facts describing damage from MITAC America's alleged "interference," again because it pleaded the conclusory allegation that MITAC America's actions "caused resulting damage" to Bombardier. (*Id.* at 18 (citing Dkt. 1 ¶ 154).) *Iqbal* and *Twombly* preclude consideration of bare conclusions when considering a motion to dismiss.

Bombardier further strains credulity arguing "some of Does 1-88 work for MITAC America and those employees have used those trade secrets in the course of their employment." (*See id.* at 11 (citing Dkt. 1 ¶ 59).) The cited paragraph, however, says nothing about the 88 Does misappropriating trade secrets (Dkt. 1 ¶ 59); nor do the remaining 276 paragraphs identify how any of the 88 unknown persons used yet-unidentified trade secrets in yet-unidentified ways.

Bombardier's pervasive reliance on bare speculation requires dismissal of the Complaint.

## II.     ARGUMENT

### A.     Recruitment of Skilled Employees is Not Inducement to Steal Trade Secrets.

The single substantive factual allegation directed to MITAC America upon which Bombardier's claims are predicated is that it helped promote a job fair to recruit Bombardier employees in 2016. Bombardier then erroneously contends that MITAC America's recruiting efforts give rise to plausible claims for trade secret misappropriation and tortious interference.

---

[1] Bombardier contends that it alleged that the individuals who stole its trade secrets "work for either MITAC America, MITAC, or AeroTEC. (Dkt. 91 at 6 (citing Dkt. 1 ¶¶ 60-67).) Yet the cited paragraphs do not allege that any defendant works for MITAC America, nor is any MITAC America-employee named in the Complaint.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Bombardier repeatedly refers to the recruitment of its employees as "illicit" or "improper." (*See* Dkt. 91 at 10, 13, 18.) Apart from peppering its brief with those adjectives, Bombardier provides not a single fact to support its bare assertion that promoting a job fair to recruit skilled employees is suspect. To the contrary, in its Response, Bombardier doggedly maintains that because recruited employees "could" arrive with Bombardier trade secrets and "may well" use them to support the MRJ project, simply holding a job fair is actionable—even where the individuals who purportedly stole trade secrets are not alleged to have been hired by MITAC America or even recruited at a job fair. (Dkt. 91 at 10.) In effect, Bombardier contends its competitors are restricted from hiring (or even attempting to hire) Bombardier employees who might have had access to trade secrets. This Court should decline to endorse Bombardier's extreme proposition. Under Washington law, recruiting employees from a competitor to obtain their skills and expertise is not reasonably interpreted as inducing trade secret misappropriation.

**B.     Bare Assertions Are Not Entitled to a Presumption of Truth.**

*Iqbal* teaches that courts are "not bound to accept as true a legal conclusion couched as a factual allegation" or allegations that recite nothing more than "bare assertions." *Iqbal*, 556 U.S. at 678-79, 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)). Many of the "facts" Bombardier seeks to rely on are exactly that: nothing more than "bare assertions" or "formulaic recitation[s] of the elements" of its claims, and thus must be disregarded. *Id.* at 678, 681 (citation and quotation omitted). Below are a few examples of its allegations that Bombardier parades around as "facts," and relies on as such, in its Response:

- "MITAC America knew or had reason to know its knowledge of the Bombardier trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy, or derived from or through a person who owed a duty to Bombardier to maintain its secrecy. Dkt. No. 1 at ¶ 98, 99, 110." (Dkt. 91 at 3 (reciting elements of definition of "misappropriation" under 18 U.S.C. § 1839(5) and RCW 19.108.010(2));

- "MITAC America intentionally interfered with Bombardier's contractual relationships and business expectations, and did so for improper purposes. Dkt. No. 1 at ¶ 153."

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(Dkt. 91 at 4 (reciting elements of tortious interference claim, *see, e.g.*, *Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wn. App. 242, 258 (2012)); and

- "Bombardier's trade secrets have independent economic value and also have tremendous value to MITAC America and its MRJ certification efforts. Dkt. No. 1 at ¶¶ 97, 108." (Dkt. 91 at 2 (reciting elements of definition of "trade secret" under 18 U.S.C. § 1839(3)(B) and RCW 19.108.010(4)(a)).

