# EXHIBIT B

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOMBARDIER INC.,

     Plaintiff,

v.

MITSUBISHI AIRCRAFT
CORPORATION, MITSUBISHI
AIRCRAFT CORPORATION
AMERICA, INC., et al.,

     Defendants.

No. 2:18-cv-1543 RAJ

DEFENDANT MITSUBISHI AIRCRAFT
CORPORATION AMERICA, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:
Friday, January 4, 2019

ORAL ARGUMENT REQUESTED

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................... 1

II.  THE FACTS SHOW NO MISAPPROPRIATION ................................................... 1

    A.   Bombardier Unreasonably Delayed Pursuing A Preliminary Injunction ....................................................................................................... 2

    B.   Bombardier's Documents Were Not Provided To, Used By, Or Even Known By MITAC America ................................................................. 2

    C.   Bombardier's Documents Are Filled With Publicly Available Information ...................................................................................................... 3

    D.   Bombardier's Documents Are Not Useful In The MRJ Program ................... 6

    E.   Bombardier Failed To Take Reasonable Steps To Protect Its Information ...................................................................................................... 7

    F.   Bombardier's Actions Are Designed To Preclude A Competitor's Access To The Skills And Experience Of Potential Employees ..................... 8

    G.   Bombardier Rejected MITAC America's Offer To Agree Not To Use The Alleged Secret Documents ................................................................. 9

    H.   Bombardier Has Failed To Show That It Owns The Alleged CSeries Trade Secrets ................................................................................... 10

III. ARGUMENT ......................................................................................................... 10

    A.   Bombardier Is Unlikely To Succeed On The Merits .................................... 10

        1.   The facts show no actual or threatened misappropriation of trade secrets ............................................................................... 10

            a.   The individual defendants did not use improper means to acquire the eleven documents .......................................... 11

            b.   Bombardier relies on speculation ................................................. 12

            c.   MITAC America has not acquired, disclosed or used Bombardier's purported trade secrets .................................. 13

            d.   MITAC America does not have the required knowledge ..................................................................................... 15

        2.   Bombardier failed to identify protectable trade secrets ........................... 16

        3.   Bombardier failed to show standing ........................................................ 18

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**TABLE OF CONTENTS**
(continued)

2

Page

3    B.    No Irreparable Harm Is Present ............................................................................. 18

4    C.    The Public Interest Disfavors An Injunction ........................................................ 20

5    D.    Bombardier's Proposed Injunction Is Improperly Vague ..................................... 21

6    E.    The Balance of Hardships Favors MITAC America ............................................. 22

7    F.    If An Injunction Issues, The Bond Should Be Significant..................................... 23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

CASES          Page

*Active Network, Inc. v. Elec. Arts Inc.*,
  No. 10-cv-1158, 2010 WL 3463378 (S.D. Cal. Aug. 31, 2010)................................23

*Airfacts, Inc. v. de Amezaga*,
  909 F.3d 84 (4th Cir. 2018) ................................................................12

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................10

*Allied Supply Co., Inc. v. Brown*,
  585 So. 2d 33 (Ala. 1991)...................................................................18

*Allora, LLC v. Brownstone, Inc.*,
  No. 1:07CV87, 2007 WL 1246448 (W.D.N.C. Apr. 27, 2007).......................23

*Am. Can Co. v. Mansukhani*,
  742 F.2d 314 (7th Cir. 1984) ..............................................................22

*Amazon.com, Inc. v. Powers*,
  No. C12-1911RAJ, 2012 WL 6726538 (W.D. Wash. Dec. 27, 2012) .......14, 21, 22

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
  No. 4:00-CV-70CEJ, 2002 WL 32727076 (E.D. Mo. Feb. 25, 2002).....................17

*Berkley Risk Adm'rs Co. v. Accident Fund Holdings, Inc.*,
  No. 16-2671, 2016 WL 4472943 (D. Minn. Aug. 24, 2016)....................................18

*Blue Star Land Servs., LLC v. Coleman*,
  No. CIV-17-931-R, 2017 WL 6210901 (W.D. Okla. Dec. 8, 2017) .......................15

*Boeing Co. v. Sierracin Corp.*,
  108 Wn. 2d 38 (1987) .........................................................................16

*Buffets, Inc. v. Klinke*,
  73 F.3d 965 (9th Cir. 1996) ................................................................18

*Carr v. AutoNation Inc.*,
  No. 2:17-cv-01539, 2018 WL 288018 (E.D. Cal. Jan. 4, 2018)..............................16

*Cont'l Grp., Inc. v. Amoco Chem. Co.*,
  614 F.2d 351 (3d Cir. 1980)................................................................20

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*Costco Wholesale Corp. v. Hoen*,
No. C04-360P, 2006 WL 2645183 (W.D. Wash. Sept. 14, 2006)...........................................19

*Desert Sun Net LLC v. Kepler*,
No. C06-1041P, 2006 WL 3091170 (W.D. Wash. Oct. 27, 2006) ..........................................15

*Digital Mentor, Inc. v. Ovivo USA, LLC*,
No. C17-1935-RAJ, 2018 WL 993944 (W.D. Wash. Feb. 21, 2018)................................13, 14

*Droeger v. Welsh Sporting Goods Corp.*,
541 F.2d 790 (9th Cir. 1976) ................................................................................................16

*Ed Nowogroski Ins., Inc. v. Rucker*,
137 Wn. 2d 427 (1999) (*en banc*) ........................................................................................13

*Edifecs Inc. v. Tibco Software Inc.*,
756 F. Supp. 2d 1313 (W.D. Wash. 2010).......................................................................14, 15

*First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*,
155 F. Supp. 2d 194 (M.D. Pa. 2001) ..................................................................................19

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) ................................................................................................19

*Jay's Custom Stringing, Inc. v. Yu*,
No. 01CIV.1690, 2001 WL 761067 (S.D.N.Y. July 6, 2001) ...............................................18

*Joshua David Mellberg LLC v. Will*,
96 F. Supp. 3d 953 (D. Ariz. 2015) ......................................................................................15

*Katch, LLC v. Sweetser*,
143 F. Supp. 3d 854 (D. Minn. 2016) ...................................................................................19

*MAI Sys. Corp. v. Peak Comput., Inc.*,
991 F. 2d 511 (9th Cir. 1993) ...............................................................................................16

*Masters Software, Inc. v. Discovery Commc'ns, Inc.*,
725 F. Supp. 2d 1294 (W.D. Wash. 2010)............................................................................23

*Mead Johnson & Co. v. Abbott Labs*,
201 F.3d 883 (7th Cir. 2000) ..........................................................................................23, 24

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978)..................................................................................................................20

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*Modumetal, Inc. v. Xtalic Corp.,*
    4 Wash. App. 2d 810, 828 (2018) .................................................................14, 22

*Nat'l City Bank, N.A. v. Prime Lending, Inc.,*
    737 F. Supp. 2d 1257 (E.D. Wash. 2010) .....................................................14, 15

*Niemi v. Am. Axle Mfg. & Holding, Inc.,*
    No. 269155, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007) ...............................17

*Pac. Aerospace & Elecs., Inc. v. Taylor,*
    295 F. Supp. 2d 1188 (E.D. Wash. 2003) ............................................................13

*Ruckelshaus v. Monsanto Co.,*
    467 U.S. 986 (1984) ............................................................................................17

*Schmidt v. Lessard,*
    414 U.S. 473 (1974) ............................................................................................21

