# EXHIBIT A

**From:** Lee Human [mailto:LHuman@aerotec.com]
**Sent:** Thursday, October 22, 2015 6:33 PM
**To:** Carolyn Picard <Carolyn.Picard@aero.bombardier.com>
**Cc:** Dominique Denicourt <Dominique.Denicourt@aero.bombardier.com>; Francois Caza
<francois.caza@aero.bombardier.com>; Christian Poupart <christian.poupart@aero.bombardier.com>; Maxime
Charette <maxime.charette@aero.bombardier.com>; Richard J. Omata <ROmata@karrtuttle.com>
**Subject:** RE: Letter from Bombardier Inc.

Ms. Picard,

Thank you for the additional information.  In your letter to Mr. Korwin-Szymanowski you mentioned that he executed a
document titled: Code of Ethics and Business Conduct.  Please provide a copy of that document to me as soon as
possible.

In the meantime we have taken the following actions today:

1)  Mr. Korwin-Szymanowski has been removed from this recruiting activity either directly or indirectly.
2)  We have cancelled the social hour scheduled for tonight at Hangar 1.
3)  We have moved recruitment trucks away from your facilities.

Regards,

*Lee Human*
President, AeroTEC L.L.C.
**NOTE NEW ADDRESS**
6100 4th Avenue South Suite 300
Seattle WA, 98108
Central Office:  206-763-6087
Direct:  206-486-1317
Mobile:  206-660-7081

**From:** Carolyn Picard [mailto:Carolyn.Picard@aero.bombardier.com]
**Sent:** Thursday, October 22, 2015 15:26
**To:** Lee Human <LHuman@aerotec.com>
**Cc:** Dominique Denicourt <Dominique.Denicourt@aero.bombardier.com>; Francois Caza
<francois.caza@aero.bombardier.com>; Christian Poupart <christian.poupart@aero.bombardier.com>; Maxime
Charette <maxime.charette@aero.bombardier.com>
**Subject:** RE: Letter from Bombardier Inc.

Please find the letter attached.

**Carolyn Picard**
Directrice, Services Juridiques

*Please note that my phone number has changed to 514-861-9481 ext 12008*
514-861-9481 poste 12008
514-497-6265

# BOMBARDIER
l'évolution de la mobilité

**From:** Lee Human [mailto:LHuman@aerotec.com]
**Sent:** Thursday, October 22, 2015 5:51 PM
**To:** Carolyn Picard
**Cc:** Dominique Denicourt; Francois Caza; Christian Poupart; Maxime Charette
**Subject:** RE: Letter from Bombardier Inc.

Ms. Picard,

Your letter references attachment of correspondence between your company and Mr. Michel Korwin-Szymanowski.  Unfortunately it seems the attachment was not included.  Can you please resend with the referenced attachment.

Regards,

*Lee Human*
President, AeroTEC L.L.C.
***NOTE NEW ADDRESS***
6100 4th Avenue South Suite 300
Seattle WA, 98108
Central Office:   206-763-6087
Direct:   206-486-1317
Mobile:   206-660-7081

**From:** Carolyn Picard [mailto:Carolyn.Picard@aero.bombardier.com]
**Sent:** Thursday, October 22, 2015 12:10
**To:** Lee Human <LHuman@aerotec.com>
**Cc:** Dominique Denicourt <Dominique.Denicourt@aero.bombardier.com>; Francois Caza <francois.caza@aero.bombardier.com>; Christian Poupart <christian.poupart@aero.bombardier.com>; Maxime Charette <maxime.charette@aero.bombardier.com>
**Subject:** Letter from Bombardier Inc.

Dear Mr. Human,

Please refer to the attached letter.

Sincerely,

**Carolyn Picard**
Directrice, Services Juridiques
Ressources Humaines

*Please note that **my phone number has changed to 514-861-9481 ext 12008***
*800 Boul. René-Lévesque Ouest*
*28e étage*
*Montréal, Québec, H3B1Y8*

2

T  514-861-9481   # 12008
F  514-861-2746
M 514-497-6265

# BOMBARDIER
l'évolution de la mobilité

**AVIS DE CONFIDENTIALITÉ** – Cette communication pourrait renfermer des informations privilégiées ou confidentielles.
Si vous n'êtes pas la personne à laquelle s'adresse ce message ou si vous avez reçu cette communication par erreur,
veuillez en informer l'expéditeur et supprimer le message sans le copier, le faire suivre et/ou en divulguer le contenu.
**CONFIDENTIALITY NOTICE** - This communication may contain privileged or confidential information.
If you are not the intended recipient or received this communication by error, please notify the sender
and delete the message without copying, forwarding and/or disclosing it.

Bombardier Inc.
800 blvd. René-Lévesque West
Montreal Quebec H3B 1Y8
Tel: 514-861-9481 ext. 12008
Fax: 514-861-2746
carolyn.picard@aero.bombardier.com
www.bombardier.com



October 22, 2015

Via email:lhuman@aerotec.com

Mr. Lee Human
President
AeroTEC LLC
6100 4th Ave S, Suite 300
Seattle, Washington 98108

Dear Mr. Human,

Please find attached a letter that has been sent to Michel Korwin-Szymanowski regarding a situation of solicitation of Bombardier and Learjet employees and use of personal information belonging to Bombardier and Learjet.

We hope that you will understand the seriousness of the situation. Without prejudice to any of our rights regarding previous breaches, should your company continue to deliberately act against Bombardier's legitimate interests, we will have no other choice but to institute legal proceedings against your company without any further notice.

**PLEASE DO GOVERN YOURSELF ACCORDINGLY**

Carolyn Picard
Director, Legal Services
Bombardier Inc.

c.c.   Dominique Denicourt, Senior Director Human Resources, Product Development Engineering
       François Caza, Vice President, Product Development Engineering
       Christian Poupart, Vice President, Legal, Product Development Engineering

# EXHIBIT B

**From:** Lee Human [mailto:LHuman@aerotec.com]
**Sent:** Friday, June 3, 2016 12:05 PM
**To:** ed.grabman@sbcglobal.net
**Subject:** NOTICE - Employment issues
**Importance:** High

Mr. Grabman,

Please review the attached letter.  Please acknowledge by return email or phone call that you have received and understand our position.

Respectfully

*Lee Human*
President, AeroTEC L.L.C.
6100 4th Avenue South Suite 300
Seattle WA, 98108
Central Office:  206-763-6087
Direct:  206-486-1317
Mobile:  206-660-7081

1



Aerospace Testing Engineering & Certification L.L.C.
6100 4th Ave South
Suite 300
Seattle, WA 98108
Phone: (206) 763-6087        Fax: (206) 763-6587

ATEC-16136

Mr. Ed Grabman
By Email @ ed.grabman@sbcglobal.net

June 3, 2016

Subject: NOTICE: Employment

Dear Mr. Grabman,

Bombardier recently asserted that AeroTEC has been improperly using Bombardier intellectual property to directly or indirectly solicit or encourage current employees of Bombardier to leave Bombardier and work for AeroTEC.

