UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOMBARDIER INC., | CASE NO. C18-1543JLR |
| Plaintiff, | ORDER ON MOTIONS TO SEAL |
| v. | |
| MITSUBISHI AIRCRAFT CORPORATION, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court are: (1) Plaintiff Bombardier Inc.'s ("Bombardier") motion to seal certain declaration exhibits (Pl. MTS (Dkt. # 3)); (2) Defendant Aerospace Testing Engineering & Certification, Inc.'s ("AeroTEC") motion to seal its unredacted preliminary injunction opposition and supporting documents (AeroTEC MTS (Dkt. # 58)); and (3) Defendant Mitsubishi Aircraft Corporation America, Inc.'s ("MITAC America") motion to seal its unredacted preliminary injunction opposition and supporting

ORDER - 1

documents (MITAC MTS (Dkt. # 69)).  AeroTEC and MITAC America filed responses to Bombardier's motion (AeroTEC Resp. (Dkt. # 29); MITAC Resp. (Dkt. # 31)), and Bombardier filed a reply (Pl. Reply (Dkt. # 37)).  Bombardier filed responses to AeroTEC's and MITAC America's motions (Pl. AeroTEC Resp. (Dkt. # 97); Pl. MITAC Resp. (Dkt. # 98)), and AeroTEC and MITAC America filed replies (AeroTEC Reply (Dkt. # 102); MITAC Reply (Dkt. # 103)).  The court has considered the motions, the parties' submissions concerning the motions, the relevant portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS Bombardier's motion, GRANTS in part and DENIES in part AeroTEC's motion, and GRANTS in part and DENIES in part MITAC America's motion.

## II.   BACKGROUND

Bombardier filed this action on October 19, 2018, alleging, *inter alia*, trade secret misappropriation by Defendants AeroTEC, MITAC America, Mitsubishi Aircraft Corporation, Laurus Basson, Marc-Antoine Delarche, Cindy Dornéval, Michel Korwin-Szymanowski, Keith Ayre, and John and/or Jane Does 1-88 (collectively, "Defendants").  (*See generally* Compl. (Dkt. # 1).)  That same day, Bombardier filed a preliminary injunction motion, seeking to enjoin certain defendants "from the continued use and disclosure of Bombardier trade secret information."  (MPI (Dkt. # 4) at 6.)  Contemporaneous with its complaint and preliminary injunction motion, Bombardier

---

[1] AeroTEC requests oral argument on its motion (*see* AeroTEC MTS at 1), but the court concludes that oral argument would not be helpful to its disposition of this motion or Bombardier's and MITAC America's motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

filed under seal certain exhibits to its preliminary injunction motion, as well as a motion to seal these exhibits. (*See* Pl. MTS; *see also* Burns Decl. Exs. A-J (Dkt. # 6); Tidd Decl. Ex. A (Dkt. # 8) (Dkt. ## 6 and 8 are, collectively, "Pl. Sealed Docs.").)

On December 27, 2018, AeroTEC and MITAC America separately responded to Bombardier's preliminary injunction motion. (*See* AeroTEC MPI Resp. (Dkt. # 60) (redacted); MITAC MPI Resp. (Dkt. # 71) (redacted).) Also on December 27, 2018, AeroTEC and MITAC America filed under seal their unredacted preliminary injunction oppositions and certain supporting documents, as well as motions to seal these documents. (*See* AeroTEC MTS; MITAC MTS; *see also* Sealed AeroTEC MPI Resp. (Dkt. # 61); Sealed Basson Decl. (Dkt. # 62); Sealed Basson Decl. Ex. C (Dkt. # 63); Sealed Dornéval Decl. (Dkt. # 64) (Dkt. ## 61-64 are, collectively, "Sealed AeroTec Docs."); Sealed MITAC MPI Resp. (Dkt. # 75); Sealed Riedinger Decl. (Dkt. # 76); Sealed Boyd Decl. (Dkt. # 77); Sealed Hansman Decl. (Dkt. # 78); Sealed Nguyen Decl. (Dkt. # 79) (Dkt. ## 75-79 are, collectively, "Sealed MITAC Docs.").) AeroTEC and MITAC America clarified in their respective motions to seal that they did not believe any documents should be filed under seal, but that they sealed the documents based on Bombardier's request and the procedure laid out in the parties' interim protective order. (*See* AeroTEC MTS at 2; MITAC MTS at 1-2; *see also* Interim Protective Order (Dkt. # 50-2).) The interim protective order only considered Bombardier's sealed documents to be confidential. (Interim Protective Order at 4 (citing Pl. Sealed Docs).) In response, Bombardier explained that, with the benefit of more time to review the disputed documents, many of the documents would not need to be sealed. (Pl. AeroTEC Resp. at

2; Pl. MITAC Resp. at 4-5.) Bombardier maintained, however, that some documents should remain sealed. (*See id.*) Since the parties filed their respective motions, the court has entered a new protective order. (Protective Order (Dkt. # 109).)

