Honorable James L. Robart

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

9

BOMBARDIER INC.,

　　　　　　　Plaintiff,

10

　　　　v.

11

12

MITSUBISHI AIRCRAFT CORPORATION,
MITSUBISHI AIRCRAFT CORPORATION
AMERICA INC., AEROSPACE TESTING
ENGINEERING & CERTIFICATION INC.,
MICHEL KORWIN-SZYMANOWSKI,
LAURUS BASSON, MARC-ANTOINE
DELARCHE, CINDY DORNÉVAL, KEITH
AYRE, AND JOHN AND/OR JANE DOES 1-
88,

13

14

15

16

17

　　　　　　　Defendants.

18

No. 2:18-cv-01543-JLR

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR
RELIEF UNDER FED. R. CIV. P.
12(b)(7)

**NOTE ON MOTION
CALENDAR: February 22, 2019**

19

20

21

22

23

24

25

26

27

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**INTRODUCTION**

The substance of MITAC America's Response to Bombardier's Rule 12(b)(7) Motion reveals that MITAC America has become the victim of its own strategic and tactical missteps. On January 28, 2019, with its Motion to Dismiss still pending with the Court (Dkt. No. 54), MITAC America filed its Answer and Counterclaims, dedicating over forty pages to accuse Bombardier of anticompetitive and unfair conduct (Dkt. No. 105).   Repeatedly, MITAC America was explicit and unequivocal about the fact that Bombardier allegedly directed specified conduct at, and caused harm to, not just MITAC America, but also "MITAC, MHI, AeroTEC, the current and former Bombardier employees who were the recipients of Bombardier's threats and allegations, and other individuals . . ." (*e.g., id.* at 113, ¶ 121). MITAC America even went so far as to detail how Bombardier allegedly harmed "[c]ompetition in the Regional Jet Market" (*id.* at 106, ¶ 84), "[p]urchasers of regional jets" (*id.* at 106, ¶ 85), and "[i]ndividual engineers looking for employment related to commercial jets" (*id.* at 106, ¶ 86).   The efforts to demonize Bombardier through MITAC America's unusually timed court filing were substantial to say the least.   And they did not stop there.

On that same day, MITAC Japan issued a press release as part of its full scale media campaign referencing MITAC America's counterclaims and parroting the unsubstantiated allegations that "Bombardier has engaged in a multifaceted scheme of illegal anticompetitive conduct, ***directed against Mitsubishi, its partners and employees*.**"[1] MITAC Japan also repeated MITAC America's mantra that Bombardier's actions represent "an effort by Bombardier to impede the progress of the development of the MRJ and ultimately, to delay the MRJ from entering the market." *Id.*   In other words, both MITAC entities have alleged the same far-ranging harm, arising from the same Bombardier conduct, for the same alleged purpose, affecting more than just "Mitsubishi."   Now MITAC America apparently realizes that it went too far.

---

[1] *See* Second Declaration of John D. Denkenberger in Support of Bombardier's Rule 12(b)(7) Motion (hereinafter, "Denkenberger Reply Decl."), at ¶¶ 2-3 and corresponding Exhibits A and B (emphasis added).

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

In an effort to avoid inadvertently bringing MHI into U.S. litigation, and to continue delaying MITAC Japan's involvement here, MITAC America's Opposition resorts to misguided recitations of governing law and hasty retreats from its own factual allegations. Indeed, MITAC America initially averred the following:

> 121.   Bombardier's conduct is injurious to the public interest within the meaning of RCW 19.86.093(3)(a) because it has injured persons other than MITAC America, including MITAC, MHI, AeroTEC, the current and former Bombardier employees who were the recipients of Bombardier's threats and allegations, and other individuals, including but not limited to current and former Bombardier employees, among others, who were deterred or dissuaded from seeking employment related to the MRJ.

(MITAC America's Answer and Counterclaim, Dkt. No. 105.)  But upon being made aware that its own pleading implicates MHI and others as necessary parties, MITAC America now claims that MHI's interest is merely "speculation about a future event" rather than a "legally cognizable interest" (Opposition, Dkt. No. 110, at 7). MITAC America cannot have it both ways.

MITAC America did not have to file its Answer and Counterclaims early (with its Motion to Dismiss still pending) but chose to do so.  MITAC America also did not have to explicitly allege harm to MHI, MITAC Japan, or any of the other unserved defendants in alleging its counterclaims, but it chose to do so.  The timing and manner in which MITAC America elected to proceed was its own doing.  With factual allegations assumed to be true for purposes of a motion to dismiss, MITAC America cannot now distance itself from those express allegations.  MITAC America should be held accountable for its choices.

