THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOMBARDIER INC., <br><br> Plaintiff, <br><br> v. <br><br> MITSUBISHI AIRCRAFT CORPORATION, MITSUBISHI AIRCRAFT CORPORATION AMERICA, INC., et al., <br><br> Defendants. | No. 2:18-cv-1543 JLR <br><br> DECLARATION OF MARY Z. GASTON IN SUPPORT OF DEFENDANT MITSUBISHI AIRCRAFT CORPORATION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM <br><br> NOTE ON MOTION CALENDAR: <br><br> May 3, 2019 <br><br> ORAL ARGUMENT REQUESTED <br><br> REDACTED VERSION |

Mary Z. Gaston declares as follows:

1. I am a partner in the law firm of Perkins Coie LLP and counsel for, inter alia, Defendant Mitsubishi Aircraft Corporation Japan ("MITAC") in this action. Unless otherwise stated, I make this declaration based on personal knowledge of the events and matters described herein or information provided to me by MITAC.

2. Attached as Exhibit A is a copy of an email chain provided to me by MITAC dated August 19, 2016 addressed to its then employee Koki Fukuda at his MITAC email

GASTON DECLARATION ISO MOTION TO DISMISS BY
MITSUBISHI AIRCRAFT CORPORATION
(NO. 2:18-CV-1543 JLR) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1. address (koki_fukuda@mitsubishiaircraft.com) which was located by MITAC in the email inbox of Koki Fukuda.

3. The content of Exhibit A includes verbatim content of the email shown at Exhibit R (Dkt. 1-27 at 9-10) of Bombardier's Complaint. Exhibit A includes additional content not shown in Exhibit R, including the content redacted by Bombardier from Exhibit R.

4. Pursuant to Local Rule 5(g)(1)(A) and (3)(A), MITAC, by and through its undersigned attorney, certifies that it met and conferred with Bombardier to try and reach an agreement on the need to file Exhibit A under seal.

5. The parties discussed the bases for the motion and explored alternatives to filing the motion in an attempt to minimize the amount of material filed under seal with the Court. MITAC's counsel pointed out that the redacted portions of Exhibit R of Bombardier's Complaint were copied verbatim from the Federal Register.

6. Attached as Exhibit B is a print-out of the relevant portion of the Federal Register, available at ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. It shows that the redacted portions of Exhibit R of Bombardier's Complaint are taken verbatim from the Federal Register.

7. The meet and confer discussion took place on the telephone on April 9, 2019 and participants were John Whitaker with Christensen O'Connor Johnson Kindness PLLC (on behalf of Bombardier) and Mary Gaston with Perkins Coie LLP (on behalf of MITAC). The parties did not reach an agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9th day of April.

*s/ Mary Z. Gaston*
Mary Z. Gaston

GASTON DECLARATION ISO MOTION TO DISMISS
BY MITSUBISHI AIRCRAFT CORPORATION
(NO. 2:18-CV-1543 JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on April 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

DATED this 9th day of April 2019.

*s/ Mary Z. Gaston*
Mary Z. Gaston, WSBA No. 27258
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: mgaston@perkinscoie.com

CERTIFICATE OF SERVICE
(NO. 2:18-CV-1543 JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# EXHIBIT A

# REDACTED



**&lt;CAUTION&gt; Re: Question for FAR25.1419 (e) - (h)**

**Keith Ayre**   宛先: 福田 弘毅
Cc:  高尾 敬, 梅原 英司, 安藤 真

2016/08/19 09:05

Dear Fukuda-san,

Thank you for your introduction and I'm very glad to be working with you very soon.  You have asked some interesting questions that deserve detailed answers and due to a lack of time I have only provided some brief answers to your questions below.  Your questions deserve much more discussion so I propose we set a meeting(s) to ensure I have answered all your questions clearly when I arrive in the office in Nagoya.

For your questions about regulation for IPS activation much of the information on the background to the rule is found on the FAA website.  I propose we spend some time reviewing this and how it applies for the MRJ Program. To help answer your question: I would like to know the history about IPS activation/deactivation regulatory requirement, here is the summary extract:

**Summary of the Final Rule**



Following FAR25.1419 (e) - (h) has been added in amendment 25-129 in 2009.

