1

The Honorable James L. Robart

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10   BOMBARDIER, INC.,                          NO.    2:18-cv-01543-JLR

11          Plaintiff,                          **DEFENDANTS KEITH AYRE AND
                                                MARC-ANTOINE DELARCHE'S**
12          v.                                  **OPPOSITION TO BOMBARDIER'S**
                                                **MOTION FOR PRELIMINARY**
13                                              **INJUNCTION**
     MITSUBISHI AIRCRAFT CORPORATION,
14   MITSUBISHI AIRCRAFT CORPORATION            NOTED ON MOTION CALENDAR:
     AMERICA INC., AEROSPACE TESTING            May 17, 2019
15   ENGINEERING & CERTIFICATION INC.,
     MICHEL KORWIN-SZYMANOWSKI,                 *ORAL ARGUMENT REQUESTED*
16   LAURUS BASSON, MARC-ANTOINE
     DELARCHE, CINDY DORNÉVAL, KEITH
17   AYRE, AND JOHN AND/OR JANE DOES 1-
     88,
18
19          Defendants.

20

21

22

23

24

25

26

27

DEFENDANT KEITH AYRE AND MARC-ANTOINE                    **SAVITT BRUCE & WILLEY** LLP
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION                 1425 Fourth Avenue Suite 800
FOR PRELIMINARY INJUNCTION                                Seattle, Washington  98101-2272
No. 2:18-cv-01543-JLR                                            (206) 749-0500

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 3

    A.   Background ................................................................................................. 3

    B.   Evidence Bombardier Has Put Before the Court in Support of Its Motion ........ 3

    C.   The Evidence Bombardier Omits ..................................................................... 5

        1.   Keith Ayre ................................................................................................ 5

        2.   Marc-Antoine Delarche ............................................................................. 9

III. ARGUMENT ..................................................................................................... 10

    A.   The Court Lacks Personal Jurisdiction over Defendants Ayre and Delarche .. 11

    B.   Bombardier Does Not Even Allege a Connection Between Mr. Ayre and Any of the Eleven Documents Subject to Its Motion, or Any Connection Between Mr. Delarche and Five of Those Eleven Documents ....................... 11

    C.   Bombardier Does Not Own the Alleged Trade Secrets .................................... 12

    D.   Bombardier Has Failed to Demonstrate a Likelihood of Success on the Merits of Its Misappropriation Claims Against Mr. Ayre and Mr. Delarche ... 13

        1.   Bombardier has not offered evidence that either Mr. Ayre or Mr. Delarche improperly acquired, or used or disclosed its trade secrets ... 13

            a.   No evidence shows that Mr. Ayre or Mr. Delarche acquired Bombardier trade secrets by improper means ......................... 14

            b.   No evidence shows that Mr. Ayre or Mr. Delarche disclosed or used Bombardier trade secrets ............................. 18

        2.   Bombardier has failed to show the existence protectable trade secrets ................................................................................................. 20

        3.   Bombardier failed to take sufficient steps to protect its alleged trade secrets ......................................................................................... 22

    E.   The Balance of Hardships Strongly Favors Denying Bombardier's Motion ... 22

    F.   Bombardier Has Failed to Demonstrate It Will Suffer Irreparable Harm ........ 23

    G.   The Public Interest Disfavors an Injunction ................................................... 24

    H.   If an Injunction Issues, the Bond Should Be Significant ................................. 24

IV.  CONCLUSION .................................................................................................. 24

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - i
No. 2:18-cv-01543-JLR

**SAVITT BRUCE & WILLEY** LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

# TABLE OF AUTHORITIES

**Cases**

*Airfacts, Inc. v. de Amezaga,*
  909 F.3d 84 (4th Cir. 2018) ................................................................. 14

*Apple, Inc. v. Samsung Elecs. Co.,*
  No. 11-CV-01846-LHK (PSG), 2014 WL 4684842 (N.D. Cal. Sept. 19, 2014) .................. 12

*Application of Eisenberg,*
  654 F.2d 1107 (5th Cir. Unit B 1981) .................................................... 12

*CBS Broad., Inc. v. EchoStar Commc'ns Corp.,*
  265 F.3d 1193 (11th Cir. 2001) ........................................................... 19

*Citizens for Quality Educ. San Diego v. Barrera,*
  333 F. Supp. 3d 1003 (S.D. Cal. 2018) .................................................... 15

*Citizens of the Ebey's Reserve v. U.S. Dep't of the Navy,*
  122 F. Supp. 3d 1068 (W.D. Wash. 2015) .............................................. 15, 19

*Doe v. George Washington Univ.,*
  305 F. Supp. 3d 126 (D.D.C. 2018) ................................................... 15, 19

*Garcia v. Google, Inc.,*
  786 F.3d 733 (9th Cir. 2015) ............................................................. 23

*In re Estate of Ferdinand Marcos Human Rights Litig.,*
  94 F.3d 539 (9th Cir. 1996) .............................................................. 11

*JustMed, Inc. v. Byce,*
  600 F.3d 1118 (9th Cir. 2010) ........................................................... 14

*Kringstad Ironworks, Inc. v. Midwest Fabrication,* LLC,
  No. 3:17-CV-04, 2017 WL 5071310 (D.N.D. Jan. 18, 2017) ............................... 12

*Lynn v. Regents of the Univ. of Cal.,*
  656 F.2d 1337 (9th Cir. 1981) ........................................................... 12

*MAI Sys. Corp. v. Peak Comput., Inc.,*
  991 F.2d 511 (9th Cir. 1993) ............................................................. 22

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) ................................................................. 10, 19

*Mont. Silversmiths, Inc. v. Taylor Brands, LLC,*
  850 F. Supp. 2d 1172 (D. Mont. 2012) .................................................... 10

*Ruckelshaus v. Monsanto Co.,*
  467 U.S. 986 (1984) ..................................................................... 20

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ........................................................... 15

*Takiguchi v. MRI Int'l, Inc.,*
  611 F. App'x 919 (9th Cir. 2015) ........................................................ 11

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - ii
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

*Touchston v. McDermott,*
   120 F. Supp. 2d 1055 (M.D. Fla. 2000) ............................................................ 11

*Union Pac. R.R. Co. v. Mower,*
   219 F.3d 1069 (9th Cir. 2000) ........................................................................... 22

*Valeo Intell. Prop., Inc. v. Data Depth Corp.,*
   368 F. Supp. 2d 1121 (W.D. Wash. 2005) ........................................................ 24

*Vining v. Runyon,*
   99 F.3d 1056 (11th Cir. 1996) ........................................................................... 12

*Winter v. NRDC, Inc.,*
   555 U.S. 7 (2008) ............................................................................................... 10

**Statutes**

18 U.S.C. § 1839(4) ................................................................................................. 12

18 U.S.C. § 1839(5) ................................................................................................. 14

18 U.S.C. § 1839(6) ............................................................................................ 14, 16

RCW 19.108.010(1) ............................................................................................ 14, 16

RCW 19.108.010(2) ................................................................................................. 14

**Other Authorities**

11A Wright & Miller, Federal Practice & Procedure (2d ed.1995) ................................. 11

**Regulations**

83 Fed. Reg. 10,559 (Mar. 12, 2018) ..................................................................... 23

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - iii
No. 2:18-cv-01543-JLR

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## I.   INTRODUCTION

Defendants Keith Ayre and Marc-Antoine Delarche decided to leave their jobs at Bombardier and now work in Japan for Mitsubishi Aircraft Corporation.  They had every right to do so, and the skills, expertise, and general knowledge they may have gained from working at Bombardier are theirs to use as they choose.

Displeased that, along with many others, Mr. Ayre and Mr. Delarche chose to leave its employ and to work for a competitor, Bombardier now makes the harshest of accusations against them:  that they intentionally schemed to steal Bombardier trade secrets as they departed Bombardier's employ, and that they have used these trade secrets, and disclosed them to MITAC, in their work on the MRJ aircraft.

