Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BOMBARDIER INC.,<br><br>Plaintiff,<br><br>v.<br><br>MITSUBISHI AIRCRAFT CORPORATION, MITSUBISHI AIRCRAFT CORPORATION AMERICA INC., AEROSPACE TESTING ENGINEERING & CERTIFICATION INC., MICHEL KORWIN-SZYMANOWSKI, LAURUS BASSON, MARC-ANTOINE DELARCHE, CINDY DORNÉVAL, KEITH AYRE, AND JOHN AND/OR JANE DOES 1-88,<br><br>Defendants. | No. 2:18-cv-01543-JLR<br><br>BOMBARDIER INC.'S REPLY TO DEFENDANT'S KEITH AYRE AND MARC-ANTOINE DELARCHE'S OPPOSITION TO BOMBARDIER INC.'S UPDATED MOTION FOR PRELIMINARY INJUNCTION AGAINST MITSUBISHI AIRCRAFT CORPORATION, MARC-ANTOINE DELARCHE, AND KEITH AYRE<br><br>**NOTE ON MOTION CALENDAR:**<br>**MAY 17, 2019** |

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**TABLE OF CONTENTS**

I.   BOMBARDIER HAS SHOWN A HIGH LIKELIHOOD OF SUCCESS FOR ITS MISAPPROPRIATION CLAIMS ............................................................................. 1

    A.   Defendants Argument that Bombardier Has Not Identified Its Trade Secrets Should Be Given Little Weight ................................................................ 1

    B.   Bombardier Will Likely Show That It Has Identified Its Trade Secrets ................ 2

    C.   Defendants Misappropriated Bombardier's Trade Secrets ..................................... 4

        1.   Defendants Did Not Properly Acquire the Trade Secrets ........................... 4

        2.   Defendants Have Used or Intend to Use the Trade Secrets ........................ 6

        3.   Defendants Admit They Still Have Bombardier's Trade Secrets ............... 7

II.  THE BALANCE OF HARDSHIPS FAVORS BOMBARDIER BECAUSE IT SEEKS TO MAINTAIN THE STATUS QUO ..................................................................... 9

III. THE MULTIPLE ARGUMENTS THAT DEFENDANTS INCORPORATE BY REFERENCE SHOULD BE STRICKEN ........................................................................ 10

IV.  DEFENDANTS' REMAINING ARGUMENTS ARE UNAVAILING ............................ 11

    A.   The Argument Related to Personal Jurisdiction is Premature ............................. 11

    B.   The Argument that Defendants Do Not Have All the Trade Secret Documents Listed Is Irrelevant .............................................................................. 11

    C.   Bombardier Has Standing to Bring This Suit ....................................................... 12

V.   CONCLUSION ................................................................................................................. 12

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - ii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# TABLE OF AUTHORITIES

**Cases**

*AirFacts, Inc. v. de Amezaga*, 909 F.3d 84 (4th Cir. 2018) ................................................... 7, 8

*BladeRoom Group Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984 (N.D. Cal. 2017) .................. 12

*Earthbound Corp. v. MiTek USA, Inc.* No. C16-1150 RSM, 2016 WL 4418013 (W.D. Wash. Aug. 19, 2016) ....................................................................................................................... 7

*Exeltis USA, Inc. v. First Databank, Inc.*, No. 17-CV-04819-HSG, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017) ................................................................................................................. 9

*Henry Schein, Inc., v. Cook*, No. 16-CV-03166-JST, 2016 WL 3418537 (N.D. Cal. June 22, 2016) ....................................................................................................................................... 9

*JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010) .......................................................... 7, 8, 9

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.3d 970 (9th Cir. 1991) ................................ 7

*O'Dell v. Conseco Senior Health Ins. Co.*, No. C08—00793 RSL, 2011 WL 13044240 (W.D. Wash. Feb. 10, 2011) ............................................................................................................ 11

*Padilla v. U.S. Immigration & Customs Enforcement*, 354 F. Supp. 3d 1218 (W.D. Wash. 2018) ..................................................................................................................................... 10

