THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOMBARDIER INC.,

               Plaintiff,

v.

MITSUBISHI AIRCRAFT
CORPORATION, MITSUBISHI
AIRCRAFT CORPORATION AMERICA
INC., et al.,

               Defendants.

No. 2:18-cv-1543 JLR

DEFENDANT MITSUBISHI AIRCRAFT
CORPORATION AMERICA INC.'S
UPDATED OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:
Friday, May 17, 2019

ORAL ARGUMENT REQUESTED

REDACTED

MITAC AMERICA'S UPDATED OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................... 1

II. THE FACTS SHOW NO MISAPPROPRIATION ................................................... 1

   A.  Bombardier Unreasonably Delayed Pursuing A Preliminary Injunction .............. 1

   B.  Bombardier's Documents Were Not Provided To, Used By, Or Even
       Known By MITAC America ................................................................................ 2

   C.  Bombardier's Documents Are Filled With Publicly Available Information ........ 3

   D.  Bombardier's Documents Are Not Useful In The MRJ Program ........................ 5

   E.  Bombardier Failed To Take Reasonable Steps To Protect Its Information .......... 7

   F.  Bombardier's Actions Are Designed To Preclude A Competitor's Access
       To The Skills And Experience Of Potential Employees ...................................... 7

   G.  No Injunction Is Necessary Because MITAC America Has Already
       Informed Bombardier that It Does Not Have and Will Not Use the Alleged
       Secret Documents ............................................................................................... 8

   H.  Bombardier Has Failed To Show That It Owns The Alleged CSeries Trade
       Secrets ................................................................................................................ 9

III. ARGUMENT ........................................................................................................... 9

   A.  Bombardier Is Unlikely To Succeed On The Merits .......................................... 9

       1.  The facts show no actual or threatened misappropriation of trade
           secrets ........................................................................................................ 9

           a.  The individual defendants did not use improper means to
               acquire the eleven documents .......................................................... 10

           b.  Bombardier relies on speculation ..................................................... 11

           c.  MITAC America has not acquired, disclosed or used
               Bombardier's purported trade secrets ............................................. 12

           d.  MITAC America does not have the required knowledge ................. 14

       2.  Bombardier failed to identify protectable trade secrets ............................ 14

       3.  Bombardier failed to show standing ......................................................... 16

   B.  No Irreparable Harm Is Present ....................................................................... 16

   C.  The Public Interest Disfavors An Injunction ................................................... 18

   D.  Bombardier's Proposed Injunction Is Improperly Vague ................................ 19

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**
**(continued)**

Page

E.    The Balance of Hardships Favors MITAC America ........................................... 20

F.    If An Injunction Issues, The Bond Should Be Significant.................................. 21

IV.   BOMBARDIER'S AMENDED COMPLAINT DOES NOT PROVIDE ANY
ADDITIONAL JUSTIFICATION FOR A PRELIMINARY INJUNCTION................. 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2
## TABLE OF AUTHORITIES

3
**CASES**                                                                                         **Page**

4

5
*Active Network, Inc. v. Elec. Arts Inc.*,
    No. 10-cv-1158, 2010 WL 3463378 (S.D. Cal. Aug. 31, 2010)................................20

6

7
*Airfacts, Inc. v. de Amezaga*,
    909 F.3d 84 (4th Cir. 2018) ....................................................................................10

8
*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ...................................................................................9

9

10
*Allied Supply Co., Inc. v. Brown*,
    585 So. 2d 33 (Ala. 1991)........................................................................................16

11
*Allora, LLC v. Brownstone, Inc.*,
    No. 1:07CV87, 2007 WL 1246448 (W.D.N.C. Apr. 27, 2007)...............................20

12

13
*Am. Can Co. v. Mansukhani*,
    742 F.2d 314 (7th Cir. 1984) ...................................................................................19

14

15
*Amazon.com, Inc. v. Powers*,
    No. C12-1911RAJ, 2012 WL 6726538 (W.D. Wash. Dec. 27, 2012) (J. Jones) ........13, 18, 20

16
*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
    No. 4:00-CV-70CEJ, 2002 WL 32727076 (E.D. Mo. Feb. 25, 2002)....................16

17

18
*Barker v. Skagit Speedway, Inc.*,
    119 Wn. App. 807 (2003) .........................................................................................23

19

20
*Berkley Risk Adm'rs Co. v. Accident Fund Holdings, Inc.*,
    No. 16-2671, 2016 WL 4472943 (D. Minn. Aug. 24, 2016)...................................16

21
*Blue Star Land Servs., LLC v. Coleman*,
    No. CIV-17-931-R, 2017 WL 6210901 (W.D. Okla. Dec. 8, 2017) .......................14

22

23
*Boeing Co. v. Sierracin Corp.*,
    108 Wn. 2d 38 (1987)...............................................................................................14

24

25
*Buffets, Inc. v. Klinke*,
    73 F.3d 965 (9th Cir. 1996) .....................................................................................16

26
*Cent. Valley Gen. Hosp. v. Smith*,
    162 Cal. App. 4th 501 (2008) ..................................................................................13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*Cont'l Grp., Inc. v. Amoco Chem. Co.*,
   614 F.2d 351 (3d Cir. 1980)................................................................................18

*Costco Wholesale Corp. v. Hoen*,
   No. C04-360P, 2006 WL 2645183 (W.D. Wash. Sept. 14, 2006)..........................17

*Desert Sun Net LLC v. Kepler*,
   No. C06-1041P, 2006 WL 3091170 (W.D. Wash. Oct. 27, 2006)..........................14

*Digital Mentor, Inc. v. Ovivo USA, LLC*,
   No. C17-1935-RAJ, 2018 WL 993944 (W.D. Wash. Feb. 21, 2018)......................12

*Ed Nowogroski Ins., Inc. v. Rucker*,
   137 Wn. 2d 427 (1999) (*en banc*).........................................................................11

*Edifecs Inc. v. Tibco Software Inc.*,
   756 F. Supp. 2d 1313 (W.D. Wash. 2010)...............................................................13

*First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*,
   155 F. Supp. 2d 194 (M.D. Pa. 2001).....................................................................17

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ..................................................................................17

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*,
   415 U.S. 423 (1974)................................................................................................19

*H.E. Briggs & Co. v. Harper Clay Products Co.*,
   272 P. 962 (1928)....................................................................................................24

*In re Wade Cook Financial Corp.*,
   375 B.R. 580 (9th Cir. 2007) ..................................................................................24

*Jay's Custom Stringing, Inc. v. Yu*,
   No. 01CIV.1690, 2001 WL 761067 (S.D.N.Y. July 6, 2001) .................................16

*Joshua David Mellberg LLC v. Will*,
   96 F. Supp. 3d 953 (D. Ariz. 2015) ........................................................................14

*Katch, LLC v. Sweetser*,
   143 F. Supp. 3d 854 (D. Minn. 2016).....................................................................17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)................................................................................20

*MAI Sys. Corp. v. Peak Comput., Inc.*,
    991 F. 2d 511 (9th Cir. 1993) ...............................................................14

*Masters Software, Inc. v. Discovery Commc'ns, Inc.*,
    725 F. Supp. 2d 1294 (W.D. Wash. 2010).............................................21

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)..............................................................................12

*Mead Johnson & Co. v. Abbott Labs*,
    201 F.3d 883 (7th Cir. 2000) ...............................................................21

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978)..................................................................................18

*Modumetal, Inc. v. Xtalic Corp.*,
    4 Wash. App. 2d 810, 828 (2018).....................................................13, 20

