THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOMBARDIER INC.,

                Plaintiff,

v.

MITSUBISHI AIRCRAFT
CORPORATION, MITSUBISHI
AIRCRAFT CORPORATION AMERICA,
INC., et al.,

                Defendants.

2:18-cv-1543 JLR

DECLARATION OF HAJIME KANJA IN
SUPPORT OF OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

REDACTED

I, HAJIME KANJA, declare as follows:

1.      I am the Director of IT Planning Group, Office for Mitsubishi Aircraft

Corporation ("MITAC"), which is based in Nagoya, Japan.  I have been seconded to MITAC

from Mitsubishi Heavy Industries, Ltd. ("MHI") since April 2017.  I have been employed by

MHI since April 1994.

2.      Based on information I have been provided, I understand that Bombardier has

alleged that eleven Bombardier documents have been misappropriated, and I understand

Bombardier has provided the file names of the eleven documents to the legal team representing

MITAC in the litigation.  I do not have personal knowledge of the file names of the eleven

documents.

DECLARATION OF HAJIME KANJA    1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

144165738.2

3.    MITAC utilizes seven file servers to which employees can save documents (herein "File Servers"). For purposes of determining whether the eleven identified documents were on the MITAC File Servers, I was asked to perform a file name listing analysis of the File Servers using the search terms attached as Exhibit A. Based on information I have been provided, I understand the search terms were based on the file names of the eleven documents.

4.    In my role at MITAC, I had employees in my group with access to the File Servers conduct the requested search on the File Servers. I provided copies of the results to MITAC's legal team, which I understand intended to deliver the results to KLDiscovery for transmittal to Perkins Coie.

5.    Additionally, in my role at MITAC, I have knowledge of MITAC's electronic document storage system. MITAC uses the e-mail storage system of MHI. The e-mail storage system of MHI saves internal and external electronic correspondence sent or received by MITAC employees.

6.    Makoto Ando is a former MITAC employee who had a MITAC e-mail account while he was seconded from MHI to MITAC. Mr. Ando had a MITAC e-mail account on August 19, 2016.

7.    As the Director of IT Planning Group, IT Office, I have personal knowledge that MITAC employee electronic correspondence is saved on the e-mail storage systems of MHI, and that was also true on August 19, 2016. Those electronic records are maintained in the ordinary course of business at MITAC. I asked MHI to retrieve from the system an August 19, 2016 e-mail that Mr. Ando's e-mail account received from Keith Ayre. I found the e-mail on the e-mail storage system used by MITAC.

8.    A true and correct copy of the e-mail I found is attached to this declaration as Exhibit B. Its addressee was Koki Fukuda, however, I found the e-mail through the account of Mr. Ando, who was copied on the e-mail.

9.    Unless otherwise stated, I have personal knowledge of all the facts stated in this

DECLARATION OF HAJIME KANJA – 2

144165738.2

declaration and, if called to, could and would testify competently thereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __25__ day of April, 2019 at Nagoya, Japan.

神社　一

HAJIME KANJA

DECLARATION OF HAJIME KANJA – 3

144165738.2

1

**CERTIFICATE OF SERVICE**

2        I certify under penalty of perjury that on May 13, 2019, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

4   such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

5        DATED this 13th day of May, 2019.

6
                                    *s/Jerry A. Riedinger*
                                    Jerry A. Riedinger, WSBA No. 25828
7                                   **Perkins Coie LLP**
                                    1201 Third Avenue, Suite 4900
8                                   Seattle, WA 98101-3099
                                    Telephone: 206.359.8000
                                    Facsimile: 206.359.9000
9                                   E-mail: JRiedinger@perkinscoie.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
(No. 2:18-cv-1543 RAJ) – 1

# Exhibit A

## MITAC IT Search Terms

| |
|---|
| *TCCA Skew Detection Presentation* |
| *TCCA Skew Detection* |
| *Temperature, Airspeed, Altitude and Mach Number* |
| *Lag_Effects_in_the_Production_and_Experimental_Pitot-Static_Systems* |
| *Ground Position Errors* |
| *RAA-BA500-418 * |
| *FTP PROD CSeries* |
| *BM*Flight Performances* |
| *TCCA Skew* |
| *Reduction of* |
| *RAA-BA50* |
| *Lag_Effects* |
| *CSeries* |
| *BM7002* |
| *Flight Performances* |
| *Updated with latest Systems and Structure Limits* |
| *RAA-BA503-412* |
| *RAA-BA503-418* |
| *Data Reduction of Ground Position Errors* |
| *RAA-BA500-412* |
| *FTP PROD CSeries Rev 5.0 - 17 November 2016.pdf* |

- 2 -

| *BM7002.02.15.02 - Flight Performance.pdf* |
|---|
| *RAA-BA* |

# Exhibit B



**\<CAUTION\> Re: Question for FAR25.1419 (e) - (h)**

Keith Ayre    宛先: 福田 弘毅                                        2016/08/19 09:05
Cc: 高尾 敬, 梅原 英司, 安藤 真

Dear Fukuda-san,

Thank you for your introduction and I'm very glad to be working with you very soon.  You have asked some interesting questions that deserve detailed answers and due to a lack of time I have only provided some brief answers to your questions below.  Your questions deserve much more discussion so I propose we set a meeting(s) to ensure I have answered all your questions clearly when I arrive in the office in Nagoya.

