Honorable James L. Robart

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

BOMBARDIER INC.,

9                    Plaintiff,

10        v.

11

MITSUBISHI AIRCRAFT CORPORATION,
12  MITSUBISHI AIRCRAFT CORPORATION
   AMERICA INC., AEROSPACE TESTING
13  ENGINEERING & CERTIFICATION INC.,
   MICHEL KORWIN-SZYMANOWSKI,
14  LAURUS BASSON, MARC-ANTOINE
   DELARCHE, CINDY DORNÉVAL, KEITH
15  AYRE, AND JOHN AND/OR JANE DOES 1-
   88,
16

17                    Defendants.

18

No. 2:18-cv-01543-JLR

BOMBARDIER INC.'S
OPPOSITION TO MITSUBISHI
AIRCRAFT CORPORATION
AMERICA INC.'S MOTION TO
DISMISS FIRST AMENDED
COMPLAINT WITH PREJUDICE

**NOTE ON MOTION
CALENDAR
JUNE 7, 2019**

19

20

21

22

23

24

25

26

27

BOMBARDIER INC.'S OPPOSITION TO MITAC
AMERICA INC.'S MOTION TO DISMISS (2:18-
cv-01543-JLR) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   RELEVANT FACTS ................................................................................... 2

III.  ARGUMENT .............................................................................................. 4

    A.   Legal Standard ................................................................................... 4

    B.   MITAC America's Admissions Are Sufficient to Deny Its Motion ................. 5

        1.   MITAC America admits that Bombardier alleged facts to support the contention that MITAC America had knowledge of trade secret misappropriation ................................................................. 5

        2.   MITAC America admits that Bombardier alleged facts to support the contention that MITAC America had knowledge of Bombardier's valid business expectancy to adhere to its projected certification schedules ........................................................... 11

    C.   The FAC Contains Additional Allegations Omitted, Mischaracterized and/or Misconstrued by MITAC America that Justify Denial of the Motion .............................................................................................. 13

        1.   MITAC America disregards the statutory "reason to know" standard used for both federal and state trade secret misappropriation ..................................................................... 14

        2.   MITAC America misguidedly argues that Bombardier failed to identify its trade secrets with sufficient specificity to provide adequate notice .................................................................... 15

        3.   MITAC America inaccurately frames Bombardier's claims as predicated on "poaching" ................................................... 16

        4.   MITAC America makes a number of other erroneous representations and fatally flawed arguments ...................................... 17

    D.   Alternatively, Limited Discovery for Purposes of Investigating Bombardier's Alter Ego Theory Is Appropriate Prior to Dismissal ................. 22

IV.   CONCLUSION ......................................................................................... 23

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1

## TABLE OF AUTHORITIES

2    **Cases**

3    *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)......................................................8

4    *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).....................................................................4, 6, 10, 11

5    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ...........................................5

6    *Barker v. Skagit Speedway, Inc.,* 119 Wn. App. 807 (2003)..................................................8, 9

7    *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) .........................................19

8    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).........................................................4, 5, 8, 10

9    *Busk v. Hoard*, 396 P.2d 171 (1964) ..............................................................................9, 18, 21

10   *Concha v. London*, 62 F.3d 1493 (9th Cir. 1995).......................................................................8

11   *Daimler AG v. Bauman*, [571] U.S. [117], 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) ..............19

12   *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)..................................................................19

13   *Edwards v. Marin Park, Inc.*, 356 F.3d 1058  (2004) .............................................................20

14   *Fin. Express LLC v. Nowcom Corp.*, No. SACV-07-01225-CJC(ANx), 2008 WL 11342755

15       (C.D. Cal. Mar. 6, 2008)......................................................................................................22

16   *Hulbert v. Gordon*, 824 P.2d 1238 (Wash. App. 1992)......................................................18, 21

17   *Lilith Games (Shanghai) Co. v. uCool, Inc*., No. 15-cv-01267-SC, 2015 WL 4128484  (N.D.

18       Cal. July 8, 2015)................................................................................................................15

19   *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) ..................4

20   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008).............................20

21   *Microsoft Corp. v. Baker*, __ U.S. __, 137 S.Ct. 1702, 198 L.Ed.2d 132 (2017) ....................8

22   *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531 (9th Cir. 1989) .......................................6

23   *Optimer Int'l, Inc. v. Bellevue, L.L.C.*, 134 Wn. App. 1027 (2006) .........................................9

24   *Pleas v. City of Seattle*, 774 P.2d 1158 (1989).......................................................................21

25   *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)...........................................................19, 20

26   *Select Timber Prods. LLC v. Resch*, No. 3:17-cv-00541-HZ, 2017 WL 3709066 (D. Or. Aug.

27       27, 2017)..............................................................................................................................14

BOMBARDIER INC.'S OPPOSITION TO MITAC
AMERICA INC.'S MOTION TO DISMISS (2:18-
cv-01543-JLR) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)...................................................8

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)...........................4

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010).................................4

*Top Notch Sols., Inc. v. Crouse & Assocs. Ins. Brokers, Inc.*, No. C17-827-TSZ, 2018 WL 2427471 (W.D. Wash. May 30, 2018) ................................................................22

*United States ex rel. Vatan v. QTC Medical Servs., Inc.*, 721 F. App'x 662 (9th Cir. 2018) 6, 7

*Windisch v. Hometown Health Plan, Inc.*, No. 3:08-CV-00664-RCJ-(RAM), 2010 WL 786518 (D. Nev. Mar. 5, 2010) .........................................................................23

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998)..................4, 9

**Statutes**

18 U.S.C. § 1839(5).................................................................................................14

RCW 19.108.010(2)(a).............................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    Plaintiff Bombardier Inc. ("Bombardier") respectfully responds to Defendant

2  Mitsubishi Aircraft Corporation America, Inc.'s ("MITAC America") Motion to Dismiss First

3  Amended Complaint with Prejudice, filed on May 14, 2019 (Dkt. # 180, "Motion").

4              **I.      INTRODUCTION**

5    MITAC America's Motion is properly denied for a host of reasons, not the least of

6  which is because it does nothing more than waste the limited resources of this Court and

7  prolong the unnecessary delay in proceeding to the merits of Bombardier's claims.  Indeed,

8  the Court need not go beyond the admissions made in the Motion itself to properly deny

9  MITAC America's request. For example, MITAC America admits that Bombardier amended

10  its Complaint to include allegations that MITAC America (1) acquired knowledge of potential

11  trade secret misappropriation, as well as Bombardier's business expectancy to adhere to its

12  certification schedules, through counsel of its corporate parent (*id.* at 2-3); (2) acquired such

13  knowledge through the agency of Defendant Korwin-Szymanowski (*id.* at 3); and (3) is liable

14  for misappropriation on an alter ego theory based on a number of specifically alleged facts,

15  where such facts include MITAC America's own out-of-court statements (*id*. at 4).  Despite

16  further admitting that Bombardier need only "nudge Bombardier's misappropriation claims

17  . . . from conceivable to plausible" (Motion at 6 (citations omitted)), MITAC America

18  continues to maintain that Bombardier has insufficiently pled its claims.  It is wrong.

