THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOMBARDIER INC.,

               Plaintiff,

v.

MITSUBISHI AIRCRAFT
CORPORATION, MITSUBISHI
AIRCRAFT CORPORATION AMERICA,
INC., et al.,

               Defendants.

No. 2:18-cv-1543 JLR

DEFENDANT MITSUBISHI AIRCRAFT
CORPORATION AMERICA, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
WITH PREJUDICE

NOTE ON MOTION CALENDAR:

June 7, 2019

ORAL ARGUMENT REQUESTED

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

      A.    Bombardier did not address the "crucial" missing fact .............................. 2

            1.    Bombardier relies on lawful recruiting and other parties' conduct .......... 2

            2.    MITAC America's acceptance as true factual allegations in the
                  FAC are not "admissions." .......................................................... 3

      B.    Bombardier misapprehends the standard, believing erroneously that a
            speculative claim based on implausible factual allegations can survive a
            motion to dismiss ................................................................................ 3

      C.    Bombardier failed to cure the deficiency with its trade secret claims ................. 5

      D.    Bombardier fails to cure the deficiency with its tortious interference claim ....... 10

            1.    Bombardier admits its claim is solely premised on recruiting from
                  a competitor .......................................................................... 10

            2.    Bombardier left the causation deficiency with the original
                  Complaint uncured ................................................................... 11

            3.    Bombardier did not sufficiently allege MITAC America's
                  knowledge or intent ................................................................. 12

III.  CONCLUSION ................................................................................................... 12

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## TABLE OF AUTHORITIES

CASES

*B.R. v. Beacon Health Options*,
   No. 16-cv-04576, 2017 WL 5665667 (N.D. Cal. Nov. 27, 2017) ............................................7

*Barker v. Skagit Speedway, Inc.*,
   119 Wn. App. 807 (2003) ...............................................................................................6, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................3

*Block v. Snohomish Cty.*,
   No. C14-235RAJ, 2015 WL 4164821 (W.D. Wash. July 8, 2015), aff'd, 733
   F. App'x 884 (9th Cir. 2018) .................................................................................................4

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013) ..............................................................................................4

*Deep Water Brewing, LLC v. Fairway Res. Ltd.*,
   152 Wn. App. 229 (2009) ......................................................................................................7

*Diederich v. Providence Health & Servs.*,
   622 F. App'x 613 (9th Cir. 2015) ........................................................................................12

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) (abrogated on other grounds)................................................9

*Fin. Express LLC v. Nowcom Corp.*,
   2008 WL 11342755 (C.D. Cal. Mar. 6, 2008)....................................................................10

*Firstmark Capital Corp. v. Hempel Fin. Corp.*,
   859 F.2d 92 (9th Cir. 1988) ..................................................................................................9

*IOSTAR Corp. v. Stuart*,
   No. 1:07-cv-133, 2009 WL 270037 (D. Utah Feb. 3, 2009)................................................3

*Joshua David Mellberg LLC v. Will*,
   96 F. Supp. 3d 953 (D. Ariz. 2015) ......................................................................................2

*Katzir's Floor & Home Design, Inc. v. M--MLS.com*,
   394 F.3d 1143 (9th Cir. 2004) ..............................................................................................9

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
(continued)

*McGary v. Cunningham,*
No. C13-5130 RBL-JRC, 2013 WL 5913434, at *4 (W.D. Wash. Nov. 1, 2013) ...................................................................................................................4

*Nat'l City Bank, N.A. v. Prime Lending, Inc.,*
No. CV-10-034-EFS, 2010 WL 2854247 ...................................................11, 12

*Nev. Power Co. v. Trench France SAS,*
2015 WL 6737015 (D. Nev. Nov. 2, 2015) ...........................................................10

*Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.,*
52 P.3d 30 (Wash. Ct. App. 2002) .........................................................................11

*Optimer Int'l, Inc. v. Bellevue, L.L.C.,*
134 Wn. App. 1027 (2006) ......................................................................................6

*Payoda, Inc. v. Photon Infotech, Inc.,*
2015 WL 4593911 (C.D. Cal. July 30, 2015) .........................................................9

*Pfister v. Selling Source, LLC,*
931 F. Supp. 2d 1109 (D. Nev. 2013) ...................................................................10

*Ranza v. Nike, Inc.,*
793 F.3d 1059 (9th Cir. 2015) ............................................................................8, 9