In considering the sufficiency of a complaint, courts employ a two-step process: first identifying allegations that are nothing more than conclusions, such as the above, which are not presumed true and thus disregarded; and second, "determining whether [the factual allegations] plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 681. Here, scouring the 29 paragraphs in the Complaint identified by Bombardier in its Response as support for its claims of wrongdoing against MITAC America reveals plenty of broad-brush conclusions, but no well-pleaded factual allegations supporting a plausible inference of misconduct. The Complaint does not identify any MITAC America employee, much less allege that a MITAC America employee engaged in a specific act of wrongdoing. Nor do any of the 29 paragraphs describe an action taken by anyone at MITAC America to either receive or use an allegedly stolen trade secret.

As explained in the Motion and herein, under the two-step *Iqbal* analysis, once the speculation and conclusory allegations are stripped away, the factual allegations in the Complaint fail to state a claim against MITAC America.

C.   **Bombardier's Trade Secret Claims Should Be Dismissed under Rule 12(b)(6).**

   1.   **Bombardier's theory of misuse based on a redesign of the MRJ is an implausible inference as the redesign is unrelated to the trade secrets at issue.**

Bombardier continues to urge the Court to unreasonably infer misappropriation from nothing more than an innocuous timeline (Dkt. 91 at 6-7, 9), notwithstanding (and without disputing) MITAC America's almost three-page explanation of why the "timeline" allegations do not support a plausible inference of misappropriation. (*See* Dkt. 54 at 11-14.) Bombardier simply

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

ignores the facial implausibility that allegations of "relocat[ing] components in the avionics bay" and a corresponding "change in the electrical wires routing" suggest misappropriation of trade secrets unrelated to "wire routing" or "avionics" component location. (Dkt. 1 ¶¶ 47-48). The lack of a plausible connection between the alleged trade secrets and the avionics bay/wiring design changes means there is no plausible inference of misappropriation to be inferred from the timeline relied on by Bombardier. *See Iqbal*, 556 U.S. at 678. Moreover, Bombardier ignores the "obvious alternative explanation" for the MRJ project continuing to progress towards completion: the contributions of the general skills and expertise of the entire MRJ team. *Twombly*, 550 U.S. at 567.

### 2. Alleging a *possibility* of improper disclosure is insufficient to allege that MITAC America acquired or used trade secrets.

In arguing that the Court should infer that MITAC America acquired or used the alleged trade secrets, Bombardier disregards the law, especially *Twombly*. A mere possibility of misconduct from the alleged facts is not enough, and an "obvious alternative explanation" means a complaint is deficient. *Id.*; *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Here, Bombardier provides only a mere possibility (which itself is a stretch) that MITAC America acquired or used the alleged trade secrets.

First, as explained above, there is no plausible inference that the alleged trade secrets have been *used* in connection with the MRJ because the redesign that Bombardier relies on to make that argument is untethered to the subject matter of the alleged trade secrets, as Bombardier effectively conceded through its silence. Bombardier also argues that it is plausible MITAC America *acquired* Bombardier trade secrets simply by virtue of its having helped promote a job fair to recruit Bombardier employees and, separately, that a handful of former Bombardier employees allegedly stole Bombardier documents and then went to work on the MRJ project for a company other than MITAC America. (Dkt. 91 at 6.) As explained above, however, Bombardier makes no factual allegations that plausibly support its refrain that MITAC America's recruitment activities were "illicit," or that support the inferential leap that a handful of employees hired by a different

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

company provided Bombardier trade secrets to MITAC America. To that point, and its bears repeating, merely recruiting competitor employees is not improper and does not imply trade secret misappropriation. *See Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn. 2d 427, 437 (1999).

This Court's decision in *Inteum Co., LLC v. National University of Singapore*, No. C17-1252-JCC, 2017 WL 6611961, at *3-4 (W.D. Wash. Dec. 27, 2017) strongly supports dismissal, and Bombardier's attempt to meaningfully distinguish it falls flat. The *Inteum* court dismissed a trade secret claim because the factual allegations in the complaint, presumed by the court to be true, supported plausible inferences that the defendant had motive and opportunity to improperly disclose the plaintiff's trade secrets but supported only a "possibility" of improper disclosure, and thus were insufficient. *See id.* Bombardier does not, and could not, dispute the court's holding in *Inteum*. Instead, Bombardier simply points out that the *Inteum* court did not presume true allegations in the complaint that were contradicted by its exhibits (Dkt. 91 at 7), an observation that has zero relevance here where MITAC America is not asking the Court to disregard any of the well-pleaded facts in the Complaint. Accordingly, Bombardier's allegations against MITAC America—which at best speak to motive, opportunity, and a mere possibility of improper disclosure to MITAC America—are insufficient under *Inteum*.