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ............................................................................20

*Tape Head Co., Inc. v. R C A Corp.,*
    452 F.2d 816 (10th Cir. 1971) ............................................................................20

*Union Pac. R.R. Co. v. Mower,*
    219 F. 3d 1069 (9th Cir. 2000) ...........................................................................21

*United States v. Holtzman,*
    762 F.2d 720 (9th Cir. 1985) ..............................................................................21

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),*
    467 U.S. 797 (1984) ............................................................................................18

*United Transp. Union v. State Bar of Mich.,*
    401 U.S. 576 (1971) ............................................................................................20

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.,*
    368 F. Supp. 2d 1121 (W.D. Wash. 2005) ...........................................................19

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ..........................................................................................10, 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## TABLE OF AUTHORITIES
### (continued)

**STATUTES**                                                                     **Page**

18 U.S.C. § 1836(b)(3)(A)(i)(I) .............................................................................14

18 U.S.C. § 1836 *et seq.* (Defend Trade Secrets Act) .........................................10, 14

18 U.S.C. § 1839(3)(A) ........................................................................................17

18 U.S.C. § 1839(3)(B) ........................................................................................16

18 U.S.C. § 1839(4) .............................................................................................18

18 U.S.C. § 1839(5)(A),(B) ..................................................................................15

18 U.S.C. § 1839(6)(A) ........................................................................................11

18 U.S.C. §§ 1839(A),(B) ....................................................................................11

RCW 19.108.010(1) .............................................................................................11

RCW 19.108.010(2)(a), (b).............................................................................11, 15

RCW 19.108.010(4)(a) .........................................................................................16

RCW 19.108.010(4)(b) .........................................................................................17

RCW 19.108.010 *et seq.* (Washington Uniform Trade Secrets Act)....................10, 16

**RULES**

Fed. R. Civ. P. 65(c) ...........................................................................................23

Fed. R. Civ. P. 65(d) ....................................................................................21, 22

**OTHER AUTHORITIES**

FAA Order 8110.4C..............................................................................................12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.     INTRODUCTION

Bombardier's motion should be denied. Mitsubishi Aircraft Corporation America Inc. ("MITAC America") has done nothing wrong, and no facts show that it has. Bombardier merely relies on unsupported speculation.  Remarkably, Bombardier moved for a preliminary injunction years after it knew its employees were leaving: more than three years have passed since Bombardier first complained of the actions described in its motion. Any alleged harm that could be prevented by a preliminary injunction happened long ago, and will not be prevented by a long-after-the-fact injunction.

Bombardier's motion is not only late, it fails to show a likelihood of success on the merits—or anything close to a likelihood. Bombardier fails to describe facts showing MITAC America used Bombardier's eleven documents.[1] Bombardier fails to allege facts showing MITAC America received any of the documents. And Bombardier fails to describe facts showing MITAC America even knew that the documents existed.

Instead, the facts demonstrate that: Bombardier's eleven documents were never provided or shown to MITAC America; the documents have never been in MITAC America's possession; and the design of the Mitsubishi Regional Jet ("MRJ") is so different from Bombardier's aircraft that the information is not useful to the MRJ project. Bombardier's documents are also filled with publicly available information, but Bombardier nevertheless seeks an injunction against use of anything contained anywhere in any of the documents, even public information. Bombardier's unsupported and unsupportable motion should be denied.

## II.     THE FACTS SHOW NO MISAPPROPRIATION

Bombardier's motion tells a fictional story of alleged misappropriation of eleven documents, supposedly to solve problems arising during certification of the MRJ. That story is filled with innuendo and speculation, but it is remarkably devoid of crucial facts. The actual facts

---

[1] Bombardier's motion refers to twelve documents (Dkt. 4 at 5-6), and its proposed order refers to fourteen. (Dkt. 4-1.) Bombardier's counsel has now settled on eleven documents being in issue. See Riedinger Decl. Ex. C.

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  show that no misappropriation occurred, and no threat of misappropriation exists.

2  **A.   Bombardier Unreasonably Delayed Pursuing A Preliminary Injunction.**

3          Bombardier first complained of the issues underlying this motion more than three years

4  ago in a letter to defendants AeroTEC and Michel Korwin-Syzmanowski. (Dkt. 1-11.)

5  Bombardier raised the issues with MITAC America's parent company more than 2 ½ years ago

6  in a June 2016 email. (Dkt. 1-14.) Defendant Laurus Basson, who supposedly stole some of the

7  eleven documents, left Bombardier in March 2016, again more than 2 ½ years ago. (Dkt. 1 ¶ 60.)

8  Similarly, defendant Marc Delarche left Bombardier in May 2016 (*id.* ¶ 61), and defendant

9  Cindy Dornéval left Bombardier in February 2017 (*id.* ¶ 62). Bombardier nevertheless waited

10  until October 19, 2018 to seek preliminary relief. (Dkt. 4.)

11         If Bombardier's story were true, then years would have passed with innumerable

12  opportunities for the defendants to misappropriate Bombardier's information. Yet Bombardier

13  did nothing. Bombardier thus seeks to enjoin use of alleged trade secrets that it believes to have

14  been in MITAC America's possession for at least two years, and which Bombardier has

15  discussed in letters and emails to the defendants dating back to October of 2015. (*See* Complaint

16  Exs. B, C, E, F, G, H & I (Dkts. 1-11, 1-12, 1-14 to 1-18).)

17  **B.   Bombardier's Documents Were Not Provided To, Used By, Or Even Known By
18        MITAC America.**

19         Acquisition or use of alleged trade secrets is normally a central part of any alleged trade

20  secret misappropriation. Yet neither Bombardier's Complaint nor its motion provide any facts

21  describing who at MITAC America supposedly used Bombardier's documents, what they

22  supposedly did, how they supposedly did it, when it was supposedly done, or where it

23  supposedly happened. Bombardier similarly fails to describe anyone who supposedly received

24  Bombardier trade secrets (or how it supposedly happened), or even anyone who supposedly

25  knew of the eleven documents. Bombardier's failure is not surprising: MITAC America has

26  investigated and found no evidence it received or used the eleven documents.

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

The declarations supporting this brief tell a vivid story: none of the eleven documents were provided to anyone at MITAC America.[2] Dornéval Decl. ¶¶ 12-14; Basson Decl. ¶ 19. MITAC America conducted a search of its servers and the MITAC America computers used by the named defendants, and none of the eleven documents were found. *See* Nguyen Decl.; Riley Decl. These facts are not surprising, since MITAC America requires all employees to promise that they will not use any confidential information of others, including former employers. Anderson Decl. ¶ 42.

These facts are also not surprising because the Bombardier story is wrong. According to Bombardier, Dornéval and Basson[3] emailed documents to their personal accounts in their final days of employment at Bombardier, supposedly so they could take them to AeroTEC, their next employer. (Dkt. 4 at 5, 6, 18.) But no such thing happened. Instead, Dornéval and Basson emailed the documents home so they could complete their Bombardier work, even doing so at the request of their Bombardier supervisors. Basson Decl. ¶ 12; Dornéval Decl. ¶¶ 4, 10.[4] Sending Bombardier documents home to do Bombardier work was common among engineers at Bombardier. Basson Decl. ¶ 8; Dornéval Decl. ¶ 4. The former Bombardier employers were simply doing what they had done for years: working hard to complete Bombardier projects.