AeroTEC does not agree with Bombardier's assertion that we cannot freely recruit employees of any background and the two companies are in the process of trying to work out their differences. Until this is accomplished, however, we are refraining from offering positions to any current employees of Bombardier.

If you have questions you may call me personally, or you may contact Mr. Richard Omata, our employment law attorney at no charge for a fuller explanation of the issues. His contact information is as follows: Email Romata@karrtuttle.com, Phone 206-224-8007.

Should you wish to continue to pursue employment with AeroTEC, we would need something in writing from Bombardier HR or Legal substantially similar to the attached No Objection Statement.

Kind Regards,

Lee Human
President

Enclosures (1): No Objection Statement

ATEC-16136

## No Objection Statement

To Whom it Might Concern:

Bombardier understands that Ed Grabman has expressed an interest in being employed by AeroTEC. Bombardier does not object to Mr. Grabman being employed by AeroTEC providing he does not reveal or use any of Bombardier's proprietary information or Trade Secrets in the course of said employment. Bombardier will not assert or claim that AeroTEC has improperly solicited or used other improper means to cause Mr. Grabman to resign from Bombardier.

Bombardier, Inc.

By: _____          Date:_____

Its: _____

# EXHIBIT C



# MITSUBISHI AIRCRAFT CORPORATION

**NAGOYA AIRPORT, TOYOYAMA-CHO,
NISHIKASUGAI-GUN, AICHI, 480-0287, JAPAN**

TELEPHONE: 81-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

FACSIMILE: 81-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

August 22, 2016

Mr. Alain Bellemare
President and Chief Executive Officer
Bombardier Inc.
Corporate Office
800 René-Lébesque Blvd. West
Montréal, Québec
Canada H3B 1Y8

Dear President and Chief Executive Officer,

I have been informed of your letter dated August 5, 2016 addressed to Mr. Hideaki Omiya, Chairman of the Board of MHI. This letter is in response to your concerns stated therein regarding Mitsubishi Aircraft's recruitment activities in Montreal.

As you know, Mitsubishi Aircraft is also currently engaged in an aircraft development program in Japan and North America and due to our need for qualified engineers, we have recently carried out various recruiting activities, including job fairs, in several North American cities with an aviation industry presence.

We are confident that all our recruiting activities held, or to be held, fully comply with all applicable laws and regulations, and moreover, should be considered routine and customary for any company in our industry seeking qualified employees. With respect to your concerns, please be assured that these recruiting activities were not and are not intended to harm or target Bombardier's business. Further, Mitsubishi Aircraft Corporation, like MHI and all other MHI group companies, has a strong commitment to respect the intellectual property rights of all third parties, and we take appropriate measures in this respect with all new employees.

As an MHI group company, we certainly recognize the importance of the various partnerships and activities conducted between Bombardier and the MHI group. We sincerely hope that any issues between Bombardier and MHI group companies may be quickly resolved to the satisfaction of all parties involved, so that these relationships will continue to prosper.

Sincerely,

Hiromichi Morimoto
President
Mitsubishi Aircraft Corporation

# EXHIBIT D

**From:** Nico Buchholz [mailto:Nico.Buchholz@bombardier.com]
**Sent:** Tuesday, August 30, 2016 12:42 PM
**To:** Mike McCarthy <Mike.McCarthy@mhica.ca>
**Subject:** MHI/Bombardier


**Mike,**


**Since we have never met, please allow me to introduce myself. I am Bombardier`s Chief Procurement Officer. As such I oversee Bombardier`s global procurement acti vities.  We have never met, but I know MHI very well also from the past and understand it is a valued supplier of Bombardier.**

**Recently, my team has informed me that MHI has been recruiting several Bombardier employees  to work on the MRJ program , including engineers which were key to our development programs. I am writi ng to you, because this recruitment of Bombardier employees is causing harm to Bombardier and is contrary to what we expect from a long term business partner such as MHI. In additi on, it raises serious concerns that valuable knowledge and know-how that was acquired by these employees while working for Bombardier will be transferred to MHI and put to use to accelerate the development and entry into service of the MRJ aircraft which will compete with our commercial aircraft programs.**

**We have notified MHI's head office of this issue and have asked that MHI refrain from hiring Bombardier employees. Unfortunately, our request seems to have been ignored.**

**I'm asking your assistance in getting this issue permanently resolved:  MHI, as a valued supplier to Bombardier, must stop recruiting Bombardier employees .**

**I trust that you understand the seriousness of the situation and that I can count on your cooperation.**

**Regards**

**Nico**
**----------------------------------------------**
Nico Buchholz
Bombardier Procurement
Nico.buchholz@bombardier.com
----------------------------------------------


====

# EXHIBIT E

**MORRISON | FOERSTER**

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON   FOERSTER   LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

March 9, 2017

Writer's Direct Contact
+1 (202) 887.1538
JDeVecchio@mofo.com

*By email*

Marianne Plamondon
Norton Rose Fulbright Canada LLP
1 Place Ville Marie, Suite 2500
Montreal, Quebec H3B 1R1 CANADA

Re:    **Response to Bombardier Inc.'s Letter of Demand**

Dear Ms. Plamondon:

We represent Mitsubishi Aircraft Corporation ("MITAC") in the matters referred to in your
February 17, 2017, Letter of Demand requesting that MITAC and its parent Mitsubishi
Heavy Industries, Ltd., cease their alleged solicitation of Bombardier's employees and
require all former Bombardier employees to sign non-solicitation and nondisclosure
agreements.

MITAC respectfully declines to be guided by your letter.  As Mr. Hiromichi Morimoto,
President of MITAC, previously indicated to Mr. Alain Bellemare in a letter dated August 22,
2016, MITAC has not acted improperly in any way in connection with its hiring activities.
MITAC has no legal or other obligation to Bombardier to refrain from exploring free-market
hiring opportunities with potential employees.  Furthermore, to engage in any such no-
poaching agreement with Bombardier could create potential antitrust liability for both
MITAC and Bombardier.  MITAC accordingly strongly urges Bombardier to cease its
repeated attempts to induce MITAC into such an agreement.

To be clear, MITAC's only intent in its hiring activities is to meet its human resources needs.
MITAC does not have any intent to destabilize Bombardier's aircraft activities, to acquire
Bombardier's proprietary information, or otherwise to harm Bombardier in any way.

Bombardier unjustifiably accuses MITAC of soliciting key employees at Bombardier to
"knowingly destabili[ze] Bombardier's aircraft activities" and "acquir[e] proprietary
information belonging to Bombardier."  Bombardier ascribes these motives to MITAC
without providing any support, pointing only to the fact that MITAC, at times, has hired
employees who previously worked for Bombardier.  However, the fact that some of
MITAC's employees have previously worked for Bombardier is hardly surprising, as both
companies rely on a relatively limited pool of highly-skilled and specialized engineers to

**MORRISON** | **FOERSTER**

Marianne Plamondon
March 9, 2017
Page Two

support their product lines. Bombardier also speculates that MITAC held a job fair in Montreal for the sole purpose of soliciting Bombardier employees, despite Montreal's being one of the top five largest hubs for aerospace jobs in North America. MITAC estimates that three-fourths of the nearly 150 attendees were not employed by Bombardier. We also note that MITAC held job fairs in various other North American cities for the same recruiting reasons as mentioned above.