The court will address the parties' motions in turn.

### III.   ANALYSIS

**A.   Legal Standard**

When deciding a motion to seal, courts "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). This presumption, however, "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz*, 331 F.3d at 1135 (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct. N. Dist. (San Jose)*, 187 F.3d 1096, 1102 (9th Cir. 1999)). The standard for determining whether to seal a record depends on the document that the sealed record is attached to. *See Foltz*, 331 F.3d at 1136-37. Previously, courts in the Ninth Circuit applied the "compelling reasons" standard to sealed records attached to a dispositive motion, and the "good cause" exception for sealed records attached to a nondispositive motion. *See Hagestad*, 49 F.3d at 1434; *Foltz*, 331 F.3d at 1135 (citing *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)); *see also Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098-1101 (9th Cir. 2016). However, in *Chrysler*, the Ninth Circuit clarified that the applicable standard "does not merely depend on whether the motion is technically 'dispositive.'" 809 F.3d at 1101. Rather, courts

//

should apply the compelling reasons standard when the sealed documents are attached to a motion that is "more than tangentially related to the merits of a case." *Id.* at 1101-02.

As in *Chrysler*, the motion at issue here is Bombardier's preliminary injunction motion. *See id.*; (MPI.) This motion is undoubtedly "more than tangentially related to the merits" of this case. *Chrysler*, 809 F.3d at 1101. The motion asks the court to address the main issue of the case: whether certain defendants have misappropriated Bombardier's trade secrets. (*See* MPI at 6; *see generally* Compl.) Moreover, if Bombardier succeeds on its preliminary injunction motion, it will achieve a portion of the relief it requests in its underlying complaint. (*See* Compl. at 90); *Chrysler*, 809 F.3d at 1102 (finding that the underlying preliminary injunction motion was more than tangentially related to the case's merits in part because "[i]f plaintiffs had succeeded in their motion for preliminary injunction, they would have won a portion of the injunctive relief they requested in the underlying complaint"). The court concludes that the compelling reasons standard applies to the three motions to seal at issue.

Under this standard, the party seeking to seal a judicial record bears the burden of showing that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d at 1178-79 (internal citations omitted). A failure to meet that burden means that the record will be filed in public. *Id.* at 1182. If a court decides to seal a record, it must "base its decision on a compelling reason and articulate the factual basis for its ruling." *Id.* at 1179 (quoting *Hagestad*, 49 F.3d at 1434).

//

1     "In general, 'compelling reasons' sufficient to outweigh the public's interest in
2 disclosure and justify sealing court records exist when such 'court files might have
3 become a vehicle for improper purposes,' such as the use of records to . . . release trade
4 secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435
5 U.S. 589, 598 (1978)). The final determination of what constitutes a compelling reason is
6 "best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599.

7     In addition, in the Western District of Washington, parties seeking to file
8 documents under seal must follow the procedure laid out in Local Rule 5(g). *See* Local
9 Rules W.D. Wash. LCR 5(g). Pursuant to Local Rule 5(g), a party filing a motion to seal
10 must include "a certification that the party has met and conferred with all other parties in
11 an attempt to reach agreement on the need to file the document[s] under seal." *Id.* LCR
12 5(g)(3)(A). The party seeking to seal the documents must also explain the bases for
13 requiring the relief. *Id.* LCR 5(g)(3)(B).