## ARGUMENT

### A.  MITAC America Misconstrues Applicable Law

MITAC America incorrectly contends that in the context of determining whether a nonparty is a necessary party, "[t]he 'complete relief' criteria focuses on the plaintiff's injury."  (Opposition, Dkt. No. 110, at 3.)  That is simply incorrect, and it is telling that

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

MITAC America cites absolutely no authority for that proposition. More accurately, according to cases cited by MITAC America itself, the court focuses on whether complete relief can be accorded to the ***prevailing*** party—not just the plaintiff. *See*, *e.g.*, *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1014-1015 (9th Cir. 2002) ("*APHETI*") (cited at Opposition, Dkt. No. 110, at 3). As previously noted, Bombardier cannot obtain complete relief as to all of MITAC America's asserted counterclaims without the participation of MHI, MITAC Japan, Mr. Delarche, and Mr. Ayre because Bombardier will otherwise be exposed to piecemeal litigation—the exact situation Rule 19 was designed to prevent. (Bombardier Inc.'s Rule 12(b)(7) Motion for Relief ("Motion"), Dkt. No. 106, at 5-9; *see also Zenith Ins. Co. v. Texas Institute for Surgery, LLP*, Case No. 3:18-cv-0182-D, 2018 WL 5297754, at *4 (N.D. Tex. Oct. 25, 2018) (quoting *Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) ("One of the purposes . . . of Rule 19 is the avoidance of multiple litigation of essentially the same issues . . . . The defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations."); *Stroh Properties, Inc. v. City of Detroit*, Case No. 12-13219, 2013 WL 626478, at *4 (E.D. Mich. Feb. 20, 2013) (quoting Wright & Miller, *Federal Practice & Procedure* § 1602) ("Ultimately Rule 19 seeks to avoid 'needless multiple litigation and . . . inconsistent obligations.'")

MITAC America also erroneously maintains that in the context of determining whether a nonparty's interest is potentially being impaired or impeded by the instant litigation, that nonparty "must [first] claim the interest." (Opposition, Dkt. No. 110, at 3.) Again, and likewise telling, MITAC America cites no authority for this proposition. It also ignores the fact that at least MITAC Japan and MHI have ***already*** claimed an interest in MITAC America's counterclaims. With respect to the former, MITAC Japan issued its own press release expressly endorsing MITAC America's counterclaims, specifically stating its "company position that for several years Bombardier has engaged in a multifaceted scheme of illegal anticompetitive conduct, directed against ***Mitsubishi, its partners and its employees.***"

RULE12(B)(7) REPLY BR. (2:18-cv-01543-JLR) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

(Denkenberger Reply Decl., at Exhibit A (emphasis added).)  MITAC Japan's interest in the counterclaims is therefore express and unequivocal.  As for MHI claiming its interest, it has already done so by dispatching its own in-house counsel to direct MITAC America's actions in this matter.  (Denkenberger Decl., Dkt. No. 107, at ¶¶ 2-4.)  So even if MITAC America's assessment of governing law is accurate—and it does not appear to be—the issue is moot given the actions of at least MHI and MITAC Japan.

**B.  MITAC America Is Now Distancing Itself from Its Own Factual Allegations**

In maintaining that MHI is not a necessary party, MITAC America's arguments cannot be squared with the factual allegations it made in its Counterclaims.  For example, MITAC America now contends without further explanation that "because MHI does not compete with Bombardier in the regional jet market and was not a defendant in Bombardier's baseless litigation, any claim would be based on different facts and legal theories." (Opposition, Dkt. No. 110, at 8.)  Its contention is flawed and cannot be reconciled with its previous factual allegations giving rise to its Counterclaims.  Whether or not MHI competes with Bombardier in the regional jet market is entirely irrelevant for purposes of determining whether MHI is a necessary party under Rule 19.  And it does not change the fact that MITAC America previously alleged that Bombardier's conduct was aimed at MHI, among others, "to delay the MRJ program and undermine sales of the MRJ."  (Motion, Dkt. No. 106, at 6 (quoting Answer and Counterclaims, Dkt. No. 105, at Counterclaim ¶¶ 95, 105; *see also* Motion, Dkt. No. 106, at 7-8 (citing Answer and Counterclaims).)  MITAC America also alleged that MHI was harmed by such conduct.  (*Id.*)  MHI's claims therefore will be premised ***at least*** on the same facts and legal theories giving rise to MITAC America's claims—whether or not MHI competes directly with Bombardier. To now argue that MHI's claim "would be based on different facts and damages" simply ignores MITAC America's previous explicit factual allegations. (Opposition, Dkt. No. 110, at 6.)