Does this means there was no certification activities related to (e) - (h) before 2009 certified aircraft?
**Yes there were activities before 2009 and when I am in the MRJ office I will be happy to discuss the details on pre-certification activities.**

Does this means there was no regulatory requirement about IPS activation/deactivation before 2009 certified aircraft?
**Due to the icing accidents that had occurred the FAA took the action to formalize certification rules applying to the ice detection systems. It introduced the 3 methods for ice detection:**
The three methods are: (1) Primary ice detection system, (2) visual cues of the first sign of ice accretion combined with an advisory ice detector, and (3) specifying conditions conducive to airframe icing.

Is there no "Primary" or "advisory" ice detector discussion with authority before 2009?
**There were both Primary and Advisory ice detection systems certified with all**

certification authorities before 2009.

How IPS activation/deactivation design been derived for each airframer?
**This is an interesting question as it leads me to ask the certification method of ice detection for the MRJ?  All other programs usually set the intended ice detection method (Primary or Advisory) early in the development program.**

I feel these requirement (e) - (h) seems common technique and seems not new design but this feeling contradicts to adding regulation FAR25.1419 (e) - (h) in 2009.


Best regards,

Keith

Sent from my iPad

On Aug 18, 2016, at 5:28 AM, 福田 弘毅 <<ins>koki_fukuda@mitsubishiaircraft.com</ins>> wrote:

Dear Keith-san,

This is Koki Fukuda, Team leader of Ice and Rain protection team.
I'm very grad to work with you.

I have question about regulation for IPS activation.

Following FAR25.1419 (e) - (h) has been added in amendment 25-129 in 2009.

Does this means there was no certification activities related to (e) - (h) before 2009 certified aircraft?
Does this means there was no regulatory requirement about IPS activation/deactivation before 2009 certified aircraft?
Is there no "Primary" or "advisory" ice detector discussion with authority before 2009?
How IPS activation/deactivation design been derived for each airframer?

I feel these requirement (e) - (h) seems common technique and seems not new design but this feeling contradicts
to adding regulation  FAR25.1419 (e) - (h) in 2009.

I would like to know the history about IPS activation/deactivation regulatory requirement.

Best regards,

K. Fukuda

--------------------------------------------------------------------------------------------------------------------
Sec. 25.1419

 Ice protection.

 [ If the applicant seeks certification for flight in icing conditions, the
airplane must be able to safely operate in the continuous maximum and
intermittent maximum icing conditions of appendix C. To establish this--]
 (a) An analysis must be performed to establish that the ice protection for
the various components of the airplane is adequate, taking into account the
various airplane operational configurations; and

(b) To verify the ice protection analysis, to check for icing anomalies, and to demonstrate that the ice protection system and its components are effective, the airplane or its components must be flight tested in the various operational configurations, in measured natural atmospheric icing conditions and, as found necessary, by one or more of the following means:
 (1) Laboratory dry air or simulated icing tests, or a combination of both, of the components or models of the components.
 (2) Flight dry air tests of the ice protection system as a whole, or of its individual components.
 (3) Flight tests of the airplane or its components in measured simulated icing conditions.
 (c) Caution information, such as an amber caution light or equivalent, must be provided to alert the flightcrew when the anti-ice or de-ice system is not functioning normally.
 (d) For turbine engine powered airplanes, the ice protection provisions of this section are considered to be applicable primarily to the airframe. For the powerplant installation, certain additional provisions of Subpart E of this part may be found applicable.
\*\*\*
[ (e) One of the following methods of icing detection and activation of the airframe ice protection system must be provided:
 (1) A primary ice detection system that automatically activates or alerts the flightcrew to activate the airframe ice protection system;
 (2) A definition of visual cues for recognition of the first sign of ice accretion on a specified surface combined with an advisory ice detection system that alerts the flightcrew to activate the airframe ice protection system; or
 (3) Identification of conditions conducive to airframe icing as defined by an appropriate static or total air temperature and visible moisture for use by the flightcrew to activate the airframe ice protection system.
 (f) Unless the applicant shows that the airframe ice protection system need not be operated during specific phases of flight, the requirements of paragraph (e) of this section are applicable to all phases of flight.
 (g) After the initial activation of the airframe ice protection system--
 (1) The ice protection system must be designed to operate continuously;
 (2) The airplane must be equipped with a system that automatically cycles the ice protection system; or
 (3) An ice detection system must be provided to alert the flightcrew each time the ice protection system must be cycled.
 (h) Procedures for operation of the ice protection system, including activation and deactivation, must be established and documented in the Airplane Flight Manual.]


 ---

====

# EXHIBIT B
# (FILED UNDER SEAL)