A plaintiff should have good grounds, and supporting facts, before making such an accusation that could itself derail an individual's career.  Here, however, for its motion against Mr. Ayre and Mr. Delarche, Bombardier offers zero evidence of any improper motive on their part in connection with their departures, and zero evidence of any use or disclosure whatsoever of any Bombardier information following their departure.  Instead, Bombardier relies on speculation.  Bombardier has failed to demonstrate a likelihood that it will prevail on its trade secret misappropriation claims against Mr. Ayre and Mr. Delarche, and its preliminary injunction motion against them should be denied, for at least six independent reasons:

►       Bombardier has offered no evidence that Mr. Ayre or Mr. Delarche acquired the documents at issue by improper means, or that they had any plan to steal trade secrets.  To the contrary, the evidence is that they emailed most of these materials to themselves in the course of doing, and to enable them to do, their jobs *for Bombardier*, and that there were legitimate reasons they did so with the few materials that were not sent in the performance of their Bombardier duties.  (Pp. 5–10, and 14–17, below.)

►       Bombardier has offered no evidence that Mr. Ayre or Mr. Delarche used or disclosed any of the documents at issue or their substance, or even that they ever read or

DEFENDANT KEITH AYRE AND MARC-ANTOINE DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION FOR PRELIMINARY INJUNCTION - 1
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

reviewed these materials, after leaving Bombardier.  To the contrary, all of the evidence is that they did not.  (Pp. 5–10, and 17–19, below.)

► Bombardier has offered no evidence that the documents they allege Mr. Ayre stole contain trade secrets; and the minimal evidence that the materials Mr. Delarche sent to himself were trade secrets is well rebutted.  Further, there is substantial evidence that these materials could not be useful to MITAC as it sought certification for the MRJ, and there is no evidence that either the Delarche- or the Ayre-related documents could be of any use to MITAC now, three years after their departure from Bombardier.  (Pp. 5–10, and 19–22, below.)

► Bombardier had possession of the (scant) evidence it offers against Mr. Ayre and Mr. Delarche when they left its employ in 2016.  Yet Bombardier waited two years to bring this action, and allowed months to pass before serving them, while never contacting either about these issues in the meantime.  This delay belies the contention of irreparable harm, as does the absence of any evidence that the documents at issue could be of current or going-forward use to MITAC.  (Pp. 23–24, below.)

► There is substantial evidence that Bombardier does not even own the trade secrets it alleges in this case, and thus lacks standing to seek relief.  Bombardier's own annual reports state that it transferred ownership of all assets of the CSeries aircraft to a partnership called CSALP, which now owns the intellectual property associated with the CSeries.  Bombardier holds only a minority interest in this partnership.  (Pp. 12–13, below.)

► And, not least, the Court lacks personal jurisdiction over Mr. Ayre and Mr. Delarche, who are French and Canadian citizens who currently live and work in Japan.  All of their activities for which Bombardier presents any evidence took place in Quebec.  There is no evidence that Mr. Delarche did anything wrongful during the short time he lived and worked in Washington.  And Mr. Ayre never lived here and never worked here; his only arguably relevant connection to this state is a single job interview at a hotel during a two-night stay at which no documents were exchanged or discussed.  (P. 11, below, and Ayre and Delarche's Motion to Dismiss [ECF No. 158], at pp. 6–7, and 7–17.)

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 2
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## II.    STATEMENT OF FACTS

**A.    Background**

Keith Ayre and Marc-Antoine Delarche are current employees of Mitsubishi Aircraft Corporation ("MITAC") in Nagoya, Japan, and they are both former employees of Bombardier, Inc.  (Declaration of Keith Ayre, submitted herewith, ¶¶ 1, 3, 4; Declaration of Marc-Antoine Delarche, submitted herewith, ¶¶ 1, 3, 7.)  Mr. Ayre worked for Bombardier for 32 years.  His last day with Bombardier was August 26, 2016.  (Ayre Decl. ¶ 4.)  Mr. Delarche worked for Bombardier for approximately eleven years, and his last day as a Bombardier employee was May 18, 2016.  Mr. Delarche then worked for Aerospace Testing Engineering & Certification Inc. ("AeroTEC") for about two years before he applied for and obtained a job as an engineer at MITAC.  (Delarche Decl. ¶¶ 5–7.)

Both Mr. Ayre and Mr. Delarche were named as defendants in Bombardier's original complaint in this action, filed on October 19, 2018, over two years after each had left Bombardier to work for its competitors.  (ECF No. 1.)  Bombardier served its complaint on Mr. Ayre and Mr. Delarche on March 19, 2019.  Bombardier then served its motion for a preliminary injunction on them on April 4, 2019.  (ECF No. 123.)  Bombardier has since filed a First Amended Complaint (ECF No. 143, hereafter the "FAC"), and on May 7, 2019 revised its preliminary injunction motion.  (ECF No. 146, the "Motion" or "Mot.")

**B.    Evidence Bombardier Has Put Before the Court in Support of Its Motion**

Bombardier's Motion includes many allegations about the MRJ's history and MITAC's recruiting efforts, but only one paragraph each to evidence concerning Mr. Ayre and Mr. Delarche.  (Mot. at 5–6.)  The only evidence submitted regarding Mr. Delarche is Exhibits N and O to the FAC, paragraphs 8 through 20 of the Declaration of Daniel Burns (ECF No. 5), his "Code of Ethics" acknowledgement form (FAC Ex. L), and a printout of Mr. Delarche's LinkedIn profile (ECF No. 143-1, at Ex. 4).  (*See* Mot. at 5.)

Exhibits N and O are copies of two emails that Mr. Delarche sent from his Bombardier email to his personal email on May 6, 2016.  Exhibits N and O indicate that each of those two

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 3
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1    emails attached three PDF documents.  In his declaration, Daniel Burns purports to describe the

2    contents of the PDFs and their importance to Bombardier.  (Burns Decl. ¶¶ 8–20.)  Exhibit N

3    includes a forwarded email that Mr. Delarche received on May 3, 2016, on his Bombardier

4    work email account.  The subject of the email is "Review of CS300 Reports," and the sender is

5    Charles Tatossian, a Bombardier employee.  The body of the email in Exhibit N is in French,

6    and Bombardier has not offered an English translation of the email.

7        The only evidence Bombardier offers against Mr. Ayre is Exhibit S to the FAC and a

8    printout of his LinkedIn profile (ECF No. 143-1 Ex. 6).  (Mot. at 5–6.)  Exhibit S itself contains

9    six documents, only two of which Bombardier even alleges contain trade secrets.  (*See* FAC

10   ¶¶ 74, 76 & 77.)  One is an email dated August 24, 2016, which was sent from Mr. Ayre's

11   Bombardier email to his personal email.  That 2016 email forwards an email dated December 9,

12   2013, from David Johns of Transport Canada to Mr. Ayre's Bombardier email, with the subject

13   "Acceptable Use of Alternate [REDACTED]."  (*Id*. Ex. S, at 7–8.)  The 2013 email is heavily

14   redacted.  Bombardier has not put an unredacted version of the 2013 email into the record.

15       The other is an email dated August 18, 2016, which was sent from Mr. Ayre's

16   Bombardier email to his personal email.  (*Id*. at 9–11.)  Bombardier has redacted a block of text

17   in the email that appears under the heading, "Summary of the Final Rule."  (*Id*. at 9.)

18   Bombardier has not submitted an unredacted version of this email either, but MITAC has

19   submitted, under seal, an unredacted copy of a later version of this email.  (Exhibit A to the

20   Declaration of Mary Z. Gaston, ECF No. 127.)  Defendants Ayre and Delarche and their

21   counsel do not have access to the unredacted version, but MITAC describes the redacted

22   portion as "taken from the Federal Register."  (ECF No. 126, at 18 n.6.)