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ........................................................ 9

*United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016) ............................................................ 3

**Statutes**

1 Trade Secrets Law § 3:20 ......................................................................................................... 8

18 U.S.C. § 1839(4) .................................................................................................................. 12

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

The arguments presented by Defendants Keith Ayre and Marc-Antoine Delarche (collectively, "Defendants") in their Opposition, Dkt. # 159 ("Opp'n") to Bombardier, Inc.'s ("Bombardier") Motion for Preliminary Injunction are as unpersuasive as they are improper. They are unpersuasive because they hinge on a number of omissions and mischaracterizations of facts and context. They are improper because they flout this Court's case law and several local rules. Nothing contained in Defendants' papers credibly refutes that Bombardier is likely to prevail on the merits and that all factors relevant to a preliminary injunction favor Bombardier.

Further, beyond the merits of whether a preliminary injunction is proper in this context, Defendants have resorted to questionable tactics in their efforts to avoid an injunction. As an initial matter, Defendants aver that they were denied access to the documents at issue, but they fail to inform the Court that they *elected* to *deny themselves access* to the documents sealed by this Court by repeatedly refusing to abide by the terms of the governing protective order. Further, the declarations submitted in support of their arguments cannot be reconciled with other facts Defendants chose not to provide to the Court. Accordingly, Bombardier requests that the Court grant its motion for preliminary injunction.

## I. BOMBARDIER HAS SHOWN A HIGH LIKELIHOOD OF SUCCESS FOR ITS MISAPPROPRIATION CLAIMS

### A. Defendants Argument that Bombardier Has Not Identified Its Trade Secrets Should Be Given Little Weight

Defendants' argument that the information at issue cannot qualify as trade secrets is fatally predicated at least in part on conjecture and memory, not the actual documents. (*See* Opp'n, p. 9:7-13; Declaration of Keith Ayre, Dkt. No. 160 ("Ayre Decl."), ¶¶ 27, 44; Declaration of Marc-Antoine Delarche, Dkt. # 161, ¶¶ 23, 25.) Specifically, Defendants acknowledge that their opposition was submitted without reviewing the actual documents at issue, but this issue is one of their own making. (*See, e.g.,* Opp'n, at 12, n.4.) This matter was first raised during a phone conference held between counsel on April 5, 2016, one day after

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Bombardier filed its Motion for Preliminary Injunction. (*See* Decl. of John Whitaker, ("Whitaker Decl.") ¶ 2.) On that phone call, Defendants' counsel complained that his clients had not been served with all of the documents referenced in Bombardier's preliminary injunction motion. (*Id.* ¶ 3.) Bombardier's counsel responded that Bombardier had served Defendants with all documents cited, but he nevertheless offered to provide Defendants' counsel with any other documents they felt they needed if his clients agreed to the governing protective order. (*Id.*) Defendants' counsel refused. Bombardier's counsel then suggested that the issue could be resolved in "10 minutes or less" with a call to the Court, but Defendants' counsel stated, "You know I don't want to do that." (*Id.* ¶ 4.) Bombardier's counsel followed up with Defendants' counsel the very next business day to offer a compromise that would address the concerns of all parties. Under the compromise, Bombardier's counsel offered to produce any documents Defendants might need in preparing their opposition so long as they agreed to abide by the governing protective order—with an express reservation that Defendants could subsequently challenge the propriety of any term in the order. (*Id.* ¶ 5) Counsel for Defendants rejected the compromise and offered nothing in the alternative. (*Id.* Ex. A.) To date, Defendants still have refused to agree to be bound by the governing protective order and have yet to raise with Bombardier or the Court any problems with the order. Against this backdrop, Defendants hardly have room to complain that Bombardier has not provided record documents filed under seal, and any arguments based on this contention should be rejected.