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*,
    737 F. Supp. 2d 1257 (E.D. Wash. 2010)..........................................12, 14

*Niemi v. Am. Axle Mfg. & Holding, Inc.*,
    No. 269155, 2007 WL 29383 (Mich. Ct. App. Jan. 4, 2007) .................16

*Pac. Aerospace & Elecs., Inc. v. Taylor*,
    295 F. Supp. 2d 1188 (E.D. Wash. 2003) .............................................11

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984)..............................................................................15

*Schmidt v. Lessard*,
    414 U.S. 473 (1974)..............................................................................19

*Standard Brands, Inc. v. Zumpe*,
    264 F. Supp. 254 (E.D. La. 1967) ........................................................18

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ..............................................................18

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## TABLE OF AUTHORITIES
### (continued)

Page

*Tape Head Co., Inc. v. R C A Corp.*,
   452 F.2d 816 (10th Cir. 1971) ........................................................................18

*Union Pac. R.R. Co. v. Mower*,
   219 F. 3d 1069 (9th Cir. 2000) .......................................................................19

*United States v. Holtzman*,
   762 F.2d 720 (9th Cir. 1985) ..........................................................................19

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
   467 U.S. 797 (1984)........................................................................................17

*United Transp. Union v. State Bar of Mich.*,
   401 U.S. 576 (1971) ........................................................................................18

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*,
   368 F. Supp. 2d 1121 (W.D. Wash. 2005)......................................................17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)........................................................................................9, 18

STATUTES

18 U.S.C. § 1836 *et seq.*......................................................................................9, 13

18 U.S.C. § 1839......................................................................................10, 14, 15, 16

RCW 19.108.010 *et seq.* ...........................................................................9, 10, 14, 15

RULES

Fed. R. Civ. P. 65................................................................................................19, 21

OTHER AUTHORITIES

FAA Order 8110.4C...................................................................................................11

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – vi

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### I.     INTRODUCTION

Bombardier's motion should be denied. Mitsubishi Aircraft Corporation America Inc. ("MITAC America") has done nothing wrong, and Bombardier merely relies on unsupported speculation. Remarkably, Bombardier moved for a preliminary injunction years after it knew its employees were leaving: more than three years have passed since Bombardier first complained of the actions described in its motion. Any alleged harm that could be prevented by a preliminary injunction happened long ago, and will not be prevented by a long-after-the-fact injunction.

Bombardier's motion is not only late, it fails to show a likelihood of success on the merits—or anything close to a likelihood. The facts demonstrate that Bombardier's eleven documents[1] were never provided or shown to MITAC America; the documents have never been in MITAC America's possession; MITAC America never knew the documents existed; and the design of the Mitsubishi Regional Jet ("MRJ") is so different from Bombardier's aircraft that the information is not useful to the MRJ project. Bombardier's documents are also filled with publicly available information, but Bombardier nevertheless seeks an injunction against use of anything contained anywhere in any of the documents, even public information. Bombardier's unsupported and unsupportable motion should be denied.

### II.     THE FACTS SHOW NO MISAPPROPRIATION

Bombardier's motion tells a fictional story of alleged misappropriation of eleven documents, supposedly to solve problems arising during certification of the MRJ. That story is filled with innuendo and speculation, but it is remarkably devoid of crucial facts.

### A.     Bombardier Unreasonably Delayed Pursuing A Preliminary Injunction.

Bombardier first complained of the issues in this motion 3 ½ years ago in a letter to defendants AeroTEC and Michel Korwin-Syzmanowski. (Dkt. 1-11.) Bombardier raised the issues with MITAC America's parent three years ago in a June 2016 email. (Dkt. 1-14.)

---

[1] Bombardier's motion refers to twelve documents (Dkt. 4 at 5-6), and its proposed order refers to fourteen. (Dkt. 4-1.) Bombardier's counsel has now settled on eleven documents being in issue. *See* Riedinger Decl. Ex. C.

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Defendant Laurus Basson, who supposedly stole some of the eleven documents, left Bombardier in March 2016. (Dkt. 143 ¶ 68) Similarly, defendant Marc Delarche left Bombardier in May 2016 (*id.* ¶ 69), and defendant Cindy Dornéval left Bombardier in February 2017 (*id.* ¶ 71). Bombardier nevertheless waited until October 19, 2018 to first seek preliminary relief. (Dkt. 4.)

If Bombardier's story were true, then years would have passed with innumerable opportunities for the defendants to misappropriate Bombardier's information. Yet Bombardier did nothing. Bombardier thus seeks to enjoin use of alleged trade secrets that it believes were in MITAC America's possession for more than two years, and which Bombardier has discussed in letters and emails to the defendants dating back to October of 2015. (*See* original Complaint Exs. B, C, E, F, G, H & I (Dkts. 1-11, 1-12, 1-14 to 1-18).)

**B.     Bombardier's Documents Were Not Provided To, Used By, Or Even Known By MITAC America.**

Acquisition or use of alleged trade secrets is normally a central part of any alleged trade secret misappropriation. Yet neither Bombardier's Amended Complaint nor its motion provide any facts describing who at MITAC America supposedly used Bombardier's documents, what they supposedly did, how they supposedly did it, when it was supposedly done, or where it supposedly happened. Bombardier similarly fails to describe anyone who supposedly received Bombardier trade secrets (or how it supposedly happened), or even anyone who supposedly knew of the eleven documents. Bombardier's failure is not surprising: MITAC America has investigated and found no evidence it received or used the eleven documents.

The declarations supporting this brief tell a vivid story: none of the eleven documents were provided to anyone at MITAC America.[2] Dornéval Decl. ¶¶ 12-14; Basson Decl. ¶ 19. MITAC America searched its servers and the MITAC America computers used by the named defendants, and none of the eleven documents were found. *See* Nguyen Decl.; Riley Decl. These

---

[2] The declarations of defendants Cindy Dornéval, Laurus Basson, and Michael Korwin-Szymanowski were separately filed by their counsel. All other declarations cited herein refer to declarations were filed by MITAC America, except for the Burns and Tidd declarations previously filed by Bombardier (Dkts. 5, 7).

MITAC AMERICA'S UPDATED OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (No. 2:18-cv-1543 JLR) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

facts are not surprising, since MITAC America requires all employees to promise that they will not use any confidential information of others, including former employers. Anderson Decl. ¶ 42.

These facts are also not surprising because the Bombardier story is wrong. According to Bombardier, Dornéval and Basson emailed documents to their personal accounts in their final days of employment at Bombardier, supposedly so they could take them to AeroTEC, their next employer. (Dkt. 4 at 5, 6, 18.) But no such thing happened. Instead, Dornéval and Basson emailed the documents home so they could complete their Bombardier work, even doing so at the request of their Bombardier supervisors. Basson Decl. ¶ 12; Dornéval Decl. ¶¶ 4, 10.[3] Sending Bombardier documents home to do Bombardier work was common among engineers at Bombardier. Basson Decl. ¶ 8; Dornéval Decl. ¶ 4. The former Bombardier employers were simply doing what they had done for years: working hard to complete Bombardier projects.

## C.   Bombardier's Documents Are Filled With Publicly Available Information.

MITAC America retained two experts to study Bombardier's eleven documents, Dr. John Hansman, a professor of Aerospace engineering at MIT, and Mr. Stephen Boyd, a former employee of the Federal Aviation Administration (FAA), who supervised aircraft certification activity. They concluded that the eleven Bombardier documents describe extensive public information; if any information in those documents is not public, it is specific to Bombardier's aircraft and would not be usable on the MRJ program. *See* Hansman Decl. ¶¶ 37, 54; Boyd Decl. ¶ 63. Bombardier has not attempted to identify what specific information in its eleven documents is supposedly a trade secret. Nevertheless, the analyses of Dr. Hansman and Mr. Boyd explain how at least the bulk of the documents contain publicly available information.