For your questions about regulation for IPS activation much of the information on the background to the rule is found on the FAA website.  I propose we spend some time reviewing this and how it applies for the MRJ Program. To help answer your question: I would like to know the history about IPS activation/deactivation regulatory requirement, here is the summary extract:

**Summary of the Final Rule**



Following FAR25.1419 (e) - (h) has been added in amendment 25-129 in 2009.

Does this means there was no certification activities related to (e) - (h) before 2009 certified aircraft?
**Yes there were activities before 2009 and when I am in the MRJ office I will be happy to discuss the details on pre-certification activities.**

Does this means there was no regulatory requirement about IPS activation/deactivation before 2009 certified aircraft?
**Due to the icing accidents that had occurred the FAA took the action to formalize certification rules applying to the ice detection systems. It introduced the 3 methods for ice detection:**
The three methods are: (1) Primary ice detection system, (2) visual cues of the first sign of ice accretion combined with an advisory ice detector, and (3) specifying conditions conducive to airframe icing.

Is there no "Primary" or "advisory" ice detector discussion with authority before 2009?
**There were both Primary and Advisory ice detection systems certified with all**

certification authorities before 2009.

How IPS activation/deactivation design been derived for each airframer?
**This is an interesting question as it leads me to ask the certification method of ice detection for the MRJ?  All other programs usually set the intended ice detection method (Primary or Advisory) early in the development program.**

I feel these requirement (e) – (h) seems common technique and seems not new design but this feeling contradicts to adding regulation FAR25.1419 (e) – (h) in 2009.


Best regards,

Keith

Sent from my iPad

On Aug 18, 2016, at 5:28 AM, 福田 弘毅 <koki_fukuda@mitsubishiaircraft.com> wrote:


Dear Keith-san,

This is Koki Fukuda, Team leader of Ice and Rain protection team.
I'm very grad to work with you.

I have question about regulation for IPS activation.

Following FAR25.1419 (e) – (h) has been added in amendment 25-129 in 2009.

Does this means there was no certification activities related to (e) – (h)
before 2009 certified aircraft?
Does this means there was no regulatory requirement about IPS
activation/deactivation before 2009 certified aircraft?
Is there no "Primary" or "advisory" ice detector discussion with authority
before 2009?
How IPS activation/deactivation design been derived for each airframer?

I feel these requirement (e) – (h) seems common technique and seems not new
design but this feeling contradicts
to adding regulation  FAR25.1419 (e) – (h) in 2009.

I would like to know the history about IPS activation/deactivation
regulatory requirement.

Best regards,

K. Fukuda


_____
Sec. 25.1419

 Ice protection.

 [ If the applicant seeks certification for flight in icing conditions, the
airplane must be able to safely operate in the continuous maximum and
intermittent maximum icing conditions of appendix C. To establish this--]
 (a) An analysis must be performed to establish that the ice protection for
the various components of the airplane is adequate, taking into account the
various airplane operational configurations; and

(b) To verify the ice protection analysis, to check for icing anomalies, and to demonstrate that the ice protection system and its components are effective, the airplane or its components must be flight tested in the various operational configurations, in measured natural atmospheric icing conditions and, as found necessary, by one or more of the following means:
 (1) Laboratory dry air or simulated icing tests, or a combination of both, of the components or models of the components.
 (2) Flight dry air tests of the ice protection system as a whole, or of its individual components.
 (3) Flight tests of the airplane or its components in measured simulated icing conditions.
 (c) Caution information, such as an amber caution light or equivalent, must be provided to alert the flightcrew when the anti-ice or de-ice system is not functioning normally.
 (d) For turbine engine powered airplanes, the ice protection provisions of this section are considered to be applicable primarily to the airframe. For the powerplant installation, certain additional provisions of Subpart E of this part may be found applicable.
 * * *
[ (e) One of the following methods of icing detection and activation of the airframe ice protection system must be provided:
 (1) A primary ice detection system that automatically activates or alerts the flightcrew to activate the airframe ice protection system;
 (2) A definition of visual cues for recognition of the first sign of ice accretion on a specified surface combined with an advisory ice detection system that alerts the flightcrew to activate the airframe ice protection system; or
 (3) Identification of conditions conducive to airframe icing as defined by an appropriate static or total air temperature and visible moisture for use by the flightcrew to activate the airframe ice protection system.
 (f) Unless the applicant shows that the airframe ice protection system need not be operated during specific phases of flight, the requirements of paragraph (e) of this section are applicable to all phases of flight.
 (g) After the initial activation of the airframe ice protection system--
 (1) The ice protection system must be designed to operate continuously;
 (2) The airplane must be equipped with a system that automatically cycles the ice protection system; or
 (3) An ice detection system must be provided to alert the flightcrew each time the ice protection system must be cycled.
 (h) Procedures for operation of the ice protection system, including activation and deactivation, must be established and documented in the Airplane Flight Manual.]


 ---


 ====