19    The plethora of additional alleged facts contained in Bombardier's First Amended

20  Complaint ("FAC," Dkt. # 143)—many of which MITAC America ignores—are more than

21  sufficient to preserve Bombardier's claims.  MITAC America would have the Court believe

22  that because many of the facts alleged are done so on "information and belief," those facts

23  must be disregarded as implausible.  Again, MITAC America is wrong, and it plays a

24  dangerous game.  As to the former, those alleged facts are to be taken as true for purposes of

25  adjudicating a motion to dismiss, as MITAC America well knows.  As to the latter, the

26  "information and belief" upon which Bombardier relies is more than plausible because such

27  information, in some instances—again as MITAC America well knows—***is information***

BOMBARDIER INC.'S OPPOSITION TO MITAC
AMERICA INC.'S MOTION TO DISMISS (2:18-
cv-01543-JLR) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*provided by MITAC America's own counsel of record during these proceedings*, and in other instances, constitutes ***explicitly quoted party admissions***.   These purportedly implausible allegations are not "without support" (Motion at 18); do not constitute "conjecture" (*id.* at 8); and are not "unsubstantiated speculation" (*id.* at 9 n.6) as MITAC America misleadingly contends.

Despite the manner in which MITAC America frames them, the claims against MITAC America in Bombardier's FAC are far more than the type of "wholly conclusory statement of claim" that warrants dismissal under *Iqbal*/*Twombly* pleading standards. Bombardier pleads a host of substantiated facts to supports its claims.   Under the proper application of *Iqbal*/*Twombly*, MITAC America's Motion is properly denied.

## II.     RELEVANT FACTS

On April 15, 2019, this Court ruled on pending Motions to Dismiss filed by MITAC America, Aerospace Testing Engineering & Certification Inc. ("AeroTEC"), Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval.  (Order, Dkt. # 136.)  While leaving the majority of Bombardier's claims intact, the Court identified two deficiencies in the trade secret misappropriation and tortious interference claims alleged against MITAC America. With respect to Bombardier's trade secret claims, the Court noted that Bombardier had not adequately alleged that MITAC America knew or had reason to know that Bombardier's trade secrets had been misappropriated.  (*Id.* at 19.)   As to Bombardier's tortious interference claims, the Court noted that Bombardier had not sufficiently alleged that MITAC America had induced or caused a breach or termination of Bombardier's valid business expectancy to adhere to its aircraft certification schedules.  (*Id.* at 36.)  The Court accordingly dismissed Bombardier's claims against MITAC America and granted Bombardier leave to amend its Complaint.  (*Id.* at 45.)

In its FAC, Bombardier supplemented the allegations of its initial Complaint to address the deficiencies identified in the Court's April 15 Order.  With respect to its trade

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

secret misappropriation claim, Bombardier's supplemental allegations included, but were not limited to, the following:

- MITAC America had knowledge of trade secret misappropriation by virtue of Defendant Korwin-Szymanowski's apparent agency relationship on behalf of MITAC America, substantiated at least in part by Defendant Korwin-Szymanowski's own declaration, and by virtue of the fact that Korwin-Szymanowski knew or should have known of the trade secret misappropriation at issue due to his previous tenure at Bombardier and his association with and supervision of the other individual defendants (FAC, Dkt. # 143, ¶¶ 56-58);

- MITAC America had knowledge of trade secret misappropriation by virtue of the communications Bombardier had with in-house attorneys responsible for the interests of MITAC America, its corporate parent MITAC Japan, and its corporate grandparent Mitsubishi Heavy Industries (*id.* ¶¶ 60, 65-66);

- MITAC Japan's knowledge of trade secret misappropriation is properly imputed to MITAC America under an alter ego theory based on a number of specifically pled publicly available facts and party admissions (*id.* ¶¶ 83-95, 130-131, 143);

- MITAC America had knowledge of trade secret misappropriation by virtue of the fact that "MITAC America employees recruited from Bombardier" would and in fact did recognize Bombardier trade secret information during the course of their employment with MITAC America (*id.* ¶ 129); and

- MITAC America had knowledge of trade secret misappropriation to the same extent MITAC Japan does because "according to MITAC's own public statements, the institutional knowledge of MITAC and MITAC America . . . are coextensive in scope." (*id.* ¶ 130).

With respect to Bombardier's tortious interference claims, Bombardier also alleged a number of additional facts to show that MITAC America's actions caused an improper and otherwise unexpected delay to Bombardier's C-Series and Global 7000/8000 certification

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

schedules and resulting damage.  (*Id.* ¶¶ 82, 184-189.)  Bombardier may not have identified any particular former Bombardier employee now in the employ of MITAC America, but Bombardier did allege facts to show (1) that MITAC America continued recruiting Bombardier personnel as evidenced at least by two specific recruiting events held in close proximity to Bombardier facilities; (2) that MITAC America engaged in these recruiting efforts for the improper purpose of delaying Bombardier's certification activities because it persisted in its conduct after receiving actual notice of the detrimental effect it would have on Bombardier; and (3) that MITAC America's actions in fact caused harm to Bombardier.  (*Id.*)

## III.   ARGUMENT

### A.   Legal Standard

This Court recently set forth the applicable legal standard governing motions to dismiss (Order, Dkt. # 136, at 10-11):

> Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  . . . Nor does a complaint suffice

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.      MITAC America's Admissions Are Sufficient to Deny Its Motion**

Without referencing Bombardier's FAC, the Court has all the information it needs to properly deny MITAC America's Motion based on what MITAC America admits in the Motion itself.  Specifically, MITAC America undermines each of its own arguments as follows:

**1.      MITAC America admits that Bombardier alleged facts to support the contention that MITAC America had knowledge of trade secret misappropriation**

MITAC America dedicates over 13 pages of its brief to argue that Bombardier failed to adequately plead facts to establish that MITAC America possessed the requisite knowledge to be liable for trade secret misappropriation (Motion, Dkt. # 180, at 5-18), but it admits that Bombardier advances three separate theories not previously pleaded in the effort to establish requisite knowledge (*id.* at 2).  Further, as detailed below, MITAC America admits that Bombardier has pleaded specific factual allegations in support of each theory.  MITAC America's chief contention is that these facts are "conclusory" (*id.* at 1, 9, 10, 11 n.8, 16 n.13); "conjecture" (*id.* at 3, 8); and/or "zealous" and/or "unsubstantiated" "speculation" (*id.* at 3 n.3, 9 n.6).  But as also explained below, even a cursory review of the revisions identified in Exhibit A to the Declaration of Mary Gaston (Dkt. # 181, "Gaston Decl.") belie that contention.