*Ranza v. Nike Mountain Club Owner's Ass'n v. Graybar Elec. Co.,*
2014 WL 130767 (E.D. Cal. Jan. 14, 2014) .........................................................10

*Select Timber Prod. LLC v. Resch,*
No. 3:17-cv-00541, 2017 WL 3709066 (D. Or. Aug. 27, 2017) .............................4

*Sia v. AirAsia Berhad,*
2017 WL 1408172 (W.D. Wash. April 20, 2017) ...................................................9

*Torio v. Wells Fargo Bank, N.A.,*
2016 WL 2344243 (N.D. Cal. May 4, 2016) ........................................................10

*United States ex rel. Vatan v. QTC Med. Servs., Inc.,*
721 F. App'x 662 (9th Cir. 2018) ...........................................................................3

*Windisch v. Hometown Health Plan, Inc.,*
2010 WL 786518 (D. Nev. Mar. 5, 2010) ............................................................10

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## TABLE OF AUTHORITIES
### (continued)

**STATUTES**

18 U.S.C. § 1839(5) ......................................................................................................5

RCW 19.108.010(2) .....................................................................................................5

**RULES**

Rule 12(b)(6) ..........................................................................................................1, 2, 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## I.      INTRODUCTION

2      This Court previously dismissed the claims against MITAC America because Bombardier

3 failed to allege facts showing MITAC America's knowledge of supposed misappropriation. (Dkt.

4 136 at 19 ("Bombardier's failure to identify any MITAC America employee or executive who

5 took or viewed a trade secret is crucial.").) In its Motion, MITAC America explained why—

6 notwithstanding a three-prong attempt by Bombardier to fill the gap—the defect was not cured.

7      Instead of substantively addressing the deficiencies that remain in the First Amended

8 Complaint ("FAC"), Bombardier makes a series of misguided legal arguments that collectively

9 demonstrate the futility of the argument it advances. For example, Bombardier relies on an

10 erroneous pleading standard—that a "claim based on speculation" and implausible factual

11 allegations survives a motion to dismiss—and re-raises arguments the Court has already rejected.

12 Bombardier also contends that MITAC America defeated its own motion by accepting as true the

13 new factual allegations, which is of course a requirement at this stage, not fatal "admissions" as

14 argued by Bombardier. It goes so far as to twice criticize MITAC America for not "rebutting"

15 Bombardier's allegations, an untenable position given that MITAC America is precluded from

16 doing so in a Rule 12(b)(6) motion. In the end, Bombardier asks for discovery to try and support

17 its theory that MITAC America is an alter ego of MITAC—and thus its corporate structure

18 should be ignored so it can answer for MITAC's alleged wrongdoing—while ignoring that

19 MITAC itself is a Defendant here ready and able to respond to Bombardier's accusations.

20      In sum, the paucity of factual allegations in the FAC relating to MITAC America's own

21 conduct, and the myriad of unsuccessful legal arguments Bombardier uses to try and impute to

22 MITAC America the alleged knowledge of other companies and their employees, demonstrates

23 the futility of Bombardier's efforts to state a plausible claim against MITAC America.

24      The claims in the FAC against MITAC America should be dismissed with prejudice.

25

26

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## II.     ARGUMENT

**A.     Bombardier did not address the "crucial" missing fact.**

In dismissing Bombardier's claims against MITAC America, the Court held that "Bombardier fails to allege that MITAC America knew or had reason to know that it improperly acquired or used Bombardier's trade secrets." (Dkt. 136 at 19.) Specifically, the "crucial" shortcoming was "Bombardier's failure to identify any MITAC America employee or executive who took or viewed a trade secret." (*Id.*)

The same "crucial" gap remains. Neither the FAC nor Bombardier's Response identifies a single MITAC America employee who took or viewed an identified trade secret. Instead, Bombardier tries to sidestep the Court's guidance by basing its claim on *others'* alleged conduct and on the mere recruitment of qualified employees.