Bombardier nonetheless contends that its paper-thin factual allegations and conclusory statements are sufficient to state a claim, relying on several cases in which courts have supposedly "denied Rule 12(b)(6) motions where plaintiffs have pleaded fewer facts" than Bombardier. (Dkt. 91 at 4-5.) Those cases are also of no help to Bombardier. To illustrate, *AccentCare*, the case Bombardier showcases as "[r]ecent precedent" interpreting *Iqbal* and *Twombly*, does not even cite *Iqbal* or *Twombly*. Instead, that court was ruling on a Rule 12(b)(7) motion to dismiss for failure to join an indispensable party, and thus considered a trade secret claim only in that context. *See AccentCare Home Health of Rogue Valley, LLC v. Bliss*, No. 1:16-cv-01393-CL, 2017 WL 8948596, at *2, *4 (D. Or. Apr. 13, 2017). Bombardier's reliance on *Hollingsworth* is equally misplaced. (Dkt. 91 at 4.) First, *Hollingsworth* is procedurally inapposite because, as an appeal

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

from a summary judgment ruling, it does not speak to Rule 12(b)(6) pleading standards. Even more notable, *Hollingsworth* makes clear "[m]ere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1337 (9th Cir. 1980).[2] In sum, Bombardier's factual allegations do not plausibly support an inference that MITAC America acquired or used any purported trade secrets, and the cases Bombardier's cites in support do not advance its cause.

Faced with deficiencies in its misappropriation theories, Bombardier, for the first time in its Response, interjects "alter ego" and "vicarious liability" theories. (*See* Dkt. 91 at 6 n.2, 8.) As a threshold matter, the Court should not consider these new theories as Bombardier did not raise them in the Complaint. *See E&E Inv., Inc. v. Simmons Co.*, 169 F.R.D. 467, 468 (D.P.R. 1996). Even if considered, however, both new theories fail. As to the alter-ego footnote, Bombardier cites no law to support its theory that the alter-ego doctrine imputes liability *from* a parent company *to* a subsidiary. (*See* Dkt. 91 at 6, n.2.)[3] Moreover, Bombardier simply lobs an alter-ego reference into its Response without identifying factual allegations directed to MITAC that it contends should be imputed to MITAC America, and that would support a misappropriation claim against it. Similarly, Bombardier pleads no facts to support vicarious liability. Instead, Bombardier simply

---

[2] Bombardier's district court cases from California and Hawaii fare no better. In *Rockwell Collins*, the court analyzed a claim against a *former employee* but did not address any claims against a competitor for whom the former employer went to work, and thus has no bearing to Bombardier's claims against MITAC America. *See Rockwell Collins, Inc. v. Wallace*, No. 17-cv-01369, 2017 WL 5502775, at *1-3 (C.D. Cal. Nov. 10, 2017). In *SMS Signature Cars*, the court *granted* the defendants' Rule 12(b)(6) motion but stated in dicta that misappropriation was sufficiently pled where specific factual allegations supported that the individual defendants had disclosed the plaintiff's trade secrets to a defendant. *See SMS Signature Cars v. Connects Mktg. LLC*, No. 12-cv-1300, 2012 WL 12893935, at *3-4 (C.D. Cal. Oct. 29, 2012). And in *Mintel Learning Tech., Inc. v. Ambow Educational Holding Ltd.*, No. 5:11-cv-01504, 2012 WL 762126, at *2 (N.D. Cal. Mar. 8, 2012), and *BlueEarth Biofuels, LLC v. Hawaiian Electric Co.*, 780 F. Supp. 2d 1061, 1079 (D. Haw. 2011), the factual allegations linked the defendant directly to the misappropriation, as opposed to here where Bombardier alleges the individual defendants disclosed the purported trade secrets to "others" and "unauthorized third parties," but provide not a single factual allegation linking misappropriation to MITAC America or any of its employees. (*See* Dkt. 1 ¶¶ 19, 169, 178, 185, 192, 201, 208, 215, 224, 231, 265, 274.)