**C.   Bombardier's Documents Are Filled With Publicly Available Information.**

MITAC America retained two experts to study Bombardier's eleven documents, Dr. John Hansman, a professor of Aerospace engineering at MIT, and Mr. Stephen Boyd, a former employee of the Federal Aviation Administration (FAA), who supervised aircraft certification activity. They concluded that the eleven Bombardier documents describe extensive public

---

[2] The declarations of defendants Cindy Dornéval, Laurus Basson, and Michael Korwin-Szymanowski are being separately filed by their counsel of record. All other declarations cited herein refer to declarations being filed concurrently herewith by MITAC America, except for the Burns and Tidd declarations previously filed by Bombardier (Dkts. 5, 7).

[3] Marc Delarche is not yet a party to this suit, having not been served.

[4] Complaint Ex. L shows that was the purpose of Mr. Delarche, as well.  (Dkt. 1-21); *see also* Del Vecchio Decl. Ex. B (English translation of Ex. L).

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

information; if any information in those documents is not public, it is specific to Bombardier's aircraft and would not be usable on the MRJ program. *See* Hansman Decl. ¶¶ 37, 54; Boyd Decl. ¶ 63. Bombardier has not attempted to identify what specific information in its eleven documents is supposedly a trade secret. Nevertheless, the analyses of Dr. Hansman and Mr. Boyd explain how at least the bulk of the documents contain publicly available information.

The FAA's mandate includes wide distribution of information to the industry on how to certify Transport Category aircraft like the MRJ. Boyd Decl. ¶¶ 13-14, 33-34. The procedures for certification are specified by FAA (or Transport Canada) regulations and their supporting publications. *Id.* Those publications include thorough Federal Regulations and extensive guidance (called "Advisory Circulars") that provide exhaustive detail describing what must be done to certify Transport Category aircraft like the MRJ. *Id.* ¶¶ 36-37. Much of what is contained in the eleven Bombardier documents simply follows the FAA regulations and guidance; Bombardier's documents often directly cite to various FAA or Transport Canada publications as support for the information in the documents. Hansman ¶ 42; Boyd Decl. ¶ 65e.

The regulatory agencies also provide exhaustive guidance on how certification must be accomplished. For example, FAA Advisory Circular 25-7D (Boyd Decl. Ex. E) is a 481-page document providing detailed guidance on how to conduct flight tests for certification of Transport Category airplanes. Boyd Decl. ¶ 37. And many, many such Circulars are published by the FAA. Boyd Declaration Ex. N is a list of all 136 FAA Advisory Circulars that provide guidance on how to complete certification of Transport Category aircraft. Boyd Decl. ¶ 37, Ex. N. Even the regulations provide detailed guidance. Boyd Declaration Ex. M lists 400-plus sections of Part 25 of the Federal Regulations (the part of the FAA regulations applying to Transport Category aircraft). Boyd Decl. ¶ 15, Ex. M. Those 400-plus sections detail the certification process. *Id.*

Publications from other sources also describe how to conduct the tests and measurements discussed in Bombardier's documents; many of those publications are explained ▮▮▮▮▮▮▮

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1 ████████████████████████████████████████████████

2 █████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ██████████████████████████████████ are described in publications by standard setting

7 bodies, such as the SAE, Boyd Decl. ¶¶ 57-58, 64e, or the RTCA. Procedures for flight testing

8 are also contained in many Air Force and Navy publications. Hansman Decl. ¶ 43.  The eleven

9 Bombardier documents cite many publications; for example, Burns Exs. E and H each cite to █

10 ███████████████████████████████ Burns Ex. E at 15, 17; Burns Ex. H at 15, 18.

11       Even the specific systems used in Bombardier's CSeries and Global 7000 aircraft are

12 described in publications or are known to others. For example, Burns Exs. C through H all relate

13 to calculations and measurements involving the "SmartProbes" used in the Bombardier "air data"

14 systems. But SmartProbes are not made by Bombardier, but by a parts vendor, UTC Aerospace

15 Systems. Hansman Decl. ¶¶ 18, 20; Boyd Decl. ¶ 65d. SmartProbes and their air data computers

16 have been sold to many aircraft manufacturers who compete with Bombardier, including

17 Embraer, Boeing, and Airbus. Hansman Decl. ¶ 23. Widely available publications have long

18 detailed the operation of SmartProbes. *See, e.g., id.*; Hansman Decl., Exs. 4, 5.

19       Methods of certifying aircraft are also taught in courses throughout the world. As

20 explained by Chris Anderson, a MITAC America engineer, certification techniques are taught in

21 the United Kingdoms "Empire" school (which Anderson attended), and similar schools

22 conducted by the U.S. Air Force, the U.S. Navy, and the French Air Force. Anderson Decl. ¶ 12.

23       Despite this exhaustive public information describing aircraft systems, aircraft design,

24 flight testing, and certification, Bombardier's motion makes no effort to identify what specific

25 details in its eleven documents are supposedly trade secrets. And, of course, Bombardier's

26 motion makes no attempt to show how those specific, non-public details (if any) were

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    supposedly used by anyone at MITAC America.

2    **D.      Bombardier's Documents Are Not Useful In The MRJ Program.**

3          The allegedly misappropriated documents are specific to Bombardier's various aircraft,

4    which are materially different from the MRJ. Those differences mean that the information in

5    those documents, even if they had been received by MITAC America, would not be useful on the

6    MRJ project.

7          The MRJ is smaller than the CSeries and is designed for different purposes. Hansman

8    Decl. ¶ 11. The MRJ carries fewer passengers, flies shorter distances, and has a lower maximum

9    weight than the CSeries. *Id.* The systems in the MRJ are different from the CSeries systems in

10   question.  Unsurprisingly, these facts prevent the specific CSeries design information from being

11   useful to MITAC America.

12         Six of Bombardier's documents (Burns Decl. Ex's C through H) evaluate the CSeries "air

13   data system" using "SmartProbes." Those probes are designed, developed and sold by UTC

14   Aerospace. SmartProbes are part of an aircraft's "pitot-static" system, which gathers information

15   about "static" air pressure and "forward-facing" air pressure to allow the aircraft's computers to

16   calculate air speed and altitude. Hansman Decl. ¶ 15. Bombardier's "air data" documents

17   describe how the SmartProbe-based systems are calibrated and have their accuracy verified. *Id.*

18   ¶ 18. The MRJ, however, does not use SmartProbes; it uses a conventional pitot-static system.

19   *Id.* ¶ 16. SmartProbes have small microprocessors inside the unit, which electronically send

20   processed data to an air data computer. *Id.* ¶¶ 18-19. The conventional probes of the MRJ do not

21   have a processor; instead, they are connected to pneumatic tubes that lead to central air data

22   computers. *Id.* ¶ 16. Thus, the air pressure detection devices are different, the pneumatic system

23   is different, and the computers are different. *Id.* ¶ 25. The "SmartProbe" information in Burns

24   Decl. Exhibits C through H is not useful for calibrating or verifying the MRJ air data system. *Id.*

25         Burns Decl. Exhibits A and B describe part of a flap "skew detection system" ("SDS")

26   used in another Bombardier aircraft, the Global 7000 (a 19-passenger business jet). (*See* Dkt. 5

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

¶¶ 3-7.) The "flaps" are movable parts of the wings that increase the wings' lift when the aircraft is flying slowly. Hansman Decl. ¶ 27. A flap SDS detects whether the flaps are mis-positioned when extended. *Id.* ¶ 28. The MRJ uses a different SDS design than the Global 7000. *Id.* ¶¶ 29-33. The flaps have different configurations, so the MRJ's system detects different structures than the Global 7000. *Id.* ¶ 35. And as explained by Dr. Hansman, the detectors in the Global 7000 use six or seven magnets mounted on rotating actuator, with a sensor next to the actuator generating a "pulse" when a magnet rotates past the sensor; if the sensors count a different number of pulses at different actuators, a "skew" is detected. *Id.* ¶ 29. The MRJ does not use a magnetic, pulse-counting sensor. Instead, it uses variable resistors that produce a voltage proportional to the skew. *Id.* ¶ 33. The details of Bombardier's SDS are not applicable or useful to the MRJ. *Id.* ¶ 37.