In any event, MITAC is free to explore hiring possibilities with whomever it pleases, regardless of any past or present employment by Bombardier, absent a Bombardier employee's raising an express, written employment agreement restriction by Bombardier against future employment by MITAC. We are unaware of any such enforceable "non-compete" agreements, and you have conspicuously failed to mention any.

Similarly, Bombardier has not cited, nor can it cite, any law requiring MITAC to cease soliciting or hiring Bombardier employees. Bombardier's vague references to "massive solicitation" are unfounded and legally meaningless. No agreement exists between MITAC and Bombardier whereby MITAC consents to refrain from soliciting or hiring the Bombardier's employees. Neither does any civil code nor any liability sounding in tort restrict MITAC's ability to hire Bombardier employees in the free market.

Bombardier expresses its concern that former Bombardier employees might disclose Bombardier's proprietary information or trade secrets, although Bombardier does not identify a single instance where such information was divulged or used, nor indeed does Bombardier identify with any specificity any trade secrets the former employees might usurp. Lacking these facts, Bombardier attempts to support its speculation by referring to a MITAC press release and two news articles that indicate MITAC currently is working to meet certification requirements for its MRJ aircraft. Certification requirements, however, are published in regulations and publicly available. Therefore, this assertion rests on two equally implausible premises: First, that only Bombardier engineers have the know-how and information necessary to meet these governmental and industry-wide certification standards; and second that knowledge of these certification standards is a trade secret of Bombardier. Neither of these premises is accurate.

Without any allegation, much less fact, that particular and specifically-identified Bombardier trade secrets exist that are being or are threatened to be disclosed, Bombardier is left only with the implication that employees are not allowed to carry general know-how with them in their new employment endeavors. This is contrary to common sense and experience, and certainly is not the law.

If Bombardier has any actual knowledge of former employees disclosing, threatening to disclose, or otherwise misappropriating Bombardier's trade secrets, or of former employees breaching their confidentiality or nondisclosure agreements with Bombardier, MITAC

MORRISON | FOERSTER

Marianne Plamondon
March 9, 2017
Page Three

requests that Bombardier promptly identify these employees so that MITAC may take appropriate action. We note that, despite our requests in our telephone conversation of March 1, 2017, your letter dated March 7, 2017, did not provide MITAC with this information. Because you have failed to provide any such information, we assume that none exists.

All incoming MITAC employees come with an empty briefcase. New employees are instructed not to bring any proprietary information or materials from their former employers, and they are further instructed not to use, release, or disclose any such information in the course of their employment at MITAC. These requirements also are embedded in MITAC's Code of Ethics. Indeed, many if not all of Bombardier's former employees were specifically admonished not to bring over, disclose, or otherwise misappropriate Bombardier trade secrets or confidential information.

Finally, and to reiterate, MITAC has no legal obligation to cease soliciting or hiring Bombardier's employees. Yet, as your letter notes, Bombardier repeatedly has attempted to induce MITAC to agree not to solicit or not to hire Bombardier's employees. In doing so, Bombardier has not identified any lawful basis for restricting competition between Bombardier and MITAC in hiring employees. Conversely, the U.S. Department of Justice and Federal Trade Commission recently issued formal guidance instructing that such agreements may be unlawful. This guidance instructs businesses that "[a]n individual is likely breaking the antitrust law if he or she . . . agrees with individual(s) at another company to refuse to solicit or hire that other company's employees (so-called "no poaching" agreements)." *See* https://www.justice.gov/atr/file/903511/download at 3, 6. This is not a hypothetical concern. The Justice Department has brought several actions, including two cases in which at least one company "agreed to limit its hiring of employees who currently work at a competitor." *Id.* at 4 (note that both cases involved the hiring of "highly skilled and specialized engineers"). The agency further warns that it "will criminally investigate allegations that employers have agreed among themselves . . . not to solicit or hire each others' employees," and that naked "no-poaching" agreements could expose the companies involved to "substantial criminal and civil liability." *Id.* at 4, 6. We understand, as well, the guidance is equally applicable in Canada given the similarities between the two country's regulatory regimes.

Accordingly, MITAC again requests Bombardier to refrain from any further attempts to induce such an agreement, and, in response to the demands at the end of your letter, advises that:

- MITAC does not agree that its solicitation of Bombardier employees is in violation of any law or contractual requirement;

- MITAC does not agree that its hiring activities constitute unfair competition, and, to the contrary, believes that Bombardier's attempts to induce MITAC to enter

MORRISON | FOERSTER

Marianne Plamondon
March 9, 2017
Page Four

into an agreement not to solicit or hire Bombardier employees could lead to a
violation of applicable competition laws; and

- MITAC is under no legal or contractual obligation to cause its employees to sign
  agreements demanded by Bombardier, or to keep Bombardier informed of its
  internal employee management practices, and accordingly does not agree to
  Bombardier's demands regarding such matters.

Based on the above comments and unanswered requests, MITAC cannot foresee what would
be the purpose of any further discussions with Bombardier in the circumstances.

If you have any questions about any of the foregoing, please contact me.

Sincerely,

W. Jay DeVecchio

cc:    Akira Ishikawa, Director, Legal & Compliance Group, Mitsubishi Aircraft
       Corporation

       Robert Bonhomme, Partner, Borden Ladner Gervais

# EXHIBIT F



NORTON ROSE FULBRIGHT

Barristers & Solicitors / Patent & Trade-mark Agents

April 12, 2017

**Without Prejudice**
**Sent By E-mail**

Mr. W. Jay DeVecchio
Partner
Morrison & Foerster LLP
2000 Pennsylvania Avenue, NW Suite 6000
Washington, D.C.  20006-1888
U.S.A.

Norton Rose Fulbright Canada LLP
1 Place Ville Marie, Suite 2500
Montréal, Quebec  H3B 1R1  CANADA

F: +1 514.286.5474
**nortonrosefulbright.com**

**Marianne Plamondon**
+1 514.847.6036
marianne.plamondon@nortonrosefulbright.com

Your reference                    Our reference
                                   00106275-0672

Mr. DeVecchio:

## Response to Your Letter Dated March 9, 2017

We have reviewed your letter dated March 9, 2017 and are writing to express our dismay in relation to your latest communication.

On February 28, 2017, following the receipt of our detailed letter of demand, you requested a call in order to discuss how we could resolve this dispute between our clients. After many communications sent by our client and on our client's behalf, which were mostly left unanswered, we were hopeful, if not eager, to finally have the opportunity to discuss this matter with a representative of Mitsubishi Aircraft Corporation (**MITAC**).

At your request, we agreed to a conference call on March 1, 2017 to discuss how we could resolve this matter. However, it rapidly became clear during this call that your true intention was not to discuss this matter in good faith. Your intention was rather to engage in a fishing expedition and use intimidation tactics to obtain Bombardier's evidence against MITAC.

Despite your aggressive tone, you ended the call by indicating that a settlement is always better than litigation. In the best interest of our client, we ignored your inappropriate behaviour and sought instructions from our client in order to begin discussions, at your request. We obtained a mandate from our client to go forward and engage in negotiations with MITAC. To that end, and with the objective of protecting our client's rights, we requested that MITAC agree to conditions that are standard in such negotiations.