14 **B.    Bombardier's Motion to Seal**

15     Bombardier requests that the court seal exhibits A-J to the declaration of Daniel
16 Burns and exhibit A to the declaration of David Tidd. (Pl. MTS at 2; Pl. Sealed Docs.)
17 Bombardier claims these exhibits contain "confidential and proprietary trade secret(s)"
18 and that if these documents were filed publicly, "Bombardier would lose significant
19 competitive advantage by having its proprietary processes and procedures related to
20 aircraft certification available to any of its competitors." (Pl. MTS at 2.) Bombardier
21 certified that it complied with Local Rule 5(g)'s requirements as best it could in light of
22 //

1 the fact that no party had appeared at the time that it filed these documents. (Pl. MTS at

2 3-4 (citing Local Rule 5(g)).)

3       AeroTEC opposes Bombardier's motion on two procedural grounds: (1) the

4 motion is premature because not all Defendants were timely served; and (2)

5 Bombardier's counsel violated Local Rule 5(g) by not meeting and conferring with

6 AeroTEC's counsel. (*See* AeroTEC Resp. at 1-2.) The court finds both of these grounds

7 unpersuasive. First, AeroTEC admits that "service of process is now accepted,"

8 rendering its first procedural argument moot. (*Id.* at 2.) Second, Local Rule 5(g) requires

9 the moving party to meet and confer "with all other parties," but Bombardier could not

10 comply with this rule when it filed its sealed documents because AeroTEC's counsel had

11 not yet appeared. *See* Local Rules W.D. Wash. LCR 5(g)(3). Thus, AeroTEC's second

12 procedural argument is moot.[2] AeroTEC's only substantive argument is that Bombardier

13 did not provide AeroTEC sufficient access to the sealed documents. (*Id.* at 2-3.)

14 However, the parties' stipulated protective order outlines the parties' agreed-upon access

15 to confidential material, rendering this argument moot, as well. (*See* Protective Order.)

16 MITAC America opposes Bombardier's motion on similar grounds (*see generally*

17 MITAC Resp.), and the court likewise finds their arguments unavailing.

18       The court finds that Bombardier has articulated compelling reasons to maintain

19 these documents under seal. (*See* Pl. MTS at 2-4; Pl. Sealed Docs.) In short, Bombardier

20 represents that the sealed exhibits contain confidential and proprietary trade secret

---

[2] The court notes that, shortly after AeroTEC's counsel appeared in this case, the parties met and conferred regarding the motion. (*See* Pl. Reply at 2-4.)

information, and that the unsealed declarations that the sealed exhibits are attached to could provide a roadmap for using this information. (Pl. MTS at 2-4.) Unsealing the exhibits could therefore cause Bombardier significant harm, which outweighs the policies favoring disclosure. *See Kamakana*, 447 F.3d at 1178-79. Thus, the court GRANTS Bombardier's motion to seal exhibits A-J to the declaration of Mr. Burns and exhibit A to the declaration of Mr. Tidd.

**C.     AeroTEC's Motion to Seal**

In conjunction with filing a redacted version of its preliminary injunction opposition, AeroTEC filed under seal an unredacted opposition and certain declarations and exhibits. (*See* AeroTEC MTS at 1-2; AeroTEC Sealed Docs.) AeroTEC explained that it provided Bombardier an opportunity to review its opposition and corresponding documents before filing them in order to identify content that Bombardier believed was confidential. (AeroTEC MTS at 2.) On review, Bombardier requested that a number of documents be filed under seal. (*Id.*) Although AeroTEC disagreed with the designations, it filed the documents under seal and redacted certain portions of its preliminary injunction opposition. (*Id.*; *see also* AeroTEC Sealed Docs.)

In response, Bombardier explains that AeroTEC provided less than 24 hours to review the documents at the same time that MITAC America provided Bombardier with over 1,700 pages to review. (Pl. AeroTEC Resp. at 2.) As a result, Bombardier over-designated documents as confidential. (*Id.*) After having more time to review the documents, Bombardier now agrees that the vast majority of AeroTEC's documents should be filed publicly. (*Id.*)

Bombardier maintains, however, that two sentences in Mr. Basson's declaration should remain sealed. (*Id.*; *see also* Sealed Basson Decl. ¶ 11.) These two sentences begin at the fourth word of page 4, line 2 of the declaration, and end with the third word of page 4, line 4.[3] (*See* Sealed Basson Decl. ¶ 11.) Bombardier claims these sentences reveal information that "is not publicly available" and which Mr. Basson was aware of "only through his employment with Bombardier." (Pl. AeroTEC Resp. at 4.) Moreover, Bombardier asserts that the information "relates to Bombardier's highly valuable, highly proprietary aircraft certification procedures." (*Id.*) AeroTEC disagrees with Bombardier's designations, claiming that the first sentence at issue relates "to a simple fact that . . . is public knowledge" and neither sentence "contain[s] sensitive or proprietary information." (AeroTEC Reply at 4-5 (citing Sealed Basson Decl. ¶ 11).)