The same is true for the corresponding counterclaims of MITAC Japan, Mr. Delarche, and Mr. Ayre.  Despite the fact that MITAC America expressly alleged the same harm to

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

MITAC Japan, Mr. Delarche, and Mr. Ayre arising from precisely the same conduct giving rise to MITAC America's counterclaims (Motion, Dkt. No. 106, at 7-8 (citing Answer and Counterclaims)), MITAC America now contends that the claims of those parties against Bombardier will involve facts and circumstances different from those giving rise to MITAC America's counterclaims. (Opposition, Dkt. No. 110, at 10-11.) Specifically, it now argues that MITAC Japan's claims will be different because "MITAC Japan and MITAC America have different MRJ roles and have taken different actions regarding that jet." (*Id.* at 10.) It similarly argues that the claims of Mr. Delarche and Mr. Ayre will be different from MITAC America's claims because "[t]he individuals are not competitors of Bombardier, and do not manufacture, sell, or service regional jets[, nor are they] trying to hire other engineers." (*Id.*) These distinctions, however, have nothing to do with Bombardier's alleged conduct—the relevant conduct at issue—and will not bar the Required Party's assertion of one or more of the same counterclaims raised by MITAC America based on the same facts and circumstances alleged.[2]

For purposes of adjudicating Bombardier's Motion, the factual allegations contained in MITAC America's counterclaims are assumed true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 590 (2007) (J. Stevens, dissenting) (quoting majority opinion in stating, "as the Court recognizes, at the motion to dismiss stage, a judge assumes 'that all the allegations in the complaint are true (even if doubtful in fact)'"). Based on MITAC America's own allegations, MHI, MITAC Japan, Mr. Delarche, and Mr. Ayre all have at least one counterclaim in common with MITAC America based on the identical facts and circumstances. (*See* Motion, Dkt. No. 106, at 6-8.) MITAC America now arguing the contrary, without rational explanation or authority in support, does not make it otherwise.

---

[2] It is worth noting that MITAC America ***must*** be aware that these factual distinctions are meaningless for purposes of whether the Required Parties can bring one or more of the same counterclaims based on the same facts giving rise to MITAC America's counterclaims. For example, nowhere in MITAC America's counterclaims did it explain or reference its own role in the development of the MRJ; likewise MITAC Japan's role in MRJ development will have no relevance to MITAC Japan's corresponding counterclaim.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

And to avoid the piecemeal litigation Rule 19 is designed to prevent, Bombardier "has the right [to invoke Rule 19] to be safe from needless multiple litigation" for the same claims. *Zenith*, Case No. 3:18-cv-0182-D, 2018 WL 5297754, at *4; *see also* 7 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1604, at 38-39 (3d ed. 2018) (explaining that a decision involving Rule 19 "has to be made in terms of the general policies of avoiding multiple litigation, providing the parties [not just the plaintiff] with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them").

### C.   MITAC America Ignores the Realities of This Case and Misses the Point

As evidenced by the misstatements of governing law, reliance on irrelevant factual distinctions, and abandonment of explicit factual allegations identified above, MITAC America's Opposition has little to no merit.  More to the point, MITAC America's Opposition is rife with confusing non-sequiturs that serve only to obfuscate and mislead.  For example, the fact that "MHI has not been accused of trade secret misappropriation" has no impact on whether MHI is a necessary party for one or more of MITAC America's counterclaims. (Opposition, Dkt. No. 110, at 6.)  It contends that Bombardier "fails to identify a 'legally cognizable' interest," and then cites to a case that actually supports Bombardier's position that it has done so.  (*Compare id.* at 7 (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) for the proposition that a party potentially obtaining the same outcome on a similar claim is merely "speculation about a future event") *with Makah*, 910 F.2d at 558 (stating only that a "legally protectable interest" must be "more than a financial stake . . . and more than speculation about a future event").)[3]  MITAC America also labels Bombardier's Motion as "bizarre" and "premature" (Opposition, Dkt. No. 110, at 9), yet it is MITAC America that prematurely answered Bombardier's Complaint while its Motion to Dismiss was still pending,

---

[3] Bombardier's identification of the Required Parties' interests corresponding to MITAC America's counterclaims is not mere "speculation about a future event"; rather, it is premised squarely on MITAC America's own factual allegations arguing that the Required Parties have their own counterclaims against Bombardier—something far more than a mere financial stake in MITAC America's counterclaims.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

thereby undermining the legitimacy of its own Motion to Dismiss while unnecessarily creating issues pertaining to necessary parties.  To the extent any arguments are "bizarre" and/or "premature," it is perhaps better attributable to the fact that MITAC America undermined its own Motion to Dismiss with a premature Answer and Counterclaims while service on remaining named defendants is not yet complete.