23       This is the whole of the evidence proffered against Mr. Ayre and Mr. Delarche.  The

24   remainder of the declarations and exhibits consists either of speculative allegations unsupported

25   by evidence, or evidence about other parties.  Plaintiff might argue that some of its speculation

26   is instead a "reasonable inference" from this evidence, but this is all of the actual evidence.

27

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 4
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

**C.     The Evidence Bombardier Omits**

Bombardier offers evidence that Mr. Ayre and Mr. Delarche sent the emails in Exhibits N, O, and S of the FAC.  They do not deny that they did so.  Bombardier does not, however, offer any evidence of the reasons why they did so, or what use they made of the documents sent.  That evidence is set forth in the Ayre and Delarche Declarations.

**1.     Keith Ayre**

Mr. Ayre's declaration addresses each of the documents contained in the FAC's Exhibit S and Bombardier's allegations that he misappropriated its trade secrets.

*2013 email from Transport Canada*.  The 2013 email from David Johns of Transport Canada ("TCCA," Canada's analog of the FAA) that Mr. Ayre forwarded to himself on August 24, 2016 was never shared with anyone outside of Bombardier, and in any event does not contain any trade secrets.  (Ayre Decl. ¶¶ 26–29.)  Mr. John's email responds to a request Mr. Ayre ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████.  That guidance was issued in 1994 and is publicly available on the FAA's website.[1]  The 2013 email discusses the ███████████, which are not proprietary to Bombardier or otherwise "secret"; instead, ████████████████████████████████

███████████████████.  Further developments made the substance of the 2013 email generally known to industry participants before August 2016.  (*Id.* ¶¶ 23, 24, 27, 28.)

Mr. Ayre did not send himself the email for any improper purpose.  He had been asked by other Bombardier engineers to attend an exit meeting to discuss both his ongoing work and pending issues and concerns.  In preparation for this meeting he reviewed his email, where all of us store lots of information.   (*Id.* ¶¶ 14, 49.)  In so doing he came across the December 2013 email, and sent it to himself as a reminder for two things:  first, to reach out to the sender of that email, Mr. Johns of Transport Canada, to let him know that Mr. Ayre was leaving Bombardier; and second, to remind himself to suggest, once he began working for MITAC, that

[1] ████████████████████████████████████████████████████████████

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 5
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

a MITAC employee join the International Aircraft System Fire Protection Forum, which dealt with issues like those discussed in the 2013 email.  (*Id*. ¶ 25.)  This forum is open to anyone in the international community in industry, government, and academia with an interest in aircraft fire protection systems; again, presentations, minutes and attendee lists for the forum are publicly available on the FAA's website.[2]  (*Id*.)  Mr. Ayre then did not access this email after departing Bombardier.  (*Id*. ¶¶ 26, 29.)  There is no evidence otherwise.

*Draft August 18, 2016 email addressed to Fukuda-san*.  The draft email addressed to Fukuda-san, which Mr. Ayre sent from his Bombardier account to his personal account, does not even arguably contain any trade secrets.  Mr. Koki Fukuda, referred to as Fukuda-san, had sent Mr. Ayre an email in which he stated that he "would like to know the history about IPS activation/deactivation regulatory requirement."  (FAC Ex. S, at 9.)  "IPS" is an abbreviation for "ice protection system."  The "regulatory requirement" references governmental regulations, not Bombardier secrets.  In his draft response, Mr. Ayre generally and briefly addresses the history of the regulations, and he notes more information on this subject is on the FAA's website.  (Ayre Decl. ¶¶ 32–34.)  Mr. Ayre also provided a quotation of the FAA's own summary of the rule, which Bombardier has redacted from Exhibit S even though it is in the Federal Register.  (*Id*.; ECF No. 127, at 18 n.6 & Ex. B.)

None of this information is proprietary to Bombardier or concerns Bombardier-specific activities.  Bombardier asserts that Mr. Ayre "began assisting MITAC Japan with MRJ certification" by responding to Fukuda-san's questions about the history of the ice-protection regulations.  (*See* ECF No. 123, at 6.)  We disagree that there is anything wrongful in Mr. Ayre's general discussion about the government's regulations (*see* Ayre Decl. ¶ 37), but even if this discussion did provide material assistance to MITAC, it nonetheless did not disclose or even relate in any manner to any alleged trade secret of Bombardier.

*Email addressed to "Frederic" regarding FIDEX*.  Bombardier alleges that on the "same day" Mr. Ayre forwarded the 2013 Transport Canada email to himself (i.e., August 24,

---

[2] *See* <https://www.fire.tc.faa.gov/systems.asp>.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 6
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

2016), he "forwarded more trade secret information to his personal account." (ECF No. 146, at 6.)  For support, the Motion cites paragraph 79 of the FAC:

> [O]n August 24, 2016, two days prior to his last day at Bombardier, Defendant Ayre—using Bombardier equipment and from Bombardier facilities—sent an email addressed to an individual named "Frederic" (who upon information and belief was a MITAC employee or contractor during the relevant time period) disclosing Bombardier confidential and/or trade secret information pertaining to Fire Detection and Extinguishing ("FIDEX") and related System Safety Analysis ("SSA").  On information and belief, Mr. Ayre's disclosures and teachings to "Frederic" in August 2016 led to an improved redesign of the MRJ now subject to certification efforts.

Bombardier did not include a copy of the email as an exhibit.  Its sole "evidence" of the allegation is a paragraph of its own complaint.

It appears that Bombardier simply has made up the material parts of this allegation.  It is true that Mr. Ayre sent an email to himself on August 24, and that the email he sent to himself cut-and-pasted an email to someone named "Frederic."  But no email was sent to Frederic that day, or thereafter.  MITAC has filed a copy of the actual email, which makes clear that Mr. Ayre sent the email to himself.  (Declaration of Jerry Riedinger, dated May 13, 2019, Ex. C.)

Moreover, Bombardier declines to offer any "information" underlying its allegation that "Frederic" worked for MITAC.  And, in fact, that allegation is flat wrong.  "Frederic" was not "a MITAC employee or contractor."  He is instead a man named Frederic Deschamps, who worked *at Bombardier* as a safety engineer until sometime during the summer of 2016.  (Ayre Decl. ¶ 45.)  Although Mr. Deschamps technically was not a Bombardier employee but was instead a contractor, he had a Bombardier email address, wore a Bombardier badge, and sat and worked with Bombardier employees.  Mr. Deschamps was a safety engineer at Bombardier responsible for the CSeries' fire protection system safety assessment.  Before sending this email to himself, and well before he accepted a job with MITAC, Mr. Ayre had raised concerns within Bombardier about the design of the CSeries' fire detection and extinguishing ("FIDEX") system relating to "single failure" issues.  (*Id.* ¶¶ 46, 47.)

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 7
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   Mr. Ayre had raised this matter with Mr. Deschamps in late 2015 or early 2016.  Mr.

2   Ayre then came across his earlier "FIDEX" email to Mr. Deschamps—"Frederic"—in his

3   preparation for his exit meeting to address precisely this kind of issue.  Mr. Ayre then copied

4   and sent this text to himself, to add this issue to the list he planned to raise at the meeting.  (*Id.*

5   ¶ 49.)  Mr. Deschamps had already departed Bombardier by this time, and Mr. Ayre was about

6   to depart, and he wanted to ensure this issue was not neglected by those who remained.  Mr.