### B. Bombardier Will Likely Show That It Has Identified Its Trade Secrets

Even if the arguments are considered, they fail to rebut Bombardier's position that the documents they took contain trade secrets. Ayre contends to the contrary because the emails he sent to his personal account purportedly contain publicly available information. (*See* Opp'n at 20-21.) This contention fails in the context of each pertinent email, the "Transport Canada Email" (*see* Ayre Decl. ¶¶ 22-30); the "Fukuda-san Email" (*see id.* ¶¶ 31-38); and the "FIDEX Email" (*see id.* ¶¶ 42-54):

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*Transport Canada Email*—According to Ayre, this email contains information regarding equipment that is publicly available. But "[t]he fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements." *See United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016). Thus, even if the equipment is publicly available, the integration by Bombardier of this particular equipment into its certification efforts is not. (*See* Borfitz Decl. ¶ 12.) Further, the email is a response from Transport Canada to a request made by Bombardier to use specific equipment as an alternative for satisfying the requirements of a specific FAA circular. (*See* Decl. of Jeff E. Danley ("Danley Decl."), Ex. A.) This type of correspondence is considered to be confidential by aircraft manufacturers. (*See* Borfitz Decl. ¶ 12.) Moreover, the FAA circular itself fails to mention the specific equipment identified in the Transport Canada Email, and a search on the FAA website identified by Ayre as containing "a wealth of information" on this topic also does not identify the equipment with specificity. (*See* Opp'n at 5, n. 1 (providing URL for FAA Circular); *see also* Danley Decl., Ex. B.)

*Fukuda-san email*—Ayre contends that this email contains publicly available information from the FAA (*see* Opp'n at 20), but as noted above, publicly available information can still warrant trade secret protection. *See Nosal*, 844 F.3d at 1042. That is the case here, where Mr. Fukuda, the Engineering Lead of Ice Protection Systems for the MRJ, had to rely on Bombardier's Design Approval Designee (Ayre) to find that information. (*See* Dkt. #128, Ex. A.) If this material was so widely and publicly known within the industry, then Mr. Fukuda—a senior engineer and lead—certainly would have been aware of it.

*FIDEX email*—Ayre's argument that the FIDEX email[1] does not contain trade secret

---

[1] As Bombardier noted in its First Amended Complaint, this email is addressed to "Frederic," but Ayre only sent it from his Bombardier account to his personal account. (*See* First Amended Complaint, Dkt. # 143 ("FAC"), ¶ 79.) Bombardier believed this individual to be Frederic Contenot, a system safety engineer who worked at MITAC and performed safety analysis on the MRJ. (*See* Danley Decl., Ex. C.) The identity of "Frederic" is

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 3

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

information also lacks merit. The email contains Bombardier proprietary operational and testing parameters, quintessential trade secret information. Ayre's only argument is based on correspondence between counsel for Bombardier and MITAC (not Defendants) in which, according to Defendants, Bombardier's attorney gave "every indication that Bombardier believed the email *not* to contain its trade secrets." (*See* Opp'n at 20-21.) Defendants fail to inform the Court, however, that Bombardier sent a follow-up email the same day requesting that MITAC's attorneys treat the document as AEO under the protective order. (*See* Danley Decl., Ex. D.)

*Delarche Documents*—In contrast to Ayre, Delarche argues that reports he stole do not include trade secret information because they would not be useful to MITAC, but the argument necessarily ignores reality. (*See* Opp'n at 21.) The trade secrets relate to the *process for certifying* an aircraft, and they are not limited to specific aircraft models. The evidence submitted by Bombardier establishes that the reports at issue could be used by any aircraft manufacturer "to streamline certification efforts relating to these same systems of future aircraft." (*See* Burns Decl., Dkt. # 5, ¶¶ 10, 12, 13, 15, 18.) To argue otherwise ignores the value previous certification experience bears on current certification efforts, something MITAC has already conceded. (*See* FAC, ¶ 35.)

### C.  Defendants Misappropriated Bombardier's Trade Secrets

#### 1.  Defendants Did Not Properly Acquire the Trade Secrets

Defendants argue that they acquired Bombardier's trade secrets through the course of their jobs and therefore did not use improper means. (*See* Opp'n at 14-15.) Alternatively, Ayre attempts to excuse the email he sent to Fukuda-san as containing innocuous information. These arguments, based on factually irreconcilable declarations, do not withstand scrutiny.