The FAA's mandate includes wide distribution of information to the industry on how to certify Transport Category aircraft like the MRJ. Boyd Decl. ¶¶ 13-14, 33-34. The procedures for certification are specified by FAA (or Transport Canada) regulations and their supporting

---

[3] Original Complaint Ex. L shows that was also the purpose of Mr. Delarche. (Dkt. 1-21); *see also* Del Vecchio Decl. Ex. B (English translation of Ex. L).

MITAC AMERICA'S UPDATED OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (No. 2:18-cv-1543 JLR) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

publications. *Id.* Those publications include thorough Federal Regulations and extensive guidance (called "Advisory Circulars") that provide exhaustive detail describing what must be done to certify Transport Category aircraft like the MRJ. *Id.* ¶¶ 36-37. Much of what is contained in the eleven Bombardier documents simply follows the FAA regulations and guidance; Bombardier's documents often directly cite to various FAA or Transport Canada publications as support for the information in the documents. Hansman ¶ 42; Boyd Decl. ¶ 65e.

The regulatory agencies also provide exhaustive guidance on how to certify aircraft. For example, FAA Advisory Circular 25-7D (Boyd Decl. Ex. E) is a 481-page document providing detailed guidance on how to conduct flight tests for certification of Transport Category airplanes. Boyd Decl. ¶ 37. And many, many such Circulars are published by the FAA. Boyd Declaration Ex. N is a list of all 136 FAA Advisory Circulars that provide guidance on how to complete certification of Transport Category aircraft. Boyd Decl. ¶ 37, Ex. N. Even the regulations provide detailed guidance. Boyd Declaration Ex. M lists 400-plus sections of Part 25 of the Federal Regulations (the part of the FAA regulations applying to Transport Category aircraft). Boyd Decl. ¶ 15, Ex. M. Those 400-plus sections detail the certification process. *Id.*

Publications from other sources also describe how to conduct the tests and measurements discussed in Bombardier's documents; many of those publications are explained ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ are described in publications by standard setting bodies, such as the SAE, Boyd Decl. ¶¶ 57-58, 64e. Procedures for flight testing are also contained in many Air Force and Navy publications. Hansman Decl. ¶ 43. The eleven Bombardier documents cite many publications; for example, Burns Exs. E and H each cite to █

Even the specific systems used in Bombardier's CSeries and Global 7000 aircraft are described in publications or are known to others. For example, Burns Exs. C through H all relate to calculations and measurements involving ███████████ But SmartProbes are not made by Bombardier, but by a parts vendor, UTC Aerospace Systems. Hansman Decl. ¶¶ 18, 20; Boyd Decl. ¶ 65d. SmartProbes and their air data computers have been sold to many aircraft manufacturers who compete with Bombardier, including Embraer, Boeing, and Airbus. Hansman Decl. ¶ 23. Widely available publications have long detailed the operation of SmartProbes. *See, e.g.*, *id.*; Hansman Decl., Exs. 4, 5.

Methods of certifying aircraft are also taught in courses throughout the world. As explained by Chris Anderson, a MITAC America engineer, certification techniques are taught in the United Kingdom's "Empire" school (which Anderson attended), and similar schools conducted by the U.S. Air Force, the U.S. Navy, and the French Air Force. Anderson Decl. ¶ 12.

Despite this exhaustive public information, Bombardier's motion makes no effort to identify what specific details in its eleven documents are supposedly trade secrets. And, of course, Bombardier's motion makes no attempt to show how those specific, non-public details (if any) were supposedly used by anyone at MITAC America.

**D.     Bombardier's Documents Are Not Useful In The MRJ Program.**

The allegedly misappropriated documents are specific to Bombardier's aircraft, which are materially different from the MRJ. Those differences mean the documents, even if received by MITAC America, would not be useful on the MRJ: the MRJ is smaller than the CSeries and is designed for different purposes. Hansman Decl. ¶ 11, 14. The MRJ carries fewer passengers, flies shorter distances, and has a lower maximum weight. *Id.* The MRJ has different systems. Unsurprisingly, these facts prevent CSeries design information from being useful to the MRJ.

Six of Bombardier's documents ███████████████████████ Those probes are designed, developed and sold by UTC

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  Aerospace. SmartProbes are part of an aircraft's "pitot-static" system, which gathers information
2  about "static" air pressure and "forward-facing" air pressure to allow the aircraft's computers to
3  calculate air speed and altitude. Hansman Decl. ¶ 15. ██████████████████████
4  ████████████████████████████████████████████████████████████
5  ████ But the MRJ does not use SmartProbes; it uses a conventional system. *Id.* ¶ 16.
6  SmartProbes have microprocessors inside the unit, which electronically send processed data to
7  an air data computer. *Id.* ¶¶ 18-19. The MRJ's conventional probes do not have processors, but
8  are connected to pneumatic tubes leading to central air data computers. *Id.* ¶ 16. Thus, the air
9  pressure detection devices are different, the pneumatic system is different, and the computers are
10  different. *Id.* ¶ 25. These fundamental differences prevent the CSeries "SmartProbe" information
11  from being useful in the MRJ air data system. *Id.*
12       Burns Decl. Exhibits A and B describe part of a flap "skew detection system" ("SDS")
13  used in another Bombardier aircraft, the Global 7000 (a 19-passenger business jet). (*See* Dkt. 5
14  ¶¶ 3-7.) The "flaps" are movable parts of the wings that increase lift in slower flight. Hansman
15  Decl. ¶ 27. An SDS detects whether the flaps are mis-positioned when extended. *Id.* ¶ 28. The
16  MRJ uses a different SDS design than the Global 7000. *Id.* ¶¶ 29-33. The flaps have different
17  configurations, so the MRJ's system detects different structures. *Id.* ¶ 35. As explained by Dr.
18  Hansman, the detectors in the Global 7000 use ██████████████████████
19  ████████████████████████████████████████████████████████████
20  ████████████████████████████████████████████████
21  ██████████████████████████████████████ It uses variable
22  resistors producing a voltage proportional to the skew. *Id.* ¶ 33. This difference makes
23  information on Bombardier's SDS neither applicable nor useful to the MRJ. *Id.* ¶ 37.
24       Bombardier's motion also lacks evidence of the "knowledge," required for trade secret
25  misappropriation. Bombardier has not described facts showing anyone at MITAC America knew
26  that the eleven documents were emailed home by former employees, and it has not described

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

facts showing anyone at MITAC America intended to get anything from the eleven documents. As Dr. Hansman described, the eleven documents are not what would be acquired if an engineer wanted an advantage shortening the time for certification. Hansman Decl. ¶ 55.