**a.      MITAC America admits Bombardier pleaded knowledge of trade secret misappropriation through MHI counsel**

The crux of MITAC America's strategy in filing its Motion is exemplified in its argument attempting to marginalize Bombardier's contention that MITAC America had the requisite knowledge of misappropriation by virtue of the letters Bombardier previously sent to

BOMBARDIER INC.'S OPPOSITION TO MITAC AMERICA INC.'S MOTION TO DISMISS (2:18-cv-01543-JLR) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

MITAC America's corporate grandparent's (MHI) in-house counsel ("MHI correspondence"). Specifically, MITAC America admits that Bombardier set forth factual allegations to support its claim, but it contends that "Bombardier *speculates* that its letters to MHI were shared with MITAC America"; and that there are no "other facts to support Bombardier's *conjecture* that the letters migrated from one company to another." (Motion, Dkt. # 180, at 3 (emphases added).) MITAC America is well aware that the allegations are based on something more than mere speculation—*it is based on representations made during these proceedings by MITAC America's own counsel of record.* (*See* FAC, Dkt. # 143, ¶ 88 (citing Declaration of John Denkenberger, Dkt. # 107, ¶¶ 2-3 ("[C]ounsel of record for MITAC America has made several representations . . . concerning the relationships among MITAC America, Mitsubishi Aircraft Corporation . . ., and . . . MHI—and particularly of their in-house counsel structure" . . . [and that] MITAC America . . . do[es] not employ [its] own in-house counsel but instead rel[ies] on in-house counsel employed by MHI.")).) That MITAC America would mislabel Bombardier's allegations as "conjecture" under these circumstances is suspect at best, particularly when coupled with MITAC America's failure to even attempt to rebut the allegation.

Moreover, whether Bombardier asserts a claim based on speculation does not render it insufficient to withstand a motion to dismiss. *See*, *e.g.*, *United States ex rel. Vatan v. QTC Medical Servs., Inc.*, 721 F. App'x 662, 664 (9th Cir. 2018) (reasoning that "speculation does not prevent [plaintiff] from asserting a claim, based on information and belief") (citing *Iqbal*, 556 U.S. at 678). Indeed, when "the relevant information is within the defendant's exclusive possession and control" (as is the case here), such pleading is sufficient to survive scrutiny even under heightened pleading standards for fraud not applicable here. *Id.* at 663 (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). Bombardier's pleadings more than meet the applicable standard, particularly with the additional facts now presented in the FAC as noted above.

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Finally, other than mislabeling as "conjecture" Bombardier's allegations concerning its letters to MHI (and therefore upon information and belief to MITAC America), MITAC America proffers nothing to rebut the allegations.  It merely identifies purported deficiencies in detail: "Bombardier does not identify who forwarded those letters to MITAC America, who at MITAC America read or received them, when that occurred, or any other facts to support Bombardier's conjecture that the letters migrated from one company to another."  (Motion, Dkt. # 180, at 3.)  Tellingly, this critique only underscores that MITAC America's position is untenable.  On the one hand, MITAC America criticizes Bombardier for its "repeated use of the dubious tactic of 'information and belief' allegations" (*id.* at 2 n.1); on the other, Bombardier purportedly failed to plead sufficient specifics (*e.g.*, *id.* at 3)—specifics that would be "within the defendant[s'] exclusive possession and control." *Vatan*, 721 F. App'x at 663.  Within the span of one page, MITAC America presents irreconcilably conflicting criticisms of Bombardier's FAC.  If its Motion had any merit at all, MITAC America would not be required to resort to such tactics.

The additional facts pleaded by Bombardier and identified by MITAC America with respect to MHI correspondence are well-pleaded.  For purposes of this Motion, they are therefore to be taken as true—MITAC America's arguments notwithstanding.

> **b.     MITAC America admits that Bombardier pleaded facts pertaining to agency, the agent's knowledge, and imputation of that knowledge from agent to principal**

As with Bombardier's allegations concerning the MHI correspondence, above, MITAC America admits that Bombardier pleaded additional facts to support the theory that MITAC America, through Korwin-Szymanowski's agency, knew or should have known about the misappropriation of Bombardier's trade secrets.  (Motion, Dkt. # 180, at 3-4; *see also id.* at 10: "Bombardier makes much ado about Korwin-Szymanowski's description of his AeroTEC job duties as including, among other things, 'assisting with staffing the MITAC America's new MRJ flight test center in Moses Lake' and 'develop[ing] a recruiting plan.'"

BOMBARDIER INC.'S OPPOSITION TO MITAC AMERICA INC.'S MOTION TO DISMISS (2:18-cv-01543-JLR) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1    (quoting FAC, Dkt. # 143, ¶ 54).)  And as before, MITAC America criticizes the allegations

2    as being impermissibly premised upon information and belief (*id.* at 3) while also being

3    insufficiently specific (*id.* at 4).  They are neither.

4         A proper pleading may base allegations, as Bombardier did, on information and belief,

5    especially "where the facts are peculiarly within the possession and control of the defendant

6    or where the belief is based on factual information that makes the inference of culpability

7    plausible."  *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista*

8    *Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) to state also that "[t]he *Twombly*

9    plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon

10   information and belief"); *see also id.* ("We relax pleading requirements where the relevant

11   facts are known only to the defendant." (quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th

12   Cir. 1995) (*abrogated on other grounds by Microsoft Corp. v. Baker*, __ U.S. __, 137 S.Ct.

13   1702, 198 L.Ed.2d 132 (2017)))).

14        In this case, whether Korwin-Szymanowski is or was in fact an agent of MITAC

15   America can be established conclusively only with facts currently in the exclusive possession

16   and control of defendants.  Indeed, Bombardier had no articulable basis to raise the agency

17   theory until Korwin-Szymanowski submitted a declaration as part of these proceedings.  (*See*

18   *generally* Gaston Decl., Ex. A (showing through tracked changes that Bombardier alleged

19   agency for the first time in its FAC, and then relied on Korwin-Szymanowski's declaration

20   (Dkt. # 65) to do so).)  Alleging agency here based on "information and belief" is entirely

21   permissible.