### 1.     Bombardier relies on lawful recruiting and other parties' conduct.

The Court explained that recruiting Bombardier employees does not clear the "knowledge" hurdle. (Dkt. 136 at 19); *see also Joshua David Mellberg LLC v. Will*, 96 F. Supp. 3d 953, 981-82 (D. Ariz. 2015). Yet, in its FAC, Bombardier still does not identify anything that MITAC America allegedly did beyond recruiting employees. Bombardier only points at other Defendants. For example, Bombardier (at 3) summarizes its new allegations as follows: (a) Korwin-Szymanowski [*not a MITAC America employee*] recruited and allegedly supervised former Bombardier employees; (b) Bombardier attorneys communicated about the recruitment with a different company, Mitsubishi Heavy Industries [*not MITAC America*]; (c) MITAC [*not MITAC America*] had corporate knowledge of misappropriation; and (d) unnamed "MITAC America employees *recruited* from Bombardier" would have recognized Bombardier secrets [an argument already specifically rejected by the Court, (*compare* Dkt. 229 at 3 (citing FAC ¶129) *with* Dkt. 136 at 22)]. This reliance is fatal. (*See* Dkt. 136 at 37.)

Bombardier plays semantics by arguing that it does not base its claims on "'poaching' of Bombardier employees," but instead "that it is Defendants' pursuit of Bombardier's trade secret

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    information through targeted *recruitment of Bombardier's certification personnel* that gives rise

2    to Bombardier's claims." (Dkt. 229 at 16-17 (emphasis added).) This is a distinction without a

3    difference. However phrased, the Court already held that, without more, recruiting another

4    company's employees falls short of the knowledge requirement for trade secret misappropriation.

> 2.    <u>MITAC America's acceptance as true factual allegations in the FAC are not "admissions."</u>

        Bombardier also cannot change the "crucial" issue before the Court by making the Motion

about MITAC America's "admissions." MITAC America did not admit anything; rather, it

accepted as true non-conclusory factual allegations in the FAC and accurately identified

Bombardier's multiple attempts to cure the deficiencies in the original Complaint before

explaining why those attempts fail. Nothing more. Similarly, Bombardier (at 7) criticizes MITAC

America for not offering evidence "to rebut [its] allegations." While in its preliminary injunction

briefing, MITAC America submitted voluminous evidence that it did nothing wrong, for purposes

of this Rule 12(b)(6) Motion, such rebuttals would be inappropriate.

**B.    Bombardier misapprehends the standard, believing erroneously that a speculative claim based on implausible factual allegations can survive a motion to dismiss.**

        Bombardier (at 6) claims it can "assert a claim based on speculation" and survive a motion

to dismiss, relying on the holding in *United States ex rel. Vatan v. QTC Med. Servs., Inc.*, 721 F.

App'x 662, 664 (9th Cir. 2018). However, Bombardier entirely misreads and misapprehends the

*Vatan* decision. The Ninth Circuit in *Vatan* did not hold or even suggest that a plaintiff can assert

a claim based on speculation. Instead, the *Vatan* Court was discussing a *district court's*

*speculation*, ruling that a district court's speculation that a defendant might have a strong defense

does not prevent the plaintiff from stating a plausible claim. Further, Bombardier's misreading of

*Vatan* is all the more significant given that the correct standard is the opposite of what

Bombardier understands it to be: "a claim based on speculation is insufficient to survive a pre-

discovery motion to dismiss." *IOSTAR Corp. v. Stuart*, No. 1:07-cv-133, 2009 WL 270037, at *6

(D. Utah Feb. 3, 2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   Bombardier (at 10) compounds its mistake further, arguing that only *claims* must be

2   plausible. According to Bombardier, *all* factual allegations in a complaint—even implausible

3   ones—must be taken as true by the Court so long as they are not formulaic recitations or naked

4   assertions. (Dkt. 229 at 10:11-15.) But the law is to the contrary, as the Ninth Circuit explains: "it

5   is within our wheelhouse to reject, as implausible, allegations that are too speculative to warrant

6   further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013); *see also*

7   *Block v. Snohomish Cty.*, No. C14-235RAJ, 2015 WL 4164821, at *4 (W.D. Wash. July 8, 2015),

8   aff'd, 733 F. App'x 884 (9th Cir. 2018) (same). That implausible allegations are to be given no

9   credence is not only consistent with the law but also with common sense. Using an absurd

10  example, under the pleading standard urged by Bombardier, it could cure the deficiency in its

11  claims by alleging that aliens came down and whispered the requisite knowledge to MITAC

12  America. It should go without saying that implausible allegations are to be disregarded.

13  Likewise, Bombardier's emphatic reliance on the statutory language, "reason to know"

14  that a trade secret at issue was improperly acquired (at 14-15), is also misplaced. That language

15  does not impact the standard to apply, the proper analysis, or the result here. MITAC America

16  recognized "reason to know" as one way to show the requisite knowledge. (*See* Dkt. 180 at 1, 17.)