[3] In three cases cited by Bombardier, the courts held a parent liable for its subsidiary, not the other way around. *See Beard Research, Inc. v. Kates*, 8 A.3d 573 (Del. Ch. 2010); *Miles Inc. v. Cookson Am., Inc.*, Civ. A. No. 12,310, 1994 WL 676761 (Del. Ch. Nov. 15, 1994); *Landstar Inway Inc. v. Samrow*, 181 Wn. App. 109, 126 (2014). Further, a case relied on by Bombardier to support the imposition of parent-to-subsidiary liability holds the opposite. (*See* Dkt. 91 at 6 n.2 (citing *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 676 (D. Del. 2018) (holding plaintiff "provide[d] no authority" to assert jurisdiction over sister subsidiary under alter-ego theory)).)

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

notes the proposition that "an employer may be vicariously liable for trade secret misappropriation by its employees." (Dkt. 91 at 8.) Bombardier fails to allege a crucial fact necessary to make such a statement with a straight face: that a MITAC America employee committed wrongdoing. Rather, the Complaint does not so much as mention a MITAC America employee. Accordingly, even if properly considered, these two unpled theories are as unavailing as those pleaded.

        **3.    One cannot reasonably infer from Bombardier's letters demanding that MITAC America stop recruiting its employees that MITAC America knew or should have known of any purported trade-secret theft.**

Bombardier contends it satisfies the "knowledge" element of its misappropriation claims as to MITAC America because it alleged in its Complaint and through its attached exhibits that "Bombardier directly contacted MHI, the parent of both MITAC and MITAC America, to put all on notice that the employees being illicitly recruited from Bombardier could arrive with Bombardier trade secret information they may well use in MRJ certification efforts." (Dkt. 91 at 10; *see also* Dkt. 1 ¶¶ 54-56; Dkts. 1-14 to 1-17.) This argument fails.

First, both the federal and Washington trade secret statutes define misappropriation as requiring knowledge (actual or constructive) that "improper means" were used with respect to "*the* trade secret" at issue. 18 U.S.C. § 1839(5); RCW 19.108.010(2) (emphasis added). Nowhere in any of its letters does Bombardier identify any of the documents allegedly stolen, nor any of the trade secrets allegedly contained therein. Nor do the letters suggest that anyone at MITAC America received any information knowing it was obtained by "improper means." The letters merely refer to unspecified "know-how," "trade secrets," "expertise," and "intellectual property" purportedly possessed by former and current employees. (Dkts. 1-14 to 1-17.) Nor do the letters identify a MITAC America employee. Again, it is not plausible to infer that MITAC America had actual or constructive knowledge of an alleged theft and/or use of the alleged trade secrets at issue in this case based on allegations involving employees of other companies.

Bombardier's letters also make no distinction between the general skills and experience of its former employees (over which Bombardier has no rightful claim) and its purportedly

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

proprietary information. *See Rucker*, 137 Wn. 2d at 437. In one letter, *e.g.*, Bombardier writes:

> The employees targeted by MHI are highly skilled and specialized engineers and test pilots that have developed valuable know-how and trade-secrets through their experience and work with Bombardier. The expertise acquired by these employees is rare and extremely valuable. It is very hard to acquire or replace.

(Dkt. 1-17.) Thus, far from putting MHI on notice of specific acts of theft of particular Bombardier trade secrets, this statement and others[4] read as an anti-competitive attempt to retain the expertise of employees. This blurring of proprietary information and employees' skills and experience (which are freely transferable) further undermines the argument that the letters satisfy Bombardier's burden of alleging facts to plausibly infer that MITAC America had the requisite knowledge. *See Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982-83 (D. Ariz. 2015) (explaining that "conceivable" knowledge not sufficient to state claim). Counts III and IV should be dismissed for each independent reason: no acquire/use of trade secrets or requisite knowledge.