Bombardier's motion also avoids evidence of "knowledge," a key part of any trade secret misappropriation. Bombardier has not described any facts showing anyone at MITAC America knew that the eleven documents were emailed home by Bombardier's former employees, and Bombardier has not described any facts showing anyone at MITAC America intended to get anything from the eleven documents. Instead, as Dr. Hansman described, the eleven documents are not what would be acquired if an engineer wanted to get an advantage that shortened the time for MRJ certification. Hansman Decl. ¶ 55.

**E.     Bombardier Failed To Take Reasonable Steps To Protect Its Information.**

Bombardier has not taken basic precautions to ensure that its allegedly confidential information is actually confidential. Critically, individual defendants had no confidentiality agreements with Bombardier, *see* Dornéval Decl. ¶ 6; Basson Decl. ¶ 20; Korwin-Syzmanowski Decl. ¶ 15, and Bombardier has not identified any confidentiality agreements with any of the individual defendants. Nor did those individuals have non-compete agreements. Dornéval Decl. ¶ 6; Basson Decl. ¶ 20; Korwin-Syzmanowski Decl. ¶ 15. Bombardier contends instead that its "Code of Ethics" was a reasonable precaution. (Dkt. 4 at 15.) However, Bombardier's "Code of

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  Ethics" allowed documents to be sent over the Internet. (Dkt. 1-13 at 18.) Moreover, Bombardier

2  does not explain why it did not take the simple step of having its engineers sign agreements

3  promising to keep information confidential. Nor does Bombardier explain why it did not obtain

4  non-compete agreements, a step it would take if it was actually concerned that its engineers

5  might join competitors. Bombardier knew that aerospace engineers frequently move to

6  competitors, since Bombardier staffed its Mirabel flight test center (where it conducted CSeries

7  certification tests) with engineers from many competitors. Anderson Decl. ¶ 24. Certification

8  engineers have frequent job mobility, *id.* ¶ 35, something Bombardier must have known, given

9  its decades of experience in the aerospace industry.

10  **F.      Bombardier's Actions Are Designed To Preclude A Competitor's Access To The
11           Skills And Experience Of Potential Employees.**

12        Bombardier's objective is expressly described in its motion: Bombardier wants to stop

13  competition by preventing a "a revival of the Japanese aircraft manufacturing industry." (Dkt. 4

14  at 20.) Bombardier argues it would be harmed because the MRJ will create "a new industry,

15  establishing supply chains and a regulatory certification process" for years to come. *Id.* at 21. If

16  that happens, Bombardier "will be forced to compete with literally a new nation of competing

17  aircraft manufacturers that would otherwise not exist for at least several years to come." *Id.*

18  Bombardier wants to impede not just the MRJ, but all other Japanese aircraft manufacturers.

19        Bombardier seeks to restrict competition by interfering with the freedom of employees to

20  seek new employment, and by preventing competitors from hiring skilled employees—even

21  though Bombardier was laying off employees and cancelling programs. Bombardier complains

22  that the defendants hired employees in late 2016. (*See* Dkt. 1 ¶ 49.) Yet Bombardier cancelled its

23  Lear Jet 85 program at the beginning of 2015, closed its Mirabel, Quebec flight test center in

24  May of 2016, and imposed a mandatory two-week furlough on its CSeries engineers in

25  December 2016, the day after Bombardier received CSeries certification. Anderson Decl. ¶¶ 30-

26  32. Bombardier's Complaint and motion are nevertheless replete with descriptions of how the

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

defendants hired skilled engineers for the MRJ program from 2015 through 2016, the very time Bombardier was reducing staff. Bombardier admits that defendants' goal was a "source of certification expertise." (Dkt. 4 at 9; *see also* Dkt. 1 ¶¶ 49-59.) Despite the lack of career opportunities at Bombardier for certification engineers, and Bombardier's poor work environment, Bombardier, through its complaint and this motion, seeks to prevent defendants from hiring employees for their skills and expertise, and thereby prevent a "revival of the Japanese aircraft manufacturing industry."

Hiring employees of competitors to obtain their skill and expertise is common practice, as Bombardier well knows. When Bombardier created its Mirabel Flight Test Center for CSeries certification testing, Bombardier hired from competitors around the world. Anderson Decl. ¶ 24. Bombardier now tries to prevent defendants from doing the same.

**G.     Bombardier Rejected MITAC America's Offer To Agree Not To Use The Alleged Secret Documents.**

MITAC America attempted to resolve Bombardier's motion through agreement. Bombardier's proposed order asks that MITAC America be enjoined from using, accessing, imitating, copying, or disclosing the eleven documents, or making them available to any person or entity. (Dkt. 4-1.) Because MITAC America never had the documents, and to avoid wasting the Court's resources on an unnecessary injunction, MITAC America offered to agree to not use the eleven Bombardier documents, or information derived from the documents—following the very terms of Bombardier's proposed order—if Bombardier would withdraw the motion against MITAC America. *See* Riedinger Decl. Ex. A.  An agreement not to use documents it does not have is far less harmful than being subject to an injunction. Bombardier should not have the power to initiate contempt proceedings that contend use of public information is a violation of the injunction—a significant concern, because of the vast public information in the eleven documents. The mere publication of a court-ordered injunction could have a potentially extreme impact on MRJ sales.

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Bombardier rejected MITAC America's proposal. *Id.* That rejection demonstrates

2    Bombardier's goal is not to protect confidential information, but to harm the MRJ program.

3    **H.    Bombardier Has Failed To Show That It Owns The Alleged CSeries Trade Secrets.**

4    Most of the eleven documents in Bombardier's motion relate to the CSeries aircraft. Yet

5    Bombardier no longer owns the CSeries, and thus might no longer have standing to assert

6    misappropriation of CSeries trade secrets. Bombardier sold its CSeries rights to a different

7    organization, the "C Series Aircraft Limited Partnership" ("CSALP") in July of 2018. Riedinger

8    Decl. Ex. B. Bombardier now owns only 34% of CSALP. *Id.* The majority owner is Airbus, Ltd.

9    *Id.* Bombardier did not mention the CSALP sale in either its complaint or motion, and has not

10   demonstrated that it continues to own the alleged CSeries trade secrets.

11                          **III.    ARGUMENT**

12   The Court should deny Bombardier's motion for the "extraordinary remedy" of a

13   preliminary injunction because: (1) Bombardier is unlikely to succeed on the merits;

14   (2) Bombardier faces no irreparable harm absent an injunction; (3) the public interest would be

15   disserved by an injunction; and (4) an injunction would expose MITAC America to significant

16   hardship. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Alliance for the Wild*

17   *Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Bombardier's proposed injunction

18   is also impermissibly vague.