Unfortunately, it is clear from your letter that MITAC never had the intention of negotiating with Bombardier, and that it is neither willing nor ready to engage in a real and transparent discussion with Bombardier, contrary to what you indicated in your initial communication to us.

Similar to your attitude during the March 1st conference call, your letter reveals MITAC's bad faith. Notable is your presumption that since we have not provided you with the information you requested, "none exists". This is simply a false and abusive conclusion, and again demonstrates that MITAC's real intention was to engage in a fishing expedition rather than negotiate with Bombardier. Your behaviour in this regard is indicative of the behaviour Bombardier has become accustomed to in its relations with MITAC.

CAN_DMS: \106259631\6

Norton Rose Fulbright Canada LLP is a limited liability partnership established in Canada.

Norton Rose Fulbright Canada LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are at nortonrosefulbright.com.

Jay DeVecchio
April 12, 2017

^
NORTON ROSE FULBRIGHT

MITAC's conduct clearly amounts to unfair competition under Quebec law. In your letter, you mention that "MITAC's only intent in its hiring activities is to meet its human resources needs" and that "MITAC does not have any intent to destabilize Bombardier's aircraft activities". It cannot be denied that the massive and persistent solicitation and subsequent hire by MITAC, and by its subcontractor Aerospace Testing, Engineering and Certification, LLC (**AeroTEC**) which assists MITAC in its activities related to the Mitsubishi Regional Jet (**MRJ**), of over sixty-five (65) employees from Bombardier's development programs, would destabilise these programs. Such conclusion is evident, especially considering that the lack of appropriate human resources has substantively delayed MITAC's delivery of the MRJ, as evidenced by the press releases identified in our original demand letter dated February 17, 2017.

MITAC's massive, targeted and continuous solicitation of Bombardier's employees supports the assertion that Bombardier was targeted by MITAC. It is not mere speculation to assert that MITAC held a job fair in Montreal for the sole purpose of soliciting Bombardier employees. We remind you that Montreal is one of the largest hubs for aerospace jobs in North America because of Bombardier's presence. Therefore, it is to be expected that such events would target mainly Bombardier employees, especially considering that the job fair was specifically to staff the MRJ team. You stated in your letter that "three-fourths of the nearly 150 attendees were not employed by Bombardier". We take note of your admission of MITAC's pressing, targeted and concerted solicitation of Bombardier's employees.

You also assert that MITAC is free to explore hiring possibilities with whomever it pleases. Your interpretation of the law in Quebec is simplistic and fails to take into account the clear jurisprudence according to which competition ceases to be legal when it is unfair, which includes the clear disorganisation of a main competitor. We reiterate that the targeting by MITAC of Bombardier's employees for a project which is in direct competition with Bombardier's activities is clearly unfair competition under Quebec law.

In your letter, you refer to the certification process as merely regulations and "governmental and industry-wide certification standards". By doing so, you grossly undervalue the strategic expertise, developed over the years by Bombardier, necessary to successfully complete a certification process. This is highly inconsistent with your own client's assertions in recent press releases of its intention to "bring in foreign experts with experience of putting a regional aircraft through certification". Furthermore, it is blatantly dishonest to say that "[a]ll incoming MITAC employees come with an empty briefcase". Bombardier has acquired a competitive advantage based on its strategic expertise which allows it to succeed in a highly competitive environment. Your behaviour through the mass hire of Bombardier's employees only serves to confirm the value of their strategic expertise to MITAC's development and certification of the MRJ. MITAC's unlawful misappropriation of Bombardier's competitive advantage to gain its strategic expertise and undermine its activities clearly constitutes unfair competition.

Your assertions regarding the potential anti-competitive effects of any proposed settlement suggest that you misunderstood our intentions. Bombardier has not sought to enter into a no-poaching agreement with MITAC. Rather, as explained above, it is our view that MITAC has contravened the *Civil Code of Quebec* by engaging in unfair competition. Following your request during the March 1st call to engage in negotiations, we requested, in order to preserve the rights of our clients, that MITAC cease the hire of Bombardier's employees during these negotiations, to ensure that they would be held in good faith and to allow the parties to attempt to find a reasonable settlement.

Canada's *Competition Act*, while similar in principle to US antitrust laws, is not identical. In our view the broad ambit of the *Sherman Act* and the associated human relations guidance from the Department of Justice and Federal Trade Commission are not directly applicable in Canada. Section 45 of the *Competition Act* is restricted to agreements related to the supply of the products produced by the parties to the agreement, and as such, a settlement agreement as described above would not fall within its *per se* confines. In the event it did, we believe that it would be permissible as an ancillary restraint necessary to give effect to the broader settlement agreement. The non-criminal analogue of section 45, section 90.1, is the more appropriate provision under which the settlement provision could be reviewed. However, given the wealth of employment opportunities that exist for the employees in question, we would not expect it would be found to reach the requisite standard of resulting in a substantial lessening or prevention of competition.

Jay DeVecchio
April 12, 2017

NORTON ROSE FULBRIGHT

You also maintain that "MITAC is under no legal or contractual obligation to cause its employees to sign agreements demanded by Bombardier, or to keep Bombardier informed of its internal employee management practices, and accordingly does not agree to Bombardier's demands regarding such matters." First, this statement clearly ignores provisions of the *Civil Code of Quebec*, that is sections 1457 and 2088 C.c.Q., the latter which is of public order. Second, MITAC's refusal to comply with Bombardier's request that MITAC require all former employees of Bombardier to sign agreements undertaking not to solicit employees of Bombardier and undertaking not to divulge or use any confidential, proprietary or trade secret information of Bombardier for the purposes of the MJR program, puts your client's intentions into question and suggests that they have something to hide. If, as you stated, employees truly come "with an empty briefcase", it should be a non-issue to have the employees sign such agreements. Your client's refusal to recognize Quebec law, to comply with our standard demands and to enter into any discussions exposes your client's bad faith. Any employer acting diligently and fairly would agree to these requests.

With respect to your "empty briefcase" reference, we note that you have not provided us with evidence to support the statements in your letter regarding the instructions given to incoming employees "not to bring any proprietary information or materials from their former employers" and "not to use, release, or disclose any such information in the course of their employment at MITAC", nor with a copy of MITAC's Code of Ethics.

Finally, we understand from our communications with you and your client that neither of you take Bombardier's legitimate claims seriously nor will they prevent you from continuing to compete unfairly. Your client is simply unwilling to take any corrective action, despite Bombardier's numerous warnings. You have shown bad faith by wrongly leading us to believe that you were open to discussions on this matter and instead are abusing our good faith efforts.

In light of the magnitude of our efforts to inform you of MITAC's wrongdoings, any further solicitation of Bombardier's employees by MITAC at this stage with the aim of further destabilising Bombardier's activities will be firmly contested.