The court concludes that Bombardier has articulated compelling reasons to redact these two sentences. These sentences reveal aircraft certification procedures, which are some of the trade secrets at the heart of this litigation. (*See generally* Compl.) Although AeroTEC may be correct that one of the sentences relates to a fact that is public knowledge—that "applicants are required to submit a certification plan to the FAA and to keep it current throughout the project" (AeroTEC Reply at 5)—the information in Mr. Basson's declaration is more specific than this general principle (*see* Sealed Basson Decl. ¶ 11). Moreover, "a trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources." *United States v. Nosal*, 844 F.3d 1024,

---

[3] The court refers to the page numbers in the top-right corner generated by CM/ECF.

1042 (9th Cir. 2016). The court also notes that Bombardier has significantly narrowed the scope of its request to seal, thus alleviating much of the strain on the public's ability to access the court's records. In sum, the court concludes that the compelling reasons articulated by Bombardier to redact these two sentences outweigh policies favoring disclosure. *Kamakana*, 447 F.3d at 1178-79.

Therefore, the two sentences at issue in Mr. Basson's declaration shall be filed under seal. The remaining documents identified in AeroTEC's underlying motion to seal shall be filed publicly. Therefore, the court GRANTS in part and DENIES in part AeroTEC's motion to seal.

**D.     MITAC America's Motion to Seal**

In conjunction with filing a redacted version of its preliminary injunction opposition, MITAC America filed under seal an unredacted opposition and certain declarations and exhibits. (*See* MITAC MTS at 1-2; MITAC Sealed Docs.) MITAC America provided Bombardier with the same opportunity as AeroTEC provided to view its documents before filing. (*See* MITAC MTS at 1-2); *supra* § III.C. As with AeroTEC, Bombardier over-identified the MITAC America documents that should be sealed. (Pl. MITAC Resp. at 4-5); *see supra* § III.C. Although MITAC America disagreed with the designations, it filed the documents under seal and redacted certain portions of its preliminary injunction opposition. (MITAC MTS at 1-2.) After having more time to review the documents, Bombardier now agrees that there is no need to redact or file under seal many of MITAC America's documents. (Pl. MITAC Resp. at 5.) Specifically, Bombardier agrees that the declarations and corresponding exhibits of Jerry

Riedinger and Duc Nguyen should be filed publicly without redaction. (Pl. MITAC Resp. at 9, 11; *see also* Sealed Riedinger Decl.; Sealed Nguyen Decl.) Bombardier maintains, however, that certain portions of MITAC America's preliminary injunction opposition (MITAC MPI Resp.; *see also* Sealed MITAC MPI Resp.) and the declarations and certain corresponding exhibits of Stephen Boyd (Sealed Boyd Decl.) and Robert John Hansman, Jr. (Sealed Hansman Decl.) should remain under seal (Pl. MITAC Resp. at 8-11.) Moreover, Bombardier requests that the court order MITAC America to withdraw its publicly filed preliminary injunction opposition (MITAC MPI Resp.) and supplement its redactions to conform to Bombardier's original redaction request (Pl. MITAC Resp. at 8). For the reasons explained below, the court GRANTS in part and DENIES in part MITAC America's motion to seal.

       1. <u>MITAC America's Preliminary Injunction Opposition</u>

According to Bombardier, it originally asked MITAC America to redact the entire text starting immediately after "are explained" at page 11, line 26, and ending with the end of page 12, line 10, "but MITAC America refused."[4] (*Id.* (citing MITAC MPI Resp. at 11-12).) These lines refer to publicly available publications. (*See* MITAC MPI Resp. at 11-12.) Bombardier argues that, when read in the context of MITAC America's arguments, these passages inform the public that the referenced publications "have information relied upon successfully by Bombardier to certify its aircraft, which is information not publicly known and is at least confidential and proprietary to

---

[4] The court refers to the page numbers in the top-right corner generated by CM/ECF.