Further, and relatedly, MITAC America assumes that service through the Hague Convention is a foregone conclusion, yet it cannot explain why MITAC Japan continues to refuse to waive service.  Further still, the service of the individual defendants currently believed to be residing in Japan—Messrs. Delarche and Ayre—is far from guaranteed.  The personal addresses of these individuals are unknown to Bombardier and publicly unavailable. Accordingly, service is being attempted at their suspected place of employment—MITAC Japan.  It is entirely plausible that service will be ineffective under the Hague Convention for this reason, and Bombardier may ultimately be forced—by virtue of MITAC Japan's lack of cooperation—to request the Court's assistance in perfecting service.

Further still, MITAC America apparently believes that because it cannot compel MITAC Japan, Mr. Delarche, or Mr. Ayre to appear, Bombardier's requested relief is improper.  (Opposition, Dkt. No. 110, at 9-10.)  Bombardier's request has nothing to do with whether MITAC America can control the actions of other parties; nothing in Bombardier's papers suggests as much; and the argument has no place in this briefing other than to obfuscate issues.

Nothing in MITAC America's Opposition changes the following dispositive facts: (1) MITAC America raised four separate counterclaims in its Answer and Counterclaims; (2) in each counterclaim, MITAC America alleged with specificity certain facts relating to Bombardier's actions that purportedly harmed not just MITAC America, but also MHI, MITAC Japan, and/or Messrs. Delarche and Ayre; (3) if true, the facts giving rise to MITAC America's counterclaims would also give rise to corresponding counterclaims for each of MHI, MITAC Japan, and Messrs. Delarche and Ayre; (4) MHI, MITAC Japan, and Messrs.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Delarche and Ayre are not yet parties to this case; (5) MHI is already participating in this case by virtue of dispatching its own in-house counsel to direct and control MITAC America's litigation decisions here; (6) MITAC Japan has already announced its legally cognizable interest in MITAC America's counterclaims at least through press releases; (7) service of MITAC Japan is not yet complete but expected; (8) service of Messrs. Delarche and Ayre is not yet complete and is uncertain; and (9) the relationships between MHI, MITAC Japan, MITAC America, Mr. Delarche, and Mr. Ayre are direct and substantial.  (*See generally* Motion, Dkt. No. 106.)  Against these facts, the participation of all aforementioned parties in these proceedings to adjudicate MITAC America's counterclaims is proper as a matter of "equity and good conscience."  *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 (1968).

## CONCLUSION

For the foregoing reasons, and for those identified in its Motion for Relief Under Fed. R. Civ. P. 12(b)(7) (Dkt. No. 106), Bombardier respectfully requests that the Court grant its Motion.

Dated this 22nd day of February, 2019.

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS PLLC

s/ John D. Denkenberger
John D. Denkenberger, WSBA No.:  25,907
Brian F. McMahon, WSBA No.:  45,739
E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness PLLC
1201 Third Avenue, Suite 3600
Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Jerry A. Riedinger | Mack H. Shultz | Mary Z. Gaston |
| PERKINS COIE LLP | PERKINS COIE LLP | PERKINS COIE LLP |
| Email: | Email: | Email: |
| JRiedinger@perkinscoie.com | MShultz@perkinscoie.com | MGaston@perkinscoie.com |
| docketsea@perkinscoie.com | docketseapl@perkinscoie.com | docketsea@perkinscoie.com |
| lshaw@perkinscoie.com | sbilger@perkinscoie.com | jstarr@perkinscoie.com |
| sporter@perkinscoie.com | | |

| | |
|---|---|
| James Sanders | Shylah R. Alfonso |
| PERKINS COIE LLP | PERKINS COIE LLP |
| Email: | Email: |
| JSanders@perkinscoie.com | SAlfonso@perkinscoie.com |
| RBecken@perkinscoie.com | docketsea@perkinscoie.com |
| docketsea@perkinscoie.com | |
| jdavenport@perkinscoie.com | |

Attorneys for Mitsubishi Aircraft Corporation America Inc.

| | |
|---|---|
| Richard J. Omata | Mark A. Bailey |
| KARR TUTTLE CAMPBELL | KARR TUTTLE CAMPBELL |
| Email: romata@karrtuttle.com | Email: mbailey@karrtuttle.com |
| jnesbitt@karrtuttle.com | jsmith@karrtuttle.com |
| swatkins@karrtuttle.com | mmunhall@karrtuttle.com |
| | sanderson@karrtuttle.com |

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

Daneil T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com

s/John D. Denkenberger
_____

John D. Denkenberger, WSBA No.: 25,907
Brian F. McMahon, WSBA No.: 45,739

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

E. Lindsay Calkins, WSBA No.: 44,127
Christensen O'Connor Johnson Kindness<sup>PLLC</sup>
1201 Third Avenue, Suite 3600
Seattle, WA  98101-3029
Telephone:  206.682.8100
Fax:  206.224.0779
E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100