7   Ayre did in fact raise this issue, among others, during his exit meeting on his last day at

8   Bombardier, August 26, 2018.  (*Id.*)

9   In short, Mr. Ayre sent this email to himself as part of his work at Bombardier, on

10   Bombardier issues.  There is no evidence suggesting anything else; the allegation suggesting

11   this information was used at MITAC is false.  Mr. Ayre has never disclosed this email, or the

12   information it contains, to anyone outside of Bombardier, including to MITAC.  (*Id.* ¶¶ 51, 52.)

13   Finally, the facts refute Bombardier's unsupported allegation that this information

14   would have been helpful for the MRJ's design.  There is no testimony or exhibit purporting to

15   support this contention.  When Mr. Ayre arrived at MITAC, it already had a FIDEX system for

16   the MRJ.  (*Id.* ¶ 53.)  Furthermore, the MRJ's FIDEX system is different from the CSeries' and

17   does not have the same issues addressed in the Deschamps email.  (*Id.*)  Not only did Mr. Ayre

18   not share the email or its contents with anyone at MITAC, the FIDEX system it discusses has

19   nothing to do with the redesign related to the MRJ's avionics bay, described in Exhibits 26

20   through 28 of the Declaration of John D. Denkenberger (ECF No. 143-1).

21   Mr. Ayre also addresses, in his declaration, the other documents in Exhibit S to the

22   FAC.  (Ayre Decl. ¶¶ 39–41.)  These are: an acknowledgment, dated February 1, 1991, that Mr.

23   Ayre had received Bombardier's Code of Ethics; an email dated July 13, 2016, attaching a

24   signature page of a MITAC employment agreement; and an email dated July 11, 2016,

25   containing Mr. Ayre's edits to MITAC's description of work for his potential new job.

26   Bombardier understandably does not allege that any of those documents contain trade secrets.

27

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 8
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

2.      Marc-Antoine Delarche

Mr. Delarche's declaration addresses Bombardier's allegations against him, which are that he misappropriated its trade secrets by sending to himself six CSeries certification reports. In sum, Mr. Delarche did email six PDF documents to himself on May 6, 2016, but he did so in the performance of his job for Bombardier, and has not since used or disclosed those documents or any trade secrets they might arguably contain.  (Delarche Decl. ¶ 21.)

The three reports that were attached to the email comprising Exhibit N to the FAC concern the CS300 aircraft.  These reports are non-final drafts.  All three of the CS300 draft reports generally concern "air data": data about airspeed, altitude, and angle of attack, which is gathered by probes and processed by a computer on the aircraft.  (*Id*. ¶¶ 23–24.)  The three certification reports attached to the email in Exhibit O concern the CS100 aircraft, and are the final versions that Bombardier had submitted to Transport Canada.  The subject of the CS100 reports corresponds to the subject of the CS300 draft reports.  (*Id*. ¶¶ 25–26)

Exhibit N shows that on May 6, 2016, Mr. Delarche attached the three CS300 draft reports to an email that he forwarded from his Bombardier email to his personal email.  The forwarded email, dated May 3, 2016, was sent to Mr. Delarche by Charles Armand Tatossian, at the time also an engineer at Bombardier.  Mr. Tatossian's area of focus was air data, and he prepared the three CS300 draft reports.  (*Id*. ¶¶ 27, 28.)  The body of the May 3 email is in French.  A certified English translation is attached as Exhibit 3 to the accompanying Declaration of Jacob P. Freeman (at p. 3).  As translated Mr. Tatossian wrote to Mr. Delarche, "In order to lessen Charles' workload, I am going to put you as **Checker** for my CS300 reports. It seems to me that this was the plan from the beginning for your candidacy as future DAD." (*Id* ¶ 30.)

The "Charles" Mr. Tatossian referenced is Charles Fichet, who is copied on the May 3 email.  At this time, Mr. Fichet was a Transport Canada "Design Approval Designee", or a "DAD"—a person who works for an aircraft manufacturer and to whom Transport Canada has delegated certain responsibilities in connection with the aircraft-certification process.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 9
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

(Delarche Decl. ¶¶ 31, 32.)  One of a DAD's responsibilities is to review and, if appropriate, sign a certification report to confirm its compliance with applicable requirements.  In May 2016, Delarche was a "candidate" DAD who lacked authority to provide a final sign-off but could serve as the "checker" of the report for accuracy.  (*Id*. ¶¶ 32, 33.)

Unlike Mr. Tatossian and Mr. Fichet, Mr. Delarche's specialty was not air data.  (*Id*. ¶ 35.)  Normally, a certification report would be reviewed by an engineer with particular expertise in its particular subject matter.  But Mr. Delarche was asked to review these draft reports because of Mr. Fichet's heavy workload, and Mr. Delarche emailed the reports to his personal email so he could work on this at home.  He also emailed to himself the three final CS100 certification reports on the same subjects as the CS300 draft reports because these, having been signed-off on by a DAD, would help in reviewing and checking the CS300 reports. This kind of use of similar reports by a checker is common.  (*Id*. ¶¶ 35–37, 39.)

Mr. Delarche has not read, reviewed, or opened these documents since departing Bombardier.  Mr. Delarche has not disclosed these reports to anyone outside of Bombardier, nor has he ever used the reports or their contents in connection with the MRJ, or disclosed their contents to anyone outside of Bombardier, including anyone at AeroTEC, MITAC, or MITAC America.  (Delarche Decl. ¶¶ 44, 45.)

## III.    ARGUMENT

For a preliminary injunction, a plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal quotation marks omitted).

"[I]n determining whether to grant a preliminary injunction, the Court must go beyond the allegations to the evidence."  *Mont. Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 10
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

2d 1172, 1184 (D. Mont. 2012) (denying motion for preliminary injunction in trade secret case where evidence was "equivocal"); *see also Takiguchi v. MRI Int'l, Inc.*, 611 F. App'x 919, 921 (9th Cir. 2015) ("the mere allegations of a complaint will never suffice to establish the prerequisites for obtaining a preliminary injunction").  Allegations made on "information and belief," even if in a verified pleading, are "insufficient to support a motion for preliminary injunction." *Touchston v. McDermott*, 120 F. Supp. 2d 1055, 1059 (M.D. Fla. 2000), quoting 11A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 2949 (2d ed.1995), *aff'd*, 234 F.3d 1133 (11th Cir. 2000).[3]

**A.    The Court Lacks Personal Jurisdiction over Defendants Ayre and Delarche**

Mr. Ayre and Mr. Delarche have moved to dismiss the claims against them on grounds that the Court lacks personal jurisdiction over them.  (ECF No. 158, at pp. 7–17.)  They also earlier asserted and preserved this defense.  (ECF No. 135.)  We incorporate here the points and authorities in our motion to dismiss.  Because the Court lacks jurisdiction, it may not issue a preliminary injunction against these defendants.  *See, e.g., In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 545 (9th Cir. 1996) (injunction against party "in the absence of personal jurisdiction… would be futile, as the court would be powerless to enforce its injunction" and a "court should not issue an unenforceable injunction").

**B.    Bombardier Does Not Even Allege a Connection Between Mr. Ayre and Any of the Eleven Documents Subject to Its Motion, or Any Connection Between Mr. Delarche and Five of Those Eleven Documents**

Bombardier's Motion asks the Court to enjoin Mr. Ayre and Mr. Delarche from "[u]sing, accessing, imitating, copying, disclosing, or making available to any person or entity" eleven documents "and/or any information or data contained therein," or "[u]sing, accessing,

---

[3] Moreover, although the FAC purports to be verified, the verification is qualified and limited.  In the verification, Bombardier employee Fassi Kafyeke states that he "ha[s] personal knowledge of the facts *concerning and relating to Bombardier, Inc.* as set forth in the foregoing Verified Complaint."  (FAC p.117, emphasis added.)  This renders unclear to which allegations the verification applies, but it certainly is not all of them, and the qualification would seem to exclude from the verification all allegations about the use or disclosure of materials after departure from Bombardier.  To the extent Bombardier's allegations "concern[] and relat[e] to" Mr. Ayre and Mr. Delarche and their actions, rather than Bombardier's, it appears they are not covered by the verification.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 11
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

imitating, copying, disclosing, or making available to any person or entity any information derived from the information" contained in the eleven specified documents.  (ECF No. 146-1.)