*Transport Canada Email*—Ayre claims that he sent this email to remind himself to

---

immaterial for this motion, though, because Ayre retained this draft email containing Bombardier trade secret information after his departure.

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

contact the Transport Canada official, David Johns, about his departure, and to have someone from MITAC join an industry forum. (*See* Opp'n at 5-6, 16 (citing Ayre Decl., ¶¶ 25-29, 49).) But documentary evidence establishes that his correspondence with Johns had already occurred *just 50 minutes before* Ayre forwarded to himself the Transport Canada Email. (*Compare* Danley Decl., Ex. E (farewell email received from Johns time stamped 9:33 AM) *with* Danley Decl., Ex. A (Transport Canada Email sent at 10:20 AM).)[2] He therefore needed no reminder. Further, the Transport Canada Email does not reference or mention the industry forum that Ayre identifies in the Opposition. Ayre's justification in forwarding this email to himself is disingenuous.

*Fukuda-san email*—Ayre claims that the Fukuda-san email is innocuous and contains only a block quote taken from the FAA's website. As noted above, though, the fact that Mr. Fukuda, the team leader at MITAC in this area, was completely unaware of this information shows that it was not well-known.

*FIDEX email*—Ayre claims that he forwarded the FIDEX email to prepare for his exit interview. (*See* Opp'n, p. 8 (citing Ayre Decl. ¶ 49).) Ayre forwarded additional FIDEX emails to himself also on the 24th (*see* Danley Decl., Exs. F-H), presumably also for his exit interview. Ayre further claims that he "did in fact raise this issue, among others, during that exit meeting." (*See* Ayre Decl. ¶ 49.) Mr. Boris Meislitzer, one of Ayre's supervisors, was also in that meeting, in fact led that meeting, and does not recall FIDEX being discussed. (*See* Decl. of Boris Meislitzer ("Meislitzer Decl."), ¶¶ 6, 11.) Moreover, Mr. Meislitzer has no record that FIDEX was an open issue, or deliverable, for Ayre at the time of his departure. (*Id.* ¶ 10.) Indeed, even Ayre concedes that the FIDEX issue was raised in late 2015 or early 2016, at least six or seven months before his departure. (Ayre Decl. ¶ 48.) In contrast, the FIDEX documents are directly related to one of Ayre's job responsibilities at MITAC, and these

---

[2] If anything, this sequence suggests that the farewell correspondence with Johns reminded Ayre of trade secret information in the TCCA email that he wanted to take with him.

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

documents would be valuable to the certification efforts of other aircraft manufacturers. (*See* Borfitz Decl. ¶ 10.) Thus, it seems implausible that Ayre acquired these documents for his work at Bombardier, and more than likely were collected for use at MITAC. The conclusion is further buttressed by the fact that Ayre had not forwarded technical documents or discussions to his personal account at all for at least two years leading up to August 24, 2016, when he forwarded a number of technical emails to himself on his way out the door. (*See* Danley Decl., Ex. I.)

*Delarche Documents*—Delarche attempts to justify forwarding six sets of test reports to his personal email account in the week before his departure by arguing that this was a widespread practice at Bombardier. (*See* Opp'n at 17.) Delarche, though, fails to acknowledge that this was not *his* normal practice. In fact, in the year before his departure, Delarche had ***never*** forwarded technical documents to his personal account. (*See* Danley Decl., Ex. J.) Yet, Delarche argues that he innocently forwarded these reports to himself, contrary to his normal practice, in the days before his departure, when these same documents contain information that would assist any aircraft manufacturer in streamlining their certification processes. Again, his explanation is unreasonable.