**E.      Bombardier Failed To Take Reasonable Steps To Protect Its Information.**

Bombardier did not take basic precautions to ensure its allegedly confidential information is actually confidential. Critically, individual defendants had no confidentiality agreements with Bombardier, *see* Dornéval Decl. ¶ 6; Basson Decl. ¶ 20; Korwin-Syzmanowski Decl. ¶ 15, and Bombardier has not identified any confidentiality agreements with any of the individual defendants. Nor did those individuals have non-compete agreements. Dornéval Decl. ¶ 6; Basson Decl. ¶ 20; Korwin-Syzmanowski Decl. ¶ 15. Bombardier contends instead that its "Code of Ethics" was a reasonable precaution. (Dkt. 4 at 15.) However, that Code allowed documents to be sent over the Internet. (Dkt. 1-13 at 18.) Moreover, Bombardier does not explain why it did not take the simple step of having its engineers sign agreements promising to keep information confidential. Nor does Bombardier explain why it did not obtain non-compete agreements, a step it would take if it was actually concerned that its engineers might join competitors. Bombardier knew that aerospace engineers frequently move to competitors, since Bombardier staffed its Mirabel flight test center (where it conducted CSeries certification tests) with engineers from many competitors. Anderson Decl. ¶ 24. Certification engineers have frequent job mobility, *id.* ¶ 35, something Bombardier knew, given its decades of experience in the aerospace industry.

**F.      Bombardier's Actions Are Designed To Preclude A Competitor's Access To The Skills And Experience Of Potential Employees.**

Bombardier's objective is expressly described in its motion: Bombardier wants to stop competition by preventing a "a revival of the Japanese aircraft manufacturing industry." (Dkt. 4 at 20.) Bombardier argues it would be harmed because the MRJ will create "a new industry, establishing supply chains and a regulatory certification process" for years to come. *Id.* at 21. If that happens, Bombardier "will be forced to compete with literally a new nation of competing

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

aircraft manufacturers that would otherwise not exist for at least several years to come." *Id.*
Bombardier wants to impede not just the MRJ, but all other Japanese aircraft manufacturers.

Bombardier seeks to interfere with the freedom of employees that seek new employment,
and prevent competitors from hiring skilled employees—even though Bombardier was laying off
employees and cancelling programs. Bombardier complains that the defendants hired employees
in late 2016. (*See* Dkt. 143 ¶ 51.) Yet Bombardier cancelled its Lear Jet 85 program at the
beginning of 2015, closed its Mirabel, Quebec flight test center in May of 2016, and imposed a
mandatory two-week furlough on its CSeries engineers in December 2016, the day after it
received CSeries certification. Anderson Decl. ¶¶ 30-32. Bombardier's Amended Complaint and
motion nevertheless describe how the defendants hired engineers for the MRJ program from
2015 through 2016, the very time Bombardier was reducing staff. Bombardier admits that
defendants' goal was a "source of certification expertise." (Dkt. 4 at 9.) Despite the lack of
opportunities at Bombardier, and Bombardier's poor work environment, Bombardier seeks to
prevent defendants from hiring employees for their skills and expertise, and thereby prevent a
"revival of the Japanese aircraft manufacturing industry."

Hiring competitor employees of competitors to obtain their skills is common, as
Bombardier well knows. When Bombardier created its Mirabel Flight Test Center, Bombardier
hired worldwide from competitors. Anderson Decl. ¶ 24. Bombardier now tries to prevent
defendants from doing the same.

**G.      No Injunction Is Necessary Because MITAC America Has Already Informed
          Bombardier that It Does Not Have and Will Not Use the Alleged Secret Documents.**

Bombardier's proposed order asks that MITAC America be enjoined from using,
accessing, imitating, copying, or disclosing the eleven documents, or making them available to
any person or entity. (Dkt. 4-1.) Because MITAC America never had the documents, and to
avoid wasting Court resources, MITAC America has already informed Bombardier that it does
not have and will not use the 11 documents. MITAC America even proposed an agreement along

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

those lines. *See* Riedinger Decl. Ex. A. Bombardier rejected MITAC America's proposal, *id.*, showing its goal is to harm the MRJ, not to protect trade secrets.

**H.    Bombardier Has Failed To Show That It Owns The Alleged CSeries Trade Secrets.**

Most of the eleven documents relate to the CSeries aircraft. Yet Bombardier no longer owns the CSeries, and thus might not have standing to assert misappropriation of CSeries secrets. Bombardier sold its CSeries rights to the "C Series Aircraft Limited Partnership" ("CSALP") in July of 2018. Riedinger Decl. Ex. B. Bombardier owns only 34% of CSALP. *Id.* The majority owner is Airbus, Ltd. *Id.* Bombardier did not mention the CSALP sale in its Amended Complaint or motion, and has not demonstrated that it owns the alleged CSeries trade secrets.

## III.    ARGUMENT

The Court should reject the "extraordinary remedy" of a preliminary injunction because: (1) Bombardier is unlikely to succeed on the merits; (2) Bombardier faces no irreparable harm; (3) the public interest would be disserved by an injunction; and (4) an injunction would expose MITAC America to significant hardship. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). The proposed injunction is also impermissibly vague.

**A.    Bombardier Is Unlikely To Succeed On The Merits.**

The facts show no misappropriation, and neither Bombardier's eleven documents nor the information they contain are protectable "trade secrets."[4]

**1.    The facts show no actual or threatened misappropriation of trade secrets.**

Bombardier brought claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Washington Uniform Trade Secrets Act ("WUTSA"), RCW 19.108.010 *et seq.* (Dkt. 143, at Counts III and IV). Thus, MITAC America can be liable only if Bombardier shows it "acquired" or "disclos[ed] or use[d]" Bombardier trade secrets while "know[ing] or

---

[4] Bombardier's Amended Complaint includes a claim for tortious interference against MITAC America, but Bombardier does not cite that claim in its motion for a preliminary injunction.

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

ha[ving] reason to know" the secrets were acquired by improper means. *See* 18 U.S.C.

§§ 1839(A),(B); RCW 19.108.010(2)(a), (b). Bombardier cannot meet that burden: (1) the

individual defendants did not use improper means to acquire the eleven documents; (2) the

individual defendants did not disclose the alleged secrets to MITAC America; (3) MITAC

America has not acquired, disclosed or used the purported secrets and is not likely to do so in the

future; and (4) MITAC America was not even aware of the alleged misappropriation.

> **a.     The individual defendants did not use improper means to acquire the eleven documents.**

"Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a

breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C.

§ 1839(6)(A); RCW 19.108.010(1). That is not what happened here. Bombardier does not allege

that the eleven documents were off-limits to these individuals. The individuals were authorized

to access the documents and used them to perform their Bombardier jobs. (*See* Dkt. 4 at 15.)

Bombardier suggests the individual defendants surreptitiously stole the eleven documents

by sending them to their personal email accounts in violation of the Bombardier Code of Ethics

("Code"). But the Code does not forbid employees from sending company materials to

themselves. It says only that employees should "exercise caution to avoid misusing or

inadvertently disclosing confidential information," and can transmit confidential documents via

email "when it is reasonable to believe this can be done under secure conditions." (Dkt. 1-13 at

18.) The individuals sent documents to themselves to perform Bombardier work while at home.

The individuals reasonably believed sending documents to password-protected email accounts—

to which only they had access—constituted "secure conditions" complying with the Code direct.[5]

Basson ¶¶ 8, 20; Dornéval Decl. ¶ 13. This is not improper. *See, e.g.*, *AirFacts, Inc. v. de

Amezaga*, 909 F.3d 84, 97-98 (4th Cir. 2018) (plaintiff failed to prove defendant misappropriated

---

[5] The allegations in the Amended Complaint confirm that Bombardier can track which documents its employees have emailed to outside accounts, yet Bombardier apparently took no precautions to prevent such dissemination in advance. (*See, e.g.*, Dkt. 143 ¶¶ 68, 69, 71-73.)

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

1  trade secrets in documents defendant was authorized to access and that were emailed to his
2  personal account to work remotely on his last day of employment).