22        Bombardier's allegations are likewise not deficient.  Bombardier did not fail, as

23   MITAC America contends, to sufficiently plead the elements of agency to make its claim for

24   trade secret misappropriation.  (Motion, Dkt. # 180, at 9-10.)  And the primary case MITAC

25   America cites in support of its argument, *Barker v. Skagit Speedway, Inc.*, actually supports

26   the sufficiency of Bombardier's pleading.  MITAC America is correct to note that in *Barker*,

27   the court observed that "[c]onsent between the parties and control are the essential elements

BOMBARDIER INC.'S OPPOSITION TO MITAC
AMERICA INC.'S MOTION TO DISMISS (2:18-
cv-01543-JLR) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

of an agency relationship."  (Motion, Dkt. # 180, at 9 (quoting *Barker*, 119 Wn. App. 807, 814 (2003).)  But the court did not state that the plaintiff had to plead such elements explicitly to properly rely on an agency theory to support its claim.  Rather, the court stated that plaintiff merely "had the burden to set forth facts to establish a prima facie existence of an agency relationship."  *Barker*, 119 Wn. App. at 814.  This is precisely what Bombardier has done in alleging an agency relationship between Korwin-Szymanowski and MITAC America. Bombardier cited Korwin-Szymanowski's own testimony and admission that his "duties include . . . staffing the MITAC America's new MRJ flight center in Moses Lake." (FAC, Dkt. # 143, ¶ 54 (quoting Dkt. # 65, ¶ 9).)  To infer the requisite consent between the parties and MITAC America's control over Korwin-Szymanowski and his staffing of MITAC America's test center, based on a defendant's sworn testimony, where all other pertinent information remains in the exclusive control of the defendants, is eminently reasonable.  (*See* Order, Dkt. # 136, at 10-11 ("The court must . . . draw all reasonable inferences in favor of the plaintiff.") (citing *Wyler Summit P'ship*, 135 F.3d at 661).)

What is unreasonable, however, is to contend under these circumstances that "Bombardier [did] not allege any facts supporting the critical elements [of] consent and control" (Motion, Dkt. # 180, at 9), particularly when MITAC America omits any reference to the body of Washington law that recognizes and sanctions agency relationships created where consent and control are ***implied***.  *See*, *e.g.*, *Optimer Int'l, Inc. v. Bellevue, L.L.C.*, 134 Wn. App. 1027 (2006) (noting that "[a]n implied agency is created by the parties' actions, conduct and words" and that parties can bring implied agency into existence even "despite their intention that this not come to pass") (citing *Busk v. Hoard*, 396 P.2d 171 (1964)).

As for whether Bombardier sufficiently pleaded that Korwin-Szymanowski had requisite knowledge of trade secret misappropriation that could be imputed to MITAC America, again MITAC America identifies enough (but not all) factual allegations in Bombardier's FAC to survive the Motion.  (Motion, Dkt. # 180, at 12-13 (explaining that Bombardier alleged that Korwin-Szymanowski knew or "'should have known and

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

recognized' that the work [he was supervising] included unidentified [*sic*] 'Bombardier trade secret information' based on his 'lengthy tenure and experience.'")   And as it did before, MITAC America again criticizes Bombardier for relying upon "information and belief" pleading (*id.* at 12), then failing to be sufficiently specific even though all relevant information would be in the hands of the defendants (*id.* at 13).   For at least the same reasons articulated above, neither argument makes sense.

Moreover, MITAC America reveals its confusion concerning the governing legal standard to be used in a motion to dismiss: "Bombardier fails to ***plausibly*** allege that Korwin-Szymanowski *himself* knew that trade secrets were wrongfully acquired."   (*Id.* at 12 (bold emphasis added)); *see also id.* at 12-13 (evidencing additional confusion by arguing, "guesswork is not enough [to plead plausibly], particularly when it is implausible").   Under *Iqbal/Twombly*, it is the "claim to relief that [must be] plausible," not the factual allegations supporting the claim.   The factual allegations are to be "accepted as true" so long as they are not "formulaic recitation[s] of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 555, 557).   Here, Bombardier's allegations concerning Korwin-Szymanowski's knowledge of trade secret misappropriation identified by MITAC America as implausible are not mere formulaic recitations or naked assertions.   More accurately, they are supported by explicit contentions concerning Korwin-Szymanowski's lengthy experience at Bombardier, his job title and presumed attendant supervisory responsibilities at AeroTEC, the highly technical nature of the Bombardier information at issue, and other specifics.   (Motion, Dkt. # 180, at 12 (citing FAC, Dkt. # 143, ¶ 274).)   They are therefore accepted as true, making Bombardier's trade secret misappropriation claim against MITAC America plausible.

c.   **MITAC America admits that Bombardier pleaded facts to support its alter ego theory**

MITAC America labels Bombardier's alter ego theory as "farfetched" (Motion, Dkt. # 180, at 13 n.10) and factually flawed (*id.* at 13), but even if that were accurate—and it is

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

not—it is insufficient to support dismissal of Bombardier's claims.  MITAC America admits that "Bombardier alleges that MITAC is MITAC America's parent company, that both companies have both worked successfully on the MRJ, that the companies share resources and some personnel, and that Hirofumi Takahashi is both the president of MITAC America and a 'Manager Corporate Planning' at MITAC." (*Id.* at 15.)  It also admits that "Bombardier alleges that MITAC America does not have a separate website or email domain name and that the 'company profile' section of a website lists Nagoya as the 'head office' of MITAC and Seattle and Dallas as 'Mitsubishi Aircraft Corporation America' offices." (*Id.* at 16.)  It further admits and criticizes Bombardier for alleging "'on information and belief' that MITAC America 'generates no revenue' and 'generates no profit' of its own and that MITAC America 'is entirely controlled by its parent company MITAC.'" (*Id.* at 16 n.13.)  These allegations are not "formulaic recitation[s] of the elements of a cause of action," nor are they mere "labels and conclusions." *Iqbal*, 556 U.S. at 678.  More accurately, they are a compilation of well-pleaded facts based on publicly available information—including but not limited public disclosures concerning defendants' finances forming a basis of information and belief—"that allows the court to draw the reasonable inference that [MITAC America] is liable for the misconduct" of MITAC Japan. *Id.* at 677-678.  For purposes of MITAC's Motion and pursuant to *Iqbal*/*Twombly* pleading standards, they are accepted as true, whether or not MITAC America attempts to explain each allegation away (instead of rebutting them).  Bombardier's claim therefore survives MITAC America's Motion.

### 2. MITAC America admits that Bombardier alleged facts to support the contention that MITAC America had knowledge of Bombardier's valid business expectancy to adhere to its projected certification schedules

MITAC America admits that "Bombardier alleges that MITAC America had knowledge of Bombardier's alleged business expectancy as a result of letters sent to MITAC America's alleged 'agent' Korwin-Szymanowski 'and/or' MHI's counsel." (Motion, Dkt. # 180, at 20.)  It also admits that Bombardier contended "that MITAC America allegedly had

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

the requisite knowledge 'because MITAC America had previously hired former Bombardier personnel who were aware of these expectancies regarding certification schedules." (*Id.* at 20-21.)  It contends that the allegations are insufficient, however, because Bombardier failed to identify, not Bombardier's business expectancy, but rather the details of Bombardier's "specific certification schedules, what that schedule was, for which aircraft they applied, much less what Bombardier employees were critical to maintaining that schedule." (*Id.* at 21.)  MITAC America is flatly wrong, both factually and legally.  As to facts, Bombardier did inform MITAC America of such specifics, and it pleaded as much.  (*See*, *e.g.*, FAC, Dkt. # 143, ¶¶ 183-185 and accompanying exhibit E (informing MHI counsel that the departure of a specifically named individual "critical to the Global 7000 and 8000 flight test program" (as well as others referenced generally) "would seriously disrupt [Bombardier's] flight test program").  Legally, MITAC America cites to no authority—and Bombardier certainly knows of none—to suggest that informing a defendant of a business expectancy, the problematic conduct that is interfering with that expectancy, and the resulting consequential harm is insufficient to maintain a claim for tortious interference with that business expectancy because of lack of specificity.