17  But as discussed in the Motion and below, no factual allegations support a conclusion that anyone

18  at MITAC America had reason to know that any trade secret at issue here was acquired or used.[1]

19

20  ───────────────

21  [1] Bombardier relies heavily on an unpublished case from another district, *Select Timber Prod. LLC v. Resch*, No. 3:17-cv-00541, 2017 WL 3709066 (D. Or. Aug. 27, 2017), but that case was inapposite. *Select Timber* nowhere holds that "reason to know" are magic words that relieve a defendant of its duty to plead plausible facts. In fact, this District has rejected speculation about what a defendant "knew or should have known" where the complaint "provides no factual basis to support his contention." *McGary v. Cunningham*, No. C13-5130 RBL-JRC, 2013 WL 5913434, at *4 (W.D. Wash. Nov. 1, 2013); *see also* Authority in Dkt. 180 at 8.

24  Bombardier omits from its description of *Select Timber* that the design and operation of the machine was a "key element" of the alleged secrets, a person with knowledge of the secret communicated with the corporate defendant and its CEO (not another party, as is the case here) about the machine, and the defendant paid $10,000 to learn the secret process. Those facts are not present here, as Bombardier continues to base its case against MITAC America solely on other parties' conduct or its legal recruitment of employees. Further, procedurally, the court in *Select Timber* had already granted the plaintiff a TRO, and thus was familiar with the underlying facts and evidence supporting the claim, making it unlikely the court would thereafter reverse course by granting motion to dismiss.

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**C.     Bombardier failed to cure the deficiency with its trade secret claims.**

The MHI letters do not help Bombardier: Bombardier's continued reliance on the MHI

letters (Dkts. 143-5, 143-8, 143-9) remains misplaced because they do not identify any documents

allegedly stolen, nor any other specific trade secret.[2] The letters (attached to the FAC and thus

properly considered) merely refer to unspecified "know-how," "trade secrets," "expertise," and

"intellectual property" possessed by its employees. This Court explained that, with respect to the

comparable no-poach letters to AeroTEC, "none of Bombardier's alleged requests to stop

recruitment identified a specific trade secret" and so the letters did not plausibly impute the

requisite knowledge. (Dkt. 136 at 31.) The MHI letters are less specific than those to AeroTEC

and therefore are similarly unable to impute the requisite knowledge. (*Compare* MHI letters *with*

Dkt. 1-12 at 6 (stating "confidential information" improperly used includes "employee identities,

abilities, preferences and compensation"), 7-8 (listing specific former employees).)

Ignoring the Court's ruling on the AeroTEC letters, Bombardier insists (at 16) that the

MHI letters satisfy the knowledge requirement, claiming that MITAC America's argument—and

thus implicitly the Court's ruling on the AeroTEC letters—"makes no sense." To the contrary, it

makes perfect sense as both the federal and Washington statutes define requisite knowledge with

respect to "*the* trade secret" at issue. 18 U.S.C. § 1839(5); RCW 19.108.010(2) (emphasis added).

Since the MHI letters make no distinction between the general skills and experience of

Bombardier's former employees (over which it has no rightful claim) and its allegedly proprietary

information, much less identify "the" trade secret at issue (*e.g.*, a purportedly stolen document),

the letters cannot impute requisite knowledge of the misappropriation to MITAC America.

Further, Bombardier's insistence that its allegations that recruiting employees who worked

with its trade secrets is sufficient to state a claim misses the mark. First, the MHI letters simply

demand that all recruitment of Bombardier employees cease. Bombardier admits (at 16) that the

---

[2] As cited in Bombardier's Response (at 3) and shown in the FAC redline (Dkt. 181), the only paragraphs in the FAC with new content related to the letters are 60, 65, and 66. Those paragraphs cite only the three documents listed, which we refer to as the MHI letters, even though the last is addressed to MITAC.

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

letters say only that former employees "could be" in possession of unidentified trade secrets, which "could in turn" result in wrongful use. But that is potentially true every time a company recruits a competitor's employees. Thus, Bombardier is effectively arguing that recruiting employees who worked with trade secrets is always enough to plead knowledge. This argument has already been rejected by the Court (Dkt. 136 at 19), and Bombardier provides no basis to revisit the issue. Further, if Bombardier's position was correct, no trade secret case involving employee recruitment from competitors could ever be dismissed for lack of knowledge.