### D. Bombardier's Tortious Interference Claim Should Be Dismissed.

#### 1. Bombardier did not identify allegations supporting an improper purpose.

Bombardier relies on the same set of allegations to encourage the Court to infer that MITAC America helped promote the 2016 job fair with the "improper purpose" of illicitly obtaining Bombardier trade secrets. (*See* Dkt. 91 at 12.) Bombardier's reliance is misplaced for the same reason as explained above in § II.A: a complete failure to support the conclusion with allegations of fact. Recruitment of skilled employees is proper and lawful; it does not provide a basis to infer inducement to steal trade secrets. And allegations that a few individuals "stole" trade secrets before they left Bombardier does not plausibly imply MITAC America's recruitment was improper. Bombardier does not even allege that MITAC America hired any accused individual (nor does it allege that those individuals were even recruited at the 2016 job fair). Bombardier is

---

[4] (*See also* Dkt. 1-14 ("[T]he science and expertise of flight testing can only be acquired through experience and is extremely valuable to any OEM."); Dkt. 1-18 at 5 ("The employees targeted by Mitsubishi are highly skilled and specialized engineers and test pilots, many of whom held key positions during their employment at Bombardier. More importantly, the know-how and trade secrets acquired by these employees can hardly be acquired outside the context of the development of new aircraft programs. This information is both rare and extremely valuable.").)

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

thus forced to retreat to its "timeline" allegations, which, again, are untenable for the reasons stated above in § II.C.1. Faced with Bombardier's implausible explanation and the "obvious alternative explanation," the Court must dismiss. *Century*, 729 F.3d at 1108.

As to the supposed second "improper purpose" (*i.e.*, to cause Bombardier to suffer costly delays), Bombardier argues it is sufficient to allege that Bombardier asked MHI and MITAC to stop recruiting its employees and warned them that losing key employees would harm Bombardier. (*See* Dkt. 91 at 13.) But the "obvious alternative explanation" for MITAC America's recruitment efforts is that it promoted the job fair because it wanted to hire qualified and experienced workers—not to gratuitously harm Bombardier. *See Twombly*, 550 U.S. at 567; *Century*, 729 F.3d at 1108. Bombardier effectively asks the Court to hold that if a company warns its competitor that recruiting its employees could harm the company, that alone is sufficient to create a plausible inference of "improper purpose"—and consequently that the necessary response to such a letter is for the competitor to cease recruitment efforts. That cannot be right. Companies routinely recruit (and compete for) employees to grow their business. A healthy, competitive free labor market is not only proper but is to be to be encouraged, not prohibited by judicial decree. In sum, recruiting employees (or in this case, promoting a job fair) does not plausibly imply an improper purpose of harming those employees' current employer or stealing its trade secrets. Count VIII should be dismissed on this independent basis and the bases below.

### 2. Bombardier's theory based on the Code of Ethics is not viable.

Based on an erroneous understanding of Washington law, Bombardier incorrectly asserts that "employee handbooks or codes of conduct/ethics" constitute "valid contracts so long as the employee had notice thereof and continued his employment[.]" (Dkt. 91 at 13.) To the contrary, "[a] contract entered into after employment or a modification of an existing employment contract will be enforced if it is supported by independent, additional consideration." *Omega Morgan, Inc. v. Heely*, No. C14-556RSL, 2015 WL 1954653, at *3 (W.D. Wash. Apr. 29, 2015) (citing *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834 (2004)) (granting summary judgment for

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 10

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

employee because only evidence by employer was "acknowledgement form" signed three years after employee commenced employment).[5] "Independent consideration may include increased wages, a promotion, a bonus, a fixed term of employment, or perhaps access to protected information," *Labriola*, 152 Wn.2d at 834, but "continued at-will employment" does not, *Int'l Paper Co. v. Stuit*, No. C11-2139JLR, 2012 WL 1857143, at *4 (W.D. Wash. May 21, 2012). By its silence, Bombardier concedes its Complaint fails to allege independent consideration.