19   **A.    Bombardier Is Unlikely To Succeed On The Merits.**

20   The facts show no misappropriation, and neither Bombardier's eleven documents nor the

21   information they contain are protectable "trade secrets."[5]

22   **1.    The facts show no actual or threatened misappropriation of trade secrets.**

23   Bombardier brought claims against MITAC America under both the federal Defend

24   Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Washington Uniform Trade

25   ────────────────

26       [5] Bombardier's Complaint includes a claim for tortious interference against MITAC America, but
     Bombardier does not cite that claim in its motion for a preliminary injunction.

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S          **Perkins Coie LLP**
MOTION FOR PRELIMINARY INJUNCTION                  1201 Third Avenue, Suite 4900
(No. 2:18-cv-1543 RAJ) – 10                         Seattle, WA  98101-3099
                                                   Phone:  206.359.8000
                                                   Fax:  206.359.9000

Secrets Act ("WUTSA"), RCW 19.108.010 *et seq.* (Dkt. 1, at Counts III and IV). Under those statutes, MITAC America can be liable only if Bombardier shows that MITAC America "acquired" or "disclos[ed] or use[d]" Bombardier trade secrets while "know[ing] or ha[ving] reason to know" the trade secrets were acquired by improper means. *See* 18 U.S.C. §§ 1839(A),(B); RCW 19.108.010(2)(a), (b). Bombardier cannot meet that burden: (1) the individual defendants did not use improper means to acquire the eleven documents; (2) the individual defendants did not disclose the purported trade secrets to MITAC America; (3) MITAC America has not acquired, disclosed or used the purported trade secrets and is not likely to do so in the future; and (4) MITAC America was not even aware of the alleged misappropriation.

        **a.**    **The individual defendants did not use improper means to acquire the eleven documents.**

"Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); RCW 19.108.010(1). That is not what happened here. Bombardier does not allege that the eleven documents were off-limits to these individuals. The individuals were authorized to access the documents, and used them to perform their Bombardier jobs. (*See* Dkt. 4 at 15.)

Bombardier suggests the individual defendants surreptitiously stole the eleven documents by sending them to their personal email accounts in violation of the Bombardier Code of Ethics ("Code"). But the Code does not forbid employees from sending company materials to their personal email addresses. It says only that employees should "exercise caution to avoid misusing or inadvertently disclosing confidential information," and can transmit confidential documents via email "when it is reasonable to believe this can be done under secure conditions." (Dkt. 1-13 at 18.) The individual defendants sent the eleven documents to their personal email accounts to

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

perform Bombardier work while at home.[6] The individual defendants reasonably believed

sending documents to password-protected email accounts—to which only they had access—to

work from home constituted "secure conditions" in keeping with the Code's directive. Basson

¶¶ 8, 20; Dornéval Decl. ¶ 13. This is not improper. *See, e.g., Airfacts, Inc. v. de Amezaga*, 909

F.3d 84, 97-98 (4th Cir. 2018) (affirming that plaintiff failed to prove defendant misappropriated

trade secrets in documents defendant was authorized to access and that were emailed to his

personal account to work remotely on his last day of employment).

### b.    Bombardier relies on speculation.

Bombardier relies on sweeping inferences to suggest that the eleven documents must

have been disclosed to MITAC America. Such inferences are insufficient and contradicted by the

facts. Bombardier suggests that, after years of delays, the MRJ program made rapid certification

progress only after AeroTEC hired Basson and Delarche. (Dkt. 4 at 18-19.) Bombardier

concludes that "[t]he nature, sequence, and timing of these events strongly suggest that the

Individual Defendants disclosed, and the Corporate Defendants acquired, Bombardier's trade

secret information to advance MRJ certification efforts." (*Id.* at 18.) This conclusion is

speculation unsupported by facts and ignores factually correct alternatives.

Bombardier acknowledges that the certification process is "frustrating," "time-

consuming," and "bureaucratically convoluted." (Dkt. 4 at 7.) Assuming the MRJ is certified as

planned in 2019, the total effort will last about a decade. That period is not expedited. Boyd

Decl. ¶ 17. It reflects an arduous process, somewhat longer than the time taken by other industry

players to achieve clean-sheet certification. (*See, e.g.*, Dkt. 1 ¶ 27.) It is not, however, unusual,

because "inexperienced" manufacturers receive higher scrutiny compared to the "greater

confidence" given to experienced manufactures. *See* FAA Order 8110.4C at §§ 5-3(c)(1)(a-b);

---

[6] The allegations in the Complaint confirm that Bombardier can track which documents its employees have emailed to outside accounts, yet Bombardier apparently took no precautions to prevent such dissemination in advance. (*See, e.g.*, Dkt. 1 ¶¶ 60-66.)

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1 | *see also id.* at §§ 2-4(a), 2-5(a)(1), and 2-5(b)(1); Boyd Decl. ¶ 48.

2 |     The MRJ's certification is advancing because of the hard work by the skilled engineers

3 | hired for the project. Bombardier cannot claim ownership of the skills and experience of its

4 | former employees, even if such skills were acquired while working at Bombardier. *See Ed*

5 | *Nowogroski Ins., Inc. v. Rucker*, 137 Wn. 2d 427, 437 (1999) (*en banc*) ("[F]ormer employee[s]

6 | may freely use general knowledge, skills, and experience acquired under his or her former

7 | employer."); *see also Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1203 (E.D.

8 | Wash. 2003).

9 |     To speculate about misuse, Bombardier says design changes were made to the MRJ after

10 | Basson and Delarche joined AeroTEC. (Dkt. 4 at 18.)[7] Bombardier speculates that the MRJ was

11 | redesigned because Bombardier trade secrets showed those redesigns to be necessary. But

12 | Bombardier presents no evidence linking any changes to Bombardier's purported trade secrets.

13 | The only change identified by Bombardier relates to "relocat[ing] components in the avionics

14 | bay" with a resulting "change in the electrical wires routing." (Dkt. 4 at 18 (citing Dkt. 1 ¶¶ 47-

15 | 48).) Bombardier does not attempt to explain how its purported trade secrets supposedly

16 | influenced the changes.  Nothing in the eleven documents describes any routing issues.

17 | Hansman Decl. ¶ 55. Where a plaintiff suggests that circumstantial timeline evidence shows

18 | misconduct, but the evidence equally supports a different (and innocent) version of events, the

19 | plaintiff's allegations "fall[] flat." *See Digital Mentor, Inc. v. Ovivo USA, LLC*, No. C17-1935-

20 | RAJ, 2018 WL 993944, at *6 (W.D. Wash. Feb. 21, 2018).

21 |         **c.**    **MITAC America has not acquired, disclosed or used Bombardier's purported trade secrets.**

22 |

23 |     MITAC America has never acquired, disclosed or used the eleven documents, and there

24 | is no threat of it doing so. MITAC America retained a forensic expert to thoroughly investigate

25 |

26 |     [7] Documents Bombardier attached to the Complaint acknowledge that such design changes routinely occur during the certification process. *See* Dkt. 1-10, Ex. 14.

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  whether any of the eleven documents are or have ever been stored on any of MITAC America's

2  servers or on the MITAC America computers used by the named defendants. *See* Nguyen Decl.

3  The investigation found no such documents. *Id.*

4        MITAC America also instructs new employees not to use any trade secrets they may have

5  acquired from their former employers. Anderson Decl. ¶ 42. This makes Bombardier unlikely to

6  succeed on its misappropriation claims. *See Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 737 F.