Regards,

Marianne Plamondon
Partner

MSP/ld

Copies to:     Jennifer Nault, Senior Legal Counsel, Bombardier Inc.
               Kevin Ackhurst, Head of Antitrust and Competition, Norton Rose Fulbright Canada
               Robert Bonhomme, Partner, Borden Ladner Gervais
               Akira Ishikawa, Director, Legal & Compliance Group, MITAC
               Lee Human, President, AeroTEC

# EXHIBIT G

MORRISON | FOERSTER

2000 PENNSYLVANIA AVE., NW
WASHINGTON, D.C.
20006-1888

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

May 1, 2017

Writer's Direct Contact
+1 (202) 887.1538
JDeVecchio@mofo.com

*By email*

Marianne Plamondon
Norton Rose Fulbright Canada LLP
1 Place Ville Marie, Suite 2500
Montreal, Quebec H3B 1R1 CANADA

Re:     Response to Bombardier's Letter of April 12, 2017

Dear Ms. Plamondon:

We have received your response of April 12, 2017, and disagree with and reject every assertion you have made about MITAC's actions and motivations.  Although we are always available for constructive discussions, MITAC has done nothing wrong, and we consider this matter to be closed.

Yours most sincerely,

W. Jay DeVecchio

cc:     Akira Ishikawa, Director, Legal & Compliance Group, Mitsubishi Aircraft
        Corporation

        Robert Bonhomme, Partner, Borden Ladner Gervais

# EXHIBIT H

March 2, 2017

**NORTON ROSE FULBRIGHT**

Barristers & Solicitors / Patent & Trade-mark Agents

Norton Rose Fulbright Canada LLP
1 Place Ville Marie, Suite 2500
Montréal, Quebec H3B 1R1 Canada

F: +1 514.286.5474
nortonrosefulbright.com

**Without Prejudice**
**Sent By Courier**

Ms. Jasmin Ten Have
MITSUBISHI AIRCRAFT CORPORATION
2-15, Oye-cho, Minato-ku
Nagoya-shi, Aichi Prefecture 455-8555
Japan

Marianne Plamondon
+1 514.847.6036
Marianne.Plamondon@nortonrosefulbright.com

Our reference
00106275-0672

Dear Madam:

## Letter Regarding Your Continuing Obligations Towards Bombardier

We are the attorneys for Bombardier Inc. (**Bombardier**) and have been instructed to send you this letter of demand.

From May 6, 2013 or thereabouts until August 19, 2016, you were employed by Bombardier. At the time of your departure, you held the position of Engineering Professional, and were assigned to development programs.

During the course of your employment with Bombardier, you acquired highly specialized knowledge and expertise, which by its very nature, could only have been acquired while developing aircrafts at Bombardier.

Recently, our client was informed that you are currently employed by Mitsubishi Aircraft Corporation (**MITAC**). You must surely know that MITAC carries on activities that compete directly with the activities of Bombardier.

In light of the foregoing, we are writing to remind you that you are bound by Bombardier's Code of Ethics and Business Conduct (the **Code**).

We remind you that the Code expressly provides that all employees are required to safeguard and not misuse Bombardier's property or information, both during the period of employment and thereafter. The Code specifies that this obligation includes both physical and electronic materials and systems, as well as the company's intellectual property and confidential information. Importantly, the Code includes a specific provision outlining each employee's obligations with respect to confidential information:

> Confidential information is information belonging to Bombardier that is not subject to public disclosure. Confidential information encompasses information produced by Bombardier or obtained in confidence from a third party and covered by a non-disclosure agreement.
>
> Examples of confidential information are financial data, strategic plans, intellectual property, information on bids, personal employee information, legal documents and information on customers and suppliers.

CAN_DMS: \106120378\1

Norton Rose Fulbright Canada LLP is a limited liability partnership established in Canada.

Norton Rose Fulbright Canada LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are at nortonrosefulbright.com.

Ms. Jasmin Ten Have
March 2, 2017



Do not divulge confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so. This includes confidential information provided by suppliers and customers. Employees agree to maintain such confidentiality at all times, even after leaving the employ of Bombardier.

Employees should also exercise caution to avoid misusing or inadvertently disclosing confidential information. This includes:

- keeping electronic and paper documents and files containing confidential information in a safe place;

- not discussing confidential matters where they could be overheard, for example, in public places such as elevators, hallways, restaurants, airplanes and taxis;

- exercising caution when discussing confidential matters on wireless telephones or other wireless devices;

- transmitting confidential documents by electronic devices, such as by fax or e-mail, only when it is reasonable to believe this can be done under secure conditions; and

- avoiding unnecessary copying of confidential documents.

[our emphasis]

We would also like to remind you that as a result of your employment contract with Bombardier, you are further bound by the duty of loyalty as set out in the *Civil Code of Quebec*. It should be noted that the duty of loyalty survives the end of the employment relationship. Article 2088 of the *Civil Code of Quebec* states:

**2088.** The employee is bound not only to perform his work with prudence and diligence, but also to act faithfully and honestly and not to use any confidential information he obtains in the performance or in the course of his work.

These obligations continue for a reasonable time after the contract terminates and permanently where the information concerns the reputation and private life of others.

[our emphasis]

The duty of loyalty has been interpreted by the courts to include, among others, the following obligations:

1.  The obligation not to retain, disclose or use confidential information which was acquired during your employment by our client;

2.  The obligation not to unfairly solicit, directly or indirectly, our client's customers;

3.  The obligation not to unfairly compete with our client;

4.  The obligation not to solicit, directly or indirectly, our client's employees in order to induce them to leave; and

5.  The obligation not to defame or harm, by any means, our client's reputation.

To summarize, you are obligated contractually and legally to protect whatever confidential information you acquired in the course of your employment by our client.

Ms. Jasmin Ten Have
March 2, 2017

# NORTON ROSE FULBRIGHT

It cannot be denied that during your employment at Bombardier, you worked on its development programs and as such, acquired a substantial amount of confidential information related to these programs. Your decision to leave Bombardier for MITAC, a direct competitor to Bombardier, creates the real risk that you will use, or have already used, Bombardier's confidential information to Bombardier's detriment.

In view of the foregoing, we are hereby formally putting you on notice to comply with your contractual and legal obligations – in particular, by ceasing any use of Bombardier's confidential information.

Should you still have any property or documents belonging to our client in your possession, we request that you return them without further notice or delay to the attention of the undersigned attorneys.

Should you fail to comply fully with all of your contractual and legal obligations, our client has instructed us to institute against you, without further notice or delay, any and all legal proceedings as are appropriate and necessary, including injunction proceedings, to protect its rights and obtain any and all redress that may be necessary owing to your actions.

This formal notice is sent to you without prejudice to any of the rights, privileges and remedies that our client may have in relation to this matter.

If you have any questions regarding this matter, please contact Mtre Marianne Plamondon at (514) 847-6036.