1  Bombardier's business." (Pl. MITAC Resp. at 8-9 (emphasis removed).)  Bombardier

2  argues that its trade secrets consist of a compilation of public and proprietary information

3  and that, "[i]f MITAC America is permitted to continue its piecemeal disclosures of

4  Bombardier's compilation of publicly available information used successfully for

5  certification purposes," Bombardier's trade secrets and competitive advantages will be

6  "eviscerated" before trial.  (*Id.* at 8-9.)

7  MITAC America alleges that Bombardier has not provided compelling reasons to

8  redact these passages (or to file any document under seal), in part because Bombardier

9  has failed to identify what in Bombardier's original sealed exhibits constitute a trade

10  secret.  (MITAC Reply at 3-4.)  Therefore, MITAC America argues, it is impossible for

11  Bombardier to claim that any of MITAC America's documents relate to a trade secret

12  such that they must be filed under seal.  This argument fails for two reasons.  First,

13  MITAC America makes this argument pursuant to the parties' interim protective order,

14  which only considered exhibits A-J of Mr. Burns's declaration and exhibit A of Mr.

15  Tidd's declaration to be confidential.  (*Id.*; Interim Protective Order at 4.)  But the court

16  has since entered a new protective order, which considers a much broader range of

17  documents confidential.  (*See* Protective Order at 2-3.)  Second, at this stage, Bombardier

18  has identified its trade secrets with enough specificity that the court can determine if the

19  disputed documents are related.  In its complaint, Bombardier described technical,

20  business, scientific, technical, economic, and engineering information that relate to its

21  design, development, testing, evaluation, certification, and commercialization processes

22  for its aircraft.  (*See generally* Compl.)  According to Bombardier, "[t]his whole

1  process—design, certification, production—is the heart of each [aircraft manufacturing]
2  company's competitive advantage." (*Id.* ¶ 33.)  Bombardier has cited numerous
3  documents that relate to these processes, which Bombardier alleges certain defendants
4  took while still employed at Bombardier and brought to AeroTEC, MITAC, and MITAC
5  America.  (Compl. ¶¶ 60-69.)  And Bombardier has described in detail how the
6  information in these allegedly stolen documents could assist AeroTEC, MITAC America,
7  and MITAC in certifying its own aircraft.  (*Id.*)  In short, Bombardier has sufficiently
8  described its alleged trade secrets for the court to determine if the disputed documents
9  relate to them and should therefore be filed under seal.
10         MITAC America also argues that the court should not redact the portion of its
11  preliminary injunction opposition that Bombardier disputes, which references a NASA
12  document and a textbook, because Bombardier has not previously filed these documents
13  under seal with the court.  (MITAC Reply at 5; *see also* MITAC MPI Resp. at 11-12.)
14  Again, this relates to the interim protective order.  (*See* MITAC Reply at 5.)  Under the
15  new protective order, a document may still be confidential even if Bombardier has not
16  previously filed it under seal.  (*See* Protective Order at 2-3.)  More to the point, the test
17  for sealing a record is whether there are compelling reasons to do so, *see Chrysler*, 809
18  F.3d at 1101, not whether the record is expressly referenced in the parties' protective
19  order.
20         Lastly, MITAC America takes issue with Bombardier relying on a "compilation
21  theory" of trade secrets, whereby Bombardier argues that its compilation of proprietary
22  and public information is a protectable trade secret.  (MITAC Reply at 6-7.)  MITAC

1  America recognizes that a compilation of publicly available sources can be a trade secret.

2  (*Id.*)  However, MITAC America asserts that, if Bombardier wanted to rely on this

3  theory, it needed to show that the compilation itself is a secret and "is not readily

4  ascertainable by proper means from some other source, including the product itself." (*Id.*

5  at 7 (quoting *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 674 (Wash. 1987) (quoting

6  RCW 19.108.010(4)(a)) (internal quotation marks removed)).

7        This argument puts the cart before the horse.  MITAC America essentially asks the

8  court to decide whether Bombardier has stated a viable trade secrets claim.  (*See* MITAC

9  Reply at 6-7.)  But the court does not need to reach that far at this time.  For purposes of

10 determining if compelling reasons exist to seal the disputed material, the court only needs

11 to find that the material "might . . . release trade secrets." *Kamakana*, 447 F.3d at 1179

12 (quotation omitted).  As the court explained, at this stage, Bombardier has identified its

13 alleged trade secrets—which rely in part on a compilation theory—with enough

14 specificity.  (*See* Pl. MITAC Resp. at 7-8 ("The value in Bombardier's trade secret

15 information lies . . . [in part] in the fact that certain specified publicly available

16 information was used by Bombardier with success for certification purposes." (emphasis

17 removed)).)