Of the eleven documents, Bombardier alleges that Mr. Delarche misappropriated six, listed as items c through h in Bombardier's proposed injunction.  (ECF No. 146-1, at 2; FAC ¶ 69, referencing the certification reports.)  But Bombardier does not even allege—much less present evidence showing—any connection at all between Mr. Delarche and the other five of the eleven documents.  Instead, Bombardier alleges that the other five were misappropriated by others.  (*Compare* ECF No. 146-1, at 2, items a & b, *with* FAC ¶ 68; *compare* ECF No. 146-1, at 2, items i–k, *with* Complaint ¶¶ 71–73.)  There is no evidence, or even allegation, that Mr. Delarche took, possesses, or has access to these five documents.  (*See* Delarche Decl. ¶ 18.)

Furthermore, Bombardier does not present any evidence or even any allegation that Mr. Ayre took, possesses, or has access to *any* of the eleven documents.  (*See* Ayre Decl. ¶ 18.)  The Court should deny Bombardier's motion for this reason alone.  *Kringstad Ironworks, Inc. v. Midwest Fabrication*, LLC, No. 3:17-CV-04, 2017 WL 5071310, at *2 (D.N.D. Jan. 18, 2017) (denying motion for temporary restraining order in trade secret misappropriation action where "there is no evidence that the defendants are in possession" of the trade secret material).[4]

## C.  Bombardier Does Not Own the Alleged Trade Secrets

Bombardier does not present evidence that it owns the alleged trade secrets at issue, and therefore lacks standing to prosecute this action.  *See* 18 U.S.C. § 1839(4) (defining "owner"

---

[4] Further, Bombardier has not served on Mr. Ayre or Mr. Delarche, and their counsel does not have, any of these eleven documents.  (*See* Freeman Decl. ¶ 6 & Ex. 4.)  Apparently recognizing that it may not rely upon evidence not timely provided to an opposing party, Bombardier does not cite to any of those documents in its Motion, although it did so in its motion against the earlier served defendants, on whom it did serve the documents.  (*Id.* ¶ 7.)  Instead, here Bombardier cites only to the declarations of Mr. Burns and David Tidd, which purport to summarize what these documents say.  (Mot. at 5, 11.)  These descriptions are plain hearsay that cannot save their motion:  it is a denial of due process to consider evidence that has not been provided the party against whom it is offered.  *E.g. Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK (PSG), 2014 WL 4684842, at *7 (N.D. Cal. Sept. 19, 2014) (disapproving of magistrate judge's *ex parte* review of one party's documents to determine merits of dispute regarding scope of protective order); *Lynn v. Regents of the Univ. of Cal.*, 656 F.2d 1337, 1346 (9th Cir. 1981) (reversing summary judgment where district court reviewed one party's evidence *in camera*).  "The right to due process 'encompasses the individual's right to be aware of and refute the evidence against the merits of his case.'"  *Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996), quoting *Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. Unit B 1981).  Bombardier's failure to provide Ayre and Delarche with the eleven documents that are the subject of its proposed relief is fatal to its motion, a separate and additional ground for its denial.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 12
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   with respect to trade secret as "the person or entity in whom or in which rightful legal or

2   equitable title to, or license in, the trade secret is reposed").  The gravamen of Bombardier's

3   allegations is that the defendants misappropriated trade secret information regarding

4   Bombardier's CSeries aircraft and have used that information to certify MITAC's MRJ.

5       But the evidence indicates that Bombardier no longer either owns or controls the

6   CSeries program or the assets of that program.  On June 30, 2016, Bombardier and the

7   Government of Quebec (through the firm "Investissement Quebec") formed the CSeries

8   Aircraft Limited Partnership ("CSALP") and, according to Bombardier's 2016 financial report,

9   Bombardier "transferred the assets, liabilities and obligations of the *C Series* aircraft program"

10  to CSALP.  For its $1 billion investment, the Government of Quebec received a 49.5% stake in

11  CSALP, while Bombardier held 50.5%.  (Freeman Decl. Ex. 1, at 72.)

12      Then, Bombardier and Airbus entered into an agreement whereby Airbus obtained a

13  50.01% interest in CSALP, leaving Bombardier with 33.55% and Investissement Quebec with

14  16.44%.  When the transaction closed on July 1, 2018, Airbus acquired control of CSALP, and

15  thus the CSeries program.  Airbus has even rebranded the CSeries as the Airbus 220.  (*Id*.

16  Ex. 2, at 83.)

17      CSALP, not Bombardier, now owns the CSeries aircraft program along with its assets,

18  including intellectual property.  Bombardier is simply a minority owner in the new entity.  For

19  this reason alone, the motion should be denied:  Bombardier lacks standing, and thus is not

20  entitled to injunctive relief, regarding alleged trade secrets it apparently does not own.

**D.**      **Bombardier Has Failed to Demonstrate a Likelihood of Success on the Merits of
            Its Misappropriation Claims Against Mr. Ayre and Mr. Delarche**

       **1.**      **Bombardier has not offered evidence that either Mr. Ayre or Mr. Delarche
                    improperly acquired, or used or disclosed its trade secrets**

24      The DTSA and the WUTSA provide for civil liability for acts of "misappropriation,"

25  which both define as "(A) *acquisition* of a trade secret of another by a person who knows or has

26  reason to know that the trade secret was acquired by *improper means*," or "(B) *disclosure* or

27  *use* of a trade secret of another without express or implied consent by a person who," among

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 13
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

other things, "(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was… (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5) (emphasis added); *accord* RCW 19.108.010(2). For the acquisition prong, "improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." 18 U.S.C. § 1839(6); *accord* RCW 19.108.010(1).

Bombardier has not put before the Court any evidence that either Mr. Ayre or Mr. Delarche improperly acquired, or used or disclosed any Bombardier trade secrets.

      **a.**      **No evidence shows that Mr. Ayre or Mr. Delarche acquired Bombardier trade secrets by improper means**

To prove misappropriation under the "acquisition" prong, a plaintiff must prove both that the defendant "acquired" the plaintiff's trade secret, and that such acquisition was by "improper means." 18 U.S.C. § 1839(5); RCW 19.108.010(2). Bombardier fails to do so.

The Ninth Circuit has held that an employee who comes to have his employer's trade secret information in the course of his employment has not improperly "acquired" that information for purposes of statutory misappropriation. In *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010), the Ninth Circuit analyzed whether a former employee improperly acquired trade secret source code under Idaho's version of the UTSA, which defines "misappropriation" identically to the DTSA and the WUTSA. *Id.* at 1129. The court held that the defendant "did not 'acquire' the source code through improper means because he already had possession of it as an employee." *Id.*; *see also Airfacts, Inc. v. de Amezaga*, 909 F.3d 84, 98 (4th Cir. 2018) (plaintiff failed to prove misappropriation of trade secrets in documents defendant was authorized to access and sent to his personal email to work remotely).

In its April 15, 2019 Order on other parties' motions to dismiss, the Court rejected Defendant Basson's argument that *JustMed* required his dismissal from the case. The Court stated: "Unlike the defendant in *JustMed*, Mr. Basson did not already possess these documents

DEFENDANT KEITH AYRE AND MARC-ANTOINE DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION FOR PRELIMINARY INJUNCTION - 14 No. 2:18-cv-01543-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1    *as an* employee.  On the contrary, he came into possession of the documents on his personal

2    email precisely because he was no longer going to be a Bombardier employee." (ECF No. 136,

3    at 23.)  In addition, the Court observed that "Bombardier alleges that Mr. Basson emailed these

4    documents to himself on his last day at Bombardier—at which point he could not reasonably be

5    taking the documents home in order to perform work for Bombardier."  (*Id.* at 25.)