**2. Defendants Have Used or Intend to Use the Trade Secrets**

The evidence above shows that both Ayre and Delarche, contrary to their normal practices, forwarded trade secret information to themselves in the days before their departure, and that this trade secret information corresponded to aircraft certification activities—the very reason that they were recruited by MITAC and AeroTEC (*see, e.g.,* Denkenberger Decl., Dkt. # 143-1, Ex. 29 (advertisements by Defendants seeking to hire systems engineers "who can work on Certification activities of MRJ aircraft" in Japan).) Not only do these facts undercut the assertions Defendants made in their respective declarations explaining their reasons for forwarding this material, but their respective situations strongly suggest that they forwarded these emails for the purpose of taking the trade secrets with them to use at MITAC.

Throughout their brief, Defendants criticize Bombardier for not providing "actual"

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 6

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

evidence of misappropriation, (*see* Opp'n at 15:26-27), and for not putting forth "any evidence" regarding Ayre's and Delarche's intentions for forwarding this information to themselves (*see, e.g., id.* at 16:5-6). This argument ignores controlling law. Circumstantial evidence, such as that identified by Bombardier, can be used to show misappropriation when seeking a preliminary injunction. *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.3d 970, 973 (9th Cir. 1991); *see also Earthbound Corp. v. MiTek USA, Inc.* No. C16-1150 RSM, 2016 WL 4418013, at *9-10 (W.D. Wash. Aug. 19, 2016) (issuing TRO based on strong circumstantial evidence).

### 3. Defendants Admit They Still Have Bombardier's Trade Secrets

Even if Defendants had legitimate excuses for forwarding Bombardier's trade secrets to themselves in 2016—and they did not—those reasons do not justify continued retention of those documents. As confirmed in their separate declarations, both Ayre and Delarche continued to possess Bombardier's trade secrets after they left Bombardier, and in at least some instances, that improper and unauthorized possession continues today. Defendants gloss over this issue in their briefing, but by keeping these documents after they left Bombardier Defendants committed theft of these trade secrets via conversion. This admission confirms that both defendants improperly acquired this trade secret information, and the fact that they maintained possession of these documents well after their departure at least suggests that they did so to aid the development of the MRJ.

The case law cited by Defendants fails to support their assertion that employees can keep trade secret information after departing their employer. This Court previously found that the holding in *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir. 2010), is readily distinguishable from the facts for another of the individual Defendants, Basson. (*See* Order, Dkt. # 136 at 22-23.) The same reasoning holds here to distinguish *JustMed*. Not only did the defendant in *JustMed* create the trade secret source code on his own home computer, but he did so precisely to fulfill his duties at JustMed. *See JustMed*, 600 F.3d at 1129-30. Further, the defendant in *JustMed* worked full time out of his home using his personal computer to create

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

that source code so that he had a legitimate reason for having the source code on his computer. *Id.* at 1122. As for *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84 (4th Cir. 2018), the Fourth Circuit affirmed a finding of no improper trade secret acquisition because the defendant forwarded the trade secret information to himself so that he could answer questions from his former employer after his departure, a request explicitly made of him by his former supervisors. 909 F.3d at 98.

The situations for Defendants are markedly different. For example, Defendants, unlike the defendant in *JustMed*, worked out of Bombardier's offices. Moreover, Ayre even admits that some of the emails he forwarded had nothing to do with his current job responsibilities (*see* Ayre Decl. ¶¶ 22-30), and Bombardier has provided additional evidence (identified above) casting doubt on Defendants' reasons for forwarding other emails to their personal email addresses. Also, unlike the defendant in *AirFacts*, Defendants do not argue that anyone at Bombardier asked them to be available after their respective departures to answer questions related to the subject matter of the documents they took. Thus, Bombardier will likely prove that Defendants sent Bombardier's trade secret information to their personal email accounts, not to perform work for Bombardier, but to improperly take it with them after their departure to MITAC and AeroTEC, respectively.