### b. Bombardier relies on speculation.

4    Bombardier relies on sweeping inferences to suggest that the eleven documents must
5  have been disclosed to MITAC America. Such inferences are insufficient and contradicted by the
6  facts. Bombardier suggests the MRJ certification progressed only after AeroTEC hired Basson
7  and Delarche. (Dkt. 4 at 18-19.) Bombardier concludes that "[t]he nature, sequence, and timing
8  of these events strongly suggest that the Individual Defendants disclosed, and the Corporate
9  Defendants acquired, Bombardier's trade secret information to advance MRJ certification
10 efforts." (*Id.* at 18.) This speculation is unsupported by facts and contradicts the facts.

11   Bombardier acknowledges that the certification process is "frustrating," "time-
12 consuming," and "bureaucratically convoluted." (Dkt. 4 at 7.) Assuming the MRJ is certified as
13 planned in 2019, the total effort will last about a decade. That is not expedited progress. Boyd
14 Decl. ¶ 17. It reflects an arduous process, somewhat longer than the time taken by other industry
15 players to achieve clean-sheet certification. (*See, e.g.*, Dkt. 143 ¶ 28.) It is not, however, unusual
16 because "inexperienced" manufacturers receive higher scrutiny compared to the "greater
17 confidence" given to experienced manufactures. *See* FAA Order 8110.4C at §§ 5-3(c)(1)(a-b);
18 *see also id.* at §§ 2-4(a), 2-5(a)(1), and 2-5(b)(1); Boyd Decl. ¶ 48.

19   The MRJ's certification is advancing because of the hard work by the engineers on the
20 project. Bombardier cannot claim ownership of the skills of its former employees, even if such
21 skills were acquired while working at Bombardier. *See Ed Nowogroski Ins., Inc. v. Rucker*, 137
22 Wn. 2d 427, 437 (1999) (*en banc*) ("[F]ormer employee[s] may freely use general knowledge,
23 skills, and experience acquired under his or her former employer."); *see also Pac. Aerospace &
24 Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1203 (E.D. Wash. 2003).

25   Bombardier speculates design changes were made to the MRJ after Basson and Delarche
26 joined AeroTEC, (Dkt. 4 at 18.), and further speculates that Bombardier secrets showed those

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

redesigns were necessary. Yet design changes routinely occur during certification. *See* Dkt. 1-10, Ex. 14. And Bombardier does not link any changes to Bombardier's purported secrets. Bombardier only mentions "relocat[ing] components in the avionics bay" causing a "change in the electrical wires routing." (Dkt. 4 at 18 (citing Dkt. 1 ¶¶ 47-48).) Bombardier does not attempt to explain how its purported secrets supposedly influenced that change; nothing in the eleven documents describes any routing issues. Hansman Decl. ¶ 55. The MRJ project advanced due to the skills and experience of the entire MRJ team (not just former Bombardier employees). Where a plaintiff suggests that circumstantial timeline evidence shows misconduct, but the evidence equally supports an innocent version of events, the plaintiff's allegations "fall[] flat." *See Digital Mentor, Inc. v. Ovivo USA, LLC*, No. C17-1935-RAJ, 2018 WL 993944, at *6 (W.D. Wash. Feb. 21, 2018). As the Court stated, "there are innocent alternative explanations for the facts alleged [in the original Complaint]" (Dkt. 136 at 18.) Bombardier added no facts in its Amended Complaint to dispel that alternative explanation, thus not meeting its burden. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." (quotation omitted) (emphasis original)).

### c.     MITAC America has not acquired, disclosed or used Bombardier's purported trade secrets.

MITAC America has never acquired, disclosed or used the eleven documents, and there is no threat of it doing so. MITAC America retained a forensic expert to investigate whether the eleven documents are or have ever been stored on any of MITAC America's servers or on the MITAC America computers used by the named defendants. *See* Nguyen Decl. The investigation found no such documents. *Id.*

MITAC America also instructs new employees not to use any trade secrets they may have acquired from their former employers. Anderson Decl. ¶ 42. This makes Bombardier unlikely to succeed on its misappropriation claims. *See Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 737 F.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Supp. 2d 1257, 1267 (E.D. Wash. 2010) (plaintiffs unlikely to succeed on misappropriation claim where they cited no evidence that any former employee disclosed or used confidential information for the defendant's benefit and where evidence showed that executive of defendant specifically told the plaintiff's former employees not to take or use any non-public information).

Lacking evidence, Bombardier appears to rely on the doctrine of "inevitable disclosure," albeit without identifying it as such. (*See* Dkt. 4 at 20.) That doctrine "permits a plaintiff to prove trade secret misappropriation by showing that the defendant's new employment will inevitably lead to reliance on plaintiff's trade secrets." *Edifecs Inc. v. TIBCO Software Inc.*, 756 F. Supp. 2d 1313, 1318 n.2 (W.D. Wash. 2010). Bombardier suggests a similarity in jobs at AeroTEC means they will disclose trade secret information to MITAC America. (*See* Dkt. 4 at 20.) This argument tries to convert nondisclosure obligations into impermissible "noncompetition agreement[s] of infinite duration." *Amazon.com, Inc. v. Powers*, No. C12-1911RAJ, 2012 WL 6726538, at *7 (W.D. Wash. Dec. 27, 2012) (J. Jones). Washington courts have never endorsed the doctrine, *see Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810, 828 (2018), and the DTSA rejects it by proscribing injunctive relief that would "prevent a person from entering into an employment relationship." 18 U.S.C. § 1836(b)(3)(A)(i)(I).

Regardless, the doctrine is inapplicable; Bombardier has not shown the individuals "cannot do [their] new job[s]" without relying on the eleven documents. *See Amazon.com*, 2012 WL 6726538, at *7, 11. The significant differences between Bombardier's aircraft and the MRJ mean that each has distinct certification challenges. The individuals can work on those unique challenges without using any purportedly secret information.

Bombardier's claims also fail to the extent Bombardier relies on a "threatened" misappropriation theory. Little Washington law exists on this theory. *See Edifecs*, 756 F. Supp. 2d at 1318. Under comparable California law, "threatened misappropriation means a threat by a defendant to misuse trade secrets, manifested by words or conduct, where the evidence indicates imminent misuse." *Id.* at 1319 (quoting *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501,

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

527 (2008)). Here, MITAC America's words and conduct show no risk. MITAC America's internal policies show its intent to avoid acquiring any Bombardier trade secret information. MITAC America also offered to agree to the protection Bombardier seeks with its motion (which Bombardier refused). *See Nat'l City Bank*, 737 F. Supp. 2d at 1267; Riedinger Decl. Ex. A.

Bombardier failed to show misappropriation—actual, inevitable or threatened. *See Desert Sun Net LLC v. Kepler*, No. C06-1041P, 2006 WL 3091170, at *8 (W.D. Wash. Oct. 27, 2006) (finding "vague and conclusory" allegations of misappropriation insufficient to show likely success on merits); *see also Nat'l City Bank*, 737 F. Supp. 2d at 1267.

### d.   MITAC America does not have the required knowledge.

Bombardier has no evidence that MITAC America acquired or used secrets *knowing or having reason to know* they were improperly acquired. *See* 18 U.S.C. § 1839(5)(A),(B); RCW 19.108.010(2)(a),(b). "Liability by association is not enough." *Blue Star Land Servs., LLC v. Coleman*, No. CIV-17-931-R, 2017 WL 6210901, at *8 (W.D. Okla. Dec. 8, 2017); *Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 982 (D. Ariz. 2015). Bombardier failed to identify anyone at MITAC America who allegedly took or viewed a secret. (*See* Dkt. 136 at 19.)