Even further troubling for MITAC America, however, is the tactic it employs to further mischaracterize Bombardier's allegations contained in paragraph 184 of the FAC.  Paragraph 184 of the FAC reads in relevant part as follows, with highlighting added to the portions MITAC America ignores and/or mischaracterizes:

> 184.  Bombardier had a reasonable and valid business expectancy that it would generally adhere to its certification schedules set forth for the C-Series and Global 7000/8000 Aircraft, particularly because Bombardier had successfully obtained certification for approximately thirty (30) different aircraft in the preceding three (3) decades, it had significant experience and understanding of certification processes as a result of these previous certifications, and it could reasonably expect based on this experience and understanding that its projected schedule to obtain certification for the C-Series and Global 7000/8000 Aircraft

BOMBARDIER INC.'S OPPOSITION TO MITAC AMERICA INC.'S MOTION TO DISMISS (2:18-cv-01543-JLR) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

would be accurate. The hiring by Defendant MITAC America of at least some of Does 1-88 occurred during and had a detrimental impact on the certification schedules for the C-Series and the Global 7000/8000 Aircraft, delaying these certification schedules by at least several months.

As evidenced above, Bombardier set forth its business expectancy as "that it would *generally* adhere to its certification schedules set forth for the C-Series and Global 7000/8000 Aircraft." (*Supra*, first highlighted portion, emphasis added.)  MITAC America contends, however, that "Bombardier asserts interference with a very specific business expectancy: '*the* certification schedules for the C-Series and the Global 7000/8000 Aircraft.'"  (Motion, Dkt. # 180, at 21 (quoting second highlighted portion, *supra*, emphasis added by MITAC America).)  MITAC America ignores the plain language beginning paragraph 184 explicitly identifying the *general* business expectancy at issue, quotes out of context Bombardier's allegation concerning the harm MITAC America caused, then adds emphasis to the misleading quote (without informing the Court), all to completely mischaracterize and transform Bombardier's alleged general business expectancy into "a very specific" one.  It then ignores the contents of Bombardier's exhibits to incorrectly argue that Bombardier's failure to provide MITAC America with notice of the particular details of Bombardier's very specific business expectancy is fatal to its claim.  This kind of briefing strategy is best disregarded, if not ignored altogether.

## C.     The FAC Contains Additional Allegations Omitted, Mischaracterized and/or Misconstrued by MITAC America that Justify Denial of the Motion

The FAC includes additional allegations, omitted or mischaracterized by MITAC America, that by themselves are sufficient to deny MITAC America's motion to dismiss. When combined with the specific factual allegations admitted as pleaded by MITAC America, discussed above, these additional allegations provide significantly more than the "nudge" from conceivable to plausible that even MITAC America recognizes as the governing standard.

BOMBARDIER INC.'S OPPOSITION TO MITAC
AMERICA INC.'S MOTION TO DISMISS (2:18-
cv-01543-JLR) - 13

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1

### 1.      MITAC America disregards the statutory "reason to know" standard used for both federal and state trade secret misappropriation

2

The most pervasive example of MITAC America's disregard of relevant allegations

3 and legal standards is the manner in which it essentially ignores operative statutory language

4 that states a plaintiff may satisfy the knowledge element of a misappropriation claim by

5 showing that a defendant had "reason to know" that a trade secret was acquired improperly.

6 *See* 18 U.S.C. § 1839(5) (defining "misappropriation" by way of "knew or had reason to

7 know" standard); *see also* RCW 19.108.010(2)(a) (same).  Courts routinely reject motions to

8 dismiss where plaintiffs have alleged a "reason to know" about improper acquisition or have

9 otherwise alleged facts that give rise to an inference that defendants knew of the

10 misappropriation. In *Select Timber Prods. LLC v. Resch*, for example, the plaintiffs, timber

11 manufacturers and distributors, alleged that defendants had misappropriated trade secrets

12 related to certain proprietary processes for producing specialty wood products. No. 3:17-cv-

13 00541-HZ, 2017 WL 3709066, at *1 (D. Or. Aug. 27, 2017). A manager of plaintiffs'

14 company began working with two competitor defendants to produce specialized wood

15 products using plaintiff's proprietary processes. Plaintiffs alleged that those competitors

16 "knew or should have known" that the special wood burning machine and associated

17 technique, among other things, were acquired improperly. *Id.* at *2–*3. Specifically

18 addressing the adequacy of the allegations in the complaint, the court explained that plaintiffs

19 had alleged that defendants and plaintiffs were direct competitors in their market, that

20 defendants were receiving information about a new process, and that defendants were being

21 taught and overseen by an individual who had access to the trade secret information. *Id.* The

22 court held that those allegations were adequate to state a claim for misappropriation under the

23 "knew or had reason to know" standard. *Id.* at *3. Specifically, the court stated that those facts

24 were "sufficient to infer . . . Defendants' knowledge" about the improper acquisition of the

25 trade secrets. *Id.*

26

27

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

In another case, the district court reasoned that knowledge of misappropriation could be inferred based on a general awareness of secrecy necessary and inherent to the success of certain industries.  In that case, the information at issue pertained to the video game industry, where proprietary source code is "well known" to be the confidential property of the game's owner. *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-cv-01267-SC, 2015 WL 4128484, at *3 (N.D. Cal. July 8, 2015).

These cases are instructive here because they demonstrate that Bombardier's allegations concerning MITAC America's actual or constructive knowledge of the trade secret misappropriation at issue are more than adequate to survive a 12(b)(6) motion. Through (1) Bombardier's multiple notifications to MITAC America's shared legal counsel of the potential for the illegal flow of proprietary information from Bombardier to MITAC America through the transfer of employees (FAC, Dkt. # 143, ¶¶ 65-66, 88), (2) MITAC America's agent Korwin-Szymanowski's supervision of certification efforts for the Mitsubishi Regional Jet ("MRJ") performed by individuals known to have misappropriated Bombardier trade secret information (*id.* ¶¶ 54, 56, 274), and (3) MITAC America and MITAC Japan's intensely close collaboration on the MRJ following individual defendant Ayre's conveyance of Bombardier trade secrets to MITAC Japan (*id.* ¶¶ 74-79, 84), MITAC America **at least had reason to know** about this improper acquisition of Bombardier's trade secrets—particularly when compared with the case law from this Circuit. Certainly the alleged facts support such an inference, despite MITAC America's arguments to the contrary.