Relying on Korwin-Szymanowski does not help Bombardier: *No agency*. Bombardier (at 7-9) all but concedes that no factual allegations in the FAC suggest that MITAC America controlled Korwin-Szymanowski or consented to an agency relationship—which Bombardier simultaneously admits are essential elements to plausibly show agency. Instead, the facts Bombardier relies on to argue that he was MITAC America's agent are: (a) he works for AeroTEC, (b) MITAC America hired AeroTEC to work on the MRJ project, and (c) he recruited persons to work for AeroTEC on the MRJ project at the MITAC America flight center. Those facts do not plausibly allege the requisite control for an agent because they do not show that MITAC America controlled the "manner of [his] performance" in any way. *See Barker v. Skagit Speedway, Inc.*, 119 Wn. App. 807, 814 (2003). Further, nothing about recruiting for his employer—AeroTEC—plausibly suggests that he consented to serve as an agent to the third party that contracted with his employer for a project, or vice versa.

With no facts to point to, Bombardier (at 9) waves its hands at implied agency, hoping that might be a lower hurdle. Implied agency exists when the "parties' actions, conduct and words" establishes "implied[] consent that one shall act under the control of the other." *Optimer Int'l, Inc. v. Bellevue, L.L.C.*, 134 Wn. App. 1027 (2006) (finding no agency). But Bombardier proffers no facts or analysis to show how implied agency might be implicated here. The allegations relied on suggest only that Korwin-Szymanowski was working at the behest his employer, AeroTEC. Bombardier cites no action, conduct, or statement by Korwin-Szymanowski that would suggest he

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    was MITAC America's agent by implication.

2    Finally, Bombardier's complaint (at 8-9) that information about whether Korwin-

3    Szymanowski was MITAC America's agent is exclusively in control of the Defendants is without

4    merit.[3] First, Bombardier was able to state a claim against AeroTEC and MITAC. Second, it is

5    clear from the FAC and the letters sent to AeroTEC and MHI that Bombardier had access to a

6    plethora of information about Korwin-Szymanowski's actions, conduct and words.

7        *No knowledge*. The Court held that Bombardier failed to plausibly allege Korwin-

8    Szymanowski's knowledge in the original Complaint. (Dkt. 136 at 29-30.) Bombardier attempts

9    to cure that deficiency in the FAC, but with a problematic set of general, conclusory allegations

10   made "on information and belief": that he supervised other AeroTEC defendants who allegedly

11   stole documents, reviewed their work, which somehow "incorporated" unidentified Bombardier

12   secrets, and he would have for some reason recognized the (unidentified) incorporated secrets.

13   (Dkt. 143 ¶ 274.)[4] He is not alleged to have ever seen any of the allegedly stolen documents. As

14   MITAC America pointed out, Bombardier provided no factual support for these vauge and

15   speculative conclusions (Dkt. 180 at 3, n.3), and Bombardier did not identify any in its Response

16   (Dkt. 229 at 9-10).

17       *No knowledge while an alleged agent*. Further, an agent's knowledge is not imputed to a

18   principal when it was "acquired outside the scope of his powers or duties, or when he is not acting

19   for or on behalf of the corporation." *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wn.

20   App. 229, 268–69 (2009). Bombardier argues an agency relationship based on Korwin-

21       [3] The fact that information may be in a defendant's possession is not a get-out-of-motion-to-dismiss-free
22   card. Rather, Bombardier must still allege facts to "establish any basis for [its] belief" that he was a MITAC America
     agent. *See B.R. v. Beacon Health Options*, No. 16-cv-04576, 2017 WL 5665667, at *5 (N.D. Cal. Nov. 27, 2017).
23   Otherwise, for example, Bombardier could sue every past Bombardier employee who had knowledge of its trade
     secrets, and who has since worked on the MRJ, and claim they misappropriated trade secrets and are a MITAC agent,
24   and it could do so with impunity by claiming that knowledge of agency and misappropriated secrets is uniquely
     within the defendants' possession.