Further, Bombardier's attempt to avoid preemption of this claim (even if it could overcome each of the fatal flaws discussed herein) fails. Bombardier ignores that this Court has, indeed, adopted the "strong view" of preemption, and did so in light of the Washington Supreme Court's decision in *Boeing*. (Dkt. 91 at 16); *see Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2018 WL 2317606, at *2 (W.D. Wash. May 22, 2018); *see also T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1197-99 (W.D. Wash. 2015) (acknowledging *Boeing* but concluding "the Washington Supreme Court would embrace" strong view of preemption). Thus, Bombardier's citation to Washington appellate court decisions taking the opposite view (*i.e.*, that *Boeing* counsels away from the strong view) should not alter this Court's reasoned conclusion.[6] Bombardier's only fallback argument under the strong view is that "[i]t is entirely plausible that one of the at least 90 employees recruited by MITAC America performed an action that breached the Code of Ethics but does not rise to the level of trade secret misappropriation." (Dkt. 91 at 16.) However, such speculation, untethered from any factual support, is plainly insufficient. *See Century*, 729 F.3d at 1108 ("merely *possible*" explanation is not enough under Rule 12(b)(6)).

---

[5] Bombardier quotes *Gaglidari v. Denny's Rests.*, 117 Wn. 2d 426, 433 (1991), a pre-*Labriola* case. (Dkt. 91 at 13-14.) The two cited *post-Labriola* cases are inapposite. *Id. See Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 769 (2006) (addressing whether an insurance company could modify pricing agreement); *Sampson v. Jeld-Wen, Inc.*, No. 1:15-cv-03025-SAB, 2015 WL 12516734, at *3 (E.D. Wash. Dec. 18, 2015) (finding consideration to modify contracts where employees continued working after being informed of new bonus policy).)

[6] Plus, neither in *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 829-31 (2018) nor *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688, 693 (Ct. App. Wash. 2018) did the court consider whether WUTSA preempted a tortious interference claim.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 11

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### 3. Bombardier did not plausibly allege that its employees are not at-will.

Bombardier alleges it had a business expectancy in the continued employment of the 92 former Bombardier employees. (Dkt. 1 ¶¶ 59, 139.) The Complaint says those employees had "more than simple 'at-will' employment arrangements" because "each employee had a continuing obligation following termination of employment to maintain the confidentiality of all Bombardier proprietary and confidential information." (*Id.* ¶ 139.) In response, Bombardier abandons this theory, instead asserting that it had a business expectancy because "some" of those employees were "Canadian employees" and therefore were "not at-will employees under Washington state law." (Dkt. 91 at 17.) This new allegation is not pled. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Regardless, Bombardier provides no legal support for its self-serving characterization of Canadian law. It only references two articles filed in support of its motion for preliminary injunction—extraneous materials plainly not to be considered as part of a motion to dismiss. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).

### 4. Bombardier provides only a conclusory allegation of the damages element.

The final theory is that MITAC America interfered with Bombardier's expectancy that it would adhere to its own certification schedule. (Dkt. 1 ¶ 150.) But Bombardier did not allege that it suffered damages due to MITAC America's interference under this theory, as Bombardier did not allege that its certification schedule was, in fact, delayed. In response, Bombardier simply points to a bare allegation, "MITAC America's intentional interference . . . caused resulting damage to Plaintiff." (Dkt. 91 at 18 (citing Dkt. 1 ¶ 154).) But a mere "formulaic recitation of the element" of damages is plainly insufficient. *Iqbal*, 556 U.S. at 678 (citation and quotation omitted).

## III.   CONCLUSION

For the reasons stated herein, and in the Motion to Dismiss, MITAC America respectfully requests the Court to dismiss Counts III, IV, and VIII.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

RESPECTFULLY SUBMITTED this 11th day of January 2019.

*/s Mary Z. Gaston*
Jerry A. Riedinger, WSBA No. 25828
Mack H. Shultz, WSBA No. 27190
Mary Z. Gaston, WSBA No. 27258
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: JRiedinger@perkinscoie.com
E-mail: MShultz@perkinscoie.com
E-mail: MGaston@perkinscoie.com

Attorneys for Defendant Mitsubishi Aircraft Corporation America, Inc.

DEFENDANT MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC.'S REPLY ISO ITS MOTION TO DISMISS (NO. 18-CV-1543 RAJ) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on January 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

DATED this 11th day of January 2019.

*s/ Mary Z. Gaston*
Mary Z. Gaston, WSBA No. 27258
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: mgaston@perkinscoie.com

CERTIFICATE OF SERVICE
(NO. 18-CV-1543 RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000