7  Supp. 2d 1257, 1267 (E.D. Wash. 2010) (plaintiffs unlikely to succeed on misappropriation

8  claim where they cited no evidence that any former employee disclosed or used confidential

9  information for the defendant's benefit and where evidence showed that executive of defendant

10  specifically told the plaintiff's former employees not to take or use any non-public information).

11        Lacking evidence, Bombardier appears to rely on the doctrine of "inevitable disclosure,"

12  albeit without identifying it as such. (*See* Dkt. 4 at 20.) That doctrine "permits a plaintiff to prove

13  trade secret misappropriation by showing that the defendant's new employment will inevitably

14  lead to reliance on plaintiff's trade secrets." *Edifecs Inc. v. Tibco Software Inc.*, 756 F. Supp. 2d

15  1313, 1318 n.2 (W.D. Wash. 2010). Bombardier suggests a similarity in jobs at AeroTEC means

16  they will disclose trade secret information to MITAC America. (*See* Dkt. 4 at 20.) This argument

17  tries to convert permissible nondisclosure obligations into impermissible "noncompetition

18  agreement[s] of infinite duration." *Amazon.com, Inc. v. Powers*, No. C12-1911RAJ, 2012 WL

19  6726538, at *7 (W.D. Wash. Dec. 27, 2012) (J. Jones). Consequently, Washington courts have

20  never endorsed the doctrine, *see Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810, 828

21  (2018) (citing *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wash. App. 502, 513 (2012)),

22  and the DTSA rejects it by proscribing any injunctive relief that would "prevent a person from

23  entering into an employment relationship." 18 U.S.C. § 1836(b)(3)(A)(i)(I).

24        Regardless, the doctrine is inapplicable because Bombardier has not shown that the

25  individual defendants "cannot do [their] new job[s]" without relying on the eleven documents.

26  *See Amazon.com*, 2012 WL 6726538, at *7, 11. The significant differences between

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Bombardier's aircraft and the MRJ, mean that each aircraft presents distinct certification

2   challenges. The individual defendants can work on those unique challenges without using any

3   purportedly secret Bombardier information.

4        Bombardier's claims also fail to the extent Bombardier relies on a theory of "threatened"

5   misappropriation. Little Washington law exists on this theory. *See Edifecs*, 756 F. Supp. 2d at

6   1318. Under comparable California law, "threatened misappropriation means a threat by a

7   defendant to misuse trade secrets, manifested by words or conduct, where the evidence indicates

8   imminent misuse." *Id.* at 1319 (quoting *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501,

9   527 (2008)). Here, MITAC America's words and conduct show no risk. MITAC America's

10  internal policies manifest its intent to avoid acquiring any Bombardier trade secret information.

11  MITAC America also offered to agree to the same protection Bombardier seeks with its motion

12  (which Bombardier refused). *See Nat'l City Bank*, 737 F. Supp. 2d at 1267; Riedinger Decl. Ex.

13  A.

14       Bombardier failed to show misappropriation—actual, inevitable or threatened. *See Desert*

15  *Sun Net LLC v. Kepler*, No. C06-1041P, 2006 WL 3091170, at *8 (W.D. Wash. Oct. 27, 2006)

16  (finding "vague and conclusory" allegations of misappropriation insufficient to show likely

17  success on merits); *see also Nat'l City Bank*, 737 F. Supp. 2d at 1267.

18              **d.    MITAC America does not have the required knowledge.**

19       Bombardier also has no evidence that MITAC America acquired or used trade secrets

20  *knowing or having reason to know* the trade secrets were improperly acquired. *See* 18 U.S.C.

21  § 1839(5)(A),(B); RCW 19.108.010(2)(a),(b). "Liability by association is not enough." *Blue Star*

22  *Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *8 (W.D. Okla. Dec. 8,

23  2017); *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982 (D. Ariz. 2015).

24  Bombardier's claim depends solely on an inference that MITAC America is liable because it

25  associated with AeroTEC employees alleged to have committed wrongdoing. That is not enough.

26  Bombardier also brought claims against corporations, and Bombardier cannot succeed merely by

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

showing those companies employ persons alleged to have committed wrongdoing. *See Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976) ("In light of the emphasis in trade-secret law on unfair use, it is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal."); *Carr v. AutoNation Inc.*, No. 2:17-cv-01539, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) (dismissing misappropriation claim and saying "it is not appropriate to impute an agent's knowledge of a trade secret to the principal").

### 2. Bombardier failed to identify protectable trade secrets.

Bombardier is further unlikely to succeed because the eleven documents are not "trade secrets." A "trade secret" must be information that:

> derives independent economic value . . . from not being generally
> known to, and not being readily ascertainable through proper
> means by, another person who can obtain economic value from the
> disclosure or use of the information.

18 U.S.C. § 1839(3)(B). The WUTSA definition of "trade secret" is closely similar. *See* RCW 19.108.010(4)(a). Bombardier bears the burden of proving that the documents contain protectable trade secrets. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F. 2d 511, 522 (9th Cir. 1993); *Boeing Co. v. Sierracin Corp.*, 108 Wn. 2d 38, 49 (1987).

Bombardier's motion limits its purported "trade secrets" to information in the eleven documents related to the "regulatory approval process." (Dkt. 4 at 14.) Bombardier says the documents pertain to its efforts to show that two systems in the CSeries and one in the Global 7000 comply with government regulations. But Bombardier never identifies the applicable regulations or industry standards, or what information about the regulatory approval process constitutes a trade secret.

First, Bombardier has not shown that the eleven documents contain non-public information about the regulatory approval process. This is especially so because the regulations are public, the industry standards are public, information about how to comply with the regulations is public, designs are routinely disclosed via published patent applications, systems

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 16

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   are designed and developed by others, and documents submitted to the FAA are subject to FOIA

2   requests. Bombardier has not shown that the documents contain non-public, proprietary

3   information about the regulatory process. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002

4   (1984) ("Information that is public knowledge or that is generally known in an industry cannot

5   be a trade secret."). MITAC America's experts reviewed Bombardier's purported trade secrets

6   and found no information about the "regulatory approval process" that is not publicly accessible.

7   Boyd Decl. ¶ 63; Hansman Decl. ¶¶ 39, 54.

8          Second, Bombardier failed to show that the supposed "regulatory approval" information

9   derives its value from being secret. The eleven documents discuss particular designs for a small

10  subset of systems. Bombardier does not explain how its methods of certifying those specific

11  systems would be relevant, let alone helpful, to different designs. For example, the Bombardier

12  declarations contend that a reader will know "with greater certainty the quantity and quality of

13  data needed for regulatory approval." (*See, e.g.*, Dkt. 5 ¶¶ 7, 12, 25.) But the quantity and quality

14  of data needed to show compliance by a SmartProbe-based pitot-static system does not help

15  certify a conventional system.

16         Finally, Bombardier is unlikely to show that it took reasonable measures to protect the

17  eleven documents. *See* 18 U.S.C. § 1839(3)(A); RCW 19.108.010(4)(b) (a trade secret owner

18  must take reasonable measures to keep information secret). Bombardier, a multi-billion-dollar

19  company with 69,000 employees, neglected to undertake the most basic step to protect its

20  purported trade secrets: entering into confidentiality agreements with its employees who were

21  given access to the allegedly top-secret information. *See Niemi v. Am. Axle Mfg. & Holding, Inc.*,

22  No. 269155, 2007 WL 29383, at *2 (Mich. Ct. App. Jan. 4, 2007) (absence of written

23  confidentiality agreements belied plaintiff's claim that it undertook "reasonable efforts");

24  *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70CEJ, 2002 WL 32727076, at *4

25  (E.D. Mo. Feb. 25, 2002) (absence of written confidentiality agreement is an "important factor to

26  consider in determining whether reasonable steps were taken").