**DO GOVERN YOURSELF ACCORDINGLY.**

*Norton Rose Fulbright Canada LLP*
Norton Rose Fulbright Canada, LLP

MP/ng

Copy:   Mr. Hiromichi Morimoto, President, Mitsubishi Aircraft Corporation
        Mr. Luke Walker, Managing Counsel

# EXHIBIT I


NORTON ROSE FULBRIGHT

Barristers & Solicitors / Patent & Trade-mark Agents

April 13, 2017

**Without Prejudice**
**Sent By Courier**

Mr. Guy De Langis
**Mɪᴛsᴜʙɪsʜɪ Aɪʀᴄʀᴀꜰᴛ Cᴏʀᴘᴏʀᴀᴛɪᴏɴ**
Nagoya Airport, Toyoyama-Cho, Nishikasugai-Gun
Nayoga
Japan, Aichi480-0287

Norton Rose Fulbright Canada ʟʟᴘ
1 Place Ville Marie, Suite 2500
Montréal, Quebec H3B 1R1 Canada

F: +1 514.286.5474
nortonrosefulbright.com

Marianne Plamondon
+1 514.847.6036
Marianne.Plamondon@nortonrosefulbright.com

Our reference
00106275-0672

Dear Sir:

**Letter Regarding Your Continuing Obligations Towards Bombardier**

We are the attorneys for Bombardier Inc. (**Bombardier**) and have been instructed to send you this letter of demand.

From June 22, 1987 or thereabouts until February 24, 2017, you were employed by Bombardier. At the time of your departure, you held the position of Senior Engineering Specialist (Engineer 5), and were assigned to development programs.

During the course of your employment with Bombardier, you acquired highly specialized knowledge and expertise, which by its very nature, could only have been acquired while developing aircrafts at Bombardier.

Recently, our client was informed that you are currently employed by Mitsubishi Aircraft Corporation (**MITAC**). You must surely know that MITAC carries on activities that compete directly with the activities of Bombardier.

In light of the foregoing, we are writing to remind you that you are bound by Bombardier's Code of Ethics and Business Conduct (the **Code**).

We remind you that the Code expressly provides that all employees are required to safeguard and not misuse Bombardier's property or information, <u>both during the period of employment and thereafter</u>. The Code specifies that this obligation includes both physical and electronic materials and systems, as well as the company's intellectual property and confidential information. Importantly, the Code includes a specific provision outlining each employee's obligations with respect to confidential information:

> <u>Confidential information is information belonging to Bombardier that is not subject to</u> <u>public disclosure.</u> Confidential information encompasses information produced by Bombardier or obtained in confidence from a third party and covered by a non-disclosure agreement.
>
> Examples of confidential information are financial data, strategic plans, intellectual property, information on bids, personal employee information, legal documents and information on customers and suppliers.

CAN_DMS: \106718981\1

Norton Rose Fulbright Canada LLP is a limited liability partnership established in Canada.

Norton Rose Fulbright Canada LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are at nortonrosefulbright.com.

Mr. Guy De Langis
April 13, 2017

**NORTON ROSE FULBRIGHT**

Do not divulge confidential information to anyone other than the person or persons for whom it is intended, unless authorized or legally required to do so. This includes confidential information provided by suppliers and customers. <u>Employees agree to maintain such confidentiality at all times, even after leaving the employ of Bombardier.</u>

Employees should also exercise caution to avoid misusing or inadvertently disclosing confidential information. This includes:

- keeping electronic and paper documents and files containing confidential information in a safe place;

- not discussing confidential matters where they could be overheard, for example, in public places such as elevators, hallways, restaurants, airplanes and taxis;

- exercising caution when discussing confidential matters on wireless telephones or other wireless devices;

- transmitting confidential documents by electronic devices, such as by fax or e-mail, only when it is reasonable to believe this can be done under secure conditions; and

- avoiding unnecessary copying of confidential documents.

[our emphasis]

We would also like to remind you that as a result of your employment contract with Bombardier, you are further bound by the duty of loyalty as set out in the *Civil Code of Quebec*. It should be noted that the duty of loyalty survives the end of the employment relationship. Article 2088 of the *Civil Code of Quebec* states:

> **2088.** The employee is bound not only to perform his work with prudence and diligence, but also to act faithfully and honestly and <u>not to use any confidential information he obtains in the performance or in the course of his work.</u>
>
> <u>These obligations continue for a reasonable time after the contract terminates</u> and permanently where the information concerns the reputation and private life of others.

[our emphasis]

The duty of loyalty has been interpreted by the courts to include, among others, the following obligations:

1. The obligation not to retain, disclose or use confidential information which was acquired during your employment by our client;

2. The obligation not to unfairly solicit, directly or indirectly, our client's customers;

3. The obligation not to unfairly compete with our client;

4. The obligation not to solicit, directly or indirectly, our client's employees in order to induce them to leave; and

5. The obligation not to defame or harm, by any means, our client's reputation.

Mr. Guy De Langis
April 13, 2017

**NORTON ROSE FULBRIGHT**

In addition to your contractual obligations under the Code and the duty of loyalty under the *Civil Code of Quebec*, you are also no doubt aware that as a member of l'Ordre des ingénieurs du Québec, you are subject to certain professional obligations pursuant to the Quebec's *Code of Ethics of Engineers*. For your reference, we have reproduced these obligations:

> **1.02** In this Regulation, unless the context indicates otherwise, the word "client" means a person to whom an engineer provides professional services, including an employer.
>
> [...]
>
> **3.06.01** An engineer must respect the secrecy of all confidential information obtained in the practice of his profession.
>
> **3.06.02** An engineer shall be released from professional secrecy only with the authorization of his client or whenever so ordered by law.
>
> **3.06.03** An engineer shall not make use of confidential information to the prejudice of a client or with a view to deriving, directly or indirectly, an advantage for himself or for another person.
>
> **3.06.04** An engineer shall not accept a mandate which entails or may entail the disclosure or use of confidential information or documents obtained from another client without the latter's consent.

To summarize, you are obligated contractually, legally, and professionally to protect whatever confidential information you acquired in the course of your employment by our client.

It cannot be denied that during your employment at Bombardier, you worked on its development programs and as such, acquired a substantial amount of confidential information related to these programs. Your decision to leave Bombardier for MITAC, a direct competitor to Bombardier, creates the real risk that you will use, or have already used, Bombardier's confidential information to Bombardier's detriment.

In view of the foregoing, we are hereby formally putting you on notice to comply with your contractual, legal, and professional obligations – in particular, by ceasing any use of Bombardier's confidential information.

Should you still have any property or documents belonging to our client in your possession, we request that you return them without further notice or delay to the attention of the undersigned attorneys.

Should you fail to comply fully with all of your contractual, legal and professional obligations, our client has instructed us to institute against you, without further notice or delay, any and all legal proceedings as are appropriate and necessary, including injunction proceedings, to protect its rights and obtain any and all redress that may be necessary owing to your actions.

This formal notice is sent to you without prejudice to any of the rights, privileges and remedies that our client may have in relation to this matter.

Mr. Guy De Langis
April 13, 2017

**NORTON ROSE FULBRIGHT**

If you have any questions regarding this matter, please contact Mtre Marianne Plamondon at (514) 847-6036.