18       Turning to the actual material in question, the court concludes that the text in

19 MITAC America's preliminary injunction should be sealed.  The text specifically

20 identifies information used to perform tests and measurements that Bombardier claims

21 are part of its trade secrets.  Although the court recognizes that Bombardier does not

22 claim to rely on the specific publications that MITAC America cites, Bombardier asserts

that its trade secrets consist of the same information found in these publications.  (Pl. MITAC Resp. at 8-9.)  Specifically, Bombardier argues that the resources MITAC America identifies contain "information relied upon successfully by Bombardier to certify its aircraft, which is information not publicly known and is at least confidential and proprietary to Bombardier's business."  (Pl. MITAC Resp. at 8-9 (emphasis removed).)  Under the compilation theory, "a trade secret may consist of a compilation of data" that is publicly available.  *Nosal*, 844 F.3d at 1042.  It is not necessary, as MITAC America intimates, that the data be available in only one place.  *See id.*

The court appreciates MITAC America's concern that, by sealing this material, "MITAC America will be forced to defend itself from public accusations of wrongdoing essentially in private."  (MITAC Resp. at 4.)  But the court finds that MITAC America overstates this point.  Even when sealing the text, MITAC America's argument—that Bombardier's documents are filled with publicly available information—is still viewable by the public.

The court therefore concludes that the compelling reasons articulated by Bombardier to seal the disputed portions of MITAC America's preliminary injunction opposition outweigh policies favoring disclosure.

    2.  <u>Mr. Boyd Declaration and Exhibits</u>

Bombardier requests that the court seal certain portions of Mr. Boyd's declaration, as well as exhibits J, K, O, S, and T to his declaration.  (Pl. MITAC Resp. at 9-10.)  Bombardier argues that, in his declaration, Mr. Boyd references and describes the contents of documents "that the public would not know . . . and that have substantial

competitive value to Bombardier." (*Id.*)  Moreover, Bombardier claims that Mr. Boyd identifies publicly available information that "is part of the compilation of public information Bombardier maintains as a trade secret." (*Id.* at 10.)  The conclusions that Mr. Boyd spells out in his declaration, according to Bombardier, reveal details of Bombardier's proprietary information. (*Id.*)  MITAC America opposes Bombardier's request for the same reasons that it disputed redacting its preliminary injunction opposition—namely, that the exhibits or information referred to fall outside the scope of the interim protective agreement, that these documents are publicly available, and that Bombardier has not properly identified its trade secrets.  (MITAC Reply at 5-6.)  For similar reasons as above, the court rejects MITAC America's arguments and finds compelling reasons to file the disputed material under seal.  *See supra* § III.D.1.

Each section of Mr. Boyd's declaration that Bombardier requests be sealed refers to documents, information, and/or processes that form the basis of Bombardier's alleged trade secrets regarding its aircraft design and certification.  (*Compare* Sealed Boyd Decl., *with* McMahon Decl. (Dkt. # 99) ¶ 4, Ex. C ("Redacted Boyd Decl.").)  Moreover, much of the material that Mr. Boyd refers to and attaches as exhibits to his declaration contains information that Bombardier has already filed under seal.  (*See, e.g.*, Sealed Boyd Decl. ¶ 65(d).)  Further, exhibits J, K, O, S, and T allegedly contain data and information that helped form Bombardier's trade secrets, even if Bombardier did not rely specifically on these documents.  (Pl. MITAC Resp. at 10.)  As explained above, the compilation of publicly available data can be a trade secret, even if that data is publicly available in more than one place.  *See supra* § III.D.1; *Nosal*, 844 F.3d at 1042.  The court finds that

1  unsealing these exhibits, as well as the portions of Mr. Boyd's declaration that describe

2  these exhibits in detail, could, as Bombardier fears, give a competitor a roadmap to

3  Bombardier's trade secrets.  Therefore, the court concludes that Bombardier has

4  articulated compelling reasons to seal the disputed text and these exhibits and that these

5  reasons outweigh policies favoring disclosure.