6         The Court's ruling on Defendant Basson's motion to dismiss is inapposite here, for two

7    reasons.  First, the Court may accept inferences favorable to the pleading party in assessing a

8    motion to dismiss, but the rule is different in assessing the actual evidence required to support a

9    preliminary injunction.  And second, the facts are different:  here there is actual evidence that

10   Mr. Ayre and Mr. Delarche both came to possess the documents at issue in the course of their

11   employment, and sent them to personal email accounts for the purpose of performing their

12   duties for Bombardier—i.e., they emailed the documents to themselves in the due course of

13   their employment.  We address each point in further detail.

14        On a motion to dismiss, a court may allow the plaintiff's claim to go forward if its

15   allegations allow for "two alternative explanations, one advanced by defendant and the other

16   advanced by plaintiff, both of which are plausible."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

17   Cir. 2011).  But that is not the case on a motion for a preliminary injunction, because "[m]ere

18   allegations are insufficient for a plaintiff to meet his or her burden at the preliminary injunction

19   stage."  *Citizens for Quality Educ. San Diego v. Barrera*, 333 F. Supp. 3d 1003, 1043 n.29 (S.D.

20   Cal. 2018).  "It is the party moving for a preliminary injunction that bears the burden of

21   establishing a likelihood of success on the merits.  This cannot be accomplished merely by

22   asking the Court to draw inferences in its favor rather than demonstrating the existence of

23   meaningful facts supporting its claim."  *Citizens of the Ebey's Reserve v. U.S. Dep't of the

24   Navy*, 122 F. Supp. 3d 1068, 1083 (W.D. Wash. 2015); *see also Doe v. George Washington

25   Univ.*, 305 F. Supp. 3d 126, 134 (D.D.C. 2018) ("[A] plausible inference is not sufficient to

26   show likelihood of success on the merits as required for a preliminary injunction.")  Bombardier

27   must put forward actual evidence of acquisition by improper means, and it has not done so.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 15
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

Second, there is actual evidence here that shows affirmatively that neither Mr. Ayre nor Mr. Delarche obtained the documents and information in question by improper means:

*2013 email from Transport Canada*.  Mr. Ayre undisputedly received the 2013 email from Mr. Johns of Transport Canada in the normal course of his employment.  (Mot. at 6; FAC Ex. S, at 7–8.)  Bombardier declined to offer any evidence about why Mr. Ayre forwarded that email to himself; the only evidence is Mr. Ayre's testimony that he did so as a reminder to himself in his last days of work, when he was reviewing his email in performing requested Bombardier work.  (Ayre Decl. ¶¶ 25, 49.)  "Improper means" is defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage."  18 U.S.C. § 1839(6); *accord* RCW 19.108.010(1).  Reviewing one's email before leaving a job is not "theft, bribery, [or] misrepresentation."

Nor did Mr. Ayre obtain the 2013 email through breach of a duty to maintain its secrecy. Bombardier has not put before the Court the 1991 Code of Ethics allegedly applicable to Mr. Ayre, but Bombardier alleges "upon information and belief" that the 1991 document required that Mr. Ayre "keep secret" and not "divulge or transmit to third parties: information, knowledge or documents designated as secret, confidential or privileged."  (FAC ¶ 74.)  It does not allege a prohibition of sending—through email or otherwise—Bombardier confidential information to oneself, so long as it is kept "secret"; and the actual evidence is that emailing company documents to personal email accounts was not uncommon at Bombardier.  (Basson Declaration [ECF No. 117] ¶ 8; Dorneval Declaration [ECF No. 64] ¶ 4; Delarche Decl. ¶ 38; Ayre Decl. ¶ 30.)

*Draft August 18, 2016 email addressed to Fukuda-san*.  There is no colorable argument that the August 18, 2016 draft email to Fukuda-san, with its block quotation from the FAA's own rule summary as it appears in the Federal Register (*see* ECF No. 126, at 18 & n.6), contains Bombardier trade secrets.  (P. 4, above.)

*Email addressed to "Frederic" regarding FIDEX*.  Bombardier does not allege—let alone present evidence—that Mr. Ayre improperly acquired the "FIDEX" email.  The evidence

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 16
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   in fact shows that Mr. Ayre sent that email to himself in preparation for his exit interview as

2   part of his employment.  (Ayre Decl. ¶¶ 14, 49.)

3       *Air data certification reports*.  Mr. Delarche came to possess the six air data

4   certification reports for the CS100 and the CS300 properly, when a colleague asked him to

5   review and check the CS300 reports as part of his work for Bombardier.  Mr. Delarche emailed

6   the reports to his personal email account so that he could work on them at home.  (Delarche

7   Decl. ¶¶ 21, 34, 37.)  All of this is clear enough on the face of the email that Bombardier itself

8   attached to its pleading.  (Freeman Decl. Ex. 3, at 3 [English translation of FAC Ex. N].)

9       To imply "improper means," Bombardier asserts that Mr. Delarche emailed those

10  reports "without authorization."  (Mot. at 5.)  This is a red herring.  The 2004 Bombardier Code

11  of Ethics—which Bombardier alleges applies to Mr. Delarche (FAC ¶ 69)—does not forbid

12  sending confidential material by email or require that an employee obtain "authorization" to do

13  so.  Instead, it states that employees may "transmit[] confidential documents by electronic

14  devices, such as by fax or e-mail, only when it is reasonable to believe this can be done under

15  secure conditions."  (*Id*. Ex. M, at 14.)  Far from prohibiting the use of email for confidential

16  documents, the Code of Ethics expressly authorizes doing so, as long "it is reasonable to

17  believe this can be done under secure conditions."  In this regard it was common practice at

18  Bombardier to email documents to personal email accounts so that work could be done from

19  home, and Bombardier did not prevent it.  (Basson Decl. ¶ 8; Dorneval Decl. ¶ 4; Delarche

20  Decl. ¶ 38; Ayre Decl. ¶ 30.)

21      In sum, Bombardier not only fails to present evidence showing that it is likely to prove

22  that Mr. Delarche or Mr. Ayre acquired Bombardier trade secrets by improper means.  To the

23  contrary, the record evidence shows the opposite.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 17
No. 2:18-cv-01543-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

### b. No evidence shows that Mr. Ayre or Mr. Delarche disclosed or used Bombardier trade secrets

Bombardier has not presented evidence establishing a likelihood that it will prove that Mr. Ayre or Mr. Delarche has disclosed or used Bombardier trade secrets, or that either threatens to do so.  Instead, Bombardier relies on speculation.

*2013 email from Transport Canada*.  Bombardier has not presented any evidence that Mr. Ayre has used or disclosed the 2013 Transport Canada email or any of its contents.  Mr. Ayre's testimony is that he has not used this email or disclosed it to anyone.  (Ayre Decl. ¶ 26.)

*Draft August 18, 2016 email addressed to Fukuda-san*.  Although Mr. Ayre did "disclose" the contents of the draft email to Fukuda-san of MITAC (*id*. ¶ 36), nothing in that draft is even arguably a trade secret.  (P. 4, above.)

*Email addressed to "Frederic" regarding FIDEX*.  Bombardier similarly presents no evidence that Mr. Ayre used or disclosed the FIDEX email after his departure from Bombardier, and its allegation of disclosure is not only unsupported but grossly mistaken.  Bombardier alleges that Mr. Ayre sent the email to a person who "upon information and belief was a MITAC employee or contractor," and that the information in that email, on "information and belief… led to an improved redesign of the MRJ now subject to certification efforts." (FAC ¶ 79.)  Bombardier does not state a factual basis for its "information and belief."