Finally, even if *JustMed* does support Defendants' arguments regarding *acquisition* of the trade secrets, it nevertheless supports Bombardier's arguments for granting an injunction to prevent the use of those trade secrets. In particular, although the *JustMed* court found that the trade secrets had not been improperly acquired, it still remanded the case for the district court to determine in the first instance if an injunction was appropriate to prevent future misappropriation in the form of improper use of those trade secrets. *See JustMed*, 600 F.3d at 1131. As that court noted, "[i]n some cases, such as where the trade secret has not been disclosed or used, *an injunction may be the only appropriate remedy*." *See JustMed*, 600 F.3d at 1130 (citing and quoting 1 Trade Secrets Law § 3:20) (emphasis added). That same reasoning applies here, in which an injunction can prevent continued use of Bombardier's

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

trade secrets. As Bombardier previously explained, the situations surrounding Defendants' continued possession of the trade secrets strongly suggest intent to use those trade secrets during the on-going certification process for the MRJ. Thus, an injunction is appropriate under *JustMed* to prevent such future misappropriation by Defendants.

## II. THE BALANCE OF HARDSHIPS FAVORS BOMBARDIER BECAUSE IT SEEKS TO MAINTAIN THE STATUS QUO

Defendants argue that the balance of hardships tips in their favor, but their argument is based on a series of hypotheticals, in effect a list of horribles, of how the injunction might possibly impact their careers. Neither Ayre nor Delarche, however, provide any concrete, identifiable examples of how the injunction would have such an impact. *See, e.g., Exeltis USA, Inc. v. First Databank, Inc.*, No. 17-CV-04819-HSG, 2017 WL 6539909, at *10 (N.D. Cal. Dec. 21, 2017) (noting that the potential hardship from a preliminary injunction "must not be too remote, insubstantial, or speculative and must be supported by evidence" (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009)).

Bombardier, by contrast, has identified a real and definite risk of further misappropriation of its trade secrets by Defendants. As noted above, and discussed at length, Defendants forwarded trade secret information to themselves in their final days at Bombardier; this information discloses Bombardier trade secret information related to aircraft certification; Defendants were hired to perform certification at MITAC; and both admit to still possessing Bombardier's trade secret information well past their respective dates of departure. Thus, based on these facts, Bombardier has shown a real and definite threat of misappropriation. With this motion, Bombardier seeks to protect the status quo of affairs prior to the misappropriation by Defendants. These Defendants would not be enjoined from continuing their work at MITAC or their work on the MRJ project, and if they in fact did not misappropriate any trade secrets, then the injunction would have no impact at all on them. *See Henry Schein, Inc., v. Cook*, No. 16-CV-03166-JST, 2016 WL 3418537, at *5 (N.D. Cal. June 22, 2016). The "balance of hardships tips in favor of plaintiffs seeking injunction when it

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

would do no more than require Defendant to comply with federal and state laws." *Id.* (citations and quotations omitted).

Defendants attempt to cloud the matter by playing word games with the term "derived from," arguing that such an injunction might extend to information "derived from" regulatory provisions, physics principles, or general engineering knowledge contained in the trade secret documents. Defendants miss the point. If Defendants derived information from sources other than the misappropriated documents, then Defendants would be free to use it. But if Defendants learned of the information because of their reference in the first instance to the misappropriated documents, then any derived information would be likewise illicitly gained. There is nothing problematic about the scope or enforcement of the requested injunction.

### III. THE MULTIPLE ARGUMENTS THAT DEFENDANTS INCORPORATE BY REFERENCE SHOULD BE STRICKEN

Defendants, at multiple locations, incorporate by reference arguments made in other briefs. This practice constitutes blatant gamesmanship used to circumvent the local rules. *See* LCR 7(e). Even worse, Defendants incorporate by reference the arguments and documents filed by their co-defendants, even those contained in redacted filings, when they have been unable to see the unredacted versions. (*See, e.g.*, Opp'n, p. 24 (incorporating by reference briefing from MITAC America).) Defendants use this tactic on at least four separate occasions in their brief. (*See* Opp'n, pp. 11:12-13, 22:8-10, 24:15-17, 24:19-20, and 24:22-24.) In at least one instance, Defendants incorporate by reference their entire 23-page motion to dismiss based on personal jurisdiction. Elsewhere, the incorporations by reference provide the *only* basis for Defendants' arguments related to the public interest factor and the size of any potential bond. Because their opposition ends on the last line of the last page, Defendants' decision to incorporate arguments and entire briefs by reference appears to have been a tactical one to fit the opposition brief into the applicable page limit.