### 2.   Bombardier failed to identify protectable trade secrets.

Bombardier is further unlikely to succeed because the eleven documents are not "trade secrets." A "trade secret" must be information that:

> derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3)(B). The WUTSA definition of "trade secret" is closely similar. *See* RCW 19.108.010(4)(a). Bombardier bears the burden of proving that the documents contain protectable trade secrets. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F. 2d 511, 522 (9th Cir. 1993); *Boeing Co. v. Sierracin Corp.*, 108 Wn. 2d 38, 49 (1987).

Bombardier's motion limits its purported "trade secrets" to information in the eleven

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

documents related to the "regulatory approval process." (Dkt. 4 at 14.) Bombardier says the documents relate to showing two systems in the CSeries and one in the Global 7000 comply with government regulations. But Bombardier never identifies the applicable regulations or what information about the regulatory process is a trade secret.

First, Bombardier has not shown that the eleven documents contain non-public information about the regulatory approval process. The regulations are public, the industry standards are public, information about how to comply with the regulations is public, designs are routinely disclosed via published patent applications, systems are designed and developed by others, and submissions to the FAA are subject to FOIA requests. Bombardier has not shown that the documents contain non-public, proprietary information about the regulatory process. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."). MITAC America's experts reviewed Bombardier's purported trade secrets and found no non-public information about the "regulatory approval process." Boyd Decl. ¶ 63; Hansman Decl. ¶¶ 39, 54.

Second, Bombardier failed to show that the supposed "regulatory approval" information derives its value from being secret. The eleven documents discuss a few details of a few systems. Bombardier does not explain how its methods of certifying those specific systems would be relevant, let alone helpful, to different designs. For example, Bombardier contends that a reader will know "with greater certainty the quantity and quality of data needed for regulatory approval." (*See, e.g.*, Dkt. 5 ¶¶ 7, 12, 25.) But the quantity and quality of data needed to show compliance by a SmartProbe-based system does not help certify a conventional system.

Finally, Bombardier is unlikely to show that it took reasonable measures to protect the eleven documents. *See* 18 U.S.C. § 1839(3)(A); RCW 19.108.010(4)(b) (a trade secret owner must take reasonable measures to keep information secret). Bombardier, a multi-billion-dollar company with 69,000 employees, neglected to undertake the most basic step to protect its purported trade secrets: entering into confidentiality agreements with its employees who were

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

given access to the allegedly top-secret information. *See Niemi v. Am. Axle Mfg. & Holding, Inc.*, No. 269155, 2007 WL 29383, at *2 (Mich. Ct. App. Jan. 4, 2007) (absence of written confidentiality agreements belied plaintiff's claim that it undertook "reasonable efforts"); *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002) (absence of written confidentiality agreement is an "important factor to consider in determining whether reasonable steps were taken").

Moreover, Bombardier employees regularly sent confidential materials to their personal email accounts to work at home and could do so under the Bombardier "Code." (Dkt. 1-13 at 18); *see, e.g.*, *Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996) (evidence that employees were allowed to take purported trade secret materials home undercut reasonableness of security measures); *Allied Supply Co., Inc. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) (same).

### 3. Bombardier failed to show standing.

Bombardier sold its interest in the CSeries in 2018, *see* Riedinger Decl. Ex. B, so it might not have standing to pursue claims on CSeries information. This fact undermines any likelihood of success. *See* 18 U.S.C. § 1839(4) ("owner" of trade secrets means "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed").

Bombardier is unlikely to succeed on its claims against MITAC America.

### B. No Irreparable Harm Is Present.

Bombardier's only alleged harm is the potential "revival of the Japanese aircraft manufacturing industry as a whole." (Dkt. 4 at 20-21.) This argument is speculation and sensationalism. *See Berkley Risk Adm'rs Co. v. Accident Fund Holdings, Inc.*, No. 16-2671, 2016 WL 4472943, at *4 (D. Minn. Aug. 24, 2016) ("remote and speculative" claims of competitive harm insufficient to demonstrate irreparable harm); *Jay's Custom Stringing, Inc. v. Yu*, No. 01CIV.1690, 2001 WL 761067, at *8 (S.D.N.Y. July 6, 2001) ("If irreparable harm is remote, speculative, or a mere possibility, the motion must be denied."). Certifying an airplane requires

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   submission of hundreds of thousands of documents relating to numerous systems[6]; Bombardier's

2   suggestion that eleven documents related to just three such systems are the key to the revival of

3   an entire nation's aircraft industry is wrong. Plus, Bombardier has already achieved type

4   certification for both the CSeries and Global 7000 aircraft. *See* Riedinger Decl. Exs. E, F.

5     Bombardier's real complaint is that it will have to compete with the MRJ. That is not

6   irreparable harm; it is a normal part of a market economy. *See Costco Wholesale Corp. v. Hoen*,

7   No. C04-360P, 2006 WL 2645183, at *5 (W.D. Wash. Sept. 14, 2006) ("[T]he mere existence of

8   competition is not irreparable harm, in the absence of substantiation of severe economic

9   impact.") (internal citation omitted). And if Bombardier is arguing it might lose sales, that injury

10  could be remedied with money damages, precluding a preliminary injunction. *See Katch, LLC v.*

11  *Sweetser*, 143 F. Supp. 3d 854, 874 (D. Minn. 2015) ("Normally, lost profits and lost business

12  can be readily calculated and redressed through monetary relief.") (internal quotation omitted).

13    More glaring is that the alleged misappropriation occurred three years ago. (Dkt. 4 at 5-6,

14  18.) Bombardier's only explanation is that it waited until it discovered evidence "indicating

15  imminent and continued use of Bombardier's trade secrets." (Dkt. 4 at 22.) Bombardier supplies

16  no supporting facts. It could have asserted its claims, weak as they are, immediately upon

17  learning that the individuals began working for AeroTEC. Any alleged harm would have

18  happened long ago. *See First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp.

19  2d 194, 235-36 (M.D. Pa. 2001) ("A preliminary injunction is not a vehicle through which a

20  plaintiff can seek correction of past wrongs."). Bombardier's delay is fatal to its irreparable harm

21  argument. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (district court did not

22  abuse discretion by finding that plaintiff's delay in seeking injunctive relief undercut claim of

23  irreparable harm); *Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121,

---

[6] *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 805 n.7 (1984) (it would not be uncommon to submit "300,000 engineering drawings and changes, 2,000 engineering reports, and 200 other reports" during the certification process); (Dkt. 143 ¶ 29.)

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   1128 (W.D. Wash. 2005) (delay in seeking injunctive relief belies claim of irreparable harm).

2   **C.      The Public Interest Disfavors An Injunction.**

3        Bombardier must show that an injunction is in the public interest. *See Winter*, 555 U.S. at

4   9. Where an injunction would adversely affect a public interest, even temporarily, the Court may

5   withhold preliminary relief, even if the postponement may burden the plaintiff. *See Stormans,*

6   *Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

7        The evidence shows that the eleven documents do not contain secrets and have not been

8   misused. Injunctions should not issue where they serve only "to restrain one from doing what he

9   is not attempting and does not intend to do" or to allay the fears and apprehensions of a plaintiff.