### 2. MITAC America misguidedly argues that Bombardier failed to identify its trade secrets with sufficient specificity to provide adequate notice

MITAC America erroneously maintains that whether or not Bombardier's MHI communications reached MITAC America, such communications were insufficient to notify MITAC America of the misappropriated trade secrets with sufficient specificity to impute knowledge. (*See, e.g.*, Motion, Dkt. # 180, at 8.)  MITAC America simply misconstrues the notice required, and the level of specificity MITAC America requires for pre-litigation

BOMBARDIER INC.'S OPPOSITION TO MITAC AMERICA INC.'S MOTION TO DISMISS (2:18-cv-01543-JLR) - 15

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

knowledge of trade secret misappropriation is misplaced.  Bombardier has alleged, "Through its series of letters and communications, [it] put MHI—and as such MITAC and MITAC America—on notice of specific individuals Bombardier believed could abscond with Bombardier's trade secret information, and of the specific information Bombardier believed would be compromised by MITAC's aggressive, targeted recruitment campaign."  (FAC, Dkt. # 143, ¶ 65; *see also id.* ¶¶ 61-64.)  This quoted allegation by itself, let alone when coupled with the exhibits filed in support of and cited in Bombardier's FAC, is enough to satisfy pleading of the "having reason to know" notice requirement.  Upon receipt of these letters, MHI's counsel—and all parties they represented—were notified that former Bombardier personnel could be in wrongful possession of Bombardier trade secret information pertaining to aircraft certification, which could in turn result in the wrongful distribution and/or use of such information.  (*Id.* ¶ 65 (quoting exhibit I thereto to allege notice that specifically identified individuals targeted for the MRJ program "possess[ed] confidential information essential to the development of the MRJ program and to meeting certification requirements").)  MITAC America did not need to know anything further to now have "reason to know" that Bombardier's trade secrets may come into its unauthorized possession, custody, or control.  This is all that is required by the plain language of the DTSA and WUTSA.  To require more would lead to the perverse requirement that Bombardier disclose with specificity its trade secrets to a competitor so that it may preserve a claim for its unauthorized use later.  Again, this argument makes no sense.

### 3. MITAC America inaccurately frames Bombardier's claims as predicated on "poaching"

MITAC America expends considerable effort to tar Bombardier with assertions that its claims are predicated not on actual trade secret misappropriation and tortious interference with valid business expectancies—as a plain reading of the FAC would reveal—but instead upon the lawful "poaching" of Bombardier employees.  (Motion, Dkt. # 180, at 2-3 (mischaracterizing MHI correspondence as a demand to "enter into a no-poach agreement"),

BOMBARDIER INC.'S OPPOSITION TO MITAC
AMERICA INC.'S MOTION TO DISMISS (2:18-
cv-01543-JLR) - 16

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*id.* at 7 (alleging that "Bombardier continues to emphasize its erroneous belief that recruiting Bombardier's employees was wrongful and imputes knowledge of alleged misappropriation"; and arguing that "the Court has already rejected [Bombardier's purported] theory of liability: that MITAC America's bad act was recruiting Bombardier employees"), *id.* at 8 (additional references to purported "no-poach" letters), *id.* at 18 (mischaracterizing Bombardier's allegations concerning Korwin-Szymanowski's participation in Defendants' job fair as "merely recruiting another company's employees"), *id.* at 20 (additional reference to "no-poach letters"). This has never been Bombardier's contention; rather, Bombardier has pleaded and continues to plead that it is Defendants' pursuit of Bombardier's trade secret information through targeted recruitment of Bombardier's certification personnel that gives rise to Bombardier's claims. To the extent MITAC America's arguments hinge on a fundamental misunderstanding, intentional or not, of Bombardier's claims, they are properly disregarded.

      **4.**     **MITAC America makes a number of other erroneous representations and fatally flawed arguments**

In addition to the erroneous representations and flawed arguments identified above, MITAC America's Motion contains a number of others that are worth noting:

      **a.**     **MITAC America erroneously contends that Korwin-Szymanowski's agency, if effective at all, ends with his recruiting efforts**

MITAC America contends that Bombardier's allegations of Korwin-Szymanowski's agency duties for MITAC America begin and end with Korwin-Szymanowski's role as a recruiter, but this is flatly belied by the factual allegations in the FAC. (*See* Motion, Dkt. # 180, at 10–12.) For instance, MITAC America mistakenly contends that "Bombardier alleges that Korwin-Szymanowski was MITAC America's agent ***for purposes of recruiting AeroTEC employees***." (*Id.* at 11, citing FAC, Dkt. # 143, ¶ 128 (emphasis added).) Nowhere in the FAC, let alone in the single paragraph cited by MITAC America, does Bombardier limit Korwin-Szymanowski's duties to recruiting only AeroTEC employees. (*See generally*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

FAC, Dkt. # 143.)  Further, while it is true that Korwin-Szymanowski's recruiting duties are the only agency duties Mr. Korwin-Szymanowski has yet to openly acknowledge on the record of this case, it is not accurate to argue that Bombardier contends that the trade secret knowledge that Mr. Korwin-Szymanowski knew of and used on behalf of MITAC America was solely connected to his recruiting role.  (*See* Motion, Dkt. # 180, at 10–12.)  Relatedly, MITAC America also erroneously states that Bombardier offers no support for the contention that Korwin-Szymanowski worked as MITAC America's agent to certify the MRJ.  (*Id.* at 11 n.8.)  More accurately, Bombardier alleged that Korwin-Szymanowski acted in a supervisory capacity for individuals who brought trade secrets to MITAC America's production and certification facilities, and as a former, long-time Bombardier senior employee, Korwin-Szymanowski knew or should have known about the improper acquisition and use of those trade secrets.  (FAC, Dkt. # 180, ¶ 274.) Because of MITAC America's lead role in MRJ certification, and because Korwin-Szymanowski was working on MRJ certification activities, a reasonable inference based on well-pleaded facts is that at least ***implied*** consent and control existed between Korwin-Szymanowski and MITAC America with respect to his MRJ certification responsibilities, and any knowledge he gained in that role plausibly may be imputed to MITAC America as a matter of law. *E.g.*, *Busk*, 396 P.2d at 175; *Hulbert v. Gordon*, 824 P.2d 1238, 1243 (Wash. App. 1992).

### b.    MITAC America misguidedly argues the law of alter ego liability

A chief complaint MITAC America raises about Bombardier's assertion of alter ego liability is that Bombardier is improperly attempting to use an alter ego theory to impute liability to a subsidiary company.  (Motion, Dkt. # 180, at 13-14.)  It then explains that "Washington has not adopted a test for deciding whether (or when) to apply reverse veil piercing to impose liability on a subsidiary corporation for the conduct or knowledge of its parent company"; inexplicably contends that "veil piercing law in the Ninth Circuit is similar to [apparently non-existent] Washington law"; and then relies on authority from the Tenth

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

Circuit and the Southern District of New York, to argue impropriety.  (*Id.* at 14.)  MITAC America's summary of alter ego law is not quite right.