25       [4] MITAC America is not arguing that "information and belief" allegations are *per se* inappropriate, and its
     Motion does not rise or fall with the general viability of such allegations. Rather, Bombardier (at 8) admits here that it
26   "relied on" Korwin-Szymanowski's declaration to formulate its "information and belief" allegations, yet Bombardier
     inexplicably makes allegations directly contrary to his sworn testimony.

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 7

1   Szymanowski's recruitment efforts. (Dkt. 143 ¶ 128.) But his newly pleaded supposed *knowledge*

2   about supposed misappropriation was allegedly acquired while working as an AeroTEC manager,

3   supervising AeroTEC employees who were working for AeroTEC. (*See id.* ¶ 274.) The FAC

4   includes no allegations that MITAC America controlled the manner in which Korwin-

5   Szymanowski supervised AeroTEC employees. So no plausible inference can be drawn that he

6   was a MITAC America agent for the purpose of supervising his AeroTEC team. *See Barker*, 119

7   Wn. App. at 814. Thus, even assuming he was a MITAC America agent for recruiting, the

8   knowledge he may have gained while supervising AeroTEC employees cannot be imputed to

9   MITAC America.

10       An alter ego theory is doomed, and no discovery is warranted: Bombardier *argues* it

11   alleged sufficient alter ego facts (at 10-11) but cites no law to support that conclusion. And

12   applying applicable law shows that Bombardier's allegations fall far short. According to the Ninth

13   Circuit in a case on which Bombardier relies heavily for *other* propositions, "[t]o satisfy the alter

14   ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and

15   ownership that the separate personalities of the two entities no longer exist and (2) that failure to

16   disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d

17   1059, 1073 (9th Cir. 2015) (citations omitted).[5] A "unity of interest and ownership" requires

18   "showing that the parent controls the subsidiary to such a degree as to render the latter the mere

19   instrumentality of the former" by "dictat[ing] every facet of the subsidiary's business — from

20   broad policy decisions to routine matters of day-to-day operation." *Id.* (citations omitted). A

21   parent's total ownership and sharing management personnel are alone insufficient. *Id.*

22       Bombardier's allegations here reflect only a normal parent-subsidiary relationship; they

23   nowhere near approach the unmitigated control necessary to meet the first element. *See, e.g., id.* at

24   1074 (holding no alter ego where: "Nike is heavily involved in [subsidiary] NEON's operations.

---

[5] Bombardier (at 18-20) discusses at length from *Ranza* to argue alter liability *can* be imputed from a parent to a subsidiary. Notably, however, Bombardier then ignores entirely the notoriously high bar *Ranza* sets for what is required to plead when liability *should* be imputed to a subsidiary.

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 8

Nike exercises control over NEON's overall budget and has approval authority for large purchases; establishes general human resource policies for both entities and is involved in some hiring decisions; operates information tracking systems all of its subsidiaries utilize; ensures the Nike brand is marketed consistently throughout the world; and requires some NEON employees to report to Nike supervisors on a 'dotted-line' basis."); *Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) (abrogated on other grounds) (finding that extensive parent involvement with subsidiaries (including control over subsidiaries' acquisitions, divestments and capital expenditures; formulation of general business policies and strategies; providing financing; and overlapping directors) insufficient); *see also Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *3 (C.D. Cal. July 30, 2015); *Sia v. AirAsia Berhad*, 2017 WL 1408172, at *5, n.3 (W.D. Wash. April 20, 2017).

Further, Bombardier has not and cannot plausibly plead the second element, that respecting MITAC and MITAC America's separate corporate structures would sanction a fraud or promote injustice. *Ranza*, 793 F.3d at 1073. "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor & Home Design, Inc. v. M--MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004); *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) ("[T]he 'kind of inequitable result' that makes alter ego liability appropriate is abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors."). Bombardier's conclusory arguments that unless the corporate veil is pierced here other companies would "suffer the same fate as Bombardier" (Dkt. 143 ¶ 95) or other former employees could "transmit Bombardier trade secrets to MITAC with impunity" (*Id.* ¶ 94) strains credulity. Notably, such speculative harm also does not logically follow from respecting the corporate form here. And Bombardier provides no explanation. Simply put, injustice cannot lie where Bombardier has a remedy for alleged MITAC misconduct: its claim *against MITAC*.