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Moreover, Bombardier employees regularly sent confidential materials to their personal

2    email accounts to work at home and could do so under the Bombardier "Code." (Dkt. 1-13 at

3    18); *see, e.g., Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996) (evidence that employees

4    were allowed to take purported trade secret materials home undercut reasonableness of security

5    measures); *Allied Supply Co., Inc. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) (same).

6    **3.    Bombardier failed to show standing.**

7    Bombardier sold its interest in the CSeries earlier this year to an organization of which it

8    is only a minority owner. *See* Riedinger Decl. Ex. B. Thus, Bombardier might not have standing

9    to pursue claims on CSeries information. This foundational question further undermines any

10   likelihood of success. *See* 18 U.S.C. § 1839(4) (defining "owner" with respect to trade secret to

11   mean "the person or entity in whom or in which rightful legal or equitable title to, or license in,

12   the trade secret is reposed").

13   Bombardier is unlikely to succeed on its claims against MITAC America, and its motion

14   should be denied.

15   **B.    No Irreparable Harm Is Present.**

16   Despite the lack of evidence showing MITAC America acquired or used the purported

17   trade secrets, Bombardier's only alleged harm is the potential "revival of the Japanese aircraft

18   manufacturing industry as a whole." (Dkt. 4 at 20-21.) This argument is speculation and

19   sensationalism. *See Berkley Risk Adm'rs Co. v. Accident Fund Holdings, Inc.*, No. 16-2671, 2016

20   WL 4472943, at *4 (D. Minn. Aug. 24, 2016) ("remote and speculative" claims of competitive

21   harm insufficient to demonstrate irreparable harm); *Jay's Custom Stringing, Inc. v. Yu*, No.

22   01CIV.1690, 2001 WL 761067, at *8 (S.D.N.Y. July 6, 2001) ("If irreparable harm is remote,

23   speculative, or a mere possibility, the motion must be denied."). Certifying an airplane requires

24   submission of hundreds of thousands of documents relating to numerous systems[8]; Bombardier's

25   _____

26   [8] *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 805
     n.7 (1984) (it would not be uncommon to submit "300,000 engineering drawings and changes, 2,000 engineering

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   suggestion that eleven documents related to just three such systems are the key to the revival of

2   an entire nation's aircraft industry is ridiculous. Plus, this is not a race to the finish line;

3   Bombardier has already achieved type certification for both the CSeries and Global 7000 aircraft.

4   *See* Riedinger Decl. Exs. E, F.

5          Bombardier's real complaint is that it will have to compete with the MRJ. That is not

6   irreparable harm; it is a normal part of a market economy. *See Costco Wholesale Corp. v. Hoen*,

7   No. C04-360P, 2006 WL 2645183, at *5 (W.D. Wash. Sept. 14, 2006) ("[T]he mere existence of

8   competition is not irreparable harm, in the absence of substantiation of severe economic

9   impact.") (internal citation omitted). And if Bombardier is arguing it might lose sales, that injury

10   could be remedied with money damages, precluding a preliminary injunction. *See Katch, LLC v.*

11   *Sweetser*, 143 F. Supp. 3d 854, 874 (D. Minn. 2016) ("Normally, lost profits and lost business

12   can be readily calculated and redressed through monetary relief.") (internal quotation omitted).

13          More glaring is that the alleged misappropriation occurred two to three years ago. (Dkt. 4

14   at 5-6, 18.) Bombardier's only explanation is that it waited to bring suit until it discovered

15   evidence "indicating imminent and continued use of Bombardier's trade secrets." (Dkt. 4 at 22.)

16   Bombardier supplies no supporting facts. Bombardier could have asserted its theory of

17   "threatened disclosure" immediately upon learning that the individual defendants had gone to

18   work for AeroTEC. Any alleged harm that might occur would have happened long ago. *See First*

19   *Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 235-36 (M.D. Pa.

20   2001) ("A preliminary injunction is not a vehicle through which a plaintiff can seek correction of

21   past wrongs."). Bombardier's delay fatally undercuts its argument that it will be irreparably

22   harmed absent a preliminary injunction. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir.

23   2015) (district court did not abuse discretion by finding that plaintiff's delay in seeking

24   injunctive relief undercut claim of irreparable harm); *Valeo Intellectual Prop., Inc. v. Data Depth*

25

26   reports, and 200 other reports" during the certification process); Dkt. 1 ¶ 28 (Bombardier referring to the
"innumerable applicable federal regulations" that must be satisfied for certification).

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 19

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   *Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (finding delay in seeking injunctive relief

2   belies claim of irreparable harm).

3        Of course, if Bombardier were concerned by an "imminent" disclosure, it would have

4   accepted MITAC America's offer to agree to the very relief Bombardier seeks here.

5   **C.    The Public Interest Disfavors An Injunction.**

6        Bombardier must show that an injunction is in the public interest. *See Winter*, 555 U.S. at

7   9. Where an injunction would adversely affect a public interest, even temporarily, the Court may

8   withhold preliminary relief, even if the postponement may burden the plaintiff. *See Stormans,*

9   *Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

10       The evidence shows that the eleven documents do not contain trade secrets and have not

11   been misused. The public interest is not served by an unnecessary injunction. Injunctions should

12   not issue where they serve only "to restrain one from doing what he is not attempting and does

13   not intend to do" or to allay the fears and apprehensions of a plaintiff. *Cont'l Grp., Inc. v. Amoco*

14   *Chem. Co.*, 614 F.2d 351, 358-59 (3d Cir. 1980) (quoting *Standard Brands, Inc. v. Zumpe*, 264

15   F. Supp. 254, 267-68 (E.D. La. 1967)); *see also Tape Head Co., Inc. v. R C A Corp.*, 452 F.2d

16   816 (10th Cir. 1971). Bombardier has failed to show that MITAC America will engage in the

17   conduct sought to be proscribed. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8

18   (1978); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 584 (1971). A preliminary

19   injunction would serve no purpose.

20       Instead, the public interest favors promoting competition to produce safe and modern

21   passenger aircraft. Bombardier's proposed preliminary injunction will make it harder to attract

22   and train certification talent, thereby increasing the challenge for anyone (other than

23   Bombardier) to achieve certification.

24       Bombardier seeks to impede the mobility of engineers with certification experience and

25   lock up their collective wisdom and skill for its sole benefit. An injunction would send a chilling

26   message to aerospace engineers. Granting an injunction in this case would effectively endorse

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

Bombardier's unlawful strategy of seeking to prevent its employees having highly coveted

experience from ever leaving its employ. *See Amazon.com*, 2012 WL 6726538, at *10 (ruling

that a company may not "eliminate skilled employees from future competition by the simple

expedient of hiring them").

**D.     Bombardier's Proposed Injunction Is Improperly Vague.**

The proposed injunction sought by Bombardier is both overbroad and vague.[9]

Bombardier seeks an order giving it the power to move for contempt.  This means the injunction

language must avoid all ambiguity as to what conduct is restrained.

Federal Rule of Civil Procedure 65(d) requires that "[e]very order granting an injunction"

must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained

or required." Fed. R. Civ. P. 65(d). Those provisions are "no mere technical requirements."

*Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Rather, Rule 65(d) "was designed to prevent

uncertainty and confusion on the part of those faced with injunctive orders. . . . " *Id.* The "one

basic principle" built into Rule 65(d) is that "those against whom an injunction is issued should

receive fair and precisely drawn notice of what the injunction actually prohibits." *Union Pac.*

*R.R. Co. v. Mower*, 219 F. 3d 1069, 1077 (9th Cir. 2000) (citing *Granny Goose Foods, Inc. v.*

*Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 444 (1974)); *see also United*

*States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) (holding that Rule 65(d) requires

injunctions to be "reasonably clear so that ordinary persons will know precisely what action is

proscribed.").

The proposed order would enjoin MITAC America from using, accessing, imitating,

copying, disclosing, or making available any information derived from the eleven documents.

(*See* Dkt. 4-1 ¶¶ 1-2.) Yet those documents are filled with public information. (*See, e.g.*, Dkt. 5

¶ 15 ("[A]dmittedly some information contained in these documents [] would be known or

---

[9] Bombardier has not yet filed a narrower proposed order, despite representing that it is narrowing the scope of its motion. (*See* Dkt. 47 at 8.)

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   readily ascertainable by those with experience in the field . . . ."); *see also* Hansman Decl. ¶ 39;

2   Boyd Decl. ¶ 63. Bombardier has not sought to limit the injunction to just the alleged secrets in

3   the eleven documents, and has not identified the allegedly secret information. The proposed

4   injunction thus tries to cover "using" public information simply because it is contained within

5   one of the eleven documents. *See Am. Can Co. v. Mansukhani*, 742 F.2d 314, 333 (7th Cir. 1984)

6   (vacating preliminary injunction as "too vague to conform with Rule 65(d)", stating:

7   "[D]etermining whether defendants' products are derived from plaintiff's trade secrets rather than

8   from public information can be a very difficult task . . . . The defendants cannot be expected to

9   decide, even with caution, under the threat of contempt whether their conduct is lawful without

10  more guidance from the court. The district court has not defined the scope of the trade secrets,

11  and the defendants can not be required to test their legal opinions on such difficult trade secret

12  issues through contempt proceedings.").

13          Further, the terms "imitating" and "derived from" render the proposed injunction

14  impermissibly vague. If Bombardier intends the terms to preclude MITAC America in any way

15  from independently developing information (including with help from former Bombardier

16  employees), then any such restriction is plainly inappropriate and overbroad. Trade secret

17  protection does not extend to independent creation. *See Modumetal*, 425 P.3d at 881 (citing

18  *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974)).

19  **E.      The Balance of Hardships Favors MITAC America.**

20          The balance of hardships weighs against an injunction. Bombardier has not shown the

21  existence of protectable trade secrets, misappropriation (real or threatened), or that it will be

22  irreparably harmed absent an injunction. Both the CSeries and the Global 7000 aircraft have

23  already achieved type certification. *See* Riedinger Decl. Exs. E, F. Plus, Bombardier has

24  transferred the CSeries aircraft to a new company, so Bombardier's interest in the CSeries is

25  lessened, and Bombardier is not likely to suffer harm. Granting an injunction would improperly

26  further Bombardier's plan to impede the mobility of its former employees. *Cf. Amazon.com*,

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  2012 WL 6726538, at *10-11 (J. Jones) (denying-in-part Amazon's motion for preliminary

2  injunction against former employee, explaining: "Amazon cannot eliminate skilled employees

3  from future competition by the simple expedient of hiring them. . . .").

4      Yet an injunction could prove devastating. The adverse publicity from even a narrow

5  injunction could cause MITAC America to lose MRJ sales, due to likely customer perceptions

6  that an injunction could impede MITAC America's ability to timely deliver aircraft. *See Active*

7  *Network, Inc. v. Elec. Arts Inc.*, No. 10-cv-1158, 2010 WL 3463378, at *6 (S.D. Cal. Aug. 31,

8  2010) (finding balance of equities weighed against injunction where defendant faced loss of

9  unrecoverable sales potential); *Allora, LLC v. Brownstone, Inc.*, No. 1:07CV87, 2007 WL

10  1246448, at *7 (W.D.N.C. Apr. 27, 2007) (finding balance of hardships favored defendants, who

11  faced "massive damage" to their "reputations and financial stability" that was "much more

12  obvious and immediate than harm" alleged by plaintiff).

13  **F.    If An Injunction Issues, The Bond Should Be Significant.**

14      If the Court enters a preliminary injunction, it should require Bombardier to post a

15  significant bond to account for the resulting risk of lost MRJ sales. *See* Fed. R. Civ. P. 65(c)

16  ("The court may issue a preliminary injunction or a temporary restraining order only if the

17  movant gives security in an amount that the court considers proper to pay the costs and damages

18  sustained by any party found to have been wrongfully enjoined or restrained."); *Masters*

19  *Software, Inc. v. Discovery Commc'ns, Inc.*, 725 F. Supp. 2d 1294, 1308-09 (W.D. Wash. 2010)

20  (bond amount must take into account "the potential financial ramifications of entering a

21  preliminary injunction") (internal quotation marks omitted); *Mead Johnson & Co. v. Abbott*

22  *Labs*, 201 F.3d 883, 888 (7th Cir. 2000) (in setting bond amount, courts "should err on the high

23  side"). In commercial cases between competitors, "bonds must reflect full costs" because such

24  lawsuits "often are characterized by firms' desire to heap costs on their rivals, imposing

25  marketplace losses out of proportion to the legal merits." *Id.* "Shifting back to the plaintiff the

26  complete injury occasioned by the errors that sometimes occur when preliminary relief is issued

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  after an abridged judicial inquiry will hold in check the incentive business rivals have to pursue

2  relief that gives them a competitive edge . . . ." *Id.*

3      Bombardier estimates the market for regional jets of the MRJ's size (60 to 100

4  passengers) to be $240 billion between 2017 and 2036. Riedinger Decl. Ex. D at 6. That amounts

5  to $12 billion per year. Loss of just 10% of those sales for two years would eliminate $240

6  million in revenue. The Court should require Bombardier to post a bond of at least $240 million.

7

8      RESPECTFULLY SUBMITTED this 26th day of December 2018.

9                                     */s/ Jerry A. Riedinger*
                                      Jerry A. Riedinger, WSBA No. 25828
10                                    Mack H. Shultz, WSBA No. 27190
                                      Mary Z. Gaston, WSBA No. 27258
11                                    **Perkins Coie LLP**
                                      1201 Third Avenue, Suite 4900
12                                    Seattle, WA 98101-3099
                                      Telephone: 206.359.8000
13                                    Facsimile: 206.359.9000
                                      E-mail: JRiedinger@perkinscoie.com
14                                    E-mail: MShultz@perkinscoie.com
                                      E-mail: MGaston@perkinscoie.com
15
                                      Attorneys for Defendant Mitsubishi Aircraft
16                                    Corporation America Inc.

17

18

19

20

21

22

23

24

25

26

MITAC AMERICA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
(No. 2:18-cv-1543 RAJ) – 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on December 26, 2018, a true and correct copy of the foregoing was served via e-mail on all counsel of record.

DATED this 26th day of December 2018.

/s/ Jerry A. Riedinger
Jerry A. Riedinger, WSBA No. 25828
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: mgaston@perkinscoie.com

CERTIFICATE OF SERVICE
(No. 2:18-cv-1543 RAJ) – 1