**DO GOVERN YOURSELF ACCORDINGLY.**

*Norton Rose Fulbright Canada LLP*

MSP/ld

Copies:         Mr. Hiromichi Morimoto, President, Mitsubishi Aircraft Corporation
                Mr. Akira Ishikawa, Director, Legal and Compliance Group

# EXHIBIT J

À signifier
Étude Paquette & Associés
Huissiers de justice

**NORTON ROSE FULBRIGHT**

Avocats et agents de brevets et de marques de commerce

Le 2 mars 2017

Norton Rose Fulbright Canada S.E.N.C.R.L., s.r.l.
1, Place Ville Marie, bureau 2500
Montréal (Québec)  H3B 1R1 Canada

**Sous toutes réserves**
**Expédié par huissier**

F : +1 514.286.5474
nortonrosefulbright.com

M. Andrius Knystautas
926, De La Station
Prévost (Québec) J0R 1T0

**Marianne Plamondon**
+1 514.847.6036
marianne.plamondon@nortonrosefulbright.com

Notre référence
00106275-0672

## Mise en demeure – Respect de vos obligations

Monsieur Knystautas,

Nous sommes les procureurs de Bombardier Inc. (**Bombardier** ou **notre cliente**) et, à ce titre, avons été mandatés afin de vous faire parvenir la présente mise en demeure.

Le 17 février dernier, vous avez avisé vos supérieurs de votre démission et de votre départ le 2 mars 2017 pour joindre un concurrent de notre cliente, Mitsubishi Aircraft Corporation.  Vous avez donc donné un préavis de dix (10) jours ouvrables, et ce, après vingt-sept (27) années de service continu pour Bombardier.

Or, ce préavis de dix (10) jours ouvrables ne constitue clairement pas un préavis raisonnable au sens de l'article 2091 du *Code civil du Québec* (**C.c.Q.**), particulièrement compte tenu de la nature importante de votre emploi et de vos vingt-sept (27) années de service continu, qui prévoit ce qui suit :

> **2091.** Chacune des parties à un contrat à durée indéterminée peut y mettre fin en donnant à l'autre un délai de congé.
>
> <u>Le délai de congé doit être raisonnable</u> et tenir compte, notamment, de la nature de l'emploi, des circonstances particulières dans lesquelles il s'exerce et de la durée de la prestation de travail.

(nos soulignements)

*Par conséquent, la nature importante de votre emploi* ainsi que vos vingt-sept (27) années de service continu justifient un préavis minimal de douze (12) semaines. Votre départ précipité en violation d'une disposition d'ordre public, soit l'article 2091 C.c.Q., cause un préjudice très sérieux à Bombardier et impacte de façon significative le cours des travaux au sein de votre équipe de travail.

Compte tenu de la jurisprudence à cet effet, nous vous mettons formellement en demeure de demeurer dans votre emploi pour douze (12) semaines, période durant laquelle vous devrez respecter scrupuleusement votre obligation de loyauté et donner la performance à laquelle votre employeur est en droit de s'attendre.

Norton Rose Fulbright Canada S.E.N.C.R.L., s.r.l. est une société en nom collectif à responsabilité limitée établie au Canada.

Norton Rose Fulbright Canada S.E.N.C.R.L., s.r.l., Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright South Africa Inc et Norton Rose Fulbright US LLP sont des entités juridiques distinctes, et toutes sont membres du Verein Norton Rose Fulbright, un Verein suisse. Le Verein Norton Rose Fulbright aide à coordonner les activités des membres, mais il ne fournit aucun service juridique aux clients. Pour obtenir des détails concernant chaque entité ainsi que certains renseignements réglementaires, consultez le site nortonrosefulbright.com.

M. Andrius Knystautas
Le 2 mars 2017



À cet effet, nous vous rappelons qu'en raison de votre contrat de travail avec Bombardier, vous êtes lié par l'obligation de loyauté prévu à l'article 2088 C.c.Q., qui prévoit :

> **2088.** Le salarié, outre qu'il est tenu d'exécuter son travail avec prudence et diligence, doit agir avec loyauté et honnêteté et ne pas faire usage de l'information à caractère confidentiel qu'il obtient dans l'exécution ou à l'occasion de son travail.
>
> Ces obligations survivent pendant un délai raisonnable après cessation du contrat, et survivent en tout temps lorsque l'information réfère à la réputation et à la vie privée d'autrui.

Concernant votre obligation de loyauté durant cette période de préavis, comme vous serez toujours à l'emploi de Bombardier, vous devez à Bombardier la plus haute loyauté, ce qui implique notamment :

1. L'obligation de ne pas conserver, de ne pas divulguer et ne pas utiliser d'informations confidentielles acquises au cours de votre emploi pour notre cliente;

2. L'obligation de ne pas solliciter de façon déloyale, directement ou indirectement, la clientèle de notre cliente;

3. L'obligation de ne pas concurrencer de façon déloyale avec notre cliente;

4. L'obligation de ne pas solliciter, directement ou indirectement, les employés de notre cliente, afin de les induire à quitter l'emploi de notre cliente; et

5. L'obligation de ne pas diffamer ou causer préjudice, de quelque façon que ce soit, à la réputation de notre cliente.

Vous devez également scrupuleusement respecter toutes les obligations prévues au Code d'éthique et de conduite de Bombardier (le **Code**), auquel vous êtes lié, incluant l'obligation de confidentialité.  Nous vous rappelons que le Code prévoit expressément que tous les employés doivent protéger et ne pas faire une utilisation abusive de toute information ou bien qui est la propriété de Bombardier, et ce, durant leur *emploi* auprès de Bombardier et après la fin de cet emploi.  Le Code précise que cette obligation de protéger *et de ne* pas faire une utilisation des informations et biens, qui sont la *propriété de Bombardier, inclut* les matériaux et systèmes électroniques et physiques, de même que la propriété intellectuelle et les informations confidentielles de Bombardier.  Par ailleurs, une disposition du Code prévoit expressément les obligations de chacun des employés en regard du respect de la confidentialité des informations :

> **Information confidentielle**
>
> Est jugée confidentielle toute information appartenant à Bombardier et qui n'est pas visée par les exigences de divulgation au public. La définition de l'information confidentielle comprend toute information produite par Bombardier ou obtenue de manière confidentielle auprès d'un tiers et couverte par une entente de non-divulgation.
>
> Les données financières, plans stratégiques, propriété intellectuelle, renseignements sur des soumissions, renseignements personnels sur les employés, documents juridiques et renseignements sur les clients et fournisseurs sont des exemples d'information confidentielle.
>
> Il est interdit de transmettre de l'information confidentielle à toute personne autre que la ou les personnes à qui cette information est destinée, sauf sur autorisation ou par prescription juridique. Cette interdiction couvre toute information confidentielle fournie par des fournisseurs et des clients. Les employés de Bombardier s'engagent à respecter le caractère confidentiel de l'information jugée comme telle même après avoir quitté la Société.

M. Andrius Knystautas
Le 2 mars 2017



Les employés doivent faire preuve de diligence afin de prévenir l'usage inapproprié ou la divulgation par inadvertance d'une information confidentielle. Concrètement, il faut donc :

- conserver en lieu sûr tout document et dossier, en format papier ou électronique, contenant de l'information confidentielle;

- ne pas discuter de questions confidentielles dans des endroits où la conversation pourrait être entendue, c'est-à-dire dans des lieux publics comme les ascenseurs, couloirs, restaurants, avions et taxis;

- faire preuve de discrétion en discutant de questions confidentielles au téléphone cellulaire ou au moyen d'un autre dispositif sans fil;

- ne transmettre des documents confidentiels par voie électronique (télécopieur ou courrier électronique), que s'il est permis de croire que l'envoi peut être effectué en toute sécurité; et

- éviter la reproduction inutile de documents confidentiels.