6         3.  <u>Dr. Hansman Declaration and Exhibits</u>

7        Bombardier requests that the court seal certain portions of Dr. Hansman's

8  declaration as well as exhibit 7 to his declaration.  (Pl. MITAC Resp. at 9-11.)

9  Bombardier makes this request for many of the same reasons it argued Mr. Boyd's

10  declarations and exhibits should be sealed.  (*See id.*)  Bombardier's requested redactions

11  of Dr. Hansman's declaration contain schematic diagrams of various aircraft designs, as

12  well as descriptions of sealed documents' contents.  (*Compare, e.g.*, Sealed Hansman

13  Decl. ¶¶ 31-32, 40, *with* McMahon Decl. ¶ 5, Ex. D ("Redacted Hansman Decl.")

14  ¶¶ 31-32, ¶ 40.)  Likewise, exhibit 7 to Dr. Hansman's declaration identifies 32 topics

15  from exhibit A to Mr. Tidd's declaration—an exhibit that Bombardier filed under seal—

16  as well as where to find information about these topics in other publicly available

17  resources.  (*See* Sealed Hansman Decl. ¶ 43, Ex. 7.)  MITAC America's main argument

18  for unsealing Dr. Hansman's materials are the same as those for Mr. Boyd's materials:

19  all of the information discussed by Dr. Hansman that Bombardier wants to seal is

20  publicly available.  (MITAC Reply at 6.)  For the reasons discussed above, the court finds

21  this argument unavailing.  The court concludes that Bombardier has articulated

22  //

compelling reasons to seal portions of Dr. Hansman's declaration as well as exhibit 7, which outweigh policies favoring disclosure.

**E.     Summary**

The court concludes that Bombardier has articulated compelling reasons to seal the following materials:

- Exhibits A-J to the declaration of Mr. Burns. (Dkt. # 6.)

- Exhibit A to the declaration of Mr. Tidd. (Dkt. # 8.)

- The declaration of Mr. Basson. (Dkt. # 62.) In addition, the court ORDERS AeroTEC to redact the text that begins at the fourth word of page 4, line 2 of the declaration, and ends with the third word of page 4, line 4 and file this document publicly on the docket within 7 days of the date of this order. (*Id.* ¶ 11.) The properly redacted version of this document is found at Dkt. # 97-1.

- MITAC America's unredacted preliminary injunction opposition. (Dkt. # 75.) In addition, the court ORDERS MITAC America to redact additional text in its publicly filed preliminary injunction opposition and file the updated document publicly on the docket within 7 days of the date of this order. (*Id*. at 11-12.) The proper additional redactions for this document are found at Dkt. # 99-2.

- MITAC America's redacted preliminary injunction opposition. (Dkt. # 71.) The court thus ORDERS the Clerk to place Dkt. # 71 under seal.

- Mr. Boyd's declaration. (Dkt. # 77 at 1-50.) In addition, the court ORDERS MITAC America to redact certain portions of Mr. Boyd's declaration and file

1 | this document publicly on the docket within 7 days of the date of this order.
2 | The properly redacted version of this document is found at Dkt. # 99-3.

- Exhibits J, K, O, S, and T to the declaration of Mr. Boyd. (Dkt. # 77 at 858-1201, 1242-64, 1296-1412.)
- Dr. Hansman's declaration. (Dkt. # 78 at 1-21.) In addition, the court ORDERS MITAC America to redact certain portions of Dr. Hansman's declaration and file this document publicly on the docket within 7 days of the date of this order. The properly redacted version of this document is found at Dkt. # 99-4.
- Exhibit 7 to the declaration of Dr. Hansman. (Dkt. # 78 at 92-95.)

The court concludes that following materials shall be unsealed:

- The court ORDERS the clerk to unseal Dkt. ## 61, 63, 64, 76, and 79 in their entirety.
- The court ORDERS MITAC America to file publicly all of the exhibits to Mr. Boyd's and Dr. Hansman's declarations that the court has not ordered should be filed under seal.

//
//
//
//
//
//

ORDER - 19

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Bombardier's motion (Dkt. # 3), GRANTS in part and DENIES in part AeroTEC's motion (Dkt. # 58), and GRANTS in part and DENIES in part MITAC America's motion (Dkt. # 69) as described herein.

Dated this 22nd day of February, 2019.

JAMES L. ROBART
United States District Judge