As discussed above (pp. 6–8), the evidence is that "Frederic" was not "a MITAC employee or contractor" but was instead a safety engineer *at Bombardier*; that Mr. Ayre was requested to identify areas of outstanding concern before his departure; and that Mr. Ayre reviewed, copied, and sent the FIDEX email to himself as part of his preparation for a meeting with Bombardier engineers to address his ongoing work and concerns.  (Ayre Decl. ¶¶ 45–49.)

These facts demonstrate that Bombardier's allegation that "Mr. Ayre's disclosures and teachings to 'Frederic'… led to an improved redesign of the MRJ" is sheer speculation without any basis at all.  Not only did Mr. Ayre not send this email to anyone at MITAC, it is

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 18
No. 2:18-cv-01543-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1    implausible that he would encourage MITAC to adopt a design that he was on record as saying

2    posed potential safety risks.  (*Id*. ¶¶ 52, 53.)

3        *Air data certification reports*.  Bombardier has not presented any evidence that Mr.

4    Delarche made any use of the air data certification reports as an AeroTEC or MITAC

5    employee, or that he disclosed them or their contents to anyone.  Mr. Delarche testifies plainly

6    that he has not, and he explains why he sent them to himself:  he emailed the six air data

7    certification reports to himself to review them as part of his work for Bombardier, pursuant to

8    an express request that he do so for an overworked colleague.  (Delarche Decl. ¶¶ 34, 37, 44;

9    Freeman Decl. Ex. 3, at 3.)  Nor would AeroTEC or MITAC have any use for them, since the

10   MRJ employs a different type of probe from that used by the CSeries.  (Declaration of Robert

11   John Hansman Jr. [ECF No. 116] ¶¶ 15–25).)

12       In sum, there is no evidence to support Bombardier's speculative allegation that Mr.

13   Ayre and Mr. Delarche ever accessed, ever used, or ever disclosed the documents at issue

14   following their departures from Bombardier.  Bombardier apparently contends that such use

15   may simply be inferred.  This is incorrect:  they cite no case holding or even suggesting that a

16   preliminary injunction may be issued on such an inference.  This is unsurprising, because the

17   law puts the burden on Bombardier to demonstrate—with evidence, not allegation—its

18   likelihood of prevailing.  We submit that there is no basis, on the record here, to infer Mr.

19   Ayre's or Mr. Delarche's post-departure use or disclosure.  But even were such an inference a

20   reasonable one here, it would not be the only reasonable inference, and the Court may not issue

21   a preliminary injunction based on only one of multiple reasonable inferences from the actual

22   evidence.  *Citizens of the Ebey's Reserve,* 122 F. Supp. 3d at 1083 (W.D. Wash. 2015); *Doe v.*

23   *George Washington Univ.*, 305 F. Supp. 3d at 134 (D.D.C. 2018); *CBS Broad., Inc. v. EchoStar*

24   *Commc'ns Corp.*, 265 F.3d 1193, 1207 (11th Cir. 2001) (on preliminary injunction motion,

25   "[i]n the face of two plausible interpretations of evidence submitted to demonstrate a contested

26   issue, the district court is not at liberty to accept one construction of the evidence and reject the

27   other without the benefit of an evidentiary hearing."); *see also Mazurek*, 520 U.S. at 972 ("the

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 19
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

requirement for substantial proof is much higher" for a motion for preliminary injunction than it is for a motion for summary judgment).

> ## 2. Bombardier has failed to show the existence protectable trade secrets

Bombardier has not submitted a single shred of evidence that any of the documents it accuses Mr. Ayre of misappropriating in fact contain trade secrets. Regarding Mr. Delarche, the evidence is conclusory, and well contradicted.

*2013 email from Transport Canada*. Bombardier has not filed an unredacted copy of the 2013 Transport Canada email, and it merely alleges, without elaboration, that the email "discuss[es] Bombardier trade secrets… concerning smoke penetration testing for Bombardier aircraft." (ECF No. 143 ¶ 77.) But Bombardier does not explain why any email from Transport Canada—its governmental regulator—to Bombardier should be considered Bombardier's trade secret, let alone why this one should. In fact, nothing in that email is a trade secret: it concerns █████████████████████████████████████ ████████████████████████████████████████████. (Ayre Decl. ¶ 27.)

*Draft August 18, 2016 email addressed to Fukuda-san*. Bombardier also has not filed an unredacted copy of the August 18, 2016 draft email to Fukuda-san. And although it asserts the email contains "trade secret information," Bombardier does not explain why the block of text it redacted is, in fact, its trade secret. (Mot. at 5; *see also* FAC ¶ 78.) According to MITAC, the unredacted version shows that the block of text was published in the Federal Register, and is not anyone's trade secret. (FAC Ex. S, at 9–11; *see also* ECF No. 126, at 18 & n.6.) "Information that is public knowledge or that is generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984). Mr. Ayre testifies that he copied it straight from the FAA's public website. (Ayre Decl. ¶ 34.)

*Email addressed to "Frederic" regarding FIDEX*. Bombardier has not submitted to the Court any copy of the FIDEX email, redacted or not. Bombardier alleges that the FIDEX email to Frederic Deschamps contains trade secret information (FAC ¶ 79), but it does not say what information in that email is a Bombardier trade secret, or why. Indeed, Bombardier disclosed

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 20
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1  the email to opposing counsel with every indication that Bombardier believed the email *not* to

2  contain its trade secrets.  (Riedinger Decl. ¶ 3 & Ex. B.)

3       *Air data certification reports*.  Bombardier does submit some evidence attempting to

4  show that the six air data certification reports it associates with Mr. Delarche do contain trade

5  secrets—these are the only documents associated with Ayre or Delarche regarding which

6  Bombardier has presented any such evidence.  In this regard, Bombardier relies on the

7  declaration of Daniel Burns, a current Bombardier employee.  But his testimony is often

8  conclusory and, moreover for purposes of this preliminary injunction motion, it is contradicted.

9       Mr. Burns characterizes these documents as having "tremendous value" and being

10  "highly proprietary and confidential."  These certification reports, he says, would give a

11  competitor a "head start" to certification (Burns Decl. ¶ 12) and "the opportunity to increase

12  efficiencies in future aircraft certification efforts" (*id.* ¶ 18).  But Mr. Burns does not mention

13  that the reports describe systems that are aircraft-specific (*see* Declaration of Stephen Boyd

14  [ECF No. 115] ¶ 65(d), stating that "each manufacture[r] would need to determine the

15  necessary test conditions for their particular airplane"), or that the CSeries and the MRJ in fact

16  use very different equipment to accomplish the same purpose.

17       As set forth in both the declarations of Robert John Hansman, Jr. (a professor at MIT

18  and an advisor to the FAA) and Stephen Boyd (a 15-year veteran of the FAA Aircraft

19  Certification Service), the air data systems on the MRJ are fundamentally different from those

20  on the CSeries.  The CSeries uses "SmartProbes," whereas the MRJ uses conventional probes.

21  (Hansman Decl. ¶¶ 15–25.)  As Dr. Hansman explains, "Bombardier's specific application of

22  SmartProbes in the CSeries is… irrelevant to the MRJ" because their air data systems "differ

23  significantly: the air pressure detection devices are different, the pneumatic system is different,

24  the computers are different."  (*Id.* ¶ 25.)  Therefore, the "specific calibration data and use of

25  that data in" the six Bombardier air data certification reports "could not be applied to the MRJ

26  air data system."  (*Id.*; *see also* Boyd Decl. ¶¶ 65–67, specifically addressing each set of

27  certification reports.)  Moreover, the Bombardier air data certification reports are themselves

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 21
No. 2:18-cv-01543-JLR

**Savitt Bruce & Willey llp**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1   largely based on well understood and publicly documented concepts and, in some cases,

2   information obtained from third parties.  (Boyd Decl. ¶¶ 65–67.)