This method is highly disfavored in this district, especially when, as here, it is done to circumvent page limitations. *See Padilla v. U.S. Immigration & Customs Enforcement*, 354 F.

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 10

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Supp. 3d 1218, 1228 (W.D. Wash. 2018) (noting that "the Court is not inclined to permit Plaintiffs to evade the page limitations by incorporating arguments from other motions by reference"). Because of the egregious nature of these transgressions, which more than double the pages for this brief, Bombardier requests that the Court disregard all arguments that Defendants incorporate by reference. *See O'Dell v. Conseco Senior Health Ins. Co.*, No. C08—00793 RSL, 2011 WL 13044240, at *1, n.1 (W.D. Wash. Feb. 10, 2011).

## IV. DEFENDANTS' REMAINING ARGUMENTS ARE UNAVAILING

### A. The Argument Related to Personal Jurisdiction is Premature

Defendants argue that "[b]ecause the Court lacks jurisdiction, it may not issue a preliminary injunction," incorporating by reference the arguments that they made in a contemporaneously filed motion to dismiss. (*See* Opp'n, at 11.) As noted above, incorporating arguments by reference is improper in this district, and the appropriate remedy is to strike such arguments. That holds especially true here where Defendants have attempted to incorporate by reference an entirely separate, concurrently filed 23-page brief.

Even if this section is not stricken, this issue should not be used to delay ruling on the merits of Bombardier's preliminary injunction motions. Indeed, even if Ayre and Delarche are dismissed as individuals for lack of personal jurisdiction, their actions can still be used as a basis for enjoining MITAC, and the injunction against them can be vacated if the Court ultimately concludes that it lacks personal jurisdiction over either or both Defendants.

### B. The Argument that Defendants Do Not Have All the Trade Secret Documents Listed Is Irrelevant

Defendants argue that an injunction should not be granted against them because they do not have in their possession all 11 documents listed in the proposed order. (*See* Opp'n, pp. 11-12.) There is no requirement on Bombardier, however, to show that Ayre or Delarche misappropriated or have a connection with all 11 documents that are subject to the protective order before an injunction can issue. Further, to the extent that Ayre and Delarche have never possessed or seen one or more of the documents listed in the proposed order, then they, of

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 11

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

course, would not be able use any information included in or derived from those documents so that the injunction would not impact their abilities to perform their jobs. In any event, Delarche admits to taking six test reports at his departure and to still having those test reports today, test reports that are listed in the proposed order. (*See* Proposed Order, Dkt. # 146-1.) Moreover, because Ayre works at MITAC with Delarche, it would be possible for Ayre to also access this trade secret information, especially in light of the shared technical resources at MITAC (*see, e.g.,* Declaration of Hajime Kanja, Dkt. # 171, ¶ 3) Because both Ayre and Delarche have shown a propensity to forward Bombardier's technical and trade secret information for MITAC's benefit, the injunction should issue against both of them to cover all possible avenues by which the trade secret information could be misappropriated.

### C. Bombardier Has Standing to Bring This Suit

Defendants' argument that Bombardier does not own its trade secrets is meritless. (Opp'n at 11.) Bombardier did not transfer its trade secrets with the C-Series program as alleged by Defendants. Just because Bombardier used its trade secrets in certifying the C-Series aircraft does not make them an asset of the C-Series. The trade secrets apply across multiple types of aircraft.

Even if Bombardier did transfer some of its trade secret rights as Defendants contend (and they did not), even Defendants admit that such a transfer was only partial because Bombardier continues to own an interest in those trade secrets. Tellingly, Defendants cite no authority for the proposition that 100% ownership of a trade secret is necessary for standing. Contrary to Defendants' argument, a license alone is sufficient for standing. *See, e.g.*, 18 U.S.C. § 1839(4) (defining "owner" as including a person with license to the trade secret); *see also BladeRoom Group Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017). For those reasons, Bombardier has standing to bring this suit.