10   *Cont'l Grp., Inc. v. Amoco Chem. Co.*, 614 F.2d 351, 358-59 (3d Cir. 1980) (quoting *Standard*

11   *Brands, Inc. v. Zumpe*, 264 F. Supp. 254, 267-68 (E.D. La. 1967)); *see also Tape Head Co., Inc.*

12   *v. R C A Corp.*, 452 F.2d 816 (10th Cir. 1971). Bombardier has failed to show that MITAC

13   America will engage in the conduct sought to be proscribed. *See Memphis Light, Gas & Water*

14   *Div. v. Craft*, 436 U.S. 1, 8 (1978); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576,

15   584 (1971). But the public interest favors promoting competition to produce safe and modern

16   passenger aircraft. Bombardier's proposed preliminary injunction will make it harder to attract

17   and train certification talent, thereby increasing the challenge for anyone (other than

18   Bombardier) to achieve certification.

19        Bombardier seeks to impede movement of certification engineers and lock up their

20   collective wisdom and skill for its sole benefit. An injunction would send a chilling message to

21   aerospace engineers. Granting an injunction in this case would effectively endorse Bombardier's

22   unlawful strategy of seeking to prevent its experienced employees from ever leaving its employ.

23   *See Amazon.com*, 2012 WL 6726538, at *10 (ruling that a company may not "eliminate skilled

24   employees from future competition by the simple expedient of hiring them").

25

26

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    **D.     Bombardier's Proposed Injunction Is Improperly Vague.**

2        The proposed injunction is both overbroad and vague.[7] Bombardier seeks an order giving

3    it the power to move for contempt, so the injunction language must avoid all ambiguity as to

4    what is restrained. Rule 65(d) requires that "[e]very order granting an injunction" must "state its

5    terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."

6    Fed. R. Civ. P. 65(d). Those provisions are "no mere technical requirements." *Schmidt v.*

7    *Lessard*, 414 U.S. 473, 476 (1974). Rather, Rule 65(d) "was designed to prevent uncertainty and

8    confusion on the part of those faced with injunctive orders. . . . " *Id.* The "one basic principle"

9    built into Rule 65(d) is that "those against whom an injunction is issued should receive fair and

10   precisely drawn notice of what the injunction actually prohibits." *Union Pac. R.R. Co. v. Mower*,

11   219 F. 3d 1069, 1077 (9th Cir. 2000) (citing *Granny Goose Foods, Inc. v. Brotherhood of*

12   *Teamsters & Auto Truck Drivers*, 415 U.S. 423, 444 (1974)); *see also United States v. Holtzman*,

13   762 F.2d 720, 726 (9th Cir. 1985) (injunctions must be "reasonably clear so that ordinary persons

14   will know precisely what action is proscribed.").

15       The proposed order would enjoin MITAC America from using, accessing, imitating,

16   copying, disclosing, or making available any information derived from the eleven documents.

17   (*See* Dkt. 4-1 ¶¶ 1-2.) Yet those documents are filled with public information. (*See, e.g.*, Dkt. 5

18   ¶ 15 ("[A]dmittedly some information contained in these documents [] would be known or

19   readily ascertainable by those with experience in the field . . . .")); *see also* Hansman Decl. ¶ 39;

20   Boyd Decl. ¶ 63. Bombardier has not sought to limit the injunction to just the alleged secrets in

21   the eleven documents, and has not identified the allegedly secret information. The proposed

22   injunction thus tries to cover "using" public information contained in any of the eleven

23   documents. *See Am. Can Co. v. Mansukhani*, 742 F.2d 314, 333 (7th Cir. 1984) (vacating vague

24   preliminary injunction stating: "[D]etermining whether defendants' products are derived from

25   _____

26       [7] Bombardier has not yet filed a narrower proposed order, despite representing that it is narrowing the
scope of its motion. (*See* Dkt. 47 at 8.)

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

plaintiff's trade secrets rather than from public information can be a very difficult task . . . . The defendants cannot be expected to decide, even with caution, under the threat of contempt whether their conduct is lawful without more guidance from the court.").

The terms "imitating" and "derived from" render the proposed injunction impermissibly vague. If Bombardier intends the terms to preclude MITAC America in any way from independently developing information, then any such restriction is inappropriate and overbroad. Trade secret protection does not extend to independent creation. *See Modumetal*, 425 P.3d at 881 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974)).

**E.     The Balance of Hardships Favors MITAC America.**

The balance of hardships weighs against an injunction. Bombardier has not shown the existence of protectable trade secrets, misappropriation (real or threatened), or that it will be irreparably harmed absent an injunction. Both the CSeries and the Global 7000 aircraft have already achieved type certification. *See* Riedinger Decl. Exs. E, F. Plus, Bombardier has transferred the CSeries aircraft to a new company, so Bombardier's interest in the CSeries is lessened. Granting an injunction would improperly further Bombardier's plan to impede the mobility of its former employees. *Cf. Amazon.com*, 2012 WL 6726538, at *10-11 ("Amazon cannot eliminate skilled employees from future competition by the simple expedient of hiring them. . . .").

The adverse publicity from even a narrow injunction could cause MITAC America to lose MRJ sales, due to customer perception that an injunction could impede MITAC America's ability to timely deliver aircraft. *See Active Network, Inc. v. Elec. Arts Inc.*, No. 10-cv-1158, 2010 WL 3463378, at *6 (S.D. Cal. Aug. 31, 2010) (balance of equities weighed against injunction where defendant faced loss of unrecoverable sales potential); *Allora, LLC v. Brownstone, Inc.*, No. 1:07CV87, 2007 WL 1246448, at *7 (W.D.N.C. Apr. 27, 2007) (balance of hardships favored defendants, who faced "massive damage" to their "reputations and financial stability" that was "much more obvious and immediate than harm" alleged by plaintiff).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**F.**     **If An Injunction Issues, The Bond Should Be Significant.**

If the Court enters an injunction, it should require a significant bond to account for the risk of lost MRJ sales. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *Masters Software, Inc. v. Discovery Commc'ns, Inc.*, 725 F. Supp. 2d 1294, 1308-09 (W.D. Wash. 2010) (bond amount must take into account "the potential financial ramifications of entering a preliminary injunction") (internal quotation marks omitted); *Mead Johnson & Co. v. Abbott Labs*, 201 F.3d 883, 888 (7th Cir. 2000) (in setting bond amount, courts "should err on the high side"). In cases between competitors, "bonds must reflect full costs" because such lawsuits "often are characterized by firms' desire to heap costs on their rivals, imposing marketplace losses out of proportion to the legal merits." *Id*. "Shifting back to the plaintiff the complete injury occasioned by the errors that sometimes occur when preliminary relief is issued after an abridged judicial inquiry will hold in check the incentive business rivals have to pursue relief that gives them a competitive edge . . . ." *Id.*

Bombardier estimates the market for regional jets of the MRJ's size (60 to 100 passengers) to be $240 billion between 2017 and 2036. Riedinger Decl. Ex. D at 6. That amounts to $12 billion per year. Loss of just 10% of those sales for two years would eliminate $240 million in revenue. The Court should require Bombardier to post a bond of at least $240 million.

**IV.**     **Bombardier's Amended Complaint Does Not Provide Any Additional Justification for a Preliminary Injunction**

Bombardier relied on its original Complaint to support its motion for a preliminary injunction. Bombardier's amended Complaint modified allegations previously relied on to support its motion, added new allegations, and added a new legal theory. But the motion still fails to meet the burden needed to obtain the extraordinary relief of a preliminary injunction.