As the Ninth Circuit recently explained, "We hold the alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  On this authority, the Ninth Circuit does not limit the direction in which alter ego liability may be imputed.  MITAC America apparently conflates the Ninth Circuit's alter ego test with the recently abrogated agency test:

> Before the Supreme Court's *Daimler* decision, this circuit permitted a plaintiff to pierce the corporate veil for jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one of two separate tests: the "agency" test and the "alter ego" test.  *See Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011), *rev'd sub nom. Daimler AG v. Bauman*, [571] U.S. [117], 134 S.Ct. 746, 187 L.Ed.2d 624 (2014).  The agency test required a plaintiff to show ***the subsidiary*** 'perform[ed] services that [were] sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.  *Id.* (quoting [*Doe v.*] *Unocal* [*Corp.*], 248 F.3d [915,] 928 [(9th Cir. 2001)]).  The Supreme Court invalidated this test.  *See Daimler*, 134 S.Ct. at 759.  It held that focusing on whether ***the subsidiary*** performs "important" work the parent would have to do itself if the subsidiary did not exist "stacks the deck, for it will always yield a pro-jurisdiction answer."  *Id.*  Such a theory, the Court concluded, sweeps too broadly to comport with the requirements of due process. *See id.* at 759–60. The agency test is therefore no longer available . . . .

> In contrast to the agency test, the Court left intact this circuit's alter ego test for "imputed" general jurisdiction. *See id*. at 759 (noting, without opining on, the fact that "several Courts of Appeals" employ an alter ego test). The alter ego test is designed to determine whether the parent and subsidiary are "not really separate entities," such that one entity's contacts with the forum state can be fairly attributed to the other. *Unocal*, 248 F.3d at 926. The "alter ego ... relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Id.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*Ranza v. Nike, Inc.*, 793 F.3d at 1071 (emphases added).  Just as the Ninth Circuit's alter ego test may run in either direction to impute jurisdiction on a parent or subsidiary, Bombardier by analogy may properly and plausibly rely upon that same test to impute liability from MITAC Japan to its subsidiary, MITAC America.  And for reasons already set forth, Bombardier has sufficiently pleaded substantiated facts, when accepted as true for purposes of the Motion, to justify denial of MITAC America's requested relief.

### c.    Bombardier adequately and plausibly pleads its claim for Tortious Interference with Business Expectancy

In addition to the aforementioned mistaken and/or unsupported premises upon which MITAC America relies in attacking the sufficiency of Bombardier's tortious interference claim, MITAC America also erroneously contends that Bombardier has not adequately pleaded that MITAC America acted with improper purpose when it interfered with Bombardier's valid business expectancy.  (Motion, Dkt. # 180, at 23.)  Again, MITAC America is wrong. In fact, Bombardier's FAC specifically alleges that the MHI correspondence expressed concern that the targeted Bombardier employees may be leaving the company with highly sensitive, proprietary information, and that those departures would impact Bombardier's certification schedules. (*See, e.g.*, FAC, Dkt. # 143, ¶¶ 59–64.) Those letters have been submitted as part of the FAC (*see id.* Exs. C, E, F, I); they speak for themselves; and together with the allegations in the FAC setting forth that MITAC America nevertheless persisted in its conduct, constitute far more than the "formulaic recitation" of improper purpose that MITAC America contends is present here. (Motion, Dkt. # 180, at 23.) Further, Bombardier's allegations are more than adequate given that (1) evidence of MITAC America's intent is exclusively within its possession, custody and control, and (2) MITAC America is liable for its tortious conduct even if only a part of its motivation for its interference was to cause Bombardier delays. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (holding retaliation claim adequately pleaded) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (2004) ("[D]iscovery is 'often necessary to

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  uncover a trail of evidence regarding the defendants' intent in undertaking allegedly

2  [improper] action'")); *see also Pleas v. City of Seattle*, 774 P.2d 1158, 1164 (1989) ("The

3  desire to interfere with the other's contractual relations need not, however, be the sole

4  motive.")

5        Further still, in its continuing effort to dismiss Bombardier's tortious interference

6  claim, MITAC America also restates two of its earlier and equally misguided contentions—

7  that MITAC America cannot be liable for Korwin-Szymanowski's actions (Motion, Dkt. #

8  180, at 20), and that Bombardier has not pleaded damages resulting from MITAC America's

9  conduct (*id*. at 23). Again, MITAC America's contentions are incorrect.  For reasons already

10  set forth herein, Bombardier has adequately pleaded the bases for Korwin-Szymanowski to be

11  considered for purposes of this Motion as a proper agent of MITAC America, and his conduct

12  and knowledge is properly imputed to MITAC America for pleading purposes. *See, e.g.*, *Busk*,

13  396 P.2d at 175; *Hulbert*, 824 P.2d at 1243. Additionally, Bombardier *has* alleged harm

14  resulting from MITAC America's actions, and MITAC America admits as much. (Motion,

15  Dkt. # 180, at 24 (citing FAC, Dkt. # 180, ¶ 184).)  Merely because MITAC America cannot

16  understand how Bombardier sustained damage in losing approximately 100 of its aircraft

17  certification personnel during critical certification efforts ("including but not limited to

18  Bombardier's chief and deputy chief flight test pilots for certification purposes" (*id.* ¶ 185)),

19  when Bombardier employs slightly less than 29,000 employees ***who have nothing to do with***

20  ***aircraft certification***, does not mean that Bombardier failed to adequately plead its claim.

21        Finally, MITAC America inexplicably contends that because Bombardier has failed to

22  identify a single former Bombardier employee in the employ of MITAC America, that

23  somehow renders Bombardier's tortious interference claim implausibly pled.  (Motion, Dkt. #

24  180, at 20 (complaining that Bombardier "does not identify *even one* MITAC America

25  employee that carried out the alleged tortious interference.").)  MITAC America fails to

26  appreciate that it is not whether MITAC America's efforts resulted in its employing any

27  former Bombardier personnel, but rather whether MITAC America's efforts resulted in the

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

abrupt departure of Bombardier personnel, that matters.  The harm to Bombardier forming the basis of its tortious interference claim is not the loss of employees to MITAC America specifically; it is the loss of critical certification employees, period.  That departure occurred, Bombardier pleaded as much, and Bombardier plausibly accuses MITAC America of causing it for an improper purpose.  (FAC, Dkt. # 143, ¶¶ 184-189.)  And if MITAC America did not intend to encourage the departure of Bombardier personnel for an improper purpose (such as causing a delay to Bombardier's certification schedule), then MITAC America will have no liability for Bombardier's tortious interference claim.  But Bombardier should have the opportunity to prove its case based on the substantiated allegations it has now set forth.  *See*, *e.g.*, *Top Notch Sols., Inc. v. Crouse & Assocs. Ins. Brokers, Inc.*, No. C17-827-TSZ, 2018 WL 2427471, at \*2 (W.D. Wash. May 30, 2018) (holding that plaintiff had adequately pled a claim for tortious interference and explaining that "[w]hether [the plaintiff] can prove such a claim is a question for another day.")