*Discovery is unwarranted*. The purpose of the pleading standards is to "protect defendants

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

from being 'subjected to the expense of discovery and continued litigation' absent 'factual allegations that . . . plausibly suggest an entitlement to relief.'" *Ranza v. Nike Mountain Club Owner's Ass'n v. Graybar Elec. Co.*, 2014 WL 130767, at *2 (E.D. Cal. Jan. 14, 2014) (omission in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "[D]iscovery cannot be used as a fishing expedition for evidence of claims that have not been properly pled." *Torio v. Wells Fargo Bank, N.A.*, 2016 WL 2344243, at *5 (N.D. Cal. May 4, 2016).[6] Given the posture of this case, no discovery on Bombardier's farfetched alter ego theory is warranted. Bombardier advised the Court that it needed no discovery to respond to the motion to dismiss.[7] Further, as just explained, it would be futile as Bombardier has a remedy against MITAC for its alleged wrongdoing and an alter ego theory is unavailing.[8] Bombardier should not be permitted to burden MITAC America with discovery to no end.

**D.     Bombardier fails to cure the deficiency with its tortious interference claim.**

1.     <u>Bombardier admits its claim is solely premised on recruiting from a competitor.</u>

Bombardier explains (at 12-13) that its theory is based on a "*general* business expectancy" that it would "*generally* adhere" to its schedules. In other words, Bombardier—like every business—generally expects to complete its projects on time. Bombardier (at 4) identifies the wrongful conduct underlying its tortious interference claim: MITAC America recruited Bombardier personnel even after it demanded that the recruitment stop. But, no tortious interference claim can be predicated on these facts, as this Court recognized. (Dkt. 136 at 37.)

---

[6] "Although the Ninth Circuit has, at times, allowed discovery into the relationship between a parent and subsidiary, it has done so when there are sufficient factual allegations to support finding an agency relationship." *Nev. Power Co. v. Trench France SAS*, 2015 WL 6737015, at *4 (D. Nev. Nov. 2, 2015), (denying request for discovery); *see also Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1118 (D. Nev. 2013) (observing that the Ninth Circuit has sometimes allowed discovery "when there is some evidence before it that the corporate formalities have not been maintained"). Here, Bombardier has not offered "sufficient factual allegations to support finding an agency relationship" or that "corporate formalities have not been maintained."

[7] Bombardier also agreed discovery would be premature until after it identified with specificity all trade secrets at issue in this litigation, which it has not done or offered to do. (*See, e.g.*, Dkt. 47 at 7.)

[8] *Fin. Express LLC v. Nowcom Corp.*, 2008 WL 11342755 (C.D. Cal. Mar. 6, 2008) and *Windisch v. Hometown Health Plan, Inc.*, 2010 WL 786518 (D. Nev. Mar. 5, 2010), cited by Bombardier, did not grant limited discovery; both courts found alter ego liability sufficiently alleged. *Fin. Express*, at *3; *Windisch*, at *8.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   Nonetheless, Bombardier argues (at 12) that its allegations are sufficient because no cases

2   suggest that "informing a defendant of a business expectancy, the problematic conduct that is

3   interfering with that expectancy, and the resulting consequential harm is insufficient to maintain"

4   a tortious interference claim. Bombardier misses the mark: the lack of cases rejecting a claim on

5   such facts is not relevant. Rather, the relevant issue is whether any cases support a tortious

6   interference claim based on such facts. Bombardier cites none.

7    A short hypothetical illustrates the fallacy of Bombardier's position, and explains why

8   Bombardier is unable to cite authority for its position: Acme Company has a general business

9   expectancy that it will sell 100 widgets per quarter; Acme's competitor begins selling widgets at a

10  lower price, so Acme sends a letter informing the competitor of Acme's business expectancy and

11  that the problematic conduct—selling cheaper widgets—is going to interfere with Acme's

12  quarterly sales expectancy. The competitor refuses to raise its prices, and when Acme does not

13  sell its 100 widgets that quarter, it sues the competitor for tortious interference. Applying

14  Bombardier's reasoning, Acme can state a plausible interference claim.

15  But that is not the law. To constitute a tort, the relevant interference *must be for an*

16  *improper purpose*, which means it must be "wrongful by some measure *beyond the interference*

17  *itself*, such as a statute, regulation, recognized rule of common law, or an established standard of

18  trade or profession." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 52 P.3d

19  30, 34 (Wash. Ct. App. 2002) (emphasis added); *see also Nat'l City Bank, N.A. v. Prime Lending,*