En plus de vos obligations contractuelles prévues par le Code et de votre obligation de loyauté prévue au *Code civil du Québec*, vous savez également qu'en étant membre de l'Ordre des ingénieurs du Québec, vous avez certaines obligations professionnelles découlant du *Code de déontologie des ingénieurs du Québec*. À ce sujet, nous avons reproduit les dispositions pertinentes ci-dessous :

**1.02.** Dans le présent règlement, à moins que le contexte n'indique un sens différent, le mot « client » signifie celui qui bénéficie des services professionnels d'un ingénieur, y compris un employeur.

**3.06.01.** L'ingénieur doit respecter le secret de tout renseignement de nature confidentielle obtenu dans l'exercice de sa profession.

**3.06.02.** L'ingénieur ne peut être relevé du secret professionnel qu'avec l'autorisation de son client ou lorsque la loi l'ordonne.

**3.06.03.** L'ingénieur ne doit pas faire usage de renseignements de nature confidentielle au préjudice d'un client ou en vue d'obtenir directement ou indirectement un avantage pour lui-même ou pour autrui.

**3.06.04.** L'ingénieur ne doit pas accepter un mandat *qui comporte ou peut comporter la révélation* ou l'usage de renseignements ou documents confidentiels obtenus d'un autre client, sans le consentement de ce dernier.

En résumé, vous êtes lié et tenu de respecter vos obligations contractuelles, légales et professionnelles et ce, durant l'entièreté de votre préavis raisonnable et après la fin de votre emploi.

À défaut de vous conformer à cette mise en demeure, notre cliente nous a donné le mandat d'entreprendre contre vous, sans autre avis ni délai, tous les recours disponibles, y compris la saisie, le recours en injonction et le recours en dommages et intérêts, pour faire respecter ses droits.  Soyez avisé que votre refus de respecter votre obligation de donner un préavis raisonnable entraînera minimalement une poursuite en dommages contre vous personnellement équivalent à votre salaire global pour la période du préavis raisonnable, soit un montant estimé à au moins 32 395 $, à parfaire.

Pour toute question concernant la présente, n'hésitez pas à communiquer avec Me Marianne Plamondon au (514) 847-6036.

M. Andrius Knystautas
Le 2 mars 2017



**NORTON ROSE FULBRIGHT**

La présente lettre de mise en demeure vous est envoyée sans préjudice et sous réserve de tous les droits, privilèges et recours de notre cliente.

**VEUILLEZ AGIR EN CONSÉQUENCE.**

*Norton Rose Fulbright Canada S.E.N.C.R.L., s.r.l.*

Norton Rose Fulbright Canada S.E.N.C.R.L., s.r.l.

MP/ng

Copie :  Jennifer Nault, Conseillère juridique principale, Bombardier
Hiromichi Morimoto, Président, Mitsubishi Aircraft Corporation
Luke Walker, Conseiller juridique

# EXHIBIT K

March 8, 2017

From Andrius Knystautas
926 de la Station
Prevost (Quebec) J0R 1T0

To Bombardier Inc.
800 René-Lévesque Blvd. West
Montréal, Québec
Canada H3B 1Y8

To whom it may concern,

This is further to the demand letter received from Norton Rose Fulbribright dated March 2, 2017. I must state that I was surprised, to say the least, to see that this letter was served during my departure celebration cocktail.

That being said, and although I believe I am not obliged to do so, I hereby confirm that I will provide Bombardier with a 6-week notice prior to my departure. Considering that I announce my resignation on February 17th 2017 and considering that I have already worked more than three weeks since then (I performed overtime work for the equivalent of one week), my last day of work with Bombardier will be March 24, 2017.

I also confirm that I will respect all the obligations described in the Norton Rose Fulbright letter.

I kindly ask you to confirm, by March 10, 2017, that Bombardier is satisfied with the content of the present letter.

_____          MARCH 8TH 2017
Andrius Knystautas                                      Date


*Ackowledgment of receipt*

_____          MARCH 8TH 2017
RICHARD ALEXANDER
For Bombardier Inc.                                      Date

# EXHIBIT L

March 3rd 2017

From Andrius Knystautas
926 de la Station
Prevost (Quebec) J0R 1T0

To Bombardier Inc.
800 René-Lévesque Blvd. West
Montréal, Québec
Canada H3B 1Y8

To whom it may concern,

I acknowledge receipt of a formal letter from Norton Rose Fulbright dated March 2nd 2017 titled "Respect de vos Obligations" sent on behalf of its client, Bombardier.

I have given my letter of resignation on February 17th 2017 with copies to my Manager, Richard Alexander and to my Director, Marc Villeneuve. I met with them both personally on the morning of February 17th 2017.

My presence at the office today is a courtesy to Bombardier Aerospace, and is by no means an acceptance of the content of the formal letter, as it relates to reasonable delay. I do accept all points on confidentiality. I will work with Bombardier to resolve the issues at hand.

_____          03/03/2017
Andrius Knystautas                                    Date


RICHARD ALEXANDER                           3/3/2017

_____          3/3/2017
Guillaume Des Roches.
For Bombardier Aerospace                      Date

# EXHIBIT M

**BOMBARDIER**

Bombardier Inc.
400 chemin de la Côte-Vertu
West
Dorval, Québec, Canada H4S 1Y9
www.bombardier.com
TEL 514-855-5000
FAX 514-855-7401

*CONFIDENTIAL*

March 10, 2017

Mr. Knystaustas,

We acknowledge reception of your letter dated March 8, 2017.  We do not agree to shorten the reasonable notice period you were obliged to give to the Company. By consequence, we refer you to the letter of Norton Rose Fulbright sent to you on March 2, 2017 and ask you to comply with the obligations explained in this letter.

Sincerely,

Richard Alexander, Manager

c.c: Guillaume DesRoches, HRBP

# EXHIBIT N

March 22, 2017

From Andrius Knystautas
926 de la Station
Prevost (Quebec) J0R 1T0

To Bombardier Inc.
800 René-Lévesque Blvd. West
Montréal, Québec
Canada H3B 1Y8

To whom it may concern,

This is further to  my letter dated March 8, 2017 and Bombardier's response letter dated March 10, 2017.

I once again reiterate that I do not believe I was obliged to remain with Bombardier further to my initial termination notice. In order to avoid any litigation, I am prepared to stay with Bombardier until April 7, 2017. This represents approximately a two-month termination notice, which is more than reasonable in the present circumstances. Therefore, please be advised that April 7, 2017 will be my last day of work with Bombardier.

Yours truly,

_____          _____
Andrius Knystautas                            March 22, 2017


*Ackowledgment of receipt*


_____          _____
RICHARD ALEXANDER
For Bombardier Inc.                          March 22, 2017