3         Bombardier has thus failed to show that it is likely to carry its burden of proving that

4   any document Mr. Ayre or Mr. Delarche emailed to themselves contains a Bombardier trade

5   secret.  *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) (denying

6   summary judgment where "the trade secrets [were] not specifically identified").[5]

7         **3.      Bombardier failed to take sufficient steps to protect its alleged trade secrets**

8         Defendants Ayre and Delarche incorporate by reference the points and authorities in

9   MITAC America's submission that Bombardier did not take reasonable steps to protect the

10   confidentiality of its alleged trade secrets.  (ECF No. 148, at 7.)

11   **E.      The Balance of Hardships Strongly Favors Denying Bombardier's Motion**

12         Neither Mr. Ayre nor Mr. Delarche intends to use, disclose, access, or view any of the

13   eleven documents that the subject of Bombardier's Motion.  (Ayre Decl. ¶ 55; Delarche Decl.

14   ¶¶ 46, 47.)  Even so, granting that Motion would work a significant hardship on them.

15         Bombardier seeks to enjoin Mr. Ayre and Mr. Delarche from "[u]sing, accessing,

16   imitating, copying, disclosing, or making available to any person or entity" the eleven

17   documents "and/or any information or data contained therein," or "[u]sing, accessing,

18   imitating, copying, disclosing, or making available to any person or entity any information

19   derived from the information" contained in these documents.  (ECF No. 146-1.)  Notably,

20   Bombardier's proposed order is not narrowed to cover only allegedly trade secret information

21   contained in those documents.  Instead, it is aimed at *all* information those documents contain,

22   including admittedly publicly available information.  (*See*, *e.g.*, ECF No. 5 ¶ 15 ("[A]dmittedly

23   some information contained in these documents [] would be known or readily ascertainable by

24   _____

25   [5] To be clear, Mr. Burns' testimony says nothing about whether Mr. Delarche or Mr. Ayre used or disclosed the
     alleged trade secrets after departing Bombardier's employ; as it relates to either of them, Mr. Burns' testimony

26   only attempts to demonstrate that the six certification reports (which Mr. Delarche sent to himself to perform
     requested work for Bombardier while still working there) contain trade secrets.  As noted above (footnote 4),

27   Bombardier further has failed to serve or otherwise provide these documents to Ayre, Delarche, or their counsel,
     and for this additional reason it may not use them against Mr. Ayre or Mr. Delarche in any event.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 22
No. 2:18-cv-01543-JLR

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

those with experience in the field…."); *see also* Hansman Decl. ¶ 39; Boyd Decl. ¶ 63.)  This is overbroad, and violates the "one basic principle built into Rule 65… that "those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits."  *Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000).

Moreover, neither Mr. Ayre nor Mr. Delarche has any way of knowing for sure what information—allegedly trade secret or not—he would be enjoined from "[u]sing, accessing, imitating, copying, disclosing, or making available."  Thus, if the Court grants Bombardier's Motion and enters Bombardier's proposed order, Mr. Ayre and Mr. Delarche could inadvertently violate it by, for example, disclosing to someone at MITAC a regulatory provision, a principle of physics, or general engineering knowledge that may be contained in one of the eleven documents, or disclosing to someone at MITAC information that was "derived from" any such regulatory provision, principle of physics, or general engineering knowledge.  (Ayre Decl. ¶ 56; Delarche Decl. ¶ 48.)  In order to make sure that they remain in compliance with Bombardier's proposed order, Mr. Ayre and Mr. Delarche might have to abstain from doing their jobs.  (Ayre Decl. ¶ 57; Delarche Decl. ¶ 49.)  This conundrum is an unacceptably heavy burden to place on individual defendants, especially where, as here, the Plaintiff's preliminary injunction motion is based on speculation.

## F.  Bombardier Has Failed to Demonstrate It Will Suffer Irreparable Harm

Bombardier will not suffer irreparable harm if the Court denies its Motion.  Bombardier waited over two years after Mr. Ayre and Mr. Delarche left to work for its competitors before seeking a preliminary injunction against them.  All of the evidence supporting the allegations Bombardier has made against Mr. Ayre and Mr. Delarche was available in September 2016.

Bombardier's only explanation for this delay is that it was awaiting "public statements from the Corporate Defendants, as well as in the Federal Register, indicating imminent and continued use of Bombardier trade secrets."  (Mot. at 21.)  None of the material cited in support of this assertion has anything to do with Mr. Ayre or Mr. Delarche, or the information in the documents Bombardier associates with them.  (*Id.*, citing FAC ¶¶ 49–50; 83 Fed. Reg. 10,559

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 23
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

(Mar. 12, 2018) (concerning "flap skew").)  Bombardier's delay in seeking a preliminary injunction against Mr. Ayre and Mr. Delarche is fatal to its Motion.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (district court did not abuse discretion by finding that plaintiff's delay in seeking injunctive relief undercut claim of irreparable harm); *Valeo Intell. Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) ("delay in seeking injunctive relief belies [plaintiff's] claims of irreparable harm").

Moreover, Bombardier also declines to offer any evidence of how the particular materials that Mr. Ayre and Mr. Delarche allegedly misappropriated connect with certification or other efforts that are ongoing *now* at MITAC.  Bombardier offers no evidence of how the information allegedly misappropriated by Mr. Ayre is helpful to MITAC; regarding Mr. Delarche, it offers testimony about the certification reports he emailed to himself three years ago as part of his work for Bombardier (Burns Decl. ¶¶ 8–20), but not only is this disputed (Boyd Decl. ¶ 24; Hansman Decl. ¶¶ 64–67), there is nothing offered about what harm Bombardier allegedly will suffer *going forward from now*.

Finally, as set forth in MITAC America's response to Bombardier's Motion for a Preliminary Injunction (points and authorities incorporated here), Bombardier's claims of irreparable harm rest on speculation.  (ECF No. 148, at 11–12.)

**G.      The Public Interest Disfavors an Injunction**

We incorporate here by this reference MITAC America's points and authorities that the public interest disfavors an injunction in this case.  (ECF No. 148, at 18.)

**H.      If an Injunction Issues, the Bond Should Be Significant**

Defendants Ayre and Delarche incorporate by this reference MITAC America's argument that if the Court does grant Bombardier's Motion, it should be required to post a significant bond.  (ECF No. 148, at 21; *see also* Ayre Decl. ¶ 58; Delarche Decl. ¶ 50.)

### IV.      CONCLUSION

Defendants Keith Ayre and Marc-Antoine Delarche respectfully request that the Court deny Plaintiff Bombardier's Motion for Preliminary Injunction.

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 24
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

1    DATED: May 13, 2019.

2
                         SAVITT BRUCE & WILLEY LLP
3

4                        By    s/James P. Savitt
                             _____
5                            James P. Savitt, WSBA #16847
                             Jacob P. Freeman, WSBA #54123
6                            1425 Fourth Avenue Suite 800
                             Seattle, Washington  98101-2272
7                            Telephone:  206.749.0500
                             Facsimile:   206.749.0600
8                            Email:  jsavitt@sbwLLP.com
                             Email:  jfreeman@sbwLLP.com
9
                         Attorneys for Defendants Keith Ayre and
10                       Marc-Antoine Delarche

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT KEITH AYRE AND MARC-ANTOINE
DELARCHE'S RESPONSE TO BOMBARDIER'S MOTION
FOR PRELIMINARY INJUNCTION - 25
No. 2:18-cv-01543-JLR

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 13, 2019 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 13th day of May, 2019 at Seattle, Washington.

*Gabriella Sanders*

Gabriella Sanders

CERTIFICATE OF SERVICE
No. 2:18-cv-01543-JLR