### V. CONCLUSION

For the foregoing reasons, and for the reasons identified in its Motion, Bombardier respectfully requests that the Court grant the requested injunction against Defendants.

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Dated this 17th day of May, 2019.

        CHRISTENSEN O'CONNOR
        JOHNSON KINDNESS<sup>PLLC</sup>

        <u>s/John D. Denkenberger</u>
        John D. Denkenberger, WSBA No.: 25,907
        Brian F. McMahon, WSBA No.: 45,739
        E. Lindsay Calkins, WSBA No.: 44,127
        Christensen O'Connor Johnson Kindness<sup>PLLC</sup>
        1201 Third Avenue, Suite 3600
        Seattle, WA 98101-3029
        Telephone: 206.682.8100
        Fax: 206.224.0779
        E-mail: john.denkenberger@cojk.com,
        brian.mcmahon@cojk.com,
        lindsay.calkins@cojk.com, litdoc@cojk.com

        *Attorneys for Plaintiff Bombardier Inc.*

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 13

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Jerry A. Riedinger<br>PERKINS COIE LLP<br>Email:<br>JRiedinger@perkinscoie.com<br>docketsea@perkinscoie.com<br>lshaw@perkinscoie.com<br>sporter@perkinscoie.com | Mack H. Shultz<br>PERKINS COIE LLP<br>Email:<br>MShultz@perkinscoie.com<br>docketseapl@perkinscoie.com<br>sbilger@perkinscoie.com | Mary Z. Gaston<br>PERKINS COIE LLP<br>Email:<br>MGaston@perkinscoie.com<br>docketsea@perkinscoie.com<br>jstarr@perkinscoie.com |
| James Sanders<br>PERKINS COIE LLP<br>Email:<br>JSanders@perkinscoie.com<br>RBecken@perkinscoie.com<br>docketsea@perkinscoie.com<br>jdavenport@perkinscoie.com | Shylah R. Alfonso<br>PERKINS COIE LLP<br>Email:<br>SAlfonso@perkinscoie.com<br>docketsea@perkinscoie.com | |

Attorneys for Mitsubishi Aircraft Corporation and Mitsubishi Aircraft Corporation America Inc.

| | |
|---|---|
| Richard J. Omata<br>KARR TUTTLE CAMPBELL<br>Email: romata@karrtuttle.com<br>jnesbitt@karrtuttle.com<br>swatkins@karrtuttle.com | Mark A. Bailey<br>KARR TUTTLE CAMPBELL<br>Email: mbailey@karrtuttle.com<br>jsmith@karrtuttle.com<br>mmunhall@karrtuttle.com<br>sanderson@karrtuttle.com |

Daniel T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com
ksagawinia@karrtuttle.com

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

BOMBARDIER INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION (2:18-cv-01543-JLR) - 14

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

| | |
|---|---|
| James P. Savitt<br>SAVITT BRUCE &<br>WILLEY LLP<br>Email: jsavitt@sbwLLP.com<br>eservice@sbwllp.com | Jacob P. Freeman<br>SAVITT BRUCE &<br>WILLEY LLP<br>Email:<br>jfreeman@sbwLLP.com |

Attorneys for Marc-Antoine Delarche and Keith Ayre

                                        s/John D. Denkenberger
                                        John D. Denkenberger, WSBA No.: 25,907
                                        Brian F. McMahon, WSBA No.: 45,739
                                        E. Lindsay Calkins, WSBA No.: 44,127
                                        Christensen O'Connor Johnson Kindness[PLLC]
                                        1201 Third Avenue, Suite 3600
                                        Seattle, WA 98101-3029
                                        Telephone: 206.682.8100
                                        Fax: 206.224.0779
                                        E-mail: john.denkenberger@cojk.com,
                                        brian.mcmahon@cojk.com,
                                        lindsay.calkins@cojk.com, litdoc@cojk.com

                                        *Attorneys for Plaintiff Bombardier Inc.*

BOMBARDIER INC.'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
(2:18-cv-01543-JLR) - 15

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100