No *modified allegations* show misappropriation. Bombardier relied on paragraphs 35 to

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

48 as support for MITAC not receiving certification for "nearly a decade." (*See* Dkt. 4 at 16, 18.) Bombardier modified paragraphs 47 and 48 to cite new internet articles (Denkenberger Decl., Exs. 35-36). (*See* Dkt. 143 ¶¶ 49, 50.) Those new articles do not show or suggest that MITAC America used or acquired trade secrets, or had the requisite knowledge. Bombardier relied on paragraphs 62 to 64 of its original Complaint as support for Dornéval supposedly "maintain[ing] contact with the Corporate Defendants during her final months at Bombardier" and misappropriating trade secrets. (*See* Dkt. 4 at 18.) Bombardier modified paragraphs 62 and 64 to allege that Dornéval signed a 2004 version of Bombardier's Code of Ethics and worked in Canada. (*See* Dkt. 143 ¶¶ 71, 73.) Where Dornéval worked and what Code of Ethics document she signed does not show that MITAC America used or acquired trade secrets, or had the requisite knowledge. Further, those cited paragraphs do not even support Bombardier's claim that Dornéval maintained contact with MITAC America.

Bombardier relied on paragraphs 49 to 51 of its original Complaint to say "Corporate Defendants then set their sights on recruiting Bombardier personnel" with experience with clean-sheet certification. (*See* Dkt. 4 at 19.) Bombardier modified paragraphs 49 and 50. (*See* Dkt. 143 ¶¶ 51-52.) Paragraph 51 adds a contention that Ayre emailed Bombardier trade secrets to "Frederic," who Bombardier speculates is a MITAC employee or contractor.[8] The email is not in the record. Bombardier then speculates that the alleged disclosure to Frederic led to an MRJ redesign, but includes no explanation of what was redesigned or how the purported disclosure to Frederic would even be relevant. Bombardier's speculation does not show MITAC America used or acquired trade secrets, or had the requisite knowledge. Ayre is not even a MITAC America employee. Paragraph 50 adds a conclusion that Korwin-Szymanowski organized a job fair on behalf of MITAC America. But "merely recruiting another company's employees does not meet the knowledge requirement for trade secret misappropriation." (Dkt. 136 at 19.) Nor does this show that MITAC America used or acquired trade secrets.

---

[8] MITAC America understands Ayre will explain that "Frederic" was a consultant to Bombardier.

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

No *new allegations* show misappropriation. The Amended Complaint has three new allegations not currently included in the motion. First, Bombardier now speculates that its letters demanding that all recruitment efforts stop were shared with MITAC America. (*See* Dkt. 143 ¶¶ 60, 65-66.) This Court has decided that "none of Bombardier's alleged requests to stop recruitment identified a specific trade secret," making those letters insufficient to impute knowledge to its readers. (*See* Dkt. 136 at 31.) Even if MITAC America saw the letters, that does not impute the knowledge to MITAC America. Nor does Bombardier's speculation show that MITAC America used or acquired trade secrets.

Bombardier also adds allegations regarding Korwin-Szymanowski of AeroTEC. (*See* Dkt. 143 ¶¶ 54-58.) Bombardier asserts he was acting as MITAC America's agent. But the facts alleged do not show agency because nothing shows that MITAC America was controlling the manner of his performance. *See Barker v. Skagit Speedway, Inc.*, 119 Wn. App. 807, 814 (2003) ("Consent between the parties and control are the essential elements of an agency relationship. Control establishes agency only if the alleged principal controls the manner of performance."). Indeed, in a declaration contemporaneously filed by AeroTEC, Korwin-Syzmanowski explained that he is not an agent of MITAC America, and the Consulting Agreement between MITAC America and AeroTEC expressly declares that no agency exists. Riedinger Decl. 5-7-19 Ex. A, ¶ 3.2.1. Nor would it matter if he was an agent, because Bombardier only speculates that he knew or should have known of the alleged misappropriation. He is not alleged to have misappropriated any of the documents. Rather, Bombardier speculates that he: could have supervised a defendant who allegedly took a document and could have reviewed their work (which could have used Bombardier information), could have recognized the work as using a Bombardier secret (even though nothing suggests he ever saw any of the 11 documents), and thus knew or should have known about one of the 11 allegedly misappropriated documents. (*See* Dkt. 143 ¶¶ 56-57.) This is not evidence. And the verification at the end of the Amended Complaint does not purport to verify any of this speculation (it is not "facts concerning and

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

relating to Bombardier"). None of the new allegations regarding Korwin-Szymanowski show MITAC America used or acquired trade secrets, or had the requisite knowledge.

Finally, Bombardier adds allegations concerning Mr. Ayre and Mr. Fukuda, of MITAC. (*See* Dkt. 143 ¶ 78.) Yet neither Ayre nor Fukuda are MITAC America employees, so these new allegations show nothing about MITAC America. Bombardier also cites, but does not address, an unredacted email showing Ayre copied language from the Federal Register. (*See* Dkt. 126 (MITAC Motion to Dismiss) at 18-19); (Dkt. 128, Exs. A, B.) Bombardier cannot show that a public FAA rule is a Bombardier trade secret. These new allegations do nothing to help Bombardier's misappropriation claim.

Bombardier's *new legal theory* does not support misappropriation. Bombardier argues that MITAC America is MITAC's "alter ego." (*See* Dkt. 143 ¶¶ 83-95.) Yet Bombardier is unlikely to succeed against MITAC, as will be detailed in MITAC's forthcoming opposition. It therefore does not matter whether MITAC America is MITAC's "alter ego." And an "alter ego" theory applies only when treating the entities separately causes an injustice. *See In re Wade Cook Financial Corp.*, 375 B.R. 580, 599 (9th Cir. 2007) ("There must be such a commingling of the affairs of two corporations as to work an injustice on third parties if their separate status is recognized….") (citing *H.E. Briggs & Co. v. Harper Clay Products Co.*, 272 P. 962, 963 (1928)). MITAC is a defendant, so Bombardier charges against MITAC can be addressed directly with MITAC; no injustice will result by declining to conflate the two entities.

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 24

1    RESPECTFULLY SUBMITTED this 7th day of May 2019.

2

3

4                                              */s/ Jerry A. Riedinger*
                                               Jerry A. Riedinger, WSBA No. 25828
5                                              Mack H. Shultz, WSBA No. 27190
                                               Mary Z. Gaston, WSBA No. 27258
6                                              **Perkins Coie LLP**
                                               1201 Third Avenue, Suite 4900
7                                              Seattle, WA 98101-3099
                                               Telephone: 206.359.8000
8                                              Facsimile: 206.359.9000
                                               E-mail: JRiedinger@perkinscoie.com
9                                              E-mail: MShultz@perkinscoie.com
                                               E-mail: MGaston@perkinscoie.com

10                                             Attorneys for Defendant Mitsubishi Aircraft
                                               Corporation America Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MITAC AMERICA'S UPDATED OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION (No. 2:18-cv-1543 JLR) – 25

1

**CERTIFICATE OF SERVICE**

2       I certify under penalty of perjury that May 7, 2019, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4  to the email addresses indicated on the Court's Electronic Mail Notice List.

5       .

6

7  DATED this 7th day of May, 2019.          */s/Jerry A. Riedinger*
                                             Jerry A. Riedinger, WSBA No. 25828
8                                            **Perkins Coie LLP**
                                             1201 Third Avenue, Suite 4900
9                                            Seattle, WA 98101-3099
                                             Telephone: 206.359.8000
10                                           Facsimile: 206.359.9000
                                             E-mail: jriedinger@perkinscoie.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 2:18-cv-1543 JLR) – 1

121153-0002/142622430.1