**D.     Alternatively, Limited Discovery for Purposes of Investigating Bombardier's Alter Ego Theory Is Appropriate Prior to Dismissal**

If in light of the foregoing the Court remains unconvinced that MITAC America's motion lacks merit, Bombardier respectfully requests the opportunity to take limited discovery before dismissal.  As noted above, Bombardier has made a number of substantiated allegations concerning its alter ego theory of liability, but "facts regarding other evidence supporting alter ego theory, such as commingling of funds, undercapitalization of a corporation, or failure to maintain adequate corporate records are exclusively within the Defendants control and the parties have not yet commenced discovery." *Fin. Express LLC v. Nowcom Corp.*, No. SACV-07-01225-CJC(ANx), 2008 WL 11342755, at \*3 n.3 (C.D. Cal. Mar. 6, 2008) (denying motion to dismiss and noting that "it would be inappropriate for the Court to grant Defendants' motion without allowing [plaintiff] an opportunity to obtain discovery as to those other factors").  Prior to any dismissal, Bombardier would respectfully request only a reasonable number of interrogatories, requests for production, and a single

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  deposition—all limited in scope to only those factors a court considers in imposing alter ego

2  liability.   Given what the limited publicly available information has already permitted

3  Bombardier to plead, it is confident that further discovery will conclusively establish alter ego

4  liability.  *See Windisch v. Hometown Health Plan, Inc.*, No. 3:08-CV-00664-RCJ-(RAM),

5  2010 WL 786518, at *8 (D. Nev. Mar. 5, 2010) (denying motion to dismiss and allowing

6  discovery to proceed).

7                                   **IV.   CONCLUSION**

8          Given the opportunity by this Court to cure the defects in the original complaint,

9  Bombardier has adequately and substantively pled plausible claims for trade secret

10 misappropriation and tortious interference against MITAC America. Bombardier therefore

11 respectfully requests that the Court to deny MITAC America's Motion.  In the alternative,

12 Bombardier respectfully requests the opportunity to take limited discovery prior to any

13 dismissal to obtain evidence of its alter ego theory of liability currently in the defendants'

14 exclusive possession, custody, and/or control.

15

16         Dated this 3rd day of June, 2019.

17

18                                            CHRISTENSEN O'CONNOR
                                              JOHNSON KINDNESS PLLC

19

20

21                                            s/John D. Denkenberger
                                              John D. Denkenberger, WSBA No.:  25,907
22                                            Brian F. McMahon, WSBA No.:  45,739
23                                            E. Lindsay Calkins, WSBA No.: 44,127
                                              Jeffrey E. Danley, WSBA No.: 52,747
24                                            Christensen O'Connor Johnson Kindness PLLC
25                                            1201 Third Avenue, Suite 3600
                                              Seattle, WA  98101-3029
26                                            Telephone:  206.682.8100
                                              Fax:  206.224.0779
27

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

E-mail:  john.denkenberger@cojk.com,
brian.mcmahon@cojk.com,
lindsay.calkins@cojk.com,
jeffrey.danley@cojk.com, litdoc@cojk.com

*Attorneys for Plaintiff Bombardier Inc.*

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Jerry A. Riedinger | Mack H. Shultz | Mary Z. Gaston |
| PERKINS COIE LLP | PERKINS COIE LLP | PERKINS COIE LLP |
| Email: | Email: | Email: |
| JRiedinger@perkinscoie.com | MShultz@perkinscoie.com | MGaston@perkinscoie.com |
| docketsea@perkinscoie.com | docketseapl@perkinscoie.com | docketsea@perkinscoie.com |
| lshaw@perkinscoie.com | sbilger@perkinscoie.com | jstarr@perkinscoie.com |
| sporter@perkinscoie.com | | |

| | |
|---|---|
| James Sanders | Shylah R. Alfonso |
| PERKINS COIE LLP | PERKINS COIE LLP |
| Email: | Email: |
| JSanders@perkinscoie.com | SAlfonso@perkinscoie.com |
| RBecken@perkinscoie.com | docketsea@perkinscoie.com |
| docketsea@perkinscoie.com | |
| jdavenport@perkinscoie.com | |

Attorneys for Mitsubishi Aircraft Corporation and Mitsubishi Aircraft Corporation America Inc.

| | |
|---|---|
| Richard J. Omata | Mark A. Bailey |
| KARR TUTTLE CAMPBELL | KARR TUTTLE CAMPBELL |
| Email: romata@karrtuttle.com | Email: mbailey@karrtuttle.com |
| jnesbitt@karrtuttle.com | jsmith@karrtuttle.com |
| swatkins@karrtuttle.com | mmunhall@karrtuttle.com |
| | sanderson@karrtuttle.com |

Daniel T. Hagen
KARR TUTTLE CAMPBELL
Email: dhagen@karrtuttle.com
ksagawinia@karrtuttle.com

Attorneys for Aerospace Testing Engineering & Certification Inc., Michel Korwin-Szymanowski, Laurus Basson, and Cindy Dornéval

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  James P. Savitt              Jacob P. Freeman
2  SAVITT BRUCE &               SAVITT BRUCE &
   WILLEY LLP                   WILLEY LLP
3  Email: jsavitt@sbwLLP.com    Email:
   eservice@sbwllp.com          jfreeman@sbwLLP.com
4
5  Attorneys for Marc-Antoine Delarche and Keith Ayre

6                              s/John D. Denkenberger
                               John D. Denkenberger, WSBA No.:  25,907
7                              Brian F. McMahon, WSBA No.:  45,739
                               E. Lindsay Calkins, WSBA No.: 44,127
8                              Jeffrey E. Danley, WSBA No.: 52,747
9                              Christensen O'Connor Johnson Kindness[PLLC]
                               1201 Third Avenue, Suite 3600
10                             Seattle, WA  98101-3029
                               Telephone:  206.682.8100
11                             Fax:  206.224.0779
                               E-mail:  john.denkenberger@cojk.com,
12                             brian.mcmahon@cojk.com,
                               lindsay.calkins@cojk.com,
13                             jeffrey.danley@cojk.com, litdoc@cojk.com
14
                               *Attorneys for Plaintiff Bombardier Inc.*
15
16
17
18
19
20
21
22
23
24
25
26
27

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA. 98101-3029
1.206.682.8100