20  *Inc.*, No. CV-10-034-EFS, 2010 WL 2854247, at *1, *5 (E.D. Wash. July 19, 2010 (dismissing

21  tortious interference where a competitor "effectively shut down" the plaintiff by causing a "mass

22  resignation" of employees). Just as Acme's competitor selling cheaper widgets is not wrongful,

23  MITAC America's recruiting qualified, at-will employees is not wrongful. Thus, the claim fails.

24      2.   <u>Bombardier left the causation deficiency with the original Complaint uncured.</u>

25  The Court dismissed Bombardier's tortious interference claim premised on its certification

26  schedules because "Bombardier fails to plausibly allege that MITAC America induced or caused

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    a breach of Bombardier's certification schedules." (Dkt. 136 at 38.) Bombardier still does not

2    plausibly plead that any conduct by MITAC America caused it harm. Rather, Bombardier only

3    complains of MITAC America's recruiting efforts. And Bombardier (at 22) concedes that its

4    "harm" of a vague delay of at least several months was caused "not [by] the loss of employees to

5    MITAC America specifically," but rather "is the loss of critical certification employees, period."

6    Thus, Bombardier essentially tries to state a claim by imputing to MITAC America the alleged

7    harm (delay) caused by other companies (AeroTEC and MITAC) having hired its critical

8    certification employees. Bombardier's admission that it has not pled that MITAC America hired

9    any critical certification employee from Bombardier defeats its effort to plead causation.

10        3.    Bombardier did not sufficiently allege MITAC America's knowledge or intent.

11        Bombardier (at 12-13) tries to expand the purported business expectancy it pleaded to one

12    that extends beyond the specifics of the certification schedules. In doing so, Bombardier defeats

13    itself because its new "general" business expectancy is insufficient to establish a plausible claim

14    for tortious interference. (*See* Dkt. 180 at 21); *Diederich v. Providence Health & Servs.*, 622 F.

15    App'x 613, 615 (9th Cir. 2015) (plaintiff failed to establish business expectancy where "Diederich

16    does not show that he had any *specific* business expectancy post-residency") (emphasis added).

17        Bombardier was further required to plausibly plead intent: that MITAC America "knew"

18    or was "substantially certain" that its actions would cause Bombardier's schedules to be delayed.

19    (*See* Dkt. 180 at 22.) Bombardier did not respond to MITAC America's argument that one could

20    not plausible infer such knowledge from the FAC in light of (a) Bombardier's highly publicized

21    mass layoffs, and (b) the lack of any allegations that MITAC America knew which employees

22    were critical to Bombardier's certification schedule, or that MITAC America targeted only such

23    key personnel and hired them. (*See id.* at 22-23.) The lack of a response speaks volumes.

## III.    CONCLUSION

25        For the reasons stated here and in its Motion, MITAC America respectfully requests the

26    Court dismiss Counts III, IV, and VIII of the FAC *with prejudice*.

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

2      RESPECTFULLY SUBMITTED this 7th day of June 2019.

3                                      */s Mary Z. Gaston*
                                       Jerry A. Riedinger, WSBA No. 25828
4                                      Mack H. Shultz, WSBA No. 27190
                                       James Sanders, WSBA No. 24565
5                                      Mary Z. Gaston, WSBA No. 27258
                                       Shylah R. Alfonso, WSBA No. 33138
6
                                       **Perkins Coie LLP**
7                                      1201 Third Avenue, Suite 4900
                                       Seattle, WA 98101-3099
8                                      Telephone: 206.359.8000
                                       Facsimile: 206.359.9000
9                                      E-mail: JRiedinger@perkinscoie.com
                                       E-mail: MShultz@perkinscoie.com
10                                     E-mail: JSanders@perkinscoie.com
                                       E-mail: MGaston@perkinscoie.com
11                                     E-mail: SAlfonso@perkinscoie.com
12
                                       Attorneys for Defendant Mitsubishi Aircraft
13                                     Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

MITAC AMERICA'S REPLY ISO ITS MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(NO. 2:18-CV-1543 JLR) – 13

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on June 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

DATED this 7th day of June 2019.

*s/ Mary Z. Gaston*
Mary Z. Gaston, WSBA No. 27258
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
E-mail: mgaston@perkinscoie.com

CERTIFICATE OF SERVICE
(NO. 2:18-CV-1543 JLR) – 1